# Exhibit 42

# AG, SOS: Plaintiff's Report in Antrim County Election Lawsuit Demonstrates Lack of Credible Evidence in Widespread Fraud or Wrongdoing

Contact: Ryan Jarvi 517-599-2746
Agency: Attorney General

December 14, 2020

**LANSING** – Attorney General Dana Nessel and Secretary of State Jocelyn Benson, in an Antrim County court hearing today, did not object to the public release of a report on Dominion software from the partisan organization Allied Security Operations Group (ASOG), in order to demonstrate the "report" is actually another in a long stream of misguided, vague and dubious assertions designed to erode public confidence in the November presidential election.

"Let's be clear: Michigan's Nov. 3 general election was the most secure in our state's history," said Secretary Benson upon the release of the report. "There continues to be no evidence of widespread fraud, as affirmed by state and federal agencies including Attorney General William Barr, the Federal Bureau of Investigation, and the Cybersecurity and Infrastructure Security Agency.  If the Trump campaign had any actual evidence of wrongdoing – or genuine suspicion thereof – they could have requested a hand recount of every ballot in the state.  They did not, instead choosing to allow shadowy organizations claiming expertise to throw around baseless claims of fraud in an effort to mislead American voters and undermine the integrity of the election. Their actions are a corruption of the courts and the rule of law, as the release of today's report clearly demonstrates."

A lawsuit filed in 13th Circuit Court, *Bailey v Antrim County*, seeks to challenge Antrim County's election results, posing false claims of fraud and accompanied with a report filled with errors and clear bias.

"Oftentimes, a party will hire an expert witness to support the conclusion that the party wants or needs to reach. It's why we give the other parties in a lawsuit a chance to depose the expert and challenge their qualifications in court," Attorney General Nessel said. "Anyone can have an opinion, but it doesn't necessarily mean the opinion is based on fact or science."

ASOG authored the "preliminary forensic audit," which was made public by the judge today. The group, however, has no apparent expertise in election administration and technology. Their work is limited to the previous release and amplification of other false information and fake documents. As expected, the plaintiff's most recent report on Antrim County is similarly critically flawed, filled with dramatic conclusions without any evidence to support them.

Today's activity comes on the heels of last week's announcement from the Department of State that the Bureau of Elections is planning the most comprehensive set of election audits in the state's history. This will include a statewide risk-limiting audit, several local procedural audits, and a zero-margin risk-limiting-audit of all ballots in Antrim County. The latter, which will be conducted on Thursday, Dec. 17, is expected to confirm that votes cast for president were machine-tabulated correctly. A similar statewide risk-limiting audit demonstrated the accuracy of the state's voting machines following the March 10 presidential primary.

In response to a previously unsigned version of the ASOG report, Michigan Bureau of Elections Director Jonathan Brater made a preliminary declaration under oath for the court. In his statement, Brater said it was apparent to him "… that the report makes a series of unsupported conclusions, ascribes motives of fraud and obfuscation to processes that are easily explained as routine election procedures or error corrections, and suggests without explanation that elements of election software not used in Michigan are somehow responsible for tabulation or reporting."

There are several legal concerns with the report and testimony submitted in *Bailey v Antrim County*, including the portions provided by Russell Ramsland, one of the "expert" witnesses in the case.

A Detroit Free Press story from Nov. 21 quotes Rudy Giuliani as saying Michigan has "over-votes in numerous precincts of 150%, 200% and 300%." Giuliani's source was an affidavit from Ramsland, who is a former Republican congressional candidate.  All 19 of the precincts cited in his affidavit are in Minnesota, not Michigan. Ramsland has also inaccurately stated the voter turnout rate in Detroit, saying it was nearly three times higher than it actually was.

The qualifications of those who authored the report are suspect, with no evidence or credentials provided to back up their "expertise." Authors in the report also make unverified and unsupported claims that "fraud," "intentional errors" and "bad faith" decisions made by election officials led them to their conclusions in the report. Moreover, many of their assertions are unsupported by evidence, with some even constituting hearsay and clearly show that the authors lack first-hand knowledge of events.

Michigan Rule of Evidence 702 states that if the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. That has not happened in this case yet.

Past court rulings have found that the trial court has a fundamental duty to ensure that all expert testimony is reliable (*Gilbert v DaimlerChrysler Corp*), and that the knowledge of the testimony must be more than "subjective belief or unsupported speculation" (*Daubert v Merrell Dow Pharmaceuticals*). At the conclusion of discovery, the Department of Attorney General will have the opportunity to request that the plaintiff's report be stricken from use in these proceedings.

The public will be able to view the Department of State's official audit of the Antrim County presidential election. Details will be announced prior to the audit's commencement on Thursday, Dec. 17.

Click here to view a copy of Brater's declaration.

DEPARTMENT OF ATTORNEY GENERAL

NEWS | ABOUT | ELECTION SECURITY AND INTEGRITY | CONSUMER PROTECTION | INITIATIVES | OUTREACH | RESOURCES | CONTACT

Contact: Ryan Jarvi 517-599-2746
Agency: Attorney General

December 14, 2020

**LANSING** – Attorney General Dana Nessel and Secretary of State Jocelyn Benson, in an Antrim County court hearing today, did not object to the public release of a report on Dominion software from the partisan organization Allied Security Operations Group (ASOG), in order to demonstrate the "report" is actually another in a long stream of misguided, vague and dubious assertions designed to erode public confidence in the November presidential election.

"Let's be clear: Michigan's Nov. 3 general election was the most secure in our state's history," said Secretary Benson upon the release of the report. "There continues to be no evidence of widespread fraud, as affirmed by state and federal agencies including Attorney General William Barr, the Federal Bureau of Investigation, and the Cybersecurity and Infrastructure Security Agency.  If the Trump campaign had any actual evidence of wrongdoing – or genuine suspicion thereof – they could have requested a hand recount of every ballot in the state.  They did not, instead choosing to allow shadowy organizations claiming expertise to throw around baseless claims of fraud in an effort to mislead American voters and undermine the integrity of the election. Their actions are a corruption of the courts and the rule of law, as the release of today's report clearly demonstrates."

A lawsuit filed in 13th Circuit Court, *Bailey v Antrim County*, seeks to challenge Antrim County's election results, posing false claims of fraud and accompanied with a report filled with errors and clear bias.

"Oftentimes, a party will hire an expert witness to support the conclusion that the party wants or needs to reach. It's why we give the other parties in a lawsuit a chance to depose the expert and challenge their qualifications in court," Attorney General Nessel said. "Anyone can have an opinion, but it doesn't necessarily mean the opinion is based on fact or science."

ASOG authored the "preliminary forensic audit," which was made public by the judge today. The group, however, has no apparent expertise in election administration and technology. Their work is limited to the previous release and amplification of other false information and fake documents. As expected, the plaintiff's most recent report on Antrim County is similarly critically flawed, filled with dramatic conclusions without any evidence to support them.

Today's activity comes on the heels of last week's announcement from the Department of State that the Bureau of Elections is planning the most comprehensive set of election audits in the state's history. This will include a statewide risk-limiting audit, several local procedural audits, and a zero-margin risk-limiting-audit of all ballots in Antrim County. The latter, which will be conducted on Thursday, Dec. 17, is expected to confirm that votes cast for president were machine-tabulated correctly. A similar statewide risk-limiting audit demonstrated the accuracy of the state's voting machines following the March 10 presidential primary.

In response to a previously unsigned version of the ASOG report, Michigan Bureau of Elections Director Jonathan Brater made a preliminary declaration under oath for the court. In his statement, Brater said it was apparent to him "… that the report makes a series of unsupported conclusions, ascribes motives of fraud and obfuscation to processes that are easily explained as routine election procedures or error corrections, and suggests without explanation that elements of election software not used in Michigan are somehow responsible for tabulation or reporting."

There are several legal concerns with the report and testimony submitted in *Bailey v Antrim County*, including the portions provided by Russell Ramsland, one of the "expert" witnesses in the case.

A Detroit Free Press story from Nov. 21 quotes Rudy Giuliani as saying Michigan has "over-votes in numerous precincts of 150%, 200% and 300%." Giuliani's source was an affidavit from Ramsland, who is a former Republican congressional candidate.  All 19 of the precincts cited in his affidavit are in Minnesota, not Michigan. Ramsland has also inaccurately stated the voter turnout rate in Detroit, saying it was nearly three times higher than it actually was.

The qualifications of those who authored the report are suspect, with no evidence or credentials provided to back up their "expertise." Authors in the report also make unverified and unsupported claims that "fraud," "intentional errors" and "bad faith" decisions made by election officials led them to their conclusions in the report. Moreover, many of their assertions are unsupported by evidence, with some even constituting hearsay and clearly show that the authors lack first-hand knowledge of events.

Michigan Rule of Evidence 702 states that if the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. That has not happened in this case yet.

Past court rulings have found that the trial court has a fundamental duty to ensure that all expert testimony is reliable (*Gilbert v DaimlerChrysler Corp*), and that the knowledge of the testimony must be more than "subjective belief or unsupported speculation" (*Daubert v Merrell Dow Pharmaceuticals*). At the conclusion of discovery, the Department of Attorney General will have the opportunity to request that the plaintiff's report be stricken from use in these proceedings.

The public will be able to view the Department of State's official audit of the Antrim County presidential election. Details will be announced prior to the audit's commencement on Thursday, Dec. 17.

Click here to view a copy of Brater's declaration.

###

Michigan.gov

Michigan Department of Attorney General Written Public Summary of the Department's Freedom of Information Act Procedures and Guidelines
| Michigan Department of Attorney General Freedom of Information Act Procedures and Guidelines | FOIA
| AG Privacy Policy | AG Web Disclaimer
MICHIGAN.GOV HOME | ADA | MICHIGAN NEWS | POLICIES
COPYRIGHT 2021 STATE OF MICHIGAN

