IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| US DOMINION, INC., et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>MY PILLOW, INC., et al.<br><br>            Defendants. | Case No. 1:21-cv-00445-CJN<br>Judge Carl J. Nichols |

**MY PILLOW, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR MODIFICATION OF MEMORANDUM OPINION AND ORDER DATED AUGUST 11, 2021, TO INCLUDE CERTIFICATION OF CONTROLLING QUESTIONS OF LAW**

**LEWIN & LEWIN, LLP**
Nathan Lewin (D.C. Bar No. 38299)
888 17th Street NW
Fourth Floor
Washington, DC 20006
Telephone: (202) 828-1000
nat@lewinlewin.com

*Counsel for Defendant My Pillow, Inc.*

Alan Dershowitz (MA Bar No. 121200)
1575 Massachusetts Avenue
Cambridge, MA 02138

*Of Counsel for Defendant My Pillow, Inc.*

**PARKER DANIELS KIBORT LLC**
Andrew D. Parker (MN Bar No. 195042)*
Joseph A. Pull (D.C. Bar No. 982468)
Abraham S. Kaplan (MN Bar No. 399507)*
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
parker@parkerdk.com
pull@parkerdk.com
kaplan@parkerdk.com

* Admitted Pro Hac Vice

*Counsel for Defendant My Pillow, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.    PRECEDENTS IN THIS CIRCUIT AUTHORIZE INTERLOCUTORY APPEALS TO RESOLVE LEGAL ISSUES IN APPLYING NEW YORK TIMES V. SULLIVAN ........................................................................................................................ 3

II.   MYPILLOW'S MOTION TO DISMISS RAISES CONTROLLING QUESTIONS OF LAW AS TO WHICH THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION ........................................................................................ 4

**First Certifiable Question** ................................................................................................ 4

    Whether a defamation complaint by "a public official against critics of [its] official conduct" must be dismissed at the pleading stage under New York Times v. Sullivan if the complaint (a) fails to allege any direct evidence of a statement or act that the defendant knew was false, and (b) relies only on circumstantial inferences to attempt to prove reckless disregard ................................. 4

**Second Certifiable Question** .......................................................................................... 8

    Whether, under New York Times v. Sullivan, a court may deny a motion to dismiss a defamation complaint by "a public official against critics of [its] official conduct" without taking judicial notice of material establishing a robust public debate on the issues set forth in the complaint ........................................ 8

III.  IMMEDIATE APPEAL FROM THE COURT'S ORDER DENYING DISMISSAL MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION ................................................................................................................. 10

CONCLUSION .............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Dameron v. Washington Magazine, Inc.*, 779 F.2d 736 (D.C. Cir. 1985) ...................................... 7
*Fairbanks v. Roller*, 314 F. Supp.3d 85 (D.D.C. 2018) .............................................................. 9, 10
*Farah v. Esquire Magazine, Inc.*, 863 F. Supp.2d 29 (D.D.C. 2012) ............................................... 9
*Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989) ................................. 8
*Herbert v. Lando*, 441 U.S. 153 (1979) .......................................................................................... 8
*Jankovic v. International Crisis Group*, 822 F.3d 576 (D.C. Cir. 2016) ....................................... 7
*Kahl v. Bureau of National Affairs, Inc.,* 856 F.3d 106 (D.C. Cir. 2017) ...................................... 3
*Keogh v. Washington Post Co.*, 244 F. Supp. 482 (D.D.C. 1965) .................................................. 3
*Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. Cir. 2003) ................................................................... 7
*McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996) .............................................. 7, 9
*New York Times v. Sullivan*, 376 U.S. 254 (1964) ................................................................. passim
*St. Amant v. Thompson*, 390 U.S. 727 (1968) ................................................................................ 6
*Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231 (D.C. Cir. 2021) ........................................ 7
*Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) ...................................................................... 7
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................ 9
*Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980) ................................. 7
*Washington Post Co. v. Keogh.*, 365 F.2d 965 (D.C. Cir. 1966) .................................................... 3

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................................. 3, 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 9, 10

Defendant My Pillow, Inc. ("MyPillow") hereby moves for modification of the Court's Memorandum Opinion and Order of August 11, 2021, to include a conclusion that its order (a) decides controlling questions of law, (b) as to which there are substantial grounds for difference of opinion, and (c) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. This case raises the fundamental question of the First Amendment's "actual malice" boundaries where a plaintiff acts as the government by carrying out essential government functions.

At the heart of this case is the scope of an American citizen's right to criticize how his government handles the counting of votes. Were electronic voting systems used in the November 2020 election hacked and manipulated? Plaintiff Dominion's billion-dollar defamation lawsuits and related public attacks against MyPillow and numerous others are an effort to choke off public discussion of these foundational political issues. Numerous sources supporting the truth of the allegedly defamatory statements were presented to this Court. Had the material submitted been accepted for consideration, this case could not have proceeded, even at this early stage. Should a court look only at the allegations in a complaint and disregard all evidence offered to demonstrate a public controversy at the inception of a lawsuit? Such an approach allows a public official to employ litigation to silence criticism and diminish debate in the public square. The gravity and impact of the Court's ruling on the *New York Times v. Sullivan* standard warrants appellate review at this juncture.

The questions to be certified to the Court of Appeals are:

(1) Whether a defamation complaint by "a public official against critics of [its] official conduct" must be dismissed at the pleading stage under *New York Times v. Sullivan* if the complaint (a) fails to allege any direct evidence of a statement or act that the defendant knew was false, and (b) relies only on circumstantial inferences to prove reckless disregard; and

(2) Whether, under *New York Times v. Sullivan,* a court may deny a motion to dismiss a defamation complaint by "a public official against critics of [its] official conduct" without taking judicial notice of material establishing a robust public debate on the issues set forth in the complaint.

If an interlocutory appeal is allowed, the Court of Appeals will decide, we believe, that Dominion's complaint did not satisfy the most stringent actual malice requirement under *New York Times v. Sullivan,* which applies to a government actor operating in the context of a large public debate. This is because (a) the complaint fails to allege any personal statement or act by Michael Lindell showing that he knew his allegations concerning Dominion were false or that he recklessly disregarded the truth of his allegations, and (b) the robust public debate surrounding the subject matter of Lindell's statements affords him constitutional protection and bars any inference that he spoke with actual malice.

Many recent decisions of the Court of Appeals for the District of Columbia Circuit have addressed the constitutional immunity recognized by *New York Times v. Sullivan*, 376 U.S. 254 (1964), including a recent decision by current Supreme Court Justice Brett Kavanaugh when he was a Circuit Judge, and have emphasized that lawsuits threatening this significant immunity should be "expeditiously weed[ed] out." This is particularly true here, where several cases currently pending before this Court, including Dominion's independent actions against Sidney Powell, Rudolph Giuliani, Patrick Byrne, and One America News Network, may be affected by appellate review of this fundamental First Amendment issue.

2

# I.

## PRECEDENTS IN THIS CIRCUIT AUTHORIZE INTERLOCUTORY APPEALS TO RESOLVE LEGAL ISSUES IN APPLYING *NEW YORK TIMES v. SULLIVAN*

This Court has previously certified interlocutory appeals to clarify the application of *New York Times v. Sullivan*. In *Keogh v. Washington Post Co.*, 244 F. Supp. 482 (D.D.C. 1965), the Washington Post claimed that *New York Times v. Sullivan* protected its publication of an article that allegedly defamed a Congressman. United States District Judge Walsh denied the Post's motion for summary judgment but certified three legal issues for interlocutory appeal under 28 U.S.C. § 1292(b). The Circuit Court panel (consisting of Senior Circuit Judge Wilbur K. Miller and Judges J. Skelly Wright and Carl McGowan) heard the appeal and, in an opinion by Judge Wright, directed entry of summary judgment for the Post. *Washington Post Co. v. Keogh.*, 365 F.2d 965 (D.C. Cir. 1966). More recently, then-District Judge Ketanji Brown Jackson denied a motion for summary judgment based on *New York Times v. Sullivan*, but certified for interlocutory appeal the issue of actual malice. The Court of Appeals, with an opinion by then-Circuit Judge Brett Kavanaugh, reversed and directed that summary judgment be entered for the defendant. *Kahl v. Bureau of National Affairs, Inc.,* 856 F.3d 106 (D.C. Cir. 2017).

II.

## MYPILLOW'S MOTION TO DISMISS RAISES CONTROLLING QUESTIONS OF LAW AS TO WHICH THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

### First Certifiable Question

**Whether a defamation complaint by "a public official against critics of [its] official conduct" must be dismissed at the pleading stage under *New York Times v. Sullivan* if the complaint (a) fails to allege any direct evidence of a statement or act that the defendant knew was false, and (b) relies only on circumstantial inferences to attempt to prove reckless disregard**

In the more than a half-century since the Supreme Court decided *New York Times v. Sullivan*, its reach has been extended to cover defamation lawsuits by "public figures," and not just by "public officials." This case, however, concerns the vital "public official" core of the constitutional decision. MyPillow is accused of having defamed Dominion -- an entity that was performing "governmental operations" and was the "official responsible for those operations." 376 U.S. at 292. Dominion's critics (like Lindell) must be shielded against "the threat of damage suits [that] would otherwise 'inhibit the fearless, vigorous, and effective administration of policies of government.'" *Id.* at 282 (quotation omitted).

In the continuum of "public figures/public officials" whose critics are entitled to constitutional protection under *New York Times v. Sullivan,* those who perform the most important public functions in a democracy have the least right to maintain a defamation lawsuit against disparagement. Recklessness regarding a marginal public figure performing no governmental function may be sufficient to justify a defamation claim. In contrast, more extraordinary

4

recklessness must be shown to permit a legal challenge by a central public official performing a core governmental function that is the subject of an ongoing divisive national debate. In order to protect First Amendment rights, courts must require the highest degree of proof of actual malice before enabling an official performing vital governmental duties to proceed with legal action against a critic.

Justice Brennan's majority opinion in *New York Times v. Sullivan* broadly protects "the critic of official conduct" from a defamation lawsuit because allowing litigation – even with a sweeping defense of truth – "dampens the vigor and limits the variety of public debate." 376 U.S. at 279. The "citizen-critic" will, according to the Supreme Court majority, entertain "doubt whether [truth] can be proved in court or fear of the expense of having to do so." *Id.* The same doubt and fear exist if a critic who has never indicated by any personal utterance or act that he did not subjectively believe what he said or recklessly disregarded whether his statement was true or false may be found liable if jurors believe that what he said was "inherently improbable" or that there were "obvious reasons" to mistrust his source. Justice Goldberg's concurring opinion noted that the constitutional right recognized by the majority "should not depend upon a probing by the jury of the motivation of the citizen or press." 376 U.S. at 298 (footnote omitted).

MyPillow argued in both its principal and reply memoranda in support of its Motion To Dismiss that Dominion's complaint failed to allege a single act or statement by Lindell that demonstrates subjective knowledge that his statements were false or that he said them with reckless disregard of their alleged falsity. Reply Mem. at 2 (ECF #49); Principal Mem. at 6 (ECF #30-1). Dominion never identified any act or utterance **made personally by Lindell** that could prove his actual subjective malice or his deliberate, reckless disregard of the claimed falsity of his alleged defamatory statements. Dominion relied entirely – as did this Court in its August 11 Memorandum

5

Opinion – on circumstantial evidence demonstrating reckless disregard. This is insufficient to show actual malice under *New York Times v. Sullivan.*

Dominion's contention that equivocal circumstantial evidence could be sufficient to prove reckless disregard and this Court's acceptance of that proposition both rely on the Supreme Court's observation in *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968), that "[p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call." All three of these examples could be proved ***only*** by the defendant's own acknowledgement. Only if a defendant has personally admitted to another person that he has fabricated his allegation, that it is the "product of his imagination," or that he published what he heard in an "unverified anonymous telephone call" could a plaintiff allege such support for a claim of reckless disregard. These are instances that cannot, by their very nature, be proved circumstantially.

To be sure, *St. Amant* also says, "Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* But this additional language – which follows the *St. Amant* opinion's specific listing of the three possible sources that exemplify the "reckless disregard" standard – does not authorize a defamation lawsuit against a "critic of official conduct" with no allegation or proof whatsoever that the critic has, by word or deed, personally engaged in conduct that demonstrates doubt of the truth of his allegedly defamatory statement. Permitting a government official to sue a critic with no basis other than the assertion that the criticism is "inherently improbable" or that there are "obvious reasons" to distrust the basis for the

6

critic's conclusion eradicates the constitutional protection that *New York Times v. Sullivan* provides.

Decisions of the Court of Appeals for the D.C. Circuit demonstrate that there is a substantial ground for difference of opinion on this controlling question of law. As recently as *Tah v. Global Witness Publishing, Inc.*, 991 F.3d 231 (D.C. Cir. 2021), the Court of Appeals (per Chief Judge Srinivasan and Circuit Judge Tatel) confirmed (a) that the actual malice test was "daunting," (b) that a plaintiff must prove the defendant's knowledge of falsity or reckless disregard by "clear and convincing evidence," (c) that a defendant must have made the statement "with a high degree of awareness of probable falsity" or with "serious doubts as to the truth of his publication," (d) that the "failure to meet an objective standard of reasonableness is insufficient," and (e) that the speaker must have actually "harbored subjective doubt." 991 F.3d at 240.

*Tah*'s conclusions are consistent with forty years of appellate affirmances of District Court judgments rejecting defamation lawsuits on the basis of *New York Times v. Sullivan*. *See Jankovic v. International Crisis Group*, 822 F.3d 576 (D.C. Cir. 2016); *Lohrenz v. Donnelly*, 350 F.3d 1272 (D.C. Cir. 2003); *McFarlane v. Esquire Magazine*, 74 F.3d 1296 (D.C. Cir. 1996); *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987); *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736 (D.C. Cir. 1985); *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980). Under the exacting standards of these decisions, circumstantial proof of subjective knowledge or reckless disregard – without evidence of personal word or deed by the defendant demonstrating knowledge of falsity or reckless disregard – does not clear the constitutional hurdle of *New York Times v. Sullivan*.

To counter this consistent line of decisions by the D.C. Circuit, pages 6-7 of Dominion's "Omnibus Opposition" to the Motions to Dismiss (ECF #47) cited decisions of the Second, Third,

7

and Ninth Circuits that said circumstantial evidence could be sufficient. The Supreme Court made similar statements in *Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979), and in *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). But the facts in these cases differed from the facts before this Court. Dominion's proffered cases involved alleged defamation of plaintiffs who were not public officials, nor acting as the government, and defendants who were not critics of official conduct. No reported case has approved a finding of actual malice against a critic of governmental conduct based on the factors enumerated in this Court's opinion.

## Second Certifiable Question

**Whether, under *New York Times v. Sullivan*, a court may deny a motion to dismiss a defamation complaint by "a public official against critics of [its] official conduct" without taking judicial notice of material establishing a robust public debate on the issues set forth in the complaint**

Under *New York Times v. Sullivan,* Dominion must plead sufficient facts to establish that Defendant Lindell made statements (imputed to MyPillow) with reckless disregard for the truth. The existence of great public debate, investigations, and audits regarding the integrity of Dominion voting machines and their role in the 2020 election show that Lindell's statements are not inherently improbable. In the context of this case, the Court had to take judicial notice of the public debate and government investigations surrounding Dominion, a government actor in its own right. The Court declined to consider published materials showing the existence of the public debate, submitted by Defendants Lindell and MyPillow, because "the majority of the evidence to which Lindell points is outside of the Complaint, and the Court cannot rely on this information at this time." Mem. Op. at 24 (ECF #54). The Court of Appeals will, MyPillow believes, find that the Court should have taken judicial notice of materials regarding the great public debate regarding

the integrity of the 2020 presidential election's outcome, particularly where Dominion is tasked with an essential government function and is itself the subject of government investigations.

Even in defamation actions that do not involve government actors, courts in this Circuit have taken judicial notice of a public debate and have thus dismissed defamation actions for failure to meet the actual malice standard. Noting an ongoing "public debate" about the "okay" hand gesture, the court in *Fairbanks v. Roller* ruled that particularly in light of the public debate the complaint's "allegations [did] not provide clear and convincing evidence of actual malice." *Id.*, 314 F. Supp.3d 85, 93 (D.D.C. 2018). To reach its conclusion, the court considered "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice," *id.* at 90, including "statements made on the internet" for the limited purpose "not for their truth, but merely to show that those statements were made." *Id.* at 88 n.1.

The *Fairbanks* court was not alone in considering broadly available information reporting a public debate. In *McFarlane v. Sheridan Square Press*, 91 F.3d 1501 (D.C. Cir. 1996), the Court of Appeals ruled that a reason to believe statements were true may defeat a claim of actual malice. A government investigation of the plaintiff can be that reason. *Id.* at 1513-1514. The District Court in *Farah v. Esquire Magazine, Inc.*, 863 F. Supp.2d 29, 35 (D.D.C. 2012) dismissed a defamation complaint after taking judicial notice of "various Internet postings . . . not for their truth, but merely to show that those statements were made." In a comparable context, the Supreme Court observed in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007), that a District Judge assessing whether a complaint adequately pleads scienter must "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions

9

to dismiss, in particular . . . matters of which a court may take judicial notice" in order to determine "whether *all* of the facts alleged, taken collectively, give rise" to an inference of the requisite intent.

To secure meaningful freedom of political speech, judicial notice of publicly available information establishing a great public debate on the matters at issue must be permitted at the pleadings stage to counter a plaintiff's assertion that the defendant's statements are the product of recklessness or are inherently improbable. "Early resolution of defamation cases under Federal Rule of Civil Procedure 12(b)(6) 'not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive.'" *Fairbanks,* 314 F. Supp.3d at 89 (quotation omitted). MyPillow's counsel has observed that defamation lawsuits "regardless of how they are resolved, sap the First Amendment of some of its vital ability to leave controversies to the marketplace of ideas where they belong."  Alan Dershowitz, *Shouting Fire: Civil Liberties in a Turbulent Age* p. 152 (Little, Brown and Co. 2002). Early resolution of cases like this further warrants an interlocutory appeal.

## III.
## IMMEDIATE APPEAL FROM THE COURT'S ORDER DENYING DISMISSAL MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

In both precedential instances discussed in Section I, *supra*, of this Memorandum, the Court of Appeals' decisions on the interlocutory appeals terminated the litigation in the defendants' favor. If MyPillow succeeds in its appeal of this Court's denial of its Motion to Dismiss, this litigation will be terminated. Hence there can be no doubt that the third condition specified in Section 1292(b) is satisfied with an interlocutory appeal.

10

Furthermore, Dominion, the plaintiff in this action, has brought similar claims against numerous defendants, additional even to those before this Court in its omnibus order. This includes One America News Network (Case No. 1:21-CV-02130) and Patrick Byrne (Case No. 1:21-CV-02131) in this Court, as well as Fox News (Case No. N21C-03-257) and Newsmax (Case No. N21C-08-063) in Delaware Superior Court. Many parties, then, would benefit from early appellate consideration of the First Amendment principles at issue here, and many efficiencies obtained.

## CONCLUSION

For the foregoing reasons, this Court should modify its Memorandum Opinion and Order to include conclusions authorizing an interlocutory appeal

DATED:  August 24, 2021

**LEWIN & LEWIN, LLP**

By */s/ Nathan Lewin*
Nathan Lewin (D.C. Bar No. 38299)
888 17th Street NW
Fourth Floor
Washington, DC 20006
Telephone: (202) 828-1000
nat@lewinlewin.com

**PARKER DANIELS KIBORT LLC**

By */s/ Andrew D. Parker*
Andrew D. Parker (MN Bar No. 195042)*
Joseph A. Pull (D.C. Bar No. 982468)
Abraham S. Kaplan (MN Bar No. 399507)*
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
pull@parkerdk.com
kaplan@parkerdk.com

\* Admitted Pro Hac Vice

*Counsel for Defendant My Pillow, Inc.*

11