**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-00445-CJN |
| MY PILLOW, INC., and MICHAEL J. LINDELL, | ) ) ) | |
| Defendants. | ) ) | |

**DOMINION'S OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION OF MEMORANDUM OPINION AND ORDER DATED AUGUST 11, 2021, TO INCLUDE CERTIFICATION OF CONTROLLING QUESTIONS OF LAW**

## TABLE OF CONTENTS

I.     Legal standard.................................................................................................... 3

II.    The challenged order does not involve controlling questions of law............................ 4

    A.    Defendants cannot identify any pure questions of law. ............................................. 4

    B.    Defendants' proposed questions are not controlling.................................................. 7

III.   There is no substantial ground for difference of opinion. ........................................... 9

    A.    No legal precedent supports Defendants' interpretation of Question One. ............... 9

    B.    Defendants' interpretation of Question Two is also unsupported by any precedent. 12

IV.   An interlocutory appeal would not materially advance the ultimate termination of the litigation.................................................................................................... 14

V.    Defendants cannot establish exceptional circumstances justifying immediate appeal. ..................................................................................................... 16

VI.   Conclusion. ..................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trs. Of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ...................................................................3

*Arias v. DynCorp*,
   856 F. Supp. 2d 46 (D.D.C. 2012) ...........................................................4

*Azima v. RAK Inv. Auth.*,
   325 F. Supp. 3d 30 (D.D.C. 2018) ......................................................3, 11

*Baylor v. Mitchell Rubenstein & Associates, P.C.*,
   2014 WL 12644263 (D.D.C. July 30, 2014).......................................12, 17

*Citizens for Resp. & Ethics in Washington v. Am. Action Network*,
   415 F. Supp. 3d 143 (D.D.C. 2019) ...........................................................3

*Dameron v. Washington Mag., Inc.*,
   779 F.2d 736 (D.C. Cir. 1985) .................................................................11

*Desert Palace, Inc. v. Costa*,
   539 U.S. 90 (2003)...................................................................................10

*In re Domestic Airline Travel Antitrust Litig.*,
   221 F. Supp. 3d 46 (D.D.C. 2016) ...........................................................13

*Educ. Assistance Found. for Descendants of Hungarian Immigrants in*
   *Performing Arts, Inc. v. United States*,
   2014 WL 12780253 (D.D.C. Nov. 21, 2014) .......................................3, 14

*Fairbanks v. Roller*,
   314 F. Supp. 3d 85 (D.D.C. 2018) ......................................................12, 13

*Farah v. Esquire Mag., Inc.*,
   863 F. Supp. 2d 29 (D.D.C. 2012) ...........................................................13

*Hammon v. Barry*,
   752 F.Supp. 1087 (D.D.C. 1990).............................................................2

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989).................................................................................5

*Herbert v. Lando*,
   441 U.S. 153 (1979)..........................................................................10, 11

*U.S. ex rel. Hollander v. Clay,*
  420 F. Supp. 853 (D.D.C. 1976) ...................................................................................14

*Hurd v. D.C., Gov't,*
  864 F.3d 671 (D.C. Cir. 2017) ...............................................................................12, 13

*Hutchinson v. Proxmire,*
  443 U.S. 111 (1979) .........................................................................................................6

*Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada,*
  727 F.2d 253 (2d Cir. 1984) ............................................................................................6

*Jankovic v. Int'l Crisis Grp.,*
  822 F.3d 576 (D.C. Cir. 2016) ...............................................................................10, 11

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,*
  233 F. Supp. 2d 16 (D.D.C. 2002) ........................................................................ *passim*

*Kahl v. Bureau of Nat'l Affs., Inc.,*
  856 F.3d 106 (D.C. Cir. 2017) .......................................................................................5

*Keogh v. Pearson,*
  244 F. Supp. 482 (D.D.C 1965) .....................................................................................5

*Keystone Tobacco Co. v. U.S. Tobacco Co.,*
  217 F.R.D. 235 (D.D.C. 2003) .......................................................................................5

*Lucas v. Duncan,*
  574 F.3d 772 (D.C. Cir. 2009) .....................................................................................10

*Mamani v. Berzain,*
  825 F.3d 1304 (11th Cir. 2016) .................................................................................4, 5

*McKesson HBOC, Inc. v. Islamic Republic of Iran,*
  315 F. Supp. 2d 63 (D.D.C. 2004) .................................................................................2

*Menoken v. Dhillon,*
  975 F.3d 1 (D.C. Cir. 2020) .........................................................................................13

*Mohawk Indus., Inc. v. Carpenter,*
  558 U.S. 100 (2009) .........................................................................................................3

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964) .........................................................................................................1

*OAO Alfa Bank v. Ctr. for Pub. Integrity,*
  387 F. Supp. 2d 20 (D.D.C. 2005) ...............................................................................11

*S.B.L. By & Through T.B. v. Evans*,
    80 F.3d 307 (8th Cir. 1996) .................................................................................6

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)......................................................................................5, 11

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ............................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ..................................................................................13

*Waldbaum v. Fairchild Publications, Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980) ...............................................................11

*Washington Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966) ...................................................................5

*Zimmerman v. Al Jazeera Am., LLC*,
    246 F. Supp. 3d 257 (D.D.C. 2017) ..........................................................13

**Statutes**

28 U.S.C. § 1292(b) ......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................... *passim*

Defendants' motion for certification is meritless for numerous reasons, the first of which is already familiar to the Court: no matter how many times Defendants falsely claim otherwise, Dominion is not a "public official," whether for defamation law purposes or any other. Dominion is a for-profit company that provides local election officials with tools they can use to run elections. Compl. ¶ 157. Dominion does not administer elections; election officials do so by using technology and devices purchased from Dominion. *See id.* The fundamental initial premise of both proposed certified questions—that this case involves "a defamation complaint by 'a public official,'" Motion, ECF No. 58-1, at 1–2—is thus simply false. At minimum, the inevitable factual dispute about Dominion's status as a "public official" embedded in Defendants' proposed certified questions means that Defendants cannot possibly present controlling questions of law even remotely appropriate for interlocutory review. This alone is reason enough to summarily deny the Motion.

Yet even if the Court of Appeals could find as a matter of law that Dominion is a "public official"—a finding that would be unprecedented in the caselaw and contrary to fact—the Motion is still meritless for many other reasons. The first proposed certified question, for instance, asks the Court of Appeals not to **apply** the *New York Times v. Sullivan*, 376 U.S. 254 (1964), standard, but to **rewrite** it by holding that only "direct evidence" of actual malice can suffice in a defamation case brought by a "public official"—all while ignoring the ample direct evidence pleaded by Dominion. And the second certified question asks the Court of Appeals to take the unprecedented step of granting interlocutory appeal concerning this Court's discretionary decision regarding judicial notice, and then to draw inferences and resolve factual disputes in Defendants' favor based on materials that don't even support Defendants' false claims. *See* Dominion's Opp. to Defs' MTD, ECF No. 47, at 9–12. For good reason, no court has ever adopted either of the rules proposed

by Defendants. There is thus no "substantial ground for difference of opinion" as to Defendants' two arguments—either one of which, if accepted, would work an enormous and debilitating change to federal First Amendment jurisprudence.

Moreover, even if Defendants were doing more than attempting to recharacterize their fact-bound disagreements with this Court's Order as legal questions, and even in the unlikely event the Court of Appeals were to adopt either of Defendants' unprecedented rules, any such decision by the Court of Appeals would not come close to "materially advanc[ing] the ultimate termination of the litigation." The Court of Appeals would still have to send the case back to this Court to analyze the detailed Complaint under its newly-announced rules. And while the Complaint as pleaded already meets even Defendants' proposed novel rules, in fairness Dominion would need to be afforded the opportunity to amend to accommodate those rules. The most efficient way to "materially advance the termination" of this litigation is for this case to proceed expeditiously through discovery so that Defendants' arguments that they did not act with actual malice, however wrongheaded, can be evaluated on a fully developed evidentiary record.

For these and other reasons described below, Defendants fall far short of demonstrating the rare and exceptional circumstances necessary to justify appellate review under § 1292(b), and the Court should deny Defendants' motion for certification.[1] Motion, ECF No. 58-1.

---

[1] Defendants have also filed frivolous notices of appeal related to the same Order and Mem. Op., ECF Nos. 53–54, but "a notice of appeal from an unappealable order does not divest the district court of jurisdiction." *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 315 F. Supp. 2d 63, 66 (D.D.C. 2004); *see also* MyPillow Notice of Appeal, ECF No. 64; Lindell Notice of Appeal, ECF No. 66. This Court still has authority to—and should—deny the motion for certification and proceed with the case. *See Hammon v. Barry*, 752 F.Supp. 1087, 1092 (D.D.C. 1990) ("Instead of allowing the Hammon plaintiffs to willy-nilly deprive this Court of jurisdiction, thus bringing these proceedings to a standstill while a nonappealable ruling wends its way through the appellate process, the Court will disregard the notice of appeal from a non-appealable order and proceed with the case.").

I.     **Legal standard.**

A court may certify an order for interlocutory appeal "only if it first determines that the moving party has met its burden to show that a nonfinal order '[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Citizens for Resp. & Ethics in Washington v. Am. Action Network*, 415 F. Supp. 3d 143, 144–45 (D.D.C. 2019) (quoting 28 U.S.C. § 1292(b)). Failure to meet any one of § 1292(b)'s criteria requires denial of certification. *Educ. Assistance Found. for Descendants of Hungarian Immigrants in Performing Arts, Inc. v. United States*, 2014 WL 12780253, at *3 (D.D.C. Nov. 21, 2014) (citing *Ahrenholz v. Bd. of Trs. Of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) ("Unless *all* these criteria are satisfied, the district court may not and should not certify its order to us for an immediate appeal under section 1292(b)." (emphasis in original))).

In addition to confirming that the moving party has satisfied all three prongs of the § 1292(b) elements, the district court "must also conclude that certification is appropriate as a discretionary matter." *Azima v. RAK Inv. Auth.*, 325 F. Supp. 3d 30, 35 (D.D.C. 2018). The use of § 1292(b) interlocutory appeals and other such piecemeal appeals "undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). Accordingly, parties seeking certification pursuant to § 1292(b) bear a "heavy burden to show that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Citizens*, 415 F. Supp. 3d at 145 (internal quotation marks omitted). Such a "demanding standard" means that § 1292(b) interlocutory appeals "are rarely allowed." *Citizens*, 415 F. Supp. 3d at 144–45; *see also Azima*, 325 F. Supp.

3

3d at 35 ("It is thus well established that section 1292(b) should be applied in relatively few situations.").

Because Defendants have failed to show the extraordinary circumstances required to warrant § 1292(b) certification, the Court should deny the Motion.

**II.     The challenged order does not involve controlling questions of law.**

**A.  Defendants cannot identify any pure questions of law.**

The Court should deny certification because Defendants fail to meet § 1292(b)'s requirement that the interlocutory appeal must involve pure questions of law. *Arias v. DynCorp*, 856 F. Supp. 2d 46, 53–54 (D.D.C. 2012) ("A question of law is an abstract legal issue or what might be called one of pure law, matters the court of appeals can decide quickly and cleanly without having to study the record.").

Defendants' attempted appeal centers on this Court's actual malice analysis. *See, e.g.,* Motion, ECF No. 58-1, at 1 ("This case raises the fundamental question of the First Amendment's 'actual malice' boundaries . . . ."); *id.* at 2 ("Dominion's complaint did not satisfy the most stringent actual malice requirement. . . ."). But the actual malice analysis is inherently fact-bound.

In determining that Dominion's allegations support a plausible inference of actual malice, this Court reviewed 178 paragraphs of factual allegations and 240 footnotes containing supporting citations and exhibits. *See* Mem. Op. at 24–27 (citing repeatedly to factual allegations in Lindell Compl.). In *Mamani v. Berzain*, 825 F.3d 1304, 1313 (11th Cir. 2016), the Eleventh Circuit determined that § 1292(b) certification was improper because to "decide the Rule 12(b)(6) issue would require us not only to scrutinize the scores of factual allegations that support all the plaintiffs' claims, but also to assess the clusters of allegations that support each of the plaintiffs' individual claims to relief against the two defendants." Just as in *Mamani v. Berzain*, deciding the

Rule 12(b)(6) issues Defendants raise would require the D.C. Circuit to "say much about these particular plaintiffs' allegations and little about" the actual malice standard. *Id.* "Where the crux of an issue decided by the Court is fact-dependent, the Court has not decided a controlling question of law justifying immediate appeal." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003). Certification is thus improper because it "could only result in the court of appeals improperly wading into the factual pond of an ongoing matter." *Id.*

The Supreme Court has repeatedly confirmed that the actual malice inquiry is "too fact-bound to be resolved on the basis of any single factor or mechanical test." *Tavoulareas v. Piro*, 817 F.2d 762, 788 (D.C. Cir. 1987) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)). Because the "meaning of terms such as 'actual malice'" cannot be "readily captured in 'one infallible definition,'" the Supreme Court instructs that "only through the course of case-by-case adjudication can we give content to these otherwise elusive constitutional standards." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 686 (1989). "[D]eveloping the contours of the actual malice rule" also requires "an independent examination of the whole record." *Tavoulareas*, 817 F.2d at 788. No such "whole record" exists at the 12(b)(6) stage.

Defendants' briefs confirm the unprecedented nature of their request for interlocutory review. Defendants identified only two prior cases[2] in this Circuit that granted § 1292(b) certification on the actual malice issue, and both involved motions for summary judgment, thus enabling the appellate court to review the "whole record" not yet created at the 12(b)(6) stage. Defendants cannot point to any cases that granted § 1292(b) certification on the actual malice issue

---

[2] MyPillow includes three case citations at page 3 of its Motion, but two of the citations refer to the same case. *Washington Post Co. v. Keogh*, 365 F.2d 965 (D.C. Cir. 1966), resolves the appeal of a summary judgment decision that was certified by the district court below in *Keogh v. Pearson*, 244 F. Supp. 482 (D.D.C 1965). *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 110 (D.C. Cir. 2017) also involves the appeal of a summary judgment decision.

at the 12(b)(6) stage because the "purpose of section 1292(b) is not to offer advisory opinions rendered on hypotheses which evaporate in the light of full factual development." *S.B.L. By & Through T.B. v. Evans*, 80 F.3d 307, 311 (8th Cir. 1996). "[B]ecause there are a 'number of unresolved factual issues bearing on the framing and formulation of the legal questions . . . to answer the legal questions presented would require an exposition sufficiently broad to cover the various factual ramifications that may occur'" and the D.C. Circuit would likely "decline to provide such a sweeping statement." *Id.* (quoting *Int'l Soc. for Krishna Consciousness, Inc. v. Air Canada*, 727 F.2d 253, 256 (2d Cir. 1984)); *see also Air Canada*, 727 F.2d at 256 ("It would be the height of judicial folly, we think, to attempt on an indeterminate factual record to make an abstract exposition that would adequately cover the various contexts and reach the proper overall results.").

Because actual malice is a fact-bound inquiry into a defendant's state of mind and most evidence bearing on actual malice is therefore in Defendants' exclusive possession, resolving the actual malice inquiry without the benefit of a full evidentiary record is particularly inappropriate. *See Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) ("The proof of "actual malice" calls a defendant's state of mind into question . . . and does not readily lend itself to summary disposition."). The Court should therefore reject Defendants' proposed appeal as premature and even speculative before Dominion has a chance to develop the "whole record" by proving up existing allegations and proffering as-yet undiscovered evidence. *See Evans*, 80 F.3d at 311(district court "improvidently granted" § 1292(b) certification because "the issues presented on appeal are too significant and far reaching to be decided without the full evidentiary record").

**B. Defendants' proposed questions are not controlling.**

The Court should also deny certification because Defendants' proposed certification questions are not "controlling" in this litigation. "Under section 1292(b), a controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F. Supp. 2d 16, 19 (D.D.C. 2002). Neither of Defendants' proposed questions will control the litigation outcome, and an appeal at this stage would just increase costs for all parties involved.

Defendants try to frame Question One as a controlling question by arguing that dismissal at the pleading stage is required if the complaint (a) "fails to allege any ***direct evidence*** of a statement or act that the defendant knew was false" and (b) "relies only on ***circumstantial inferences*** to attempt to prove reckless disregard." Motion, ECF No. 58-1, at 4 (emphasis added). Defendants' implied assertion—that no direct evidence was alleged—is plainly wrong as a factual matter. Plaintiffs alleged and the Court relied on multiple pieces of direct evidence of Lindell's knowledge of falsity or reckless disregard of the truth, including letters identifying specific independent evidence disproving Defendants' false claims, Compl. ¶¶ 63, 69; Lindell's promotion of obviously fake "evidence" such as the spreadsheet with fake MAC/IP addresses that Lindell falsely claimed was proof that "President Trump got around 79m votes to 68m for Biden," *id.* ¶¶ 75-76; and Lindell's retweets demonstrating he was subjectively aware of the circumstances giving rise to the so-called "deviations" in the vote counts were not due to fraud—*i.e.*, Lindell knew that later-counted mail-in ballots leaned heavily Democratic because Trump had repeatedly discouraged his supporters from voting by mail and many states were prohibited from counting mail-in ballots before Election Day, *id.* ¶¶ 28–32. Nor does the Court's decision to deny the motion

to dismiss ever rely on drawing superfluous distinctions between direct versus circumstantial evidence. Mem. Op., ECF No. 54, at 19 (recognizing "[s]ubjective doubt can be proven through "the cumulation of circumstantial evidence *and* direct evidence" (emphasis added)). On this record, reversal would not be required even if the Court of Appeals adopted Defendants' brand-new "no circumstantial evidence" rule; Question One does not present a controlling question of law.

Question Two is not a controlling question of law, either. Defendants presume that this Court's decision would have been different if the Court had taken judicial notice of Lindell's extra-pleading "material" described generically as "establishing a robust public debate." Motion, ECF No. 58-1, at 8. But Defendants do not bother to identify any unique facts that the Court actually ignored in its actual malice analysis, nor do they demonstrate how consideration of the extra-pleading "material" would result in a different conclusion. *See* Dominion's Opp. to Defs' MTD, ECF No. 47, at 10 ("[E]ven if the Court could accept the contents of matters outside the pleadings and draw inferences and resolve factual disputes in Defendants' favor at this stage (it cannot), the materials Defendants reference do not support their false claims.").

Defendants also fail to show how the proposed certification questions would result in a saving of resources at this stage in the litigation. In fact, resolution of the questions in Defendants' favor "could conceivably result in more arduous proceedings for all parties, as the Court and the parties struggle to find other ways of establishing" actual malice by recharacterizing Dominion's allegations as direct versus circumstantial evidence and by detailing the irrelevance of Defendants' extra-pleading material. *Judicial Watch*, 233 F. Supp. 2d at 29.

Because the proposed questions do not involve any controlling questions of law, the Court should deny § 1292(b) certification.

III.   **<u>There is no substantial ground for difference of opinion</u>**.

The Court should also deny Defendants' certification request because their proposed interpretations of law have no basis in legal precedent. Defendants cannot demonstrate ***any*** grounds for difference of opinion, much less the high threshold required to establish ***substantial*** grounds. *Judicial Watch*, 233 F. Supp. 2d at 19 ("The threshold for establishing the 'substantial ground for difference of opinion' with respect to a 'controlling question of law' required for certification pursuant to § 1292(b) is a high one.").

**A.  No legal precedent supports Defendants' interpretation of Question One.**

Question One—which manufactures a new heightened actual malice standard for defamation cases brought by "a government actor operating in the context of a large public debate"—has absolutely no basis in either fact or law. *See, e.g.,* Motion, ECF No. 58-1, at 1–2. As a factual matter, Defendants' continued claim that Dominion is a "public official" or "government actor" is just flat wrong. *See, e.g.,* Dominion's Opp. to Defs' MTD, ECF No. 47, at 5; Motion, ECF No. 58-1, at 1.

Defendants are also wrong on the law. Defendants ask this Court to recognize a never-before-seen distinction in the *New York Times v. Sullivan* line of cases that would impose a higher burden of proof on public-official plaintiffs such that direct evidence is necessary and circumstantial evidence alone is insufficient to plausibly allege actual malice. Defendants do not and cannot cite to a single case that adopts this distinction. In fact, many of Defendants' cited cases support the opposite conclusion.

For example, the Supreme Court has squarely considered and rejected the notion that only direct evidence may be used to prove actual malice, acknowledging that circumstantial evidence may be used because "plaintiffs will rarely be successful in proving awareness of falsehood from

the mouth of the defendant himself." *Herbert v. Lando*, 441 U.S. 153, 165 (1979) ("Courts have traditionally admitted any direct or indirect evidence relevant to the state of mind of the defendant" in part because "plaintiffs will rarely be successful in proving awareness of falsehood from the mouth of the defendant himself") (cited Mot. at 8). Were it otherwise, Defendants could defame with impunity as long as they continued to double-down on their lies in the face of irrefutable evidence disproving them. Similarly, in *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987) (cited Mot. at 7), the D.C. Circuit recognized that circumstantial and direct evidence should be treated alike when analyzing the sufficiency of proof of actual malice:

> The rejection of an objective standard of care, however, does not mean that libel defendants can defame with impunity merely by testifying that they published the challenged statements with the belief that they were true. . . . To the contrary, a plaintiff may prove the defendant's subjective state of mind through the cumulation of circumstantial evidence, as well as through direct evidence.

*Tavoulareas*, 817 F.2d at 789; *see also Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) ("The plaintiff can prove the defendant's subjective state of mind through the cumulation of circumstantial evidence, as well as through direct evidence.") (cited Mot. at 7).

The Supreme Court and the D.C. Circuit both recognize that favoring direct evidence over circumstantial evidence would be unprecedented across all forms of litigation, even in criminal cases requiring the highest burden of proof beyond a reasonable doubt. "The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009) (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)); *see also Desert Palace*, 539 U.S. at 100 ("It is not surprising, therefore, that neither petitioner nor its amici curiae can point to any other circumstance in which we have restricted a litigant to the presentation of direct evidence absent some affirmative directive in a statute.").

Although Defendants' Motion purports to rely on eleven Supreme Court and D.C. Circuit cases to support its fictitious direct-versus-circumstantial-evidence distinction for actual malice purposes, three cases explicitly reject such a distinction,[3] two cases do not even involve an actual malice inquiry,[4] and the remaining cases fail to identify any such distinction. *See* Motion, ECF No. 58-1, at 4–8. Indeed, Lindell's prior briefing even acknowledges the adequacy of circumstantial evidence in at least three scenarios originally articulated in *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Lindell's MTD Reply Br., ECF No. 48, at 10 ("In only three scenarios may circumstantial evidence of subjective intent be so powerful that it could establish actual malice." (citing *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F. Supp. 2d 20, 50 (D.D.C. 2005))). And the D.C. Circuit has further clarified that the three scenarios set forth in *St. Amant* are just "examples provided there of when a jury may reasonably infer actual malice from circumstantial evidence" and "by no means exhaustive." *Tavoulareas*, 817 F.2d at 790.

"In short, because [Defendants'] certification motion provides no evidence of a circuit split, conflicting decisions among the judges in this district amidst a dearth of case law from the D.C. Circuit, or anything other than an attempt to revisit the previous, unsuccessful arguments that [Defendants have] made with respect to the issues that [Defendants have] identified regarding this Court's [motion to dismiss] ruling, there exists no substantial ground for a difference of opinion, and this Court cannot certify [Defendants'] motion under section 1292(b) of Title 28 of the United States Code." *Azima*, 325 F. Supp. 3d at 38. The Court should deny the Motion.

---

[3] Motion at 7–8 (citing *Herbert v. Lando*, 441 U.S. 153 (1979); *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576 (D.C. Cir. 2016); *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987)).
[4] Motion at 7 (citing *Dameron v. Washington Mag., Inc.*, 779 F.2d 736 (D.C. Cir. 1985); *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980)).

**B. Defendants' interpretation of Question Two is also unsupported by any precedent.**

Question Two merely rehashes Defendants' already-rejected contention that the Court should accept the truth of statements in documents outside the pleadings. *See* MyPillow MTD, ECF No. 30, at 2–3; Lindell MTD, ECF No. 34, at 16–28. "Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a substantial ground for difference of opinion." *Baylor v. Mitchell Rubenstein & Associates, P.C.*, 2014 WL 12644263, at *2 (D.D.C. July 30, 2014). No ground for any difference of opinion exists here, especially since Defendants' proposed interpretation (once again) contradicts well-established precedent.

Defendants fail to cite (and Dominion has not found) a single case reversing a court's 12(b)(6) motion denial because the court failed to take judicial notice of extra-pleading materials for the truth of the matter asserted. As Defendants admit, the Court would only be permitted to "'take judicial notice of statements made on the internet' for the limited purpose 'not for their truth, but merely to show that those statements were made.'" Motion, ECF No. 58-1, at 9 (quoting *Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018)). Nevertheless, Defendants urge the Court to impermissibly breach that limited purpose by relying on extra-pleading materials to "show that Lindell's statements are not inherently improbable." *Id.* at 8. This Court properly declined to do so, because weighing extra-pleading evidence at the motion to dismiss stage is improper. *Hurd v. D.C., Gov't*, 864 F.3d 671, 687 (D.C. Cir. 2017) ("[T]he District sought to have documents supportive of its view of potentially disputed issues of fact considered as if they were part of the plaintiff's own allegations. But a movant may not, consistent with the Federal Rules of Civil Procedure, support a 12(b)(6) motion by pointing to the content of evidence in other cases to rebut facts adequately stated in an opposing party's pleading.").

Indeed, the D.C. Circuit courts have consistently held that it is improper for a district court to rely on documents outside the complaint "to rebut facts adequately stated in the opposing party's pleading." *Hurd*, 864 F.3d at 687 (vacating district court's 12(b)(6) decision because "the district court erred in dismissing that claim based on material beyond the complaint"); *see also Menoken v. Dhillon*, 975 F.3d 1, 8 (D.C. Cir. 2020) (concluding "the district court erred by relying on two documents outside the complaint"); *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 71–72 (D.D.C. 2016) (declining to take judicial notice of extra-pleading documents because "Defendants provide[d] the documents in order to present new factual allegations to counter the factual allegations underlying Plaintiffs' claim," which is improper at the motion to dismiss stage); *Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 285 (D.D.C. 2017) (rejecting defendants' attempt to rebut the complaint's allegations of fact and denying defendants' motion to dismiss defamation claim).

Defendants fail to raise any "substantial difference of opinion" because their cited cases[5] are all consistent with this Court's decision to reject Defendants' invitation to accept the truth of statements in documents outside the pleadings. Defendants in effect ask this Court to adopt a rule that the Court must consider extra-pleading materials—which in this case don't even support Defendants' false claims—***and*** draw inferences and resolve factual disputes in Defendants' favor based on those materials. *See* Dominion's Opp. to Defs' MTD, ECF No. 47, at 9–12. This

---

[5] Two of three cases Defendants cited stand for the accepted proposition that a court may take judicial notice of extra-pleading documents "not for their truth, but merely to show that those statements were made." *See* Motion at 8–10 (citing *Fairbanks v. Roller*, 314 F. Supp. 3d 85 (D.D.C. 2018) (court can take judicial notice of extra-pleading documents "not for their truth, but merely to show that those statements were made"); *Farah v. Esquire Mag., Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012) (same)). The third case fails to address the question of the extent to which courts may properly rely on extra-pleading documents in the typical 12(b)(6) context. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007) (applying the PSLRA's heightened pleading instructions).

obviously is not and cannot be the law and, unsurprisingly, no Court has ever adopted such a rule. The Court should deny Defendants' motion.

**IV.   <u>An interlocutory appeal would not materially advance the ultimate termination of the litigation.</u>**

Because "[a]ny immediate appeal under an interlocutory order ***could*** affect the future conduct of the litigation and avoid unnecessary litigation," courts in the D.C. Circuit have determined that "[t]he key factors are whether an appeal would ***likely*** and ***materially*** advance the ultimate determination." *Educ. Assistance Found.*, 2014 WL 12780253, at *3 (D.D.C. Nov. 21, 2014) (emphasis in original). The Court should deny Defendants' request for certification because an appeal at this early stage is unlikely to materially advance the ultimate termination of the litigation.

*First*, as explained in section III, the D.C. Circuit would affirm this Court's actual malice analysis because Defendants' proposed interpretations of law run counter to well-established Supreme Court and D.C. Circuit precedent. *Judicial Watch*, 233 F. Supp. 2d at 28 (citing another court's denial of § 1292(b) certification because "[w]hile certainly the ultimate termination of this litigation would be advanced if the Court of Appeals heard and sustained defendant's defense at this time, the court is not of the opinion that this is a likely course of events" and "[t]herefore, the court will not invoke its discretionary authority to certify the issues" (quoting *U.S. ex rel. Hollander v. Clay*, 420 F. Supp. 853, 859 (D.D.C. 1976))).

*Second*, as explained in section II, the actual malice inquiry is highly fact dependent. Further discovery is required to develop the "whole record" and appellate review is inappropriate at the 12(b)(6) stage. *See Tavoulareas* 817 F.2d at 788 ("developing the contours of the actual malice rule" requires "an independent examination of the whole record").

14

And even if the D.C. Circuit were to answer both proposed questions in Defendants' favor (it should not), the appeal would not finally resolve the litigation at this premature motion-to-dismiss stage. A remand to this Court for further proceedings would be required for the Court to re-evaluate the allegations already considered. *See Judicial Watch*, 233 F. Supp. 2d. at 28–29 ("In fact, a ruling favorable to the defendants on this issue could conceivably result in more arduous proceedings for all parties, as the Court and the parties struggle to find other ways of establishing whether or not the predicate facts for the application of FACA exist, and moving this litigation forward."). And, again, Dominion would in fairness be entitled to amend its Complaint to address the brand-new rules Defendants are advocating and the ample additional evidence of actual malice that has been adduced since the filing of the Complaint.[6]

*Finally*, Defendants bear the burden to show why an immediate appeal would materially advance the termination of this litigation. They barely attempt to do so. In two short paragraphs

---

[6] By way of example only, *The Washington Times* recently reported that "[t]he cyber expert on the 'red team' hired by MyPillow CEO Mike Lindell now says the key data underpinning the theory that China hacked the 2020 election unveiled at the Cyber Symposium is illegitimate." *See* Joseph Clark, *Exclusive: Cyber expert says his team can't prove Mike Lindell's claims that China hacked election*, The Washington Times (Aug. 11, 2021), available at, https://www.washingtontimes.com/news/2021/aug/11/mike-lindells-lead-cyber-expert-says-they-cant-pro/. Despite the fact that his own cyber expert has rebutted his false claims, MyPillow's CEO has continued to double down on his demonstrably false accusations on a near-daily basis, and has even publicly contradicted representations that Defendants' attorneys made to this Court, validating Dominion's allegations that MyPillow's CEO intentionally or recklessly disregarded the truth about Dominion because he believed that it would be good for MyPillow's bottom line. MyPillow is apparently leveraging the name "Dominion" as a promotion code that shoppers can use to get a discount on MyPillow products, while its CEO, Lindell, continues to push falsehoods about Dominion on his Frank Speech website and confirmed that MyPillow's defamatory marketing campaign against Dominion has been so successful that MyPillow has had to hire 200 new employees. *See* Zachary Petrizzo, *Mike Lindell contradicts his lawyers with 'Dominion' promo code – says he's 'No. 1' on government kill list*, Raw Story (Sept. 18, 2021), available at, https://www.rawstory.com/lindell-list/; Zachary Petrizzo, *Mike Lindell claims spreading lies about Dominion Voting Systems is good for business*, Salon (Sept. 7, 2021), available at, https://www.salon.com/2021/09/07/spreading-lies-about-dominion-voting-systems-is-big-business-for-mike-lindell-and-his-mypillow-firm/.

spanning less than half a page, Motion, ECF No. 58-1, at 10–11, Defendants hearken back to two earlier-cited summary judgment decisions that in fact emphasize the point that an interlocutory appeal at this 12(b)(6) stage is premature. *See supra* n.2 & Section II.A (discussing two cases MyPillow first cited in Motion, ECF No. 58-1, at 3). Defendants then make only conclusory statements that "this litigation will be terminated," "many parties, then, would benefit," and "many efficiencies obtained." Motion, ECF No. 58-1, at 10–11. But because the actual malice analysis is a factual inquiry, an interlocutory appeal would not create efficiencies with respect to the lawsuits Dominion has filed against other Defendants. This Court (and the Delaware Superior Court) would still be required to engage in a fact-dependent actual malice analysis for each individual defendant named in those lawsuits.

## V.    **Defendants cannot establish exceptional circumstances justifying immediate appeal.**

Through § 1292(b), "Congress chose to confer on District Courts first line discretion" and "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Judicial Watch*, 233 F. Supp. 2d at 19. For the reasons discussed in *supra* Sections II– IV, this Court should exercise its discretion to deny certification because an interlocutory appeal at this premature 12(b)(6) stage is neither pivotal nor debatable. Defendants have "fallen far short of demonstrating that" their proposed certification questions "arise under such exceptional circumstances as to warrant disruption of the favored process of appellate review following final judgment." *Id.* at 20.

Defendants' only attempt to show that "exceptional circumstances" exist appears to be their conclusory allegation that this Court's ruling is representative of many unidentified defamation "lawsuits threatening th[e] significant immunity" set forth in *New York Times v. Sullivan*. Motion, ECF No. 58-1, at 2. But the significance of the issues at stake actually militates against a premature appeal at the 12(b)(6) stage before the parties have the opportunity to develop a "whole record"

for appellate review. *See Tavoulareas*, 817 F.2d at 788 ("developing the contours of the actual malice rule" requires "an independent examination of the whole record."); *cf. Evans*, 80 F.3d at 311 ("the issues presented on appeal are too significant and far reaching to be decided without the full evidentiary record"); *Air Canada*, 727 F.2d at 257 ("Were this an appeal from a final decision, the record and judgment from the trial court inevitably would have narrowed the legal questions presented and provided us with more complete factual findings. In full appreciation of the importance and implications of each case which presents a state action question, we must insist on a more solid factual footing, so as not to 'slip' in this critical area."). Additional fact development would be particularly prudent given the fact-based nature of Defendants' proposed certification questions. *See supra* section II.

This Court should reject Defendants' thinly-veiled attempt to repackage their "[m]ere disagreement" with the Court's thorough and well-reasoned motion to dismiss Order, *Baylor*, 2014 WL 12644263, at *2, into one of the exceptionally rare instances in which interlocutory review may be warranted. The Court should exercise its discretion to deny certification.

## VI.    <u>Conclusion.</u>

For the foregoing reasons, this Court should deny Defendants' Motion for Modification of Memorandum Opinion and Order Dated August 11, 2021, to Include Certification of Controlling Questions of Law. ECF No. 58-1.

Dated: September 21, 2021

Of Counsel:

Justin A. Nelson (D.C. Bar No. 490347)
Laranda Walker (D.C. Bar No. TX0028)
Florence T. Chen (D.C. Bar No. TX0025)
Brittany Fowler (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com
lwalker@susmangodfrey.com
fchen@susmangodfrey.com
bfowler@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar No. NY0443)
Elisha Barron (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1301 6th Avenue
New York, NY 10019
(212) 336-8330
sshackelford@susmangodfrey.com
ebarron@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com

Stephen E. Morrissey (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
(206) 516-3880
smorrissey@susmangodfrey.com

Respectfully submitted,

*/s/ Laranda Walker*
Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Megan L. Meier (D.C. Bar No. 985553)
Dustin A. Pusch (D.C. Bar No. 1015069)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com
megan@clarelocke.com
dustin@clarelocke.com

Rodney Smolla (Bar No. 6327)
4601 Concord Pike
Wilmington, DE 19803
rodsmolla@gmail.com
(864) 373-3882

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of May, 2021, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand will serve counsel for the parties.

<u>/s/ Laranda Walker</u>      
Laranda Walker