```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA


US DOMINION, INC., et al,
                                    CV Action
          Plaintiff,                No. 1:21-445

     vs.                            Washington, DC
                                    October 25, 2021
MY PILLOW, INC., et al,
                                    11:08 a.m.
          Defendant.
_____/


          TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
          BEFORE THE HONORABLE CARL J. NICHOLS
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:        STEPHEN SHACKELFORD, JR.
                            SUSMAN GODFREY L.L.P.
                            1301 Ave of the Americas, 32nd Fl
                            New York, NY 10019
                            212-729-2012

                          LARANDA WALKER
                          FLORENCE CHEN
                          MARY KATHRYN SAMMONS
                            SUSMAN GODFREY, L.L.P.
                            1000 Louisiana, Suite 5100
                            Houston, TX 77002-5096
                            713-651-9366

For Sidney Powell:        HOWARD KLEINHENDLER
                            369 Lexington Avenue, 12th Floor
                            New York, NY 10017
                            917-793-1188


For DTR:                  LAWRENCE J. JOSEPH
                            LAW OFFICE OF LAWRENCE J. JOSEPH
                            1250 Connecticut Avenue, NW
                            Suite 700-1A
                            Washington, DC 20036
                            (202)355-9452
```

APPEARANCES (CONT'D.):

For Rudy Giuliani:        JOSEPH D. SIBLEY, IV
                           CAMARA & SIBLEY LLP
                           1108 Lavaca St
                           Suite 110263
                           Austin, TX 78701
                           713-966-6789

For Mike Lindell:         DOUGLAS A. DANIELS
                          HEATH NOVOSAD
                           DANIELS & TREDENNICK PLLC
                           6363 Woodway Drive, Suite 700
                           Houston, TX 77057
                           713-917-0024

For My Pillow:            ANDREW D. PARKER
                          JOSEPH PULL
                          RYAN MALONE
                          JESSE KIBORT
                           PARKER DANIELS KIBORT LLC
                           123 North 3rd Street, Suite 888
                           Minneapolis, MN 55401
                           612-355-4100

                          NATHAN LEWIN
                           LEWIN & LEWIN, LLP
                           888 17th Street, NW, 4th Floor
                           Washington, DC 20006
                           202-828-1000

Reported By:              LORRAINE T. HERMAN, RPR, CRC
                          Official Court Reporter
                          U.S. District & Bankruptcy Courts
                          333 Constitution Avenue, NW
                          Room 6720
                          Washington, DC 20001
                          202-354-3196

1              **P R O C E E D I N G S**

2              COURTROOM DEPUTY:  This is civil case 21-445, US

3    Dominion, Incorporated, et al versus My Pillow, et al.

4    This matter is set for a status conference.  Would the

5    parties please introduce yourselves for the record, starting

6    with the plaintiff.

7              MR. SHACKELFORD:  Good morning, Your Honor.  This

8    is Stephen Shackelford of Susman Godfrey, for the Dominion

9    plaintiffs.  I am joined by my colleagues Laranda Walker,

10   Katie Hammonds and Florence Chen.

11             THE COURT:  Good morning, counsel.

12             MR. PARKER:  Your Honor, this is Andrew Parker for

13   the defendant My Pillow.  With me this morning are counsel

14   Nathan Lewin, and from my office Joe Pull, Ryan Malone and

15   Jesse Kibort.

16             THE COURT:  Good morning, counsel.

17             I assume we have counsel for defendants in the

18   other but related matters this morning.  Correct?

19             MR. DANIELS:  We have a few of them, Your Honor.

20   This is Doug Daniels, defense counsel for Mike Lindell.

21   With me is my colleague Heath Novosad.  I believe we have

22   defense counsel for Ms. Powell and Mr. Giuliani as well.

23             MR. KLEINHENDLER:  Yes.  Good morning, Your Honor.

24   This is Howard Kleinhendler, counsel for Sidney Powell and

25   Sidney Powell, PC.  And Ms. Powell is also on the line.

1          THE COURT:  Good morning, Mr. Kleinhendler.

2          MR. JOSEPH:  Your Honor, this is Lawrence Joseph,

3     for Defending the Republic, the third defendant in that

4     matter.  I also represent Ms. Powell and the PC, but

5     Mr. Kleinhendler will be handling that part of the thing.  I

6     am here only for DTR.

7          THE COURT:  Thank you, Mr. Joseph.

8          MR. SIBLEY:  Your Honor, this is Joe Sibley on

9     behalf of Rudolph Giuliani.

10          THE COURT:  Thank you.

11          Why don't we start with you, Mr. Shackelford.

12     HuayoukI guess I should have asked this question first:  Are

13     there any other defendants in other cases represented on

14     this call?

15          [No response]

16          Okay.  So, Mr. Shackelford, why don't we start

17     with you?  I've read your joint meet and confer report in

18     the Giuliani matter.  I obviously have a pretty good

19     understanding of the status of all of the related matters.

20     Let me just provide you a few thoughts, but I am happy to

21     talk about anything that you'd like.

22          It seems to me that it makes sense from both a

23     party efficiency and judicial economy perspective to have as

24     much coordinated discovery across these cases as is

25     possible.  It also seems to me that you are correct that it

1    may not yet make sense to enter a full schedule for such

2    discovery because, essentially, there are a number of cases.

3    And those cases are each, frankly, in different procedural

4    postures; and, therefore, it very likely makes sense to

5    have, essentially, an omnibus discussion, an omnibus

6    scheduling order, that would apply at least in part across

7    all of the cases.  At least as to those discovery or other

8    issues that are common.

9         To act otherwise, in other words, to take up each

10   case on its own, to enter a separate scheduling order for

11   each case and to have to basically have, I guess,

12   depositions that aren't used in each case.  That wouldn't

13   make sense.  So I agree with those suggestions.  But if

14   there are other topics you'd like to raise, please do.

15        I guess the question then is, What, if anything,

16   should I be doing today other than saying that, as to the

17   Giuliani matter, I will not yet enter a scheduling order?

18        MR. SHACKELFORD:  Your Honor, this is Stephen

19   Shackelford.  I am going to address the broad issue first,

20   and then I'd like to, with your permission, turn it over to

21   my partner, Laranda Walker, to address the Lindell/My Pillow

22   specific issue that we would like to discuss with Your Honor

23   today.

24        THE COURT:  Yes.

25        MR. SHACKELFORD:  On the broader issue, I believe

1  you are referring to all of the cases, including OAN and

2  Patrick Byrne.  They are not on this call, obviously.  As

3  you say, they are in different procedural postures, because

4  they are going to be filing motions to dismiss, I assume, in

5  the middle of November, with the extensions that they have

6  gotten that we consented to.

7          So we completely agree.  We believe all of these

8  cases ultimately should be consolidated for discovery

9  purposes.  They have a number of overlapping witnesses in

10  issues.  The witnesses in particular, many of these

11  individual defendants appeared on their way in.  Mr. Byrne

12  is connected to almost all of the different individual

13  defendants in one way or another.  So we agree it should all

14  be ultimately consolidated for discovery purposes.

15          That said, we do not think that discovery should

16  be held up in the cases where Your Honor has already denied

17  the motion to dismiss, including the My Pillow and Lindell

18  cases.  We think discovery should proceed, and we can

19  negotiate a discovery order on those cases that we could

20  potentially, if we need to, reopen up if and when we get to

21  the point where we are entering into discovery with OAN and

22  Mr. Byrne.

23          The main purpose for us requesting the status

24  conference here today was to address the specifics on the

25  Lindell/My Pillow matters, which I would like to turn over

1      to my partner, Ms. Walker.

2                  THE COURT:  Yes, I am familiar with those, but I

3      would be happy to hear from Ms. Walker on those.

4                   MS. WALKER:  Thank you, Your Honor.  Laranda

5      Walker speaking.

6                  Our position with respect to the My Pillow and

7      Lindell actions is that the Court should order those

8      defendants to answer Dominion's complaint and to participate

9      in the meet and confer process with the other related cases,

10     specifically the Giuliani and Powell case.

11                 Those defendants argue that they are not required

12     to answer right now because they have noticed an appeal; and

13     that jurisdiction is no longer with this Court.  But that is

14     not the case, Your Honor, for at least two reasons.

15                 First, although it's true as a general rule that

16     filing a timely notice of appeal transfers jurisdiction from

17     the District Court to the Court of Appeals; that's not

18     always the case.  And Courts have long recognized exceptions

19     in cases like this where an appeal is noticed from a

20     non-appealable order.  And that is precisely what we have

21     here, Your Honor.  With the Court's denial of defendants'

22     motions to dismiss, that's an interlocutory, non-appealable

23     order.

24                 In this type of situation, where a party seeks to

25     improperly notice an appeal, then the District Court is well

1    within its right to disregard the notice of appeal and

2    proceed with the case, rather than allowing a party to bring

3    the entire case to a standstill while that non-appealable

4    rule makes its way through the appellate process.

5          Then the second reason, Your Honor, is that the

6    defendants have indicated in their notices of appeal, that

7    their appeals are based on the Collateral Order Doctrine.

8    The Supreme Court has instructed that if an appeal is truly

9    collateral, then the underlying proceedings should not be

10   delayed, and should instead continue while the appeal is

11   pending.

12         Now, Your Honor, to be clear, Dominion does not

13   believe that the Collateral Order Doctrine is applicable

14   here.  We don't think defendants have any basis for

15   appealing Your Honor's order denying their motions to

16   dismiss.  But to the extent that they are relying on the

17   Collateral Order Doctrine, then that certainly does not

18   require bringing these entire proceedings to a halt.

19         There are a number of cases, Your Honor, that

20   recognize a district court's authority to proceed pending

21   collateral or appeal.  So that's what we are asking the

22   Court to do today, is set the record straight and order

23   defendants to answer Dominion's complaint and order them to

24   participate in the meet and confer process so that these

25   cases can move forward with discovery.

1          THE COURT:  Ms. Walker, is it Dominion's view, in

2   light of what you just said, that I do or do not have

3   jurisdiction or authority to decide the pending motion for

4   interlocutory appeal?

5          MS. WALKER:  Absolutely.  The Court does have

6   jurisdiction to decide that.  As Dominion noted in its

7   opposition to defendant's motion for certification, filing a

8   frivolous appeal from a non-appealable order, does not strip

9   this Court of jurisdiction.  The Court should deny that

10  motion for certification or require defendants to promptly

11  file an answer and allow the case to move forward.

12          THE COURT:  I understand your point that a notice

13  of appeal doesn't deprive the Court -- that is frivolous in

14  your view -- doesn't deprive the Court of jurisdiction

15  generally or doesn't stay the case generally.  But it seems

16  to me that the order denying the motion to dismiss is what

17  has been appealed from.  It is in the Court of Appeals right

18  now, at least the order is in that sense.  The order is at

19  least technically in front of the Court of Appeals.

20          And in the motion for interlocutory appeal, My

21  Pillow wants me to modify that very order.  And that seems

22  different than saying I generally have jurisdiction to

23  proceed with the rest of the case.  What I am asking is

24  whether I actually have the authority to modify an order

25  where an appeal is pending in the D.C. Circuit, as to that

1    very order.

2              MS. WALKER:  We believe you do, Your Honor.  We

3    believe that there is still jurisdiction -- that Your Honor

4    still has jurisdiction over this matter and can and should

5    deny the motion for certification.  We don't believe -- we

6    believe that the appeal is improper and is baseless.  So

7    Your Honor does have jurisdiction not only to proceed in

8    general but certainly to deny the motion to certify that

9    they filed before they noticed the appeal.

10             THE COURT:  Yes, I understood that.  Thank you.

11   One last question.  Why should I order -- even if I agreed

12   with you on everything here, why should I order My Pillow

13   and Mr. Lindell to answer the complaint?  It seems to me

14   that they filed what they filed.  And if you want to seek

15   relief or maybe even to attempt to hold them in default for

16   having done that or whatever, you are free to do so.

17             I can order them to otherwise meet and confer,

18   begin the meet-and-confer process.  But they have made a

19   judgment that they don't want to file an answer.  They may

20   have done so at their peril, but why should I be ordering

21   them to file an answer rather than allowing them to make

22   that judgment in the first instance or if you were to move

23   for relief from their not having done so, I would take that

24   motion up.

25             MS. WALKER:  Let me make sure I understand your

1    question.  You are asking, Why should they be required to

2    answer -- - are you saying that Your Honor would allow them

3    -- would still require them to proceed in the

4    meet-and-confer process?

5              THE COURT:  Yes.  I mean, hypothetically, imagine

6    that my view is that this case needs to keep moving forward;

7    and that a component of that is meeting and conferring and

8    proposing a schedule for further proceedings; and I order

9    them to do that.  Why should I also order them to file an

10   answer, rather than allow you to make whatever argument you

11   want about their having failed to do so?

12             MS. WALKER:  I understand, Your Honor.  And we

13   would be fine with that.  We would -- as long as the meet

14   and confer proceeds and they don't get to proceed on their

15   claims against us, which are counterclaims until they

16   answer, then we would not oppose what Your Honor is

17   suggesting.

18             THE COURT:  Can we talk about that for a second?

19   So my understanding is that obviously there were separate

20   cases filed in Minnesota by My Pillow and Mr. Lindell.

21   Those cases are now in front of me.  Dominion has deadlines

22   to respond to those complaints.

23             Because I have not seen this before, are you

24   asking me to relieve you of your obligation to respond to

25   those complaints unless and until Mr. Lindell and My Pillow

1    answer your complaint?

2              MS. WALKER:  Our position with respect to those

3    claims is that they are compulsory counterclaims under Rule

4    13; and that they should have been brought in the

5    first-filed suit, which is the suit that Dominion brought

6    against defendants, rather than having been filed

7    prematurely in a different venue, really, as a tactic to

8    sort of leverage those as a reason for this case to be

9    transferred to Minnesota.

10             Those claims, which hinge on allegations about

11   Dominion's role in the 2020 election, were prompted by or

12   based on, are in retaliation against Dominion's claims in

13   this action.  And so because Rule 13(a)'s primary policy

14   objective is judicial efficiency, and these lawsuits are

15   intensive and will involve much of the same evidence, many

16   of the same witnesses, it would be inefficient to have them

17   proceed separately.

18             It is unfair to require Dominion to respond to

19   counterclaims that haven't been properly brought, that were

20   brought prematurely in a different venue, especially when

21   defendants are arguing that this Court doesn't have

22   jurisdiction over the dispute.

23             THE COURT:  Right.  And so are you asking me to

24   hold today that unless and until an answer by Mr. Lindell

25   and My Pillow is filed, that Dominion need not respond to

1    those claims in those other cases and your theory would have

2    been or should have been brought as counterclaims?

3    Implicitly what you are saying is if they had done things

4    correctly, from Dominion's perspective, those claims against

5    Dominion would not have been asserted until such time as an

6    answer and counterclaim were filed, an answer having not yet

7    been filed, they could not have filed counterclaims, and you

8    should therefore not have to respond at this time?

9            MS. WALKER:  That's exactly right, Your Honor.

10           THE COURT:  You want me to order that today?

11           MS. WALKER:  Yes.  Yes.  We want you to order them

12   to re-file those claims as counterclaims, which they can

13   choose to do or not, whenever they choose to file their

14   answer.

15           THE COURT:  Okay.  Thank you.  I certainly

16   understand your position.

17           Who's going to take the lead for Mr. Lindell and

18   My Pillow?  Is that you, Mr. Parker?

19           MR. PARKER:  Yes, Your Honor.

20           THE COURT:  Okay.  I'm happy to take any of these

21   topics up in whatever order you wish, but why don't we start

22   with the question that I have been thinking about which is

23   you have both filed a motion for interlocutory appeal from

24   my order, and you have noticed an appeal from that order.

25   Do I, in your view, have jurisdiction to decide the motion

1    for interlocutory appeal?

2            MR. PARKER:  Yes.  In our view you have limited

3    jurisdiction.  Because it is a motion simply to certify

4    questions to go up on appeal, you have the limited

5    jurisdiction to rule on that motion.  Otherwise,

6    jurisdiction is divested upon our appeal which, far from

7    frivolous, is an appropriate collateral doctrine appeal.

8    And we do not believe the case law supports the fact that on

9    a collateral order doctrine appeal that the matter in the

10   District Court proceeds.  You know, we dispute that.  The

11   case law we do not think supports that at all, and we can

12   provide that support.

13           THE COURT:  The implication of that is that even

14   though you have appealed from my order denying your motion

15   to dismiss, that the one thing, but only one thing I am

16   authorizedded to do, is to modify that order.

17           MR. PARKER:  Well, modify it for purposes of

18   certifying questions; that's the only request being made.

19           THE COURT:  Right.  But your view is that I have

20   power to do that, notwithstanding the notice of appeal, but

21   that there is otherwise no jurisdiction in this court now.

22           MR. PARKER:  Not at this time.  And the Circuit

23   Court of Appeals has docketed the appeal.  They have set a

24   schedule.  If Dominion wishes to bring a motion to put forth

25   in the formal manner, with argument on both sides,

1    presenting the issue of whether or not a citizen critic of

2    the government, on a First Amendment actual malice case like

3    this is, goes up on appeal immediately or not -- I mean,

4    that's a question that has different views in different

5    circuits.  Silent in the D.C. Circuit.

6          We believe we have a very strong argument, far

7    from being frivolous.  And in that scenario, the law is

8    clear that the matter at the District Court is on hold,

9    which practically speaking makes sense.

10         This Court can rule on the issue of certifying

11   question.  And as a number of cases have ruled that we

12   cited -- *Kahl*, *Keogh*, *Farah* -- the policy implications of

13   having these sorts of decisions decided on the front end of

14   cases, meets with the First Amendment protections.  And if

15   it weren't done that way, those protections would be

16   vitiated.

17         I think it's important that the Court, you know,

18   allow -- and I think you've identified this -- the matter to

19   roll forward in an orderly fashion, in handling those appeal

20   issues to resolution.  Whether they be determined not to be

21   appealable, whether you decide not to certify questions or

22   like Judge Jackson you decide to certify and see what the

23   Circuit Court of Appeals thinks on the issues of actual

24   malice that have been presented, you know?  Once those

25   things are resolved, we then move forward with the case.

1            We are not interested in delay of the case either.

2     We requested the status conference with you because we

3     wanted to make sure that we were proceeding consistent with

4     the Court's -- with our understanding of how the Court wants

5     us to proceed.  Once we filed our appeal, we believed that

6     an answer would have been inappropriate.

7            And as it related to the meet and confer, first we

8     didn't have an order in our case on meeting and conferring.

9     But setting that aside, is that's more formalistic, it again

10    didn't really make sense to us to proceed with those matters

11    while the motion was pending before you under 1292(b).

12         THE COURT:  How is the filing of the notice of

13    appeal and the motion for interlocutory appeal, how are

14    those consistent actions?

15         MR. PARKER:  Well, as we indicated in our notice

16    of appeal, if the 1292(b) motion sitting before you were

17    granted, and the Circuit Court of Appeals took up the

18    questions, we would dismiss our notice of appeal altogether.

19    And it was a protective measure on our part because we had

20    30 days to file an appeal.  We had a good appeal.  But

21    certifying these questions with you, we thought was

22    important as well.

23         THE COURT:  I don't think you're quite getting my

24    question, which is, If the order is appealable by its terms,

25    the notice of appeal is the right outcome or the right

1      course.  If it's not, then the motion for interlocutory

2      appeal is the right course.  Both can't be true.

3                  MR. PARKER:  Well, they are presented in the

4      alternative, Your Honor.

5                  THE COURT:  But the problem is there are

6      jurisdictional consequences to some of these things.  And it

7      seems beyond anomalous to me that you think I have

8      jurisdiction now to decide a motion relating to my motion to

9      dismiss order, where I have to actually amend that order to

10     satisfy the 1292(b) standard, when that very order is in

11     front of the Court of Appeals.  You say, I can do that, but

12     that the case otherwise is paused in its entirety.

13                  It seems to me to have it, if anything, completely

14     backwards.  Which is to say, once you appeal from my order,

15     I really should be unlikely to take up that order again and

16     modify it.  But that's not the same thing as whether I have

17     authority to otherwise have the case proceed.

18                  MR. DANIELS:  Your Honor, if I may.  This is Doug

19     Daniels on behalf of Mr. Lindell.

20                  I think it is important to note the sequence of

21     events here.  After the Court issued its order denying the

22     motion to dismiss, we filed the 1292(b) motion and did so

23     within the timeline to do that, to give the Court time to

24     consider that.

25                  At the same time that we were doing that and

1    awaiting to see if the Court was going to rule on that in

2    the time frame allotted, our clock was ticking on the 1291

3    appeal deadline.  So we waited until pretty much as long as

4    we could wait and then filed the 1291 appeal again, as

5    Mr. Parker said, in the alternative, in order to make sure

6    we didn't run afoul of the deadline for doing that.

7            Hopefully that's helpful for some context

8    regarding our thinking at that time, as to why we did it the

9    way we did it.

10           THE COURT:  I understand the procedural posture.

11   What I'm trying to understand is, and maybe this is a better

12   way to put it, do you have any case that stands for the

13   proposition that once an order has been appealed from, that

14   the District Court judge has jurisdiction to modify or

15   otherwise consider that order for purposes of granting a

16   motion for interlocutory appeal?

17           MR. DANIELS:  If the Court has that jurisdiction,

18   Your Honor, we believe it comes from Federal Rule of

19   Appellate Procedure (4)(a)(4), which does speak in terms of

20   the Court's ability to grant a motion to modify after a

21   notice of appeal has been filed.

22           So we are not completely out in left field on

23   this.  That is one fair reading of Rule (4)(a)(4).  I don't

24   have a case that addresses the point that the Court just

25   raised, but I do have that rule.

1      THE COURT:  I have, obviously, the concerns about

2  just the overall coordination among the cases and the like,

3  but I'm concerned about whether I even have jurisdiction now

4  to grant the relief in your motion.  And I think this often

5  does not arise because people don't file notice of appeal

6  and move to certify for interlocutory appeal in the same

7  order.

8      MR. LEWIN:  Your Honor, this is Nathan Lewin

9  speaking on behalf of My Pillow.

10      I think that under the cases even proceeding Rule

11  (4)(a)(4), if a motion was filed before the notice of

12  appeal, the notice of appeal would not abolish the District

13  Court's authority to rule on such a motion.  Like, for

14  example, a motion for attorney's fees or other things like

15  that.

16      Although we called the 1292(b) motion, a motion to

17  modify, it is really a request filed before the notice of

18  appeal that the Court enter an order certifying.  Whether

19  one calls it a modification of Your Honor's opinion or

20  whether one calls it a request for an independent order, it

21  is nonetheless a request for relief that was filed before

22  the notice of appeal was filed.

23      And, as has been explained, we had no choice in

24  terms of filing the notice of appeal, because otherwise the

25  30-day period for appeal would have expired.  So our "motion

1    for modification" is still pending because it was a motion

2    filed before the notice of appeal was filed.

3            Although it in form seems to address the order

4    that's before the Court of Appeals, the Court can issue an

5    independent order.  It doesn't have to touch Your Honor's

6    earlier opinion.  If you issue an independent order that

7    just says that under Section 1292(b) you hereby certify the

8    issue for interlocutory appeal, the jurisdictional problem

9    that Your Honor is raising is resolved.

10            THE COURT:  If I have power to do that, then why

11   don't I have power to -- or why isn't there jurisdiction to

12   have the case otherwise go forward?

13            MR. LEWIN:  Well, that is exactly what the rule

14   regarding the transfer of jurisdiction once a notice of

15   appeal is filed is designed to address.

16            Other than motions that have been filed before the

17   notice of appeal or things that are purely procedural, like

18   today's status conference, the District Court is deprived of

19   any jurisdiction to go forward once a notice of appeal is

20   filed.

21            THE COURT:  What's the best argument for why my

22   order was appealable?

23            MR. PARKER:  Your Honor, this is Andrew Parker.

24            On that issue, the Collateral Order Doctrine and

25   the case law that has found many different types of orders

1    or cases with motions to dismiss and other

2    normally-not-immediately-appealable decisions have, in fact,

3    been found to be properly appealed under the Collateral

4    Order Doctrine.  And these are all in the First Amendment

5    context -- anti-slap motion decisions, gag order violation

6    cases, other First Amendment rights cases, and often

7    qualified and absolute immunity cases immediately appealable

8    under the Collateral Order Doctrine.

9           And then when you go back and you say, Okay.  So

10   is this kind of case legally equivalent to those cases,

11   because Dominion can't cite a case that has rejected this in

12   this circuit, and the circuit is silent on the specific

13   point.  But if you go back to just *New York Times versus*

14   *Sullivan* and you see the language of the Court in the case,

15   they talk about when you are a citizen critic of the

16   government, they talk about the privilege for criticism of

17   official conduct, the privilege for the citizen critic of

18   the government to speak out in criticism of the government.

19   And then they make the statement that this privilege is a,

20   quote, fair immunity granted to officials themselves, closed

21   quote.

22          So these qualified immunity cases, including

23   *Meredith* and *Mitchell v. Forsythe*, the *Scott v. Harris* case,

24   all cases that -- well, two of them that we cited, the *Scott*

25   *v. Harris* case we located -- talk about qualified immunity

1    and the fact that it is a type of immunity.  And we believe,

2    just like this sort of case with the citizen critic of the

3    government, that it is immediately appealable as a

4    collateral doctrine.

5           And it certainly is not frivolous.  It is an issue

6    that we believe we will prevail on if a motion is brought by

7    Dominion.  They should bring that motion.  And this case

8    should be on hold.  Whether the other cases, Powell,

9    Giuliani and the others is on hold is another matter.  But

10   this case should be on hold until that issue is resolved, in

11   order that the protections of the First Amendment are not

12   lost.

13          MR. SHACKELFORD:  Your Honor, this is -- I'm

14   sorry.  This is Stephen Shackelford.

15          If I may, I just want to flag that the premise of

16   this argument is the premise that Your Honor heard back in

17   June at our last oral argument, the premise that Dominion is

18   the government; that's the premise of the argument.  And

19   it's one that we will obviously be filing a motion to

20   dismiss the appeal.  It is a frivolous premise.  It is not

21   supported in the case law.  I just don't want that to sit

22   out there as though it is a legitimate argument.

23          THE COURT:  You've answered one question I was

24   going to ask you, Mr. Shackelford, Is Dominion moving to

25   dismiss the appeal?

1        MR. SHACKELFORD:  Yes, Your Honor.

2        THE COURT:  I have at least a question about

3   whether I have the authority to decide the pending motion as

4   to that order while that appeal is pending.  At least on

5   this limited question, why shouldn't I wait to see whether

6   the D.C. Circuit dismisses the appeal or keeps it before I

7   decide whether to grant the motion for interlocutory appeal?

8   Because if the D.C. Circuit keeps the pending appeal, then

9   it seems to me that the motion pending before me is

10  essentially moot.

11       MR. PARKER:  Your Honor, My Pillow agrees with you

12  in that regard.

13       MR. DANIELS:  As does Mr. Lindell, Your Honor.

14       MR. LEWIN:  And on behalf of My Pillow, let me

15  also say though, that if Your Honor decides to grant and to

16  certify, then that means that the appeal is withdrawn.  And

17  since we did file for a 1292(b) certification before we

18  filed a notice of appeal, and if Your Honor does have

19  jurisdiction, as we say it does -- Your Honor does have

20  jurisdiction -- it is orderly for Your Honor to say, Look,

21  the Court of Appeals should decide this question.  There are

22  many precedents in which 1292(b) certifications have been

23  granted, and the Court of Appeals has affirmed what the

24  district judge did.

25       And in this case, if Your Honor grants the

1    1292(b), you will know whether the Court of Appeals agrees

2    with your decision on the motion to dismiss or does not

3    agree with it before the case proceeds any further; that's

4    the orderly process which 1292(b) contemplates.

5              THE COURT:  Do you agree with your colleagues that

6    if the D.C. Circuit -- (audio dropped) -- the appeal, the

7    pending appeal denies Dominion's motion that is forthcoming,

8    that that effectively moots out the motion that is pending

9    in front of me?

10             MR. LEWIN:  I do not agree with that because I

11   think all that that would mean would be that the D.C.

12   Circuit does not agree that it is a collateral order.  That

13   would not mean that the D.C. Circuit feels that if you

14   certified it, it would be worth hearing an appeal, because

15   it would meet the standards of 1292(b).  Therefore, a

16   decision by Court of Appeals would not moot the 1292(b).

17             THE COURT:  But you would have an appeal then

18   pending in front of the D.C. Circuit from the very order we

19   with are talking about.

20             >> Nat, he is saying if the Court of Appeals

21   granted our 1291.

22             MR. DANIELS:  This is Doug Daniels, Your Honor.

23             I think to clarify this, Your Honor, I think what

24   Mr. Lewin is saying is that if the Court of Appeals were to

25   grant the motion to dismiss, holding that the 1291 appeal is

1    not an appeal of a collateral order, we would still have the

2    1292 motion to modify and certify the interlocutory appeal.

3              But if the motion to dismiss the 1291 appeal were

4    denied then, yes, the 1292 motion would then be moot,

5    because as the Court noted, we then have our appeal pending.

6              MR. LEWIN:  This is Nathan Lewin.  I agree

7    entirely with the way Mr. Daniels has just stated our

8    position.

9              THE COURT:  Right.  So then my question is, and

10   perhaps it's one for Dominion, which is that it seems to me

11   that the implication of that is that I should wait to see

12   whether the Court of Appeals grants or denies Dominion's

13   motion to dismiss the appeal.

14             Just as to the motion for certification, that is

15   not the same in my view as -- I think there is a whole set

16   of questions about whether the case goes forward, but I

17   think on this issue, why shouldn't I just wait?

18             MS. WALKER:  Your Honor, this is Laranda Walker

19   speaking for Dominion.  We are fine with Your Honor waiting

20   on the certification decision.  And, to be clear, we

21   strongly oppose certification.  But as long as we are able

22   to move the case forward in terms of discovery and there are

23   no delays with respect to that, then we are fine with Your

24   Honor holding up on the ruling on that motion.

25             THE COURT:  Okay.  Thank you.

1          MR. LEWIN:  This is Nathan Lewin.

2          That makes no sense at all to proceed with

3     discovery when the question is both before the Court of

4     Appeals and before Your Honor whether the appeal should be

5     heard now on the First Amendment, *New York Times versus*

6     *Sullivan* issue.  To proceed to discovery when that is

7     pending in two courts, both before the Court of Appeals and

8     before Your Honor, would make no sense at all.

9          THE COURT:  Well, that assumes that --

10         >> Your Honor --

11         THE COURT:  -- substantial argument, which I

12    don't, but I understand the arguments.  So here is where I

13    am.  I think we have talked this more than enough to death.

14    It seems to me the parties are of the same view as to

15    whether I should presently consider the motion for

16    interlocutory appeal.  And the answer to that is, I should

17    not; that it's at least appropriate, maybe the right thing

18    to do, to wait to see what the Court of Appeals does with

19    Dominion's forthcoming motion to dismiss the appeal.  That

20    is what I intend to do.  I am not going to enter an order to

21    that effect.  The motion is pending in front of me.  I will

22    not act on it for present purposes.

23         The question of what otherwise will happen, I have

24    heard from the parties on.  I have read the papers, and I'm

25    going to take that under consideration.  It seems to me that

1    there are lots of good reasons why the cases should be

2    proceeding on parallel tracks.  But it is also the case that

3    some of these cases are far behind the others.

4              Whether and to what extent there is authority here

5    to force My Pillow and Mr. Lindell to engage in District

6    Court related litigation, is obviously something we've been

7    talking about this morning, and I will have to consider, and

8    I will enter an order on that question.

9              Other than that, are there topics we should

10   discuss this morning?  Why don't we begin with

11   Mr. Shackelford or Ms. Walker.

12             MR. SHACKELFORD:  Your Honor, this is Stephen

13   Shackelford.

14             I don't think -- there are two other topics.  On

15   the issue of proceeding with discovery, I understand Your

16   Honor will enter an order.  Obviously My Pillow and

17   Mr. Lindell could choose not to participate in discussions

18   and meeting and conferring to come up with a discovery

19   schedule.  We'd ask that either they participate or they

20   choose not to at their own peril.

21             We would be happy to take their views into

22   consideration if they'd just meet and confer with us about

23   these schedules.   But if they choose not to and they choose

24   to wait for many months to even talk to us about scheduling,

25   that's a problem.  So we'd hope that they would either

1    choose to have to live with whatever we come up with the

2    other two sets of defendants.

3           Secondly, there is the issue of the counterclaims,

4    Your Honor.  Again, all we are asking there, as Ms. Walker

5    said, is that Your Honor order that the claims are properly

6    brought as compulsory counterclaims; and therefore it is up

7    to Lindell and My Pillow defendants, they can choose to

8    bring those counterclaims whenever they choose to answer.

9    If they choose to wait to answer, they are currently

10   choosing to wait to answer, then by definition the

11   counterclaims also wait.

12          It is proper as a matter of law, for the reasons

13   Ms. Walker explained, and it's also proper as a matter of

14   basic fairness.  If they are choosing not to answer, they

15   should not be able to interpose what are compulsory

16   counterclaims against us just by choosing to try to litigate

17   them in a different case.

18          THE COURT:  My problem there is just that the

19   parties haven't briefed that question to me that I know of.

20          MR. SHACKELFORD:  We are happy to brief it, Your

21   Honor.

22          THE COURT:  I think a motion or papers on the

23   question of whether the claims asserted by -- so I have it

24   right -- the claims asserted by My Pillow and Mr. Lindell

25   against Dominion in Minnesota in the actions that were

1    transferred here should have been brought or were required

2    to be brought as compulsory counterclaims in a suit by

3    Dominion, one.

4            Two -- this is obviously Dominion's argument --

5    having not so been brought, what the procedural consequences

6    should be for having done so or essentially what I should

7    order.  Because I think that my concluding that they were,

8    in fact, compulsory counterclaims -- I don't know if it is

9    the case.  And then I have to consider what the implications

10   of that are.

11           >> Understood, Your Honor.

12           MR. DANIELS:  Your Honor, this is Doug Daniels for

13   Mr. Lindell.

14           I think that Mr. Shackelford and Mr. Parker and I

15   and our respective team should discuss the question.  I

16   think that the question is, Okay, given that they are now in

17   front of you, should they just be considered as compulsory

18   counterclaims, such that they are on a timetable -- you

19   know -- that follows with whenever it is appropriate for

20   Mr. Lindell and My Pillow to answer.  As opposed to, my

21   point is, we should discuss that there may not ultimately be

22   a need for the Court to make a ruling on that one.

23           THE COURT:  I agree.  Frankly, any motion that is

24   filed here should follow by a meet and confer.

25           MR. SHACKELFORD:  This is Stephen Shackelford.

1          I agree with my friend, Mr. Daniels, completely.

2    We will meet and confer about that, Your Honor.

3          THE COURT:  I think in connection with that meet

4    and confer you should also discuss whether My Pillow and

5    Mr. Lindell are prepared to also file answers with those

6    claims or treat it as compulsory counterclaims.  I will

7    leave that to you.

8          MR. SHACKELFORD:  We will discuss that as well,

9    Your Honor.

10          And just to clarify, will Your Honor keep the stay

11    in place of Dominion's requirement to answer or otherwise

12    respond to those claims until after we've completed our meet

13    and confer and gotten back to Your Honor?

14          MR. DANIELS:  Mr. Lindell does not oppose that.

15          THE COURT:  Am I right that in those cases

16    Dominion's time to respond is sometime in November or am I

17    wrong about that?

18          MR. SHACKELFORD:  I don't think that the

19    calendar --

20          MS. SAMMONS:  Stephen, I'm sorry to interrupt you.

21    This is Katie Sammons.

22          We have an agreement right now in place.  But

23    until the resolution by the Court on this issue, the stay

24    will remain in place.  That's the agreement of the parties,

25    but certainly the Court could enter an order with that

1   agreement.

2           THE COURT:  I apologize.  This is a little new to

3   me.

4           Do I have it right that the parties agreed that

5   Dominion's obligation to respond to the complaints that were

6   filed in Minnesota -- Dominion's obligation to respond to

7   those complaints -- is stayed pending what exactly?

8           MS. SAMMONS:  Pending resolution of the issues

9   raised at this hearing.

10          THE COURT:  My view is that that stay can remain

11  in place through the parties' meet and confer.  I think on

12  this question, frankly -- and this question may end up being

13  bigger than just this question.  But I think the parties

14  should meet and confer and propose by next Friday, through a

15  joint status report or perhaps a joint motion on how, one,

16  the claims/counterclaims will be treated, that is to say the

17  claims brought by My Pillow and Mr. Lindell against

18  Dominion, how they will be treated, one; two, whether and to

19  what extent there is any agreement on the obligation to file

20  an answer now.

21          I understand the arguments around my jurisdiction

22  and the stay and the like.  And if the parties don't reach

23  comprehensive agreement on those topics, and I suppose then

24  whether there will be discovery thereafter, I will resolve

25  those questions.  But I would like the parties to meet and

1    confer on these issues, to file something next Friday by way

2    -- again, either of a joint motion that proposes an outcome

3    or as a joint status report that articulates the parties'

4    respective positions.  The stay can remain in place as to

5    those claims certainly through that period.  And then I will

6    take this question up, in the event that the parties haven't

7    reached agreement on some or all of these topics.  Is that

8    relatively clear?

9         MS. SAMMONS:  Your Honor, just to be clear --

10   again, this is Katie Sammons -- I understand the stay is to

11   remain in place until we propose by next Friday, we send

12   that.  If there is not an agreement by next Friday on how

13   these Minnesota cases will be treated, does the timing for

14   us to file an answer begin to run just because it's next

15   Friday and we filed this or does the stay stay in place

16   until you rule on what to do?

17        THE COURT:  Why don't we say that the stay remains

18   in place until I decide what to do.  But I certainly don't

19   want the parties to file what they file next Friday, that if

20   there is an agreement or even if there is not, that they can

21   reach agreement on the limited question of when, if ever,

22   must Dominion respond to those claims.

23        MR. DANIELS:  That's fine with Mr. Lindell, Your

24   Honor.

25        MR. LEWIN:  That's fine, Your Honor, with

1     My Pillow as well.

2          I had a comment regarding the issue of where

3     things are pending at the Court of Appeals.  And I'm not

4     understanding exactly how or what the Court is going to do

5     in terms of moving forward with these cases pending the

6     Dominion motion to dismiss the appeal.  It seems to me that

7     until the appeal is dismissed, the Court does not have

8     jurisdiction to order that discovery proceed.

9          And if the Court is inclined to not see it that

10    way, we would like the opportunity to brief that issue,

11    because the jurisdiction of the Court is -- you know, it's

12    an important matter as it relates to the scheduling of the

13    case.  And it seems that, you know, from the Court's

14    comments, you may well agree with that in terms of if we

15    might as well wait to see what the Court of Appeals does,

16    because if they accept the appeal -- it's not frivolous,

17    it's an appropriate appeal -- then there is no doubt that

18    the matter should not be moving forward on discovery in

19    related issues.

20          THE COURT:  Here is what I am envisioning, just to

21    I hope be clear.  It's a good question.  I am not suggesting

22    that it's not.  This is what I am thinking.  It seems to me

23    that everyone is in agreement that I should not act while

24    the notice of appeal is lodged in the Court of Appeals and

25    while the to-be-filed motion to dismiss the appeal is

1    pending in the Court of Appeals, that I should not decide

2    the motion for interlocutory appeal, to certify for

3    interlocutory appeal.  I think we are all in agreement about

4    that.

5                >> Your Honor, just to interrupt one second.  The

6    reason we are in agreement is because you would not have

7    jurisdiction to do that.  And if that --

8                THE COURT:  No.  No.  No.  Hold on a second.  Just

9    stop and definitely don't interrupt again.

10               There is not agreement on that.  Your co-counsel

11   said that I do have jurisdiction to decide that.  Okay?

12   Mr. Lewin argued quite vociferously that I -- (audio

13   dropped.)

14               >> Hello?

15               >> Hello.

16               >> I'm still here.

17               COURTROOM DEPUTY:  Judge, Nichols, are you there?

18               THE COURT:  Someone needs to mute.

19               >> Hello?

20               >> Hello?

21               THE COURT:  Can people not hear me?

22               COURTROOM DEPUTY:  We can hear you now.

23               >> Now we can.

24               >> You cut out for 30 seconds.

25               THE COURT:  I apologize.  I do not know why I cut

1    out there.  I didn't touch a thing.  I don't know where I

2    was last speaking.

3            I am not going to be deciding the motion for

4    interlocutory appeal unless and until the Court of Appeals

5    decides Dominion's forthcoming motion to dismiss the appeal.

6            As to all other topics about what, if anything,

7    can happen in this court in the cases involving My Pillow

8    and Mr. Lindell, I want the parties to meet and to propose

9    by way of either joint motion or a joint status report that

10   takes alternative positions.  I want the parties to propose

11   by next Friday and to meet and confer and to propose by next

12   Friday their views on, among other topics, one, how the

13   My Pillow and Lindell claims against Dominion should be

14   treated, i.e., are they separate claims?  Are they

15   compulsory counterclaimants?  Does it matter?  That is topic

16   one.

17           Topic two, whether My Pillow and Lindell have an

18   obligation to answer Dominion's claims.  Three, whether

19   Dominion has an obligation to respond to or otherwise answer

20   the claims against it and the schedule for that.  And four

21   -- and I think this is the point that was being made --

22   whether there should be any discovery involving My Pillow or

23   Mr. Lindell at all, unless and until all of these different

24   appellate issues are sorted out.

25           And the parties, if they agree on some of those

1    and want to propose by way of joint motion, for example,

2    that the claims against Dominion should just be treated as

3    compulsory counterclaims, but there isn't otherwise an

4    agreement on the answer or discovery, tell me that in the

5    joint status report with your respected positions.  And if I

6    decide that on some or all of these questions, like the

7    jurisdictional ones, I need additional briefing, I will ask

8    for it.  Okay?

9              >> Thank you, Your Honor.

10             >> Thank you, Your Honor.

11             >> Thank you, Your Honor.

12             >> Crystal clear, Your Honor.

13             THE COURT:  Okay.  Thank you very much.  We look

14   forward to seeing that next Friday.  Obviously, if there are

15   areas of disagreement on which I will need more briefing, I

16   will ask for it.  Thank you, counsel.

17             >> Thank you, Your Honor.

18             THE COURT:  Sorry for cutting out there for a

19   minute.

20             >> That's okay.

21             >> Thank you.

22             (Proceedings concluded at 12:04 p.m.)

23

24

25

1              **C E R T I F I C A T E**

2

3              I, **Lorraine T. Herman, Official Court**

4    **Reporter,** certify that the foregoing is a true and correct

5    transcript of the record of proceedings in the

6    above-entitled matter.

7

8              **Please Note:**  This hearing occurred during

9    the COVID-19 pandemic and is therefore subject to the

10   technological limitations of court reporting remotely.

11

12

13

14    __November 4, 2021__              ___/s/_____
              **DATE**                    **Lorraine T. Herman**
15

16

17

18

19

20

21

22

23

24

25