# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,

        *Plaintiffs/Counter-Defendants*,

    vs.

MY PILLOW, INC., *Defendant/Counter-Claimant*.

MICHAEL J. LINDELL, *Defendant/Counter-Claimant/Third-Party Plaintiff*,

    vs.

SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, and HAMILTON PLACE STRATEGIES, LLC,

        *Third-Party Defendants*.

Case No. 21-cv-445-CJN

# SMARTMATIC DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
# MOTION FOR RULE 11 SANCTIONS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

I.  Mr. Lindell predicates his case on a fictional narrative involving the 2020
    U.S. election that courts have repeatedly rejected. ........................................... 2

    A.  Courts have rejected allegations that the election was "rigged"
        because the allegations are baseless. .................................................... 2

    B.  Courts have also sanctioned parties and counsel for alleging that
        the election was "rigged" because such allegations are frivolous. ................... 4

II. Mr. Lindell and his counsel filed this case in defiance of the rulings
    rejecting election fraud, and then refiled this case in defiance of the rulings
    issuing sanctions. .......................................................................... 6

PROCEDURAL HISTORY ..................................................................................... 8

LEGAL STANDARD ........................................................................................... 9

ARGUMENT .................................................................................................. 11

I.  Mr. Lindell and his counsel have violated Rule 11. ........................................... 11

    A.  Mr. Lindell and his counsel made provably false factual allegations
        in violation of Rule 11(b)(3). ........................................................... 11

        1)  Allegations that voting machines were "manipulated" to
            "alter" the outcome of the 2020 U.S. presidential election ........................ 12

        2)  Allegations that rely upon Douglas G. Frank's "analysis" ......................... 14

        3)  Allegations that China owns Smartmatic .......................................... 16

    B.  Mr. Lindell's counsel certified that Mr. Lindell's claims were
        nonfrivolous in violation of Rule 11(b)(2). ............................................. 17

        1)  Mr. Lindell's civil conspiracy claim is frivolous. ............................... 18

        2)  Mr. Lindell's Section 1985(3) and Section 1983 claims are
            frivolous. ....................................................................... 20

        3)  Mr. Lindell's RICO claim is frivolous. .......................................... 23

    C.  Mr. Lindell and his counsel presented his complaint for an
        improper purpose in violation of Rule 11(b)(1). ........................................ 28

1)   Mr. Lindell's record of making false statements about the
2020 election ................................................................................ 29

2)   Mr. Lindell's use of his Complaint to make the same
statements ...................................................................................... 34

II.   The Court should enforce Rule 11 and impose severe sanctions ...................................... 36

A.   Mr. Lindell and his counsel should be ordered to pay Smartmatic's
legal fees and costs ........................................................................................ 37

B.   The fees Mr. Lindell's counsel earned from this case should be
disgorged and paid to the Court. .................................................................. 39

CONCLUSION ...................................................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abner Realty, Inc. v. Admin. Of Gen. Servs.*,
No. 87 Civ. 3075, 1998 WL 410958 (S.D.N.Y. July 22, 1998) ..............................................20

*In re Ames*,
993 F.3d 27 (1st Cir. 2021) ..................................................................................................9, 20

*Bachi-Reffitt v. Reffitt*,
802 F. App'x 913 (6th Cir. 2020) ......................................................................................24, 27

*Bates v. Nw. Hum. Servs., Inc.*,
466 F. Supp. 2d 69 (D.D.C. 2006) ..............................................................................................27

*BEG Invs., LLC v. Alberti*,
85 F. Supp. 3d 13 (D.D.C. 2015) ......................................................................................10, 11

*Brady v. Livingood*,
360 F. Supp. 2d 94 (D.D.C. 2004) ............................................................................................19

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991) ......................................................................................................................9

*Bush v. Butler*,
521 F. Supp. 2d 63 (D.D.C. 2007) ............................................................................................19

*Carswell v. Air Line Pilots Ass'n, Int'l*,
248 F.R.D. 325 (D.D.C. 2008) ..................................................................................................11

*Cooter & Gell v. Hartmax Corp.*,
496 U.S. 384 (1990) ....................................................................................................................37

*Cousin v. D.C.*,
142 F.R.D. 574 (D.D.C. 1992) ..................................................................................................10

*De La Fuente v. DNC Servs. Corp.*,
No. CV 18-cv-336, 2019 WL 1778948 (D.D.C. Apr. 23, 2019) ..............................................19

*Del Canto v. ITT Sheraton Corp.*,
865 F. Supp. 934 (D.D.C. 1994) ......................................................................................20, 37

*Del Pino v. Bay of Pigs Veterans Ass'n*,
No. 07-22869-CIV, 2008 WL 11411845 (S.D. Fla. Feb. 12, 2008) ..........................20, 21, 23

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
  830 F. App'x 377 (3d Cir. 2020) .......................................................................................3, 4

*\*E. Sav. Bank, FSB v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014) ...........................................................................................25, 26

*Elkins v. Dist. of Columbia*,
  690 F.3d 554 (D.C. Cir. 2012) .............................................................................................21

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  20 F. Supp. 3d 451 (S.D.N.Y. 2014).....................................................................................25

*Fiorani v. Chrysler Grp., LLC*,
  No. 113CV346AJTIDD, 2014 WL 12527186 (E.D. Va. Jan. 30, 2014)................................26

*Foman v. Davis*,
  371 U.S. 178 (1962) ...............................................................................................................8

*Freedom Watch, Inc. v. Google, Inc.*,
  368 F. Supp. 3d 30 (D.D.C. 2019) .......................................................................................21

*G-I Holdings, Inc. v. Baron & Budd*,
  179 F. Supp. 2d 233 (S.D.N.Y. 2001)...................................................................................26

*Geller v. Randi*,
  40 F.3d 1300 (D.C. Cir. 1994) .............................................................................................10

*Great Am. Fed. Savings & Loan Ass'n v. Novotny*,
  442 U.S. 366 (1979) .............................................................................................................21

*Gross v. Waywell*,
  628 F.Supp.2d 475 (S.D.N.Y. 2009).....................................................................................24

*\*Hanson v. Greenspan*,
  No. CIV. A. 91-1599(GHR), 1991 WL 274267 (D.D.C. Dec. 6, 1991)...........................19, 38

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)...............................................................................................................26, 27

*Hickey v. Scott*,
  738 F. Supp. 2d 55 (D.D.C. 2010) ...................................................................................37, 38

*\*Hollister v. Soetoro*,
  258 F.R.D. 1 (D.D.C. 2009).......................................................................2, 20, 21, 29, 36

*\*Intelsat USA Sales LLC v. Juch-Tech, Inc.*,
  No. CV 10-2095 (RC), 2014 WL 12787643 (D.D.C. Oct. 15, 2014)
  ...............................................................................................................11, 17, 36, 37

*John Akridge Co. v. Travelers Cos.*,
    944 F. Supp. 33 (D.D.C. 1996) ................................................................38

*Karim-Panahi v. 4000 Mass. Apartments*,
    302 F. Supp. 3d 330 (D.D.C. 2018) ....................................................18, 19

*King v. Whitmer*,
    505 F. Supp. 3d 720 (E.D. Mich. 2020) ..................................................3

*King v. Whitmer*,
    No. 20-cv-13134, --- F. Supp. 3d ---, 2021 WL 3771875 (Aug. 25, 2021). ......6, 14, 29, 36, 39

*Knipe v. Skinner*,
    19 F.3d 72 (2d Cir. 1994) .............................................................28, 29, 36

*Kush v. Rutledge*,
    460 U.S. 719 (1983) ..........................................................................21

*LeFande v. Mische-Hoeges*,
    712 F. App'x 9 (D.C. Cir. 2018) ..........................................................22

*LeFande v. Mische-Hoeges*,
    No. 10-cv-1857, 2019 WL 8331599 (D.D.C. Jan. 29, 2019) ...................20

*LeFande v. Mische-Hoeges*,
    No. 10-CV-1857 (DLF), 2018 WL 6620107 (D.D.C. Oct. 22, 2018) ............22, 23

*Marceaux v. Lafayette City-Parish Consol. Gov't*,
    614 F. App'x 705 (5th Cir. 2015) ........................................................23

*Markwell v. Cnty. of Bexar*,
    878 F.2d 899 (5th Cir. 1989) ..............................................................39

*Matter of Giuliani*,
    146 N.Y.S.3d 266 (N.Y. App. Div. 2021) ...........................................5, 14

*McCreary v. Heath*,
    No. 04-cv-623, 2005 WL 3276257 (D.D.C. Sept. 26, 2005)...................19

*Midlock v. Apple Vacations W., Inc.*,
    406 F.3d 453 (7th Cir. 2005) ..............................................................39

*O'Rourke v. Dominion Voting Sys., Inc.*,
    --- F. Supp. 3d ---, No. 20-cv-3747, 2021 WL 3400671
    (D. Colo. Aug. 3, 2021) ............................................................ *passim*

*Republic of Kazakhstan v. Stati*,
    380 F. Supp. 3d 55, 61 (D.D.C. 2019)..................................................25

*Reynolds v. U.S. Capitol Police Bd.*,
  357 F. Supp. 2d 19 (D.D.C. 2004) ........................................................................9, 18

*Robertson v. Cartinhour*,
  867 F. Supp. 2d 37 (D.D.C. 2012) .............................................................................27

*Saltany v. Reagan*,
  886 F.2d 438 (D.C. Cir. 1989) .............................................................................28, 36

*Son Ly v. Solin, Inc.*,
  910 F. Supp. 2d 22 (D.D.C. 2012) ....................................................22, 24, 25, 28

*Thomas v. Early Cnty., GA*,
  360 F. App'x 71 (11th Cir. 2010) ...............................................................................11

*United States v. Munchel*,
  991 F.3d 1273 (D.C. Cir. 2021) .................................................................................31

*Upchurch v. O'Brien*,
  No. 19-CV-165-WMC, 2021 WL 3617098 (W.D. Wis. Aug. 16, 2021) .............24, 25, 28, 39

*Wash. Bancorp. v. Said*,
  812 F. Supp. 1256 (D.D.C. 1993) .............................................................................38

*Westmoreland v. CBS, Inc.*,
  770 F.2d 1168 (D.C. Cir. 1985) .................................................................................37

*Wiggins v. Philip Morris, Inc.*,
  853 F. Supp. 458 (D.D.C. 1994) ...............................................................................21

*Williams v. Aztar Ind. Gaming Corp.*,
  351 F.3d 294 (7th Cir. 2003) ..............................................................................24, 28

*Williams v. Romarm S.A.*,
  No. 19-CV-183 (EGS), 2020 WL 1557156 (D.D.C. Apr. 1, 2020).......................18

*Wis. Voters All. v. Pence*,
  514 F. Supp. 3d 117, 118 (D.D.C. 2021) ...............................................................4, 28

*Wis. Voters All. v. Pence*,
  No. 20-cv-3791, 2021 WL 686359 (D.D.C. Feb. 19, 2021)..........................4, 5, 36

**Statutes**

18 U.S.C. § 1512 ...........................................................................................................26

18 U.S.C. § 1951 ...........................................................................................................26

42 U.S.C. § 1983 ...................................................................................1, 20, 21, 22, 23

42 U.S.C. § 1985 ...................................................................................1, 20, 21, 22, 23

**Other Authorities**

Fed. R. Civ. P. 9 ...................................................................................................27

Fed. R. Civ. P. 11 ............................................................................................. passim

Fed. R. Civ. P. 15 ...................................................................................................9

## INTRODUCTION

Plaintiff Michael J. Lindell filed a frivolous case against Smartmatic. He defamed Dominion and Smartmatic on multiple occasions in early 2021 and then was sued by Dominion. Rather than retract his statements or at least not compound them, Mr. Lindell decided to launch a preemptive attack on Smartmatic by suing it for engaging in "lawfare." But this term—whatever it means—does not equate to a cause of action. All of Mr. Lindell's claims in this case are meritless. He and his counsel should be sanctioned for abusing the legal system and engaging in the baseless "lawfare" that Mr. Lindell accuses Smartmatic of waging.

Under Federal Rule of Civil Procedure 11, Mr. Lindell's misconduct translates into three separate, sanctionable offenses. First, Mr. Lindell predicates his claims on allegations that have been disproven by credible, publicly available sources and rejected by other federal district courts. Mr. Lindell's assertion of these allegations in his pleading violates Fed. R. Civ. P. 11(b)(3). Second, the Third-Party Complaint ("Complaint" or "Compl.") alleges claims against Smartmatic for participating in a civil conspiracy with Dominion and for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 42 U.S.C. § 1985(3), and the First, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983. These claims lack a plausible basis in the law and thus contravene Fed. R. Civ. P. 11(b)(2). Third, both in the Complaint and in his out-of-court statements, Mr. Lindell has admitted that he filed suit to undermine confidence in the 2020 U.S. election. This purpose is improper and sanctionable under Fed. R. Civ. P. 11(b)(1). Whether viewed individually or collectively, Mr. Lindell's Rule 11 violations warrant sanctions.

Mr. Lindell's counsel should also be sanctioned for their role in preparing, filing, and prosecuting this case. They have aided and abetted Mr. Lindell's frivolous attack on Smartmatic and failed to live up to the responsibilities with which they are entrusted as officers of the court.

1

> Lawyers who come to court to present grievances…are held to a higher standard than disadvantaged or unrepresented persons. For lawyers, there are rules. A lawyer knows that no judge has any business addressing or ruling upon a dispute, no matter how fervently he or his clients may feel about it… unless the complaint states a claim upon which relief can be granted.[1]

*Hollister v. Soetoro*, 258 F.R.D. 1, 1–2 (D.D.C. 2009). Attorneys know, "because the Federal Rules of Civil Procedure plainly say so," that their signature on a complaint certifies to the Court that they have conducted a reasonable inquiry before filing the pleading. *Id*. at 1. Here, the attorneys who signed the Complaint failed to comply with their obligations as officers of the court. They filed a complaint based on the conspiracy theories of an individual with a history of making unproven and dangerous claims designed to bring him public attention. They filed a complaint based on statistical analyses that had already been debunked by news organizations and that make no sense. And they brought claims that have no legal basis. Mr. Lindell's attorneys should be sanctioned under Rule 11.

## **BACKGROUND**

I.    **Mr. Lindell predicates his case on a fictional narrative involving the 2020 U.S. election that courts have repeatedly rejected.**

   A.    **Courts have rejected allegations that the election was "rigged" because the allegations are baseless.**

Mr. Lindell claims that he brought this suit so he can "freely" tell the "truth" about the 2020 U.S. election. (Compl. ¶¶ 21, 36.)  He maintains that "voting machines were manipulated to affect outcomes in the November 2020 General Election," and that this "fact" is not merely his opinion. (*Id*. ¶¶ 1, 3, 5.)  Rather, Mr. Lindell alleges that "[d]irect and circumstantial evidence demonstrates that, during the 2020 General Election, electronic voting machines like those

---

[1] Throughout this memorandum, all emphasis has been added, and internal citations and quotation marks have been omitted, unless otherwise noted.

manufactured and sold by Dominion and Smartmatic were manipulated and hacked in a manner that caused votes for one candidate to be tallied for the opposing candidate." (*Id*. ¶ 5.) Mr. Lindell also weaves these "facts" into his claims. They are all premised on the notion that Dominion and Smartmatic have threatened him with "ruinous litigation" to prevent him from "reve[aling]" the "truth[]" about the 2020 election and the alleged role of voting machines in "manipulat[ing]" it.[2] (*See id*. ¶¶ 1–21, 150, 156.)

Mr. Lindell and his counsel, however, know that his election-rigging allegations do not exist in a vacuum. Nearly a year ago, federal district courts examined lawsuits that alleged the election was rigged and sought to stop its certification. Those cases failed. And in several instances, courts squarely rejected allegations that cast doubt on the electoral results. For example, in *King v. Whitmer*, the court faced allegations that the defendants "engaged in 'several schemes' to, among other things, 'destroy,' 'discard,' and 'switch' votes" in Michigan. 505 F. Supp. 3d 720, 737–38 (E.D. Mich. 2020). The court denied the requested relief because the plaintiffs offered "nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden." *Id*. at 738. Likewise, in *Bowyer v. Ducey*, the court faced allegations that "Arizona's Secretary of State and Governor conspired with various domestic and international actors to manipulate Arizona's 2020 General Election results." 506 F. Supp. 3d 699, 721 (D. Ariz. 2020). The court spurned "over three hundred pages" of attachments to the complaint as mostly "based on anonymous witnesses, hearsay, and irrelevant analysis of unrelated elections," lamented that the allegations were "sorely wanting of relevant or reliable evidence," and dismissed the case. *Id*. at 706; *see also Donald J. Trump for President, Inc. v. Sec'y of Pa*.,

---

[2] "Dominion" means US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, and Hamilton Place Strategies, LLC. "Smartmatic" means Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited.

830 F. App'x 377, 381 (3d Cir. 2020) ("Free, fair elections are the lifeblood of our democracy. Charges of unfairness are serious. But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."). These cases reflect the judiciary's findings to date that allegations of vote rigging in the 2020 U.S. election have no basis.

### B.      Courts have also sanctioned parties and counsel for alleging that the election was "rigged" because such allegations are frivolous.

Over the last year, several courts have sanctioned the litigants and counsel who filed complaints to undermine the legitimacy of the 2020 presidential election. Those rulings are the backdrop for this case. Mr. Lindell and his counsel filed, refiled, and then declined to withdraw this suit *knowing* that the allegations they raise here have triggered severe sanctions, including awards of substantial fees, referrals to disciplinary committees, and disbarment.

As early as February 2021, a court in this District held a plaintiffs' counsel accountable for injecting gratuitous voter fraud allegations into a pleading. *See Wis. Voters All. v. Pence*, No. 20-cv-3791 (JEB). The plaintiffs sought "to enjoin the U.S. Congress from counting the electoral votes on January 6, 2021, and declaring Joseph R. Biden the next President." 514 F. Supp. 3d 117, 118 (D.D.C. 2021). At the outset, the Hon. James E. Boasberg denied the plaintiffs' motion for preliminary injunction, citing the "manifold" "legal errors underpinning th[e] action." *Id.* at 120. The court then sanctioned the plaintiffs' counsel for filing the complaint because, even though the plaintiffs "disclaim[ed] any theory of fraud," they "spen[t] scores of pages cataloguing every conceivable discrepancy or irregularity in the 2020 vote in the five relevant states, already debunked or not, most of which they nonetheless describe as a species of fraud." 2021 WL 686359, at *1 (D.D.C. Feb. 19, 2021). "The only reason the Court [could] see for the Complaint to spend 70+ pages on irrelevant allegations of fraud, not one instance of which persuaded any court in any

state to question the election's outcome, [was] political grandstanding." *Id.* The court accordingly referred the plaintiffs' counsel to the Committee on Grievances. *Id.* at *2.

In May 2021, the New York First Department Appellate Division entered a per curiam order immediately suspending Rudy Giuliani from the practice of law because of the disinformation he spread about the election. *See Matter of Giuliani*, 146 N.Y.S.3d 266 (N.Y. App. Div. 2021). The court concluded that "uncontroverted evidence" showed that Giuliani "communicated demonstrably false and misleading statements to courts, lawmakers and the public at large…to improperly bolster [his] narrative that due to widespread voter fraud, victory in the 2020 United States presidential election was stolen from his client." *Id.* at 268. The court found that Giuliani's "conduct immediately threaten[ed] the public interest and warrant[ed] interim suspension from the practice of law…." *Id.* "One only has to look at the ongoing present public discord over the 2020 election, which erupted into violence, insurrection and death on January 6, 2021 at the U.S. Capitol, to understand the extent of the damage that can be done when the public is misled by false information about the elections." *Id.* at 283.

The U.S. District Court for the District of Colorado similarly understood the connection between using litigation to spread misinformation and the attendant harm that reverberates outside the courthouse. *See O'Rourke v. Dominion Voting Sys., Inc.*, --- F. Supp. 3d ---, No. 20-cv-3747, 2021 WL 3400671 (D. Colo. Aug. 3, 2021). In *O'Rourke*, the court dismissed a RICO class action brought on behalf of all American registered voters against: state officials from Georgia, Michigan, Pennsylvania, and Wisconsin; Facebook, Inc.; Dominion Voting Systems, Inc., and the Center for Tech and Civic Life. *Id.* at *1. All the claims stemmed from a "vast conspiracy" to infringe upon the plaintiffs' "constitutional right to vote for President." *Id.* at *1–*2. The court dismissed the complaint and found that its "highly disputed and inflammatory statements" justified sanctions.

*Id.* at *31–*33. Although the plaintiffs' counsel "insist[ed] that the lawsuit was not intended to challenge the election or reverse the results," the court determined that "the effect of the allegations and relief sought would be to sow doubt over the legitimacy of the Biden presidency and the mechanisms of American democracy (the actual systems of voting) in numerous states." *Id.* at *3. The court stressed the danger lurking within the allegations: "Albeit disorganized and fantastical, the Complaint's allegations are extraordinarily serious and, if accepted as true by large numbers of people, are the stuff of which violent insurrections are made." *Id.*

A few weeks later, the U.S. District Court for the Eastern District of Michigan sanctioned the plaintiffs' attorneys who instituted *King v. Whitmer*, No. 20-cv-13134. *See* --- F. Supp. 3d ---, 2021 WL 3771875 (Aug. 25, 2021). There too, the court recognized the damage litigants and their counsel cause when they "use the judicial process to frame a public 'narrative,'" especially regarding a topic so sensitive as the validity of a presidential election. *Id.* at *34. The plaintiffs in *King* contended that the defendants (i) failed to administer the election in accordance with the Michigan Election Code, and (ii) "committed a scheme and artifice to fraudulently and illegally manipulate the vote count to make certain the election of Joe Biden as President of the United States." *Id.* at *2. The plaintiffs, like Mr. Lindell, also asserted that their theories were supported by "statistical anomalies and mathematical impossibilities." *Id.* Except they were not. Neither the plaintiffs' factual contentions nor their claims had any reasonable basis. The court saw the case for what it was: "a historic and profound abuse of the judicial process." *Id.* at *1.

## II.     Mr. Lindell and his counsel filed this case in defiance of the rulings rejecting election fraud, and then refiled this case in defiance of the rulings issuing sanctions.

Mr. Lindell's suit perpetuates the narrative that the 2020 U.S. election was "tainted," despite all the court rulings to the contrary. His allegations that voting machines were "manipulated" to decide the 2020 election are not peripheral either: they are central to his claims.

- In Count IV, Mr. Lindell alleges that Smartmatic conspired with Dominion to "silence" those who promoted "an effort to determine the legitimate votes cast for each Presidential candidate in each of the key swing states, in light of the numerically improbable overnight lead change from Trump to Biden" and "significant potential that [voting technology] vulnerabilities were exploited in certain jurisdictions to artificially cost President Trump the election." (Compl. ¶ 166.)

- In Count V, Mr. Lindell alleges that Smartmatic and Dominion used litigation to "suppress" his "right to disseminate information and data regarding *the role* of Dominion *voting machines in election fraud and election tampering*." (*Id.* ¶ 173.)

- In Count VI, Mr. Lindell alleges that Smartmatic and Dominion retaliated against him for "speech concerning election integrity and security and Dominion and Smartmatic's role" in the election. (*Id.* ¶ 179.)

- In Count VII, Mr. Lindell alleges that Smartmatic conspired with Dominion to "silence his views on the reliability of voting machines and *their use to alter election outcomes* in certain jurisdictions." (*Id.* ¶ 183(c); *see also id.* ¶ 183(b) (alleging that Mr. Lindell's claims about election fraud are "*substantively true*"); *id.* ¶ 183(d) (alleging that Defendants conspired to punish Mr. Lindell for speaking about voting machines and "*their use in*[] election fraud in the 2020" election).

- In Count III, Mr. Lindell alleges that Smartmatic violated RICO because Dominion sent cease-and-desist letters to those who produced "questions or *evidence of fraudulent manipulation of voting machines* or their *use in tampering with and altering* the outcome of the 2020" election. (*Id.* ¶ 158.)

As these allegations illustrate, Mr. Lindell's claims repackage the election-rigging contentions courts have condemned over the past year. None of his claims has any basis in fact or law. No reasonable person would have filed them and expected to comply with Rule 11.

## PROCEDURAL HISTORY

Mr. Lindell erased any doubt about his bad faith by dismissing his first complaint against Smartmatic and refiling yet more frivolous factual allegations and claims in his Third-Party Complaint in this case. Following transfer from the United States District Court for the District of Minnesota, this Court ordered Mr. Lindell to respond to Smartmatic's original Motion to Dismiss by December 1, 2021 (Minute Order, Case No. 21-cv-2296 (Nov. 10, 2021)), and to refile his claims against Dominion as counterclaims in Case No. 21-cv-445 by December 2, 2021 (ECF No. 84, Case No. 21-cv-2296 (Nov. 15, 2021)). Instead of responding to Smartmatic's motion, Mr. Lindell voluntarily dismissed his claims against Smartmatic on December 1, 2021. He explained that his "claims *as alleged* in the above-entitled action have been *re-filed* as counterclaims and third-party claims" in this case. (ECF No. 85, Case No. 21-cv-2296.) But Mr. Lindell did not simply "re-file[]" his "claims as alleged." (*Id.*)

Instead, Mr. Lindell exploited this litigation's unique posture to assert new, demonstrably groundless factual allegations, accusations of criminality, theories of liability within his existing claims, and causes of action (Counts V and VI) against Smartmatic. *See* Redline Comparison (Ex. 1). Mr. Lindell had the benefit of Smartmatic's Motion to Dismiss, which thoroughly explained why his claims failed and were sanctionable. (ECF No. 81-1 at 2 n.1, Case No. 21-cv-2996.) He responded by accusing Smartmatic of committing additional crimes (witness tampering, witness intimidation, and mail fraud) and violating his rights under the First Amendment, Fifth Amendment, and Fourteenth Amendment. (Compl. ¶¶ 158–59, 170, 176.) Rule 15(a)(2) typically spares litigants from futile amendments like these. *Cf. Foman v. Davis*, 371 U.S. 178, 182 (1962)

(amendment should be denied when "futil[e]"). But Mr. Lindell dodged Rule 15 and imposed additional, needless expense on Smartmatic by misconstruing and manipulating this Court's orders. The Court should consider Mr. Lindell's indifference to its orders and the Federal Rules when deciding whether and how to sanction him and his counsel.

## LEGAL STANDARD

Under Rule 11(b), any attorney or party who files a pleading, written motion, or other paper must certify "to the best of the person's knowledge, information, and belief," formed after a reasonable inquiry, that: (1) the person is not presenting the filing "for any improper purpose"; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; and (3) the factual contentions have evidentiary support or will likely have support after a reasonable opportunity for further investigation. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. 533, 542 (1991) (noting that Rule 11 "sets up a means by which litigants certify to the court, by signature, that any papers filed are well founded").

"The test under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed there was no basis in law or fact for the asserted claim." *Reynolds v. U.S. Capitol Police Bd*., 357 F. Supp. 2d 19, 23 (D.D.C. 2004); *see also In re Ames*, 993 F.3d 27, 34 (1st Cir. 2021) (noting that the objective standard of Rule 11 "ask[s] what is reasonable under the circumstances"); *O'Rourke*, 2021 WL 3400671, at *15 ("The overall circumstances surrounding the filing of a case are critical to the determination of whether sanctions should be awarded."). Factors to consider in determining whether a Rule 11 violation has occurred include:

how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Fed. R. Civ. P. 11 advisory committee's notes to 1983 amendment. Additionally, "while bad faith remains sanctionable, it is now not a *sine qua non* to a Rule 11 impost." *Cousin v. D.C.*, 142 F.R.D. 574, 577 (D.D.C. 1992). In other words, "a pure heart" does not "excuse[] an empty head." *Id.*; *accord O'Rourke*, 2021 WL 3400671, at *11 ("'[B]elief' alone cannot form the foundation for a lawsuit. An 'empty-head' but 'pure-heart' is no justification for patently frivolous arguments or factual assertions. The belief must be a 'substantiated belief.'").

"Rule 11 is designed to ensure that allegations made in a filing are supported by a sufficient factual predicate *at the time that the claims are asserted*." *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 49 (D.D.C. 2015) (emphasis in original); *accord Geller v. Randi*, 40 F.3d 1300, 1304 (D.C. Cir. 1994) ("Rule 11 expressly authorizes sanctions for groundless complaints[.]"); Rule 11 advisory committee's notes to 1993 amendment (Rule 11 requires "litigants to 'stop-and-think' *before* initially making legal or factual contentions"). "As such, it is no answer to a motion seeking Rule 11 sanctions for asserting a baseless claim of fraud to suggest that plaintiffs needed discovery to ascertain whether the claim asserted was well founded." *BEG Invs.*, 85 F. Supp. 3d at 49.

## ARGUMENT

I.   **Mr. Lindell and his counsel have violated Rule 11.**

   A.   **Mr. Lindell and his counsel made provably false factual allegations in violation of Rule 11(b)(3).**

Rule 11(b)(3) prohibits filing a pleading if it "is not well grounded on fact." *Carswell v. Air Line Pilots Ass'n, Int'l*, 248 F.R.D. 325, 328 (D.D.C. 2008).[3] When a party eschews Rule 11 and makes "factual contentions" without "evidentiary support," courts routinely hold the offending party and counsel accountable. *See Intelsat USA Sales LLC*, 2014 WL 12787643, at *6 (imposing Rule 11 sanctions because the offending party's claim "rested on nothing more than speculation, unsubstantiated industry rumors, and multilayered hearsay—none of which provided sufficient pre-filing grounds for including the allegations and causes of action"); *BEG Invs.*, 85 F. Supp. 3d at 53 (same, in light of "[p]laintiff's counsel's apparent disregard for the factual content of the pleadings…[p]articularly given the[ir] gravity"); *Thomas v. Early Cnty., GA*, 360 F. App'x 71, 76 (11th Cir. 2010) (same, where plaintiff and his counsel "should have known at the time they filed the first complaint that there was no support for many of the factual allegations upon which [plaintiff's] claims rested").

Here, Mr. Lindell and his counsel have violated Rule 11(b)(3) by filing a complaint that has no reasonable factual basis. Mr. Lindell rests his claims on factual allegations that are either (a) objectively false, or (b) have been raised in other suits and rejected as baseless. Because the

---

[3] Rule 11(b)(3) applies to both litigants and counsel. *See Intelsat USA Sales LLC v. Juch-Tech, Inc.*, No. CV 10-2095 (RC), 2014 WL 12787643, at *8 (D.D.C. Oct. 15, 2014) ("Rule 11 was drafted to prevent parties from asserting claims that rely on…a flimsy pre-filing factual basis."); *BEG Invs.*, 85 F. Supp. 3d at 52 (Counsel owes an "affirmative duty to conduct a reasonable inquiry into the facts...before filing.").

sanctionable allegations in the Complaint are too numerous to address individually, Smartmatic has grouped them into the following categories.

**1)      Allegations that voting machines were "manipulated" to "alter" the outcome of the 2020 U.S. presidential election**

Mr. Lindell centers his Complaint on the notion that Smartmatic's and Dominion's "voting machines and software…were manipulated and hacked in a manner that caused votes for one candidate to be tallied for the opposing candidate." (*See* Compl. ¶¶ 1, 5, 8, 71–72, 166.) These allegations violate Rule 11(b)(3) because they have no factual basis and have been forcefully rejected by multiple official sources.

First, on November 12, 2020, members of the Election Infrastructure Government Coordinating Council Executive Committee and members of the Election Infrastructure Sector Coordinating Council published a joint statement regarding the security, reliability, and accuracy of the 2020 election results. *See* Cybersecurity & Infrastructure Sec. Agency, *Joint Statement from Elections Infrastructure Government Coordinating Council & The Election Infrastructure Sector Coordinating Executive Committees* (Nov. 12, 2020), *available at* https://www.cisa.gov/news/2020/11/12/joint-statement-elections-infrastructure-government-coordinating-council-election (Ex. 2). The joint statement explained that "[t]he November 3rd election was the most secure in American history." *Id.* It continued: "When states have close elections, many will recount ballots. All of the states with close results in the 2020 presidential race have paper records of each vote, allowing the ability to go back and count each ballot if necessary. This is an added benefit for security and resilience. This process allows for the identification and correction of any mistakes or errors. **There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised**." *Id.* (emphasis in original).

12

Second, in June 2021, reporting revealed that former President Trump's Attorney General, William Barr, had "received two briefings from cybersecurity experts at the Department of Homeland Security and the FBI" about the allegations of rigged voting machines, after which he and his Department of Justice team "realized from the beginning it was just bullshit."[4] Barr is on record with the Associated Press confirming that the Justice Department uncovered no evidence of widespread voter fraud in the 2020 election.[5] He specifically told the Associated Press that federal law enforcement authorities had "not seen fraud on a scale that could have effected a different outcome of the election."[6]

Third, "state governments have rejected the suggestion that election machines or electronic voting systems somehow failed or generated incorrect results." *See O'Rourke*, 2021 WL 3400671, at *19–*21 (citing government inquiries and ballot audits in Georgia and Michigan). And, in Los Angeles County—the *sole jurisdiction* where Smartmatic provided election technology in the 2020 presidential election—elections officials heralded the 2020 election as a success.[7]

Finally, as detailed above, courts have found allegations that voting machines manipulated votes to be meritless. *See, e.g.*, *O'Rourke*, 2021 WL 3400671, at *16 (noting that after the election,

---

[4] *Inside William Barr's Breakup with Trump*, The Atlantic (June 27, 2021), *available at* https://www.theatlantic.com/politics/archive/2021/06/william-barrs-trump-administration-attorney-general/619298/ (Ex. 3).

[5] *See* Michael Balsamo, *Disputing Trump, Barr Says No Widespread Election Fraud*, AP News (Dec. 1, 2020), *available at* https://apnews.com/article/barr-no-widespread-election-fraud-b1f1488796c9a98c4b1a9061a6c7f49d (Ex. 4).

[6] *Id.*

[7] *See* Matt Stiles, *L.A.'s $300-Million Voting System Gets High Marks as Votes Trickle in Across California*, L.A. Times (Nov. 10, 2020), *available at* https://www.latimes.com/california/story/2020-11-10/la-county-vote-system-gets-high-marks-votes-trickle-in (Ex. 5).

13

"dozens of suits" seeking "to delay or stop the certification of certain states' results" "[u]niformly…failed," including "because of an inability to present convincing evidence of fraud or illegal conduct"); *Matter of Giuliani*, 146 N.Y.S.3d at 275–76.

Accounting for all of this publicly available information leads to one conclusion: neither Mr. Lindell nor his counsel had any legitimate, good faith basis to allege or insinuate corruption in the 2020 presidential election. Mr. Lindell and his counsel shoved all contrary information aside because it belied their preconceived narrative. Their deliberate refusal to abide by Rule 11(b)(3) warrants sanctions. *See O'Rourke*, 2021 WL 3400671, at *21, *29 ("[W]hile reports of fraud or election rigging may have been widely disseminated across the internet, by certain media outlets, and in allegations and affidavits submitted in pleadings from failed lawsuits around the country, [p]laintiffs' counsel were (or should have been) on notice before filing the original [c]omplaint…and subsequently, that all of these allegations were heavily disputed, that none had been accepted as true or verified by any government agency or court, that independent investigations by reputable news sources had found no evidence to support the allegations, and that many had been comprehensively rebutted by authoritative sources."); *King*, 2021 WL 3771875, at *38 ("Plaintiffs' counsel helped mold the predetermined narrative about election fraud by lodging this federal lawsuit based on evidence that they actively refused to investigate or question with the requisite level of professional skepticism—and this refusal was to ensure that the evidence conformed with the predetermined narrative (a narrative that has had dangerous and violent consequences).").

### 2) Allegations that rely upon Douglas G. Frank's "analysis"

Mr. Lindell and his attorneys rely heavily on the analysis done by Douglas G. Frank, devoting five pages of the Complaint to what Frank "uncovered" and "found." (*See* Compl. ¶¶ 119–21.) The Complaint describes Frank as "a data scientist," (*id.* ¶ 119), but fails to note that

he is not an elections expert and does not work professionally in data science.  In 2020, Frank was a math teacher at a charter school for kindergarteners through 12th graders in Cincinnati, Ohio.[8]

According to the Complaint, Frank "uncovered an algorithm or 'key'—a sixth degree polynomial—that operates in the electronic voting machines in a number of states to determine the ballots cast." (*Id.* ¶ 119.)  Frank allegedly concluded that someone "determined at the state level to shift votes" by way of statewide algorithms (*id.* ¶ 119), and that those "algorithms had real-time access to voting databases and voting activity before, during, and following" the election.  (*Id.* ¶ 121(f).)

The Complaint's presentment of Frank's analysis as fact, not fiction, is a dereliction of duty under Rule 11. Frank is not an expert in any stretch of the word, and his "analysis" has been criticized and debunked by multiple sources. On April 12, 2021, the Washington Post broke down Frank's analysis in a piece headlined, *How people who should know better abuse math to bolster the 'election fraud' lie*:[9]

> There are certain words I'm not allowed to use when writing for The Post, so I will describe that as "baloney." First of all, [Frank's] claim is that this *isn't* human behavior, so he can't use that as a rationalization. The deviation from his prediction is a function of his using an average of values, nothing more. And, yes, you do know that there's an algorithm function: *the one he made!* …
>
> A lot of people won't know better than to understand Frank's assessments for what they are. Lindell doesn't, it seems, nor do a lot of other people who, like Frank, are eager to assume that some fraud occurred.

---

[8] Haley BeMiller, *Cincinnati Area Chemist Takes Stage at Trump Rally to Tout False Claims About 2020 Election*, Cincinnati Enquirer (June 30, 2021), *available at* https://www.cincinnati.com/story/news/2021/07/01/ohio-trump-rally-featured-cincinnati-teacher-false-election-claims/7812156002/ (Ex. 6).

[9] Philip Bump, *How People Who Should Know Better Abuse Math to Bolster the 'Election Fraud' Lie*, Wash. Post (Apr. 12, 2021), *available at* https://www.washingtonpost.com/politics/2021/04/12/how-people-who-should-know-better-abuse-math-bolster-election-fraud-lie (Ex. 7).

On April 16, 2021, Politifact, a non-partisan fact-checking website that is supported by the Poynter Institute, a nonprofit school for journalists, published a piece that rated Frank's claims "Pants on Fire."   PolitiFact reported that it had examined data from the Michigan Secretary of State's website and official county results and "found problems with numbers Frank used and the conclusions he drew."[10]   PolitiFact summarized:

> Frank claims his analysis of Michigan's 2020 election results shows that the election outcome was decided at the state-level ahead of time using a mathematical "key" to manipulate vote totals.
>
> Frank offers no evidence for his claim other than a statistical correlation to this key, whose derivation he doesn't explain. The figures he cites as the basis of his analysis are different from those in official records.
>
> Experts said the vote-manipulation effort Frank theorizes would involve a wide-ranging conspiracy that would not be possible under Michigan's decentralized election system.
>
> We rate his claim Pants On Fire.[11]

Mr. Lindell's counsel knew about these criticisms of Frank's analysis before presenting them to the Court in the Complaint that they signed.   If they did not know, they failed to conduct an inquiry reasonable under the circumstances.

### 3)      Allegations that China owns Smartmatic

As part of his predetermined narrative, Mr. Lindell alleges that "by the time of the 2020 election, Chinese government-related entities, Chinese technology companies, and powerful Chinese financial interests had direct or indirect ownership of and near-total access to Dominion's

---

[10] Clara Hendrickson, *No, Michigan Didn't Use an Algorithm to Manipulate 2020 Election Results*, Politifact          (Apr.          16,          2021),          *available          at* https://www.politifact.com/factchecks/2021/apr/16/douglas-frank/no-evidence-michigan-used-algorithm-manipulate-ele/ (Ex. 8).

[11] *Id.*

and Smartmatic's voting machine technology." (Compl. ¶ 67.) This allegation ostensibly makes more plausible Mr. Lindell's contention that China "hack[ed] electronic voting machines" and "changed the outcomes in the presidential race in the 2020 General Election." (*Id.* ¶ 8.)

No reasonable litigant or attorney would have made these outrageous allegations. For starters, publicly available information confirms that no governmental or private Chinese entity has "direct or indirect ownership" of Smartmatic. The company's founders and their families own a majority of shares, and the remaining shares (less than 20%) are held by employees and investors. *See Lawsuit Updates & Fact Checks*, Smartmatic (last visited Dec. 9, 2021), *available at* https://www.smartmatic.com/us/lawsuit-updates-fact-checks/. In court filings, Smartmatic has disclosed that SGO Corporation Limited owns 100% of Smartmatic International Holding B.V., which owns 100% of Smartmatic USA Corp. (*See* Smartmatic's Mot. to Dismiss Mem., Ex. B ¶¶ 14–16, ECF No. 94-4.) Mr. Lindell thus had no evidentiary basis to allege that "powerful Chinese" interests have "direct or indirect ownership" of any Smartmatic Defendant. (Compl. ¶ 67.) His allegation is "pure speculation" and sanctionable under Rule 11. *See Intelsat USA Sales*, 2014 WL 12787643, at *6 (finding violations of Rule 11(b)(3) because the offending party's allegation "was based on pure speculation—not facts, evidence, or even plausible inferences premised upon such facts or evidence").

### B. Mr. Lindell's counsel certified that Mr. Lindell's claims were nonfrivolous in violation of Rule 11(b)(2).[12]

Rule 11(b)(2) asks "whether the Complaint is based on a plausible view of the law." *Williams v. Romarm S.A.*, No. 19-CV-183 (EGS), 2020 WL 1557156, at *7–*8 (D.D.C. Apr. 1, 2020) (sanctioning plaintiff's counsel because "at the time [he] filed the Complaint…it was not

---

[12] The court may impose a monetary sanction only on counsel, not a represented party, for violating Rule 11(b)(2). *See* Fed. R. Civ. P. 11(c)(5)(A).

reasonable for him to believe that [it] was based on a plausible view of the law"). It is also a "violation of Rule 11(b)(2) to allege legal theories that have no apparent basis for application in th[e] case." *Reynolds*, 357 F. Supp. 2d at 25. "Putting aside the cynicism inherent in such an attitude, judicial resources are far too scarce to accommodate such conduct and Rule 11 was constructed, in part, to ensure that it does not become common place." *See id.* (sanctioning counsel for pursuing claims "without providing any factual basis" to show how they were applicable).

Mr. Lindell's claims against Smartmatic are not based on any plausible view of the law. They were all futile when pleaded. (*See* Smartmatic Defs.' Mem. in Support of Their Mot. to Dismiss ("Smartmatic's Mot. to Dismiss Mem."), ECF No. 94-1 at 12–45.) Mr. Lindell alleges his claims not because they had a reasonable chance of success, but because he wanted to impugn Smartmatic with criminal, conspiratorial wrongdoing. His counsel should be held accountable for converting his conspiracy theories into frivolous claims.

### 1)       Mr. Lindell's civil conspiracy claim is frivolous.

Mr. Lindell's counsel had no legitimate basis to believe that Mr. Lindell could sue Smartmatic for civil conspiracy (Count VII).  "[C]ourts in this Circuit have repeatedly held that [t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." *Karim-Panahi v. 4000 Mass. Apartments*, 302 F. Supp. 3d 330, 338 (D.D.C. 2018); *see also Bush v. Butler*, 521 F. Supp. 2d 63, 68–69 (D.D.C. 2007) (holding that "[p]laintiff has failed to plead sufficient facts from which the Court could infer the existence of a conspiracy between the defendants" because "[t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law"); *Brady v. Livingood*, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) ("A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss.").

18

Based on this precedent, counsel should have known that Mr. Lindell had no possibility of prevailing. All the Complaint contains is conclusory allegations of a conspiracy. Mr. Lindell alleges none of the facts necessary to show a conspiracy formed, such as "when or how [the allegedly conspiratorial] agreement was brokered…." *De La Fuente v. DNC Servs. Corp.*, No. CV 18-cv-336, 2019 WL 1778948, at *9 (D.D.C. Apr. 23, 2019). He fails to allege "any events, conversations, or documents indicating that there was ever [a conspiratorial] agreement or 'meeting of the minds' between" Smartmatic and any other defendant. *McCreary v. Heath*, No. 04-cv-623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005). Nor does Mr. Lindell describe "the [specific] persons involved in the agreement, the nature of the agreement, [or] what particular acts were taken to form the [alleged] conspiracy" against him. *Bush*, 521 F.Supp.2d at 68–69. If Mr. Lindell had any support to accuse Smartmatic of joining a conspiracy, he would have alleged *a* meeting, *a* conversation, or *a* document—*something*—to suggest that an unlawful agreement formed between Smartmatic and Dominion. But the Complaint offers nothing. Mr. Lindell alleges no facts to show when, where, or how Smartmatic and Dominion agreed to anything in the last decade.

Mr. Lindell also ignores the most obvious explanation for why Smartmatic and Dominion have each filed defamation suits this past year: they were both defamed on national television for weeks on end and now seek redress for the harm they suffered. The allegation that Smartmatic and Dominion had a "meeting of the minds" to conspire against Mr. Lindell lacks factual support and has no likelihood of obtaining factual support because it is fictional.

Absent any colorable basis to accuse Smartmatic of belonging to a conspiracy, Mr. Lindell's counsel knew or should have known that Count VII was frivolous. Their reckless assertion of this claim, despite their obligations under Rule 11(b)(2), is sanctionable. *See Hanson*

*v. Greenspan*, No. CIV. A. 91-1599(GHR), 1991 WL 274267, at *4 (D.D.C. Dec. 6, 1991) (imposing sanctions under Rule 11 where "the conclusory and vague allegations in the complaint besp[oke] woefully inadequate research into the factual and legal bases of th[e] lawsuit"); *Del Canto v. ITT Sheraton Corp*., 865 F. Supp. 934, 938 (D.D.C. 1994) (same, where plaintiff brought a conspiracy claim despite having "no evidence at all of a conspiracy between the" defendants); *see also In re Ames*, 993 F.3d at 36 (same, because plaintiff did not "come within a country mile of" pleading facts to show a conspiracy, and "a pleader owes an independent responsibility to each defendant whom he chooses to sue"); *Abner Realty, Inc. v. Admin. Of Gen. Servs.*, No. 87 Civ. 3075, 1998 WL 410958, at *6–*7 (S.D.N.Y. July 22, 1998) (same, where plaintiff accused defendants of "fraud, conspiracy, and corruption…without any investigation or evidence to substantiate the claims").

### 2)   Mr. Lindell's Section 1985(3) and Section 1983 claims are frivolous.

"[T]he most basic research would have informed" Mr. Lindell's counsel that his Section 1985(3) and Section 1983 claims are "objectively frivolous." *Del Pino v. Bay of Pigs Veterans Ass'n*, No. 07-22869-CIV, 2008 WL 11411845, at *2 (S.D. Fla. Feb. 12, 2008) (sanctioning plaintiff's counsel under Rule 11(b)(2) for failing to ensure that plaintiff's claims under Section 1985(3) were "nonfrivolous"); *LeFande v. Mische-Hoeges*, No. 10-cv-1857, 2019 WL 8331599, at *1, *4 (D.D.C. Jan. 29, 2019) (finding Rule 11 violation for filing frivolous Section 1983 claim where plaintiff had "*no authority* to support [his] contention that [defendant] acted under color of state of law" (emphasis in original)); *accord Hollister*, 258 F.R.D. at 1 (same, where attorney had "no colorable authority" for the "legally frivolous complaint" he "sign[ed] and fil[ed]"). As detailed in Smartmatic's Motion to Dismiss Memorandum, Mr. Lindell's Section 1985(3) and Section 1983 claims have several obvious pleading deficiencies.

For example, even if the Court accepted Mr. Lindell's allegations as true, the conspiracy he alleges is not actionable under the Support or Advocacy Clause of Section 1985(3). It prohibits "conspiracies that interfere with…the right to support candidates in federal elections…." *Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Even if the alleged "conspiracy" existed (Compl. ¶ 166), it purportedly began *after* the 2020 U.S. election. And, Mr. Lindell does not allege that anyone ever interfered with his support or advocacy of a candidate for federal office.

A different, but similarly obvious, pleading deficiency dooms both Mr. Lindell's Section 1985(3) claim and Section 1983 claim: the absence of state action. In Count IV, Mr. Lindell seeks redress under 42 U.S.C. § 1985(3) by alleging that Smartmatic and Dominion "deprived" him of his "freedoms of speech and of expression" under the First Amendment. (Compl. ¶ 166.) Similarly, Mr. Lindell stakes his Section 1983 claim on Smartmatic's alleged infringement upon his First Amendment rights. (*See* Compl. ¶ 173 (alleging that Smartmatic and Dominion "have attempted through the use of the courts and the litigation process to suppress Lindell's freedom of speech and his right to disseminate information and data regarding the role of Dominion voting machines in election fraud and election tampering"). But "to trigger First Amendment protection" for these claims, Mr. Lindell must allege that "the infringement upon speech [arose] *from state action of some kind.*" *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019) ("It is axiomatic that the constitutional guarantee of free speech is a guarantee only against abridgement by government, federal or state."); *see also Elkins v. Dist. of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012) (noting that 42 U.S.C. § 1983 "provides a remedy in damages to those deprived of 'any rights, privileges, or immunities secured by the Constitution and laws,'" but only when the deprivation is caused by someone acting *"under color of state law"*). Thus, for both his Section

1985(3) claim and his Section 1983 claim, Mr. Lindell must show that Smartmatic is a state actor or acted under color of law when "depriving" him of his freedom of speech.

Mr. Lindell cannot *possibly* make this showing because "[n]o colorable authority" suggests that either Smartmatic or Dominion qualified as a government actor or acted under color of state or D.C. law when they filed defamation suits or sent cease-and-desist letters. *See Hollister*, 258 F.R.D. at 5; (*see* Smartmatic's Mot. to Dismiss Mem. at 18–22). The only connection Mr. Lindell identifies between the State and Smartmatic—a private corporation (Compl. ¶¶ 29–31)—is its contract to provide voting technology to Los Angeles County, California during the 2020 election. (*Id*. ¶ 54.)  But Mr. Lindell alleges no nexus between (a) the alleged "lawfare" against him and (b) Smartmatic's contract or the State in general, such that the "lawfare" was cloaked in state authority or can be fairly attributed to the State. (*See* Smartmatic's Mot. to Dismiss Mem. at 18–22); *cf. LeFande v. Mische-Hoeges*, 712 F. App'x 9, 10–11 (D.C. Cir. 2018) (reversing denial of sanctions against plaintiff who sued police officer for reporting him to her fellow officers and noting "[a]s a stalking complainant, she was an officer[] [acting] in the ambit of [her] personal pursuits and thus *plainly excluded* from section 1983 liability").

At bottom, Mr. Lindell's Section 1985(3) and Section 1983 claims hinge on the presence of state authority, but its absence is "so clearly lacking that even the most cursory of legal inquiries would have uncovered this error." *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 32 (D.D.C. 2012); *see LeFande*, 712 F. App'x at 11 (reversing denial of defendant-officer's motion for sanctions because the plaintiff "failed to plausibly allege" the "color-of-law element" for a 42 U.S.C. § 1983 claim); *LeFande v. Mische-Hoeges*, No. 10-CV-1857 (DLF), 2018 WL 6620107, at *3, *10 (D.D.C. Oct. 22, 2018) (Friedrich, J.) (imposing sanctions and awarding fees under Rule 11 and 42 U.S.C. § 1988 on remand, after finding that plaintiff's failure "to allege any facts that even suggested that

[defendant] acted under color of state law" was a "defect[]" of "such magnitude that the plaintiff's ultimate failure [was] clearly apparent from the beginning"); *Marceaux v. Lafayette City-Parish Consol. Gov't*, 614 F. App'x 705, 709 (5th Cir. 2015) (affirming finding that "plaintiffs violated Rule 11(b)(2) by filing complaints replete with obviously deficient claims," such as claims for violations of constitutional rights when "no defendant [was] a federal actor"); *Del Pino*, 2008 WL 11411845, at *2 (finding plaintiff's claim for "deprivation of Constitutional rights" was "objectively frivolous" because "[p]laintiff's counsel knew of the state action requirement when filing" plaintiff's pleading, and "[e]ven assuming the truth of [its] allegations," "there is not one fact that reasonably intimates that any [d]efendant exercised any power that was received by virtue of state law or that any [d]efendant's conduct was 'fairly attributable to the State'").

Mr. Lindell's addition of Section 1983 claims to his prior pleading—for alleged violations of his First, Fifth and Fourteenth Amendment rights—is all the more dumbfounding because *Smartmatic had never interacted with him until this lawsuit*. (Compl. ¶¶ 7, 54, 166, 170, 176.) The fact that Smartmatic has since sued him for defamation does not change the Rule 11 analysis of his claims either.[13] They remain baseless and foreclosed by the most basic precedent. Mr. Lindell's counsel should be sanctioned under Rule 11(b)(2) for certifying Counts IV, V, and VI.

### 3) Mr. Lindell's RICO claim is frivolous.

"[C]ourts have not hesitated to impose Rule 11 sanctions as a sanction for bringing frivolous RICO claims." *Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 919 (6th Cir. 2020). RICO claims are uniquely subject to abuse because they impute criminal wrongdoing; are very costly to defend; and carry the prospect of treble damages and fee-shifting. *See id.* ("A civil RICO claim is an unusually potent weapon—the litigation equivalent of a thermonuclear device."). For these

---

[13] *See Smartmatic USA Corp. v. Lindell*, Compl., Case No. 22-cv-98 (D. Minn. Jan. 18, 2022).

reasons, "there is a strong temptation for plaintiffs to raise a RICO claim, even when the claim is obviously frivolous." *Id.*; *cf. Gross v. Waywell*, 628 F.Supp.2d 475, 480 (S.D.N.Y. 2009) (noting that, even though RICO claims overwhelmingly fail, plaintiffs are enticed to bring them to obtain "treble damages and attorney's fees," "to score a tactical edge," and to impose the "extraordinary costs associated with defending complex charges").

When plaintiffs succumb to temptation and assert frivolous RICO claims, courts hold their counsel to account under Rule 11. *See Son Ly*, 910 F. Supp. 2d at 32 (Sullivan, J.) (directing plaintiffs' counsel to show cause why they should not be sanctioned for "frivolously fil[ing]" "wholly  insubstantial civil RICO claims" in violation of Rule 11(b)(2)); *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (finding plaintiff's "RICO theory [was] so feeble" and "inadequa[te]" that it contravened Rule 11(b)(2) and Fed. R. App. P. 38); *see also Bachi-Reffitt*, 802 F. App'x at 918 (sanctioning plaintiff and her attorney under Rule 11 because they "had no good faith basis to file" plaintiff's RICO claim, "knew that they did not, and could offer no 'non-frivolous' explanation as to why they did so anyway"); *Upchurch v. O'Brien*, No. 19-CV-165-WMC, 2021 WL 3617098, at *8–*11 (W.D. Wis. Aug. 16, 2021) (same, because plaintiff's "patently frivolous lawsuit" "completely failed to state a RICO violation"); *O'Rourke*, 2021 WL 3400671, at *29 (concluding that "counsel acted with objective bad faith in filing this lawsuit and dumping into a public federal court pleading allegations of a RICO conspiracy that were utterly unmerited by any evidence").

Here, the barest inquiry would have informed Mr. Lindell's counsel that Count III is "wholly insubstantial," *Son Ly*, 910 F. Supp. 2d at 32, for all the reasons set forth in Smartmatic's Motion to Dismiss. For example, the Complaint does not come close to alleging the foundation of a RICO violation: a predicate racketeering act. Though Mr. Lindell accuses Smartmatic and

Dominion of "criminal activity" (Compl. ¶ 158), he points only to the following acts: (1) Smartmatic filed lawsuits alleging defamation against Fox News and others; (2) Dominion sent "cease and desist" letters to numerous individuals and organizations; and (3) Dominion filed several lawsuits alleging defamation against Mr. Lindell and others. (*Id*. ¶¶ 128–40, 156, 158–60.) Mr. Lindell asserts that these litigation activities "constitute extortion, witness tampering, witness intimidation, and mail fraud for purposes of establishing the requisite 'predicate acts' for a civil RICO claim." (*Id*. ¶ 158.) But Mr. Lindell's counsel should have known that courts have uniformly rejected construing such litigation activities as RICO predicate acts.

*Extortion*. Litigation is not extortion in this District or anywhere else. *See E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) (dismissing RICO claim based upon "defendants' litigation strategies" because "recognizing litigation as a form of extortion would transform[] a state common-law action into a federal crime"), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015); *see also Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 61 (D.D.C. 2019) ("Numerous other circuit courts and district courts across the country have concluded that wrongful litigation activities cannot serve as RICO predicate acts."), *aff'd sub nom.*, 801 F. App'x 780 (D.C. Cir. 2020); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014) ("The courts of appeals which have addressed the question have all agreed that the instigation of meritless litigation does not establish the predicate RICO act of extortion.").

Even if Mr. Lindell's theory of extortion was legally tenable, his Complaint makes no attempt to satisfy the requirements of extortion. *See* 18 U.S.C. § 1951(b)(2) (defining "extortion" to mean "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear"). The Complaint is silent about any property Dominion or Smartmatic obtained from Mr. Lindell or anyone else with that person's consent.

Importantly, Smartmatic identified these rudimentary pleading errors in its Motion to Dismiss against Mr. Lindell's prior pleading. Yet, his counsel neither addressed them nor withdrew his extortion accusation. Instead, they added new, equally frivolous accusations of witness tampering and mail fraud as "predicate acts." (Compl. ¶ 158.)

*Witness Tampering*. Mr. Lindell alleges that Dominion sent cease-and-desist letters to unidentified individuals and "deter[red]" them from "participat[ing]" in a state election audit. (*See* Compl. ¶¶ 19, 158.) Even if this were true, it is not witness tampering in violation of 18 U.S.C. § 1512. Mr. Lindell's counsel should have known that courts have "rejected claims that threats of future litigation, or the initiation of actual litigation, constitute witness tampering…because such litigation is not 'force, intimidation or threat….'" *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 266 (S.D.N.Y. 2001); *accord E. Sav. Bank*, 31 F. Supp. 3d at 13 ("Abusive or sham litigation does not constitute" witness tampering under § 1512 or any other "RICO predicate act.").

Mr. Lindell's witness tampering accusation is particularly egregious because he stands no chance of linking it to his alleged injuries. *See E. Sav. Bank*, 31 F. Supp. 3d at 12 ("The plaintiff in a civil RICO suit must…show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.") (citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10–11 (2010)). "Where the set of actions alleged to have caused the harm to the plaintiff" are "entirely distinct from the alleged RICO violation," the Supreme "Court [has] held that the injury [is] too attenuated to state a RICO claim." *Id.* at 15. Mr. Lindell cannot identify one instance in which Dominion's purported witness tampering harmed him. Adding witness tampering to his RICO claim made it more salacious, but not more viable. *See id.* (dismissing RICO claim where the plaintiff's alleged damages were "wholly removed from the alleged predicate acts" of extortion and witness tampering); *see also Robertson v. Cartinhour*, 867 F. Supp. 2d 37, 55 (D.D.C. 2012)

(same, because plaintiff "lack[ed] standing to bring any of [his] RICO claims since he has not been injured by the conduct constituting the [RICO] violation"); *Fiorani v. Chrysler Grp., LLC*, No. 113CV346AJTIDD, 2014 WL 12527186, at \*3 (E.D. Va. Jan. 30, 2014) (same, where plaintiff failed to "plausibly allege[] that he was injured in his business or property by virtue of the" predicate act).

   ***Mail Fraud***. Mr. Lindell's mail fraud allegation is no less frivolous than it is cavalier. The words "mail fraud" appear once in his Complaint, as an afterthought predicate act for his RICO claim. (*See* Compl. ¶ 158.) Even though mail fraud accusations are serious and must comply with Rule 9(b), the Complaint entirely ignores the requirements of the crime. *See Bates v. Nw. Hum. Servs., Inc.*, 466 F. Supp. 2d 69, 88 (D.D.C. 2006) ("Plaintiffs alleging mail and wire fraud must satisfy two essential elements: (1) a scheme to defraud; and (2) use of the mails or wires for the purpose of executing the scheme. In accordance with Rule 9(b), plaintiffs alleging fraud must further state the time, place and content of the false misrepresentations, the fact misrepresented[,] and what was retained or given up as a consequence of the fraud."). Here, the Complaint identifies no scheme to defraud, no misrepresentation, and nothing that was "retained or given up as a consequence of the fraud." *Id.* at 89. Mr. Lindell's allegations do not speak to mail fraud, let alone satisfy its requirements. His counsel had no good faith basis to add mail fraud to his Complaint.

* * *

   Minimal research reveals these glaring deficiencies, among others, in Mr. Lindell's RICO claim. Mr. Lindell's lawyers' repeated certification of Count III as non-frivolous is sanctionable. *See Bachi-Reffitt*, 802 F. App'x at 916–18 (imposing Rule 11 sanctions because plaintiff's allegations were "an effort to concoct a RICO enterprise" and failed "to properly plead the elements of her RICO claims"); *Upchurch*, 2021 WL 3617098, at \*8–\*11 (same, where the

27

complaint did not "come close to alleging racketeering activity"); *Son Ly*, 910 F. Supp. 2d at 32 (issuing order to show cause because "plaintiffs' complaint wholly fail[ed] to set forth a RICO claim" and made no "attempt to" establish all of the "required elements"); *Williams*, 351 F.3d at 298–99 (same, because plaintiff could not "explain how" the "mailings" he received from a casino "constitute the predicate act of mail fraud, and thus 'racketeering activity'").

### C.   Mr. Lindell and his counsel presented his complaint for an improper purpose in violation of Rule 11(b)(1).

Mr. Lindell and his counsel have violated Rule 11 by treating the Court as an outlet for disinformation. Contrary to what they may believe, "[c]ourts are not instruments through which parties [may] engage in [] gamesmanship or symbolic political gestures." *Wis. Voters All.*, 514 F. Supp. 3d at 121. Nor is it "a proper function of a federal court" to serve as "any sort of political or protest forum" "to the detriment of parties with serious disputes waiting to be heard." *See Saltany v. Reagan*, 886 F.2d 438, 439–40 (D.C. Cir. 1989) (per curiam) (remanding for imposition of Rule 11 sanctions where plaintiffs counsel "abused the judicial process" by bringing a case that they "surely knew…offered no hope whatsoever of success," but did so anyway as "a public statement of protest of Presidential action"); *Knipe v. Skinner*, 19 F.3d 72, 77 (2d Cir. 1994) (affirming Rule 11 sanctions because the complaint was merely "[a]nother creative avenue to beat a dead horse" and plaintiff was "pursuing a personal agenda against" a government entity without a good faith basis); *accord King*, 2021 WL 3771875, at *38 ("The nation's courts…are reserved for hearing legitimate causes of action," not "politically motivated accusations, allegations, and gamesmanship[.]"); *Hollister*, 258 F.R.D. at 5 (sanctioning pro se lawyer for filing "a legally frivolous complaint" "as a 'public statement of protest'").

Mr. Lindell instituted this action not because he or his counsel reasonably believe that he is entitled to the relief he seeks. His factual allegations have no support, and his claims are

frivolous.  Mr. Lindell has no chance of recovering any sum, much less the billions of dollars he

seeks in damages. Rather, Mr. Lindell filed this case because it presented an opportunity to amplify

his false statements about the 2020 U.S. election. Indeed, a direct line can be drawn between (a) the

statements Mr. Lindell has made out of court over the last year delegitimizing the results of the

2020 election, and (b) the allegations in his Complaint.

> 1)   **Mr. Lindell's record of making false statements about the 2020 election**

As early as December 2020, Mr. Lindell began appearing on media outlets to report the

"election fraud" he claimed "stole" the election.[14] He also sponsored and spoke at "Stop the Steal"

rallies to spread election fraud theories and gin up crowds. On December 6, 2020, Mr. Lindell

spoke at a "Women for America First" rally,[15] where he used his speaking slot to declare that

"crooked" voting machines tilted the outcome of the election:

> Donald Trump got so many votes that they didn't expect that it broke the algorithms
> in those machines. They went into a panic so…they shut everything down at the
> same time, from Georgia to Wisconsin to Michigan to Pennsylvania. Crazy, at the
> exact same time? You know what the odds of that are?[16]

Mr. Lindell made similar claims at subsequent rallies, including in Washington D.C.  On

December 12, 2020, he told crowds at another "Women for America First Rally":

> On election night…all the algorithms that were set across our country, in the
> machines like you just heard…where Biden got 1.2 votes for every vote, and our
> President got like .66. Okay?...It was probably 80 million votes that came in for our

---

[14] Tr. of *President Trump's Not Going Anywhere. Mike Lindell with Sebastian Gorka on AMERICA First* at 5:8–9, 8:18, America First with Dr. Sebastian Gorka (Dec. 3, 2020), *available at* https://www.facebook.com/watch/?v=438439460653478 (video at 4:00–08, 7:40–50) (Ex. 9).

[15] *See* Craig Silverman, Jane Lytvynenko & Pranav Dixit, *How "The Women for America First" Bus Tour Led to the Capitol Coup Attempt*, BuzzFeed News (Jan. 26, 2021), *available at* https://www.buzzfeednews.com/article/craigsilverman/maga-bus-tour-coup [hereinafter Women for America First Bus Tour] (Ex. 10).

[16] *Id.*

great President, and because of you, guess what? They all broke the algorithms in the machines.[17]

That same day, Mr. Lindell opened the Jericho March and exclaimed:

> Everything that I've been telling you for three weeks now is true. I have seen it. The fraud is 100% and Donald Trump will be our president for four more years.…They tried to steal this election.…on election night at 11 o'clock.…At 11:15, the algorithms of these machines that cheated the whole country could not keep up because he had got so many votes it broke the algorithms…The technology of these Dominion machines…it's all going to be exposed in the future.…Georgia, you better have a fair election and not use those machines.[18]

Lindell returned to Washington D.C. for a rally on January 5, 2021.[19] He informed attendees about the "different silos" of "fraud" that "flip[ped]" the election; claimed that the U.S. Supreme Court had "all the evidence"; and promised that "if the truth comes out," "there's not going to be a civil war."[20]

These comments were a prelude to the misinformation Mr. Lindell and others funneled to the masses that assembled on January 6. Thousands gathered in the Capitol after heeding calls to protest Congress's certification of the Electoral College vote count. As the D.C. Circuit Court of Appeals has noted, January 6 presented "a unique opportunity to obstruct democracy … because

---

[17] Tr. of *Women for America First Rally* at 4:14–22, C-SPAN (Dec. 12, 2020), *available at* https://www.c-span.org/video/?507234-1/women-america-rally (video at 2:51:09–38) (Ex. 11).

[18] Tr. of *Mike Lindell Opens the Jericho March, Dec 12* at 2:11–14, 6:20–25, 7:4–7, 7:20, 8:4–10, Jericho March (Dec. 12, 2020), *available at* https://app.videosquirrel.app/watch/1812 (video at 0:50–1:01, 6:32–8:20) (Ex. 12).

[19] *See, e.g.*, Tr. of *Mike Lindell Mentions Possible 'Civil War' During Pro-Trump Rally at U.S. Capitol on January 5, 2021* at 3:22–24, YouTube (Jan. 5, 2021), *previously available at* https://www.youtube.com/watch?v=s7nIFVLrdIE&feature=youtu.be ("All the evidence we have, we know when they started back dooring votes in Wisconsin and Pennsylvania and Michigan.") (Ex. 13).

[20] *Id.* at 2:23–3:9, 9:4–10, 9:13–21.

of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

Mr. Lindell played no small part in coordinating the events. He and his company, My Pillow, Inc., sponsored the 20-city "March for Trump" bus tour that incited rallygoers and encouraged them to assemble at the Ellipse on January 6.[21] The bus tour and other organizational efforts proved successful, as tens of thousands of people descended on the nation's capital.[22] *See 77 Days* ("*Large crowds often turned out, drawn in part by Mr. Lindell*. He had emerged as a star of the Trump media universe…In an interview, Mr. Lindell said he had sponsored the bus tour so that he could share the findings of investigations he was financing — he was spending $1 million in all — to produce evidence of voter fraud….").

Despite witnessing the tragedies that unfolded on January 6, 2021, Mr. Lindell has continued to spread misinformation related to the 2020 election. Between February 2021 and June

---

[21] *See* Women for America First Bus Tour (Ex. 10); Mike Lindell (@realMikeLindell), Twitter (Nov. 29, 2020, 12:06 PM), *previously available at* https://twitter.com/realMikeLindell/status/1333094936758153219 (Ex. 14); Screenshots of *March to Save America Rally RSVP Website* (Jan. 6, 2021), *previously available at* 1 https://web.archive.org/web/20210106224955/https://trumpmarch (Ex. 15).

[22] *See also* Press Release, *Select Committee Subpoenas Organizers of Rallies and Events Preceding January 6th Insurrection*, U.S. House Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol ("Select Committee") (Sept. 29, 2021), *available at* https://january6th.house.gov/news/press-releases/select-committee-subpoenas-organizers-rallies-and-events-preceding-january-6th (Ex. 16); Jim Rutenberg, Jo Becker, Eric Lipton, Maggie Haberman, Jonathan Martin, Matthew Rosenberg & Michael S. Schmidt, *77 Days: Trump's Campaign to Subvert the Election*, N. Y. Times (Jan. 31, 2021), *available at* https://www.nytimes.com/2021/01/31/us/trump-election-lie.html ("Mr. Trump took the stage at the Ellipse [on January 6] shortly before 1 p.m., *calling on the tens of thousands* before him to carry his message to Republicans in the Capitol: 'You'll never take back our country with weakness.'") [hereinafter *77 Days*] (Ex. 17).

2021, he created and published four "documentaries": *Absolute Proof*,[23] *Absolute Interference*,[24] *Scientific Proof*,[25] and *Absolutely 9-0*.[26] Each film purported to release "evidence" corroborating Mr. Lindell's contention that voting technology fixed the 2020 U.S. election. In *Absolute Proof*, Mr. Lindell claimed to possess unequivocal evidence that the 2020 U.S. election was rigged through voting machines:

> I think it was January 9th all of a sudden, these people, they brought me some, a piece of evidence, that's 100% proved. It's like a print of inside the machine of the timestamp that showed another country, other countries attacking us, hacking into our election through these machines, and it shows a vote's flipped. And I'm going wow, I got to get this out there. And from that point on, I started putting it out there…[27]

Mr. Lindell contended that *Absolute Proof* showed "100%" that America was attacked through voting machines by China: "And we've just shown everybody in the world 100% evidence that this was an attack on our country and is still under attack by China and other countries through the use of these machines used in our election…."[28] He made similar charges in *Absolute Interference*,

---

[23] One America News (@OANN), Twitter (Feb. 5, 2021, 3:38 AM) (Ex. 18); Tr. of Mike Lindell, *Absolute Proof: Exposing Election Fraud and the Theft of America by Enemies Foreign and Domestic* (Feb. 2021) (Ex. 19) [hereinafter *Absolute Proof*]; Screenshots of *Absolute Proof* (Ex. 20).

[24] Tr. of Mike Lindell, *Absolute Interference: The Sequel to Absolute Proof with New Evidence Foreign and Domestic Enemies Used Computers to Hack the 2020 Election* (Apr. 2021) [hereinafter *Absolute Inteference*] (Ex. 21); Screenshots of *Absolute Interference* (Ex. 22).

[25] Tr. of Mike Lindell, *Scientific Proof: Internationally Renowned Physicist Absolutely Proves 2020 Election Was Biggest Cyber-Crime in World History* (Mar. 2021) [hereinafter *Scientific Proof*] (Ex. 23); Screenshots of *Scientific Proof* (Ex. 24).

[26] Tr. of Mike Lindell, *Absolutely 9-0* (June 2021) (Ex. 25); Screenshots of Mike Lindell, *Absolutely 9-0* (June 2021) (Ex. 26).

[27] Tr. of Mike Lindell, *Absolute Proof*, at 2:19–3:2 (Feb. 2021) (Ex. 19).

[28] *Id.* at 86:22–87:1.

such as: "I have proof, 100% proof that our country was attacked by China, by communism coming in, this foreign interference to our elections, through the machines, Dominion, Smartmatic, ES&S, all of them."[29] In *Absolutely 9-0*, Mr. Lindell asserted that, once the U.S. Supreme Court heard the "evidence" of "fraud" by voting machine companies, it would vote 9-0 in favor of overturning the election.[30]

To ensure that his documentaries were widely disseminated, Mr. Lindell promoted them and other falsehoods about the election on Internet radio and television shows, including on: February 5, 2021 (Steve Bannon's *War Room* podcast) (Ex. 27); February 6, 2021 (Steve Bannon's *War Room* podcast) (Ex. 28); February 8, 2021 (OANN's *Real America with Dan Ball*) (Ex. 29); February 11, 2021 (an OANN Special with Steve Bannon) (Ex. 30); February 24, 2021 (*The Pete Santilli Show*) (Ex. 31); March 26, 2021 (Steve Bannon's *War Room* podcast) (Ex. 32); March 30, 2021 (the *Eric Metaxas Show*) (Ex. 33); April 1, 2021 (*Indivisible* with John Stubbins) (Ex. 34); April 8, 2021 (*USA Watchdog* with Greg Hunter) (Ex. 35); April 9, 2021 (Steve Bannon's *War Room* podcast) (Ex. 36); May 3, 2021 (Steve Bannon's *War Room* podcast) (Ex. 37); and May 8, 2021 (Steve Bannon's *War Room* podcast) (Ex. 38). In every appearance, Mr. Lindell repeated the same lies that inspired rioters to breach the Capitol on January 6.

Then, in August 2021, Mr. Lindell led a multi-day "Cyber Symposium" in South Dakota. The objective was to prove that China "stole" the 2020 presidential election for President Biden.[31]

---

[29] Tr. of *Absolute Interference*, at 6:15–18 (Ex. 21).

[30] *See, e.g.*, Tr. of *Absolutely 9-0*, at 1:1–15, 2:6–13 (Ex. 25).

[31] Grace Dean, *Here's What Happened at Mike Lindell's Cyber Symposium, from Him Storming Offstage to Bolsonaro's Son Giving Him a MAGA Hat Signed by Trump*, Business Insider (Aug. 15, 2021), *available at* https://www.businessinsider.com/mike-lindell-voter-election-fraud-cyber-symposium-donald-trump-bolsonaro-2021-8 (Ex. 39).

Mr. Lindell's "general claim" was that "Chinese government hackers changed thousands of votes in every state by accessing them over the Internet."[32] To support this claim, Mr. Lindell represented that he obtained "every packet capture and all the data from the whole election for the 2020 November 3rd election."[33] He contended that the data proved that Donald Trump won the 2020 election, and he offered $5 million to anyone who could disprove his claim (though he later refused to pay the purported reward).[34]

### 2) Mr. Lindell's use of his Complaint to make the same statements

For nearly a year, Mr. Lindell has been trying to provoke litigation with Smartmatic to use the judicial system as a platform for disinformation. In February 2021, Mr. Lindell appeared on Steve Bannon's *War Room* podcast to promote *Absolute Proof* and was asked whether he would "take on any questions" that Dominion and Smartmatic "have about how you defamed them, and how you're essentially lying about them…." Ex. 27 at 4:21–5:12. Mr. Lindell responded:

---

[32] Joseph Marks, *The Cybersecurity 202: My Pillow Cyber Symposium Is Yet Another Font of Election Fraud Lies*, Wash. Post (Aug. 11, 2021), *available at* https://www.washingtonpost.com/politics/2021/08/11/cybersecurity-202-my-pillow-cyber-symposium-is-yet-another-font-election-fraud-lies/ (Ex. 40).

[33] Beth Warden, *Cyber Expert Claims Mike Lindell Does Not Have Election Data, Eligible for $5 Million Award*, Dakota News Now (Aug. 11, 2021), *available at* https://www.dakotanewsnow.com/2021/08/12/cyber-expert-claims-mike-lindell-does-not-have-election-data-eligible-5-million-award/ (Ex. 41).

[34] *See* Zachary Petrizzo, *Mike Lindell Offers $5 Million to Cyber Experts, Reporters Who Can Disprove His Semi-Mythical Data*, Salon (July 22, 2021), *available at* https://www.salon.com/2021/07/22/mike-lindell-offers-5-million-to-cyber-experts-reporters-who-can-disprove-his-semi-mythical-data/ (quoting Mr. Lindell: "All the cyber guys, I don't care if it's media; they can dig into all this data. If they can prove [that] it's not all valid data from the 2020 election, the November election, we have it all…We have 37 terabytes of information.") (Ex. 42); Brett Bachman, *Mike Lindell Lashes Out as Cyber Expert Demands $5M Reward for Debunking Election Data*, Salon (Aug. 18, 2021), *available at* https://www.salon.com/2021/08/18/mike-lindell-lashes-out-as-cyber-expert-demands-5m-reward-for-debunking-election-data/ (Ex. 43).

> MIKE LINDELL: *Well, first of all, you're not defaming or lying about anything that's not true.* You know what that is true…The reason they're suppressing this, and the reason they haven't sued me--by the way, a lot of those lawsuits are lies. They put it out there to scare networks not to talk about it. Okay, that's what they're doing*…[I]n this documentary these are the facts. There's nothing subjective, there's no subjectivity. It's all here's the facts*, here's what happened on the first, second, third, fourth here's what happened each day, a print of what happened. *So yeah, Dominion, Smartmatic both here. Come on, can we please include Smartmatic so they can sue me too*?

*Id.* at 5:13–6:3. The following day, Mr. Lindell returned to the *War Room* podcast, discussed cease-and-desist correspondence he had received from Dominion, and promised to sue *Smartmatic* to "show what happened in" the 2020 U.S. election.

> MIKE LINDELL: Right but you're incorrect on one thing. Dominion has not sued me, I don't even think they've threatened to sue me, they send me letters like, Mike, in your documentary a few of these people in there, this isn't real, so let us know who's going to be in your documentary…Here's the deal, I will take them, you're exactly right. Bring the media there. I don't care how long, I'll sit there for a week with you. We'll do it every day, we'll make it like a little trial thing. Because if you don't, let me tell you what I'm doing, *I am going after Dominion and Smartmatic, I'm going after them with a lawsuit if this doesn't all come out to the public and they all get exposed and then and, and show what happened in our election because it's going to get out there or my next step is I sue Dominion and when I sue Dominion then it has to come out in court and I'll make sure that that's public.*

Ex. 28 at 30:3–23; *see also id.* at 34:5–14.

True to his word, Mr. Lindell filed suit in June 2021 (and refiled with amendments in December 2021), and his Complaint features the same unfounded accusations about the 2020 U.S. election. He alleges that "[d]irect and circumstantial evidence demonstrates that, during the 2020 General Election, electronic voting machines…were manipulated and hacked in a manner that caused votes for one candidate to be tallied for the opposing candidate." (Compl. ¶ 5; *see also id.* ¶ 8) ("Dr. Douglas Frank's conclusive analysis show[s] an algorithm was employed to manipulate votes in the 2020 General Election[.]"). He also alleges that actors within China conducted twenty hacks of U.S. voting systems. (*Id.* ¶ 123) (alleging "twenty documented successful hacks through the election management system in the states of Michigan, Pennsylvania, Georgia, Wisconsin, and

Arizona resulting in a total 555,864 votes switched from President Trump to candidate Vice President Biden"). He further alleges that Smartmatic and Dominion were responsible for manipulating the election and are now suppressing the evidence. (*Id.* ¶ 140) ("Plaintiff Lindell brings this lawsuit to put an end to Dominion's and Smartmatic's campaign of 'Lawfare' against those who criticize their electronic voting machines, or who question *their role* in the *indisputably suspect conduct of the* 2020 Presidential Election.").

In sum, Mr. Lindell's Complaint takes the false statements he has been making outside of court and places them in a certified pleading. His Complaint does not raise a viable claim against Smartmatic because Mr. Lindell has none. Instead, he is using this Court as a platform and abusing its legitimacy to promote his narrative that the 2020 election was rigged. Forcing Smartmatic to defend against a case that has no proper purpose is sanctionable. *See Wis. Voters All.*, 2021 WL 686359, at *2 (inferring "bad faith" from the complaint because it was "filled with baseless fraud allegations and tenuous legal claims to undermine a legitimate presidential election"); *see also Saltany*, 886 F.2d at 439–40; *Hollister*, 258 F.R.D. at 5; *Knipe*, 19 F.3d at 77; *King*, 2021 WL 3771875, at *38.

## II.     The Court should enforce Rule 11 and impose severe sanctions.

The policies that underlie Rule 11 support imposing severe sanctions on Mr. Lindell and his counsel. "[T]he goal of Rule 11 is to discourage dilatory and abusive litigation tactics and eliminate frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process." *Intelsat USA Sales*, 2014 WL 12787643, at *3; *see also Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (noting that "the central purpose of Rule 11 is to deter baseless filings in district court" and "streamline the administration and procedure of the federal courts," and affirming sanctions against law firm for filing of frivolous complaint); *Westmoreland*

*v. CBS, Inc*., 770 F.2d 1168, 1179 (D.C. Cir. 1985) ("Rule 11 is specifically designed to deter groundless litigation tactics and stem needless litigation costs to court and counsel.").

The Court should consider: (i) the scope of Rule 11 violations Mr. Lindell and his counsel have committed; (ii) the toxicity of the allegations they used a federal pleading to amplify; (iii) the value in upholding Rule 11 consistently with the district court rulings in *O'Rourke* and *King*; and (iv) the collateral damage frivolous, vendetta-driven lawsuits inflict on the judiciary and the public's perception thereof. *See Cooter & Gell*, 496 U.S. at 397 (Rule 11 is "aimed at curbing abuses of the judicial system"); *Del Canto*, 865 F. Supp. at 939–40 ("[I]t is *without doubt* appropriate to impose some sanction under Rule 11 in order *to deter repetition* of the unacceptable conduct of counsel and 'comparable conduct by others similarly situated.'"). An appropriate order should contain at least the following sanctions.

### A.   Mr. Lindell and his counsel should be ordered to pay Smartmatic's legal fees and costs.

Mr. Lindell and his counsel should pay all costs and fees Smartmatic has incurred in this matter. "Courts in this district have long recognized that monetary sanctions under Rule 11(c) may be measured by the reasonable fees and expenses incurred while both defending against frivolous claims and pursuing Rule 11 sanctions." *Intelsat USA Sales*, 2014 WL 12787643, at *8 ("find[ing] that sanctions are appropriate in the reasonable amount of attorney's fees and expenses" incurred defending against the party-opponent's "unsubstantiated" allegations); *see Hickey v. Scott*, 738 F. Supp. 2d 55, 74 (D.D.C. 2010) (concluding that "the appropriate sanction is to require [the offending party] to pay for the "reasonable attorney's fees" the opposing party incurred in defending against the sanctionable claims and moving for Rule 11 sanctions); *John Akridge Co. v. Travelers Cos*., 944 F. Supp. 33, 34 (D.D.C. 1996) (granting sanctions in the amount of the "full cost" of defending against plaintiff's "bad faith" action).

A fee award is necessary both (a) to meet the deterrence objective of Rule 11, and (b) to make Smartmatic whole for the expenses Mr. Lindell intended to—*and did*—cause through this litigation. *See Wash. Bancorp. v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993) (ordering payment of "costs and attorneys fees defendants incurred in defense" of the sanctionable claims "to demonstrate to [the offending party], as well as to other potential plaintiffs, that it is not permissible to bring insupportable claims for whatever reasons" and to force defendants "to expend time and resources" because "Rule 11 provides *the only means* by which the court may recoup for defendants the unnecessary costs incurred in defense"); *Hanson*, 1991 WL 274267, at *4 (same, because plaintiffs "failed to make the reasonable inquiry into the facts and legal basis of their lawsuits" and "wasted the resources" of the defendants); *Hickey*, 738 F. Supp. 2d at 73–74 (same, because the offending party's "frivolous" claims "required significant expenditures of time, both by the court and by [opposing] counsel").

Imposing sanctions without a fee award would invite bad faith actions after future elections and be inconsistent with *O'Rourke* and *King*.  The district courts in those cases found fee awards appropriate because the plaintiffs sued the defendants as pretense to spread disinformation, delegitimize the 2020 presidential election, and disgrace the institutions of our democracy—just as Mr. Lindell and his counsel have done here. *See O'Rourke*, 2021 WL 3400671, at *24 (holding that plaintiffs' counsel "should be ordered to pay [d]efendants' attorneys' fees" because they filed their lawsuit with a "woeful lack of investigation into the law and (under the circumstances) the facts" and included "highly inflammatory and damaging" allegations); *King*, 2021 WL 3771875, at *41 (stressing that "[t]his lawsuit should never have been filed" and awarding "reasonable fees and costs incurred to defend" it, ordering legal education, and referring plaintiffs' counsel to state disciplinary authorities for "possible suspension and disbarment").

**B.     The fees Mr. Lindell's counsel earned from this case should be disgorged and paid to the Court.**

The Court should disgorge the fees Mr. Lindell's counsel has generated in this matter. *See Upchurch*, 2021 WL 3617098, at *8 (requiring counsel "to disgorge any amounts paid to him by [plaintiff] in prosecuting this lawsuit" and pay them "to the court's fund to support the costs incurred by pro bono counsel in this district"); Joseph, Sanctions: The Federal Law of Litigation Abuse § 16 ("As a Rule 11 sanction, the trial judge...may preclude counsel from charging his or her client for services rendered in committing the violation."); *Markwell v. Cnty. of Bexar*, 878 F.2d 899, 903 (5th Cir. 1989) (affirming Rule 11 sanction barring counsel from charging his client for fees incurred in filing two frivolous motions); *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453 (7th Cir. 2005) (affirming sanctions including both a fine and fee award against an attorney because "[t]he case [was] a symphony of frivolousness").

Disgorgement in this case would send a strong, unmistakable message: Mr. Lindell's counsel and other attorneys with similar designs should think twice before signing onto a complaint that flagrantly violates Rule 11, undermines our democracy, and debases our judicial system. This case may not be the last instance in which an attorney uses a federal pleading to sow doubt about the validity of an election. But a disgorgement order here would make that outcome less likely. Counsel would have to consider the added risk of having to forgo the profit they accrue from the bad faith filing. If any case merited a disgorgement order under Rule 11, it is this one.

## <u>CONCLUSION</u>

Few actions present as clear a mandate for sanctions as the present. Mr. Lindell and his counsel have violated each proscription of Rule 11, several times over. The scope, range, and gravity of their Rule 11 violations cannot be ignored. Mr. Lindell and his counsel must be held jointly and severally liable for the fees Smartmatic has expended defending itself and preparing

the instant motion. The Court should also order Mr. Lindell's counsel to disgorge the fees they have generated from preparing, filing, and prosecuting this bad faith, frivolous action. Anything less would do a disservice to Rule 11 and those who abide by it.

Dated: February 11, 2022

/s/ J. Erik Connolly
J. Erik Connolly
    D.C. Bar No. IL0099
    Email: econnolly@beneschlaw.com
Nicole E. Wrigley
    D.C. Bar No. IL 00101
    Email: nwrigley@beneschlaw.com
Lee B. Muench (*admitted pro hac vice*)
    Illinois ARDC No. 6305846
    Email: lmuench@beneschlaw.com


BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312.212.4949

*Counsel for Defendants Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*