**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., AND DOMINION VOTING SYSTEMS CORPORATION,** | ) ) ) ) | |
| *Plaintiffs/Counter-Defendants*, | ) ) | |
| **v.** | ) ) | |
| **MY PILLOW, INC.** | ) | **Case No. 1:21-cv-00445-CJN** |
| *Defendant/Counter-Plaintiff,* **AND** | ) ) | |
| **MICHAEL J. LINDELL,** | ) | |
| *Defendant/Counter-Plaintiff, Third-Party Plaintiff,* | ) ) | |
| **v.** | ) ) | |
| **SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, AND HAMILTON PLACE STRATEGIES, LLC,** | ) ) ) ) ) | |
| *Third-Party Defendants.* | ) | |

**THIRD-PARTY PLAINTIFF MICHAEL J. LINDELL'S MEMORANDUM
<u>IN OPPOSITION TO SMARTMATIC'S MOTION FOR SANCTIONS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ...........................................................................................iv

I.   INTRODUCTION ................................................................................................1

II.  LEGAL STANDARD...........................................................................................2

III. ARGUMENT .......................................................................................................4

    A.    Lindell And His Counsel Have Fully Complied With Rule 11.................................5

        1.    Lindell's Complaint Is Factually Supported. .....................................................5

            a.    Lindell Cites Extensive Evidence In Support Of The Complaint. .............5

            b.    Substantial Additional Evidence Supports Lindell's Claims................... 16

            c.    Wisconsin and Arizona Legislators Call To Decertify 2020 General Election. ............................................................................................... 17

            d.    Smartmatic's Specific Complaints Are Not Grounds For Sanctions. ....... 17

        2.    Lindell's Legal Theories Are Sound...............................................................19

            a.    Lindell's Civil Conspiracy Claim Is Not Frivolous. ...............................20

            b.    Lindell's Section 1985(3) And Section 1983 Claims Are Not Frivolous. ...............................................................................................20

            c.    Lindell's RICO Claim Is Not Frivolous. .................................................22

        3.    Lindell's Filed Suit To Protect His Freedom Of Speech. ...............................24

    B.    The Smartmatic Complaint Was Procedurally Proper............................................25

    C.    The Sanctions Sought By Smartmatic Are Unwarranted And Overreaching. .........27

    D.    Smartmatic Blatantly Misrepresents Lindell's Allegations Against It and The Holdings of Other Courts. .....................................................................................29

        1.    The Cases Relied On By Smartmatic Are Not Remotely Similar To The Claims And Factual Predicates Pled In The Complaint...................................30

        2.    Lindell's Counterclaims/Third-Party Claims Are About Protecting Free Speech, Not Overturning the 2020 General Election. .....................................33

3.    Neither Lindell Nor His Counsel Has Defied Any Court's Ruling on Election Fraud or Sanctions—Lindell Filed His Counterclaims/Third Party Claims to Prevent Smartmatic and Defendants from Trying to Suppress Free Speech. ...................................................................................36

E.    None Of Smartmatic's Remaining Cases Support Sanctions...................................39

1.    Lindell's Complaint Does Not Suffer From The Absence Of Facts. ...............39

2.    Lindell's Complaint Is Legally Sound And Not Frivolous.............................40

3.    Lindell's Claims Were Not Filed For Improper Purposes. .............................41

4.    Lindell Did Not Plead Himself Out Of Court. ................................................41

5.    Lindell Has Not Re-Pled Previously Dismissed Claims.................................42

6.    Lindell's Complaint Does Not Compound Factual And Legal Deficiencies With An Improper Purpose. ...........................................................................43

7.    Smartmatic's Remaining Cases Are Wholly Inapposite..................................44

IV. CONCLUSION.................................................................................................................44

## TABLE OF AUTHORITIES

**CASES**

*Abner Realty, Inc. v. Adm'r of Gen. Services Admin,*
   No. 97 CIV. 3075 (RWS), 1998 WL 410958 (S.D.N.Y. July 22, 1998)...............................39

*Ahuruonye v. United States Dep't of Interior*,
   312 F. Supp. 3d 1 (D.D.C. 2018) ..........................................................................................2

*Bachi-Reffitt v. Reffitt,*
   802 Fed. Appx. 913 (6th Cir. 2020) ....................................................................................41

*Barber v. D.C. Gov't,*
   394 F. Supp. 3d 49 (D.D.C. 2019) ......................................................................................20

*BEG Investments, LLC v. Alberti*,
   85 F. Supp. 3d 13 (D.D.C. 2015) ........................................................................................42

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................20

*Bowyer v. Ducey,*
   506 F. Supp. 3d 699 (D. Ariz. 2020) ..................................................................................35

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008) .....................................................................................................23, 24

*Carswell v. Air Line Pilots Ass'n, Intern.,*
   248 F.R.D. 325 (D.D.C. 2008)............................................................................................39

*Cousin v. D.C.*,
   142 F.R.D. 574 (D.D.C. 1992).............................................................................................40

*Del Canto v. ITT Sheraton Corp.*,
   865 F. Supp. 934 (D.D.C. 1994), *aff'd sub nom. del Canto v. Richardson*,
   70 F.3d 637 (D.C. Cir. 1995) ..............................................................................................39

*Del Pino v. Bay of Pigs Veterans Ass'n*,
   No. 07-22869-CIV, 2007 WL 9706830 (S.D. Fla. Dec. 28, 2007)......................................42

*Del Pino v. Bay of Pigs Veterans Ass'n*,
   No. 07-22869-CIV, 2008 WL 11411845 (S.D. Fla. Feb. 12, 2008) ................................41, 42

*Doe I v. Exxon Mobil Corp.*,
   No. 1:01-CV-1357-RCL, 2021 WL 1910892 (D.D.C. May 12, 2021) .....................................3

*Doe v. U.S. Postal Serv.,*
   317 F.3d 339 (D.C.Cir.2003) ................................................................................................4

*Donald J. Trump for President, Inc. v. Boockvar*,
  502 F.Supp.3d 899, *aff'd* 830 Fed. Appx 377 (3d Cir. 2020).................................31

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
  830 F. App'x 377 (3d Cir. 2020)........................................................................36

*Feld Ent. Inc. v. Am. Soc'y' for the Prevention of Cruelty to Animals*,
  873 F. Supp. 2d 288 (D.D.C. 2012)...................................................................23

*Geller v. Randi*,
  40 F.3d 1300 (D.C. Cir. 1994) ...........................................................................44

*Gonzalez Ramos v. ADR Vantage, Inc.*,
  No. 18-CV-01690 (APM), 2021 WL 4462411 (D.D.C. Sept. 29, 2021) ...................4

*Hanson v. Greenspan*,
  No. CIV. A. 91-1599(GHR), 1991 WL 274267 (D.D.C. Dec. 6, 1991) ..................40

*Hilton Hotels Corp. v. Banov*,
  899 F.2d 40 (D.C. Cir. 1990) .............................................................................29

*Hollister v. Soetoro*,
  258 F.R.D. 1 (D.D.C. 2009), *aff'd*, 368 Fed. Appx. 154 (D.C. Cir. 2010) ........43, 44

*In re Ames*,
  993 F.3d 27 (1st Cir. 2021)................................................................................43

*In re Carvalho*,
  598 B.R. 356 (D.D.C. 2019) ................................................................................4

*In the Matter of Giuliani*,
  146 N.Y.S.3d 266 (N.Y. App. Div. 2021) .......................................................31, 44

*Indep. Fed. Sav. Bank v. Bender*,
  230 F.R.D. 11 (D.D.C. 2005)................................................................................3

*Intelsat USA Sales LLC v. Juch-Tech, Inc.*,
  No. CV 10-2095 (RC), 2014 WL 12787643 (D.D.C. Oct. 15, 2014) .....................39

*King v. Whitmer*,
  No. 20-13134, 2021 WL 3771875 (E.D. Mich. Aug. 25, 2021)..................... 32, 33, 34, 35

*Kurd v. Republic of Turkey*,
  374 F. Supp. 3d 37 (D.D.C. 2019) .....................................................................20

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*,
  No. 06 CIV. 4404 CM GWG, 2014 WL 3610890 (S.D.N.Y. July 21, 2014).............23

*LeFande v. Mische-Hoeges*,
   No. 10-CV-1857 (DLF/GMH), 2018 WL 6620129 (D.D.C. Dec. 10, 2018) ...................... 3, 44

*Lucas v. Duncan*,
   574 F.3d 772 (D.C. Cir. 2009) ........................................................................................ 3, 4

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S.Ct. 1921 (2019) ......................................................................................................... 22

*Markwell v. Cnty. Of Bexar*,
   878 F.2d 899 (5th Cir. 1989) ......................................................................................... 28, 29

*Maverick Entm't Group, Inc. v. Does 1-2,115*,
   276 F.R.D. 389 (D.D.C. 2011) ........................................................................................ 3, 4

*McCord v. Bailey*,
   636 F.2d 606, 615 (D.C. Cir. 1980) .................................................................................. 21

*Midlock v. Apple Vacations W., Inc.*,
   406 F.3d 453 (7th Cir. 2005) ............................................................................................. 29

*Nat'l Coal. on Black Civic Participation v. Wohl*,
   498 F. Supp. 3d 457 (S.D.N.Y. 2020) .............................................................................. 21

*O'Rourke v. Dominion Voting Sys. Inc.*,
   No. 20-CV-03747-NRN, 2021 WL 3400671 (D. Colo. Aug. 3, 2021), *modified on*
   *reconsideration*, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021) .......... 32

*Quick v. EduCap, Inc.*,
   No. 17-CV-01242 (APM), 2019 WL 95566 (D.D.C. Jan. 3, 2019) ........................................... 4

*Reynolds v. U.S. Capitol Police Bd.*,
   357 F. Supp. 2d 19 (D.D.C. 2004) .................................................................................... 42

*Rogers v. Mo. Pac. R.R. Co.*,
   352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) ................................................................. 4

*Safe Str. All. v. Hickenlooper*,
   859 F.3d 865 (10th Cir. 2017) ........................................................................................... 22

*Saltany v. Reagan*,
   886 F.2d 438 (D.C. Cir. 1989) ............................................................................................. 3

*Schmuck v. United States*,
   489 U.S. 705 (1989) ........................................................................................................... 24

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ........................................................................................................... 22

*Smartmatic et al v. Michael Lindell et al*,
  0:22-cv-00098-WMW-JFD (D. Minn.) ..................................................................30

*Son Ly v. Solin, Inc.*,
  910 F. Supp. 2d 22 (D.D.C. 2012) ...............................................................40, 41

*Thomas v. Early County, GA*,
  360 Fed. Appx. 71 (11th Cir. 2010) ......................................................................43

*U.S. Postal Serv. Bd. of Governors v. Aikens*,
  460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)............................................4

*United States v. Tobin*,
  155 F.3d 636 (3d Cir. 1998)...................................................................................23

*Upchurch, v. O'Brien, et al.*,
  No. 19-CV-165-WMC, 2021 WL 3617098 (W.D. Wis. Aug. 16, 2021) ..........................27, 28

*West v. Atkins*,
  487 U.S. 42 (1988) .................................................................................................22

*Williams v. Aztar Indiana Gaming Corp.*,
  351 F.3d 294 (7th Cir. 2003)..................................................................................41

*Williams v. Romarm S.A.*,
  No. 19-CV-183 (EGS), 2020 WL 1557156 (D.D.C. Apr. 1, 2020), *appeal dismissed sub
  nom. Williams v. Romarm, SA, Mfr., Imp. & Distrib. of Semiautomatic Assault Weapon
  WASR10*, Ser. No. CA4367-70, No. 21-7010, 2022 WL 412449 (D.C. Cir. Feb. 3, 2022) ......42

*Wisconsin Voters Alliance v. Pence*,
  514 F. Supp.3d 117 (D.D.C. 2021).................................................................30, 31

*Wisconsin Voters Alliance v. Pence*,
  No. CV 20-3791 (JEB), 2021 WL 686359 (D.D.C. Feb. 19, 2021)..................................31, 44

## STATUTES

18 U.S.C. § 1341.................................................................................................24

## RULES

Fed. R. Civ. P. 11 ...................................................................................2, 3, 4, 41

**LAW REVIEW ARTICLES**

Mark Fockele, *A Construction of Section 1985(c) in Light of Its Original Purpose*,
46 U. Chi. L. Rev. 402, 403 (1979) ............................................................................. 21

*The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1389 (2020) ......................... 21

**LEGISLATIVE HISTORY**

Cong. Globe, 42d Cong., 1st Sess. 244 (1871) ............................................................. 21

**SECONDARY SOURCES**

Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 8A (6th ed., 2020) ........... 3

# I.
## INTRODUCTION

"The judicial system would serve little purpose if parties who believe they are aggrieved cannot file a lawsuit to address grievances."  So said Smartmatic[1] in its Motion to Dismiss (Dkt. No. 94), at 3.  But Smartmatic believes that this only applies to some parties—in a new phase of its Lawfare campaign, it now seeks sanctions against Defendant, Counter-Plaintiff and Third-Party Plaintiff Michael J. Lindell ("Lindell") and his lawyers.

Smartmatic—working in conjunction with Dominion[2] and HPS[3]—has weaponized the judicial system to silence its critics.  This unprecedented misuse of the courts must stop.  Unfortunately, standing up to the quasi-governmental companies, like Smartmatic, that run our election systems is a monumental task that most Americans either cannot afford or are unwilling to do. Lindell fits neither of those molds.  Instead, he is determined to put an end to Smartmatic's and Dominion's attempt to use Lawfare to silence himself and his fellow Americans from exposing the myriad of evidence and expert testimony going back to 2003 showing how electronic voting machines can be hacked and used to steal elections.  That evidence is detailed in his Original Third-Party Complaint against Smartmatic (the "Complaint") (Dkt. No. 87).  Unhappy that it failed to silence Lindell through its threats and lawsuits against critics, Smartmatic has now filed a baseless motion for sanctions against Lindell and his counsel.

---

[1] "Smartmatic" refers collectively to Third-Party Defendants Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited.

[2] "Dominion" refers collectively to Plaintiffs/Counter-Defendants U.S. Dominion, Inc.; Dominion Voting Systems, Inc.; and Dominion Voting Systems Corporation.

[3] "HPS" refers to Third-Party Defendant Hamilton Place Strategies, LLC.  HPS, Smartmatic and Dominion are at times collectively referred to as "Defendants."

Lindell's claims against Smartmatic are solidly grounded in the concept that the courts should not be weaponized to stifle free speech. Lindell's free speech claims are also supported by well-pled factual allegations with evidentiary support—including citing expert testimony by renowned election security expert and University of Michigan science and engineering professor, J. Alex Halderman. Complaint ¶¶ 3, 76, 85-86, 112 (Dominion voting machines can be used "to steal votes" in at least 16 states); *see also* ¶¶ 8, 118-23 (alleging evidence showing that the electronic voting machines were hacked or used to steal the November 2020 General Election). That Smartmatic disagrees with the facts and expert testimony pled in the Complaint is not surprising. But none of the cases that Smartmatic relies on adjudicated the facts pled in the Complaint. Smartmatic's Motion for Rule 11 Sanctions (the "Motion") (Dkt. No. 118) is as baseless as it is disingenuous and should be denied.

## II.
## LEGAL STANDARD

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, an attorney or party who files a pleading, motion, or other paper with the court must certify that "to the best of the person's knowledge, information, and belief," formed after a reasonable inquiry under the circumstances: (1) the filing is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(1)-(3); *see also Ahuruonye v. United States Dep't of Interior*, 312 F. Supp. 3d 1, 9 (D.D.C. 2018).

The test for sanctions under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim. *Maverick Entm't Group, Inc. v. Does 1-2,115*, 276 F.R.D. 389, 395 (D.D.C. 2011). In deciding if an inquiry is reasonable under the circumstances, courts look to factors including time pressures, complexity, feasibility of additional investigation, accessibility of information, knowledge, reliance on others, notice, and available resources. *Doe I v. Exxon Mobil Corp.*, No. 1:01-CV-1357-RCL, 2021 WL 1910892, at *3 (D.D.C. May 12, 2021) (citing Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 8A (6th ed., 2020)); *see also* Fed. R. Civ. P. 11 Advisory Committee Notes, 1983 Amendment.

A finding that a claim is merely frivolous is not sufficient; rather, the claim must be "so frivolous that it was 'patently clear' that it 'had absolutely no chance of success under the existing precedents and [that] no reasonable argument [could] be advanced to extend, modify or reverse the law as it stands.'" *LeFande v. Mische-Hoeges*, No. 10-CV-1857 (DLF/GMH), 2018 WL 6620129, at *8 (D.D.C. Dec. 10, 2018) (emphasis added), report and recommendation adopted, No. 10-CV-1857 (DLF), 2019 WL 8331599 (D.D.C. Jan. 29, 2019), *aff'd*, 806 Fed. Appx. 1 (D.C. Cir. 2020) (citing *Indep. Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 16 (D.D.C. 2005)). Rule 11 is violated where "[t]he case offered no hope whatsoever of success, and plaintiffs' attorneys surely knew it." *See id.* (citing *Saltany v. Reagan*, 886 F.2d 438, 440 (D.C. Cir. 1989)) (emphasis added).

Additionally, there is no basis in the text of Rule 11(b)(3) for the legal proposition that an attorney must separately identify "fact" and "inference." *Lucas v. Duncan*, 574 F.3d 772, 777 (D.C. Cir. 2009). The Rule merely requires an attorney to certify that the factual contentions in a paper he presents to the court "have evidentiary support." *Id.* (citing Fed. R. Civ. P. 11(b)(3)). "Inferences"—which are commonly described as "circumstantial evidence"—are as capable of

providing evidentiary support as "facts"—which are commonly described as "direct evidence." *Id.* (citing *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence."); then citing *Doe v. U.S. Postal Serv.,* 317 F.3d 339, 343 (D.C.Cir.2003) ("[W]e generally draw no distinction between the probative value of direct and circumstantial evidence.")). "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Id.* (quoting *Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 508 n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).

If the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction. *Maverick Entm't Group, Inc.*, 276 F.R.D. at 395 (citing Fed. R. Civ. P. 11(c)). Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings, or that are filed to harass another party. *Gonzalez Ramos v. ADR Vantage, Inc.*, No. 18-CV-01690 (APM), 2021 WL 4462411, at *1 (D.D.C. Sept. 29, 2021) (citing *In re Carvalho*, 598 B.R. 356, 363 (D.D.C. 2019)). Notably, Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. Fed. R. Civ. P. 11 Advisory Committee Notes, 1983 Amendment; *see also Quick v. EduCap, Inc.*, No. 17-CV-01242 (APM), 2019 WL 95566, at *2 (D.D.C. Jan. 3, 2019).

### III.
### ARGUMENT

Lindell and his counsel have fully complied with Rule 11 by filing a Complaint for a proper purpose (protecting Lindell's First Amendment right to free speech) warranted by existing law (or at least a non-frivolous argument to extend existing law) with more than 130 citations to evidence supporting Lindell's claims. Lindell's Complaint was procedurally proper. Smartmatic's requested sanctions are utterly unwarranted and overreaching. Smartmatic's mischaracterizes

Lindell's complaint and cites to cases with vastly different fact patterns than exist here, and none of those cases support an award of sanctions against Lindell or his counsel.

## A. Lindell And His Counsel Have Fully Complied With Rule 11.

Lindell and his counsel have fully complied with Fed. R. Civ. P. 11(b). First, Lindell has documented and presented more than sufficient facts to backstop his Complaint. Second, Lindell's causes of action are all consistent with, or are a natural extension of, existing law and legal theories. Third, Lindell brought this lawsuit to protect his First Amendment right to free speech and not for any improper purpose.

### 1. Lindell's Complaint Is Factually Supported.

Perhaps nowhere is the bad faith of Smartmatic's Motion on display more boldly than its allegation that Lindell has no factual support for his allegations as required by Fed. R. Civ. P. 11(b)(3). Motion, at 11-17. Smartmatic appears to recognize this in its heading—that "Mr. Lindell and his counsel made **provably false** factual allegations…" *Id.* at 11 (emphasis added). Where is the proof? Smartmatic's competing evidence does not "prove" Lindell or his free speech claims wrong. Putting that aside, if a factual allegation is "provably false" as Smartmatic argues, that allegation clearly exists, so Smartmatic implicitly concedes that Lindell has pled facts in support of his claims.

#### a. Lindell Cites Extensive Evidence In Support Of The Complaint.

Smartmatic's statement that Lindell's complaint has "no reasonable factual basis," Motion at 11, is intellectually dishonest and exposes the futility of the Motion. Between his Complaint and his Response to Smartmatic's Motion to Dismiss ("Response") (Dkt. No. 104), Lindell cited more than 130 pieces of evidence—including expert testimony—in support of his factual allegations:

- C-SPAN2, *Senate Intelligence Committee Hearing on Russian Election Interference*, YouTube (Jun. 21, 2017), https://www.youtube.com/watch?v=AmivIHUAy8Q (Complaint at 35 n.17);
- Mike Lindell, *Absolutely 9-0*, WVW Broadcast Network (Jun. 3, 2021) (Complaint at 36 n.18);
- Jacob Shamsian, Will Dominion End Up Owning MyPillow if It Wins a $1.3 Billion Defamation Lawsuit Against Mike Lindell?  Here Are 2 Ways It Could Take Control, INSIDER (Nov. 3, 2021), https://www.businessinsider.com/will-dominion-own-mypillow-if-it-wins-defamation-lawsuit-2021-11 (Complaint at 38 n.19);
- Lachlan Markey, *Trump-Targeted Voting Company Dominion Hires Top PR Firm to Help Against the Crazy*, Daily Beast, (https://www.thedailybeast.com/trump-targeted-voting-company-dominion-hires-top-pr-firm-to-help-against-the-crazy) (Complaint at 38 n.20);
- Michael Steel, *Dominion Spokesman: Mike Lindell is Begging to be Sued.  We May Oblige Him.*, CNN (Feb. 7, 2021), https://www.youtube.com/watch?v=csONmhFDW4U (Complaint at 38 n.21);
- Dominion Threatens MyPillow CEO Mike Lindell with Lawsuit Over "False Conspiratorial" Claims, THE WASHINGTON POST (Jan. 18, 2021), https://www.washingtonpost.com/politics/2021/01/18/dominion-mike-lindell-mypillow/ (Complaint at 38 n.22);
- Case No. 1:21-cv-02672, *Cooper v. US Dominion, Inc.*; currently pending in the United States District Court for the District of Colorado (Complaint at 39 n.23);
- Robert Downes, United States Cable, U.S. EMBASSY CARACAS, VENEZUELA (Jul. 2006) (on file with U.S. State Department); Frank Jack Daniel, et al., U.S. Views Chavez in "Axis of Mischief," REUTERS (Dec. 1, 2010), https://www.reuters.com/article/us-wikileaks-venezuela-idUSTRE6B040D20101202 (Complaint at 40 n.27);
- September 18, 2007 Stock Purchase Agreement between Smartmatic, Sequoia Voting Systems, and SVS Holdings, Inc., at pp. 7 and 36 (§8.14) (on file with owner) (Complaint at 41 n.31);
- Index No. 151136/2021, *Smartmatic USA Corp. v. Fox Corporation*, currently pending in the Supreme Court for the State of New York, New York County (Complaint at 41 n.32);
- *Smartmatic USA Corp. v. Herring Networks, Inc., d/b/a One America News Network*, currently pending in the United States District Court for the District of Columbia (Complaint at 41 n.33);
- *Smartmatic USA Corp., v. Newsmax Media, Inc.*, currently pending in the Superior Court of the State of Delaware (Complaint at 41 n.34);
- *Smartmatic USA Corp. v. Powell*, currently pending in the United States District Court for the District of Columbia (Complaint at 41 n.35);
- State of Colorado Uniform Voting System Request for Proposal, RFP No. CDOS-UVS-2013-01, Business Proposal, DOMINION VOTING (Dec. 4, 2013), https://www.sos.state.co.us/pubs/elections/VotingSystems/RFI/proposals/DominionVotingSystemsColoradoUVSProposal.pdf (Complaint at 42 n.37);

- Legal Updates, DOMINION VOTING, https://www.dominionvoting.com/legal-updates-learn-how-we-are-defending-dominion/; (Complaint at 43 n.38);
- Media, SMARTMATIC, https://www.smartmatic.com/us/media/ (*Id.*);
- Cyber Ninjas, Maricopa County Forensic Election Audit Volume III (2021) (Complaint at 43 n.39);
- Mark Niesse, Judge Seeks Info on Georgia Investigations of Counterfeit Ballots, ATLANTA J. CONST. (Sept. 20, 2021), https://www.ajc.com/politics/judge-seeks-info-on-georgia-investigations-of-counterfeit-ballots/YUQ3JQR32VHTNCXO3NUMW4YQNY/ (Complaint at 45 n.45);
- Jake Corman, Op-Ed: Careful, Thoughtful Investigation is Necessary to Restore Faith in Our Elections (Aug. 23, 2021), https://www.senatorcorman.com/2021/08/23/op-ed-careful-thoughtful-investigation-is-necessary-to-restore-faith-in-our-elections/ (Complaint at 45 n.46);
- *Senate Intergovernmental Operations Committee Invites Public to Submit Sworn Testimony in Election Investigation*, PENNSYLVANIA SENATE REPUBLICANS (Sept. 2, 2021), https://www.pasenategop.com/blog/senate-intergovernmental-operations-committee-invites-public-to-submit-sworn-testimony-in-election-investigation/ (Complaint at 45 n.48);
- Pam Fessler & Johnny Kauffman, Trips to Vegas and Chocolate-Covered Pretzels: Election Vendors Come Under Scrutiny, NPR (May 2, 2019, 5:00 AM), https://www.npr.org/2019/05/02/718270183/trips-to-vegas-and-chocolate-covered-pretzels-election-vendors-come-under-scruti (Complaint at 51 n.52);
- Letter from Congressmen Bill Posey, Matt Gaetz, Jody B. Hice, Jeff Duncan, Michael Cloud, Ted Budd, John Rose, Rick W. Allen, and Louie Gohmert to John Ratcliffe, Dir. of Nat'l Intel. (Nov. 13, 2020), https://posey.house.gov/uploadedfiles/barr_election_fraud_software_11132020.pdf (Complaint at 51 n.53);
- Fulton County, Georgia, Invoice No. DVS138565R1 (March 31, 2021) (Complaint at 52 n.54);
- Fulton County, Georgia Invoice Nos. DVS139582 and DVS139583 (Jan. 31, 2021) (Complaint at 52 n.55);
- Master Solution Purchase and Services Agreement, by and between Dominion Voting Systems, Inc., and Secretary of State of the State of Georgia (July 29, 2019), https://gaverifiedvoting.org/pdf/20190729-GA-Dominion-Contract.pdf (Complaint at 53 n.56);
- DEMOCRACY SUITE® ELECTION MANAGEMENT SYSTEM, https://www.dominionvoting.com/democracy-suite-ems/ (last visited Apr. 18, 2021) (Complaint at 54 n.62);
- Jeff Elder, *How One Company Came to Control San Francisco's Elections*, San Francisco Examiner (Nov. 15, 2021), https://www.sfexaminer.com/news/how-one-company-came-to-control-san-franciscos-elections/ (Complaint at 55 n.64);
- https://www.dominionvoting.com (Complaint at 56 n.68);
- Our history, SMARTMATIC, https://www.smartmatic.com/us/about/our-history/ (last visited Nov. 4, 2021) (Complaint at 57 n.69);

- Tim Golden, U.S. Investigates Voting Machines' Venezuela Ties, N.Y. TIMES (Oct. 29, 2006), https://www.nytimes.com/2006/10/29/washington/29ballot.html (Complaint at 57 n.70);
- Robert Downes, Caracas 00002063 001.2 of 004, U.S. EMBASSY CARACAS, VENEZUELA (Jul. 2006) (on file with U.S. State Department); Frank Jack Daniel, et al., U.S. Views Chavez in "Axis of Mischief," REUTERS (Dec. 1, 2010), https://www.reuters.com/article/us-wikileaks-venezuela-idUSTRE6B040D20101202 (Complaint at 58 n.71);
- Mark Wells, *Caracas 00002063 001.2 of 004*, U.S. Embassy Caracas, Venezuela (Jun. 28, 2004) (on file with U.S. State Department) (Complaint at 59 n.79);
- Smartmatic, Founding Member of the DHS Council to Protect Election Integrity and Security, SMARTMATIC (Jun. 6, 2018), https://www.smartmatic.com/us/media/article/smartmatic-founding-member-of-the-dhs-council-to-protect-election-integrity-and-security/ (Complaint at 60 n.82);
- Saul Gonzalez, The Company Behind LA's New Election Infrastructure, KRCW (Oct. 05, 2018), https://www.kcrw.com/news/articles/the-company-behind-las-new-election-infrastructure (Complaint at 60 n.83);
- Voting Solution of All People, SMARTMATIC, https://www.smartmatic.com/en/elections/e-voting/los-angeles-vsap-solution/ (*Id.*);
- https://ekonomijaibiznis.mk/ControlPanel/Upload/Free_Editions/wZ0X5bz60KCgpcvFcEBvA/maj%202016%20ENG/mobile/index.html#p=33 (Complaint at 61 n.85);
- Michael Alvarez, US Government Investigating Ownership Structure of Sequoia Voting Systems?, ELECTION UPDATES BLOG (Oct. 28, 2006), https://electionupdates.caltech.edu/2006/10/28/us-government-investigating-ownership-structure-of-sequoia-voting-systems/ (Complaint at 61 n.85);
- Letter from Congresswoman Carolyn Maloney to Henry M. Paulson, Jr., Sec'y of the Treasury 1 (Nov. 30, 2006) (Complaint at 62 n.86);
- Dominion Voting Systems, Inc. Acquires Premier Election Solutions Assets from ES&S, BENZINGA (May 20, 2010), https://www.benzinga.com/press-releases/10/05/b292647/dominion-voting-systems-inc-acquires-premier-election-solutions-assets- (Complaint at 63 n.87);
- EXCLUSIVE: On Heels of Diebold/Premier Purchase, Canadian eVoting Firm Dominion Also Acquires Sequoia, Lies About Chavez Ties in Announcement, HUFFPOST (Jun. 22, 2010), updated December 6, 2017, https://www.huffpost.com/entry/exclusive-on-heels-of-die_b_620084?guccounter=1 (Complaint at 63 n.88);
- See Press Release, Dominion Voting Systems, Dominion Voting Systems Corporation Acquires Assets of Sequoia Voting Systems (Jun. 4, 2010), https://www.bradblog.com/Docs/DominionAcquiresPremierReleaseFinal4_051910.pdf (Complaint at 64 n.91);
- Federico Arnao, LINKEDIN, https://www.linkedin.com/in/farnao/?originalSubdomain=ca (Complaint at 65 n.93);

- Patents by Inventor Federico Arnao, JUSTIA, https://patents.justia.com/inventor/federico-arnao (Complaint at 65 n.94);
- Letter from United States Senators Elizabeth Warren, Amy Klobuchar and Ron Wyden and Member of Congress Mark Pocan to Stephen D. Owens Hootan Yaghoobzadeh, Managing Directors of Staple Street Capital, LLC (Dec. 6, 2019), https://www.warren.senate.gov/imo/media/doc/H.I.G.%20McCarthy,%20&%20Staple%20Street%20letters.pdf (Complaint at 67 n.95);
- Dominion Voting Systems Acquired by its Management Team and Staple Street Capital, PR NEWSWIRE, https://www.prnewswire.com/news-releases/dominion-voting-systems-acquired-by-its-management-team-and-staple-street-capital-300681752.html (Complaint at 68 n.99);
- David M. Rubenstein, CARLYLE GROUP, https://www.carlyle.com/about-carlyle/team/david-m-rubenstein (Complaint at 68 n.100);
- Carlyle Invests US $ 140 Million in Four Growth Companies Across Asia, CARLYLE GROUP, https://www.carlyle.com/zh-hans/business-segment/%E4%BC%81%E4%B8%9A%E7%A7%81%E5%8B%9F%E8%82%A1%E6%9D%83?page=6 (Complaint at 68 n.101);
- Staple St. Cap. III, L.P., Notice of Exempt Offering of Securities (Form D) (Oct. 8, 2020) (Complaint at 69 n.102);
- UBS becomes first foreign bank approved for majority stake in China JV, Reuters (Nov. 30, 2018, 9:29 AM), https://www.reuters.com/article/uk-china-regulator/ubs-becomes-first-foreign-bank-approved-for-majority-stake-in-china-jv-idUSKCN1NZ1YK (Complaint at 69 n.103);
- Emel Akan, Ownership of Dominion Draws Scrutiny After Unusual Fundraising, THE EPOCH TIMES (Dec. 22, 2020), https://www.theepochtimes.com/mkt_app/ownership-of-dominion-draws-scrutiny-after-unusual-fundraising_3618603.html (Complaint at 69 n.104);
- Patent Assignment 050500/236, U.S. PAT. AND TRADEMARK OFF., https://assignment.uspto.gov/patent/index.html#/patent/search/resultAssignment?id=50500-236 (Complaint at 70 n. 105);
- Andrew Mark Miller, Democratic Senators Warned of Potential 'Vote Switching' by Dominion Voting Machines Prior to 2020 Election, WASHINGTON EXAMINER (Nov. 13, 2020), https://www.washingtonexaminer.com/news/democratic-senators-warned-of-potential-vote-switching-by-dominion-voting-machines-prior-to-2020-election (Complaint at 71 n.107);
- Press Release, Ariz. Senate Republicans, Senate chooses qualified auditing firm to conduct forensic audit of Maricopa County election results (Jan. 29, 2021) https://www.azsenaterepublicans.com/post/senate-chooses-qualified-auditing-firm-to-conduct-forensic-audit-of-maricopa-county-election-results (Complaint at 71 n.108);
- Chad Groenig, Dominion gets caught shorting GOP candidates, One News Now, Mar. 5, 2021, https://onenewsnow.com/politics-govt/2021/03/05/dominion-gets-caught-shorting-gop-candidates (Complaint at 71 n.109);
- Tom Pappert, VIDEO: Michigan County Discovers 'Glitch' That Gave 6,000 Trump Votes to Biden, National File, Nov. 6, 2020, https://nationalfile.com/video-

michigan-county-discovers-glitch-that-gave-6000-trump-votes-to-biden/;      Jack Windsor, Votes for Trump Went to Biden in Antrim County, Michigan, The Michigan Star, Nov. 7, 2020, https://themichiganstar.com/2020/11/07/votes-for-trump-went-to-biden-in-antrim-county-michigan/ (Complaint at 72 n. 110);

- NTD News, LIVE: Georgia Senate Subcommittee Holds Hearing on Election Issues,           YOUTUBE           (Dec.           30,           2020), https://www.youtube.com/watch?v=EjbAFuoQOvo (Complaint at 72 n.111);

- Georgia Data Show Over 30,000 of Trump's Votes Removed, Another 12,173 Switched to Biden: Data Scientists, THE EPOCH TIMES (Jan. 2, 2021), https://www.theepochtimes.com/georgia-election-data-shows-17650-votes-switched-from-trump-to-biden-data-scientists_3640670.html (Complaint at 72 n.112);

- "Dominion Voting Systems, Inc. Acquires Premier Election Solutions Assets from ES&S"       (May       20,       2010),       https://www.benzinga.com/press-releases/10/05/b292647/dominion-voting-systems-inc-acquires-premier-election-solutions-assets- (Complaint at 73 n.113);

- Allison St. John, Diebold Voting Machine Company Changes Name to Improve Image, KPBS (Aug. 21, 2007), https://www.kpbs.org/news/2007/aug/21/diebold-voting-machine-company-changes-name-to/ (Complaint at 73 n.114);

- Ryan Paul, Diebold impeaches e-voting unit, sells it off for $5 million, ARS TECHNICA (Sept. 4, 2009), https://arstechnica.com/tech-policy/2009/09/diebold-elects-to-get-out-of-the-voting-machine-business/ (Complaint at 73 n.115);

- Victoria Collier, How to Rig an Election, HARPER'S MAGAZINE (Nov. 2012), https://harpers.org/archive/2012/11/how-to-rig-an-election/      (Complaint at 73 n.116);

- Takayoshi Kohno, Adam Stubblefield, Aviel D. Rubin, and Dan S. Wallach, *Analysis of an Electronic Voting System, IEEE Symposium on Security and Privacy and Privacy 2004*, IEEE Computer Society Press, May 2004, https://avirubin.com/vote.pdf (Ex. 1) (Complaint at 74 n.118);

- Ariel J. Feldman, J. Alex Halderman, and Edward W. Felten, Security Analysis of the Diebold AccuVote-TS Voting Machine, USENIX (Sep. 13, 2006), https://www.usenix.org/legacy/event/evt07/tech/full_papers/feldman/feldman_html/index.html (Ex. 2) (Complaint at 75 n.119);

- Security Demonstration of Diebold AccuVote-TS Electronic Voting Machine, YOUTUBE           (Nov.           30,           2016), https://www.youtube.com/watch?v=B8TXuRA4IQM&t=20s (Complaint at 75 n.120);

- Ken Detzner, Voting System Qualification Test Report Dominion Voting Systems, Inc. GEMS Release 1.21.6, Version 1, FLA. DEP'T OF STATE (Mar. 2012), https://files.floridados.gov/media/697908/dominion-gems-release-1216-version-1-test-report.pdf (Ex. 3) (Complaint at 76 n.122);

- Dominion also handled 2009 NY congressional poll, ABS-CBN NEWS (May 7, 2010),           https://news.abs-cbn.com/nation/05/07/10/dominion-also-handled-2009-ny-congressional-poll (Complaint at 76 n.123);

- Aquino Unfazed by Philippine Poll Fraud Allegations, REUTERS (May 27, 2010), https://www.reuters.com/article/idINIndia-48840420100527 (Complaint at 76 n.124);
- Ina Reformina, Source code firm Dominion sheds light on voting glitch, ABS-CBN NEWS (May 7, 2010), https://news.abs-cbn.com/nation/05/07/10/source-code-firm-dominion-sheds-light-voting-glitch (Complaint at 76 n.125);
- Notice of Contract: Contract No. 071B7700117, State of Michigan Enterprise Procurement: Department of Technology, Management, and Budget, 48 (2017), https://www.michigan.gov/documents/sos/071B7700117_Dominion_555356_7.pdf (Complaint at 77 n.126);
- Qualified Voting Systems, MO. SEC. OF STATE, https://www.sos.mo.gov/elections/qualsystems.asp, (last visited Nov. 8, 2021) (Complaint at 77 n.127);
- Amended Complaint, Doc. 15, N.D. Ga. No. 2017CV292233 (Ex. 4) (Complaint at 77 n.128);
- *Curling v. Raffensperger*, No. 493 F.Supp.3d 1264, 1267 (N.D. Ga. 2020) (Ex. 5) (Complaint at 77 n.130);
- Decl. of J. Alex Halderman, Doc. No. 1177-1, Curling v. Raffensperger, Case No. 1:17-cv-02989-AT, currently pending in the United States District Court of the Northern District of Georgia Atlanta Division (Complaint at 80 n.134);
- Decl. of J. Alex Halderman, Doc. No. 1133, Curling v. Raffensperger, Case No. 1:17-cv-02989-AT, currently pending in the United States District Court of the Northern District of Georgia Atlanta Division (Complaint at 80 n. 135);
- Eric Geller, Georgia Likely to Plow Ahead with Buying Insecure Voting Machines, Politico (Mar. 28, 2019), https://www.politico.com/story/2019/03/28/georgia-voting-machines-safe-1241033 (Complaint at 81 n.136);
- Richard Fausset and Reid J. Epstein, Georgia's Election Mess: Many Problems, Plenty of Blame, Few Solutions for November, The New York Times (Jun. 10, 2020), https://www.nytimes.com/2020/06/10/us/politics/georgia-primary-election-voting.html (Complaint at 81 n.139);
- Warren, Klobuchar, Wyden, and Pocan Investigate Vulnerabilities and Shortcomings of Election Technology Industry with Ties to Private Equity, Elizabeth Warren: United States Senator for MA (Dec. 10, 2019), https://www.warren.senate.gov/oversight/letters/warren-klobuchar-wyden-and-pocan-investigate-vulnerabilities-and-shortcomings-of-election-technology-industry-with-ties-to-private-equity (Complaint at 82 n.140);
- NBC News, Amy Klobuchar: Concerned That A 2018 Election Hack Could Succeed (Full) | Meet The Press | NBC News, YouTube (Aug. 5, 2018), https://www.youtube.com/watch?v=9wtUxqqLh6U (Complaint at 82 n.141);
- Mark Sullivan, Senator Ron Wyden: The GOP is 'making a mockery' of election security, FAST COMPANY (Feb. 19, 2020), https://www.fastcompany.com/90465001/senator-ron-wyden-the-gop-is-making-a-mockery-of-election-security (Complaint at 83 n.142);
- Jose A. Esparza, Report of Review of Dominion Voting Systems Democracy Suite 5.5A, Tex. Sec'y of State (Jan. 24, 2020),

https://www.sos.texas.gov/elections/forms/sysexam/dominion-d-suite-5.5-a.pdf (Complaint at 83 n.143);

- Letter from Brandon Hurley to Keith Ingram (Nov. 4, 2019) (Complaint at 84 n.145);

- James Sneeringer, Ph.D., Voting System Examination: Dominion Voting Systems Democracy Suite 5.5-A 2, 5 (TX Sec. of State Elections Div.), https://www.sos.texas.gov/elections/forms/sysexam/oct2019-sneeringer.pdf (Complaint at 84 n.146);

- Tom Watson, Democracy Suite 5.5A 4-5, TX SEC. OF STATE ELECTIONS DIV., https://www.sos.texas.gov/elections/forms/sysexam/oct2019-watson.pdf (Complaint at 84 n.147);

- Brad Johnson, Texas Rejected Use of Dominion Voting System Software Due to Efficiency Issues, THE TEXAN (Nov. 19, 2020), https://thetexan.news/texas-rejected-use-of-dominion-voting-system-software-due-to-efficiency-issues/ (Complaint at 84 n.149);

- Kim Zetter, Exclusive: Critical U.S. Election Systems Have Been Left Exposed Online Despite Official Denials, Vice (Aug. 8, 2019), https://www.vice.com/en/article/3kxzk9/exclusive-critical-us-election-systems-have-been-left-exposed-online-despite-official-denials (Complaint at 85 n.150);

- https://danfromsquirrelhill.wordpress.com/2020/12/31/oomf/ (Complaint at 85 n.151);

- https://ekonomijaibiznis.mk/ControlPanel/Upload/Free_Editions/wZ0X5bz60KCgpcvFcEBvA/maj%202016%20ENG/mobile/index.html#p=33 (Complaint at 85 n.152);

- Kevin Monahan, Cynthia McFadden, and Didi Martinez, 'Online and Vulnerable': Experts find nearly three dozen U.S. voting systems connected to internet, NBC NEWS, Jan. 10, 2020, available at https://www.nbcnews.com/politics/elections/online-vulnerable-experts-find-nearly-three-dozen-u-s-voting-n1112436 (Complaint at 86 n.154);

- NBC News, How Hackers Can Target Voting Machines | NBC News Now, YOUTUBE (Aug. 12, 2019), https://www.youtube.com/watch?v=QtWP0KDx2hA (Complaint at 87 n.156);

- CNN Business, We watched hackers break into voting machines, YOUTUBE (Aug. 11, 2017), https://www.youtube.com/watch?v=HA2DWMHgLnc (Complaint at 87 n.157);

- Congressional Task Force on Election Security, Final Report (2018) (Complaint at 88 n. 159);

- Matt Blaze, et al., DEFCON 25 Voting Machine Hacking Village: Rep. on Cyber Vulnerabilities in U.S. Election Equipment, Databases, and Infrastructure, 16 (2017), https://www.defcon.org/images/defcon-25/DEF%20CON%2025%20voting%20village%20report.pdf) (Complaint at 89 n.161);

- Jordan Wilkie, 'They think they are above the law': the firms that own America's voting system, THE GUARDIAN (Apr. 23, 2019), https://www.theguardian.com/us-news/2019/apr/22/us-voting-machine-private-companies-voter-registration (Complaint at 89 n.162);

- Special Counsel Robert S. Mueller, III, Report On The Investigation Into Russian Interference In The 2016 Presidential Election at p. 50, U.S. DEPARTMENT OF JUSTICE (Mar. 2019), https://www.justice.gov/archives/sco/file/1373816/download (Complaint at 89 n.163);
- Lawrence Norden and Christopher Famighetti, AMERICA'S VOTING MACHINES AT RISK, BRENNAN CTR. FOR JUST., 13 (Sep. 15, 2014), https://www.brennancenter.org/sites/default/files/2019-08/Report_Americas_Voting_Machines_At_Risk.pdf (Complaint at 90 n.164);
- Simon Ardizzone, Russell Michaels, and Sarah Teale, Kill Chain: The Cyber War on America's Elections, HBO (Mar. 26, 2020), https://play.hbomax.com/feature/urn:hbo:feature:GXk7d3QAJHI7CZgEAACa0?reentered=true&userProfileType=liteUserProfile (Complaint at 90 n.166);
- Screenshot from https://www.facebook.com/KillChainDoc/videos/2715244992032273/ (Complaint at 91 n.167);
- Zachary Stieber, Dominion Voting Systems Uses Firm That Was Hacked, THE EPOCH TIMES, Dec. 14, 2020, https://www.theepochtimes.com/mkt_app/dominion-voting-systems-uses-firm-that-was-hacked_3617507.html (Complaint at 91 n.168);
- Government Facilities Sector – Election Infrastructure Subsector: Charters and Membership, CYBERSECURITY & INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/government-facilities-election-infrastructure-charters-and-membership (Complaint at 93 n.169);
- Kim Zetter, Cause of Election Day Glitch in Georgia counties Still Unexplained, POLITICO (Nov. 12, 2020, 10:28 PM), https://www.politico.com/news/2020/11/04/94eorgia-election-machine-glitch-434065 (Complaint at 94 n.170);
- Dominion Voting Machines Were Updated Before Election, Georgia Official Confirms, THE EPOCH TIMES (Dec. 4, 2020), https://www.theepochtimes.com/dominion-voting-machines-were-updated-before-election-georgia-official-confirms_3604668.html (Complaint at 94 n.173);
- Aff. of Patrick J. Colbeck, Costantino v. City of Detroit, 950 N.W.2d 707 (Mich. 2020) (Complaint at 94 n.174);
- M.D. Kittle, EMAILS: GREEN BAY'S 'HIDDEN' ELECTION NETWORKS, WISCONSIN SPOTLIGHT, Mar. 21, 2021, https://wisconsinspotlight.com/emails-green-bays-hidden-election-networks/ (Complaint at 95 n.175);
- M.D. Kittle, Democrats' Operative Got Secret Internet Connection at Wisconsin Election Center, Emails Show, DAILY SIGNAL, Mar. 23, 2021, available at https://www.dailysignal.com/2021/03/23/democrats-operative-got-secret-internet-connection-at-wisconsin-election-center-emails-show/ (Complaint at 95 n.176);
- Email from Michael Spitzer-Rubenstein to Celestine Jeffreys, Mike Hronek, Amaad Rivera, and Shelby Edlebeck (Oct. 30, 2020, 4:36 PM) (Complaint at 95 n.177);

- Mesa County Colorado Voting Systems, Report No. 1 with Forensic Examination and Analysis (Sep. 15, 2021) (Complaint at 95 n.178);
- Oswego County, Index No. ECF 2020-1376, dated February 1, 2021 at 2 (Complaint at 96 n.179);
- Hannah Bleau, Rep. Paul Gosar Calls on Arizona Officials to 'Investigate the Accuracy' of the Dominion Ballot Software After Reports of 'Glitches,' BREITBART, Nov. 7, 2020, https://www.breitbart.com/politics/2020/11/07/rep-gosar-calls-on-az-officials-investigate-the-accuracy-of-the-dominion-ballot-software-after-reports-of-glitches/ (Complaint at 96 n.180);
- Auditing Elections Equipment in Maricopa County, MARICOPA COUNTY, https://www.maricopa.gov/5681/Elections-Equipment-Audit (Complaint at 97 n.181);
- Press Release, Arizona State Senate, Arizona Senate hires auditor to review 2020 election in Maricopa County (Mar. 31, 2021) (Complaint at 97 n. 182);
- Letter from Sara Chimene-Weiss, James E. Barton II, Roopali H. Desai, and Sarah R. Gonski to Cyber Ninjas, CyFir, Digital Discovery, and Wake Technology Services (Apr. 6, 2021) (Complaint at 97 n.183);
- Cyber Ninjas, Maricopa County Forensic Election Audit, Volume I (Complaint at 97 n. 185);
- Pl.'s Collective Resp. to Defs.' and Non-Party Counties' Mots. to Quash and for Protective Orders at Exs. 7-8 (April 9, 2021), Bailey v. Antrim County (No. 20-9238) (Complaint at 98 n. 186);
- Allied Security Operations Group Revised Preliminary Summary v.2, Antrim Michigan Forensics Report, 12/13/2020, https://www.depernolaw.com/uploads/2/7/0/2/27029178/ex_8-9.pdf (Complaint at 98 n. 187);
- Aff. Of Benjamin R. Cotton 8 April 2021 at 3, Case No. 20-9238-CZ, Bailey v. Antrim County (Complaint at 99 n. 188);
- Scott Bauer, Wisconsin Assembly OKs investigation into 2020 election, FOX6 NEWS MILWAUKEE, Mar. 23, 2020, https://www.fox6now.com/news/wisconsin-assembly-approves-election-investigation (Complaint at 99 n.189);
- Truak, Natasha and Amanda Macias, "Biden administration slaps new sanctions on Russia for cyberattacks, election interference," Apr. 14, 2021, https://www.cnbc.com/2021/04/15/biden-administration-sanctions-russia-for-cyber-attacks-election-interference.html (Complaint at 99 n.190);
- Plaintiff's Collective Response to Defendants' and Non-Party Counties' Motion to Quash and for Protective Orders, Ex. 4, *Bailey v. Antrim Cty.*, No. 20-9238-CZ (Mich. Cir. Ct. May 18, 2021) (Complaint at 100 n.191);
- https://www.youtube.com/watch?v=xkY2LRA1ijQ (Complaint at 103 n.192);
- https://www.youtube.com/channel/UC57eE4MaR0oIwTinM__WQSg (Complaint at 105 n.193)
- Absolutely 9-0, WVW BROADCAST NETWORK (Jun. 3, 2021), https://www.worldviewweekend.com/tv/video/mike-lindell-presents-absolutely-9-0 (Complaint at 105 n.194);

- Communications in the Age of Fake News: A Crisis Handbook for Election Commissions, SMARTMATIC, https://electionfactcheck.news/ (Complaint at 105 n.195);
- Lachlan Markey, Trump-Targeted Voting Company Dominion Hires Top PR Firm to Help Against the Crazy, DAILY BEAST (https://www.thedailybeast.com/trump-targeted-voting-company-dominion-hires-top-pr-firm-to-help-against-the-crazy) (Complaint at 107 n.198);
- Michael Steel, Dominion Spokesman: Mike Lindell is Begging to be Sued. We May Oblige Him., CNN (Feb. 7, 2021), https://www.youtube.com/watch?v=csONmhFDW4U (Complaint at 107 n.199);
- Hannah Knowles and Emma Brown, Dominion threatens MyPillow CEO Mike Lindell with lawsuit over 'false and conspiratorial' claims, Washington Post, Jan. 18, 2021, https://www.washingtonpost.com/politics/2021/01/18/dominion-mike-lindell-mypillow/ (Complaint at 107 n.200);
- https://www.propublica.org/article/the-market-for-voting-machines-is-broken-this-company-has-thrived-in-it (Complaint at 109 n.202);
- *Legal Updates*, Dominion Voting, https://www.dominionvoting.com/legal-updates-learn-how-we-are-defending-dominion/ (Complaint at 115 n.205);
- Grace Dean and Jacob Shamsian, From Mike Lindell to OAN, Here's Everyone Dominion and Smartmatic are Suing Over Election Conspiracy Theories So Far, BUSINESS INSIDER (Aug. 14, 2021), https://www.businessinsider.com/everyone-dominion-smartmatic-suing-defamation-election-conspiracy-theories-2021-2 (Complaint at 117 n.206);
- Molly Ball, The Secret History of the Shadow Campaign That Saved the 2020 Election, TIME (Feb. 4, 2021), https://time.com/5936036/secret-2020-election-campaign/ (Complaint at 117 n.207);
- *Los Angeles County 2020–Present: VSAP Modernizes Elections*, SMARTMATIC (Nov. 11, 2020) (https://www.smartmatic.com/us/case-studies/article/los-angeles-county-2020-present-vsap-modernizes-elections/) (Response at 7);
- *Communications in the Age of Fake News–A Crisis Handbook for Election Commissions*, SMARTMATIC (Jan. 22, 2020), https://www.smartmatic.com/us/media/article/-smartmatic-publishes-communications-handbook-for-election-officials/ (Response at 8);
- *Smartmatic Response to eRFI–New Voting System*, SMARTMATIC (Aug. 24, 2018) (https://sos.ga.gov/admin/files/Smartmatic%20RFI_Redacted.pdf) (*Id.*);
- *Our history*, SMARTMATIC, https://www.smartmatic.com/us/about/our-history/ (*Id.*);
- June 12, 2018, LA County Board of Supervisors Adoption of Smartmatic Contract (Response at Exhibit A).

At the pleading stage, Lindell was under no obligation to provide any evidence in support of his claims, let alone marshal all his evidence. Despite this, Lindell offered extensive evidence in support of his free speech claims—including evidence showing that the electronic voting

machines were hacked or used to steal the November 2020 General Election.  Complaint ¶¶ 3, 8, 76, 85-86, 112, 118-23.  If Smartmatic wishes to contest this evidence, it will have an opportunity to do so.  Even if Smartmatic has evidence contradicting Lindell's, that does not make Lindell's Complaint sanctionable.

<b>b.      Substantial Additional Evidence Supports Lindell's Claims.</b>

In addition to the evidence Lindell has cited to date, substantial additional evidence supports Lindell's statements regarding of election fraud, of Smartmatic and Dominion's corporate interconnectedness and relationship to China and of the statistical improbabilities plaguing the 2020 General Election—all such that Lindell should not be facing defamation suits over such statements.  Lindell himself has compiled a cache of more than 100 documents evidencing election fraud at https://frankspeech.com/content/2020-election-fraud-proof-internet-sources.  And Lindell is not the only person who has collected evidence of election fraud in the 2020 General Election.

Patrick Colbeck, a former 2-term state senator in Michigan with a B.S.E. and M.S.E. in aerospace engineering from the University of Michigan, has also collected extensive documentation regarding election fraud at his website https://letsfixstuff.org/.  Mr. Colbeck has separated his evidence into four separate caches:

> https://letsfixstuff.org/2022/01/preparation-phase-references/;
> https://letsfixstuff.org/2022/01/main-attack-phase-references/;
> https://letsfixstuff.org/2022/01/backup-attack-phase-references/; and
> https://letsfixstuff.org/2022/01/defense-phase-references/.

Matt DePerno, a Michigan attorney running for Michigan Attorney General, has posted all of the documentation and expert reports he gathered in support of his client's lawsuit regarding voting irregularities in Antrim County, Michigan, at https://www.depernolaw.com/dominion.html and  https://www.depernolaw.com/all-expert-reports.html.  *See also* Complaint ¶ 118 (b)-(c).  Wisconsin state representative and gubernatorial candidate Timothy Ramthun has also compiled a

16

cache      of      documents      supporting      claims      of      election      fraud      at
https://legis.wisconsin.gov/assembly/59/Ramthun/evidence/.  These document repositories are but

a few that maintain evidence supporting Lindell's allegedly defamatory statements.

> ### c.    Wisconsin and Arizona Legislators Call To Decertify 2020 General Election.

Importantly, investigations into and repercussions arising out of the 2020 General Election

are continuing.  Recent developments in Wisconsin and Arizona, where state legislators have

called for their states' 2020 General Election results to be decertified and/or their presidential

electors recalled, lend further credence to Lindell's statements that the 2020 General Election was

rife with fraud.

In late 2021, Wisconsin Representative Ranthum announced a resolution to reclaim

Wisconsin's 10 electors from the 2020 General Election.  *See* Ranthum Resolution, attached as

Exhibit A and incorporated by reference as if fully set forth herein.  One of the specific reasons

given for Rep. Ramthun's resolution was "upgrades" performed on Dominion machines with no

reassurance that the 2020 General Election data integrity was maintained.  *Id.* at 19.

More recently, 11 state representatives and 3 state senators in Arizona introduced

HCR2033 to decertify and set aside the 2020 Arizona presidential electors.  *See* Arizona

HCR2033, attached as Exhibit B and incorporated by reference as if fully set forth herein.  As in

Wisconsin, bases for the resolution included irregularities with the Dominion machines used in the

2020 General Election in Arizona.  *Id.* at 3:25-29; 4:38-45.

> ### d.    Smartmatic's Specific Complaints Are Not Grounds For Sanctions.

Smartmatic picks three of Lindell's factual allegations—that voting machines were hacked

in the 2020 General Election; Lindell's reliance on Dr. Douglas Frank; and that Smartmatic has

ownership ties to China—and provides its evidence contradicting Lindell's.  The fact that

Smartmatic might have contradictory evidence (some of which comes from its own website, which Smartmatic implicitly suggests Lindell must simply believe without any corroboration and despite his own contrary evidence) does not mean that Lindell's evidence is lacking.  That determination is for a jury.  Simply put, there is nothing sanctionable about the factual basis for the Complaint.

Smartmatic would have the Court believe that the story of the 2020 General Election has been told in its entirety.  It has not.  As discussed above, Lindell, like millions of Americans, does not believe that the 2020 General Election was as secure as CISA or Attorney General Barr would have the country believe.  Both issued their statements just weeks after the election without the benefit of subsequent extensive investigations.  And it isn't just a fringe group that is pushing some ill-conceived narrative—state legislatures are continuing an investigation into the 2020 General Election and have even begun introducing legislation to recall their electors.  *See* Exhibits A and B.  Putting aside the fact that, as discussed below, this lawsuit is not seeking to overturn an election, but instead has been filed to protect Lindell's right to free speech on that subject, including about topics that are not popular in the mainstream media, Lindell provided 37 pages and 57 paragraphs of allegations regarding machine fraud that had 90 citations to 72 independent sources of information.  *See* Complaint ¶¶ 68-124.  To claim that there was no reasonable investigation lacks credulity.

While Smartmatic clearly takes issue with Dr. Douglas Frank's analysis, their claim that reliance upon Dr. Frank is sanctionable is baseless.  Lindell is not the only person to rely on Dr. Frank's election analysis.  Wisconsin Rep. Tim Ramthun cites to Dr. Frank's work on his website.  *See*  https://legis.wisconsin.gov/assembly/59/Ramthun/evidence/.   And Dr. Frank regularly testifies before election commissions, state legislative committees and others about his work.  Smartmatic's articles contradicting Dr. Frank are fodder for challenging him at a deposition or

trial; they do not conclusively establish that reliance on Dr. Frank is *per se* unreliable or that Lindell's reliance upon Dr. Frank is sanctionable.

Smartmatic sets up another strawman claiming that Lindell alleges "China owns Smartmatic." The sentence cited by Smartmatic—that "In other words, by the time of the 2020 election, Chinese government-related entities, Chinese technology companies, and powerful Chinese financial interests had direct or indirect ownership of and near-total access to Dominion's and Smartmatic's voting machine technology"—is the conclusion to a 15-page, 18-paragraph section of Lindell's Complaint, supported by 39 citations to 26 different sources, to show the interconnection of Dominion, Smartmatic and China. *See* Complaint ¶¶ 50-67. Smartmatic's citation to *its own website* to claim that all of this is false does not render Lindell's extensively investigated and supported contention sanctionable.

### 2. Lindell's Legal Theories Are Sound.

Lindell's claims are warranted by existing law or at the very least are supported by a nonfrivolous argument for extending existing law to stop Smartmatic's use of Lawfare to silence critics with which it disagrees. Smartmatic's arguments in support of its motion for sanctions based on Fed. R. Civ. P. 11(b)(2) are merely a rehash of the arguments in its Motion to Dismiss (Dkt. No. 94). Lindell has responded in detail to that motion, citing more than 113 cases along with numerous statutes, rules and other materials. *See* Response, at iv-xii. Lindell's claims are neither futile nor frivolous, and Lindell intends to pursue his claims to final vindication. Lindell incorporates by reference as if fully set forth herein the entirety of his response to Smartmatic's Motion to Dismiss, and for the sake of economy, will not repeat verbatim its arguments here, but instead offers a brief response to Smartmatic's claims of frivolousness.

### a.      Lindell's Civil Conspiracy Claim Is Not Frivolous.

Lindell has sufficiently pled a valid, non-frivolous cause of action for civil conspiracy against Smartmatic.  *See* Complaint ¶¶ 1, 15–17, 20–21, 36, 50, 55–67, 112, 126, 129, 136, 137–40, 166; Response, at 14-19.  In addition to their parallel conduct of threatening and suing dissenting voices, *see* Complaint ¶¶ 11, 16, 40, 60, 63, 125-26, 129, 131, 136-37, 145, 165, Lindell alleged facts showing Smartmatic and Dominion's shared corporate history and prior business relationship preceded the current conspiracy.  *See* Complaint ¶¶ 14-17, 60.  Lindell further alleged an ongoing business relationship and shared employees.  *Id*. at ¶¶ 17, 62.

Courts may infer the existence of a conspiracy from indirect evidence, including the existence of an agreement if the plaintiff alleges facts showing co-conspirators engaged in parallel conduct and had a preexisting relationship.  *Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 52 (D.D.C. 2019) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Contrary to Smartmatic's argument, Lindell was not required to allege explicit or implicit communications among co-conspirators.  *Id*.  Instead, "allegations concerning the defendants' proximity to each other and parallel activities alone" can justify inferring "an agreement or meeting of the minds amongst the defendants."  *Barber v. D.C. Gov't,* 394 F. Supp. 3d 49, 66 (D.D.C. 2019).

### b.      Lindell's Section 1985(3) And Section 1983 Claims Are Not Frivolous.

Lindell has sufficiently pled a valid, non-frivolous cause of action for violations of 42 U.S.C. § 1985(3),[4]  against Smartmatic.  *See* Response, at 3-14, 36-45.

---

[4] Litigants like Smartmatic have long confused § 1985(3)'s Equal Protection Provision (which is the first clause) and Support or Advocacy Clause (which is the second clause) to require elements of one for the other.  Lindell has not pled that Smartmatic violated the Equal Protection Provision under § 1985(3).

Lindell sufficiently pled a Section 1985(3) claim under the Support or Advocacy Clause, which requires: (1) a conspiracy; (2) the purpose of which is to force, intimidate, or threaten; (3) an individual legally entitled to vote who is engaging in lawful activity related to voting in federal elections. *Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 487 (S.D.N.Y. 2020).

The Reformation Act of 1871 ("Act") was not only intended to address racial discrimination.  Rather, after receiving reports of violence and intimidation from Republican citizens in the Reconstruction South, President Grant sought legislation to "effectively secure life, liberty, and property, and the enforcement of law in all parts of the United States."  *The Support or Advocacy Clause of § 1985(3)*, 133 Harv. L. Rev. 1389 (2020) (quoting Cong. Globe, 42d Cong., 1st Sess. 244 (1871) (hereinafter "Harv. L. Rev.")).  There is nothing about the Act that prevents Lindell from suing Smartmatic for violating the Act.  The "Act was not an antidiscrimination statute.  Its drafters intended to proscribe conspiracies having the object or effect of frustrating the constitutional operations of government through assaults on the person, property, and liberties of individuals."  Mark Fockele, *A Construction of Section 1985(c) in Light of Its Original Purpose*, 46 U. Chi. L. Rev. 402, 403 (1979); *see also McCord v. Bailey*, 636 F.2d 606, 615 (D.C. Cir. 1980) ("[C]ongressional concerns encompassed more than racial equality or personal rights. The operation of government, especially the federal government, was threatened. Civil survival was at stake.").

Lindell also alleged sufficient facts to state a claim against Smartmatic for violations of his First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Complaint ¶¶ 6, 16, 36, 39–40, 43, 50, 53–54, 63, 137–39, 169–79.  Smartmatic subjected itself to liability under § 1983 when it publicly boasted it was going to sue Lindell for defamation and disparagement for speech

related to the 2020 General Election. Complaint ¶¶ 16, 169–79; *see also* Motion to Dismiss, at 1-2 n.3.

Smartmatic's primary argument is that it is not a state actor, but Lindell has extensively briefed the bases under which this Court should determine that Smartmatic was and is a state actor. A private entity like Smartmatic may be deemed a state actor when the government has outsourced one of its constitutional obligations to it (*West v. Atkins*, 487 U.S. 42, 56 (1988)) or when a private entity conducts a "traditional, exclusive public function," (*Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1921, 1945 (2019)); Complaint ¶¶ 54, 169–79. Lindell has pled sufficient facts to meet the test under *West*, by showing: (1) the violation of a right secured by the Constitution and laws of the United States; (2)(a) the deprivation of Lindell's right is based on 2(a)(i) a rule or privilege created by the state; 2(a)(ii) a rule of conduct imposed by the state; or 2(a)(iii) because the state was responsible for Smartmatic; and (2)(b) Smartmatic is a state actor because (2)(b)(i) it is a state official; (2)(b)(ii) it acted together with or obtained significant aid from state officials; or (2)(b)(iii) because its conduct is otherwise chargeable to the state. *West*, 487 U.S. at 54. Lindell has likewise pled sufficient facts to meet the test under *Halleck* by showing that Smartmatic performed a traditionally and exclusively public function of the government. *See Halleck*, 139 S.Ct. at 1928–29.

### c.    Lindell's RICO Claim Is Not Frivolous.

Lindell has sufficiently pled a valid, non-frivolous cause of action for RICO violations against Smartmatic. *See* Response, at 19-36. "RICO is to be read broadly." *Safe Str. All. v. Hickenlooper*, 859 F.3d 865, 881 (10th Cir. 2017) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)). Smartmatic's primary complaint—that Lindell failed to allege a proper predicate act—is unavailing. Lindell properly pled extortion, witness tampering and mail fraud.

While Smartmatic argues that litigation cannot be extortion under RICO, "case law recognizes that *litigation may constitute extortion* where the 'victim of the extortionate activity had a preexisting right to be free from the threats invoked.'" *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, No. 06 CIV. 4404 CM GWG, 2014 WL 3610890, at \*9 (S.D.N.Y. July 21, 2014) (quoting *United States v. Tobin,* 155 F.3d 636, 640 (3d Cir. 1998)) (emphasis added).

Thematically on-point, Smartmatic mischaracterizes Lindell's allegations, contending "abusive or sham litigation does not constitute witness tampering under § 1512 . . ." Motion to Dismiss, at 30. But Lindell does not allege Defendants are tampering with and intimidating witnesses by abusive or sham litigation. Complaint ¶ 158. Rather, Lindell alleges the witnesses are being tampered with and intimidated by letters containing false allegations and threats of "imminent litigation" if the witnesses come forward with information about the irregularities observed during the 2020 General Election or, in the case of Lindell and others, if they speak publicly about the vulnerabilities of electronic voting machines and software to hacking and manipulation. *Id*. Where other misconduct was also part of the scheme, Courts have held allegations including sham or baseless litigation adequately allege a RICO predicate act. *See, e.g., Feld Ent. Inc. v. Am. Soc'y' for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012) (holding plaintiff's allegations of sham litigation sufficient where they also alleged entire lawsuit was based on bribery of lead plaintiff and witness).

Lindell's mail fraud allegations are also viable. "RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). "Mail fraud, in turn, occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the

purpose of executing such scheme or artifice or attempting to do so.'" *Id.* (quoting 18 U.S.C. § 1341). "The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element' … even if the mailing itself 'contains no false information.'" *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 712 & 715 (1989)).

### 3.     Lindell's Filed Suit To Protect His Freedom Of Speech.

Mike Lindell has been forthright and consistent regarding the reasons he sued Smartmatic:

> Mike Lindell brings this lawsuit to stop electronic voting machine companies and their co-conspirators from weaponizing the litigation process to silence political dissent and suppress evidence showing voting machines were manipulated to affect outcomes in the November 2020 General Election.  Complaint ¶ 1.

> Smartmatic claims Lindell's lawsuit does not seek to "'safeguard voting rights' and strengthen our democracy," Motion at 13, yet that is the very purpose of this lawsuit—to safeguard voting rights and strengthen democracy from those who seek to weaken it by conspiring to silence speech, dissent, and opposition to the use of electronic voting machines in the 2020 General Election and the machines' vulnerability to cyber-attacks and election tampering. Complaint ¶ 1.  Response, at 39-40.

There is absolutely nothing untoward about these reasons, and certainly nothing sanctionable Fed. R. Civ. P. 11(b)(1).  Smartmatic recognizes that "[t]he judicial system would serve little purpose if parties who believe they are aggrieved cannot file a lawsuit to address grievances."  *See* Motion to Dismiss, at 3.

The fact that Lindell's out-of-court statements are consistent with his pleading isn't sanctionable—to the contrary, if Lindell pled facts that were wholly inconsistent with his out-of-court statements, or unsupported by any evidence, that *might* rise to the level of sanctions.  But this case does not.  And Smartmatic's false and repugnant allegations tying Lindell to January 6 are salacious, but in no way do they support sanctions against Lindell.

Smartmatic clearly disagrees with what Lindell has said about Dominion, electronic voting machines, the 2020 General Election and Smartmatic itself.  And it has sued Lindell to silence him, just as it and Dominion—state actors who helped run the 2020 General Election—have sued others.  Their campaign of lawfare has now come home to roost, and Lindell has sued to end their tyranny with respect to what Lindell is allowed to say about the 2020 General Election.

**B.      The Smartmatic Complaint Was Procedurally Proper.**

Instead of joining the other parties' agreed briefing schedule regarding motions to dismiss Lindell's Complaint, Smartmatic chose to create a procedural quagmire by preemptively filing its Motion to Dismiss.  Despite Smartmatic's baseless arguments to the contrary, the Complaint clearly comports with the Federal Rules of Civil Procedure and the Court's orders managing the logistics and procedural posture of the case.

Lindell originally filed *affirmative claims* against Smartmatic in the District of Minnesota alleging both Smartmatic and Dominion committed RICO violations and conspiracy.  *See* Case No. 21-cv-1332, Dkt. No. 1.  That suit was transferred to this Court as Case No. 21-cv-2296. Dominion filed a motion to stay Lindell's lawsuit, which on October 18, 2021, the Court granted, staying the entire "case"—not only Lindell's claims against Dominion.  *See* Case No. 21-cv-2296, Dkt. No. 78 and at Oct. 18, 2021, Minute Order ("It is hereby ORDERED that *the case* will remain stayed….") (emphasis added).  Instead of abiding by the stay, Smartmatic moved to dismiss Lindell's claims on October 27, 2021.  *See* Case No. 21-cv-2296, Dkt. No. 81.  Understanding the case was stayed, Lindell sought the Court's guidance about his obligations to respond to that motion.  *See* Case No. 21-cv-2296, Dkt. No. 82.  On November 10, the Court issued a minute order stating Lindell should respond to Smartmatic's motion by December 1, 2021, and that a forthcoming order would clarify deadlines in several pending cases.  *See* Case No. 21-cv-2296, Nov. 10, 2021 Minute Order.

On November 15, 2021, the Court entered an Order in 5 cases including this case (which, at that time, only included Dominion's affirmative claims against Lindell and MyPillow) and Case No. 21-cv-2296 (the only case where Lindell asserted affirmative claims against Dominion and Smartmatic).  *See* Dkt. No. 85; Case No. 21-cv-2296, Dkt. No. 84. That Order stated, "[t]he Plaintiffs in both *Lindell v. US Dominion, Inc., et al.,* 21-cv-2296 … shall coordinate and refile *their affirmative claims* as counterclaims in *US Dominion, Inc. et al. v. My Pillow, Inc. et al.*, 21-cv-445, on or before December 2, 2021." *Id*. at ¶ 2 (emphasis added).  The Court further noted its intention "to dismiss *Lindell v. US Dominion, Inc., et al.*, 21-cv-2296 . . . *once the affirmative claims* have been so filed." *Id*. at n.1 (emphasis added).  That same day, the clerk entered the following on PACER: "Set/Reset Deadlines: *Affirmative Claims and counterclaims* due by 12/2/2021." Case No. 21-cv-2296 at Nov. 15, 2021 entry (emphasis added). Out of an abundance of caution, Lindell filed the Complaint (Dkt. No. 87) and Rule 41 Notice of Voluntary Dismissal of Case No. 21-cv-2296 on December 1, 2021.  *See* Case No. 21-cv-2296, Dkt. No. 85.

Smartmatic's "Procedural History" ignores three key points from this Court's November 15 Order and docket entries:

1. The Court ordered Lindell to file his "affirmative claims" into this action. *See* Dkt. 85; Case No. 21-cv-2296, Dkt. 84 at ¶ 2;
2. The Court said it would dismiss the entire case containing Lindell's affirmative claims against Smartmatic. *See* Dkt. 85; Case No. 21-cv-2296, Dkt. 84 at n.1; and
3. The Court notified the parties that both "affirmative claims" and counterclaims were due by 12/2/2021. *See* Case No. 21-cv-2296 at Nov. 15, 2021 entry.

Instead, Smartmatic's interpretation of the November 15 Order assumes the Court had already decided Lindell's claims against Smartmatic should be dismissed by making it impossible for Lindell to file his claims.  The Court's orders regarding the filing of Lindell's affirmative claims against Smartmatic, however, render that interpretation incorrect.

The Complaint is consistent with this Court's orders and the Federal Rules of Civil Procedure.  Lindell did not previously file an Answer to Dominion's lawsuit against him, no deadline for joinder of additional parties existed, and Lindell made no affirmative claims against Smartmatic in this case; accordingly, it was procedurally sound for Lindell to file his claims against Smartmatic as an "Original Third-Party Complaint" included in his Original Answer to Dominion's claims.  Fed. R. Civ. P. 15 has nothing to do with that pleading other than to set a December 29, 2021 deadline for Lindell to amend his claims against Smartmatic.  Further, Fed. R. Civ. P. 41(a)(1)(A)(i) authorized Lindell to dismiss his claims against Smartmatic because Smartmatic had not filed an answer or motion for summary judgment.  And, pursuant to Fed. R. Civ. P. 41(a)(1)(B), that dismissal is *without prejudice*, further supporting the propriety of Lindell's Complaint. Lindell has not violated this Court's orders or the Rules.

**C.      The Sanctions Sought By Smartmatic Are Unwarranted And Overreaching.**

Standing alone, the dearth of meritorious legal and factual arguments within Smartmatic's Motion is troubling.  These concerns, however, are further compounded by Smartmatic's unfounded and overreaching request for relief, particularly the request for disgorgement of Lindell's counsel's attorneys' fees.  Not surprisingly, Smartmatic only cited the bare minimum of legal authority in support of its outlandish request. But the persuasive value of that minimal authority evaporates under closer scrutiny. First, the reliance on Joseph, Sanctions: The Federal Law of Litigation Abuse § 16, is entirely misplaced and circular. The entirety of section 16 of the treatise cites but a single case on disgorgement, *Upchurch, v. O'Brien, et al.*, No. 19-CV-165-WMC, 2021 WL 3617098 (W.D. Wis. Aug. 16, 2021), which in turn relies on Joseph, which otherwise is silent on the matter. The lack of authority in Joseph actually weighs against rather than supports Smartmatic's request.

Second, the fact pattern in *Upchurch* was uniquely outrageous and does not bear even a tenuous connection to the instant case. *Upchurch*, a 2021 Wisconsin district court slip opinion, involved a multi-year campaign of harassment by the plaintiff, including theft and felony stalking, against the owners of a neighboring resort. The lawsuit was but another step during the campaign, as Upchurch alleged that he was unlawfully denied access to a nearby lake per an easement in his property deed, and Upchurch's counsel averred to having reviewed the deed, transcripts, and witness statements supporting the claims. *Id.* at 4–5. Incredibly, in response to the sanctions motion, Upchurch's attorney finally admitted that he filed the lawsuit with full knowledge that the deed was not in Upchurch's name, which was the only vehicle to any cause of action Upchurch may have had. *Id.* at 7–8. By filing a knowingly false lawsuit, Upchurch's attorney, an officer of the court who must follow the rules of professional conduct and ethics generally, clearly committed a fraud on the court. Upchurch's attorney also persisted with causes of action that he knew were unsupported and baseless. *Id.* at 8. Although Smartmatic may disagree with the evidence Lindell cites regarding the merits of his claims and erroneously believe that a dismissal is warranted, there is not, nor can there be, a contention that Lindell's counsel knowingly filed baseless claims unsupported by any evidence whatsoever. To the contrary, Lindell's Complaint contains more than 130 pieces of evidence and relies on law to support the propositions contained therein. *See* §III.A above.

Neither of Smartmatic's two other cases address disgorgement of fees. *Markwell v. Cnty. Of Bexar*, 878 F.2d 899 (5th Cir. 1989), involved an attorney, Myers, who filed two frivolous motions against a plaintiff, who was without counsel due to disqualification, during the period the court had stayed all motions while plaintiff searched for new counsel. *Id.* at 902. Myers also tried to unethically initiate settlement discussions. *Id.* at 900. Meanwhile, the judge ordering the

sanction previously sanctioned Myers on four separate occasions the prior year for his pleading tactics, and another had warned Myers that his "shotgun approach to pleading was treading close to forbidden Rule 11 territory." *Id. Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453 (7th Cir. 2005), is likewise merely an example of an attorney flagrantly disregarding prior court orders, as counsel therein improperly removed a case twice, the second time to a different district than the first, admittedly in the impermissible hope of obtaining a second opinion on removability. *Id*. at 456. Nevertheless, despite this egregious conduct, the court did not order the disgorgement of fees, instead imposing a fine and ordering payment of fees incurred by opposing counsel. *Id*. at 455.

A sanction is not supposed to punish or "send a strong, unmistakable message." Motion, at 39. Instead, the law is clear and consistent that a court should only award the least severe sanction adequate to serve the purpose for which the sanction is being imposed. *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C. Cir. 1990). Smartmatic does not request an adequate sanction, but rather a draconian one. Clearly, Smartmatic's goal is not to protect the judicial system or our democracy, but rather its selfish interests to quiet discourse and intimidate anyone that dare question its conduct. Deterring any American from seeking justice in our nation's courthouses is the actual conduct that debases our judicial system, not Lindell's lawsuit.

**D.      Smartmatic Blatantly Misrepresents Lindell's Allegations Against It and The Holdings of Other Courts.**

Contrary to what Smartmatic wants this Court to believe, Lindell's causes of action against it and the other defendants in this case have not been adjudicated anywhere in a court of law. Indeed, Lindell is a *defendant* in this case brought by Dominion and in another brought by

Smartmatic[5] for allegedly defaming them.  None of the 2020 General Election cases cited by Smartmatic pled facts and expert testimony as alleged in the Complaint—much less had these particular facts and evidence adjudicated on the merits.  The fact that Smartmatic disputes Lindell's evidence does not mean Lindell's defenses and counterclaims/third party claims are sanctionable. Lindell is entitled to his day in court.

> **1.    The Cases Relied On By Smartmatic Are Not Remotely Similar To The Claims And Factual Predicates Pled In The Complaint.**

As detailed above, Lindell's counterclaims/third-party claims relate to Smartmatic and other Defendants attempting to silence and suppress Lindell's and others' speech.  Lindell does not have a fraud claim, nor does Lindell seek in this lawsuit to decertify any election results. Despite that, Smartmatic continually cites more 2020 General Election cases where Plaintiffs sought, *inter alia*, preliminary injunctions, decertification of election results and fraud, and who were sanctioned for a variety of reasons, none of which are relevant to this case and Lindell's claims.

The first case Smartmatic cites for the leveling of sanctions against an attorney, *Wisconsin Voters Alliance v. Pence*, 514 F. Supp.3d 117 (D.D.C. 2021), has no relationship to this case whatsoever, either by extension or analogy.  Plaintiffs, voter groups and individual voters from the states of Wisconsin, Pennsylvania, Georgia, Michigan, and Arizona, brought suit against Vice President Michael R. Pence, in his official capacity as President of the Senate; both houses of Congress and the Electoral College itself; and various leaders of the five aforementioned states. 514 F. Supp.3d at 119.  Plaintiffs asked the Court to "declare unconstitutional several decades-old federal statutes governing the appointment of electors and the counting of electoral votes for

---

[5] On January 18, 2022, Smartmatic sued Lindell for defamation in Minnesota. *Smartmatic et al v. Michael Lindell et al*, 0:22-cv-00098-WMW-JFD (D. Minn.).

President of the United States; to invalidate multiple state statutes regulating the certification of Presidential votes; to ignore certain Supreme Court decisions; and, the *coup de grace*, to enjoin the U.S. Congress from counting the electoral votes on January 6, 2021, and declaring Joseph R. Biden the next President." *Id.* at 118. The court held that "[i]n addition to being filed on behalf of Plaintiffs without standing and (at least as to the state Defendants) in the wrong court and with no effort to even serve their adversaries, the suit rests on a fundamental and obvious misreading of the Constitution." *Id.* at 119. The court subsequently sanctioned the attorney for bring the lawsuit. *See Wisconsin Voters Alliance v. Pence*, No. CV 20-3791 (JEB), 2021 WL 686359 (D.D.C. Feb. 19, 2021). There are no similarities between the parties in *Wisconsin Voters Alliance* and the case before this Court, no similarities in the causes of action pled, no similarities in the operative facts alleged and no similarities in the relief sought by Lindell.

Next, Smartmatic cite to *In the Matter of Giuliani*, 146 N.Y.S.3d 266 (N.Y. App. Div. 2021), wherein the Supreme Court, Appellate Division suspended Giuliani's law license. That attorney disciplinary matter has no bearing on Lindell's counterclaims/third party claims against Smartmatic and the other Defendants in this matter. Giuliani was involved in numerous lawsuits around the country related to election fraud and decertifying the 2020 General Election results. 146 N.Y.S.3d at 272-73 (citing *e.g. Donald J. Trump for President, Inc. v. Boockvar*, 502 F.Supp.3d 899, *aff'd*, 830 Fed. Appx 377 (3d Cir. 2020)). The opinion is extensive with respect to the allegations and findings of Giuliani violating the Rules of Professional Conduct. The opinion, however, is an attorney grievance case, which does not relate to Lindell's counterclaims/third party claims for damages caused by Smartmatic and other Defendants attempts to silence and suppress Lindell's speech.

The sanctions in *O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747-NRN, 2021 WL 3400671, at *1 (D. Colo. Aug. 3, 2021), *modified on reconsideration*, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021) fundamentally stemmed from the plaintiffs purportedly representing 160 million registered voters alleging a vast conspiracy between "four governors, secretaries of state, and various election officials of Michigan, Wisconsin, Pennsylvania and Georgia; along with Dominion, a private supplier of election and voting technology; the social media company Facebook; CTCL, a non-profit organization dedicated to making elections more secure and inclusive; as well as Facebook founder Mark Zuckerberg and his wife Priscilla Chan." 2021 WL 3400671 *2.  The court dismissed the case and issued sanctions finding there was no good faith basis for asserting that plaintiffs had standing to sue, there was no good faith basis for asserting personal jurisdiction over the State Official Defendants, the scope of counsel's inquiry into the facts was not reasonable under the circumstances, and counsel acted in bad faith and attempted to mislead the court. *Id.* at *24-34.  As detailed in this Response and Lindell's Response to Smartmatic's Motion to Dismiss ("Response") (Dkt. No. 104), none of these findings by the court in *O'Rourke* apply to Lindell or his counsel in filing the counterclaims/third party claims in this case.

Finally, in *King v. Whitmer*, after the court dismissed plaintiffs' case (discussed below), it issued a lengthy opinion leveling sanctions against Plaintiffs' attorneys. *See King v. Whitmer*, No. 20-13134, 2021 WL 3771875, at *1 (E.D. Mich. Aug. 25, 2021).  The court held, *inter alia*, that counsel's claims were not warranted by existing law or a nonfrivolous argument extending existing law, counsel claimed acts or events violated Michigan election law when it did not, counsel failed to inquire into the requirements of Michigan election law, and counsel did not have evidentiary

support for factual allegations.  2021 WL 3771875, at *20-32.  By contrast, Lindell's claims are supported with facts and law, as shown in this Response and in Lindell's.

### 2. Lindell's Counterclaims/Third-Party Claims Are About Protecting Free Speech, Not Overturning the 2020 General Election.

Smartmatic takes great liberty with a couple of instances in which the word "rigged" is used within the counterclaims/third party claims in an effort to mislead the court into believing Lindell is seeking through this lawsuit to overturn the 2020 General Election. Motion, at 2-3.  He is not; he is defending his First Amendment right to speak publicly about issues of vital importance like election integrity without being bludgeoned by ruinous litigation.  This case is not even remotely similar to the 2020 General Election cases that attempted to decertify the election.  As stated in his Complaint, in the paragraph prior to detailing his causes of action, Lindell brought his counterclaims/third party claims "to put an end to Dominion's and Smartmatic's campaign of 'Lawfare' against those who criticize their electronic voting machines or who question their role in the indisputably suspect conduct of the 2020 General Election."  Complaint ¶ 140.  Smartmatic wants the Court to be the word police and sanction Lindell and his counsel for simply using words and phrases instead of looking at the causes of action Lindell actually pled and the evidentiary support cited in the Complaint.

Lindell's counterclaims/third-party claims against Smartmatic include the following Counts: (III) violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962, along with Dominion Defendants and HPS; (IV) violation of Lindell's rights under the Support and Advocacy clause of 42 U.S.C. §1985(3), along with Dominion Defendants and HPS; (V) violation of Equal Protection Clause of the United States Constitution and under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, along with Dominion; (VI) violation of Lindell's rights under the First and Fourteenth Amendments of the United

States Constitution, along with Dominion; and (VII) civil conspiracy against all Defendants for their collusion and agreement to the common objective or course of action, acting under color of state law, to deprive Plaintiff Lindell of his constitutional rights under the First Amendment, and their overt acts in connection with that common purpose.  *See* Complaint §§ 152-183.  Lindell seeks monetary relief for Smartmatic's violations.  Lindell does not seek an injunction to stop certification of an election or to decertify election results.  These are novel claims.  No court has addressed them in the context of the 2020 General Election.

There are no similarities between Lindell's claims and the cases cited by Smartmatic.  In *King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020), neither Lindell, Dominion, nor Smartmatic were parties to the case.  On November 25, 2020, the plaintiffs in King, registered Michigan voters and nominees of the Republican Party to be Presidential Electors on behalf of the State of Michigan, sought the extraordinary relief of a temporary injunction and asked the Court to:

> (a) order Defendants to decertify the results of the election; (b) enjoin Secretary Benson and Governor Whitmer from transmitting the certified election results to the Electoral College; (c) order Defendants "to transmit certified election results that state that President Donald Trump is the winner of the election"; (d) impound all voting machines and software in Michigan for expert inspection; (e) order that no votes received or tabulated by machines not certified as required by federal and state law be counted; and, (f) enter a declaratory judgment that mail-in and absentee ballot fraud must be remedied with a manual recount or statistically valid sampling.

*King*, 505 F.Supp.3d at 730.  The court denied Plaintiffs' motion for a temporary injunction on numerous grounds, including Eleventh Amendment Immunity, mootness, laches, and lack of standing.  In reviewing Plaintiffs' affidavits submitted with their complaint, the court found, "the closest Plaintiffs get to alleging that physical ballots were altered in such a way is the following statement in an election challenger's sworn affidavit: 'I believe some of these workers were changing votes that had been cast for Donald Trump and other Republican candidates.'"  *Id.* at 738.  Contrary to Smartmatic's sweeping assertion that *King* "rejected allegations that cast doubt on the

electoral results," the court held such affidavit evidence fell "far short of what is required to obtain any relief, much less the extraordinary relief Plaintiffs request."  *Compare id.* at 738 *with* Motion at 3.  As a result, the court's findings in *King* have no bearing on Lindell's counterclaims/third-party claims, which differ entirely from the plaintiffs' claims in *King*.

Similarly, Smartmatic's reliance on *Bowyer v. Ducey,* 506 F. Supp. 3d 699 (D. Ariz. 2020) as controlling authority on Lindell's claims here is also misplaced. Like in *King*, none of the parties in this lawsuit were in *Bowyer. See* 506 F.Supp.3d at 707. The plaintiffs in *Bowyer* also sought a TRO to "contest" the Arizona election and asked the court to compel the Arizona Governor to "de-certify" the results and "a permanent injunction 'enjoining Secretary Hobbs and Governor Ducey from transmitting the currently certified election results to the Electoral College,' declare the election results unconstitutional, and seize all voting machines, equipment, software, and other election-related records and materials, including all ballots cast." *Id.* at 706-07.  Lindell requests no such relief in this lawsuit.  The *Bowyer* plaintiffs' complaint included four causes of action for violations of Constitution's Elections and Electors Clauses, as well as the Fourteenth Amendment's Due Process and Equal Protection guarantees, and a "cause of action" for "Wide-Spread Ballot Fraud." *Id.* at 707.  The court dismissed the first three claims due to a variety of reasons, including lack of Article III standing, abstention, Eleventh Amendment immunity, laches and mootness. *See id.* at 708.  With respect to the *Bowyer* plaintiffs' "fraud" claim, the court dismissed it for failure to particularly plead fraud. *Id.* at 723.  The allegations, causes of action, parties, and court holdings in *Bowyers* are entirely different than Lindell's counterclaims/third-party claims which seek damages from Smartmatic and the other Defendants who want to use litigation and threats of litigation to silence and suppress Lindell's speech.

Finally, Smartmatic's citation to *Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377 (3d Cir. 2020) for the proposition that "in several instances, courts squarely rejected allegations that cast doubt on the electoral results" is puzzling.  Motion, at 3.  In that case, the appellate court ruled on a very narrow issue, whether the district court abused its discretion in not letting the Trump Campaign amend its complaint a second time.  *Donald J. Trump for President, Inc.*, 830 F. App'x at 382.  The procedural history of the case was complicated, but in short, the Trump Campaign sought a preliminary injunction to block certifying the Pennsylvania election results, which the district court denied.  *Id.* at 384-85.  The court dismissed its claims for a variety of reasons, including no specific discrimination and lack of standing under the Election and Electors clauses.  *Id.* at 389.  The *Donald J. Trump for President* case simply bears no rational comparison to Lindell's claims against Smartmatic.

### 3. Neither Lindell Nor His Counsel Has Defied Any Court's Ruling on Election Fraud or Sanctions—Lindell Filed His Counterclaims/Third Party Claims to Prevent Smartmatic and Defendants from Trying to Suppress Free Speech.

Smartmatic's allegation that Lindell's causes of action defy courts' "rulings rejecting election fraud, and … rulings issuing sanctions" is fantastical.  *See* Motion, at 6.  As discussed in the two previous sections, Lindell's claims relate to Smartmatic and other Defendants attempting to silence and suppress Lindell's speech.  Indeed, Smartmatic seems to acknowledge as much in its bullet points summaries in its Motion.  Motion, at 7-8 ("In Count IV, Mr. Lindell alleges that Smartmatic conspired with Dominion to '*silence'* those who…"; "In Count V, Mr. Lindell alleges that Smartmatic and Dominion used litigation to '*suppress'* his…"; "In Count VI, Mr. Lindell alleges that Smartmatic and Dominion *retaliated* against him for…"; "In Count VII, Mr. Lindell alleges that Smartmatic conspired with Dominion *to 'silence his views*…'"; and "In Count III, Mr. Lindell alleges that Smartmatic violated RICO because Dominion sent cease-and-desist letters…")

(emphasis added).  No court has ruled on any such causes of action related to the 2020 General Election.

But, while acknowledging generally that Lindell's causes of action relate to speech silencing, suppression, and retaliation, Smartmatic fails to give context to the quoted statements it lifted from the Complaint, thereby creating a misleading narrative that Lindell's causes of action are based on fraud and manipulation.  *See* Motion at 7-8.  They are not.  The causes of action relate to free speech. For example, in Count IV, which is seven detailed paragraphs long (Complaint ¶¶ 162-68), Lindell alleges that

> the Dominion Defendants, the Smartmatic Defendants, and HPS, with the assistance and participation of nonparty co-conspirator Clare Locke, had a meeting of the minds to agree on the common purpose of *silencing speech, dissent, and opposition to the use of electronic voting machines* in the 2020 General Election *and the exposure of such machines' vulnerability to cyber-attacks and election tampering*.

Complaint ¶ 166. Rather than quoting the cause of action accurately, Smartmatic lifts two clauses from separate sentences, eight lines apart in Paragraph 166 to arrive at its distorted, inaccurate summary.  Smartmatic's summary provides,

> Mr. Lindell alleges that Smartmatic conspired with Dominion to "silence" those who promoted "*an effort to determine the legitimate votes cast for each Presidential candidate in each of the key swing states, in light of the numerically improbable overnight lead change from Trump to Biden*" and "*significant potential that [voting technology] vulnerabilities were exploited in certain jurisdictions to artificially cost President Trump the election*."

Motion, at 7 (emphasis added).  Yet, the two italicized clauses are part of a much larger allegation about speech suppression and voting technology.  Paragraph 166 of the Complaint actually provides:

> The real purpose of the conspiracy was to silence those like Lindell who supported President Donald J. Trump and advocated for investigations into voting machine fraud (and other types of election fraud) *in an effort to determine the legitimate votes cast for each Presidential candidate in each of the key swing states, in light of the numerically improbable overnight lead change from Trump to Biden* in those states in the wee hours of November 4, 2020. Importantly, as noted above, upon information and belief, not one

democrat or left-leaning media organization has been threatened or sued by Dominion or Smartmatic based on their years of reporting vulnerabilities in election machines and software. <u>The Dominion Defendants, the Smartmatic Defendants, and HPS determined to carry out this conspiracy through a coordinated campaign of lawfare—weaponizing the court system and litigation process to threaten, intimidate, and force private citizens like Lindell into silence and retract their public statements regarding opposition to the use of electronic voting machines and their vulnerabilities, and</u> the *significant potential that such vulnerabilities were exploited in certain jurisdictions to artificially cost President Trump the election* in key swing states.

Complaint ¶ 166 (emphasis added).  The italics is what Smartmatic quoted, but it ignored the underlined text to give the Court a false narrative.  As easily seen, Smartmatic's narrative is wholly misleading.

As another example, Smartmatic incompletely quotes the allegations in Count V when it states,

Mr. Lindell alleges that Smartmatic and Dominion used litigation to "suppress" his "right to disseminate information and data regarding *the role* of Dominion *voting machines in election fraud and election tampering*."

Motion, at 7 (emphasis in original).  Lindell, however, actually pled a much different cause of action than Smartmatic tries to spin:

The facts alleged above and to be proven at trial will demonstrate that the Dominion Defendants and Smartmatic Defendants acted under color of state law to engage in invidious discrimination or intentional misconduct to the detriment of Lindell and others of his same class of voter. Specifically, the Dominion Defendants and Smartmatic <u>Defendants, acting under color of state law as a private corporation authorized and employed by various states under their Constitutional obligations to perform the essential state function of administering and conducting the 2020 Presidential Election, have attempted through the use of the courts and the litigation process to suppress Lindell's freedom of speech and</u> his *right to disseminate information and data regarding the role of Dominion voting machines in election fraud and election tampering*.

Complaint ¶ 173 (emphasis added).  Again, the italics are what Smartmatic quotes, foregoing the underlined portion that gives context and the basis for the cause of action.  Smartmatic's summary does not accurately reflect Lindell's claim.  Smartmatic's purported summary of Counts VI, VII, and III are equally misleading.

In sum, no court has ruled on the causes of action pled by Lindell and the facts supporting them. Indeed, Smartmatic cites none. Neither Lindell nor counsel have defied court rulings in bringing these counterclaims/third party claims.

**E.      None Of Smartmatic's Remaining Cases Support Sanctions.**

Unsurprisingly, not a single other case cited by Smartmatic supports the imposition of sanctions on a party or his counsel who filed suit to protect a Constitutional right, based on sound legal theories, citing more than 130 pieces of evidence (at the pleading stage), and whose claims have not been dismissed.

**1.      Lindell's Complaint Does Not Suffer From The Absence Of Facts.**

Several of the cases cited by Smartmatic support an award of sanctions when a plaintiff is unable to produce *any* evidence in support of its claims. *See Carswell v. Air Line Pilots Ass'n, Intern.,* 248 F.R.D. 325, 329-30 (D.D.C. 2008); *Abner Realty, Inc. v. Adm'r of Gen. Services Admin,* No. 97 CIV. 3075dis (RWS), 1998 WL 410958, at \*4-8 (S.D.N.Y. July 22, 1998). In *Abner Realty*, the court further noted there was no investigation or evidence to substantiate Plaintiff's claims, and the only corroboration of Plaintiff's allegations was "upon information and belief." *See Abner Realty,* No. 97 CIV. 3075 (RWS), 1998 WL 410958, at \*4-8. This stands in stark contrast to the plethora of evidence Lindell cited in the Complaint and the response to Smartmatic's Motion to Dismiss and detailed above.

Other cases impose sanctions when a party admittedly conducted no pre-suit investigation. In *Del Canto v. ITT Sheraton Corp.*, 865 F. Supp. 934, 938 (D.D.C. 1994), *aff'd sub nom. del Canto v. Richardson*, 70 F.3d 637 (D.C. Cir. 1995), the court held that the plaintiff conducted no pre-suit investigation and provided no evidence of a conspiracy between the defendants. In *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, No. CV 10-2095 (RC), 2014 WL 12787643, at \*7 (D.D.C. Oct. 15, 2014), the defendant offered an affidavit in support of his counterclaims that facially showed

how little defendant knew at the time of making the tortious interference allegations and did not identify a single witness who actually heard the plaintiff's representative make a disparaging or defamatory comment about defendant and did not identify a single plaintiff's representative who allegedly made such comments or describe how the comments affected a customer's decision making.  Indeed, as opposed to the attorney in *Hanson v. Greenspan*, No. CIV. A. 91-1599(GHR), 1991 WL 274267, at *4 (D.D.C. Dec. 6, 1991), who was sanctioned for filing a complaint with obvious facial defects (none of which have been alleged by Smartmatic) and who signed an affidavit informing the court that a complaint was filed "before digging into the facts," Lindell's Complaint cites more than 130 pieces of evidence.

There can simply be no credible claim that Lindell and his counsel failed to conduct a sufficient pre-suit investigation before suing Smartmatic.

## 2.     Lindell's Complaint Is Legally Sound And Not Frivolous.

In *Cousin v. D.C.*, 142 F.R.D. 574, 577 (D.D.C. 1992), the defendant failed to cite relevant, controlling authority in its motion to dismiss or in the alternative for summary judgment, as required by the D.C. Rules of Professional Conduct 3.3(a)(3).  Per Rule 3.3(a)(3), failure to disclose controlling, adverse authority is unreasonable.  *Id*.  Therefore, because the cases which defendant failed to cite were determinative of defendant's argument, and because Rule 3.3(a)(3) mandates a party to cite adverse, controlling authority, defendant's failure to cite the cases was unreasonable and thus sanctionable under Rule 11.  *Id*.  In his Response to Smartmatic's Motion to Dismiss, Lindell cited 113 cases in addition to numerous statutes, rules, law review articles and legislative history to support his claims against Smartmatic.

The sanctions award in *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 31-32 (D.D.C. 2012) was based on the plaintiff first pleading diversity jurisdiction when even the most cursory of legal

inquiries would have uncovered this error, and then pleading two wholly insubstantial civil RICO claims in an effort to invoke federal question jurisdiction. The RICO claims were not warranted by existing law or a "nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law." *See* Fed. R. Civ. P. 11(b)(2). The court held that it appeared that the RICO claims were frivolously filed solely to invoke the jurisdiction of this Court and sanctions under Rule 11 may be warranted. *Son Ly*, 910 F. Supp. 2d at 31–32. Similar reasoning supported the sanctions award in *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299-300 (7th Cir. 2003). Here, Lindell clearly did not plead RICO claims to establish federal question jurisdiction, and as detailed above, fully intends to pursue his RICO claims.

### 3.   Lindell's Claims Were Not Filed For Improper Purposes.

*Bachi-Reffitt v. Reffitt*, 802 Fed. Appx. 913 (6th Cir. 2020) is a divorce case where an ex-wife asserted a RICO claim against her ex-husband and his father. The Court issued sanctions because of the near-unanimous court rulings that "concealment of assets by a husband from a wife . . . does not render it a pattern of racketeering activity . . . for purposes of RICO." *Id*. at 913, 916–17. Unlike this case, the district court explained that the plaintiff and her attorney "had no good faith basis to file this case," knew that they did not, and could offer no "non-frivolous" explanation as to why they did so anyway, and the Sixth Circuit affirmed the award of sanctions. *Id*. at 913, 918–19.

### 4.   Lindell Did Not Plead Himself Out Of Court.

In the Florida case *Del Pino v. Bay of Pigs Veterans Ass'n*, No. 07-22869-CIV, 2008 WL 11411845, at *2-3 (S.D. Fla. Feb. 12, 2008), the court determined that the plaintiff pled himself out of court by failing to allege the defendant exercised any power she received by virtue of state law or that her conduct was fairly attributable to the State for his 1983 claim, and the plaintiff

referred to the defendant as the host of a privately owned radio show in his pleading (making the defendant improper for a Section 1983 claim). *Del Pino v. Bay of Pigs Veterans Ass'n*, No. 07-22869-CIV, 2007 WL 9706830, at *2 (S.D. Fla. Dec. 28, 2007). The Court found further pleading deficiencies and dismissed the case. *Id*. at *3. Only after dismissal did the court consider a request for Rule 11 sanctions, finding that the plaintiff's 1983 and 1985 claims were objectively frivolous. *Del Pino*, No. 07-22869-CIV, 2008 WL 11411845, at *2-3. Smartmatic has not alleged that Lindell has failed to plead necessary elements—it just disagrees with the factual bases for Lindell's claims. Further, the Court has not dismissed Lindell's claims against Smartmatic.

In *Williams v. Romarm S.A.*, No. 19-CV-183 (EGS), 2020 WL 1557156, at *1 (D.D.C. Apr. 1, 2020), *appeal dismissed sub nom. Williams v. Romarm, SA, Mfr., Imp. & Distrib. of Semiautomatic Assault Weapon WASR10*, Ser. No. CA4367-70, No. 21-7010, 2022 WL 412449 (D.C. Cir. Feb. 3, 2022), the plaintiffs filed suit in several jurisdictions for claims based on the same facts and involving the same parties. The plaintiffs' complaint contained no claims for relief, no factual allegations, and no demand for the relief sought. *Id.* at *1. Further, the court found that the plaintiffs' claims were barred under the doctrine of collateral estoppel. *Id.* at *3-5. Finally, the court noted that Plaintiffs' attorney had a history of violating the Court's rules and was not a member in good standing with the Court at the time of the initial filing of the action. Again, not a single one of these facts applies to this case. *Id.* at *9.

### 5. Lindell Has Not Re-Pled Previously Dismissed Claims.

Sanctions were awarded in *BEG Investments, LLC v. Alberti*, 85 F. Supp. 3d 13, 50-52 (D.D.C. 2015) when a plaintiff reasserted his claims after the court had already dismissed them with prejudice. Similar conduct was sanctioned in *Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 24-25 (D.D.C. 2004), where the plaintiff and his counsel (a) continued to pursue

claims that were determined to be time-barred; (b) re-filed a nearly identical complaint to one that had been previously dismissed; and (c) amended a complaint in a way calculated to appear different, but in substance was the same.  Likewise, in *In re Ames*, 993 F.3d 27, 33-36 (1st Cir. 2021), after the judge noted that defendant's actions simply did not violate any of plaintiff's rights and recommended dismissing plaintiff's claims but granted the plaintiff leave to replead his claims and cure the deficiencies, the plaintiff simply recycled his claims and "ignored clear, widely available pleading requirements for discrimination and retaliation claims" by failing to allege the existence of a contractual relationship or that defendant's actions were even motivated by racial animus.  This is completely inapposite to this case; Lindell's have not been dismissed.

6.    **Lindell's Complaint Does Not Compound Factual And Legal Deficiencies With An Improper Purpose.**

The sanctions award in *Thomas v. Early County, GA*, 360 Fed. Appx. 71, 75-76 (11th Cir. 2010) was based on a compounding of several factors not present here, including the plaintiffs conceding error and removing some of the legally unsupportable allegations in their response to defendants' motion to dismiss and the fact that the plaintiffs filed three complaints alleging facts without support—over a period of four years—and waited for defendants to move for summary judgment, then voluntarily dismissed their claims without ever presenting any facts to support their allegations.

Another case that compounds several grounds for sanctions is *Hollister v. Soetoro*, 258 F.R.D. 1 (D.D.C. 2009), *aff'd*, 368 Fed. Appx. 154 (D.C. Cir. 2010).  After an initial suit was dismissed, the plaintiff's lawyer found a new plaintiff to file a substantially similar lawsuit.  *Id.* at *2.  The court found that Hemenway's invocation of the interpleader statute was completely frivolous and dismissed the complaint.  *Id.* at *2-3.  The court also found that the lawyer knew his suit offered no hope whatsoever of success and that the attorney had no colorable authority that

his claim could be an interpleader suit or that his claim had any particular dollar value. *Id.* at *5. Not a single one of these facts aligns to this case.

7.    **Smartmatic's Remaining Cases Are Wholly Inapposite.**

*Geller v. Randi*, 40 F.3d 1300, 1302-03 (D.C. Cir. 1994) merely stands for the proposition that the Court can impose sanctions on a party who fails to respond to a motion for sanctions. Lindell wholly opposes Smartmatic's baseless motion as evidenced herein. *LeFande v. Mische-Hoeges*, No. 10-CV-1857 (DLF), 2019 WL 8331599, at *3-4 (D.D.C. Jan. 29, 2019), *aff'd*, 806 Fed. Appx. 1 (D.C. Cir. 2020) discusses the appropriateness of *additional* sanctions against an attorney who was previously sanctioned—which, again, is not so with this case. *Matter of Giuliani*, 146 N.Y.S.3d 266 (N.Y. App. Div. 2021), and *Wisconsin Voters Alliance*, No. CV 20-3791 (JEB), 2021 WL 686359 (D.D.C. Feb. 19, 2021) are grievance cases, not Rule 11 cases, and are wholly inapposite to this case.

Put plainly, Smartmatic has no factual or legal basis supporting sanctions against Lindell or his counsel.

## IV.
## CONCLUSION

Lindell and his counsel have pled good faith complaints supported by extensive evidence to vindicate Mike Lindell's First Amendment right to the freedom of speech.  Nothing in the Complaint or the actions of Lindell or his counsel violate Fed. R. Civ. P. 11.  Accordingly, Smartmatic's Motion should be denied.

Dated: February 25, 2022

Respectfully submitted,

*/s/ Douglas A. Daniels*
Douglas A. Daniels
D.C. Bar No. TX0205
Heath A. Novosad
D.C. Bar No. TX0207
DANIELS & TREDENNICK PLLC
6363 Woodway Dr., Suite 700
Houston, TX 77057-1759
(713) 917-0024 Telephone
(713) 917-0026 Facsimile
Email: doug.daniels@dtlawyers.com
Email: heath.novosad@dtlawyers.com

Earl N. "Trey" Mayfield, III
D.C. Bar No. 459998
JURIS DAY, PLLC
10521 Judicial Drive, Suite 200
Fairfax, Virginia 22030
Telephone: (703) 268-5600
tmayfield@jurisday.com

*Counsel for Defendant Michael J. Lindell*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon all parties of record through the Court's CM ECF system on February 25, 2022.

*/s/ Douglas A. Daniels*
Douglas A. Daniels