# EXHIBIT A

# RESOLUTION TO RECLAIM

Office of State Representative Timothy Ramthun

59th Assembly District

# PRESENTATION AGENDA

- Introduction
- Covering the merits of the resolution by breaking down each clause and validation of evidence for each statement.
- List of supporting Constitutional Attorneys and subject matter experts and their credentials.
- Summaries of their statements with attached documents in full for review.
- Current legislative solutions in place
- Conclusion

**Rasmussen Reports**
**Field Guide to Election Integrity**
**December 23rd, 2021**
**- ALL U.S. National Likely Voters -**

- 59% now say cheating was likely in the 2020 elections, just up from 56%.
- 55% of Black voters say there was cheating in the 2020 elections.
- 55% support 2020 election audits including 53% of Black voters.
- 60% agree that opponents of requiring a Photo ID to vote just want to make it easy to cheat in elections, including 63% of Black voters.
- 61% say Election Reform must happen in Swing States like PA, MI, GA, WI, & AZ where voters have lost confidence.
- 65% say preventing cheating more important than making it easier to vote.
- 66% say wider use of mail-in voting will lead to more cheating in elections.
- 70% say private 'Zuckerbucks' type partisan election funding is "a bad thing for American Democracy," including 52% of Black voters.
- 75% say requiring Photo ID to vote is a reasonable measure to protect the integrity of elections, including 73% of Black voters.
- 75% of Black voters either believe the level of difficulty to vote is currently about right or believe it is already too easy to vote.
- 90% think it is Important to prevent cheating in elections, including 83% who say it's Very Important. These are down from 95% and 89% respectively in October. Among Black voters, 87% now say it is Important to prevent cheating in elections, including 77% who say it is Very Important.

# THE PEOPLE HAVE NO CONFIDENCE

- This Rasmussen Poll shows that a majority of likely voters across the nation support this action. As a government of, by and for the people we must do something to resolve this issue.

- This presentation reveals that the concerns of the people have merit.

- The people have no confidence and demand action.



**State of Wisconsin**
**2021 - 2022 LEGISLATURE**

LRB–5666/P3
MPG:amn&wlj

PRELIMINARY DRAFT - NOT READY FOR INTRODUCTION
## 2021 ASSEMBLY JOINT RESOLUTION

1    **Relating to:** Wisconsin election reform and reclaiming the electoral ballots for
2      President and Vice President that were certified under fraudulent intent and
3      purpose.
4      Whereas, the Center for Tech and Civic Life (CTCL) enabled the illegal use of
5 over 500 voter drop boxes in Wisconsin, infringing Wis. Stat. § 6.87 (6), in all 72
6 counties under Elections Commission guidance issued on August 19, 2020, and the
7 use of drop boxes was organized by the Cybersecurity and Infrastructure Security
8 Agency (CISA), which worked in conjunction with other national organizations like
9 the CTCL, Center for Election Innovation and Research (CEIR), and National
10 Conference of State Legislatures (NCSL), which, on October 2, 2020, promoted
11 CISA's campaign of illegal drop boxes; and
12      Whereas, the Wisconsin Supreme Court stated in *Trump v. Biden*, 2020 WI 91,
13 "On March 25, 2020, the Dane and Milwaukee County Clerks issued guidance on
14 Facebook suggesting all voters could declare themselves indefinitely confined

# INTRODUCTION

- This resolution lists a series of evidentiary events that all associate to the fraudulent nature surrounding the 2020 General Election in Wisconsin, and offers solutions to the issues it addresses.

- These events lead to justification of the action to reclaim Wisconsin's 10 electoral ballots.

- We then compile a list of legal and expert interpretations that validate this action is both justifiable and constitutional.

- It is within the legislatures power to do so, and it falls upon the legislature to resolve the matter.

# CLAUSE 1: ILLEGAL DROP BOXES AND TIED ORGANIZATIONS

"Whereas, the Center for Tech and Civic Life (CTCL) enabled the illegal use of over 500 voter drop boxes in Wisconsin, infringing Wis. Stat. § 6.87 (6), in all 72 counties under Elections Commission guidance issued on August 19, 2020, and the use of drop boxes was organized by the Cybersecurity and Infrastructure Security Agency (CISA),  which worked in conjunction with other national organizations like the CTCL, Center for Election Innovation and Research (CEIR), and National Conference of State Legislatures (NCSL), which, on October 2, 2020, promoted CISA's campaign of illegal drop boxes;"



# CLAUSE 1: EVIDENCE

National level #TrustedInfo2020 supporting partners are... education effort by amplifying the message on their social media pages, websites and other communications channels. We are proud to have the support of these organizations:

- Alliance for Securing Democracy
- American Association of Political Consultants
- Bipartisan Policy Center
- Brennan Center for Justice
- Campaign Legal Center
- Center for Democracy & Technology
- Center for Election Innovation & Research
- Center for Technology and Civic Life
- Council of State Archivists
- Council of State Government
- Defending Digital Democracy Project

- Democracy Fund
- Democracy International
- Election Center
- Electronic Registration Information Center
- Facebook
- Federal Voting Assistance Program
- Google
- iCivics
- International Association of Government Officials
- Kids Voting USA
- LeadingAge
- MIT Election Data and Science Lab
- NALEO Educational Fund
- National Association of Attorneys General
- National Association of Counties
- National Association of State Election Directors
- National Conference of State Legislatures
- National Governors Association
- Nonprofit VOTE
- PEN America
- The Carter Center
- The MITRE Corporation
- The National Vote at Home Institute
- Twitter
- U.S. Department of Homeland Security
- U.S. Election Assistance Commission
- U.S. Vote Foundation
- Verified Voting



For document approving drop boxes click here

https://www.amoscenterforjustice.org/webfiles/fnitools/documents/vos-fritzgerald-dropbox-approval-letter.pdf

For full lawsuit that reveals the illegal drop boxes and tied organizations click here.

https://www.amoscenterforjustice.org/webfiles/fnitools/documents/mueller-v-wec11272020-2.pdf

# CLAUSE 2: WI SUPREME COURT

"Whereas, the Wisconsin Supreme Court stated in *Trump v. Biden*, 2020 WI 91,

'On March 25, 2020, the Dane and Milwaukee County Clerks issued guidance on Facebook suggesting all voters could declare themselves indefinitely confined because of the pandemic and the governor's then-existing Safer-at-Home Order. This court unanimously deemed that advice incorrect on March 31, 2020, and we noted that the WEC guidance . . . provides the clarification on the purpose and proper use of the indefinitely confined status that is required at this time,' which verifies that the Elections Commission gave improper guidance in the 2020 election, and in her dissent in *Trump v. Biden*, Wisconsin Supreme Court Justice Rebecca Grassl Bradley revealed that the Elections Commission Infringed upon Wis. Stat. §§ 5.05 (1), 6.84 (1) and (2), 6.86, 6.87 (3), (4), (5), (6), (7), and (9), and 227.112 (3)."

**2020 WI 91**

## SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2020AP2038 |
| COMPLETE TITLE: | Donald J. Trump, Michael R. Pence and Donald J. Trump for President, Inc., |
| | Plaintiffs-Appellants, |
| | v. |
| | Joseph R. Biden, Kamala D. Harris, Milwaukee County Clerk c/o George L. Christenson, Milwaukee County Board of Canvassers c/o Tim Posnanski, Wisconsin Elections Commission, Ann S. Jacobs, Dane County Clerk c/o Scott McDonell and Dane County Board of Canvassers c/o Alan Arnsten, |
| | Defendants-Respondents. |

ON PETITION TO BYPASS COURT OF APPEALS, REVIEW OF DECISION OF THE CIRCUIT COURT

| | |
|---|---|
| OPINION FILED: | December 14, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 12, 2020 |
| SOURCE OF APPEAL: | |
| COURT: | Circuit Court |
| COUNTY: | Milwaukee |
| JUDGE: | Stephen A. Simanek |

JUSTICES:

HAGEDORN, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and KAROFSKY, JJ., joined. DALLET and KAROFSKY, JJ., filed a concurring opinion. HAGEDORN, J., filed a concurring opinion, in which ANN WALSH BRADLEY, J., joined. ROGGENSACK, C.J., filed a dissenting opinion, in which ZIEGLER and REBECCA GRASSL BRADLEY, JJ., joined. ZIEGLER, J., filed a dissenting opinion, in which ROGGENSACK, C.J., and REBECCA GRASSL BRADLEY, J., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion, in which ROGGENSACK, C.J., and ZIEGLER, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

# CLAUSE 2: EVIDENCE

- Full supreme court ruling can be found here

  https://www.amoscenterforjustice.org/webfiles/fnitools/documents/trump_v.biden12142020.pdf

# CLAUSE 3: RUSHED TO CERTIFY

"Whereas, on December 7, 2020, Elections Commissioner Dean Knudson filed a complaint against Meagan Wolfe under Wis. Stat. § 7.70 (5) for the rushed ascertainment of certification of the 2020 election before time for filing an appeal of the recount had passed, and revealed the planned haste to circumvent any further discussion or objection."

# CLAUSE 3: EVIDENCE

**STATE OF WISCONSIN**
*ELECTIONS COMMISSION*

COMPLAINT FORM

**Please provide the following information about yourself:**

Name _____ Dean Knudson

Address _____ 1753 Laurel Avenue, Hudson, WI 54016

Telephone Number _____ 715-220-4946

E-mail _____ dean.knudson@wisconsin.gov

**State of Wisconsin**
**Before the Elections Commission**

The Complaint of Dean Knudson, Commissioner, Wisconsin Elections Commission _____, Complainant(s) against Meagan Wolfe, Administrator _____, Respondent, whose address is 212 East Washington Avenue, Third Floor P.O. Box 7984 | Madison, Wisconsin 53707-7984

This complaint is under Sec 7.70(5) _____ (Insert the applicable sections of law in chs. 5 to 10 and 12 and other laws relating to elections and election campaigns, other than laws relating to campaign financing)

I Dean Knudson _____, allege that:

Meagan Wolfe violated Wisconsin Statute 7.70(5) by preparing and sending a document titled "Certificate of Ascertainment" to Governor Evers without statutory authority, and sending the Certificate before the time allowed for petition for a full statewide recount had passed, and before the time allowed for filing an appeal of the recount had passed. See attached document.

(Set forth in detail the facts that establish probable cause to believe that a violation has occurred. Be as specific as possible as it relates to dates, times, and individuals involved. Also provide the names of individuals who may have information related to the complaint. Use as many separate pages as needed and attach copies of any supporting documentation.)

Date: December 7, 2020 _____ Complainant's Signature

I Dean Knudson _____, being first duly sworn, on oath, state that I personally read the above complaint, and that the above allegations are true based on my personal knowledge and, as to those stated on information and belief, I believe them to be true.

_____ Complainant's Signature

STATE OF WISCONSIN

County of St. Croix _____, (county of notarization)

Sworn to before me this 7 day of December, 2020

_____ (Signature of person authorized to administer oath)

My commission expires 4-1-23, or is permanent

Notary Public or _____ (official title if not notary)

**Please send this completed form to:**

Mail:   Wisconsin Elections Commission
        P.O. Box 7984
        Madison, WI 53707-7984

Fax:    (608) 267-0500

Email:  elections@wi.gov

EL -1100 | Rev 2016-08 | Wisconsin Elections Commission, 212 E. Washington Ave., 3rd Floor, P.O. Box 7984, Madison, WI  53707-7984 | | 608-261-2028 | web: elections.wi.gov | email: elections@wi.gov |

## Full Document here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1339/knudson-v-wolfe_complaint.pdf

# CLAUSE 4: CTCL NEFARIOUS EMAILS IN THE WI 5

**Woodall-Vogg, Claire**

From: Woodall-Vogg, Claire
Sent: Wednesday, November 4, 2020 4:17 AM
To: Ryan Chew
Subject: Re: drama

Lol. I just wanted to wait to say I had been awake for a full 24 hours!

From: Ryan Chew <ryan@electionsgroup.com>
Sent: Wednesday, November 4, 2020 4:07 AM
To: Woodall-Vogg, Claire <cwooda@milwaukee.gov>
Subject: drama

Damn, Claire, you have a flair for drama, delivering just the margin needed at 3:00 am. I bet you had those votes counted at midnight, and just wanted to keep the world waiting!

Ryan Chew
The Elections Group
m: 312 823-3384
ryan@electionsgroup.com

"A republic if you can keep it." - B. Franklin

"Winners always believe they won fairly. The aim of an election official is that losers recognize they lost fairly."

"Whereas, the Assembly Committee on Campaigns and Elections has collected nearly 3,000 documents and e-mails with connection to election manipulations by the CTCL in five of Wisconsin's largest cities, and there are five lawsuits in those cities against the Elections Commission."

# CLAUSE 4: EVIDENCE







WEC coordinated FIDO key access state-wide.

Outside actors had access to WisVote data.

Outside actors used access to vote data to build a system to watch votes as they came in real time.

For access to all emails collected in the "WI 5" and much more visit Representative Brandtjen's Website and click the "Election Documents Tab"

https://legis.wisconsin.gov/assembly/22/brandtjen

To see presentation of text messages between cities and Spitzer-Rubenstein

https://legis.wisconsin.gov/assembly/22/brandtjen/media/1534/presentation-combined.pdf

# CLAUSE 5: STATISTICALLY IMPOSSIBLE

"Whereas, data experts have studied the historical voter trends based on population growth for both the entirety of the State of Wisconsin and its counties individually, and those studies reveal the normal inverse relationship of data was not present in the 2020 election results, which is a statistical impossibility."



# CLAUSE 5: EVIDENCE





Vote totals always inverse up or down each election… except 2020.

Full Presentation available here:
https://legis.wisconsin.gov/assembly/59/ramthun/media/1340/keshel-powerpoint-2.pdf

# CLAUSE 6: WISVOTE DATABASE

"Whereas, the WisVote database reflects 7.1 million registered voters in a state with a population of 5.8 million and a voting age population of 4.5 million, and the WisVote database is riddled with incomplete and misrepresented data, including thousands of voters with the same phone numbers, addresses, and faulty zip codes, all of which reflects gross negligence in maintaining the database."

# CLAUSE 6: EVIDENCE

## Population and Housing

States | CBSAs | Counties

Change State: Wisconsin ▼

### Wisconsin

Click a value below to change the map and table.

| Total Population (2020): 5,893,718 | Housing Units (2020): 2,727,726 |
| Numeric Change in Population (2010–2020): 206,732 | Housing Unit Vacancy Rate (2020): 11.0% |
| Percent Change in Population (2010–2020): 3.6% | Percent Change in Housing Units (2010–2020): 3.9% |

Population Density in Wisconsin Counties: 2020

People per square mile
■ 500.0 or more   ■ 200.0 to 499.9   ■ 100.0 to 199.9

Top



WI 2020 population: 5,893,718

https://www.census.gov/library/stories/state-by-state/wisconsin-population-change-between-census-decade.html

7,113,134 files on WisVote

https://badgervoters.wi.gov/

# CLAUSE 7: CANVASS IRREGULARITIES




"Whereas, grassroots canvassing efforts reveal 200 addresses in 31 counties in Wisconsin that have 200 to 400 registered voters at a single address, and a sampling of 1,000 actual 2020 absentee ballot envelopes from Milwaukee County found 23 percent had questionable addresses."

# CLAUSE 7: EVIDENCE

Excel file of data available here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1342/200-where-multiple-voters-live-at-a-single-address.xlsx

Remaining addresses available here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1343/brown-county-canvass-102221.pdf

Main address for St. Norbert College
100 Grant Street, De Pere

Brown County

100 Grant Street is the main address for identifying St. Norbert College.
There is no structure located at 100 Grant Street.  The next building is 103 Grant Street.  All buildings and housing structures for St. Norbert College have their own separate street and mailing addresses and the housing structures are scattered all over the nearby area.

Total Beds:  0

Total Registered Voters:  862
(Note- MANY have the registration dates of 11/3/2020.  Also, many with the registration date of 9/22/2020.)



# CLAUSE 8: DELETING LOG FILE DATA



**TIMOTHY RAMTHUN**
STATE REPRESENTATIVE • 59TH ASSEMBLY DISTRICT

**FOR IMMEDIATE RELEASE**                September 15, 2021
**Contact: Rep. Timothy Ramthun (608) 266-9175**

### Rep. Ramthun: Truth Revealed

MADISON - State Representative Timothy Ramthun (R-Campbellsport) released the following statement regarding the WI Elections Commission (WEC) meeting on Thursday, September 9th:

"On August 11th, I put out a press release stressing the need to protect voting machine data. I was gravely concerned about the potential loss of data during manufacturer-requested updates. The response I received was not what was needed, with my call being met with indifference and lack of action by leadership."

"However, my sense of urgency was justified during last week's WEC meeting. During the debate over allowing voting machine manufacturer ES&S to perform these updates, it was revealed that IP log files are *not* saved when data is transferred from the machines for safekeeping. State statute requires this data to be kept for 22 months after every election."

"All data should be protected, not just ballot data. Despite this revelation, the WEC voted to give ES&S the authority to do these upgrades. Even with an amended motion, there's no way to guarantee all data will be protected. Why is the body responsible for securing our state's elections treating the topic of election integrity so flippantly?"

"A court injunction is necessary to stop upgrades on every machine until all investigations are complete. USB drives with the machine data must be preserved. The potential loss of forensic data is unacceptable."

### ###

*The 59th Assembly District includes Hartford, Kewaskum, Campbellsport, Eden, Cascade, Waldo, Mount Calvary, St. Cloud, and New Holstein.*

P.O. Box 8953 • Madison, WI 53708-8953 • (608) 266-9175 • Toll Free: (888) 534-0059
Rep.Ramthun@legis.wisconsin.gov

"Whereas, the Elections Commission voted to do upgrades on Dominion voting machines on June 2, 2021, and, following a press release on August 11, 2021, voicing concerns about the deletion of log file data from those upgrades, the commission voted to allow upgrades to new ES&S voting machines on September 9, 2021, with no reassurances of protecting the data of the 2020 election on older machines, even though it was revealed the upgrades do erase log file data kept on the machine hard drives."

# CLAUSE 8: EVIDENCE

To see the open meeting minutes of the September 9th WEC meeting confirming the vote did not protect log file data.

https://elections.wi.gov/sites/elections.wi.gov/files/2021-09/Open%20Session%20Minutes%20September%209,%202021%20(Draft).pdf

To view the full meeting, where ES&S admits that Log file data is not saved, and that upgrades do in fact wipe that data from hard drives.

https://wiseye.org/2021/09/09/wisconsin-elections-commission-september-2021-meeting/

# CLAUSE 9: LAB AUDIT RESULTS

Table 2

**Comparison of Personally Identifiable Information Provided by Individuals Registering to Vote with DOT's Information[1]**
January 1, 2020, through November 3, 2020

| | Number of Individuals | Percentage of Total |
|---|---|---|
| **The Information:** | | |
| Matched DOT's Information | 898,421 | 93.8% |
| Did Not Match DOT's Information | 45,665 | 4.8 |
| No Attempt Was Made to Match the Information | 13,800 | 1.4 |
| The Match Was Ongoing | 91 | <0.1 |
| **Total** | **957,977** | **100.0%** |

[1] As indicated by data provided by WEC's staff.

Non-matches occurred for 63.1 percent of the 45,665 individuals because the names the individuals provided when registering to vote did not match DOT's information. WEC's staff indicated that a non-match could have occurred if, for example, an individual registered to vote as "Robert" but was known as "Bob" on a driver's license. However, the data do not indicate precisely why the non-match occurred because DOT does not provide WEC with any personally identifiable information. As a result, clerks are uncertain whether a non-match occurred because of only a slight difference in a given individual's name, which may indicate little cause for concern, or a significant difference, which may indicate that an individual is attempting to register to vote by using another individual's information.

WEC's staff indicated that no attempts were made to match the personally identifiable information provided by 13,800 individuals for several reasons. Individuals serving in the military are not statutorily required to register to vote and, thus, do not provide driver's license, state identification card, or Social Security numbers, although WisVote contains voter records for these individuals. Similarly, no matching attempts were made if individuals updated registrations but had previously been made before WisVote's implementation and the individuals were not changing their names, driver's license or Social Security numbers, or dates of birth.

If the personally identifiable information provided by registrants does not match DOT's information, the relevant clerks receive automatic notifications in WisVote. WEC's staff instruct clerks to correct the voter registration if they can determine that the non-match was the result of a data entry error. Otherwise, they are instructed to inform the individuals that they should resolve the mismatched information.

"Whereas, the audit report of the nonpartisan Legislative Audit Bureau identified 44,272 voters who did not provide proper voter identification in the 2020 general election, revealed the mass increase of indefinitely confined voters from 4,505 in 2019 to 169,901 in 2020, and also revealed 28.7% of all municipal clerks across all 72 counties used illegal drop boxes, and made 30 recommendations for the Elections Commission to rectify their actions."

# CLAUSE 9: EVIDENCE





**Drop Boxes**

*In response to our survey, 245 municipal clerks indicated that they used drop boxes for the November 2020 General Election.*

Our survey asked municipal clerks to indicate whether they used drop boxes, other than mail slots at municipal facilities, to collect absentee ballots for the November 2020 General Election. In response to our survey:

- 610 clerks (71.3 percent) indicated that they did not use drop boxes; and
- 245 clerks (28.7 percent) indicated that they used drop boxes, and the municipalities of these clerks were located throughout the state, as shown in Figure 7.

## 45k voters don't have matching I.D.

## Indefinitely Confined
## 2019: 4,504
## 2020: 169,901

## 245 clerks used drop boxes (28.7%) in all 72 counties.

To see LAB Report in full

https://cdn.michaeljlindell.com/downloads/fix2020first/exibits/Tab%2017%20WI%20LAB%20Report.pdf

# CLAUSE 10: MAJORITY OF GOP COUNTIES DEMAND IT



"Whereas, a total of 50 of the 69 county GOP parties released letters of support or resolutions asking for further investigation into the elections process, showing that over two-thirds of Wisconsin Republicans have no faith in the Elections Commission."



**An Affirmation,** for a resolution on Wisconsin Election Reform, (Wisconsin Full Forensic Physical and Cyber Audit)

**WHEREAS**, free, fair, safe, and transparent elections are the bedrock of our Constitutional Republic; and,

**WHEREAS**, the American Constitutional Republic is a government of the people, by the people, and for the people, relying on the faith and trust of all citizens in our electoral process; and,

**WHEREAS**, since the bi-partisan Wisconsin Election Commission was formed in 2015, it has been run by partisan bureaucrats not interested in fair, honest elections, but more interested in issuing opinions and directives that encourage unfair elections across Wisconsin; and,

**WHEREAS**, the clear and plain language of election laws in Wisconsin were intentionally violated, circumvented, or altered by the directives of the Commissioners or staff of the Wisconsin Elections Commission without the approval of the legislature in violation of the Constitution of the United States; and,

**WHEREAS**, the Wisconsin Election Commission instructed clerks across Wisconsin to allow online requests for absentee ballots using the Indefinitely Confined Elector status without providing identification; and,

**WHEREAS**, the Wisconsin Election Commission instructed clerks to illegally rehabilitate absentee ballots with missing information on the mailing envelope in contradiction of state law; and,

**WHEREAS**, the Wisconsin Election Commissioners and staff prevented the deployment of special voting deputies to care facilities, contrary to state law; and,

**WHEREAS**, the Wisconsin Election Commission allowed "Ballots in the Park" to take place in the City of Madison thereby creating an unequal treatment of voters in rural and urban areas which is a violation of the US Constitution's 14th Amendment often referred to as the Equal Protection Clause; and,

**WHEREAS**, the Wisconsin Election Commissioners and staff allowed Mark Zuckerberg-funded Center for Technology and Civil Life (CTCL) to dump millions of dollars into Wisconsin's Democrat-dominated cities for vote harvesting campaigns and other efforts, creating a two-tiered election system that treated voters differently depending on whether they lived in Democrat or Republican strongholds under the auspices of administering "safe and secure" elections during the pandemic; and,

**WHEREAS**, the Center for Technology and Civil Life was given unrestricted access to the 2020 fall general election in Green Bay via Wisconsin State Lead for National Vote at Home Institute; one of several Zuckerberg – funded organizations handing out grants and "assistance" in the 2020 election Michael Spitzer-Rubenstein, and Milwaukee Elections Executive Claire Woodall Vogg who worked without election observers in Milwaukee; and,

**WHEREAS**, the 2020 Wisconsin fall general election, as regulated, and directed by the Wisconsin

# CLAUSE 10: EVIDENCE



**THE REPUBLICAN PARTY OF CALUMET COUNTY**

**FOR IMMEDIATE RELEASE:**
Wednesday, August 11, 2021
Contact: Republican Party of Calumet County
Email: calumetcountygop@gmail.com
Phone: (920) 418-9433

**CHILTON** - The Republican Party of Calumet County is joining the call for action to pursue a forensic audit of the November 2020 Presidential Election. We support Rep. Brandtjen (R-Menominee Falls) and Rep. Ramthun's (R-Campbellsport) move to conduct a transparent statewide election audit. We need to be able to trust our election process again, whether the outcome would change anything or not, we believe that an audit would bring peace of mind to the voters and give voters more confidence in the elections again. When the new party leadership took over in March, we vowed to let our elected officials know what WE THE PEOPLE want. We believe that the left's imperative act to stop any audit is alarming in itself. When a Republican Governor is elected in 2022, we need to shore up all "gray areas" in our election laws and eliminate the Wisconsin Elections Commission (WEC). There were irregularities last November and they need to be addressed. Elections are the lifeblood of our Republic. Since that is the case, this should be the highest priority.

### ###

*Calumet County covers the cities of Appleton, Brillion, Chilton, Kiel, Menasha, & New Holstein. Calumet also covers the villages of Harrison, Hilbert, Potter, Sherwood, & Stockbridge.*

All resolutions ask for a forensic audit of the 2020 election.

All remaining 48 are available upon request.

# CLAUSE 11: RACINE SHERIFF'S INVESTIGATION

"Whereas, commissioners and staff of the Elections Commission prevented the deployment of special voting deputies to care facilities, as confirmed by the Racine County Sheriff 's Department, which found that on March 12, 2020, the Elections Commission knowingly and willfully directed all 72 county clerks to violate Wis. Stat. §§ 6.84 and 6.875 regarding absentee voting in certain residential care facilities and retirement homes, and the commission's unlawful direction clearly broke Wis. Stat. § 12.13 (2) (b) 7., which refers to intentionally violating election laws."



# CLAUSE 11: EVIDENCE

  

For video evidence watch section two of Ramthun Report 36 by clicking here: https://rumble.com/vp7t9d-ramthun-report-episode-36-proof-wi-election-was-fraud.html

 To review the presentation in full, please view the 11/10/21 Assembly Campaign and elections committee hearing.  visit

https://wiseye.org/2021/11/10/assembly-committee-on-campaigns-and-elections-21/

# CLAUSE 12: WISVOTE DATA IRREGULARITIES

"Whereas, at its December 8, 2021, public hearing, the Assembly Committee on Campaigns and Elections heard testimony from expert analyst Jeff O'Donnell, who found a multitude of irregularities when he analyzed data from the Wisconsin voter rolls, including that 93.7 percent of active voters participated in the 2020 general election, 205,355 voter registration applications were dated November 3, 2020, 957,977 individuals registered as new voters in 2020, 45,665 voters who registered did not have matching Division of Motor Vehicle records, 22 percent of active voters registered in the 6 months leading up to November 3, 2020, 31,872 of those voters who registered in that 6-month period are now listed as inactive, and 42,000 voters who voted in the November 3, 2020, election are now listed as inactive."

# CLAUSE 12: EVIDENCE

**Voters Who Voted in November 2020 but are now inactive**

Focusing on 2021, the data shows that 779,237 voters, around 10% of the total voter roll and 22% of all active voters, registered within the six months prior to and including November 3, 2020. Of those, 31,872 (about four percent) are now listed as inactive. These 31,872 voters should be investigated to determine why they were removed. Wisconsin Public Radio reported on August 4, 2021, that the WEC had removed 174,307 voters from the rolls that had not voted in four years, and another 31,854 who

5

were on a 2019 voter list because of a lawsuit. None of these 31,872 people would seem to be on either of these lists of removals.

Perhaps partially because of this anomaly, Wisconsin lists 42,114 voters currently marked as "inactive" who voted in the 2020 Election. This is another "reg flag" because there would be few reasons to remove a voter from the rolls when they had voted just ten months earlier. The number of voters involved would seem to be more than can be explained by any known reason.

**Inactive Voters Registered Prior to 2016 and Have Not Voted in at least Four Years**

In the file, 3,529,835 are listed as "active" voters. This indicates that approximately 60% of Wisconsin citizens are registered as active voters.

In the November 2020 election, the voting method used by Wisconsin Voters broke down as:

| Absentee | 1,970,059 |
| At Polls | 1,338,575 |
| Total | 3,308,634 |

If there are 4,536,417 of-age voters, and 3,308,634 of them voted, then the state-wide turnout for the national election would calculate as 72.9%. The percent of active voters who cast a vote was 93.7%.

The Wisconsin Elections Commission's site reports the presidential vote total as 3,297,352. The number of votes reported for the various U. S. House Races in Wisconsin totals only 3,238,051. Thus, the state undervotes / unreported Write-Ins totals would have to be 10,593 for the Presidential race, and 70,583 for the House races in order to make the numbers from the two sources match. Because Wisconsin does not disclose total vote or card counts, an investigation is necessary to determine if these numbers reconcile.

32k Registered voters in 2020 now shown inactive

42k People who voted in 2020 now listed inactive

There was a 93.7% turn out of active voters.

Full document available here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1341/jeff-odonnell-wisconsin-registration-indicators-and-warnings-final-v4.pdf

For full presentation visit https://wiseye.org/2021/12/08/assembly-committee-on-campaigns-and-elections-23/

# CLAUSE 13: VOTER ROLL MANIPULATION



"Whereas, at its December 8, 2021, public hearing, the Assembly Committee on Campaigns and Elections heard testimony from expert analyst Douglas Frank, who revealed that patterns in the Wisconsin voter rolls showed that the voter rolls were inflated to the maximum possible number of voters according to census population data for every presidential election in Wisconsin since 2008 and that the voter rolls were purged shortly after each such election, and that these patterns were consistent across all 72 counties in Wisconsin, revealing that these activities were centrally controlled."

# CLAUSE 13: EVIDENCE







Rolls purged and added back each election

Rolls inflated to maximum allowable census amount.

Rolls increase to max every 4 years

For full presentation visit https://wiseye.org/2021/12/08/assembly-committee-on-campaigns-and-elections-23/

Complete file of presentation available here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1348/dr-frank-12-8-2021-wisconsin.pdf

# CLAUSE 14: ELECTION BRIBERY

### Wisconsin Election Bribery Statute: Relevant Sections

**Wisconsin Statutes § 12.11**

➤ **Definition of "anything of value"** Includes any amount of money, or any object which has utility independent of any political message it contains and the value of which exceeds $1. Statute also applies to the distribution of material printed at public expense and available for free distribution if such materials are accompanied by a political message.

➤ **Whether anything of value is "given" to a "person"** Violators of this statute must offer or give anything of value to another person. The word "person" is not defined in this section; so, it could have a broad definition for enforcement purposes including municipalities and their public officials.

➤ **The offer or provision of anything of value must induce an elector to go to polls, to vote or not to vote** Anything of value given to another person must influence electors in regard to going to the polls, or their voting decision or who they will vote for while filling out their ballot.

Mohrman Kaardal & Erickson, P.A. | kaardal@mklaw.com

3

"Whereas, at its December 8, 2021, public hearing, the Assembly Committee on Campaigns and Elections heard testimony from Attorney Erick Kaardal, who identified that the money provided by the CTCL and Mark Zuckerberg to local governments in Wisconsin relating to the 2020 general election violated Wis. Stat. § 12.11, which prohibits election bribery and states that "`anything of value' includes any amount of money, or any object which has utility independent of any political message it contains and the value of which exceeds $1," and that amount was greatly exceeded."

# CLAUSE 14: EVIDENCE

> The WSVP does not fall under protection of the First Amendment because CTCL was transferring private money to the Wisconsin 5 cities. Thus, there is no private speech, protected by the First Amendment, involved.

Election Bribery or other Exceptions?

> The CTCL money does not fall under any of the exceptions to the Bribery Statute because they are narrowly defined and limited.

> Three Questions Regarding WSVP and the laws such as the Bribery Statute

Whether the CTCL transfer of $8,800,000 to the Wisconsin 5 Cities would satisfy "anything of value" requirement under Wisconsin Statutes § 12.11 (1)?

Whether the CTCL transfer of $8,800,000 to the Wisconsin 5 Cities would satisfy "given" to "another person" requirement under Wisconsin Statutes § 12.11 (1m)?

Whether the CTCL transfer of $8,800,000 to the Wisconsin 5 Cities would satisfy "induce electors" to "go to the polls" and to "vote"

These actions are not protected by the 1st amendment.

There are no exceptions to the law, therefore it was not legal.

8.8 million dollars far exceeds 1 dollar.

For full presentation visit https://wiseye.org/2021/12/08/assembly-committee-on-campaigns-and-elections-23/

Complete file of presentation available here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1347/3-kaardal-wi-general-assembly-elections-and-campaigns-presentation.pptx

# CLAUSE 15: MORE ZUCKERBERG MONEY TO COVER UP ZUCKERBERG MONEY



**WISCONSIN LEGISLATURE**

P.O. Box 7882 • Madison, WI 53707-7882

**FOR IMMEDIATE RELEASE**                                    December 16, 2021
**Contact: Rep. Timothy Ramthun (608) 266-9175**
**Rep. Janel Brandtjen (608) 267-2367**
**Rep. Chuck Wichgers (608) 266-3363**
**Rep. Scott Allen (608) 266-8580**

### State Representatives: Appeal to Authority Fallacy

MADISON - State Representatives listed above released the following statement regarding Monday's Growing Threats to Election Professionals in Wisconsin news conference:

"Senator Bernier announced the Election Official Legal Defense Network (EOLDN) would be providing free legal defense attorneys for election officials. This effort is funded by a non-profit organization called the Center for Election Innovation and Research (CEIR). We question the ethics and legality of clerks receiving pro-bono assistance from non-profits."

"It is relevant to let the people know that of the $300 million that Mark Zuckerberg donated for elections in 2020, $250 million went to the Center for Tech and Civic Life (CTCL) and the remaining $50 Million went to CEIR, who later received an additional $19.5 million for a total of $69.5 million."

"CEIR founder, David Becker, present at the conference claiming there was no evidence of fraud, has a long history of working in elections. In 2005, an ethics complaint was filed against him for being partisan in a non-partisan role against Republicans as a trial lawyer in the Voting Section in the U.S. Department of Justice. He left that role shortly thereafter and became a senior staff attorney of the left-wing activist group People for the American Way in 2006, and became director of their campaign in 2007. Afterward, he became director of election initiatives at PEW Charitable Trusts and created the Electronic Registration and Information Center (ERIC), a national computer voter registration system in 2008 which currently shares voting data in 30 states."

"We find it interesting and most concerning that this individual, who question the integrity of an election influenced by Zuckerberg money, is to be the founder of the ERIC system and the CEIR, would need to create EOLDN to offer pro-bono attorneys to defend election officials. We find it further concerning that Kevin Kennedy, former director of Wisconsin's Government Accountability Board, who also led on the John Doe investigation against the Walker campaign, is also on the board of directors for CEIR."

"It appears the press conference panel's answer for those who question the integrity of an election influenced by Zuckerberg money, is to bring in more Zuckerberg money from CEIR and EOLDN to protect those who took Zuckerberg money from the CTCL."

###

P.O. Box 8953 • Madison, WI 53708-8953 • (608) 266-9175 • Toll Free: (888) 534-0059
Rep.Ramthun@legis.wisconsin.gov

"Whereas, at the Growing Threats to Election Officials in Wisconsin Press Conference held on December 13, 2021, it was revealed that the CEIR is a biased organization that also received funding from Mark Zuckerberg, along with the CTCL, and that the CEIR is seeking to provide pro bono defense attorneys to election officials who used the CTCL money in the 2020 general election"

# CLAUSE 15: EVIDENCE

## David Becker

  

David Becker is a left-leaning election law advocate and the co-founder and executive director of the Center for Election and Innovation Research (CEIR). He previously worked at Pew Charitable Trusts where he organized the creation of the Electronic Registration Information Center (ERIC). Prior to his time at Pew, Becker was director of People for the American Way (PFAW) and worked in the U.S. Department of Justice as a litigator.

**Organization:** Center for Election and Innovation Research

### ETHICS COMPLAINT

In 2005, when Becker was still a trial lawyer in the Civil Rights Division, a formal complaint was made against Becker after he contacted the city of Boston offering to help defeat a lawsuit opened against them by his employer, the DOJ, for voting infractions. Brad Scholzman, acting head of the Department of Justice's Civil Rights division at the time, stated, "It was the most unethical thing I've ever seen" and called Becker "a hard-core leftist" who "Couldn't stand conservatives." [6]



The Center for Technology and Civic Life (CTCL) and the Center for Election Innovation and Research (CEIR) passed a staggering $419.5 million of Zuckerberg's money into local government elections offices, and it came with strings attached. Every CTCL and CEIR grant spelled out in great detail the conditions under which the grant money was to be used.

CEIR founder is tied to ERIC and left leaning advocacy groups.

Becker is clearly biased.

CTCL AND CEIR both received funding from Zuckerberg.

Influence Watch Research on David Becker reflected from multiple sources they also site. This is a MUST READ. It is a non-partisan organization that keeps tabs on Non Profits and their founders. This is a credible source that very precisely reflects our press release.

https://www.influencewatch.org/person/david-becker/

Elections Official Legal Defense Network website, showing it is funded by CEIR, and even reflects its support for Meagan Wolf openly on its home page.

https://eoldn.org/

# CLAUSE 16: BALLOT DROP BOXES ARE ILLEGAL

"Whereas, on January 13, 2022, Waukesha County Circuit Court Judge Michael Bohren issued an oral ruling in court holding that the Elections Commission's guidance on absentee ballot drop boxes should have been promulgated as a rule under Wis. Stat. ch. 227; that state law provides just two legal methods for a voter to return an absentee ballot: through the mail or in-person at the municipal clerk's office or an alternate site designated according to law; and that ballot harvesting and returning absentee ballots to drop boxes are not legal methods to cast absentee ballots in Wisconsin;"



https://will-law.org/waukesha-judge-rules-absentee-ballot-drop-boxes-ballot-harvesting-illegal-under-state-law/

# CLAUSE 17: FRAUD VITIATES EVERYTHING

## UNITED STATES v. THROCKMORTON.

### Supreme Court

98 U.S. 61

25 L.Ed. 93

UNITED STATES
v.
THROCKMORTON.

October Term, 1878

APPEAL from the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*Mr. Walter Van Dyke* for the appellant.

*Mr. Delos Lake, contra.*

"Whereas, the U.S. Supreme Court has found that fraud vitiates and nullifies any contract: *Boyce's Executors v. Grundy* (1830) 28 U.S. 210; "Fraud vitiates the most solemn contracts, documents and even judgments." *United States v. Throckmorton* (1878) 98 U.S. 61, 64;"

To see the supreme court case is full:
https://www.law.cornell.edu/supremecourt/text/98/61

# CLAUSE 18: IT'S CLEAR WHY THERE IS NO CONFIDENCE IN ELECTIONS



Reclaiming ballots and solutions are required to restore confidence and repair the problem!

Massive amounts of evidence shows Fraud! There are too many problems!

Resolution

"Whereas, the November 2020 Wisconsin general election, as regulated and directed by the Elections Commission, was one of the most haphazard, controversial, and poorly managed elections in state history, shaking citizens' confidence in fair elections across Wisconsin, and with the culmination of these evidences, prove the results of the commission's certification of the 2020 election are considered fraudulent;"

# CLAUSE 19: THE LEGISLATURE ACKNOWLEDGES THE EVIDENCE

Review and acknowledge evidence and statutes

Take bold action the people will acknowledge to resolve problem

Repair the problem and move forward

*"Therefore, be it Resolved by the assembly, the senate concurring, That* the accumulated evidence proves the actions taken by the Elections Commission to certify the 2020 presidential election shall be considered contrary to law and fraudulent under Wis. Stat. §§ 6.84, 6.87 (6), 6.875, 12.11, and 12.13 (2) (b) 7.;"

# THE CONTESTED ACTION

With supporting constitutional attorney interpretations of law and subject matter experts from across the nation.

# CLAUSE 20: THE ACTION OF RECLAIMING ELECTORS

*"**Resolved, That** the Wisconsin Legislature, pursuant to its authority under Article II, Section 1, Clause 2 of the U.S. Constitution and 3 U.S.C. § 2, and consistent with guidance provided by the Constitutional Counsel Group in a memorandum dated December 30, 2021, acknowledges that illegality took place in conducting the 2020 general election and reclaims Wisconsin's 10 fraudulent electoral ballots cast for Joseph R. Biden and Kamala Harris;"*



**TIMOTHY RAMTHUN**
STATE REPRESENTATIVE • 59TH ASSEMBLY DISTRICT

**FOR IMMEDIATE RELEASE**                                    January 14, 2022
**Contact: Rep. Timothy Ramthun (608) 266-9175**

### Rep. Ramthun: Let There Be Light #5

MADISON - State Representative Timothy Ramthun (R-Campbellsport) released the following statement regarding facts surrounding election integrity efforts:

"I was very pleased by Judge Michael Bohren's ruling on 1/13 that absentee ballot drop boxes and ballot harvesting are not permitted in state law. Judge Bohren also ruled that the Wisconsin Elections Commission (WEC) guidance documents on absentee ballot drop boxes, issued in 2020, should have gone through the rules process. The Legislative Audit Bureau's report identified 28.7% of Municipal clerks all across Wisconsin used illegal drop boxes in the 2020 election."

"On November 27th 2020, prior to the certification of the election results, a lawsuit was filed against the WEC by the AMOS Center for Justice and Liberty. This lawsuit sought to stop certification of the results due to the infusion of funding from the Center for Tech and Civic Life (CTCL) which enabled the illegal use of over 500 voter drop boxes and infringed upon ss6.87(6) in all 72 counties under WEC guidance on August 19th, 2020. The lawsuit rightly claimed that use of these illegal drop boxes, but this did not meet due-process requirements from the full legislative body to enable the legal use of them. This lead to a resolution proposed by the Republican Party of Wisconsin at the State Convention asking for the Speaker's resignation June 25th of 2021."

"Upon a more extensive review of the case, it was discovered that the drop box effort was organized by the Cybersecurity and Infrastructure Security Agency (CISA). CISA was present at Senator Brenier's press conference alongside the Center for Elections Innovation and Research (CEIR)."

"CISA worked in conjunction with other national organizations like the CTCL and CEIR, but the most concerning of note is the National Conference of State Legislatures (NCSL), which promoted CISA's campaign of illegal drop boxes on October 2nd, 2020. NCSL's president at the time was the Speaker of the Wisconsin State Assembly Robin Vos, who later appointed a special counsel investigation into the 2020 election under a contract that states the findings may only be reported to himself."

"Connecting further dots, we also discovered the Director for Wisconsin Legislative Council (Leg. Council), Anne Sappenfield, is also a member of NCSL's executive committee since 2006. It was Leg. Council's memo to Senator Brenier that said we cannot reclaim our 10 electors. I pray my colleagues embrace the light of these truths and pursue their dutiful constitutional obligations for 'we the people.'"

*The 59th Assembly District includes Hartford, Kewaskum, Campbellsport, Eden, Cascade, Waldo, Mount Calvary, St. Cloud, and New Holstein.*

P.O. Box 8953 • Madison, WI 53708-8953 • (608) 266-9175 • Toll Free: (888) 534-0059
Rep.Ramthun@legis.wisconsin.gov

# THE MADISON BUBBLE

- When initially proposed, the Legislative council issued a memo to Senator Bernier saying it wasn't possible to reclaim. Shortly after the Legislative Reference Bureau did the same.

- Recent developments reveal that there are connections to illegal drop boxes and the head of the Legislative council.

- It's clear we need outside prospective from constitutional attorneys. Many of them all contest the "Madison Bubble's" narrative and all agree they are incorrect with their opinion.

https://legis.wisconsin.gov/assembly/59/ramthun/media/1331/let-there-be-light-5.pdf

# CONSTITUTIONAL ATTORNEY JOHN EASTMAN



Dr. John Eastman is the former Henry Salvatori Professor of Law & Community Service and former Dean at Chapman University's Dale E. Fowler School of Law, where he had been a member of the faculty since 1999, specializing in Constitutional Law, Legal History, and Property. He is a founding director of the Center for Constitutional Jurisprudence, a public interest law firm affiliated with the Claremont Institute that he founded in 1999. He has a Ph.D. in Government from the Claremont Graduate School and a J.D. from the University of Chicago Law School, and a B.A. in Politics and Economics from the University of Dallas.

Source:
https://fedsoc.org/contributors/john-eastman

# EASTMAN MEMO SUMMARY

- Eastman's memo strengthens our argument and offers a direct rebuttal to the LRB memo and Leg Council memo. He focuses strongly on the fact that both the LRB memo and Leg council memo do not acknowledge the illegality that took place in the 2020 general election specific to Wisconsin.

- This document is referenced in the resolution itself because it offers the strongest argument by one of the most qualified constitutional attorneys in the nation.

- For the full PDF of the document, click here:
  https://legis.wisconsin.gov/assembly/59/ramthun/media/1351/eastman-memo-final-draft.pdf

## Constitutional Counsel Group

174 W Lincoln Ave, #620  *  Anaheim, CA 92805



John C. Eastman
jeastman@ccg1776.com
(909) 257-3869
Member: California and D.C. Bars

Anthony T. Caso
atcaso@ccg1776.com
(916) 601-1916
Member: California Bar

EASTMAN
MEMO

December 30, 2021

Representative Timothy Ramthun
Wisconsin State Assembly
409 North, State Capitol
P.O. Box 8953
Madison, WI 53708

Re:  Decertification of Elector Votes

Dear Representative Ramthun:

You have asked me to provide an opinion letter addressing whether a state legislature has the constitutional authority to decertify previously certified electoral votes for a candidate for the office of President of the United States upon a definitive showing of illegality and/or fraud sufficient to have altered the results of the election.  I want to emphasize the "definitive showing of illegality and/or fraud" caveat, as that is in my view a necessary precondition for the legal analysis which follows.  And I want to emphasize the "sufficient to have altered the results of the election" caveat as well, for even though I do not think that is *legally* necessary for the legislature to re-assume its plenary authority over the appointment of presidential electors, I do think it is *politically* necessary, or at least strongly advised as a matter of prudent statesmanship.

In preparation of this opinion letter, I have relied upon the relevant constitutional provisions (particularly Article II, Section 2), federal and state statutes, historical and judicial precedents, and general principles of federal constitutional law.  I have also reviewed three legal memoranda directly addressing the question presented to me as it relates to the authority of the Wisconsin Legislature, namely: 1) Matt DePerno to Sen. Wendy Rogers, "Final Memo regarding Authority Over Elections and Electors" (Sept. 23, 2021) ("DePerno Memo"); 2) Wisconsin Legislative Counsel to Senator Kathy Bernier, "Legislative Authority to Decertify a Presidential Election" (Nov. 1, 2021) ("Legislative Counsel Memo" or "LC"); and 3) Michael Gallagher, Assistant Chief Counsel, Wisconsin Legislative Reference Bureau, to Representative Timothy Ramthun, "The state legislature's power to recall presidential electors" (Nov. 22, 2021) ("Legislative Reference Bureau Memo" or "LRB").

While I acknowledge that the question posed of me places us in unchartered territory, my conclusion is that the state legislatures, which exercise plenary authority under Article II of the United States Constitution to direct the manner for choosing presidential electors, do have the

https://legis.wisconsin.gov/assembly/59/ramthun/media/1351/eastman-memo-final-draft.pdf

# CONSTITUTIONAL ATTORNEY KAREN MUELLER



Karen is a Wisconsin attorney who has been practicing law for 20 years, and founded The Amos Center for Justice and Liberty. She defends those who have experienced a violation of one or more of their liberties by governmental agents or by private actors carrying out the work, purposes, or goals of the government to the detriment of citizens.

https://www.amoscenterforjustice.org/

# MUELLER MEMO SUMMARY

- Attorney Karen Mueller is a Wisconsin based attorney who filed a case with the Supreme Court prior to certification on the issue surrounding the illegal drop boxes, which were recently ruled as such again.

- This memo offers a history into the origin of the drop box issue, and elaborates deeper specific to Wisconsin Law.

- For the full PDF of this document, click here:
  https://legis.wisconsin.gov/assembly/59/ramthun/media/1355/mueller-amos-letter.pdf





MUELLER
MEMO

Karen Mueller, Founder and General Counsel
Karen@amoscenterforjustice.org

January 8, 2022

Representative Timothy Ramthun
Wisconsin State Assembly
409 North, State Capitol
P.O. Box 8953
Madison, WI  53708

**RE:  Decertification of Wisconsin Elector Votes**

Dear Representative Ramthun:

I am writing to announce that the Amos Center for Justice & Liberty supports your call for the decertification of the 2020 Presidential Wisconsin Electors based upon the wide-spread election fraud and election law violations that occurred in the largest cities of the state and throughout Wisconsin.

The staff of the Amos Center for Justice & Liberty has conducted its own election investigation starting with the illegal Absentee Ballot Drop Boxes, over 500 of which were installed across Wisconsin before the 2020 Presidential Election.  These drop boxes were paid for with grant money which counties obtained from the Center for Tech and Civic Life (CTCL).  This private "non-profit" organization, in turn, received its money from Mark Zuckerberg and his wife to the tune of over $350 million in September of 2020.  That is a stunning figure given that prior to 2020, CTCL's budget was no greater then $100,000 in any give year.  The organization was created in 2015 by an Obama Fellow.

A conspiracy to commit election fraud using these Absentee Ballot Drop Boxes and other violations of elections laws was allegedly initiated, in part, during the lame duck period of Barack Obama's Presidency after President Trump had won the 2016 election but before he took office on January 20, 2017.

First, as President Obama was preparing to leave office, then Secretary of the Dept. of Homeland Security, Jeh Johnson laid the groundwork for a potential election steal by first creating the organizations by which the federal election guidelines, including those for absentee ballot drop boxes could be created.  In fact, these early organizations, GCC and SCC were the precursors to what would become the Cyber Infrastructure Security Agency (CISA) in November of 2018.  President Trump himself unknowingly signed the "instrument" by which his 2020 Presidential Election endeavor would be defeated, through both illegal and unconstitutional means. Once CISA was created, it absorbed GCC and SCC.  The Absentee Ballot Drop Box guidelines were then created by these two organizations, now working inside of the CISA agency.

Second, Secretary Jeh Johnson "conscripted" several national, but private non-profit organizations.  Under the pretense of a false national security threat, Secretary Johnson designated the National Association of Secretaries of State (NASS) and the National Association of State Legislators (NCSL) (among others) as new components of our country's "critical infrastructure."  The members of NASS, to their credit, initially objected to being taken over by the federal government and put those objections in a Resolution.

This federal designation of "critical infrastructure" of these private organizations allowed for unprecedented federal access to their spheres of influence and their members.  This new federal control of a private non-profit was then used to manipulate many state legislators, secretaries of state and other state election officials across the country.  These unconstitutional actions by federal actors set the stage for one of the greatest election heists in the history of the world.  See Article I, section 4 of the U.S. Constitution:  "The times, places and manner of holding elections, for Senators and Representatives, shall be prescribed in each State by the legislature thereof, but the Congress may at any time by law make or alter such regulations, except as to the place of choosing Senators."

**ILLEGAL ABSENTEE BALLOT DROP BOXES**

For the State of Wisconsin these events led to the Wisconsin Election Commission (WEC) obtaining a set of federal Absentee Ballot Drop Box guidelines which was then modified by WEC and was sent out in a memo

• https://legis.wisconsin.gov/assembly/59/ramthun/media/1355/mueller-amos-letter.pdf

# CONSTITUTIONAL ATTORNEY MATT DEPERNO



Graduated with a masters degree in law from New York University School of Law in 1995, and has practiced law in the state of Michigan for 16 years. He is also a current candidate for Michigan Attorney General.

https://www.linkedin.com/in/matthew-deperno-a0b15822/

https://www.depernolaw.com/

# DEPERNO MEMO SUMMARY

- This is the original Memo that was sent to the entire legislative body suggesting that a state legislature reclaiming ballots was possible.

- While it was written to be more catered to AZ, its merit focuses on the US Constitution, which is applicable in all 50 states.

- To see the PDF file, click here:

- https://legis.wisconsin.gov/assembly/59/ramthun/media/1350/de-perno-decertification-memorandum.pdf

## Memorandum

**Date:**         September 23, 2021

**To:**           Sen. Wendy Rogers

**From:**         Matt DePerno

**Subject:**      Final Memo regarding Authority Over Elections and Electors

*Can a State Legislature recall the state electors or decertify a national election upon proof of fraud in the election? The Answer is "Yes."*

On August 14, 2021, I presented a memo to Sen. Wendy Rogers titled "Preliminary Memo regarding Authority Over Elections and Electors." That memo concluded that a State Legislature has the authority to recall the state elector or decertify a national election upon proof of fraud in the election. Importantly, this does not require proof of "all of the fraud."

On September 16, 2021, Ken Behringer prepared a memo to Sen. Michelle Ugenti-Rita that asked the question "*Is there a mechanism to decertify a presidential election?*" (the "Behringer Memo") The Behringer memo concluded there is no mechanism to decertify a presidential election outside of 3 U.S.C. §§ 5 and 15.

This memo disagrees with the Behringer Memo for the following reasons: (1) Sec. 5 is limited to the controversy of any appointment of electors and does not address decertification of an election; (2) Sec. 15 is limited to the counting of electoral votes and objections on January 6 and does not address decertification of an election based on fraud; (3) the Behringer Memo does not address decertification of an election upon proof of fraud; and (4) the Behringer Memo relies on *Trump v Kemp*, 511 F. Supp. 3d 1325 (N.D. Ga. 2021) which deals only with court authority to decertify an election (and only in the context of Secs. 5 and 15) but which does not deal with the State Legislature's authority to decertify an election.

In light of the Behringer Memo, we ask again whether a State Legislature can recall the state electors or decertify a national election upon proof of fraud in the election? **After again considering the constitutional authority of the State Legislature, the Constitution itself, and U.S. Supreme Court authority and precedent, the answer is definitively "Yes."**

States have authority over their elections, including national elections. "Congress has never undertaken to interfere with the manner of appointing electors, or, where (according to the new general usage) the mode of appointment prescribed by the law of the State is election by the people, to regulate the conduct of such election, or *to punish any fraud in voting for electors*; but has left these matters to the control of the States." *In re Green*, 134 U.S. 377, 380 (1890) (emphasis added).

1

• https://legis.wisconsin.gov/assembly/59/ramthun/media/1350/de-perno-decertification-memorandum.pdf

# CONSTITUTIONAL ATTORNEY ROB NATELSON



Professor Robert G. Natelson, who contracts with II, heads the Institute's Constitutional Studies Center and its Article V Information Center.  He is a nationally known constitutional scholar and author whose research into the history and legal meaning of the Constitution has been cited repeatedly at the U.S. Supreme Court, federal appeals courts, and state supreme courts—both by parties and by state and federal judges and justices.  He is widely acknowledged to be the country's leading active scholar on the Constitution's amendment procedure and among the leaders on several other topics. Several years ago Professor Natelson created the first-ever online bibliography for 18th century materials used in constitutional research.

He was a law professor for 25 years, serving at three different universities. Among other subjects, he taught Constitutional Law, Constitutional History, Advanced Constitutional Law, and First Amendment. Professor Natelson is especially known for his studies of the Constitution's original meaning.

https://i2i.org/about/our-people/rob-natelson/

# NATELSON ARTICLE SUMMARY

- This memo was written shortly after the 2020 election, and uses the same overall justification for state legislatures to use their plenary power over electors.

- Natelson felt this article held everything he would say in regards to Wisconsin, because it references the US Constitution which is applicable in all 50 states.

- For the full PDF click here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1356/natelson_-state-legislatures-responsible-for-resolving-contested-presidential-vote-complete-colorado-page-two.pdf

NATELSON
ARTICLE



PAGE ONE      LOCAL ⌄      CORONAVIRUS      ISSUES ⌄      🔍

2021 ELECTION      COLUMNISTS ⌄      NATIONAL      SEND TIPS

2020 ELECTION, CONSTITUTIONAL LAW, ELECTORAL COLLEGE, NATIONAL, ROB NATELSON

# Natelson: State legislatures responsible for resolving contested presidential vote

December 10, 2020        By Rob Natelson

- https://legis.wisconsin.gov/assembly/59/ramthun/media/1356/natelson_-state-legislatures-responsible-for-resolving-contested-presidential-vote-complete-colorado-page-two.pdf

Facebook      Twitter      LinkedIn      Print      Email

In the weeks leading up to November 3, Americans cast their ballots for presidential electors. The results in most states are clear.

But in six states they are not clear.  Nor are they likely to be any time soon. Despite media efforts to ignore it, evidence of voting irregularities continues to mount. It has now been creditably **reported** that the pattern of vote accumulation in Pennsylvania and Georgia suggests the official results in those states are fictional.

As I have **explained** previously, both federal law and the Constitution assign to the legislatures of the contested states full responsibility for addressing the situation. Thus far, however, lawmakers have failed to assume that responsibility. They thereby invite the danger that their state may help elect a presidential candidate their constituents rejected.

# ATTORNEY BORIS EPSHTEYN



Boris Epshteyn, the founder and president of Georgetown Advisory consulting group, is an experienced political strategist, communicator, attorney, and investment banker.

Boris graduated, cum laude, with a BSFS degree from Georgetown University's School of Foreign Service and holds a Juris Doctorate degree from Georgetown University Law Center.

https://borisep.com/about/

# EPSHTEYN SUMMARY

- Boris sent this email to our office after reviewing the LRB and Leg Council memo, as a rebuttal.

- It is a expedited version of what many others also can clearly see, that states do have plenary power to reclaim their electors.

- For the PDF click here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1352/epshteyn-rebuttal.pdf

| | |
|---|---|
| **From:** | Ramthun, Timothy |
| **Sent:** | Wednesday, November 24, 2021 12:47 PM |
| **To:** | Rep.Ramthun |
| **Subject:** | Fwd: Re: WI Legis Counsel memo |

---------- Forwarded message ----------
From: Boris Epshteyn <bepshteyn@gmail.com>
Date: Nov 24, 2021 8:12 AM
Subject: Re: WI Legis Counsel memo
To: "Ramthun, Timothy" <Timothy.Ramthun@legis.wisconsin.gov>
Cc:

See below.

- The fundamental flaw in the legislative counsel analysis is the claim that "There is no procedure under Wisconsin law for "decertifying" or "pulling back" a slate of presidential electors *who have been appointed pursuant to state statutes*." (emphasis added). The whole basis for the current effort is the fact that the 2020 election was not in fact conducted pursuant to state statutes.

- Article II of the Constitution gives plenary power to the legislatures to determine the manner for choosing electors, which the Wisconsin legislature has done by adopting election statutes. When non-legislative officials altered or suspended those laws, they acted in violation of Article II of the Constitution, resulting in an illegal election.

- 3 U.S.C. § 2 provides that when a state fails to choose electors on the day designated by Congress, then "the electors may be appointed on a subsequent day in such a manner as the legislature of such State may direct." Some have argued that that provision only applies in the context of a state requiring a majority vote to win, and therefore allows for the possibility of a runoff. I do not think it is so limited by its terms, and that the conduct of an election held in violation of the manner set out by the legislature would trigger that provision.

- Beyond that, we're in unchartered territory. A plausible argument can be made that once the electoral college acts, that is the end of the matter. But another argument, at least as plausible, is a recognition that fraud (and on that, I would include unconstitutional conduct by state election officials) vitiates actions taken pursuant to the fraud. That would suggest that decertifying votes that were illegally certified would be valid.

- As for whether a President can *only* be removed by impeachment or incapacity, those are the only two routes specified in the Constitution. But because the Constitution does not describe them as the *sole* mechanisms, they do not foreclose traditional fraud remedies. The assumption here is that fraud and illegality occurred to an extent great enough to definitively have altered the results of the election. If we presume it occurred without Biden's knowledge, there is no "high crime and misdemeanor" *by him* that would warrant impeachment. And neither does this issue have anything to do with his competence under the 25th Amendment. But that should not foreclose normal fraud remedies that were available at common law and therefore serve as a backdrop principle for constitutional

1

EPSHTEYN
MEMO

- https://legis.wisconsin.gov/assembly/59/ramthun/media/1352/epshteyn-rebuttal.pdf

# CONSTITUTIONAL EXPERT JAMES RENWICK MANSHIP



Currently residing in Virginia, James graduated from Auburn University in 1974 and served 18 years in the U.S. Navy. He was chairman of YAF during the Reagan Years, and has been chairman of Washington Institute for Statesmanship Education for 24 years. He has avidly studied the US Constitution all his life and enjoys speaking at multiple events across the nation as a George Washington living history speaker for 29 years running.

https://www.linkedin.com/in/statesmanship

# MANSHIP MEMO SUMMARY

- Manship directly refutes both the LRB and Leg Council memos, making notes upon the memos themselves.

- He adds historical context to his arguments and acknowledges that fraud vitiates everything.

- To view the PDF in full click here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1354/manship-comments-on-leg-council.pdf


https://legis.wisconsin.gov/assembly/59/ramthun/media/1353/manship-annotated-lrb-memo.pdf

MANSHIP
MEMO



# Wisconsin Legislative Council

Anne Sappenfield
Director

TO:     SENATOR KATHY BERNIER

FROM:   Katie Bender-Olson, Senior Staff Attorney, and Peggy Hurley, Staff Attorney

RE:     Legislative Authority to Decertify a Presidential Election

DATE:   November 1, 2021

*The court decision that Fraud vitiates ANY action, should include a Fraudulent Election… see also Clause 6 "the Case of Removal…"*

You asked for an analysis of the Wisconsin Legislature's current authority to "decertify" the presidential election or "pull back" the electoral votes cast by the state presidential electors. There is no mechanism in state or federal law for the Legislature to reverse certified votes cast by the Electoral College and counted by Congress. Instead, except in the case of presidential incapacity, impeachment is the only mechanism for removing a sitting U.S. President.

*Not "impeachment" rather Senate conviction after Impeachment.*

## WISCONSIN STATE LAW PROCESS FOR SELECTING PRESIDENTIAL ELECTORS AND CASTING ELECTORAL VOTES

The U.S. Constitution authorizes state legislatures to "direct" how presidential electors are appointed, which the Wisconsin Legislature has done by specifying an appointment procedure in state law. Specifically, Article II, section 1 of the U.S. Constitution, provides that "Each state shall appoint, in such manner as the legislature thereof may direct, a number of electors equal to the whole number of senators and representatives to which the state may be entitled in the Congress...."

*Weak… no date of law.. no quote…*

The Wisconsin Legislature enacted statutes establishing the process for selecting and appointing presidential electors, which involves the political parties each nominating a slate of electors, and the results of the popular vote for president in Wisconsin determining which slate will be appointed. The Legislature could change this process, but it would require amending state law. There is no procedure under Wisconsin law for "decertifying" or "pulling back" a slate of presidential electors who have been appointed pursuant to state statutes.

*The court decision that Fraud vitiates ANY action, should include a Fraudulent Election…*

### Appointment of Electors by Political Parties

*See Williams v. Rhodes. https://constitution.congress.gov/browse/essay/artII-S1-C2-1-2-1/ALDE_00001121/*

The Wisconsin Legislature has established a system for the appointment of electors by the Republican and Democratic parties in the state. On the first Tuesday in October of each presidential election year, the candidates for the Senate and Assembly nominated by each political party at the primary, the state officers, and the holdover state senators of each political party meet in the State Capitol to nominate a slate of 10 electors for each party. The names of the nominated electors from each party are certified by the chairperson of the state committee of each party to the chairperson of the Wisconsin Elections Commission (Commission). [s. 8.20, Stats.]

*Clause 6*

*In Case of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Powers and Duties of the said Office, the Same shall devolve on the Vice President, and the Congress may by law provide for the Case of Removal, Death, Resignation or Inability, both of the President and Vice President, declaring what Officer shall then act as President, and such Officer shall act accordingly, until the Disability be removed, or a President shall be elected.*

One East Main Street, Suite 401 • Madison, WI 53703 • (608) 266-1304 • leg.council@legis.wisconsin.gov • http://www.legis.wisconsin.gov/lc

*Weak wording, maybe better Case of Impeachment, Clause 6 Removal, Resignation, Inability (see 25th Amend.), or Death*

- https://legis.wisconsin.gov/assembly/59/ramthun/media/1354/manship-comments-on-leg-council.pdf



## MANSHIP MEMO

- https://legis.wisconsin.gov/assembly/59/ramthun/media/1353/manship-annotated-lrb-memo.pdf

---

Richard A. Champagne, Chief
Legal 608.504.5801 • Research 608.504.5802

One East Main Street, Suite 200
Madison, WI 53703 • http://legis.wisconsin.gov/lrb

WISCONSIN LEGISLATIVE REFERENCE BUREAU

## MEMORANDUM

**TO:** Representative Timothy Ramthun

**FROM:** Michael Gallagher, assistant chief counsel

**DATE:** November 22, 2021

**SUBJECT:** The state legislature's power to recall presidential electors

You asked for a memorandum addressing the arguments of Attorney Matt DePerno[1] in his September 23, 2021, memorandum[2] to the effect that a state legislature has the unilateral power to recall the votes of the state's presidential electors, even after the electors have been certified under state law, their votes counted in, and the new president sworn in.[3]

*[handwritten annotation: NOT REALLY]* While there is no direct parallel in American history for the 2020 presidential election and its continuing aftermath, based on the text itself of the Presidential Electors Clause[4] in the U.S. Constitution and based on relevant decisions of the U.S. Supreme Court, including an opinion authored by Justice Clarence Thomas analyzing the plain meaning of the Presidential Electors Clause, the state legislature does not have the power to recall presidential electors.

*[right margin handwritten annotation: Yes this U.S. Constitution gives this power to the State Legislature ALONE, thus "Unilaterally". If a Governor or other State public servant acts to deny the Legislature this DUTY, they have violated their OATH to uphold this Constitution for the United States of America, so subject to removal from office!]*

### Introduction

*[handwritten annotation: NOT REALLY]* The 2020 presidential election was unprecedented. The election occurred in the midst of the COVID-19 global pandemic and saw a dramatic increase in the number of voters voting absentee

*[handwritten annotation across page: Actually, the Election of 1876 was similar with questions about which slate of ELECTORS the Congress should accept from several states. It was resolved NOT according to this Constitution, rather by an "extra" or un-Constitutional Election Commission, devised by Congress. The 1877 Congress ignored the Contingent Vote process of this Constitution. Why? Because it would likely have resulted in Democrat Tilden winning the Electoral Vote as he had won the Popular Vote. A compromise favored the in-power party, the Republican Rutherford B. Hayes, but the Dems. got the end of Reconstruction Martial Law in southern Capitols. In Election of 2020, (due to the 6 Jan 2017 "Insurrection" many informed analysts believe to be a cunning PsyOps or Coup d'Etat) Senate President Pence ignored the US Code section on proper hearings in the case where a Senator and a Representative (or several) challenged any one state (or many states) Electoral Vote counts, again ignoring the Contingent Vote process that the Framers of this Constitution wrote into the document in 1787, a century before.]*

---

[1] Matt DePerno is an attorney in Michigan who is currently running for attorney general in that state. His law firm and candidate website may be accessed at https://www.depernolaw.com/.

[2] DePerno, Matt, "Final Memo regarding Authority Over Elections and Electors" (September 23, 2001), hereinafter the "DePerno Memo."

*[left margin handwritten: FRAUD "vitiates" any legal action. Extensive ELECTORAL FRAUD has been revealed.]*

[3] The DePerno memo also uses the term "decertify" with respect to the action he argues a state legislature may take with respect to a presidential election. There is no process under current law for the Wisconsin Legislature to "decertify" an election. *See* Appendix A: The Electoral College process in Wisconsin. In any case, whether the state legislature has the power to recall the state's presidential electors in the first place is the more fundamental question. If the legislature does not have that power, it also does not have the power to decertify an election.

[4] U.S. Const. art. II, §1, cl. 2.

1

# ARIZONA SENATORIAL CANDIDATE JOSH BARNETT



- **Josh Barnett is a small business owner in Phoenix, Arizona and Oceanside, California. He attended Purdue University then went on to open his first business in 2007 followed by 3 others in Ft Wayne, Indiana, before moving to Arizona in 2010. He became a PC in the Republican Party and a executive advisor to LD15 to mediate between the people and the LD15 board. He is currently a US Congressional AZ06 candidate. He has been working with legislators nationwide since November 5, 2020, on getting forensic audits and was in the middle of the forensic audit in Maricopa County recently providing constitutional arguments to decertify.**

https://www.barnettforaz.com/

# BARNETT MEMO SUMMARY

- Barnett's memo was written specifically refuting the Leg Council memo, as it was received prior to the release of the LRB memo.

-  It argues that the Legislature and it's elective body should be the one to decide the constitutionality of the proposed action, not the appointed outside firm of leg council. It also speaks at fraud vitiates everything.

- For the full PDF click here:

https://legis.wisconsin.gov/assembly/59/ramthun/media/1349/barnett-and-jose-rebuttal.pdf

**Constitutional Authority to Alter, Abolish, Reform or Invalidate Unlawful Procedures and Acts**

**Please take notice that** the Legislative Counsel of Wisconsin is taking a very erred and limited approach to the idea of decertifying an election based on several false premises and an assumption that because the Constitution doesn't say a word, means that it's not included in the powers granted to government. In order to deal with this issue, I will include Maxims of Law that clearly state in plain English why this is wrong as well as show a double standard in this thought process.

DOUBLE STANDARD:

Please show where the Constitution of the State of Wisconsin grants clear authority for the Legislative Branch to be directed in Counsel by members of the Private Bar Association, which is foreign and separate from government and the People who the government swears to protect. Please explain where the Legislature is allowed to hire Officers of the court (Bar Attorneys), to tell the Legislature what they can do, based on a Trust Indenture (Constitution) that the legislature already swore to uphold? Did the Legislature swear to uphold things for the People that they had no understanding of what the terms were?

**Issue number 2:** The People have demanded audits across America, where the Bar Association has threatened to remove the License of various attorneys, if they should choose to help the People get an Audit. We also see where the promise was kept as the attorneys went after Lin Wood, Guilliani, Sydney Powell, and Matt Deperno. Being that many Bar Association actors have shown a direct objection to the People having audits of their own States, please explain where there is Constitutional Authority for the Legislature to use a private foreign entity to "allow" the People to deal with their own business?

**Please take notice that** the People have come together to demand Audits and correction to issues, by right and the Legislative Counsel has no right to interfere in the People's will.

**Wisconsin Constitution Bill of Rights Text of Section 4:**
**Right to Assemble and Petition**

The right of the people peaceably to assemble, to consult for the common good, and to petition the government, or any department thereof, shall never be abridged.

**False Assumptions:**

1. The memo shared by Legislative Counsel seems to infer that since the actions of the People involved with the Election got into the hands of the Electoral College that the time is up for correcting issues that the Sheriff has already proved was done outside of the law as crimes. This thinking seems to attempt to give credence to acts that are criminal

BARNETT
MEMO

- https://legis.wisconsin.gov/assembly/59/ramthun/media/1349/barnett-and-jose-rebuttal.pdf

# CONCLUSION OF ATTORNEYS

- It is abundantly clear that the collection of interpretations from multiple sources nationwide agree with each other that reclaiming our electoral ballots is possible.

- When looking to matters reflecting the U.S. Constitution, the opinions of Legislative Council and the Legislative Reference Bureau both fall short by ignoring illegality that took place by the Wisconsin Elections Commission.

- These illegalities were fraudulent, and are therefore vitiated.

- The plenary power to reclaim clearly reverts back to the legislative body under the U.S. Constituion.

- It falls upon the State Legislature to rectify this abuse of our most precious right to elect our leaders in a free and fair election.



State of Wisconsin
2021 - 2022 LEGISLATURE

LRB–5227/1
MPG:skw

**2021  BILL**

1    AN ACT *to amend* 6.275 (1) (f), 6.32 (4), 6.33 (4), 6.33 (5) (a) 1., 6.36 (1) (d), 6.36

2    (1) (e), 6.47 (6), 6.47 (7) (b), 6.48 (1) (d), 6.48 (2) (b), 6.50 (2), 6.50 (2g), 6.50 (2r)

3    (g), 6.50 (3), 6.50 (4), 6.50 (5), 6.50 (6), 6.50 (7), 6.50 (10), 6.56 (3), 6.56 (4) and

4    7.23 (1) (c) of the statutes; **relating to:** removing ineligible voters from the

5    official voter registration list.

---

***Analysis by the Legislative Reference Bureau***

Under current law, if a voter who appears on the official voter registration list maintained by the Elections Commission becomes ineligible to vote for any reason, his or her status is changed from eligible to ineligible on the registration list.

Under this bill, if a voter appearing on the registration list becomes ineligible to vote for any reason, he or she must be removed from the list and the Elections Commission must keep a permanent record of the removal, including the date of and reason for the removal. Consistent with current law, an individual who is removed from the registration list and subsequently becomes eligible to register to vote in Wisconsin may reregister as provided by law.

For further information see the state and local fiscal estimate, which will be printed as an appendix to this bill.

---

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

# CLAUSE 21: SOLUTIONS ARE REQUIRED

"The Wisconsin Legislature shall pass legislation with the intention to clean up the WisVote database and create separate servers for active and inactive voters;"

Our office has taken initiative to do this.

https://legis.wisconsin.gov/assembly/59/ramthun/legislation/election-bills/

# CLAUSE 22: FULL FORENSIC PHYSICAL CYBER AUDIT

"The Wisconsin Legislature supports a full forensic physical and cyber audit of the 2020 general election, that this full forensic physical and cyber audit should be conducted by an independent and nonpartisan auditing firm with a scope statement approved by the Assembly Committee on Campaigns and Elections, and that this full forensic physical and cyber audit must include the following components:

1. Total examination of voting system machines, including browsers, tabulators, scanners, routers and firewalls, switches, network and out-of-band management cards, internet or network connectivity, network and remote access, remote access applications, software installed or removed on the system, flash drives, thumb drives, event logs, scripts that have been run, the date on which data were last modified and what data were modified, whether during or after the election, systems and security updates, password policies, multifactor authentication, databases, adjudication records, administrator accounts, and log-in records."

# CLAUSE 22: CONTINUED

"2. Kinematic artifact detection of all physical paper ballots, including whether ballots meet industry maximum allowable compliance for out-of-calibration measurements, ballot thickness to prevent bleed through, types of markers used, printed ballots, quantity of ballots, ballot trail, voter roll in comparison to ballots, mail-in ballot standards, and ballot watermarks and dot coding.

3. Physical canvas, including whether county clerks and election employees and volunteers followed election rules and regulations mandated by their county.

4. Transparency;''

**Rasmussen Reports**
**Field Guide to Election Integrity**
**December 23rd, 2021**
**- ALL U.S. National Likely Voters -**

- 59% now say cheating was likely in the 2020 elections, just up from 56%.
- 55% of Black voters say there was cheating in the 2020 elections.
- 55% support 2020 election audits including 53% of Black voters.
- 60% agree that opponents of requiring a Photo ID to vote just want to make it easy to cheat in elections, including 63% of Black voters.
- 61% say Election Reform must happen in Swing States like PA, MI, GA, WI, & AZ where voters have lost confidence.
- 65% say preventing cheating more important than making it easier to vote.
- 66% say wider use of mail-in voting will lead to more cheating in elections.
- 70% say private 'Zuckerbucks' type partisan election funding is "a bad thing for American Democracy," including 52% of Black voters.
- 75% say requiring Photo ID to vote is a reasonable measure to protect the integrity of elections, including 73% of Black voters.
- 75% of Black voters either believe the level of difficulty to vote is currently about right or believe it is already too easy to vote.
- 90% think it is Important to prevent cheating in elections, including 83% who say it's Very Important. These are down from 95% and 89% respectively in October. Among Black voters, 87% now say it is Important to prevent cheating in elections, including 77% who say it is Very Important.

# CLAUSE 23: TRANSPARENCY

"In order to ensure transparency, all such audits shall be streamed live for public viewing and recorded via security video to be run 24 hours a day, 7 days a week, until all such audits are complete;"

Both sides need to see this happen to ensure it is unbiased and honest.

The People Demand it!



**State of Wisconsin**
2021 – 2022 LEGISLATURE

LRB–5227/1
MPG:skw

## 2021 BILL

1   AN ACT *to amend* 6.275 (1) (f), 6.32 (4), 6.33 (4), 6.33 (5) (a) 1., 6.36 (1) (d), 6.36

2   (1) (e), 6.47 (6), 6.47 (7) (b), 6.48 (1) (d), 6.48 (2) (b), 6.50 (2), 6.50 (2g), 6.50 (2r)

3   (g), 6.50 (3), 6.50 (4), 6.50 (5), 6.50 (6), 6.50 (7), 6.50 (10), 6.56 (3), 6.56 (4) and

4   7.23 (1) (c) of the statutes; **relating to:** removing ineligible voters from the

5   official voter registration list.

---

### Analysis by the Legislative Reference Bureau

Under current law, if a voter who appears on the official voter registration list maintained by the Elections Commission becomes ineligible to vote for any reason, his or her status is changed from eligible to ineligible on the registration list.

Under this bill, if a voter appearing on the registration list becomes ineligible to vote for any reason, he or she must be removed from the list and the Elections Commission must keep a permanent record of the removal, including the date of and reason for the removal. Consistent with current law, an individual who is removed from the registration list and subsequently becomes eligible to register to vote in Wisconsin may reregister as provided by law.

For further information see the state and local fiscal estimate, which will be printed as an appendix to this bill.

---

*The people of the state of Wisconsin, represented in senate and assembly, do enact as follows:*

# CLAUSE 24: SOLUTIONS REQUIRED

"The Wisconsin Legislature shall pass legislation specifically intended to secure the integrity of future elections in Wisconsin based on the findings of the Legislative Audit Bureau investigation, the Assembly Committee on Campaigns and Elections investigation, and the full forensic physical and cyber audit;"

# CLAUSE 24: RAMTHUN ELECTION LEGISLATION LIST

- LRB 5588/1: 36 month records retention bill
- LRB 5175/2: Removal of deceased voters bill
- LRB 5221/1: Dissolve the WEC bill
- LRB 5230/1: Election audit and fraud dissolves election bill
- LRB 5227/1: Ineligible voter bill
- LRB 5228/1: Log file bill
- LRB 5322/P2: Paper ballot and non centralized vote count bill (still drafting)

To view the bills, follow this link:

https://legis.wisconsin.gov/assembly/59/ramthun/legislation/election-bills/

# CLAUSE 25: SEND IT TO CONGRESS

"The secretary of state of the State of Wisconsin is hereby directed to forward a proper authenticated copy of this resolution to the President of the Senate of the United States."

It does not matter what transpires after this action is completed on the congressional end. The focus is to make a clear statement that manipulations in elections will not be tolerated in the state of Wisconsin, and we will not continue forward until the issues are resolved.

# CONCLUSION

- There is above and beyond enough evidence to show the elections process in Wisconsin is broken.

- The public has no confidence in our elections process. In order to restore it, bold actions are required.

- The legislature has the plenary right to reclaim Wisconsin's 10 electors.

- The legislature must then dedicate itself to restoring the integrity of elections process by holding a full forensic physical cyber audit for the public to see.

- Issues found need to be addressed and resolved.

- It falls upon us to take this historic action to save the core of our republic, or all is lost. Nothing is of greater importance than this.