**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

US DOMINION, INC., DOMINION VOTING
SYSTEMS, INC., and DOMINION VOTING
SYSTEMS CORPORATION,

        *Plaintiffs/Counter-Defendants*,

    vs.

MY PILLOW, INC., *Defendant/Counter-Claimant*.

MICHAEL J. LINDELL, *Defendant/Counter-Claimant/Third-Party Plaintiff*,

    vs.

SMARTMATIC USA CORP., SMARTMATIC
INTERNATIONAL HOLDING B.V., SGO
CORPORATION LIMITED, and HAMILTON
PLACE STRATEGIES, LLC,

        *Third-Party Defendants*.

Case No. 21-cv-445-CJN

**SMARTMATIC DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR RULE 11 SANCTIONS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.     Mr. Lindell and his counsel have violated Rule 11. ........................................... 2

     A.    Mr. Lindell and his counsel have violated Rule 11(b)(3) by making factual contentions without support. ......................................................... 2

          1)    Mr. Lindell makes factual allegations that lack evidentiary support ........................................................................................... 2

          2)    Mr. Lindell and his counsel rely on sources that do not count as "evidentiary support." ................................................. 6

     B.    Mr. Lindell's counsel has violated Rule 11(b)(2) because Mr. Lindell's claims have no legal foundation. .......................................... 12

     C.    Mr. Lindell and his counsel have violated Rule 11(b)(1) by filing the Complaint for improper purposes. ................................................. 18

II.    Smartmatic has requested reasonable and proportionate relief ........................................ 19

     A.    The circumstances show that serious sanctions are warranted. ........................... 19

     B.    Sanctions should include recovery of fees and a meaningful fine. ....................... 21

CONCLUSION .................................................................................................................. 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abner Realty, Inc. v. Admin. Of Gen. Servs*.,
   No. 87 Civ. 3075, 1998 WL 410958 (S.D.N.Y. July 22, 1998) ................................................4

*\*Acosta Orellana v. CropLife Int'l*,
   711 F. Supp. 2d 81 (D.D.C. 2010) ..................................................................................12, 13

*Bailey v. Antrim County*,
   No. 20-9238 (Mich. Antrim Cty. Cir. Ct.) ......................................................................8, 9

*\*BEG Invs., LLC v. Alberti*,
   85 F. Supp. 3d 13 (D.D.C. 2015) ....................................................................................4

*\*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................12, 13

*\*Boyle v. United States*,
   556 U.S. 938 (2009).........................................................................................................17

*\*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*.,
   498 U.S. 533 (1991)..........................................................................................................2

*Bush v. Butler*,
   521 F. Supp. 2d 63 (D.D.C. 2007)....................................................................................14

*\*Carswell v. Air Line Pilots Ass'n, Int'l*,
   248 F.R.D. 325 (D.D.C. 2008)....................................................................................2, 6

*Cooter & Gell v. Hartmax Corp.*,
   496 U.S. 384 (1990)...................................................................................................18, 21

*Curling v. Raffensperger*,
   No. 17-cv-2989 (N.D. Ga.) .............................................................................................7

*\*E. Sav. Bank, FSB v. Papageorge*,
   31 F. Supp. 3d 1 (D.D.C. 2014) ........................................................................................15

*\*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
   20 F. Supp. 3d 451 (S.D.N.Y. 2014).................................................................................15

*\*Matter of Giuliani*,
   146 N.Y.S.3d 266 (N.Y. App. Div. 2021) .......................................................................19

*Hollister v. Soetoro*,
258 F.R.D. 1 (D.D.C. 2009) ..................................................................................17

*Intelsat USA Sales LLC v. Juch-Tech, Inc.*,
No. CV 10-2095 (RC), 2014 WL 12787643 (D.D.C. Oct. 15, 2014) .......................................5

*Karim-Panahi v. 4000 Mass. Apartments*,
302 F. Supp. 3d 330 (D.D.C. 2018) ...........................................................12

*King v. Whitmer*,
No. 20-13134, 2021 WL 3771875 (.D. Mich. Aug. 25, 2021) ...................................... *passim*

*Kurd v. Republic of Turkey*,
374 F. Supp. 3d 37 (D.D.C. 2019) ...........................................................12

*La Suisse, Societe D'Assurances Sur La Vie v. Kraus*,
No. 06-cv-4404, 2014 WL 3610890 (S.D.N.Y. July 21, 2014) ...........................................16

*LeFande v. Mische-Hoeges*,
712 F. App'x 9 (D.C. Cir. 2018) ...........................................................14

*LeFande v. Mische-Hoeges*,
No. 10-cv-1857, 2018 WL 6620129 (D.D.C. Dec. 10, 2018) .................................................14

*LeFande v. Mische-Hoeges*,
No. 10-cv-1857, 2019 WL 8331599 (D.D.C. Jan. 29, 2019) ..................................................14

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) ...........................................................15

*Markwell v. Cnty. Of Bexar*,
878 F.2d 899 (5th Cir. 1989) ...........................................................22

*Midlock v. Apple Vacations W., Inc.*,
406 F.3d 453 (7th Cir. 2005) ...........................................................22

*O'Rourke v. Dominion Voting Sys. Inc.*,
No. 20-cv-03747, 2021 WL 3400671 (D. Colo. Aug. 3, 2021) ...................................... *passim*

*Republic of Kazakhstan v. Stati*,
380 F. Supp. 3d 55 (D.D.C. 2019) ...........................................................15

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ...........................................................17

*Reynolds v. U.S. Capitol Police Bd.*,
357 F. Supp. 2d 19 (D.D.C. 2004) ...........................................................13

*Saltany v. Reagan,
    886 F.2d 438 (D.C. Cir. 1989) ................................................................................17

Thomas v. Early Cnty., GA,
    360 F. App'x 71 (11th Cir. 2010) .............................................................................5

Upchurch v. O'Brien,
    No. 19-CV-165-WMC, 2021 WL 3617098 (W.D. Wis. Aug. 16, 2021) ...............22

Viacom Int'l Inc. v. Icahn,
    747 F. Supp. 205 (S.D.N.Y. 1990) ...........................................................................16

West v. Atkins,
    487 U.S. 42 (1988) ....................................................................................................15

Westmoreland v. CBS, Inc.,
    770 F.2d 1168 (D.C. Cir. 1985) ...........................................................................2, 18

*Wis. Voters All. v. Pence,
    514 F. Supp. 3d 117 (D.D.C. 2021) ...................................................................18, 19

*Wis. Voters All. v. Pence,
    No. 20-3791, 2021 WL 686359 (D.D.C. Feb. 19, 2021) .........................................18

**Statutes**

42 U.S.C. § 1985 .............................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 11 ..................................................................................................... passim

Fed. R. Civ. P. 12 .............................................................................................................22

## **INTRODUCTION**

The Third-Party Complaint ("Complaint") peddles the same dishonest narrative Mr. Lindell has been spreading for over a year:  that the 2020 U.S. election was "tainted" because "voting machines" were "hacked" and "stole" votes from former President Trump. From "Stop the Steal" rallies to podcast appearances and documentaries, Mr. Lindell has told this story to anyone who will listen.

What differentiates Mr. Lindell's Complaint from his out-of-court statements is that he and his counsel have certified the former under Rule 11. That certification matters. Because courts have limited resources, the more litigants bring frivolous, bad faith complaints, the longer others with bona fide disputes must wait for resolution. To lessen that risk, lawyers take an oath to honor the legal system, follows its rules, and certify that their clients' claims adhere to Rule 11. And courts are duty-bound to enforce these rules, particularly when the circumstances indicate a disregard for them.

Mr. Lindell and his counsel may believe they are above Rule 11, but they are not. No matter how aggrieved Mr. Lindell feels, the Court is no one's outlet for frustration or vehicle for disinformation. Nor do Mr. Lindell's counsel have a license to certify frivolous claims. "Creative" or not, all claims must have a plausible basis in law. And a pleading, as a whole, must have a proper purpose. Mr. Lindell's Complaint violates these baseline standards. By certifying a pleading that not only offends Rule 11, but perpetuates dangerous falsehoods about the 2020 U.S. election, Mr. Lindell and his counsel have egregiously abused the judicial process and imposed substantial, needless costs upon Smartmatic. Only through sanctions can this Court rectify their offenses and deter similar wrongdoing in the future.

## ARGUMENT

I.   **Mr. Lindell and his counsel have violated Rule 11.**

    **A.    Mr. Lindell and his counsel have violated Rule 11(b)(3) by making factual contentions without support.**

Mr. Lindell and his counsel believe they have satisfied Rule 11(b)(3) because the Complaint has "more than 130 citations to evidence." (Lindell's Opp. to Smartmatic's Mot. for Rule 11 Sanctions ("Opp."), ECF No. 119 at 4). But Rule 11(b)(3) does not "merely" (*id.* at 3) require a compilation of sources, regardless of their probative value. Rather, Rule 11(b)(3) obligates those who sign a pleading to certify that they (a) have conducted "a reasonable inquiry into the facts," and (b) are "satisfied that the document is *well grounded*" in fact. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. 533, 542 (1991); *accord Westmoreland v. CBS, Inc*., 770 F.2d 1168, 1177 (D.C. Cir. 1985) (factual allegations must have a "*reasonable basis*"); *Carswell v. Air Line Pilots Ass'n, Int'l*, 248 F.R.D. 325, 328 (D.D.C. 2008) (pleading must be "well grounded on fact"). Mr. Lindell's opposition brief confirms that he and his counsel have violated Rule 11(b)(3) in two ways.

    **1)    Mr. Lindell makes factual allegations that lack evidentiary support.**

Mr. Lindell has no support for the core allegations in his Complaint, including its linchpin that the 2020 U.S. election was "tainted." (*See* Compl. ¶¶ 1, 5, 137; *see also id.* ¶¶ 138, 183(b) (alleging that Smartmatic and Dominion conspired to defame him by "calling him a 'liar' and [] purveyor of 'the Big Lie'" because his statements accusing Smartmatic and Dominion of being "hacked" and "manipulat[ing]" votes in the 2020 U.S. election are "substantively true").

Mr. Lindell first defends his vote-rigging allegations by contending that nothing affirmatively *disproves* them. (*See* Opp. at 5 (rhetorically asking, "Where is the proof?")). But his question is akin to a Flat Earther demanding evidence that the planet is round. Joe Biden was

sworn in as the President of the United States over a year ago. All legal challenges to the outcome of the 2020 election failed. Mr. Lindell and his counsel also are aware of, but refuse to accept, credible findings from the U.S. Cybersecurity and Infrastructure Security Agency ("CISA"), the U.S. Department of Justice, every state government that certified its electoral results, and every court to address whether the 2020 election was "rigged." These bodies have repeatedly and unequivocally refuted the disinformation on which Mr. Lindell predicates his pleading. This case is not about a negligent litigant or counsel who failed to turn over the right stone or overlooked a critical piece of information. Rather, Mr. Lindell and his counsel know what lies under the stone and do not care.

Mr. Lindell and his counsel's disinterest in contrary information is evident in the pretextual grounds they offer for ignoring it. For example, Mr. Lindell disputes the CISA Joint Statement because he, "like millions of Americans, does not believe that the 2020 General Election was as secure as CISA…would have the country believe." (Opp. at 18). But the fact that lots of people believe a canard does not make it true, and his counsel should know better. *See King v. Whitmer*, No. 20-13134, 2021 WL 3771875, at *35 (E.D. Mich. Aug. 25, 2021) ("As officers of the court, Plaintiffs' counsel had an obligation to do more than repeat opinions and beliefs, even if shared by millions. Something does not become plausible simply because it is repeated many times by many people.").

Mr. Lindell makes a similarly dubious point about the CISA Joint Statement in his Complaint. He alleges that Smartmatic and Dominion "wielded self-serving influence over CISA's proclamations that the 2020 election was historically unprecedented in its security." (Compl. ¶ 112). But nowhere does Mr. Lindell present facts suggesting that Smartmatic or Dominion played *any role* in the Joint Statement, much less a corrupt *and* controlling role. The

opening paragraph of the Joint Statement identifies its authors, and Smartmatic and Dominion are not among them. (*See* SMT Ex. 2[1]). As the District Court of Colorado noted, the Joint Statement is an "independent" source that publicly refuted claims that the election was rigged or that voting machines "flipped" votes. *See O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-cv-03747, 2021 WL 3400671, at *18–19 (D. Colo. Aug. 3, 2021) (noting that "the federal CISA statement" is "consistent with" "state governments [that] have rejected the suggestion that election machines or electronic voting systems somehow failed or generated incorrect results"). Mr. Lindell has no basis to impugn the CISA Joint Statement or the integrity of its authors.

Mr. Lindell also refuses to believe the statements of former Attorney General William Barr, who confirmed that the Department of Justice investigated allegations of rigged voting machines and confirmed that they are "just bullshit."[2] Despite the intelligence available to the Department of Justice, as well as the pressure Barr was reportedly under to corroborate the allegations,[3] Mr. Lindell and his counsel brush aside Barr's statement. (Opp. at 18). They contend that it lacks "the benefit of subsequent extensive investigations." (*Id.*) Yet, Mr. Lindell and his counsel identify *no finding* from *any investigation* that supports their vote-rigging allegations. As discussed below, the investigations they cite provide no probative value, let alone

---

[1] Exhibits labeled "SMT Ex." refer to the exhibits to Smartmatic's Rule 11 briefing. For ease of use, Smartmatic's exhibits in this reply continue from the exhibit numbering in Smartmatic's opening brief (ECF No. 118-1). A consolidated exhibit index is attached.

[2] *Inside William Barr's Breakup with Trump*, The Atlantic (June 27, 2021), *available at* https://www.theatlantic.com/politics/archive/2021/06/william-barrs-trump-administration-attorney-general/619298/  (SMT Ex. 3).

[3] *Id*. ("[F]ew betrayals have enraged [Trump] more than what his attorney general did to him. To Trump, the unkindest cut of all was when William Barr stepped forward and declared that there had been no widespread fraud in the 2020 election, just as the president was trying to overturn Joe Biden's victory by claiming that the election had been stolen.").

evidence that would substantiate the vote-rigging conspiracy they concocted and continue to push. (Compl. ¶ 5).

At bottom, Mr. Lindell's allegations of vote rigging and other charges of corruption in the 2020 U.S. election are factually insupportable and sanctionable under Rule 11(b)(3). *See BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 53 (D.D.C. 2015) (issuing Rule 11 sanctions for "[p]laintiff's counsel's apparent disregard for the factual content of the pleadings…[p]articularly given the[ir] gravity"); *Abner Realty, Inc. v. Admin. Of Gen. Servs*., No. 87 Civ. 3075, 1998 WL 410958, at *6–*7 (S.D.N.Y. July 22, 1998) (same, where plaintiff made accusations of "fraud, conspiracy, and corruption…without any investigation or evidence to substantiate the claims"); *see also King*, 2021 WL 3771875, at *27 ("[P]ursuant to their duties as officers of the court, attorneys typically do not offer factual allegations that have no hope of passing as evidentiary support at any stage of the litigation."); *accord Thomas v. Early Cnty.*, *GA*, 360 F. App'x 71, 76 (11th Cir. 2010).

Mr. Lindell's sensational allegation that the People's Republic of China owns or controls Smartmatic is similarly sanctionable. (Compl. ¶ 67). Mr. Lindell made up this allegation to connect different storylines in his narrative: if China "owns" or has "access" to Smartmatic's technology, then China's hacking and "manipulation" of votes through Smartmatic would seem more feasible. The rub, of course, is that no aspect of this narrative has any factual basis. Mr. Lindell and his counsel point to an 18-paragraph string-cite to show that China or Chinese nationals own Smartmatic. (Opp. at 19 (citing Compl. ¶¶ 50–67)). But not one of these paragraphs furnishes any ground for the allegation. Smartmatic is a private corporation, majority-held by the founders' families. (*See* ECF No. 118-1 at 17). Mr. Lindell has never had any basis to allege that China or "powerful Chinese interests" own or control Smartmatic. (Compl. ¶ 67).

     **2)**    **Mr. Lindell and his counsel rely on sources that do not count as "evidentiary support."**

The "evidence" Mr. Lindell and his counsel cite to show vote-rigging in the 2020 U.S. election has no probative value. Factual allegations must have actual "evidentiary support"; mere "speculation, conjecture, and unwarranted suspicion" do not suffice. *King*, 2021 WL 3771875, at *1, *24–*33; *Intelsat USA Sales LLC v. Juch-Tech, Inc*., No. CV 10-2095 (RC), 2014 WL 12787643, at *6 (D.D.C. Oct. 15, 2014) (imposing sanctions where claim "rested on nothing more than speculation, unsubstantiated industry rumors, and multilayered hearsay—none of which provided sufficient pre-filing grounds for including the allegations and causes of action"). When the factual allegations underlying a claim lack a "legitimate evidentiary basis," sanctions under Rule 11(b)(3) are warranted. *Id.* And they are particularly appropriate where the claims rest on "sensational allegations with respect to a defendant without any factual basis whatsoever." *Carswell v. Air Line Pilots Ass'n, Int'l*, 248 F.R.D. 325, 330 (D.D.C. 2008).

Here, Mr. Lindell identifies two categories of "evidence" to consider: (1) the sources that "backstop" his Complaint (Opp. at 5); and (2) new, additional "evidence" he has found to bolster it. Turning to the first category, none of the "evidence" Mr. Lindell cites in his Complaint supports his allegations. He now identifies paragraphs 3, 76, 85–86, 112, and 118–23 as his "evidence showing that [] electronic voting machines were hacked or used to steal the November 2020 General Election." (Opp. at 15–16). But these paragraphs fail to support such an assertion, and many are irrelevant altogether. They also exclusively involve jurisdictions where Smartmatic did not operate in the 2020 U.S. election. Mr. Lindell consistently ignores that Smartmatic provided election technology only in Los Angeles County.

▪    <u>Paragraph 3</u>: Mr. Lindell cites testimony from J. Alex Halderman, a professor at the University of Michigan, before the Senate Intelligence Committee on *June 21, 2017*. The

testimony sheds no light on whether "electronic voting machines were hacked or used to steal the November 2020 General Election." (Opp. at 15–16). In fact, Professor Halderman has *publicly refuted* the conspiracy theories that Mr. Lindell and others have spread since the 2020 U.S. election. (*See* SMT Ex. 45, Twitter, @jhalderm, Nov. 23, 2021 ("Last November, I and 58 other election security experts wrote that, while election security problems are real, *there was no credible evidence that the 2020 Presidential outcome was affected by hacking. That's all still true today.*").[4] No good-faith prefiling investigation could have so misrepresented Professor Halderman's view on the 2020 election.

- ▪ Paragraph 76: This paragraph alleges flaws in technology Dominion acquired over a decade ago. The sources are dated between 2004 and 2012. Several of them involve work by Professor Halderman. (*See* Compl. ¶ 76(c)–(e)).

- ▪ Paragraphs 85-86: Mr. Lindell relies on a September 21, 2021 declaration from Professor Halderman in *Curling v. Raffensperger*, No. 17-cv-2989 (N.D. Ga.). (*See* SMT Ex. 46). Importantly, the declaration pertains to Dominion's ImageCast X ballot marking devices, but it neither mentions Smartmatic nor supports Mr. Lindell's assertion that "electronic voting machines were hacked or used to steal the November 2020 General Election." Instead, Professor Halderman told the Associated Press—in an interview discussing the *Curling* litigation—that he has "seen no evidence the vulnerabilities [he purportedly identified in Dominion's ICX BMDs] were exploited to change the outcome of the 2020 election."[5]

---

[4] *See also* SMT Ex. 45, Craig Mauger, *Michigan Expert Debunks Infamous Report on Antrim County Election as 'Meaningless'*, The Detroit News (Apr. 2, 2021), *available at* https://www.detroitnews.com/story/news/politics/2021/04/01/michigan-expert-debunks-infamous-report-antrim-county-election/4835645001/.

[5] SMT Ex. 47, Kate Brumback, *Experts: False Claims on Voting Machines Obscure Real Flaws*, AP News (Aug. 13, 2021), *available at* https://apnews.com/article/technology-business-science-voting-election-2020-6755cf1c409f4aab613df8891b84272d.

▪    <u>Paragraph 112</u>: Mr. Lindell cites the Professor "Halderman declaration detailing numerous security issues with the same voting technologies used in the 2020 election." But the declaration does not aver that any votes were "manipulated" or "shifted," as Mr. Lindell states. Professor Halderman has disavowed such allegations for lack of "credible evidence." (*See* SMT Ex. 44).

▪    <u>Paragraph 118</u>: Even if the Court accepted the sources in this paragraph at face value, none support Mr. Lindell's allegation that voting machines "were manipulated and hacked in a manner that caused votes for one candidate to be tallied for the opposing candidate." (Compl. ¶ 5).  Sub-provision (a) refers to a 2020 election audit the "Cyber Ninjas" conducted in Maricopa County, Arizona. The County later examined the audit and concluded it "inaccurately challenges the legitimacy of thousands of voters who participated in the November 2020 General Election and/or the validity of ballots counted and included in the official results."[6] The County's report was not revelatory either; by then, "multiple hand counts [had already] confirmed the election results in Maricopa County," a "forensic audit of voting machines found no malfeasance," and all of the "lawsuits challenging Arizona's election outcome" were dismissed.[7] Mr. Lindell simply refuses to believe all of this readily available information.

Sub-provision (b) refers to *Bailey v. Antrim County*, No. 20-9238 (Mich. Antrim Cty. Cir. Ct.), another failed post-election suit that alleged "the unfounded conspiracy theory that tabulators manufactured by Dominion Voting Systems switched votes last fall from Donald

---

[6] SMT Ex. 48, *Correcting the Record*, Maricopa County Elections Department (Jan. 2022), available at https://recorder.maricopa.gov/justthefacts/pdf/Correcting%20The%20Record%20-%20January%202022%20Report.pdf.

[7] SMT Ex. 49, Daniel Funke, *Fact check: Arizona audit affirmed Biden's win, didn't prove voter fraud, contrary to Trump claim*, USA Today (Sept. 28, 2021), *available at* https://www.usatoday.com/story/news/factcheck/2021/09/28/fact-check-arizona-audit-affirms-biden-win-doesnt-prove-voter-fraud/5846640001/.

Trump to Joe Biden."[8] Mr. Lindell fails to explain how dismissed allegations in *Bailey* show that Smartmatic or Dominion "shift[ed]" votes between the presidential candidates. (*See, e.g.*, Compl. ¶ 119). He also disregards the Michigan Senate Oversight Committee's "detailed, bipartisan, 55-page report" released on June 23, 2021. *See O'Rourke*, 2021 WL 3400671, at *19–*21. The report concluded that "the [reported election] results represent the true results of the ballots cast by the people of Michigan." *See id.* (summarizing the report and accompanying letter from the Committee Chair, who "specifically emphasized the Committee's conclusions regarding Antrim County" rejecting voter fraud conspiracy theories).

Sub-provision (c) references a report that Allied Security Operations Group ("ASOG") issued on December 13, 2020 in connection with *Bailey*. Mr. Lindell's attorneys are not the first counsel who violated Rule 11 by relying upon the ASOG report. In *O'Rourke*, the District Court of Colorado chastised the plaintiffs' counsel who cited the ASOG report to contend that the 2020 election was "rigged." *See* 2021 WL 3400671, at *18–*21. So misleading was the ASOG report that the Michigan Attorney General and Secretary of State issued a statement the day after its release, denouncing its "misguided, vague and dubious assertions designed to erode public confidence in the November presidential election."[9] Professor Halderman likewise refuted the

---

[8] SMT Ex. 50, Clara Hendrickson, *Judge dismisses Antrim County election fraud lawsuit*, Detroit Free Press (May 18, 2021), https://www.freep.com/story/news/politics/2021/05/18/michigan-judge-antrim-county-election-lawsuit/4980333001/.

[9] SMT Ex. 51, *AG, SOS: Plaintiff's Report in Antrim County Election Lawsuit Demonstrates Lack of Credible Evidence in Widespread Fraud or Wrongdoing*, Michigan Attorney General & Secretary of State (Dec. 14, 2020), *available at* https://www.michigan.gov/ag/0,4534,7-359-92297_47203-547422--,00.html.

ASOG report because it contains an "extraordinary number of false, inaccurate, or unsubstantiated statements and conclusions."[10]

Sub-provisions (d), (e), and (f) do not even purport to "show[] that [] electronic voting machines were hacked or used to steal the November 2020 General Election." (Opp. at 15–16). No reasonable attorney would say so and cite (d), (e) and (f) as support.

▪   Paragraphs 119-23: These paragraphs rehash the nonsense Douglas Frank invented to back up Mr. Lindell's falsehoods. Mr. Lindell alleges that Frank "uncovered an algorithm or 'key'—a sixth degree polynomial—that operates in the electronic voting machines in a number of states to determine the ballots cast." (Compl. ¶ 119). Mr. Lindell further alleges that "Frank's conclusive analysis show[s] an algorithm was employed to manipulate votes in the 2020 General Election…." (*Id.* ¶ 8). It is all rubbish. Every credible source that has assessed Frank's "theories" has rejected them because they are easily disprovable. (*See* SMT Exs. 6–8; *see also* SMT Ex. 52, Andrew Seidman & Jonathan Lai, *How a Teacher's Fraud Claim was Debunked*, Philadelphia Inquirer (Aug. 1, 2021); SMT Ex. 53, *Ohio Math Teacher Travels the U.S. to Spread the Big Lie*, CNN Newsroom (Jan. 19, 2022) ("Frank's findings have been debunked by mathematicians and election experts. And more than a year later, there is still no evidence of widespread fraud in the 2020 election. But Frank is still winning audiences with lawmakers, election officials, and voters across the country.")). Frank's drivel is indefensible and in no way a basis to allege vote-rigging in the 2020 U.S. election by Smartmatic or anyone else.

Pivoting from the sources he used for his Complaint, Mr. Lindell now cites "substantial additional evidence" that "supports [his] statements regarding of [sic] election fraud…." (Opp. at

---

[10] SMT Ex. 54, Mardi Link, *Antrim Election Report Firm Dropped by Arizona Officials*, Traverse City Record Eagle (Apr. 4, 2021), *available at* https://www.record-eagle.com/news/antrim-election-report-firm-dropped-by-arizona-offiicals/article_8d2c39bc-93f2-11eb-9296-2bca28a263d4.html.

16). For example, Lindell points to "caches" of documents that he claims "evidenc[e] election fraud…." (*See id.*) But if that were true, Mr. Lindell would surely cite the documents showing fraud. Nor does Mr. Lindell give any reason to believe that the "caches" are grounded in evidentiary support. Two of them purportedly contain documents Michigan political candidates gathered to dispute the electoral results in Michigan. But the U.S. District Court for the Eastern District of Michigan has already: examined allegations that votes for former President Trump were "switch[ed]" in Michigan; found the allegations were "based on nothing more than belief, conjecture, and speculation rather than fact"; and sanctioned the counsel who certified the allegations because "no reasonable attorney" would have "accept[ed]" the speculative sources as providing support for them. *See King*, 2021 WL 3771875, at *24–*25.

Mr. Lindell's citations to ongoing "investigations" in various states similarly show that he and his counsel failed to "conduct[] the due diligence inquiry required under Rule 11(b)." *See id.* at *24. For instance, Mr. Lindell contends that certain state legislators' efforts to decertify their state's "2020 General Election results" "lend further credence to [his] statements that the 2020 General Election was rife with fraud." (Opp. at 17). But Mr. Lindell has it backwards: the fact that some continue to delegitimize the 2020 U.S. election underscores the perniciousness of his Complaint and disinformation campaign. Mr. Lindell and others like him, not any real-world evidence, fuel the doubt that animates those legislators' demands. In Arizona, the Maricopa County Elections Department found it necessary to refute the "false allegations [that] continue to persist and damage voter confidence."[11] The department recently released the report, "Correcting the Record: Maricopa County's In-Depth Analysis of the Senate Inquiry," which concluded: "**The November 2020 General was administered with integrity and the results were**

---

[11] *See* SMT Ex. 48 at 2.

**accurate and reliable. This has been proven through statutorily required accuracy tests, court cases, hand counts performed by the political parties, and post-election audits**."[12] To say that ongoing "investigations" "lend credence" to Mr. Lindell's narrative betrays reality.

In sum, the "evidence" for Mr. Lindell's factual contentions is smoke and mirrors. None of his core allegations have factual support. Mr. Lindell either mischaracterizes the "evidence" he cites, or it has no probative value. He and his counsel should be held accountable.

**B.    Mr. Lindell's counsel has violated Rule 11(b)(2) because Mr. Lindell's claims have no legal foundation.**

Mr. Lindell's claims against Smartmatic have never stood any chance of success. Each suffers multiple independent deficiencies. The claims are either barred by well-established precedent or have no plausible application in this case. Any attorney who conducted a reasonable inquiry into the law would not have certified them.

*Civil conspiracy*:    Mr. Lindell refuses to address the dispositive flaws Smartmatic identified in his civil conspiracy claim. *First*, even if a conspiracy to deprive him of his First Amendment rights existed, the conspiracy would be non-actionable because none of its alleged participants are governmental actors. (*See* ECF No. 94-1 at 20–22). *Second*, Mr. Lindell alleges no facts that suggest Smartmatic and Dominion ever reached an agreement related to him or the 2020 U.S. election. Mr. Lindell contends that he need not allege an agreement and can instead rely upon allegations showing "parallel conduct" and a "preexisting relationship." (Opp. at 20). But he neglects *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and its application in this Circuit. "Under *Twombly*, a plaintiff asserting conspiracy liability is required to plead more than

---

[12] *See id.* at 2 (bold in original). This report was publicly available to Mr. Lindell and his counsel during Rule 11 briefing. The report further corroborates the public evidence—which existed before Mr. Lindell filed suit—that confirmed the legitimacy of Arizona's 2020 U.S. election results. *See* SMT Ex. 49.

mere 'parallel conduct that could just as well be independent action,' but must make allegations 'placed in a context that raise[ ] a suggestion of a preceding agreement....'" *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 114 (D.D.C. 2010). "*[C]ourts in this Circuit have repeatedly held* that [t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." *Karim-Panahi v. 4000 Mass. Apartments*, 302 F. Supp. 3d 330, 338 (D.D.C. 2018); *see also Kurd v. Republic of Turkey*, 374 F. Supp. 3d 37, 52 (D.D.C. 2019) (dismissing civil conspiracy claim for failure to establish an agreement because "[p]laintiffs merely pled parallel conduct that could just as well be independent action"). Despite this clear precedent, Mr. Lindell offers only conclusory statements of an agreement. He makes no effort "to provide any indication of when or how [] an agreement was brokered, or how [Smartmatic] specifically" was "part[y] to an agreement." *Acosta*, 711 F. Supp. 2d at 113–14. Mr. Lindell's civil conspiracy claim comes nowhere close to satisfying *Twombly* and this Circuit's pleading requirements.

**Section 1985(3)**: Mr. Lindell dodges dispositive flaws that doom his Support or Advocacy Clause claim. On its face, the clause has no application here. It prohibits conspiracies "to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, *toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States*; or to injure any citizen in person or property *on account of such support or advocacy*." 42 U.S.C. § 1985(3). Nowhere in his Complaint does Mr. Lindell allege that Smartmatic conspired to prevent him from supporting or advocating for the election of anyone for federal office or to injure him "on account of such support or advocacy." Instead, the alleged conspiracy had "the common purpose of silencing speech, dissent, and opposition to the

use of electronic voting machines in the 2020 Presidential Election and the exposure of such machines' vulnerability to cyber-attacks and election tampering." (Comp. ¶ 166). Even if such a conspiracy existed, Mr. Lindell has no claim because no one prevented him from voting or supporting or advocating for a federal election candidate. *See Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 19, 25 (D.D.C. 2004) ("It is plainly in violation of Rule 11(b)(2) to allege legal theories that have no apparent basis for application in [a] case.").

Rather than address the disconnect between his allegations and Section 1985(3), Mr. Lindell shadowboxes at an argument Smartmatic never made. He contends that Smartmatic is attempting to impose on his claim "elements" applicable to the Equal Protection Provision of Section 1985(3). (Opp. at 20–21 & n. 4). To state a claim under that provision, a plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' actions." *Bush v. Butler*, 521 F. Supp. 2d 63, 67–68 (D.D.C. 2007). But Smartmatic has not argued that Mr. Lindell must show he is a member of a protected class to invoke the Support or Advocacy Clause. Rather, his claim fails for other reasons, including those described above and additional grounds that apply equally to his Section 1983 claims (i.e., the absence of state action).

**Section 1983:** Mr. Lindell's § 1983 claim is "so frivolous that it was 'patently clear' that it 'had absolutely no chance of success under the existing precedents and [that] no reasonable argument [could] be advanced to extend, modify or reverse the law as it stands.'" *LeFande v. Mische-Hoeges*, No. 10-cv-1857, 2018 WL 6620129, at *8 (D.D.C. Dec. 10, 2018). Mr. Lindell alleges that Smartmatic violated his rights when it stated it would be filing a Rule 11 motion against him and suing him for defamation. Smartmatic made these statements in footnotes in the

14

motion to dismiss it filed against his original complaint. (*See* Compl. ¶ 16 n. 36 *and* Opp. at 21–22) (citing Case No. 1:21-cv-2296, ECF No. 81-1 at 2, 3 nn. 1 & 2)).

Mr. Lindell has no colorable argument that Smartmatic's *footnotes in this Court* are state action. Smartmatic is litigating on its own behalf. No plausible connection exists between Smartmatic's footnotes and Los Angeles County, the only place where Smartmatic provided election technology in the U.S. in 2020. Predicating a § 1983 claim on Smartmatic's footnotes is sanctionable, full stop. *Cf. LeFande v. Mische-Hoeges*, 712 F. App'x 9, 10–11 (D.C. Cir. 2018) (reversing denial of sanctions for § 1983 claim, which was based on a bogus theory of state action, because the defendant, an off-duty police officer, was acting "in the ambit of [her] personal pursuits and thus plainly excluded from section 1983 liability"); *LeFande v. Mische-Hoeges*, No. 10-cv-1857, 2019 WL 8331599, at *4–*5 (D.D.C. Jan. 29, 2019) (on remand, imposing Rule 11 sanction alongside $101,455.23 fee award under 42 U.S.C. § 1988).

Worse yet, Mr. Lindell's own understanding of the law forecloses his claim. The test Mr. Lindell attributes to *West v. Atkins*, 487 U.S. 42 (1988) shows point-by-point why Smartmatic's footnotes are not actionable. Those footnotes (1) did not violate any constitutional right; and (2)(a) have nothing to do with any (i) rule or privilege created by Los Angeles County, (ii) rule of conduct created by Los Angeles County, or (iii) responsibility of Los Angeles County for Smartmatic's conduct. Additionally, under (2)(b) of the test Mr. Lindell identifies, Smartmatic is not a state actor because (i) it is not a state official, (ii) its footnotes were not a joint effort with or aided by state officials, and (iii) its footnotes are not chargeable to Los Angeles County. His § 1983 is absurd.[13]

---

[13] Insofar as Mr. Lindell relies on *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) to show state action, Smartmatic extensively explained in its motion to dismiss briefs why

**RICO**:  Mr. Lindell had no good faith basis to allege a RICO claim. What should have immediately stopped his counsel from inserting it into his Complaint is the lack of criminal conduct. They turned a blind eye to the consensus among the circuit courts, judges in this District, and "district courts across the country," which have "concluded that wrongful litigation activities cannot serve as RICO predicate acts." *See Republic of Kazakhstan v. Stati*, 380 F. Supp. 3d 55, 61 (D.D.C. 2019) (citing *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015)); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 457 (S.D.N.Y. 2014). Mr. Lindell dodges this authority by citing cases outside of this Circuit where "*other misconduct*" besides litigation "was also part of the scheme." (Opp. at 23). But those cases are distinguishable because Mr. Lindell identifies no "other misconduct" here. He is trying to transform Smartmatic's routine litigation activities into *indictable offenses*.

The cases Mr. Lindell provides show how misguided his claim is. In *La Suisse, Societe D'Assurances Sur La Vie v. Kraus*, No. 06-cv-4404, 2014 WL 3610890, at *9 (S.D.N.Y. July 21, 2014), the court noted that "litigation may constitute extortion where the 'victim of the extortionate activity had a *preexisting right* to be free from the threats invoked." (Opp. at 23 (quoting *La Suisse*, 2014 WL 3610890, at *9)). But this circumstance is rare. *Id.* As the court acknowledged, "courts are nearly unanimous in the view that the pursuit of frivolous litigation does not constitute the predicate RICO act of extortion." *Id. LaSuisse* was unique because the defendants, an insurance broker and brokerage firm, allegedly "leverage[d] their control and influence over [their] policyholders by instituting policyholder litigations against" the insurer "to extort [the insurer] into making payments directly to" the defendants. *Id.* at *9–*10. The court

---

*Halleck* provides no support for Mr. Lindell's § 1983 claim. (See ECF No. 94-1 at 25–26; ECF No. 107 at 3–5).

found that the lawsuits "constituted extortion for RICO purposes because" the defendants "*did not have a legitimate claim of right to the proceeds*" of the litigation. *Id.* at *10; *see also Viacom Int'l Inc. v. Icahn*, 747 F. Supp. 205, 213 (S.D.N.Y. 1990) (explaining that an extortion victim has "a preexisting right" "to pursue his business interests free of the fear he is quelling by receiving value in return for transferring property to the defendant").

Mr. Lindell has no reasonable basis to invoke *La Suisse* or similarly exceptional authority. No property claim is at issue here. And at no time has Mr. Lindell identified any "pre-existing right" that Smartmatic violated by bringing a defamation suit. To be clear, Mr. Lindell *wishes* that he had such a right: his goal is to have this Court hold that he can make whatever defamatory statements he wants about Smartmatic under the guise of free speech, and that if Smartmatic seeks legal recourse, it is committing a federal crime. But none of the cases Mr. Lindell cites remotely support his position. The authority from this District and elsewhere holding that litigation is not a RICO predicate act squarely forecloses his claim.

Mr. Lindell's RICO claim is sanctionable under Rule 11(b)(2) for other reasons too, as explained in Smartmatic's motion to dismiss briefing. One, Mr. Lindell cannot satisfy the elements of any alleged racketeering act (extortion, witness tampering, or mail fraud). None of them are a close call. Two, his claim is barred by *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) because he cannot allege facts showing that Smartmatic "conducted or participated" in any enterprise. And three, his Complaint alleges no facts to establish an enterprise under *Boyle v. United States*, 556 U.S. 938, 944–45 (2009) and its progeny in this Circuit. Each of these deficiencies would justify sanctions under Rule 11(b)(2). When viewed together, they overwhelmingly show that Mr. Lindell has no basis to allege a RICO violation.

**C.      Mr. Lindell and his counsel have violated Rule 11(b)(1) by filing the Complaint for improper purposes.**

The inquiry under Rule 11(b)(1) is straightforward in this case because Mr. Lindell and his counsel admit to filing suit for at least two improper purposes. First, Mr. Lindell and his counsel sued Smartmatic not to obtain redress for a cognizable injury, but to promote the same lies he has been spreading about the election since December 2020. Mr. Lindell and his counsel concede that his allegations track his out-of-court statements. (Opp. at 24) (admitting that Mr. Lindell's "out-of-court statements are consistent with his pleading"). Using the court in this manner, as a platform for disinformation, violates Rule 11(b)(1) because litigants may not use the court as a "political or protest forum" "to the detriment of parties with serious disputes waiting to be heard." *See Saltany v. Reagan*, 886 F.2d 438, 439–40 (D.C. Cir. 1989) (per curiam); *Hollister v. Soetoro*, 258 F.R.D. 1, 1 (D.D.C. 2009); *King*, 2021 WL 3771875 at *38 (sanctioning "politically motivated accusations [and] allegations" because counsel "refused to investigate or question" the claims to ensure that "the evidence conformed with the[ir] predetermined narrative").

Second, Mr. Lindell makes clear in his opposition that he was motivated by an additional improper purpose: gamesmanship. He asserts that he filed suit in response to (or, more accurately, *in retaliation for*) the defamation action Smartmatic brought against Fox News, certain Fox anchors, Sidney Powell, and Rudy Giuliani. (Opp. at 24). Mr. Lindell refers to that case—as well as subsequent suits Smartmatic filed against One America News Network and Newsmax—as Smartmatic's "weaponizing [of] the litigation process." (*Id.* (quoting Compl. ¶ 1)). According to Mr. Lindell, he took umbrage at those lawsuits and, in turn, preemptively sued Smartmatic "to stop" it from bringing similar defamation suits against him and others. (*Id.* (quoting Compl. ¶ 1); *see also* Compl. ¶¶ 36, 137 (alleging that Mr. Lindell wanted to "fight

back" against Smartmatic for the defamation suits it brought)). Indeed, Mr. Lindell had been itching to sue Smartmatic since February 2021, even though he had never interacted with it. (*See* SMT Ex. 28 at 30:3–23, 34:5–14 ("I am going after Dominion and Smartmatic, I'm going after them with a lawsuit"); SMT. Ex. 27 at 4:21–5:12). Filing a frivolous complaint to pursue a vendetta is irreconcilable with Rule 11(1)(b)(1). *See King*, 2021 WL 3771875, at *36–38 (finding Rule 11(b)(1) violation where "circumstances suggest that this lawsuit was not about vindicating rights"); *see also Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 121 (D.D.C. 2021) ("Courts are not instruments through which parties [may] engage in [] gamesmanship"); *Wis. Voters All. v. Pence*, No. 20-3791, 2021 WL 686359, at *2 (D.D.C. Feb. 19, 2021).

## II.     Smartmatic Has Requested Reasonable and Proportionate Relief

Smartmatic is not the first to defend a frivolous lawsuit predicated on disinformation about the 2020 election, but it should be the last. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (noting "the central purpose of Rule 11 is to deter baseless filings in district court"); *Westmoreland*, 770 F.2d at 1179 ("Rule 11 is specifically designed to deter groundless litigation tactics and stem needless litigation costs to court and counsel."). Mr. Lindell and his counsel filed the Complaint knowing not only that its factual contentions had been rejected by dozens of courts and every official source, but that they had led to sanctions and disciplinary proceedings. *See King*, 2021 WL 3771875, at *41–*42; *O'Rourke*, 2021 WL 3400671, at *31–*33; *Wis. Voters All.*, 2021 WL 686359, at *2; *cf. Matter of Giuliani*, 146 N.Y.S.3d 266, 268 (N.Y. App. Div. 2021). No reasonable litigant or lawyer could have reviewed those rulings and certified this complaint in good faith.

### A.     The circumstances show that serious sanctions are warranted.

Mr. Lindell and his counsel will be deterred by nothing less than serious sanctions. In *King*, the court found the following sanctions "limited to what suffices to deter repetition of the

conduct or comparable conduct by others similarly situated": (1) payment of fees and costs; (2) continuing legal education; and (3) referral to disciplinary authorities "for investigation and possible suspension or disbarment." 2021 WL 3771875, at *8, *41–*42 (quoting Fed. R. Civ. P. 11(c)(4)); *see also O'Rourke*, 2021 WL 3400671, at *32 (shifting fees and expenses in part because "sanctions are required to deter the filing of frivolous, politically motivated lawsuits such as this in the future and to compensate the [d]efendants"). Mr. Lindell and his counsel knew about *King*, *O'Rourke*, and the risk of sanctions, at the very latest, when they received Smartmatic's Rule 11 notice. Deterrence can be difficult to measure, but here, the prospect of potential discipline (which Smartmatic does not request) and fees were clearly insufficient. If anything, Mr. Lindell and his counsel were reinvigorated after seeing Smartmatic's Rule 11 motion. They responded by: sticking with the Complaint; introducing into the Opposition more disinformation; and accusing Smartmatic of "tyranny" for pushing back against it. (*See* Opp. at 25).

Mr. Lindell tries to avoid sanctions and distinguish his case from *King* (but not *O'Rourke*) by arguing that he is seeking damages, not decertification of the 2020 election. (*Id.* at 30). But the relief he requests does not give him a free pass. What matters is that Mr. Lindell pinned frivolous claims on baseless vote-rigging allegations to pursue improper purposes. Indeed, *O'Rourke* rebuffed the same argument Mr. Lindell is making: the court there issued sanctions because the plaintiffs, like Mr. Lindell, alleged RICO claims and centered them around destructive voter-fraud allegations. 2021 WL 3400671, at *3 ("While [p]laintiffs' counsel insist that the lawsuit was not intended to challenge the election or reverse the results, the effect of the allegations and relief sought would be to sow doubt over the legitimacy of the Biden presidency and the mechanisms of American democracy…."). Mr. Lindell cannot allege the same election-

rigging narrative several courts have condemned; repackage it in different, equally frivolous theories of liability; and reasonably expect to avoid Rule 11 sanctions.

Mr. Lindell also tries to distance himself from those who contested the 2020 election in prior cases. He says that those individuals "were sanctioned for a variety of reasons, none of which are relevant to this case…." (Opp. at 30). But this statement is too rich: protecting others who peddle election-fraud disinformation is literally the purpose Mr. Lindell offers *for filing this case*. (Opp. at 24 ("[Mr.] Lindell has been forthright and consistent regarding the reasons he sued Smartmatic:…to stop [it] from weaponizing the litigation process to silence political dissent and suppress evidence showing voting machines were manipulated to affect outcomes in the November 2020 General Election" (quoting Compl. ¶ 1)); *see also* Compl. ¶ 137 (alleging that Rudy Giuliani's and Sidney Powell's[14] only "alleged wrongdoing" was "[s]peaking their mind publicly, attempting to report on growing questions about the role of voting machines in 2020 election irregularities, and *utilizing the legal process* to expose such irregularities and *prevent certification* of any election results that may have resulted from a tainted process").

Respect for facts, law, and democracy should have prevented this case from being filed. As should have the precedent other district courts set in *O'Rourke* and *King.* By thumbing their noses at those decisions, Mr. Lindell and his counsel have displayed an indifference to Rule 11. Only severe sanctions can uphold Rule 11's standards and achieve its central purpose: "to deter baseless filings." *Cooter & Gell*, 496 U.S. at 393.

### B. Sanctions should include recovery of fees and a meaningful fine.

Given the circumstances surrounding this case, Smartmatic believes that the following sanctions are adequate and necessary to deter similar conduct. *First*, Mr. Lindell and his counsel

---

[14] Powell was one of the attorneys sanctioned in *King*.

should have to pay the fees and costs Smartmatic has incurred defending itself and moving for sanctions under Rule 11. Mr. Lindell does not dispute that a fee award is an appropriate sanction under Rule 11. (*See* Opp. at 27–29 (opposing only Smartmatic's request for disgorgement of Mr. Lindell's counsels' fees from this lawsuit)).

*Second*, the Court should fine Mr. Lindell's counsel an amount equivalent to the fees they have earned prosecuting this action and make it payable to the Court. In its Rule 11 brief, Smartmatic referred to this "fine" as "disgorgement." (ECF No. 118-1 at 39). While Mr. Lindell calls disgorgement "draconian," it is merely a way to measure a fine. (Opp. at 29). And he acknowledges that Rule 11 authorizes courts to imposes fines. (*See id.*); *see also* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendment (noting that "ordering a fine payable to the courts" is among the sanctions courts can impose). When appropriate, courts impose fines in conjunction with other sanctions. *See Upchurch v. O'Brien*, No. 19-CV-165-WMC, 2021 WL 3617098, at *11 (W.D. Wis. Aug. 16, 2021) (requiring counsel "to disgorge any amounts paid to him by [plaintiff] in prosecuting this lawsuit" into "the court's fund to support the costs incurred by pro bono counsel" and holding counsel and the plaintiff "jointly and severally liable" for the defendants' fees); *Markwell v. Cnty. Of Bexar*, 878 F.2d 899, 903–04 (5th Cir. 1989) (affirming fine against counsel and order "enjoining him from charging his client for time spent" on frivolous motions); *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 454, 458 (7th Cir. 2005) (affirming fine plus fee award).

## CONCLUSION

The Court may ask what sets Mr. Lindell's Complaint apart from the many cases that are dismissed under Rule 12(b), but do not implicate Rule 11. Mr. Lindell and his counsel funneled a toxic, predetermined narrative that the 2020 U.S. election was stolen into a federal pleading in defiance of every official source of election information, every rejected challenge to the election,

and several sanctions orders condemning election-related lies. Mr. Lindell's counsel also certified claims that have no reasonable basis in law or application in this case. Mr. Lindell is not legitimately aggrieved under RICO, § 1983, or § 1985. Instead, he brought this case to amplify his lies about Smartmatic's role in the 2020 election and to punish Smartmatic for defending itself against them. Deterrence should have been achieved by *King* and *O'Rourke*, but even the powerful sanctions in those cases failed to make Mr. Lindell and his counsel respect the importance of truth in federal court. Against that backdrop, Smartmatic respectfully requests that this Court award sanctions adequate to achieve Rule 11's purpose.

Dated: March 4, 2022

*/s/  J. Erik Connolly*

J. Erik Connolly
   D.C. Bar No. IL0099
   Email: econnolly@beneschlaw.com
Nicole E. Wrigley
   D.C. Bar No. IL0101
   Email: nwrigley@beneschlaw.com
Lee B. Muench (*admitted pro hac vice*)
   Illinois ARDC No. 6305846
   Email:  lmuench@beneschlaw.com

BENESCH,   FRIEDLANDER,   COPLAN   &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone:  312.212.4949

*Counsel for Defendants Smartmatic USA Corp.,*
*Smartmatic International Holding B.V., and SGO*
*Corporation Limited*