AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

US Dominion, Inc., et al.
*Plaintiff*
v.
My Pillow, Inc., et al.
*Defendant*

Civil Action No. Case No. 1:21-cv-00445-CJN

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: The University of Michigan Electrical Engineering and Computer Science School

*(Name of person to whom this subpoena is directed)*

☑ **Production: YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   Please refer to Exhibit A attached hereto.

| Place: The Residence Inn by Marriot, 120 West Huron St., Ann Arbor, Michigan 48104 | Date and Time: 04/01/2022 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/18/2022

CLERK OF COURT                                OR

_____                _____
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Michael J. Lindell , who issues or requests this subpoena, are:

Douglas A. Daniels; doug.daniels@dtlawyers.com; (713) 917-0024; 6363 Woodway Dr., Ste. 700, Houston, TX 77057

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. Case No. 1:21-cv-00445-CJN

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case 1:21-cv-00445-CJN   Document 128-1   Filed 03/18/22   Page 3 of 11

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## **EXHIBIT A**

### **INSTRUCTIONS & DEFINITIONS**

1. All information responsive to these requests which is within your knowledge, possession or control or within the knowledge, possession or control of your attorneys, agents or other representatives, as well as information you can obtain upon reasonable inquiry is to be divulged. If there is a request for all information on a given subject and you do not know all information, provide such information to the extent of your knowledge.

2. All responses must be made separately and fully. An incomplete or evasive response will be considered a failure to answer. Where necessary to give a broader scope to any of these requests, "and" includes "or" and vice versa, the past tense includes the present and vice versa, the singular includes the plural and vice versa, "any" includes "all" and vice versa, and "each" includes "every" and vice versa. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun so used, and vice-versa; the use of the masculine form of a pronoun shall also be considered to include within its meaning the feminine form of the pronoun so used, and vice-versa; and the use of any tense of any verb shall also be considered to include within its meaning all other tenses of the verb so used.

3. Each request should be construed independently and not by reference to any other request herein for purposes of limitation, unless one request specifically refers to another request.

4. If you do not answer a request based on any claim of privilege, provide a statement for each such request setting forth the following information:

    i. A short statement identifying each privilege involving the basis therefore;

    ii. The facts upon which you relied to support the claim of privilege;

    iii. A description of all documents for which such privilege is claimed, including:
    a. the type of document;
    b. a brief statement of the document's general topic matter;
    c. the date of the document;
    d. author(s) and their title(s) and position(s); and
    e. the identity of all persons to whom any contents of the documents have been disclosed.

    iv. A description of all conversations for which such privilege is claimed, including:

      a.      the date of the conversation;
      b.      a brief statement describing the general topic of the conversation;
      c.      the persons participating in the conversation; and
      d.      the identity of all persons to whom any portions of the contents of the conversation have been disclosed.

5. "Document" and "documents" is to be defined as synonymous in meaning and equal in scope to the usage of this term in the FEDERAL RULES OF CIVIL PROCEDURE and shall be used in their broadest sense and shall mean and include all written, printed, typed, electronic, recorded or graphic material of every kind and description, both originals and copies and all attachments and appendices thereto. Without limiting the foregoing, the term "document" and "documents" shall include all agreements, contracts, communications, correspondence, letters, telegrams, facsimiles, telexes, minutes, messages, memoranda, interoffice communication, e-mail, records, reports, books, summaries or other records of telephone conversations or interviews, summaries or other records of personal conversations, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records, consultants' reports, appraisals, bulletins, brochures, pamphlets, circulars, trade letters, press releases, notes, notices, marginal notations, notebooks, telephone bill or records, bills, statements, records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, vouchers, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, expense reports, microfilm, microfiche, articles, speeches, tape or disc recordings, sound recordings, video recordings, film, photographs, punch cards, programs, data compilations from which information can be obtained (including matter used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made. The terms "document" and "documents" shall include all copies of documents by whatever means made, except that where a document is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. A DRAFT OR NON-IDENTICAL COPY IS A SEPARATE DOCUMENT WITHIN THE MEANING OF THIS TERM.

6. Electronic Data Directive: Pursuant to the FEDERAL RULES OF CIVIL PROCEDURE, all electronic data responsive to the requests below shall be

provided via USB Drive, CD, or DVD in user readable format (.txt, .docx, .pdf or similar file types), or as otherwise agreed in a supplemental writing by the parties.

7. "Document" and "documents" shall mean and include all matter within the foregoing description that are in your possession, control or custody or in the possession, control or custody of any attorney for you or the existence of which you are aware and that you have access to or to which you can secure access. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

8. "Communication" shall mean and include any transmission or exchange of information in the form of facts, ideas, inquiries, or otherwise, and shall include an exchange between two or more persons, whether orally or in writing, including without limitation any conversation or discussion face-to-face or by means of letter, note, memorandum, telephone, telegraph, telex, telecopier, cable, e-mail, text, or any mobile application such as Signal or WhatsApp or some other electronic or other medium, and whether by chance or prearranged, formal or informal.

9. "Referring," "relating to," or "concerning" shall mean to concern, describe, explain, reference, contain or comment upon the subject matter referred to in the request and, in that regard, each request shall be interpreted broadly so as to promote the full disclosure of information.

10. "Dominion" shall mean US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation and all successors, predecessors, assigns, agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, any other person acting in concert with the Dominion or under Dominion's control, whether directly or indirectly, including any attorney, and any other person acting on behalf of Dominion.

11. "Smartmatic" shall mean Smartmatic USA Corporation, Smartmatic International Holdings B.V., SGO Corporation Limits, and all successors, predecessors, assigns, agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, any other person acting in concert with the Smartmatic or under Smartmatic's control, whether directly or indirectly, including any attorney, and any other person acting on behalf of Smartmatic.

12. "Dominion Voting Machines" shall mean all hardware and software used by Dominion in furtherance of their election related business with states and local governments wherein Dominion provides tools to build the election, voting and tabulating, the tallying and reporting of results, and auditing of elections which includes but is not limited to Democracy Suite Election Management System,

3

IMAGECAST X, IMAGECAST Precinct, IMAGECAST Central, IMAGECAST Evolution, and all legacy Dominion voting machines and software used in any election from 2010 to the present.

13. "Smartmatic Voting Machines" shall mean all hardware and software used by Smartmatic in furtherance of its election related business with states and local governments wherein Smartmatic provides tools to build the election, voting and tabulating, the tallying and reporting of results, and auding of elections.

14. "Voting Machines" shall mean all hardware and software used by any company in furtherance of its election related business with states and local governments wherein said company provides tools to build elections, voting and tabulating, the tallying and reporting of results, and auding of elections.

15. "Halderman" shall mean Dr. J. Alex Halderman and any member of Halderman's staff at the University of Michigan, including but not limited to research assistants, assistants, aids, and student aids, successors, predecessors, assigns, agents, representatives, employees, partners, affiliates, or any other person acting in concert with Halderman or under Halderman's control, whether directly or indirectly, including any attorney, and any other person acting on behalf of Halderman.

16. "U of M" shall mean the University of Michigan and all successors, predecessors, assigns, agents, representatives, officers, directors, employees, partners, professors, student aids, research aids, assistants, subsidiaries, affiliates, any other person acting in concert with the U of M or under U of M's control, whether directly or indirectly, including any attorney, and any other person acting on behalf of U of M.

17. "*Curling v. Raffensperger*" shall mean *Curling, et al. v. Raffensperger*, Civil Action No. 1:17-cv-2989-AT, currently pending in the United States District Court for the Northern District of Georgia.

18. "Malware" shall mean any software or program designed to interfere with the operation of other software, programs, and/or machines. "Malware" specifically includes, but is not limited to, any computer virus.

19. "Infected Memory Cards" shall mean any memory card containing Malware.

20. "Hacking" shall mean any action or attempted action intended to avoid, bypass, remove, deactivate, and/or impair a technological security measure and shall expressly include, but not be limited to, all acts prohibited by 18 U.S.C §§ 1030(a), 2701(a), and 2511(1).

4

## REQUESTS FOR PRODUCTION

1. Documents and Communications concerning any analysis, specifically including security analysis, by Halderman related to Dominion Voting Machines.

2. Documents and Communications concerning any analysis, specifically including security analysis, by Halderman related to Smartmatic Voting Machines.

3. Documents and Communications concerning any analysis, specifically including security analysis, by Halderman related to Voting Machines.

4. Documents and Communications concerning any analysis by Halderman or U of M regarding the potential or actual introduction of Malware into Dominion Voting Machines.

5. Documents and Communications concerning any analysis by Halderman or U of M regarding the potential or actual introduction of Malware into Smartmatic Voting Machines.

6. Documents and Communications concerning any analysis by Halderman or U of M regarding the potential or actual introduction of Malware into Voting Machines.

7. Documents and Communications concerning any studies or analysis by Halderman or U of M regarding the insertion of Infected Memory Cards into Dominion Voting Machines.

8. Documents and Communications concerning any studies or analysis by Halderman or U of M regarding the insertion of Infected Memory Cards into Smartmatic Voting Machines.

9. Documents and Communications concerning any studies or analysis by Halderman or U of M regarding the insertion of Infected Memory Cards into Voting Machines.

10. Documents and Communications concerning any studies, analysis, or conclusions by Halderman or U of M regarding Infected Memory Cards and/or Malware changing the actual votes cast for a candidate.

11. Documents and Communications concerning the discussion and demonstration made by Halderman in the Courtroom of Judge Amy Totenberg described in *Curling v. Raffensperger*, 334 F. Supp. 1303, 1308 (N. D. Ga. 2018):

    > [A]t the hearing, Dr. Alex Halderman, a Professor of Computer Science and Engineering and Director of the Center for Computer Security and Society at

      the University of Michigan in Ann Arbor, discussed and demonstrated how a malware virus can be introduced into the DRE machine by insertion of an infected memory card (or by other sources) and alter the votes cast without detection.5Link to the text of the note Dr. Halderman gave a live demonstration in Court with a Diebold DRE using the same type of equipment and software as that used in Georgia. The demonstration showed that although the same total number of votes were cast, the contaminated memory card's malware changed the actual votes cast between candidates.

12. Documents concerning the Affidavit of Halderman signed and filed on August 7, 2018, and referenced in the opinion of Judge Totenberg *Curling v. Raffensperger* 334 F. Supp. 1303, 1308 (N. D. Ga. 2018).

13. Documents and Communications concerning Halderman's analysis, reports, or studies conducted for *Curling v. Raffensperger*.

14. Documents and Communications concerning Halderman's analysis, studies, or conclusions regarding viruses and and/or Malware which can spread to Dominion Voting Machines, Smartmatic Voting Machines, and/or Voting Machines.

15. Documents and Communications concerning Halderman's analysis, studies, or conclusions regarding the logic and accuracy and parallel testing auditing processes used by the State of Georgia to test ballot counting.

16. Documents and Communications concerning Halderman's studies, analysis, and/or recommendations relating to the use of physical ballots.

17. Documents and Communications concerning Halderman's analysis, studies, or conclusions regarding the software used for the Dominion Voting Machines used in Georgia.

18. Documents and Communications concerning any analysis, studies, or conclusions regarding the reprogrammable software used in Dominion Voting Machines, Smartmatic Voting Machines, and/or Voting Machines.

19. Documents and Communications concerning Halderman's analysis, studies, or conclusions that any of the Dominion Voting Machines used in Georgia between 2016 and 2021 were or may have been out of date.

20. Documents and Communications concerning Halderman's analysis, studies, or conclusions that any of the Dominion Voting Machines used in Georgia between 2016 and 2021 did not have or may not have had available security patches.

21. Communications between Halderman and U of M regarding Dominion Voting Machines.

22. Communications between Halderman and U of M regarding Smartmatic Voting Machines.

23. Documents and Communications between Halderman and/or U of M with Dominion.

24. Documents and Communications concerning the Declaration of Halderman signed on July 12, 2021 and filed on July 13, 2021 in *Curling v Raffensperger*.

25. Documents and Communications concerning the "vulnerabilities in [Halderman's] report," as described in Halderman's Declaration signed on July 12, 2021 and filed on July 13, 2021 in *Curling v. Raffensperger*.

26. The "report" identified and described in Paragraphs 7 and 8 of Halderman's Declaration signed on July 12, 2021 and filed on July 13, 2021 in *Curling v. Raffensperger*.

27. Documents and Communications related to Halderman's efforts to communicate with Dominion or its counsel, including but not limited to communications "since January", concerning the "report" identified and described in Paragraphs 7 and 8 of Halderman's Declaration signed on July 12, 2021 and filed on July 13, 2021 in *Curling v. Raffensperger.*

28. Documents and Communications concerning the design or capability of Dominion Voting Machines, Smartmatic Voting Machines, and/or Voting Machines to be viewed or manipulated through the Internet or other wireless connection.

29. Documents and Communications concerning any analysis, studies, or conclusions by Halderman or by U of M regarding Dominion Voting Machines since 2012.

30. Documents and Communications concerning any analysis, studies, or conclusions by Halderman or by U of M regarding Smartmatic Voting Machines since 2012.

31. Documents and Communications concerning any communication between U of M and Dominion from 2016 to the present.

32. Documents and Communications concerning any communication between Halderman and Dominion from 2016 to the present.

33. A list of all persons, whether employed or not, conducting, providing, or assisting any research regarding Voting Machines and/or electronic voting technology within U of M's Electrical Engineering and Computer Science from 2016 to the present.

34. The forensic image of any Dominion Voting Machine, Smartmatic Voting Machines, and/or Voting Machines in your possession, custody or control.

35. Documents and Communications between Halderman and/or U of M and the Cybersecurity and Infrastructure Security Agency ("CISA") from 2016 to the present.

36. Documents and Communications between Halderman and/or U of M and the Office of the Georgia Secretary of State, including any employee, agent, or person acting on its behalf.

37. Documents and Communications between Halderman and/or U of M and any state or local governmental official charged with the responsibility of safety and/or security for Dominion Voting Machines from 2016 to the present.

38. Any source code from any Voting Machine in the possession or Halderman or U of M.

39. Election data used by Halderman in evaluating the safety, security, and/or vulnerability of Dominion Voting Machines, Smartmatic Voting Machines, and/or Voting Machines from 2016 to the present.

40. All video and audio recordings, depictions, or demonstrations of Hacking or other manipulation of Dominion Voting Machines, Smartmatic Voting Machines, and/or Voting Machines.