**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., AND DOMINION VOTING SYSTEMS CORPORATION,**<br>　　*Plaintiffs/Counter-Defendants*,<br><br>v.<br><br>**MY PILLOW, INC.**<br>　　*Defendant/Counter-Plaintiff*,<br>**AND**<br>**MICHAEL J. LINDELL,**<br>　　*Defendant/Counter-Plaintiff, Third-Party Plaintiff*,<br><br>v.<br><br>**SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, AND HAMILTON PLACE STRATEGIES, LLC,**<br>　　*Third-Party Defendants*. | **Case No. 1:21-cv-00445-CJN** |

**THIRD-PARTY PLAINTIFF MICHAEL J. LINDELL'S
SUPPLEMENTAL BRIEF REGARDING RULE 11 SANCTIONS
<u>PURSUANT TO THE COURT'S MAY 19, 2022 ORDER</u>**

# I.
# **INTRODUCTION**

Sanctions against Defendant, Counter-Plaintiff, and Third-Party Plaintiff Michael J. Lindell and his lawyers Douglas A. Daniels and Heath A. Novosad (collectively, "Lindell") are unwarranted and unjust. Zealous advocacy is not frivolity. Courts grant motions to dismiss daily across the country without saddling litigants and attorneys with paying fees to the prevailing party. This case is no different from those. Vigorous debate and the justifiable use of existing laws should not be met with the threat of sanctions, or our system of advocacy will be chilled forever. For sure, some cases are more difficult than others. It does not mean they are sanctionable.

Smartmatic's[1] requested sanctions are overreaching. Smartmatic seeks more for its sanctions motion than it incurred for its first motion to dismiss—a full 40% of the total sanctions requested. Supplemental Rule 11 Brief Pursuant to the Court's May 19, 2022 Order ("Smartmatic Brief") at 9–10 (Dkt. No. 137). Smartmatic asks for almost $20,000 for an *unopposed* motion to stay discovery. Smartmatic asks for more than $12,000 for "general" case work that it likely will utilize in its *affirmative* lawsuit against Lindell. Smartmatic asks the Court for almost $27,000 for its fee submission. Smartmatic is shameless.

Smartmatic should not be awarded monetary sanctions, and the Court should not issue non-monetary sanctions against Lindell, Daniels, or Novosad. However, consistent with the Court's Memorandum Opinion and accompanying Order (the "Order") (Dkt. No. 136), Lindell submits this supplemental brief to address the issues ordered by the Court. Should the Court award sanctions to Smartmatic, they should be limited to no more than the $56,368.50 Smartmatic

---

[1] "Smartmatic" refers collectively to Third-Party Defendants Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited.

1

allegedly incurred defending against, and seeking sanctions for, Lindell's § 1985(3) Support and Advocacy claim.

## II.
## ARGUMENT

A. **Rule 11 Sanctions Are An Extraordinary Remedy.**

The Memorandum Opinion (Dkt. No. 135) pertaining to sanctions ignores Lindell's extensive briefing on complex legal issues, the substantial evidence filed in this matter, and is not in the spirit of Rule 11.[2] *Burns v. George Basilikas Tr.*, 599 F.3d 673, 677 (D.C. Cir. 2010) ("[C]ounsel's reliance on a contrary view would be frivolous for purposes of Rule 11 sanctions *only if* it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified.") (emphasis added).

The law in the District of Columbia is clear, "[t]he imposition of Rule 11 sanctions is not something the court takes lightly; Rule 11 sanctions are an *extreme punishment* for filing pleadings that frustrate judicial proceedings." *Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005) (emphasis added) (citing *Trout v. Garrett*, 780 F. Supp. 1396, 1428 (D.D.C. 1991)); *Doe I v. Exxon Mobil Corp.*, No. 1:01-CV-1357-RCL, 2021 WL 1910892, at *6 (D.D.C. May 12, 2021); *Nat'l Cas. Ins. Co. v. Solomon*, 502 F. Supp. 3d 401, 410 (D.D.C. 2020); *In re Carvalho*, 598 B.R. 356, 363 (D.D.C. 2019); *Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 23 (D.D.C. 2019); *Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1, 9 (D.D.C. 2018); *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017); *Pinson v. U.S. Dep't of Justice*, 273 F. Supp. 3d 1, 13 (D.D.C. 2017); *Intelsat USA Sales LLC v. Juch–Tech, Inc.*, 305 F.R.D. 3, 6 (D.D.C. 2014); *Landrith v. Roberts*, 999 F. Supp. 2d 8, 23 (D.D.C. 2013); *Henok v. Chase Home Fin., LLC*, 926

---

[2] *See* Lindell's Orig. Answer, Counterclaims, and Third-Party Compl. (Dkt. No. 87), Memo. in Opposition to Mot. to Dismiss (Dkt. No. 104), and Res. to Mot. for Sanctions (Dkt. No. 119) incorporated herein by reference.

F. Supp. 2d 100, 104 (D.D.C. 2013); *Brown v. F.B.I.*, 873 F. Supp. 2d 388, 408 (D.D.C. 2012); *Green v. AFL-CIO*, 657 F. Supp. 2d 161, 166 (D.D.C. 2009); *Taylor v. Blakey*, No. CIV.A. 03-0173 (RMU), 2006 WL 279103, at *6 (D.D.C. Feb. 6, 2006). Sanctions are a blunt instrument, and "the *blunt instrument of sanctions against individual attorneys ought to be applied with restraint.*" *Green*, 657 F. Supp. 2d at 166 (emphasis added) (citing *Trout*, 780 F. Supp. at 1428); *see also Wasserman v. Rodacker*, No. CIV.A.06 1005 RWR, 2007 WL 2071649, at *7 (D.D.C. July 18, 2007); *Naegele*, 355 F. Supp. 2d at 144.

"A finding that a claim is merely frivolous is not sufficient; rather, *the claim must be 'so frivolous that it was patently clear that it had absolutely no chance of success under the existing precedents and [that] no reasonable argument [could] be advanced to extend, modify or reverse the law as it stands*.'" *LeFande v. Mische-Hoeges*, No. 10-CV-1857 (DLF/GMH), 2018 WL 6620129, at *8 (D.D.C. Dec. 10, 2018) (emphasis added) (quoting *Indep. Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 16 (D.D.C. 2005). The D.C. Circuit is also clear that "Rule 11 is violated where '[t]he case offered no hope whatsoever of success, and plaintiffs' attorneys surely knew it.'" *See id.* (quoting *Saltany v. Reagan*, 886 F.2d 438, 440 (D.C. Cir. 1989)). And a "party's failure to sustain his or her burden of proof on the motion 'does not *ipso facto* violate the standards of Rule 11.'" *Naegele*, 355 F. Supp. 2d at 144 (quoting *Bantefa v. Tyson*, No. CIV. A. 84–3937, 1987 WL 8710, at *1 (D.D.C. Feb. 26, 1987)).

Smartmatic cites cases that are inapposite and do not support an award of sanctions here. For example, in *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993), the plaintiff admitted its claims were not ripe and that it had suffered no injury. Lindell, however, has steadfastly maintained that Smartmatic injured him and that he intends to pursue those claims. Lindell has not tried to "hide-the-ball" with either his factual assertions or legal theories, obviating

3

any alleged application of *Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 646 (7th Cir. 1992); *Brown v. Fed'n of State Med. Boards*, 830 F.2d 1429, 1437 (7th Cir. 1987); *In re TCI, Ltd.*, 769 F.2d 441 (7th Cir. 1985); or *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). Also, unlike this case, the court in *Hickey v. Scott*, 738 F. Supp. 2d 55, 72–73 (D.D.C. 2010), sanctioned the plaintiff for attempting to maintain claims *after discovery revealed no evidence in support of those claims*. Lindell, however, was never offered the chance to conduct discovery, yet he still provided *more than 130 evidentiary citations* backstopping his claims. And *Hanson v. Greenspan*, No. CIV. A. 91-1599(GHR), 1991 WL 274267, at *4 (D.D.C. Dec. 6, 1991), has no application where, as here, a plaintiff offers 130 evidentiary citations and over 100 caselaw citations, evidencing an extensive investigation into the claims asserted.

There is no dispute that, due to their extreme nature, courts in the District of Columbia do not favor sanctions. And not one of the cases cited by Smartmatic stands for the proposition that Lindell's conduct rises to the level necessary to inflict such a blunt and extreme punishment.

**B.     Rule 11 Sanctions Are Unwarranted Because Lindell Fully Complied With Rule 11.[3]**

Lindell and his counsel fully complied with Rule 11 by filing an Original Third-Party Complaint against Smartmatic (the "Complaint") (Dkt. No. 87) for a proper purpose (protecting Lindell's First Amendment right to free speech) warranted by existing law (or at least a non-frivolous argument to extend existing law) with more than 130 citations to evidence supporting Lindell's claims. The Court should have denied Smartmatic's request for sanctions.

---

[3] Lindell's Memorandum in Opposition to Smartmatic's Motion for Sanctions ("Sanctions Opposition") (Dkt. No. 119) sets forth in detail the reasons that sanctions are inappropriate in this case. That brief is incorporated by reference as if fully set forth herein.

4

1.      **Lindell's Complaint Is Factually Supported.**

Between his Complaint and his Response to Smartmatic's Motion to Dismiss ("Dismissal Opposition") (Dkt. No. 104), Lindell cited more than 130 pieces of evidence—including expert testimony—in support of his factual allegations. *See* Sanctions Opposition, at 6–15. Despite being under no obligation to provide evidence at the pleading stage, Lindell offered extensive evidentiary support for his free speech claims. Lindell's Sanctions Opposition also directed the Court to additional evidence supporting his claims and noted calls by legislators in two different states to decertify the 2020 General Election results. *See id.*, at 16–17. That Smartmatic disagreed with Lindell's evidence or offered competing evidence did not make Lindell's Complaint sanctionable. Lindell provided evidentiary support for his contentions as required by Rule 11(b)(3).

2.      **Lindell's Legal Theories Are Sound.**

Lindell's claims are warranted by existing law or, at the very least, supported by a nonfrivolous argument for extending existing law to stop Smartmatic's use of Lawfare to silence critics with which it disagrees. Every day, attorneys use statutes and caselaw in creative and justifiable ways to advance the rights of their clients. There is nothing untoward about such practice, and it is how American jurisprudence evolves.

Lindell did not fail to allege the elements of each cause of action. While the Court may not agree with the theories advanced by Lindell and his counsel, that does not equate to sanctionable conduct, nor is it the standard of review for a motion to dismiss. *Gonzalez Ramos v. ADR Vantage, Inc.*, No. 21-CV-00592 (APM), 2022 WL 834095, at *1 (D.D.C. Mar. 21, 2022) ("But the fact that claims in a complaint are not ultimately meritorious does not mean they are frivolous or automatically sanctionable.").

Smartmatic's arguments in support of its motion for sanctions based on Fed. R. Civ. P. 11(b)(2) merely repackaged the arguments in its Motion to Dismiss. *See* Mot. to Dismiss (Dkt. No. 94). Lindell responded in detail to that motion, citing more than 113 cases along with numerous statutes, rules, and other materials. *See* Dismissal Opposition, at iv–xii. Lindell's claims are neither futile nor frivolous. Lindell incorporates by reference as if fully set forth herein his Dismissal Opposition and Sanctions Opposition and will not repeat the arguments made therein, except to briefly address his claims for violation of § 1985(3), which is the specific claim the Court found had fallen "on the frivolous side of the line." Mem. Opp., at 30.

Lindell sufficiently pled a valid, non-frivolous cause of action for violations of 42 U.S.C. § 1985(3) against Smartmatic. *See* Dismissal Opposition, at 3–14, 36–45; Sanctions Opposition, at 20–22. Smartmatic's primary argument against Lindell's § 1985(3) claim is the position that Smartmatic is not a state actor. While the Court doubted that Smartmatic's litigation-related activity was state action, the Court did find that it was "at least conceivable that Dominion and Smartmatic may qualify as state actors for some purposes …." Mem. Op., at 22–23. Lindell's § 1985(3) claim, like the rest of his claims, is not sanctionable under Rule 11(b)(2).

### 3. Lindell Filed Suit To Protect His Freedom Of Speech.

Lindell has been forthright and consistent regarding the reasons he sued Smartmatic:

> Mike Lindell brings this lawsuit to stop electronic voting machine companies and their co-conspirators from weaponizing the litigation process to silence political dissent and suppress evidence showing voting machines were manipulated to affect outcomes in the November 2020 General Election.

*See* Complaint, at ¶ 1.

> Smartmatic claims Lindell's lawsuit does not seek to "'safeguard voting rights' and strengthen our democracy," Motion at 13, yet that is the very purpose of this lawsuit—to safeguard voting rights and strengthen democracy from those who seek to weaken it by conspiring to silence speech, dissent, and opposition to the use of

6

electronic voting machines in the 2020 General Election and the machines' vulnerability to cyber-attacks and election tampering. Comp[laint] ¶ 1. Dismissal Opposition, at 39–40.

There is absolutely nothing untoward about these reasons, and certainly nothing sanctionable. FED. R. CIV. P. 11(b)(1).  Smartmatic recognizes that "[t]he judicial system would serve little purpose if parties who believe they are aggrieved cannot file a lawsuit to address grievances." *See* Mot. to Dismiss, at 3.

Smartmatic's Lawfare campaign, which it shares with Dominion, HPS, and others, is working.  Lindell's local counsel in Minnesota was forced out of his law firm after filing Lindell's original complaint against Smartmatic in Minnesota.  Almost immediately after Smartmatic sued FoxNews for defamation, the network stopped inviting Lindell onto its airwaves.  The day the Court issued its Memorandum Opinion, a lawyer in Alabama who was going to serve as local counsel for Lindell changed his mind and refused to represent Lindell.  Right-leaning news network OAN has been dropped by DirecTV.

Put simply, the courts are being used to wage war on public figures (and their attorneys) who dare question the accepted narrative of the 2020 General Election.  Smartmatic's motivations are made plain by the fact that it spent more money seeking Rule 11 sanctions ($219,578) than it did seeking to dismiss Lindell's first complaint ($169,327).  Smartmatic Brief, at 8–9.  Smartmatic wants Lindell punished to scare others similarly situated into silence.  Such intentions should not be rewarded, but fiercely guarded against.

Lindell saw the threat to American Democracy and judicial legitimacy inherent in the use of the courts in Smartmatic's actions to silence conservative voices, including his own.  But unlike many in Lindell's shoes, he had the fortitude to do something about it.  So, Lindell fought fire with

7

fire and filed suit against Smartmatic for its attempts to silence him. Nothing about Lindell's motivations violate Rule 11(b)(1).

### C. The Sanctions Sought By Smartmatic Are Overreaching And Unreasonable.

The Smartmatic Brief feigns reasonableness and "discounts" in asking the Court to award more than $546,000 in fees and expenses. It is conscience-shocking that Smartmatic had to spend $490,000 to defend itself from and obtain sanctions against a Complaint that was allegedly so frivolous as to warrant the imposition of Rule 11 sanctions. While that weighs against the imposition of any sanctions (for if Lindell's Complaint was so frivolous as to warrant sanctions, it should have been relatively simple to rebut), it also shows just how overreaching and unwarranted Smartmatic's requested sanctions are. In actuality, Smartmatic asks for fees spent responding to claims the Court did not deem groundless and for inflated amounts.

#### 1. Smartmatic's Requested Sanctions Are Unreasonable.

<u>Motion to Stay</u>. Smartmatic asks the Court to award $19,262 for what it calls a "Motion to Stay Discovery." Smartmatic Brief, at 9. What Smartmatic fails to admit is that the motion to stay was *unopposed*. *See* Smartmatic's Unopposed Motion to Stay Discovery on Third-Party Plaintiff Mike Lindell's Claims Against Smartmatic (Dkt. No. 125). Spending nearly $20,000 for an unopposed motion to stay discovery is unjustifiable.

<u>"Second" Motion to Dismiss</u>. Smartmatic asks for an additional $98,501 for its second motion to dismiss, though the second motion only required Smartmatic to address two new causes of action. Smartmatic Brief, at 8–9. As discussed more fully below, any award of sanctions should be limited to responding to Lindell's § 1985(3) claim, which Smartmatic's second motion to dismiss only added one additional paragraph and one sentence to its arguments against. *Compare* First Smartmatic Defendants' Memorandum in Support of Their Motion to Dismiss, at 9–18 (Dkt. No. 81–1) *with* Second Smartmatic Defendants' Memorandum in Support of Their Motion to

8

Dismiss, at 12–20 (Dkt. No. 94–1). And neither that paragraph nor sentence included any citation to new case law for the Court to consider. *See id*. The only substantive changes between the first and second motion to dismiss were arguments regarding Lindell's claims for violations of § 1983 and mail fraud and witness tampering under RICO. Because Smartmatic's second motion to dismiss contained virtually no new analysis with regard to Lindell's § 1985(3) claim, Smartmatic's request for $98,501 related to its second motion to dismiss is unreasonable and should not be awarded.

Motion for Sanctions. The fact that Smartmatic expended more effort and funds seeking to obtain sanctions than to defend itself from Lindell's Complaint underscores the political nature of Smartmatic's actions. While the combined fees related to the two motions to dismiss are more than the motion for sanctions alone, as discussed above, the fees incurred for the "second" motion to dismiss are unreasonable. Additionally, Smartmatic's Rule 11(b)(2) arguments for sanctions are just a rehash of its legal arguments from its motions to dismiss. It is unreasonable for Smartmatic to have incurred more than $245,000 seeking sanctions (the total of its Sanctions Motion and the Smartmatic Memorandum). Smartmatic Brief, at 8–9.

General Fees. On January 18, 2022, Smartmatic sued Lindell for defamation in Minnesota in cause number 0:22-cv-00098-WMW-JFD. Many of the entries for general case work occurred shortly before or after this filing, and some of that work can be attributed to Smartmatic's affirmative claims against Lindell. *See, e.g.*, Smartmatic Brief, at Exhibit 6, page 34 (review of subpoenas to J. Alex Halderman).

### 2.  Any Sanctions Should Be Limited To Lindell's Section 1985(3) Claim.

If the Court is still inclined to award sanctions to Smartmatic, the award should be limited to fees Smartmatic incurred opposing Lindell's § 1985(3) claim, which is the only claim the Court specifically found to have fallen "on the frivolous side of the line." Mem. Opp., at 30.

Attached as Exhibit A hereto is a copy of Exhibit 6 to the Smartmatic Brief. In Exhibit A, entries that mention the "Support and Advocacy" clause and/or "1985" have been highlighted. Attached as Exhibit B hereto is a summary of those entries. As Exhibits A and B show, Smartmatic incurred no more than $56,368.50 for 107.2 hours of work in defense of and in the pursuit of sanctions related to Lindell's § 1985(3) claims.[4]

### III.
### CONCLUSION

Lindell and his counsel pled good faith claims supported by extensive evidence to vindicate Lindell's First Amendment right to the freedom of speech. Nothing in the Complaint or actions of Lindell or his counsel violate Rule 11. Lindell's attorneys Daniels and Novosad both graduated from the University of Texas School of Law, were both elected as partners in an AmLaw 150 law firm, and in their combined 45 years of practice in federal and state courts throughout the United States and in tribunals around the world have never been threatened with personal sanctions, let alone actually had sanctions imposed. If the Court, however, still issues sanctions to Smartmatic, the award should be limited to no more than the $56,368.50 allegedly incurred related to Lindell's § 1985(3) Support and Advocacy claim.

---

[4] Five of the entries include time spent on other matters. Lindell is unable to precisely determine how much time was spent on § 1985(3) for these entries. A pro-rata reduction for time not spent on § 1985(3) claims for those entries would reduce the total from $56,368.50 to $44,209.50.

10

Dated: June 3, 2022

Respectfully submitted,

*/s/ Douglas A. Daniels*
Douglas A. Daniels
D.C. Bar No. TX0205
Heath A. Novosad
D.C. Bar No. TX0207
DANIELS & TREDENNICK PLLC
6363 Woodway Dr., Suite 700
Houston, TX 77057-1759
(713) 917-0024 Telephone
(713) 917-0026 Facsimile
Email: doug.daniels@dtlawyers.com
Email: heath.novosad@dtlawyers.com

*Counsel for Defendant Michael J. Lindell*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon all parties of record through the Court's CM ECF system on June 3, 2022.

*/s/ Douglas A. Daniels*
Douglas A. Daniels