UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>   *Plaintiffs/Counter-Defendants*,<br><br>   v.<br><br>MY PILLOW, INC., and MICHAEL J. LINDELL,<br><br>   *Defendants/Counter and Third- Party Plaintiffs*,<br><br>   v.<br><br>SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, AND HAMILTON PLACE STRATEGIES, LLC,<br><br>   *Third-Party Defendants.* | Civil Case No. 1:21-cv-00445 (CJN) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING THIRD PARTY SUBPOENAS**

Plaintiff U.S. Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation ("Dominion") submit this memorandum in support of their motion seeking a protective order under Rule 26 of the Federal Rules of Civil Procedure in response to certain third party subpoenas issued by Defendants Michael J. Lindell and MyPillow, Inc. (collectively "Defendants").

Through these subpoenas, Defendants seek to obtain "forensic copies" and "forensic images" of various materials that are confidential and proprietary to Dominion. Defendants first

1

sought these types of materials from Dominion through requests for production, and Dominion objected on the basis that the materials are irrelevant to the claims and defenses in this litigation, confidential and proprietary, and that there is currently no protective order in place that would prohibit Defendants from publicly sharing Dominion's confidential information—something Defendant Lindell has repeatedly and publicly promised to do. Rather than seek a ruling from this Court on whether the requested materials are discoverable and, if so, the appropriate protocols for producing same, Defendants instead served third party subpoenas on Dominion's customers, asking dozens of nonparties to produce the same type of confidential and proprietary materials to which Dominion has already objected. Good cause exists for the Court to enter a protective order prohibiting Defendants from using third party subpoenas to pursue Dominion's confidential and proprietary information.

## BACKGROUND

Dominion brought this lawsuit in February 2021 after Lindell and his company, MyPillow, made demonstrably false statements that Dominion stole the 2020 Election. Lindell falsely claimed, for example, that Dominion voting machines were "built to steal elections," that President Trump received so many votes that he "broke the algorithm" that had been programmed to give "1.3 to Biden and 0.7 to the [P]resident," and that Lindell had evidence—"100 % proof"—that Dominion committed voter fraud. *See, e.g.*, Compl. ¶¶ 165 (b) (k) (p) (u) (v) (w). Lindell continued making such defamatory statements even after receiving retraction letters from Dominion putting him on notice of publicly available information and evidence disproving his lies. In fact, Lindell doubled down and dared Dominion to sue him, claiming his so-called "evidence" would then get out even sooner. Compl. ¶¶ 101, 160, 161, 165(u).

Defendants moved to dismiss Dominion's complaint, and after the Court denied their motions to dismiss, Defendants moved to certify two questions for interlocutory appeal. At the same time, Defendants noticed an appeal from the Court's order to the United States Court of Appeals for the District of Columbia Circuit. The Court of Appeals dismissed Defendants' appeal for lack of jurisdiction, and this Court denied Defendants' motion for certification to the D.C. Circuit. On June 17, 2022, Lindell filed a petition for writ of certiorari on this Court's denial of his motion to dismiss, which remains pending. *See MyPillow, Inc. v. US Dominion, Inc. et al*, No. 21-1580.

While their appeals to the D.C. Circuit were pending, Defendants asserted a slew of counterclaims against Dominion for (1) abuse of process, (2) defamation, (3) RICO violations, (4) violations of the Support or Advocacy Clause, (5) Section 1983 claim for First Amendment retaliation, (6) Section 1983 claim for equal protection violation, (7) Section 1983 claim for view point discrimination, (8) Section 1983 claim for violation of substantive due process, (9) tortious interference with prospective economic advantage, and (10) civil conspiracy. The Court dismissed all of Defendants' counterclaims.

In the meantime, the Court ordered that Dominion's suit against Lindell and MyPillow be consolidated for discovery purposes with two related lawsuits that Dominion filed against Rudy Giuliani, Sidney Powell, and Defending the Republic. Discovery is underway in the three consolidated cases. But the parties have been unable to reach agreement on a protective order, and there is currently no protective order in place, as the Court has taken the matter under consideration. One of the contested issues with respect to a protective order is whether and the extent to which documents and information gathered through discovery should be treated as confidential. Dominion has advocated that all documents and information be treated as

confidential, given the confidential and proprietary nature of the voting systems and software at issue and Lindell's repeated promises that he will obtain Dominion's voting machines to put them on public display; the Powell and Lindell defendants disagree with Dominion's proposal that all documents and information be treated as confidential; and Giuliani has not taken a position.

On September 1, 2022, MyPillow and Lindell began issuing subpoenas duces tecum[1] (the "Subpoenas") to dozens of Dominion's customers—local elections officials in various states across the country. As of the filing of this motion, thirty-nine (39) Dominion customers[2] (the "Subpoenaed Customers") in sixteen (16) jurisdictions have received subpoenas seeking production of a wide range of election-related materials and information, some of which is confidential and proprietary to Dominion and classified by the Election Assistance Commission (EAC) as critical election infrastructure.

The Subpoenas broadly seek: forensic images of various drives attached to Dominion voting equipment used during the November 2020 election; forensic images of slog.txt and .dvd files generated from tabulators and ballot marking devices; forensic images of all election records related to the November 2020 election subject to 22 U.S.C. § 20701; network diagrams, credentials, and network logs from electronic election equipment; the identity of certain election personnel; copies of any reports, documents, and spreadsheets made in relation to the November

---

[1] The notices and third-party subpoenas are attached as Exhibit 1.
[2] The Subpoenaed Parties are Montrose County Clerk, Weld County Clerk and Recorder, Pueblo County Clerk and Recorder, El Paso County Clerk, St. Lucie County Supervisor of Elections, Monroe County Supervisor of Elections, Houston County Board of Elections, Peach County Board of Elections & Registration, Burke County Board of Elections & Registration, Fulton County Department of Registration and Elections, Forsyth County Voter Registrations and Elections Department, Fayette County Elections & Voter Registration Department, Saginaw County Clerk, Wayne County Clerk, Kent County Clerk, Calhoun County Clerk, Berrien County Clerk, Sherburne County Auditor/Treasurer, Dakota County Voting & Elections Administration Center, Scott County Elections Department, Crow Wing County Elections & Voting, Washoe County Registrar of Voters, Clark County Elections Department, San Juan County Clerk, Otero County Clerk, Valencia County Clerk, Pike County Clerk, Luzerne County Bureau of Elections, Erie County Elections Department, Hamilton County Election Commission, Williamson County Administrator of Elections, Racine County Clerk, Ozaukee County Clerk, Winnebago County Clerk, Walworth County Clerk, Fond du Lac County, Green County Clerk, Grant County Clerk, and Arizona Secretary of State.

2020 election; documents related to any indication of any intrusion attempt into the election systems; copies of cellular bills and connections supporting ballot scanners/devices; copies of all contracts with suppliers of any electronic election system equipment, devices, software, or support services; and copies of all contracts related to network security, network monitoring, or cybersecurity concerning all or any part of the customer's electronic election system.

Many of the Subpoenaed Customers have served written objections to the Subpoenas[3], noting that the overly broad requests unduly burden their offices as they are preparing for mid-term elections and that the Subpoenas ask them to be produce highly sensitive election data and materials, as well as software and information that is confidential and proprietary to Dominion.

## APPLICABLE LAW

Rule 26 generally permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportionate to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). But even relevant information may not be discoverable if it is not proportionate to the needs of the case. "The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court's protective order may "[require] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

---

[3] Some of the subpoenaed parties have also indicated that they will move to quash the subpoenas.

Rule 26's limitations on the scope of discovery also apply to subpoenas issued to nonparties under Rule 45. *See Coleman v. District of Columbia*, 275 F.R.D. 33, 36–37 (D.D.C. 2011) ("[I]t is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure"*)*. And because nonparties are "'strangers to the litigation" who have "no dog in [the] fight," the standard of review for a nonparty subpoena is higher than that used to assess discovery requests to litigants. *Gilmore v. Jones*, 339 F.R.D. 111, 119–20 (W.D. Va. 2021) (citations omitted).

"A party can . . . move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 2:04-CV-01199-DAE, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007) (citing *Auto–Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C.2005) (deeming a party's motion to quash subpoenas issued to non-parties as a motion for protective order under Rule 26(c)). The party requesting a protective order bears the burden of showing good cause for the order exists. *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 274–75 (D.D.C. 2001). "In assessing good cause, a district court must exercise its discretion in light of the relevant facts and the circumstances of the particular case." *Univ. of Mass. v. Roslin Inst.*, 437 F.Supp.2d 57, 60 (D.D.C. 2006). Protective orders may "deny discovery completely, limit the conditions, time, place, or topics of discovery, or limit the manner in which the confidential information is to be revealed." *Id.*

# ARGUMENT

Good cause exists for the Court to enter a protective order prohibiting Defendants from using third party subpoenas to pursue certain documents and information that are confidential and proprietary to Dominion. The confidential and proprietary materials sought through the subpoenas span well beyond what is relevant to the claims and defenses in this action. To the extent the materials are even arguably relevant, the potential harm that would result from the disclosure of such confidential and proprietary information—when balanced against (1) Defendants' marginal need for the information and (2) the significant burden its production would place on the dozens of nonparty public entities subpoenaed—weighs heavily in favor of prohibiting disclosure or, at the very least, requiring Defendants to pursue the materials from Dominion, rather than from third parties. That is all the more true here, where Defendants are trying to use the subpoena process as an end-run around Dominion's valid objections to party discovery.

## I. The Subpoenas Request Documents and Information that is Confidential and Proprietary

Several of the requests contained in the Subpoenas call for software and information that is confidential and proprietary to Dominion. Request Number 1[4] asks the Subpoenaed Customers for:

---

[4] The requests contained in 38 of the 39 subpoenas are identical. The subpoena issued to the Arizona Secretary of State is slightly different. Both Request No. 1 and Request No. 2 of the subpoena issued to the Arizona Secretary of State asks for the same types of documents and information listed here.

7

1. Forensic images, in EnCase format, of each of the following objects used in connection with the November 2020 Election:

   a. All drives attached to or affiliated with an EMS Server

   b. All drives attached to or affiliated with any workstation used as an EMS Client

   c. All drives attached to or affiliated with any ImageCast Central Workstations

   d. All drives attached to or affiliated with any Adjudication Workstations

   e. All drives attached to or affiliated with the controlling computer for any ballot scanner such as HiPro, Canon, etc.

   f. All drives attached to or affiliated with any device used in conjunction with the election as a communications server or virtual private network server/concentrator

   g. All SD Cards, USB Drives or other storage devices that were inserted into or removed from all tabulators, ballot marking devices or other device that was used for the tabulation of votes

   h. All ImageCast X, ImageCast Precinct, and ImageCast Evolution devices

Request Number 2(a)[5] asks for:

2. The following electronic files:

   a. Forensic copies of all slog.txt files and .dvd files generated from tabulators and ballot marking devices

Although it is unclear what exactly Defendants mean by "Forensic images" and "Forensic copies," there is no doubt that production of the drives, devices, and files requested would require disclosure of Dominion's trade secrets.

Both federal and D.C. laws define "trade secrets" as information that "derives independent economic value . . . from not being generally known" when "the owner . . . has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); *see* D.C. Code § 36–401(4); *see also Meyer Group, Ltd. v. Rayborn*, No. 19-cv-1945, 2020 WL 5763631 at *4 (D.D.C. Sept. 28, 2020). The Court considers six factors when determining whether information should be considered a trade secret:

---

[5] This information is sought through Requests 3(a) and 4(a) of the subpoena served on the Arizona Secretary of State.

> [T]he extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the employer] to guard the secrecy of the information; (4) the value of the information to [the employer] and to his competitors; (5) the amount of effort or money expended by [the employer] in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Meyer Group*, 2020 WL 5763631 at *5 (quoting *Ruesch v. Ruesch Int'l Monetary Servs., Inc.*, 479 A.2d 295, 296 (D.C. 1984)).

Dominion has a tremendous proprietary interest in maintaining the confidentiality of its voting system software and related materials, which have been certified by the EAC and classified by DHS as critical election infrastructure. *See Premier Election Solutions, Inc. v. Systest Labs Inc.*, Civ. No. 09-cv-01822-WDM-KMT, 2009 WL 3075597 at *8 (D. Colo. Sept. 22, 2009) (implementing a protective order to protect voting system trade secrets and noting that "iBeta's proprietary interest in its own processes which have withstood EAC scrutiny are extraordinarily sensitive and valuable to iBeta").

Dominion's consistent efforts to keep its information confidential support a finding that the materials at issue are entitled to protection as trade secret and confidential commercial information. *See Meyer Group*, 2020 WL 5763631 at *5. Each of Dominion's purchasing and licensing agreements (including those with the Subpoenaed Customers) provides that Dominion's software and related materials are considered confidential and prohibits customers from transferring or copying its software onto any other storage device; reverse engineering, disassembling, decompiling, deciphering, or analyzing the software; or altering or modifying the software or copyright notices in any way or preparing any derivative works of the software or any parts of the software without Dominion's prior written permission.[6] Dominion further requires that

---

[6] *See* John Poulos Decl., at ¶ 10, attached as Exhibit 2.

9

once the agreement expires or terminates, the customer must return to Dominion all software in its possession or control, or destroy all such software, and certify in writing to Dominion that it has been destroyed.[7] The agreements also provide that each party must be given the ability to defend the confidentiality of its Confidential Information to the maximum extent allowable under the law prior to disclosure by the other Party.[8]

Again, the materials Defendants seek are not just confidential and proprietary; the federal government has classified Dominion's software and related information as critical to election infrastructure, and access to these systems is highly regulated. Any disclosure and/or testing of these materials should take place in a controlled manner with appropriate safeguards to ensure that Dominion's confidential and proprietary information is not manipulated or further disseminated to unauthorized recipients.

Dominion's concerns over disclosing its confidential and proprietary information are not unwarranted. Lindell has repeatedly and publicly promised that he will obtain Dominion's machines and display them at his "cyber symposiums," as part of his continued efforts to spread false and defamatory allegations about Dominion's voting systems.[9] Lindell has reportedly helped fund the legal defense of former Mesa County, Colorado, Clerk Tina Peters, who was indicted after improperly trying to make copies of Dominion's confidential information.[10] And Lindell recently disclosed (while saying he was explicitly asked *not* to disclose) that on September 13, 2022, federal agents seized his cellphone as part of an official criminal investigation surrounding

---

[7] *Id.*
[8] *Id.*
[9] *See* Zachary Pertrizzo, *Mike Lindell promised Dominion voting machines — but he doesn't have any*, Salon (Aug 14. 2021), https://www.salon.com/2021/08/14/mike-lindell-promised-dominion-voting-machines--but-he-doesnt-have-any/; *see also* Brian Schwartz, *MyPillow CEO Mike Lindell says he spent $25 million to push false pro-Trump election claims: 'I will spend whatever it takes'*, CNBC (Dec 16. 2021), https://www.cnbc.com/2021/12/16/mypillow-ceo-mike-lindell-spent-25-million-to-push-false-pro-trump-election-claims.html.
[10] *Id.*

Peters and the Colorado election security breach. The Court should enter a protective order prohibiting Defendants from pursuing from third parties Dominion's confidential and proprietary information, which Lindell has indicated he intends to share with the public.

### II. The Subpoenas Request Documents and Information that Are Irrelevant to the Claims and Defenses of this Case

A defendant in a defamation case is entitled to seek discovery of information that would prove the truth of the alleged defamatory statements. But the scope of that discovery is limited to the defamatory statements at issue and should not be used as a fishing expedition. *See Gilmore v. Jones*, 339 F.R.D. 111, 122 (W.D. Va. 2021) (quashing multiple nonparty subpoenas that sought a broad scope of information where the allegations of defamation were fairly narrow). In evaluating whether the scope of a subpoena is overbroad in this context, the Court must ensure that the requested information is relevant to the truth or falsity of the statements at issue. *See Sheindlin v. Brady*, Civ. No. 21-CV-01124, 2021 WL 2075483, at *3–5 (S.D.N.Y. May 24, 2021) (quashing multiple nonparty subpoenas, through which defendant sought evidence to prove that his allegedly defamatory statements were true, because defendant had failed to show that the information sought was relevant and necessary to the claims or defenses in the action).

Defendants plainly intend to use Dominion's lawsuit as a platform to promote their theories that electronic voting machines are vulnerable to cybersecurity attack and should be done away with altogether. That is the narrative Defendants attempted to push through their groundless counterclaims against Dominion. But those counterclaims were dismissed, and Dominion's defamation claims are based on specific false statements Defendants made that Dominion's voting machines were "built to cheat" and "steal elections"; that Dominion stole the election by using an algorithm to flip and weight votes in its machines; that a fake spreadsheet with fake IP and MAC addresses proved that Dominion's machines were hacked; that Dominion's plot was kept secret

11

because then-Attorney General William Barr had been "compromised"; and that Dominion committed the "biggest crime ever committed in election history against our country and the world." The Court long ago recognized this key distinction. *See* ECF No. 73 (Transcript from June 24, 2012, Hearing on Defendants' Motions to Dismiss, at pgs. 32-33 (Court stating that "Dominion is not arguing that it would have been defamatory to say that Dominion is at risk of being hacked or that there is a risk of election systems generally being hacked" and that "the public debate about election security and statements by various people that there are concerns about election security are not the same as saying a particular company committed voter fraud.")).

The information Defendants seek from the Subpoenaed Customers is not tailored to the statements at issue, nor is it proportionate to the needs of the case. The Requests call for essentially all information the Subpoenaed Customers possess regarding all voting machines used in the 2020 Election. This is clearly a fishing expedition, conducted for Defendants' own purposes that are extraneous to the actual scope of Dominion's defamation claims in this case.

Defendants cannot articulate why they need "forensic copies" or "forensic images" of Dominion software and related materials from 39 of Dominion's customers to prove the truth of the defamatory statements at issue in Dominion's lawsuit. The burden and expense the nonparty public entities would incur producing the information Defendants seek outweighs the nonexistent benefit to Defendants. *See G.K. Las Vegas Ltd. P'ship*, 2007 WL 119148, at *4–5 (granting a party's motion for a protective order regarding numerous subpoenas issued to nonparties seeking information that could possibly be obtained from the party itself instead of from nonparties). Indeed, one of Lindell's defamatory statements is that he *already has evidence* proving that Dominion's machines were hacked. If this statement were true (independent audits and recounts of paper ballots have repeatedly proven that Lindell's statement is *not* true), then Defendants have

no need to access Dominion's proprietary machines and software. Defendants should not be allowed to make demonstrably false and damaging statements about Dominion—including an allegation they *already* have "100 % proof" to support their lies—and then claim they need Dominion's confidential and proprietary information (which they acknowledge they want to publicly share) to prove that what they said is true.

Even if Defendants did need to inspect a Dominion machine to prove the truth of Defendants' statements that Dominion machines were "built to cheat" and "steal elections" or that Dominion put an algorithm in its machines to flip and weight votes—again, flatly false allegations that no evidence in the world will ever support—they should pursue such discovery from Dominion, not its customers.[11] In fact, Defendants have requested from Dominion much of the same confidential and proprietary information it now seeks from the Subpoenaed Customers.[12] For example, Request Number 1 of MyPillow's Second Set of Requests for Production seeks: "An exemplar of each piece of Hardware Supplied or Supported by Dominion that was used to administer the 2020 Presidential Election in any jurisdiction in any State." Dominion objected to the request on the basis that, among other things, the materials requested were not relevant to any claim or defense in this litigation and "Dominion's hardware contains trade secrets and other information, the value of which depends on maintaining confidentiality." *See id.* Dominion further explained, "The risk of unauthorized disclosure is particularly acute because of statements made by Mike Lindell, My Pillow's CEO, about obtaining Dominion machines and publicly sharing them at his conferences." *Id.* Rather than moving to compel production of the requested materials

---

[11] Many of the Subpoenaed Customers have served written objections on the ground that Defendants' requests impose a substantial and undue burden. With upcoming elections in just over a month, diverting county financial, institutional, and temporal resources that would otherwise be used for election preparation towards responding to Defendants' incredibly vague and broad requests significantly burdens both the counties and their citizens.

[12] *See* My Pillow, Inc.'s Second Set of Requests for Production, attached as Exhibit 3.

and allowing this Court to determine whether and, if so, the protocols by which Dominion's confidential and proprietary information should be produced, Defendants seek to evade Dominion's objections by requesting the information from Dominion's customers.

Defendants argue that they must seek the requested materials from Dominion's customers because Dominion responded to Defendants' discovery requests by stating that "Dominion is not responsible for conducting elections, and state and local jurisdictions have exclusive custody and control over the Dominion technology used in those jurisdictions," and "It is Dominion's understanding that the jurisdictions conducting the elections are responsible for receiving, recording, tallying, and reporting the vote totals in their jurisdiction."[13] Defendants take Dominion's statements out of context. As written, certain of Defendants' requests for production suggest that Dominion is responsible for conducting elections (it is not).[14] Dominion made the statements Defendants cite to make clear that, to the extent Defendants' request for production implies that Dominion is responsible for conducting elections, it is in fact *Dominion's customer* that administers elections with the use of Dominion's technology—not Dominion. Dominion was not at all suggesting that its customers are authorized to disclose Dominion's confidential and proprietary information, nor did Dominion tell Defendants to seek Dominion's confidential and proprietary information from its customers.[15] What Dominion told Defendants in response to their request for documents and communications "concerning or related to the vote totals received,

---

[13] *See* September 28, 2022, email from L. Walker requesting telephonic conference, attached as Exhibit 4.
[14] *See*, *e.g.*, Plaintiffs' Responses and Objections to MyPillow's First Set of Requests for Production at Request No. 11, attached as Exhibit 5.
[15] Dominion maintains a copy of all State and Federally certified software versions, which, again, are confidential and proprietary. To the extent Defendants are seeking the software that was used during the 2020 Election—and can establish its relevance to the claims and defenses at issue-—Dominion is the proper party from which to seek that confidential and proprietary information. To the extent Defendants seek the election databases individual jurisdictions used during the 2020 Election, it is nearly impossible that the machines would still be programmed for the 2020 Election, due to the normal use of the voting system by Election Administrators through the multiple elections since 2020, including the 2022 primaries and now the general election.

recorded, tallied, or reported in the 2020 Presidential Election, in any jurisdiction which used Election Equipment Supplied or Supported by Dominion" was that, subject to and without waiving its various objections, it would produce non-privileged, responsive documents and communications it can locate in a reasonable search.[16]

Defendants should not be permitted to abuse the discovery process by unduly burdening nonparty public entities with wide-spanning requests for confidential and proprietary information that, to the extent even relevant at all, should be sought directly from Dominion and produced only in accordance with an order of the Court.

## CONCLUSION

There is good cause for the Court to enter a protective order prohibiting Defendants from using third party subpoenas to pursue Dominion's confidential and proprietary information from third parties, specifically the documents and information sought through:

1. Requests 1 (a-h) and 2(a) of the subpoenas issued to Montrose County Clerk, Weld County Clerk and Recorder, Pueblo County Clerk and Recorder, El Paso County Clerk, St. Lucie County Supervisor of Elections, Monroe County Supervisor of Elections, Houston County Board of Elections, Peach County Board of Elections & Registration, Burke County Board of Elections & Registration, Fulton County Department of Registration and Elections, Forsyth County Voter Registrations and Elections Department, Fayette County Elections & Voter Registration Department, Saginaw County Clerk, Wayne County Clerk, Kent County Clerk, Calhoun County Clerk, Berrien County Clerk, Sherburne County Auditor/Treasurer, Dakota County Voting & Elections Administration Center, Scott County Elections Department, Crow Wing County Elections & Voting, Washoe County

---

[16] *See, e.g.*, Plaintiffs' Responses and Objections to MyPillow's First Set of Requests for Production at Request No. 11, attached as Exhibit 5.

Registrar of Voters, Clark County Elections Department, San Juan County Clerk, Otero County Clerk, Valencia County Clerk, Pike County Clerk, Luzerne County Bureau of Elections, Erie County Elections Department, Hamilton County Election Commission, Williamson County Administrator of Elections, Racine County Clerk, Ozaukee County Clerk, Winnebago County Clerk, Walworth County Clerk, Fond du Lac County, Green County Clerk, and Grant County Clerk; and

2. Requests 1(a-h), 2(a-h), 3(a), and 4(a) of the subpoena issued to the Arizona Secretary of State.

Dated: September 30, 2022

Respectfully submitted,

/s/ Laranda Walker
Justin A. Nelson (D.C. Bar No. 490347)
Laranda Walker (D.C. Bar No. TX0028)
Florence T. Chen (D.C. Bar No. TX0025)
Katie Sammons (D.C. Bar No. TX0030)
Brittany Fowler (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com
lwalker@susmangodfrey.com
fchen@susmangodfrey.com
ksammons@susmangodfrey.com
bfowler@susmangodfrey.com

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443)
Elisha Barron (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Fl
New York, NY 10019
(212) 336-8330

16

sshackelford@susmangodfrey.com
ebarron@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117*)*
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com

Stephen E. Morrissey (*admitted pro hac vice)*
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA 98101
(206) 516-3880
smorrissey@susmangodfrey.com

Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Megan L. Meier (D.C. Bar No. 985553)
Dustin A. Pusch (D.C. Bar No. 1015069)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com
megan@clarelocke.com
dustin@clarelocke.com

Rodney Smolla (Bar No. 6327)
4601 Concord Pike
Wilmington, DE 19803
rodsmolla@gmail.com
(864) 373-3882

***Attorneys for Plaintiffs/Counter-Defendants US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation; and Third-Party Defendant Hamilton Place Strategies, LLC***