# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US DOMINION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00445-CJN |
| | ) | |
| MY PILLOW, INC. et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MY PILLOW, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFFS

Under Rule 34 of the Federal Rules of Civil Procedure, Defendant My Pillow, Inc. by and through undersigned counsel hereby serves the following Requests for Production of Documents ("Requests") on Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively "Dominion").

Dominion's responses to these Requests should be provided in accordance with the Federal Rules of Civil Procedure and shall be served together with all responsive materials **within thirty days of service of these Requests**. The materials requested shall be produced for inspection and copying at the offices of Parker Daniels Kibort, LLC, 888 Colwell Building, 123 North Third Street, Minneapolis, MN 55401, unless otherwise agreed by the parties.

## INSTRUCTIONS

1.     The Requests set forth below are continuing in nature. If, after responding, you obtain or become aware of any additional Documents responsive to these Requests, or additional Documents responsive to these Requests come into existence or come into

your possession, custody, or control, production of such additional Documents shall be made forthwith as required by Rule 34 of the Federal Rules of Civil Procedure.

2.    Each Request herein requires the production of all responsive Documents in the possession, custody, or control of you, or of any of your respective attorneys, agents and any other persons acting or purporting to act on behalf of any of them, or of any other Person from whom you have the right to obtain Documents, whether in hard-copy or electronic form or in any other form or from any other source, wherever located and however managed, and whether active, in storage, or otherwise.

3.    Each Document is to be produced (together with all drafts thereof) in its entirety, without redaction or expurgation of any kind or nature whatsoever.

4.    All Documents are to be produced as kept in the usual course of business or organized and labeled to correspond to the specific Requests set forth below.

5.    If a Request seeks the identification or production of Documents that are not within your actual or constructive possession, custody or control, you shall so state and shall answer the Request based on the best information presently available. If you have knowledge or belief as to other Persons who have possession, custody or control of such Documents, you shall so identify, to the extent known and based on the best information presently available, such Persons.

6.    If any Documents requested herein are withheld under claim of privilege or are not produced for whatever reason, you are requested at the time of responding to these Requests to separately state in writing and with specificity for each Document withheld from production (i) the claim of privilege or other reason asserted for withholding each such Document, and (ii) all information supporting the claim of privilege or other reason for withholding asserted as to each such Document, including without limitation the type or nature of the Document withheld (e.g., letter, memorandum, email, etc.), its author and all recipients (including any and all addressees and Persons to whom the Document was copied or blind copied, as well as Persons to

whom the Document was distributed or given or shown though not reflected on the Document as a recipient), the date of the Document, and a description of the substance of the Document, all in a manner sufficient to allow each Document to be described to the Court in order for the Court to rule on the claim of privilege or other reason asserted for withholding it from production. You are further requested to provide all requested information that is not subject to a claim of privilege, or other reason for nonproduction, by excising or otherwise protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the contents of the portions for which some privilege is asserted.

7. Each of these definitions and instructions shall be fully applicable to each Request, notwithstanding that a definition or instruction above may, in whole or in part, be reiterated in a particular Request or that a particular Request may incorporate supplemental instructions or definitions.

8. ESI shall be produced in black and white single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing the fields required by this protocol. Each TIFF image must convey all the information the document contains, disclosing all track changes, hidden content, notes, and any hidden slides, rows or columns, subject to any redactions. For ESI that does not contain redactions, the producing party shall produce an extracted text file for each electronic document where text can be extracted, and an optical character recognition ("OCR") text file for each imaged paper document and each electronic document for which text cannot be extracted. For documents that contain redactions, the producing party shall provide an OCR text file for the unredacted portions of such documents.

9. Excel files, and audio and video files, shall be produced in the native format that is referenced in their Native Link field, along with a TIFF placeholder image

that is named by the beginning Bates Number of the file, associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks, as well as metadata load files in delimited text format containing all metadata fields for which metadata exists. You shall maintain family groups together in one production and shall not break family groups apart in separate production volumes.

10.     Non-Responsive family members must be produced together with the Responsive Family Members. In instances where you do not assert a privilege with respect to the entire family of documents, the producing party should replace any subset of privileged documents within the family for which it is claiming a privilege with slipsheets stating "Document Withheld as Privileged." The slipsheet shall contain the "Document Withheld as Privileged" language in the center of the page, with any branding of the documents as confidential on the bottom left, and the bates number on the bottom right of the page. Each slipsheet should be re-OCR'd at time of production to remove any extracted text.

## **DEFINITIONS**

11.     "2016 Presidential Election" shall mean the election that occurred on November 8, any local, county, state, U.S. Congressional, U.S. Senate, and/or U.S. Presidential candidate through all ballot counting, tabulation, and audits through certification on January 6, 2017.

12.     "2018 Election" shall mean the election that occurred on November 6, 2018 for any local, county, state, U.S. Congressional, and/or U.S. Senate candidate through all ballot counting, tabulation, and audits through January 3, 2019.

13.     "2020 Presidential Election" means all vote casting, vote collection, vote counting, vote scanning, vote tabulation, vote reporting, or poll administration activities

connected with the election of the President of the United States in November 2020, including preparations for any of these activities and early voting activities conducted prior to November 2020.

14.     "Complaint" means the Complaint filed by plaintiffs in this action on February 22, 2021 and any subsequently filed amended complaint.

15.     "Differential Weighting" means crediting, in the tally of votes for an electoral contest, an individual's selection of a candidate on one ballot as a tallied number of votes which is greater than or less than exactly one vote.

16.     "Dominion" means US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, and any representative, director, officer, employee, or agent of any of those entities.

17.     "Election Equipment" means any and all electronic devices used in connection with the administration of an election or elections, including but not limited to devices used to cast votes, receive votes, tabulate votes, report vote totals, scan ballots, store ballot information, store data concerning vote totals, transmit data concerning ballots or votes, or receive data concerning ballots or votes.

18.     "Election Services" means any acts committed in connection with the administration of an election, including but not limited to assistance in setting up, maintaining, operating, repairing, or securing any Election Equipment.

19.     "Lindell" means Michael Lindell.

20.     "Log Files" means electronic files created or maintained by software on an electronic device that record information concerning incidents of changes made to data stored on the electronic device, functions performed using software on the electronic device, functions performed by software on the electronic device, or the identity or location of an individual who performed functions using software on the electronic device.

21.     "Malware" means any software stored on an electronic device without authorization from the owner of the electronic device, that in any way without the authorization of the owner affects operation of the device, data stored on the device, or performance of software stored on the electronic device.

22.     "MyPillow" means My Pillow, Inc. including any director, officer, employee, or agent of My Pillow, Inc. acting with authority to act on behalf of My Pillow, Inc.

23.     "Security Breach" means any incident in which a person gained Unauthorized Access to an electronic device or physically manipulated hardware connected to (or part of) an electronic device without authorization from the owner of the electronic device.

24.     "Supply" (or, in past tense, "Supplied") means manufacture, distribute, lease, sell, deliver, permit to use, or otherwise provide.

25.     "Support" (or, in past tense, "Supported") means directly or indirectly provide services to assist or facilitate the use, management, or operation of an electronic device.

26. "Unauthorized Access" means the viewing, deletion, modification, copying, or manipulation of any data stored on an electronic device without the permission or agreement of the owner of the electronic device (whether performed by direct physical manipulation of the controls of the electronic device or by electronic manipulation of the electronic device through a network, wireless, cellular, Internet, or other connection to the electronic device).

27. "Voting Fraud" means any attempt to change, delete, add, or otherwise manipulate any votes or vote totals received, recorded, tallied, or reported in connection with an election.

28. "You," "you" and "your" mean Dominion and any persons purporting to act on Dominion's behalf.

29. "Document" means any printed, written, typed, recorded, transcribed, taped, photographic, or graphic matter, however produced or reproduced, including, but not limited to: any letter, correspondence, or communication of any sort; electronic mail, either sent or received; file, print, negative, or photograph; sound or video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, or cable; summary, report, or record of any telephone conversation, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act, or activity; projection, work paper or draft; computer output or input; data processing card; opinion or report of any consultant; request, order, invoice, or bill of lading; analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine

clipping; press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, check stubs or register, canceled check, deposit slip, charge slip, tax return, or requisition; file, study, graph, or tabulation; and all other writings and recordings of whatever nature, whether signed, unsigned or transcribed, and any other data compilation from which information can be obtained or translated. The term "document" also shall mean: the original and/or any non-identical original or copy, including those with any marginal note or comment or showing additions, deletions, or substitutions; drafts; attachments to or enclosures with any document; and any other documents referred to or incorporated by reference in the document. The term "document" also specifically includes all electronic documents, electronic Communications, and other "electronically stored information" (whether stored electronically or in the form of a hard-copy, print-out, or otherwise) and all attachments thereto.

30.     "Communication" or "Communications" means a transfer of information in any form, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, instant messages (such as, but not limited to, Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, Slack messages or other internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, YouTube, Instagram, Gab, or Parler (including any direct messages), website postings, internet chat-room

postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. For avoidance of doubt, the term "Communications" includes internal communications and communications with third parties

31.    "Electronically stored information" or "ESI" refers to any portion of data available on a computer or other device capable of storing electronic data. "Electronically stored information" includes, but is not limited to, e-mail, spreadsheets, databases, word processing documents, images, presentations, application files, executable files, log files, and all other files present on any type of device capable of storing electronic data. Devices capable of storing electronically stored information include, but are not limited to: servers, desktop computers, portable computers, handheld computers, flash memory devices, wireless communication devices, pagers, workstations, minicomputers, mainframes, and any other forms of online or offline storage, whether on or off company premises. ESI includes instant messages (such as but not limited to Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voice mail messages, and similar types of messages. ESI includes any records of such communications or messages, including phone records. ESI includes any social media communication (such as but not limited to Twitter, Facebook, Instagram, YouTube, Parler, Gab, and Periscope), including any direct messages. For any document

kept in electronic form, the term "document" includes any metadata associated with the document.

32.     The term "identify" means as follows:

a.      when used in reference to an artificial person or entity such as a corporation or partnership means to state (1) the organization's full name and trade name, if any; (2) the address and telephone number of its principal place of business; and (3) the names and titles of those officers, directors, managing agents or employees who have knowledge of and would be designated to testify with respect to the matters involved;

b.      when used in reference to a document means to (1) state the type of document (*e.g.*, letter, memorandum, print-out, report, newspaper, etc.); (2) state the title and date, if any, of the document; (3) state the author's name and address; (4) state the addressee's name and address; (5) provide a brief description of its contents; (6) indicate the present location of the document; and (7) provide the name and address of the person or persons having custody over the document. If any such document was, but is no longer, in your possession, custody, or subject to your control, state what disposition was made of it. In all cases where you are requested to identify particular documents, in lieu of such identification you may supply a fully legible copy of the document in question. This permission, however, shall in no way prejudice Plaintiff's right to require production and allow inspection of all records in your possession

c.      when used in reference to a natural person means to state (1) the person's full name; (2) the person's present or last known address; (3) the person's present or last known telephone number; and

d.      when used in reference to an oral communication, means to state: (1) the identity of all individuals participating or present; (2) the date and time of the communication; (3) where the communication took place; (4) the type of communication (*e.g.*, in person, telephone, etc.); and (5) the substance of the communication.

33.     "Concerning" means without limitation, containing, reflecting, referring to, alluding to, discussing, relating to, describing, evidencing, supporting, or constituting.

34.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

35.     The terms "related to," "relates to" or "relating to" mean, refer to, pertain to, reflect, record, describe, allude to, respond to, announce, explain, discuss, show, study, analyze or constitute or be in any other way connected with the matter discussed.

36.     The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include every gender.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**   Each and every Document and Communication concerning or related to the performance or reliability of any Election Equipment.

**REQUEST NO. 2:**   Each and every Document and Communication concerning or related to the vulnerability of Election Equipment to Unauthorized Access.

**REQUEST NO. 3:**   Each and every Document and Communication concerning or related to any hardware or software features, mechanisms, devices, or procedures designed to prevent, deter, block, record, or detect Unauthorized Access to Election Equipment.

**REQUEST NO. 4:**   Each and every Document and Communication concerning or related to any capability of Election Equipment to connect to a computer network.

**REQUEST NO. 5:**   Each and every Document and Communication concerning or related to any capability of Election Equipment to connect to the Internet.

**REQUEST NO. 6:**   Each and every Document and Communication concerning or related to any capability of Election Equipment to connect to a cellular phone network or signal.

**REQUEST NO. 7:**   Each and every Document and Communication concerning or related to any capability of Election Equipment to be accessed or controlled remotely.

**REQUEST NO. 8:**   Each and every Document and Communication concerning or related to in any way the capability of any Election Equipment, when votes in an election are tallied, to accomplish Differential Weighting of votes or ballots, to credit some ballots as registering more than 1 vote for a specific candidate and/or to credit some ballots as registering less than 1 vote for a specific candidate.

**REQUEST NO. 9:**   Each and every Document and Communication concerning or related to any known or suspected instance of Differential Weighting of votes by any Election Equipment Supplied or Supported by Dominion.

**REQUEST NO. 10:**   Each and every Document and Communication concerning or related to the origins of the hardware and software designs used for any Election Equipment Supplied or Supported by Dominion, including but not limited to any connection between Dominion and Venezuela, China, or any country outside the United States.

**REQUEST NO. 11:**   Each and every Document and Communication concerning or related to the vote totals received, recorded, tallied, or reported in the 2020 Presidential

Election, in any jurisdiction which used Election Equipment Supplied or Supported by Dominion.

**REQUEST NO. 12:** Each and every Document and Communication concerning or related to the vote totals received, recorded, tallied, or reported in the 2016 Presidential Election, in any jurisdiction which used Election Equipment Supplied or Supported by Dominion.

**REQUEST NO. 13:** Each and every Document and Communication concerning or related to the vote totals received, recorded, tallied, or reported in the 2018 Election, in any jurisdiction which used Election Equipment Supplied or Supported by Dominion.

**REQUEST NO. 14:** Each and every Document and Communication concerning or related to any irregularity, glitch, error, unexpected performance, or nonstandard performance of Election Equipment, where the irregularity, glitch, error, unexpected performance, or nonstandard performance occurred between October 1, 2020 and December 31, 2020. Each Document and Communication responsive to this request should be produced for the period from October 1, 2020 to the present.

**REQUEST NO. 15:** Each and every Document and Communication concerning or related to any unexpected, aberrational, unlikely, impossible, or statistically improbable vote tally in the 2020 Presidential Election, in any jurisdiction that used Election Equipment Supplied or Supported by Dominion.

**REQUEST NO. 16:** Each and every Document and Communication concerning or related to the use or potential use of computers or servers physically located outside of the United States, in connection with the receiving, recording, tallying, or reporting of

votes in the 2020 Presidential Election by any local, state, or federal jurisdiction.

**REQUEST NO. 17:**  All Log Files created by or stored on any Election Equipment used in connection with the 2020 Presidential Election, during the period January 1, 2020 through December 31, 2020, including each and every Document and Communication concerning or related thereto.

**REQUEST NO. 18:**  All Log Files created by or stored on any Election Equipment used in connection with the 2016 Presidential Election, including each and every Document and Communication concerning or related thereto.

**REQUEST NO. 19:**  All Log Files created by or stored on any Election Equipment used in connection with the 2018 Election, including each and every Document and Communication concerning or related thereto.

**REQUEST NO. 20:**  The source code for any software application or program that was stored on any Election Equipment used in connection with the 2020 Presidential Election, including each and every Document and Communication concerning or related thereto.

**REQUEST NO. 21:**  Each and every Document and Communication concerning or related to the deletion or loss from any Election Equipment, after October 1, 2020, of any electronically stored data related to the 2020 Presidential Election.

**REQUEST NO. 22:**  Each and every Document and Communication concerning or related to the deletion or loss of any data from any Log File stored on any Election Equipment, where the deleted or lost data was previously stored in the Log File at any time between November 1 and November 30, 2020.

**REQUEST NO. 23:**  Each and every Document and Communication concerning or

related to actual or potential Voting Fraud in connection with the 2020 Presidential Election.

**REQUEST NO. 24:**   Each and every Document and Communication concerning or related to actual or potential Voting Fraud in connection with the 2016 Presidential Election.

**REQUEST NO. 25:**   Each and every Document and Communication concerning or related to actual or potential Voting Fraud in connection with the 2018 Election.

**REQUEST NO. 26:**   Each and every Document and Communication concerning or related to actual or possible Malware on any Election Equipment.

**REQUEST NO. 27:**   Each and every Document and Communication concerning or related to software code actually or potentially affecting the number of votes received, recorded, tallied, or reported by any Election Equipment for one or more candidates in the 2020 Presidential Election.

**REQUEST NO. 28:**   Each and every Document and Communication concerning or related to any Election Equipment that actually or potentially changed, from one candidate to another, one or more votes cast, received, recorded, or tallied, in connection with the 2020 Presidential Election.

**REQUEST NO. 29:**   Each and every Document and Communication concerning or related to the reliability of any data obtained through or stored on Election Equipment Supplied or Supported by Dominion that was used in connection with the 2020 Presidential Election.

**REQUEST NO. 30:**   Each and every Document and Communication concerning or

related to software code actually or potentially affecting the number of votes received, recorded, tallied, or reported by any Election Equipment for one or more candidates in the 2016 Presidential Election.

**REQUEST NO. 31:** Each and every Document and Communication concerning or related to any Election Equipment that actually or potentially changed, from one candidate to another, one or more votes cast, received, recorded, or tallied, in connection with the 2016 Presidential Election.

**REQUEST NO. 32:** Each and every Document and Communication concerning or related to the reliability of any data obtained through or stored on Election Equipment Supplied or Supported by Dominion that was used in connection with the 2016 Presidential Election.

**REQUEST NO. 33:** Each and every Document and Communication concerning or related to software code actually or potentially affecting the number of votes received, recorded, tallied, or reported by any Election Equipment for one or more candidates in the 2018 Election.

**REQUEST NO. 34:** Each and every Document and Communication concerning or related to any Election Equipment that actually or potentially changed, from one candidate to another, one or more votes cast, received, recorded, or tallied, in connection with the 2018 Election.

**REQUEST NO. 35:** Each and every Document and Communication concerning or related to the reliability of any data obtained through or stored on Election Equipment Supplied or Supported by Dominion that was used in connection with the 2018 Election.

**REQUEST NO. 36:** Each and every Document and Communication concerning or related to any known or suspected incident of Unauthorized Access to Election Equipment during the thirty days immediately preceding or following the date of an election.

**REQUEST NO. 37:** Each and every Document and Communication concerning or related to a Security Breach of any Election Equipment Supplied or Supported by Dominion to anyone. This Request is not limited to any time period.

**REQUEST NO. 38:** Each and every Document and Communication concerning or related to any instance of a person physically located outside of the United States gaining Unauthorized Access to Election Equipment.

**REQUEST NO. 39:** Each and every Document and Communication between Dominion and the State of Georgia or any County in Georgia, concerning Election Equipment supplied to or used in any jurisdiction in Georgia.

**REQUEST NO. 40:** Each and every Document and Communication between Dominion and the State of Arizona or any County in Arizona, concerning Election Equipment supplied to or used in any jurisdiction in Arizona.

**REQUEST NO. 41:** Each and every Document and Communication between Dominion and the State of Michigan or any County in Michigan, concerning Election Equipment supplied to or used in any jurisdiction in Michigan.

**REQUEST NO. 42:** Each and every Document and Communication between Dominion and the State of Pennsylvania or any County in Pennsylvania, concerning Election Equipment supplied to or used in any jurisdiction in Pennsylvania.

**REQUEST NO. 43:**  Each and every Document and Communication between Dominion and the State of Colorado or any County in Colorado, concerning Election Equipment supplied to or used in any jurisdiction in Colorado.

**REQUEST NO. 44:**  Each and every Document and Communication between Dominion and any agency of the Federal government, concerning Election Equipment Supplied or Supported by Dominion.

**REQUEST NO. 45:**  Each and every Document and Communication concerning or related to correspondence and other submissions to federal, state, and other regulators for certification of any Election Equipment used in connection with the 2020 Presidential Election.

**REQUEST NO. 46:**  Each and every Communication during the period January 1, 2020 through December 31, 2020, including public statements, private statements, and internal Communications, made by any employee or representative of Dominion concerning or alluding to Donald Trump.

**REQUEST NO. 47:**  Each and every Document and Communication between Dominion and J. Alex Halderman, or concerning or related to J. Alex Halderman.

**REQUEST NO. 48:**  Each and every Document and Communication between Dominion and the University of Michigan, or concerning or related to the University of Michigan.

**REQUEST NO. 49:**  Each and every Document and Communication between Dominion and Harri Hursti, or concerning or related Harri Hursti.

**REQUEST NO. 50:**  Each and every Document and Communication concerning or related to Dr. Eric Coomer between January 1, 2019 and the present date, relating to

Election Equipment, the 2020 Presidential Election, or Donald Trump.

**REQUEST NO. 51:** Each and every Document and Communication concerning or related to any statements made by Dr. Eric Coomer concerning the 2020 Presidential Election.

**REQUEST NO. 52:** Each and every Document and Communication concerning or related to Dr. Eric Coomer's departure from Dominion's employment, including correspondence, email, agreements, and payments.

**REQUEST NO. 53:** Each and every cease-and-desist letter sent by Dominion to any person concerning Election Equipment, the 2020 Presidential Election, or any allegedly defamatory statement about Dominion made by Lindell or MyPillow.

**REQUEST NO. 54:** Each and every Document concerning or related to Communication between Dominion and any person who made an allegation regarding the vulnerability to Unauthorized Access of Election Equipment supplied or supported by Dominion.

**REQUEST NO. 55:** Each and every Document and Communication concerning or related to the 2020 HBO documentary, The Kill Chain: The Cyber War on America's Elections including but not limited to any cease-and-desist letters sent by Dominion to HBO or those appearing in the documentary, and any statements contesting the truth or accuracy of content in the documentary.

**REQUEST NO. 56:** Each and every Document and Communication concerning or related to the bringing or prosecution of this action, between Dominion and any person (excluding counsel) including, but not limited to, Marc Elias, any representative of the

Democratic National Committee, Nancy Pelosi, any representative of the United States government, any law enforcement agency or representative thereof, any officials or agents of the United States Central Intelligence Agency, CISA or the United States Federal Bureau of Investigation.

**REQUEST NO. 57:** Each and every Document and Communication concerning or related to any Communication to Dominion from Senators Elizabeth Warren, Amy Klobuchar, Mark Warner, Jack Reed, or Gary Peters regarding Election Equipment, malware or the vulnerability of Election Equipment to Unauthorized Access.

**REQUEST NO. 58:** Each and every Document and Communication concerning or related to any claim or allegation in the Complaint.

**REQUEST NO. 59:** Each and every Document and Communication concerning or related to any of the allegedly defamatory statements set forth in Paragraph 165 of the Complaint.

**REQUEST NO. 60:** Each and every Document and Communication concerning or related to any statement that Dominion alleges was defamatory toward Dominion, concerning the 2020 Presidential Election.

**REQUEST NO. 61:** Each and every Document and Communication concerning or related to any marketing campaign or activity by MyPillow related to the 2020 Presidential Election.

**REQUEST NO. 62:** Each and every Document and Communication concerning or related to any authority allegedly granted by MyPillow to Lindell to speak on behalf of MyPillow on any matter concerning the 2020 Presidential Election.

**REQUEST NO. 63:** Each and every Document and Communication concerning or related to any damages that Dominion alleges it suffered as a result of any alleged defamation by Lindell or MyPillow.

**REQUEST NO. 64:** Each and every Document and Communication concerning or related to any damages that Dominion alleges it suffered as a result of any alleged defamation spoken or published by any person other than Lindell or MyPillow.

**REQUEST NO. 65:** Each and every contract and agreement, between January 1, 2016 and the present, with any local, state or federal municipality or governmental entity, or any other person, for the Supply or Support of Election Equipment.

**REQUEST NO. 66:** Each and every contract and agreement between Dominion and any person, entity, or jurisdiction relating to the 2020 Presidential Election.

**REQUEST NO. 67:** Each and every contract and agreement you claim was cancelled because of Mike Lindell.

**REQUEST NO. 68:** Each and every contract and agreement you claim was cancelled because of MyPillow.

**REQUEST NO. 69:** Each and every contract and agreement you claim was cancelled because of MyPillow.

**REQUEST NO. 70:** Each and every Document that supports your general contention that you have been damaged by Mike Lindell.

**REQUEST NO. 71:** Each and every Document and Communication regarding, related to or concerning your allegation that "financial track record contract pipeline, retention and renewal rates, and new business capture rates, as well as the nature, severity,

21

pervasiveness, and permanence of the viral disinformation campaign, current projections show lost profits of $200 million over the next five years, when reduced to present value" as alleged in paragraph 159 of the Complaint.

**REQUEST NO. 72:**  Each and every Document and Communication from any customer or potential customer that has reviewed or expressed an intent to cancel, reevaluate, reconsider, reassess, modify, extend, renew, non-renew, or "review and reassess" contracts with Dominion as alleged in paragraph 158 of the Complaint.

**REQUEST NO. 73:**  Each and every Document and Communication that supports your general contention that you have been damaged by MyPillow.

**REQUEST NO. 74:**  Each and every Document and Communication related to or concerning any reduction in market value or market share to Dominion because of any statement made by Mike Lindell.

**REQUEST NO. 75:**  Each and every Document and Communication related to or concerning any reduction in market value or market share to Dominion because of any statement made by MyPillow.

**REQUEST NO. 76:**  Each and every Document and Communication concerning or related to any contract lost by Dominion after November 1, 2020.

**REQUEST NO. 77:**  Each and every Document and Communication concerning or related to any occasion after November 1, 2020 on which Dominion sought to enter into a contract to provide Election Equipment or Election Services but failed to do so.

**REQUEST NO. 78:**  All state and federal tax return documents filed by Dominion for years 2016, 2017, 2018, 2019, 2020, and 2021.

**REQUEST NO. 79:** Dominion's quarterly and annual income statements for years 2016, 2017, 2018, 2019, 2020, and 2021.

**REQUEST NO. 80:** Dominion's quarterly and annual balance sheets for years 2016, 2017, 2018, 2019, 2020, and 2021.

**REQUEST NO. 81:** Dominion's bank records from January 1, 2018 to the present.

**REQUEST NO. 82:** Each and every Document and Communication concerning or related to any Dominion projection, forecast, or model of its future revenues, where the projection, forecast or model was created or modified during the period 2016 to the present.

DATED:  March 22, 2022

**PARKER DANIELS KIBORT LLC**

By */s/* Andrew D. Parker

    Andrew D. Parker (MN Bar No. 195042)*
    Joseph A. Pull (D.C. Bar No. 982468)
    Ryan Malone (MN Bar No. 195042)*
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com
    pull@parkerdk.com
    malone@parkerdk.com

    * Admitted Pro Hac Vice

**LEWIN & LEWIN, LLP**

    Nathan Lewin (D.C. Bar No. 38299)
    888 17th Street NW
    Fourth Floor
    Washington, DC 20006
    Telephone: (202) 828-1000
    nat@lewinlewin.com

    *Counsel for Defendant My Pillow, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Andrew D. Parker, hereby certify that on March 22, 2022, true and correct copies of My Pillow, Inc.'s First Set of Requests for Production of Documents to Plaintiffs were served via email on counsel of record for every party in *US Dominion, et al. v. My Pillow, Inc., et al.*, No. 1:21-cv-00445 (CJN).

DATED:  March 22, 2022        **PARKER DANIELS KIBORT LLC**

By */s/* Andrew D. Parker
    Andrew D. Parker (MN Bar No. 195042)*
    Joseph A. Pull (D.C. Bar No. 982468)
    Ryan Malone (MN Bar No. 195042)*
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com
    pull@parkerdk.com
    malone@parkerdk.com

    * Admitted Pro Hac Vice