# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION, | ) ) ) ) | |
| *Plaintiffs/Counter-Defendants*, | ) ) | |
| v. | ) ) | |
| MY PILLOW, INC., and MICHAEL J. LINDELL, | ) ) ) | |
| *Defendants/Counter and Third- Party Plaintiffs,* | ) ) ) | Civil Case No. 1:21-cv-00445 (CJN) |
| *v.* | ) ) | |
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, AND HAMILTON PLACE STRATEGIES, LLC, | ) ) ) ) ) | |
| *Third-Party Defendants.* | ) ) | |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING THIRD PARTY SUBPOENAS

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT .........................................................................................................................2

      I.      Dominion Has Standing to Challenge Requests that Call for Its Confidential and Proprietary Information...................................................2

      II.     Defendants Fail to Establish the Relevance and Necessity of Obtaining Dominion's Confidential and Proprietary Information............................................6

      III.    Dominion is Justifiably Concerned That Defendants Will Disseminate Dominion's Confidential and Proprietary Information.........................................11

CONCLUSION.....................................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Curling v. Raffensperger*,
  493 F. Supp. 1264 (N.D. Ga. 2020) .........................................................................5

*DIRECTV, Inc. v. Richards*,
  No. 03-5606, 2005 WL 1514187 (D.N.J. June 27, 2005) .........................................2

*Jennings v. Elections Canvassing Comm'n*,
  958 So. 2d 1083 (Fla. 1st DCA 2007) .....................................................................5

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) .................................................................................7

*Klayman v. Judicial Watch, Inc.*,
  CV 06-670 (AK), 2008 WL 11394177 (D.D.C. Jan. 8, 2008), aff'd, CV 06-
  670, 2008 WL 11394172 (D.D.C. Apr. 2, 2008) ......................................................2

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
  838 F.2d 1287 (D.C. Cir. 1988) ...............................................................................7

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ..................................................................................................7

*Premier Election Solutions, Inc. v. Systest Labs, Inc.*,
  No. 09-cv-01822-WDM-KMT (D. Colo. Sept. 22, 2009) .................................5, 11

**Statutes**

52 U.S.C. § 20701 .......................................................................................................10, 11

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................5

Fed. R. Civ. P. 26(b)(1) ...................................................................................................6

## INTRODUCTION

Dominion respectfully submits this reply in response to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Protective Order Regarding Third Party Subpoenas (the "Opposition") [ECF No. 147] and in further support of its Motion [ECF No. 145].

Defendants conclude the Opposition by stating that the purpose of discovery is to uncover facts. Opposition at 24. But those facts must be relevant to the claims and defenses at issue and proportional to the needs of the case. Discovery should not be used as a fishing expedition. Nor should it be used to support already-debunked conspiracy theories. But that is precisely what Defendants are doing in their efforts to obtain Dominion's confidential and proprietary materials. Rather than tailoring their discovery to the actual defamatory statements at issue, Defendants are looking for evidence to support their broader conspiracy theory that electronic voting machines are susceptible to cyberattacks and should be "melted down and used for prison bars."[1] This should not be permitted.

Defendants have not and cannot demonstrate a legitimate need for the confidential and proprietary materials they seek, and any benefit Defendants might gain through obtaining the materials is highly outweighed by the potential burden to the Subpoenaed Customers and harm Dominion stands to suffer if its highly valuable, proprietary materials are shared outside the litigation. Good cause exists for the Court to enter a protective order prohibiting Defendants from using third party subpoenas to pursue Dominion's confidential and proprietary information.

---

[1] Walker Decl., ¶ 3 and Ex. 1; Walker Decl., ¶ 4 and Ex. 2.

**ARGUMENT**

**I.     Dominion Has Standing to Challenge Requests that Call for Its Confidential and Proprietary Information**

Defendants argue that Dominion lacks standing to challenge the subpoenas. Defendants are wrong. It is well settled that a party claiming a proprietary interest in materials sought through a non-party subpoena has standing to challenge the subpoena. *See*, *e.g.*, *Klayman v. Judicial Watch, Inc.*, CV 06-670 (CKK)(AK), 2008 WL 11394177, at *3 (D.D.C. Jan. 8, 2008), aff'd, CV 06-670 (CKK), 2008 WL 11394172 (D.D.C. Apr. 2, 2008). Moreover, "[i]f a party has standing to challenge a subpoena because he has asserted a privilege, personal interest or proprietary interest, he may also raise other grounds for attacking the subpoena, such as undue burden and relevance. *Id.*, citing *DIRECTV, Inc. v. Richards*, No. 03-5606, 2005 WL 1514187, at *2-4 (D.N.J. June 27, 2005).

Dominion's voting system software and related materials are entitled to trade secret protection. As Dominion's CEO John Poulos explained in his declaration supporting the Motion, Dominion derives independent economic value from the confidential nature of its software, firmware, and related materials.[2] The fact that the federal government has classified Dominion's software and related materials as critical election infrastructure supports the point that the information is valuable to Dominion and its competitors.[3] Dominion's confidential information is not publicly known, and Dominion takes great strides to maintain its secrecy.[4] Poulos stated in his declaration that in order to receive and use Dominion's confidential information, Dominion's customers must agree to protect its confidentiality; customers are not allowed to transfer or copy Dominion's software, reverse engineer, disassemble, decompile, decipher, or analyze it, or alter or

---

[2] *See* Poulos Decl., attached as Exhibit 2 to Motion [ECF No. 145], at ¶¶ 6-8.
[3] *See id.*, at ¶ 9.
[4] *Id.*, at ¶ 10.

modify it in any way without Dominion's written consent.[5] When a Dominion customer's contract ends, it must return or destroy Dominion's confidential and proprietary information and confirm in writing that it has done so.[6]

Defendants contend that because Dominion only produced a copy of its contract with Pike County, Pennsylvania (rather than copies of its contracts with every single one of the 39 Subpoenaed Customers), it has failed to establish that it holds a proprietary interest in the information subpoenaed from the 38 other customers. But as Poulos stated, the Pike County contract "is the typical type of contract Dominion enters into with its customers,"[7] and "at least some of the materials Dominion's customers are being asked to produce are confidential and proprietary to Dominion *and would fall within the definition of Confidential Information as used in Dominion's contracts with its Customers*.[8]"

Defendants go on to argue that Dominion's contracts with El Paso County, Colorado, and Monroe County, Florida, are "different" from the Pike County contract and suggest that because the contracts are "different," Dominion does not treat its software, firmware, and related materials as confidential and proprietary with respect to other customers. This is easily rebutted by reviewing the contracts Defendants cite in the Opposition.

- All three contracts—Pike County, El Paso County, and Monroe County—define Confidential Information as those materials, documents, data, and technical information, specifications, business information, customer information, or other

---

[5] *Id.* at ¶¶ 4-5, 10.
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 11 (emphasis added).

information that the disclosing party maintains as trade secrets or confidential, which includes without limitation, Dominion Software and associated documentation.[9]

- All three contracts define "Dominion Software" as software and firmware programs licensed to the Customer by Dominion and any associated documentation.[10]

- All three contracts prohibit the Customer from transferring or copying Dominion's software onto any other storage device; reverse engineering, disassembling, decompiling, deciphering, or analyzing the software; or altering or modifying the software or copyright notices in any way or preparing any derivative works of the software or any parts of the software without Dominion's prior written permission.[11]

- All three contracts require the customer to return or destroy Dominion's software at the termination of the contract.[12]

- And all three contracts provide that each party must be given the ability to defend the confidentiality of its Confidential Information to the maximum extent allowable under the law prior to disclosure by the other Party.[13]

The El Paso County and Monroe County contracts Defendants point to actually *support* Poulos's statement that the Pike County contract is typical of Dominion's contracts and are further evidence

---

[9] *See* Pike County contract, attached as Exhibit 2A to the Motion, at § 2.2; El Paso County contract, attached Exhibit K to the Opposition, at § 13.1; and Monroe County contract, attached as Exhibit L to the Opposition, at § 12.1.

[10] *See* Pike County contract, attached as Exhibit 2A to the Motion, at § 2.4; El Paso County contract, attached Exhibit K to the Opposition, at § 2.3; and Monroe County contract, attached as Exhibit L to the Opposition, at § 2.2.

[11] *See* Pike County contract, attached as Exhibit 2A to the Motion, at Exhibit B (Software License Terms and Conditions, § 5); El Paso County contract, attached Exhibit K to the Opposition, at Exhibit B (Software License Terms and Conditions, § 6); and Monroe County contract, attached as Exhibit L to the Opposition, at Exhibit B (Software License Agreement, § 8).

[12] *See* Pike County contract, attached as Exhibit 2A to the Motion, at Exhibit B (Software License Terms and Conditions, § 6); El Paso County contract, attached Exhibit K to the Opposition, at Exhibit B (Software License Terms and Conditions, § 7); and Monroe County contract, attached as Exhibit L to the Opposition, at Exhibit B (Software License Agreement, § 12).

[13] *See* Pike County contract, attached as Exhibit 2A to the Motion, at § 13; El Paso County contract, attached Exhibit K to the Opposition, at § 13; and Monroe County contract, attached as Exhibit L to the Opposition, at § 12.

that Dominion consistently treats its software, firmware, and related materials as confidential and proprietary.

Defendants mention in footnote 4 of the Opposition that Monroe County moved to quash the Subpoena it received. Indeed, one of the bases Monroe County cites for quashing the Subpoena is that it calls for Dominion's confidential and proprietary information. Walker Decl., ¶ 5 and Ex. 3, at pgs. 10-12 (arguing that certain requests in the Subpoena would require the Monroe County Supervisor of Elections to "transfer or copy" the Software in violation of the Software License Agreement" and that "the Agreement evidences the fact that Dominion has taken proper steps to safeguard its proprietary confidential information"). Moreover, as Monroe County recognizes in its motion to quash, "[n]umerous courts have recognized that software, hardware, and other information associated with voting machines qualify as proprietary trade secrets." *Id.* at pgs. 10-11 (citing *Jennings v. Elections Canvassing Comm'n*, 958 So. 2d 1083 (Fla. 1st DCA 2007); *Premier Election Solutions, Inc. v. Systest Labs, Inc.*, No. 09-cv-01822-WDM-KMT, at *7 (D. Colo. Sept. 22, 2009); *Curling v. Raffensperger*, 493 F. Supp. 1264, 1279 (N.D. Ga. 2020).[14]

There is ample support for Dominion's claim that some of the requests contained in the Subpoenas call for Dominion's confidential and proprietary information. Dominion thus has standing to challenge those requests and seek a protective order under Rule 26 of the Federal rules of Civil Procedure.

---

[14] Monroe County is not the only Subpoenaed Customer that has moved to quash the Subpoena Defendants served on it. Lisa Posthumus Lyons, in her capacity as clerk of Kent County, Washington, moved to quash the Subpoena served on her county, arguing, among other things, that "the information demanded by the subpoena includes the security keys and passwords to Kent County's election system as well as Dominion's proprietary voting software." Walker Decl., ¶ 6 and Ex. 4, at pg. 2.

II.     **Defendants Fail to Establish the Relevance and Necessity of Obtaining Dominion's Confidential and Proprietary Information**

Defendants argue at page 14 of the Opposition that, even if the Subpoena seeks Dominion's confidential and proprietary information, discovery is nonetheless permissible because the exemplar contract Dominion provided as an attachment to Poulos's declaration allows the disclosure of confidential information "in response to, or because of an obligation to any federal . . . court with appropriate jurisdiction, or to any person properly seeking discovery before any such . . . court." But Defendants are not "properly seeking discovery."

One factor courts consider when determining whether discovery is relevant and proportional to the needs of the case is the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(1). Defendants are pursuing documents and information that may be relevant to their broader conspiracy theories about electronic voting machines, but those theories were dismissed with Defendants' counterclaims. What is important is that the documents and information do not go to the actual defamatory statements at issue in this case. The gravamen of Dominion's defamation claim is Defendants' statements that Dominion used algorithms to manipulate vote counts and steal votes from Donald Trump in favor of Joe Biden. Defendants do not need to access to Dominion's confidential and proprietary information to prove "whether Dominion voting machines used in the election changed votes or were hacked to cause them to change or miscount votes," Opposition at 17, because independent audits and hand counts confirming that Dominion's machines accurately tabulated votes have repeatedly disproven those false claims.

Defendants also claim they should be allowed access to Dominion's confidential and proprietary information because it is relevant to show the "inherent probability" of Defendants' statements. Opposition at 17. A public figure suing for defamation must prove that the defamatory

statements were made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Actual malice may be inferred through circumstantial evidence, including "the defendant's own actions or statements, the dubious nature of his sources, [or] the inherent improbability of the story." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 116 (D.C. Cir. 2017) (quoting *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988). But "[t]he actual malice inquiry focuses on the defendant's state of mind at the time of publication." *Id.* at 118. Thus, what is relevant is what Defendants knew *at the time they made the defamatory statements*, not what they can piece together through discovery efforts many months after making numerous demonstrably false and damaging statements and then daring the defamed party to sue them.

Defendants suggest that Dominion has neglected to articulate why the Subpoenas are overly broad. Opposition at 20. They go on to argue that, even though Lindell claims he already has proof supporting Defendants' statements, liberal discovery rules should nonetheless permit him to pursue the requested materials. Opposition at pgs. 21-22. Defendants are wrong again.

To the extent the Subpoenas seek Dominion's confidential and proprietary information, they are overly broad because, for the reasons explained in the Motion and above, those Requests call for information that is not relevant to the claims and defenses at issue, particularly when considering the potential harm Dominion might suffer from disclosing this confidential and proprietary information. For nearly two years now, Lindell has boldly claimed that he has evidence—"100 % proof"—that Dominion committed voter fraud. He does not. If Lindell did have proof to support Defendants' defamatory statements, Defendants would have no need for Dominion's confidential and proprietary information. Presumably, if this so-called proof existed, Defendants would put it before the Court now as evidence for why further discovery into

Dominion's machines and software is warranted. They have not done so because Lindell's defamatory statement that he has proof that Dominion stole the election is 100 % false.

Defendants claim at pages 20-21 of the Opposition that "Dominion questions why forensic copies or forensic images of the identified software is needed." Defendants then argue that they need forensic images and forensic copies for evidentiary purposes because Dominion will likely object at trial if the data is not properly collected. *Id.* Defendants miss the point. Dominion does not want its confidential and proprietary information copied or disclosed in any fashion. Period. Dominion's objection does not hinge on the fact that Defendants are seeking *forensic* images or *forensic* copies.

Defendants next contend that the costs of compliance with the Subpoenas "are clearly *de minimis* when compared to the relief Dominion has asked the Court to award." Opposition at 21. Defendants ignore the fact that it is the dozens of Subpoenaed Customers—public entities that are not parties to this litigation—that stand to bear the cost of complying with the Subpoenas. Nor do Defendants mention that Monroe County in fact argued in its motion to quash that the Subpoena is "unduly burdensome," requests documents that "cover an extensive time span," "would require the Supervisor to hire computer experts," and is "particularly extraordinarily burdensome at this time," as midterm elections are just weeks away. Walker Decl., ¶ 5and Ex. 3, at pgs. 13-14. The cost of compliance is significant.

As Dominion explained at pages 13-15 of its opening brief, even if Defendants needed Dominion's confidential and proprietary information to attempt to prove the truth of Defendants' defamatory statements (they do not), they should pursue the materials from Dominion, rather than from its customers. Defendants argue that they sought the same discovery from Dominion, but Dominion claimed it does not have election data, but state and local jurisdictions do. Opposition

at 22. Defendants continue to take Dominion's discovery objections out of context, pasting portions of Dominion's objections into the Opposition, but failing to include the actual requests for production. To provide clarity and context, here are the requests to which Defendants cite at pages 22 and 23 of the Opposition:

**REQUEST FOR PRODUCTION NO. 11:**

Each and every Document and Communication concerning or related to the vote totals received, recorded, tallied, or reported in the 2020 Presidential Election, in any jurisdiction which used Election Equipment Supplied or Supported by Dominion.

**REQUEST FOR PRODUCTION NO. 16**

Each and every Document and Communication concerning or related to the use or potential use of computers or servers physically located outside of the United States, in connection with the receiving, recording, tallying, or reporting of votes in the 2020 Presidential Election by any local, state, or federal jurisdiction.

**REQUEST FOR PRODUCTION NO. 21**

Each and every Document and Communication concerning or related to the deletion or loss from any Election Equipment, after October 1, 2020, of any electronically stored data related to the 2020 Presidential Election.

[ECF No. 147-4].

First, none of these requests for production call for the same materials as the Subpoena requests at issue in the Motion. These requests for production are thus irrelevant to and provide no support for Defendants' claim that they have sought the materials at issue in the Motion from Dominion and Dominion claimed it does not have those.

Second, the portions of Dominion's objections that Defendants cite in the Opposition were intended to (1) make clear that Dominion does not administer elections and (2) identify materials

that are maintained by the state and local jurisdictions conducting the elections (rather than by Dominion). Dominion's objections in no way suggest that state and local jurisdictions are authorized to copy or transfer Dominion's confidential and proprietary information.

Third, a review of the entirety of Dominion's response to the three requests for production Defendants cite reveals that, while preserving its objections to the requests, Dominion nonetheless (1) agreed to produce non-privileged responsive documents in response to RFP No. 11, (2) stated that it is unaware of any documents responsive to RFP No. 16, and (3) agreed to meet and confer to clarify the scope of RFP No. 21 and stated that, to the extent MyPillow can identify records over which Dominion might have custody or control that are relevant to this litigation, Dominion is willing to discuss production of same. *See* Ex. C to the Parker Decl. [ECF No. 147-4]. Again, these requests and Dominion's responses to same are irrelevant to the issue of whether Defendants should pursue Dominion's confidential and proprietary information from Dominion, rather than its customers. Defendants' cherry-picked excerpts of Dominion's responses should be disregarded.

As Dominion explained in footnote 15 of the Motion, the only software that could conceivably be relevant to Defendants' conspiracy theories is the Dominion software that was used in the 2020 election. Of course, that is confidential and proprietary information, and Dominion is the party from whom those materials should be sought. Any voting system component used by the Subpoenaed Customers for the 2020 Election would not be in the same disposition, based on how the machines are used through the normal course and the fact that multiple elections have taken place since then. Defendants argue at page 23 of the Opposition that 52 U.S.C. § 20701 requires the Subpoenaed Customers to retain this information. But Section 20701 requires Election Administrators to keep for 22 months all *records and papers* that come into their possession related to an election; it does not prohibit them from using voting system components in subsequent

elections in the normal course.[15] If Section 20701 prohibited using voting system components in subsequent elections, no elections in any jurisdiction in the United States could be administered for 22 months after a federal election.

Good cause exists for the protective order Dominion seeks. The confidential and proprietary materials Defendants want are not relevant to the claims and defenses at issue in this lawsuit, and the burden to the Subpoenaed Customers and potential harm to Dominion heavily outweigh any legitimate benefit Defendants might gain through obtaining the materials.

### III.     Dominion is Justifiably Concerned That Defendants Will Disseminate Dominion's Confidential and Proprietary Information

Defendants suggest that Dominion should not be concerned about Defendants accessing Dominion's confidential and proprietary information because Defendants and Dominion are not competitors. Opposition at 15-16 (noting the court's statement in *Premier Election Solutions* that "[c]onfidential information that may be used against the company by a direct competitor is generally afforded more protection."). Again, Defendants are wrong.

First, the documents and information Defendants request are indeed "confidential information that may be used against [Dominion] by a direct competitor." Dominion's software, firmware, source codes, and related materials are competitively valuable materials that, if obtained by a competitor, could be used against Dominion. These materials are absolutely entitled to the same type of protection as the information at issue in *Premier Election Solutions*.

Second, Lindell has repeated stated that he wants to "open up the machines" and put them on display at his "cyber symposiums." Dominion is justifiably concerned that, even after the Court enters the overarching protective order in this case, if Defendants are allowed access to Dominion's

---

[15] To the extent Defendants are asking the Subpoenaed Customers to produce "records and papers" they are required to keep pursuant to Section 20701, Dominion does not claim that those records and papers are Dominion's confidential and proprietary information.

confidential and proprietary materials, they will disseminate those materials. Thus, the same valid concerns that exist when dealing with a direct competitor are present here.

Equally important is that this is a defamation case—one in which Defendants have repeatedly lied about having "evidence" to support any of their defamatory statements. Dominion is certain that, given access to Dominion's confidential materials from the Subpoenaed Customers, Defendants will publicly report more untruths and make more unfounded claims in an effort to save themselves from liability and to continue to pressure Dominion's customers to stop using Dominion machines.

## CONCLUSION

Good cause exists for a protective order prohibiting Defendants from using third party subpoenas to burden nonparty public entities with requests for materials that are confidential and proprietary to Dominion and irrelevant to the claims and defenses at issue in this litigation. Dominion respectfully asks the Court to grant the Motion.

Dated: October 21, 2022

Respectfully submitted,

/s/ Laranda Walker
Justin A. Nelson (D.C. Bar No. 490347)
Laranda Walker (D.C. Bar No. TX0028)
Florence T. Chen (D.C. Bar No. TX0025)
Katie Sammons (D.C. Bar No. TX0030)
Brittany Fowler (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1000 Louisiana Street, #5100
Houston, Texas 77002
(713) 651-9366
jnelson@susmangodfrey.com
lwalker@susmangodfrey.com
fchen@susmangodfrey.com
ksammons@susmangodfrey.com
bfowler@susmangodfrey.com

Stephen Shackelford, Jr.
(D.C. Bar No. NY0443*)*
Elisha Barron (*admitted pro hac vice*)
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Fl
New York, NY 10019
(212) 336-8330
sshackelford@susmangodfrey.com
ebarron@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117*)*
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
dbrook@susmangodfrey.com

Stephen E. Morrissey (*admitted pro hac vice)*
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
(206) 516-3880
smorrissey@susmangodfrey.com

Thomas A. Clare, P.C. (D.C. Bar No. 461964)
Megan L. Meier (D.C. Bar No. 985553)
Dustin A. Pusch (D.C. Bar No. 1015069)
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
tom@clarelocke.com
megan@clarelocke.com
dustin@clarelocke.com

Rodney Smolla (Bar No. 6327)
4601 Concord Pike
Wilmington, DE 19803
rodsmolla@gmail.com
(864) 373-3882

13

*Attorneys for Plaintiffs/Counter-Defendants US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation; and Third-Party Defendant Hamilton Place Strategies, LLC*