# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
OF MICHIGAN

_____

| | |
|---|---|
| IN RE SUBPOENA OF KENT COUNTY CLERK | *US Dominion, Inc. v. MyPillow, Inc. et al.*<br><br>Civil Action No. 1:21-cv-00445<br><br>United States District Court for the District of Columbia |

_____ /

## NON-PARTY KENT COUNTY CLERK'S MOTION TO QUASH SUBPOENA AND FOR SANCTIONS

## ORAL ARGUMENT REQUESTED

Non-party Lisa Posthumus Lyons, in her official capacity as Kent County Clerk, moves to quash MyPillow, Inc. and Michael Lindell's subpoena issued from the United States District Court for the District of Columbia in *US Dominion, Inc. et al. v. MyPillow, Inc. et al.* pursuant to Federal Rule of Civil Procedure 45.

MyPillow and Lindell are demanding voluminous records from the Kent County Clerk related to the 2020 general election. Despite repeated correspondence, MyPillow and Lindell's counsel has refused to provide any information regarding how the subpoenaed information is relevant and reasonably limited to avoid imposing an undue burden on the Clerk. Accordingly, the Clerk requests that the Court quash the subpoena and impose sanctions upon MyPillow, Lindell, and their counsel to prevent the taxpayers of Kent County from having to bear the burden of their improper fishing expedition.

The Clerk believes that an in-person oral argument is warranted for this Court to assess the reasonableness of MyPillow, Lindell, and their counsel's use of the Rule 45 subpoena power.

Dated: October 4, 2022

/s/ Madelaine Lane
Matthew T. Nelson (P64768)
Madelaine Lane (P71294)
Tessa G. Mallett (P85617)
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000
mnelson@wnj.com
mlane@wnj.com
tmallett@wnj.com
Attorney for non-party Kent County

27329988-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| IN RE SUBPOENA OF KENT COUNTY CLERK | *U.S. Dominion, Inc. et al. v. MyPillow, Inc. et al.* |
| | Civil Action No. 1:21-cv-00445 |
| | United States District Court for the District Court of Columbia |

_____/

## NON-PARTY KENT COUNTY CLERK'S BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA AND FOR SANCTIONS

## Oral Argument Requested

## INTRODUCTION

This motion arises from an action for defamation and deceptive trade practices. In 2021, U.S. Dominion Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") sued MyPillow Inc. and its founder Michael Lindell (collectively, "Lindell") alleging that Lindell made defamatory statements that Dominion rigged the November 2020 election that damaged Dominion's business and reputation. Even though investigation after investigation into allegations of widespread election fraud in the 2020 general election has concluded that there was no widespread fraud, Lindell continues to spout various election-fraud conspiracy theories and encourages others to do the same.

On September 6, 2022, Lindell issued a third-party subpoena to Kent County Clerk Lisa Posthumus Lyons. Neither Kent County nor its Clerk is a party to the Dominion litigation. Michael Lindell does not live in Kent County, and MyPillow is not a Michigan corporation nor

does it have its headquarters in this State. No one has filed any complaints against Kent County or its Clerk alleging election fraud related to the 2020 presidential election. And in the aftermath of the 2020 election, Kent County's election results were audited and the audits did not identify any fraud. But Kent County uses Dominion voting machines and Kent County voters favored Joseph Biden over Donald Trump.

Lindell demands that the Clerk produce "forensic copies" of the electronic data storage drives from all the voting machines and servers in the County as well as every conceivable record from the 2020 general election. The information demanded by the subpoena includes the security keys and passwords to Kent County's election system as well as Dominion's proprietary voting software. Providing this information to Lindell will jeopardize the security of Kent County's election system and could jeopardize public confidence in County election results.

Despite repeated requests, Lindell has not explained why Kent County's election information is relevant to the defamation lawsuit against him, much less what efforts he has taken to minimize any burden on the Clerk as a third party or why he is seeking information from the Kent County Clerk in particular. Indeed, when Kent County's counsel reached out to request a meeting to discuss the relief requested in this motion, Lindell's counsel sent a generic response indicating that they would be back in touch in a few weeks.

Lindell and his counsel are using the privilege of issuing nationwide subpoenas to burden a county that uses a Dominion voting system without a scintilla of evidence that Kent County has any information that is both relevant and which cannot be obtained from Dominion itself. Kent County intends to use the same voting machines and data storage devices in the 2022 general election, a process that will overwrite the data that Lindell is seeking. Purchasing new machines just weeks before the general election would cost Kent County taxpayers millions of dollars,

assuming it is even possible to purchase, install and prepare the machines in time for November 8, 2022. Never mind the cost to the integrity of the election, in the eyes of the voters, who will know that Kent County had to scramble at the last minute to purchase and prepare all new voting machines. This expensive, dangerous, and arbitrary fishing expedition must stop here and, therefore, Clerk Lyons requests that this Court grant her motion to quash and impose the sanctions provided by Federal Rule of Civil Procedure 45.

## STATEMENT OF FACTS

### The 2020 election in Kent County

Kent County uses Dominion voting machines and software to conduct its elections. (**Exhibit A**, Declaration of Kent County Elections Director Gerrid Uzarski.) In November 2020, 363,695 registered voters in Kent County cast votes for Michigan's presidential electors. (*Id.* at ¶ 9; *see also* **Exhibit B**, www.accesskent.com, accessed September 26, 2022.) Kent County voters favored now-President Joseph Biden over Donald Trump by more than 5%. (Ex. A, ¶ 9.) After the ballots were cast, the Kent County votes were canvassed to certify the results. (*Id.* at ¶ 10.) In December 2020, the Bureau of Elections conducted a hand audit of election results from various precincts. (*Id.*) Neither the canvas nor the audit identified any issues with fraud. (*Id.*)

After the election, Trump and his surrogates alleged that Michigan's presidential electors only voted for President Biden because of widespread voting fraud (even though Trump lost Michigan by more than 154,000 votes). Various governmental agencies investigated these claims and concluded that they lacked any merit whatsoever. Indeed, the Michigan Senate's Oversight Committee, controlled by Republican senators, conducted a thorough-going investigation of allegations of election fraud in Michigan and "found no evidence of widespread or systematic fraud in Michigan's prosecution of the 2020 election." (**Exhibit C**, The Report on the November

3

2020 Election in Michigan.)  The Department of Justice came to the same conclusion.  (**Exhibit D**, www.apnews.com, accessed September 26, 2022.)

**Lindell subpoenas the Kent County Clerk**

In February 2021, Dominion sued Lindell claiming that following the November 2020 election, Lindell made public statements that Dominion had "rigged the election" and "used algorithms to manipulate vote counts." *U.S. Dominion, Inc. et al. v. MyPillow, Inc. et al.,* No. 1:21-cv-00445 (D.D.C.), ECF No. 1, Dominion's Complaint and Demand and Jury Trial. Dominion alleged that these statements were defamatory and "constitute[d] deceptive trade practices" because they "disparage[d] Dominion's goods and services by false and misleading representations of fact." *Id.* at ¶¶ 170, 174.

On September 6, 2022, Lindell issued a subpoena to Clerk Lyons[1] demanding that she produce to him every conceivable record related to the 2020 election. Lindell has been entitled to pursue discovery in the underlying litigation since at least March 1, 2022. (**Exhibit E**, Dominion Litigation Scheduling Order.) He nonetheless waited until days before the Clerk was free to discard the 2020 election data under 52 U.S.C. § 20701 to issue his subpoena. And with the subpoena, Lindell sent correspondence purporting to impose a duty upon the Clerk to retain the 2020 election data beyond the statutorily required 22 months because his unidentified clients might want to pursue unidentified claims against unidentified defendants in Michigan.

To be specific, Lindell's subpoena requires the Clerk to produce the following:

1. Forensic images, in EnCase format, of each of the following objects used in connection with the November 2020 Election:

    a. All drives attached to or affiliated with an EMS Server

---

[1] Lindell also issued the same subpoena to the county clerks of the following Michigan counties: Berrien, Calhoun, Saginaw, and Wayne.

b. All drives attached to or affiliated with any workstation used as an EMS Client

c. All drives attached to or affiliated with any ImageCast Central Workstations

d. All drives attached to or affiliated with any Adjudication Workstations

e. All drives attached to or affiliated with the controlling computer for any ballot scanner such as a HiPro, Canon, etc

f. All drives attached to or affiliated with any device used in conjunction with the election as a communications server or virtual private network server/concentrator

g. All SD Cards, USB Drives or other storage devices that were inserted into or removed from all tabulators, ballot marking devices or other device that was used for the tabulation of votes

h. All ImageCast X, ImageCast Precinct, and ImageCast Evolution devices

2. The following electronic files:

a. Forensic copies of all slog.txt files and .dvd files generated from tabulators and ballot marking devices

b. Forensic copies of all data items related to the November 2020 Election subject to the 22 month voter records retention requirement under U.S. federal law

3. The following information related to electronic election system architecture:

a. A network diagram including all devices, mac addresses and assigned IP addresses for Your complete electronic election system, including but not limited to the EMS Server, all networked devices on the EMS Server network (routers, switches, communications servers, modems, etc), and all devices attached to the resident network for the voter registration server

b. For each ballot marking device, ballot scanner, and tabulator, the media access control (MAC) address for each communication device connected to the ballot marking device, ballot scanner, or tabulator at any time between January 1, 2019 and November 30, 2020

c. Copies of all network logs, PCAPs, netflow data and access control logs from networking devices associated with the EMS

d. Credentials to permit access through all whole disk or file encryption technologies utilized in any part of Your electronic election system that is

produced in response to this subpoena, including but not limited to BitLocker, TrueCrypt, VeraCrypt technologies

e.  A list of all personnel who had access to the EMS Server or any EMS server-connected computing device for the period January 1, 2019 through November 30, 2020. Provide the name of the person, the account utilized, the devices accessed and the duration of the access.

4.  The following information related to the results of the November 2020 Election:

a.  Copies of all tabulator poll closing reports and tabulator reports generated by each precinct and polling location, detailing with date and time the number of in person voters, the number of same day voter registrations (if applicable), and the final totals for the precinct

b.  Copies of the certified final election results that were used to determine the official outcomes of the election contests

c.  Copies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election

5.  All documents related to any indication of any intrusion attempt into Your electronic election system.

6.  Copies of all cellular bills and connections supporting Your ballot scanners and ballot marking devices. These records should include the International Mobile Equipment Identity (IEMI) number, Temporary Mobile Subscriber Identity (TMSI) number, originating phone number, destination phone number, date and time of call origination, and call duration.

7.  Copies of all contracts and agreements with the suppliers of any of Your electronic election system equipment, devices, software, or support services.

8.  Copies of all contracts and agreements related to network security, network monitoring, or cybersecurity concerning all or any part of Your electronic system.

(**Exhibit F**, Lindell's Subpoena.)

Providing forensic copies of the data on Kent County's election server and the various computers and other devices that are used to conduct elections will provide Lindell with the security protocols, safeguards, digital keys, and passwords to the County's election system. (*See* Ex. A, ¶ 6.) Further, the requirement to provide MAC addresses and IP addresses will allow

6

Lindell to identify and pinpoint the Kent County election server and its component parts' connections to the internet, and the requirement to provide passwords to decrypt encrypted files will allow Lindell and anyone with whom he shares the information to access the most sensitive aspects of Kent County's election system.[2]

A person with access to the information demanded by Lindell would have ability to tamper with Kent County's elections. (*Id.*) It appears that Lindell wants the information necessary to hack into Kent County's election server in the manner that he speculates—without evidence—occurred in 2020. If the Clerk is required to provide this information to Lindell, Kent County and its taxpayers will incur the expense of replacing the county-wide election system to ensure that Lindell and his fellow purveyors of election-fraud lies cannot tamper with future election results. The expense of doing so will exceed $4 million.

The replacement of any compromised election equipment is necessitated by security concerns and the risk of further undermining the confidence of voters in the election system. In part because of Lindell and his fellow falsehood peddlers, voters' confidence in the election process is significantly reduced. Where voters are not confident that elections are fair, they are less likely to vote. All of this serves to undermine the foundations of our republican way of government. The Clerk believes that providing Lindell with the keys to its election servers is going to cause voters from both major political parties and no political affiliation to lose additional confidence in the system. But replacing the election equipment six weeks before the 2022 general election is impossible.

---

[2] Production pursuant to a protective order is not an acceptable alternative. The Antrim County election litigation resulted in Antrim County and its clerk producing various data pursuant to a protective order. That information nonetheless surfaced with various election-denier groups throughout the country which were not authorized to receive the information under the protective order. (*See* **Exhibit G**, www.washingtonpost.com, accessed September 26, 2022.) The Clerk has no confidence that Lindell will honor a protective order, and almost no ability to verify compliance.

**Lindell refuses to discuss the subpoena with the Clerk's counsel**

Upon receiving Lindell's subpoena, the Clerk's counsel promptly contacted Lindell's counsel asking them to explain how Kent County's confidential election information is relevant to the Dominion litigation and to identify the efforts they took to reduce the burden of this production on Clerk Lyons. (**Exhibit H**, Clerk Lyons' First Letter). The letter requested a response by September 13, but Lindell's counsel did not reply. Thereafter, on September 16, Clerk Lyons' counsel sent a second letter stating that Lindell's lack of response confirmed that the subpoena was unduly burdensome and asking that they withdraw it by September 19. (**Exhibit I**, Clerk Lyons' Second Letter). The cover email further noted that if the subpoena was not withdrawn, the Clerk would move to quash and asked Lindell's counsel to meet and confer as required by this Court's local rule.

On September 21, Lindell's counsel sent the Clerk's counsel an apparent form letter that referenced the Clerk's "objections" (the Clerk has not sent any). Lindell's counsel promised not to enforce the subpoena by the purported return date. But Lindell's counsel did not respond to any of the requests identified by the Clerk in her counsel's correspondence, did not withdraw the subpoena, and did not engage in the meet-and-confer process. (*See* **Exhibit J**, Lindell's Counsel's Letter).

# ARGUMENT

## I. Lindell's subpoena imposes an undue burden on the integrity of the election process and Kent County.

Federal Rule of Civil Procedure 45(d)(3) provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Few subpoenas impose a more significant burden than Lindell wants to

impose on the Kent County Clerk, for no apparent purpose other than to harass her and perpetuate already disproven election-fraud theories.

Typically, courts apply the following factors to determine if an undue burden exists: "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *New Products Corp. v. Dickinson Wright, PLLC (In re: Modern Plastics Corp.)*, 890 F3d 244, 251 (6th Cir. 2018). Further, the status of the subpoena-recipient as a non-party is also a factor. *Id.* Indeed, Rule 45 imposes an obligation on a party and counsel serving a subpoena on a non-party to "avoid imposing undue burden or expense on a person subject to the subpoena," and that the district court for the district where compliance is required "must enforce this duty." Fed. R. Civ. P. 45(d)(1).

Here, the burden imposed by the subpoena is extreme. Simply put, Lindell's subpoena threatens the Clerk's ability to ensure a fair and accurate election on November 8, 2022, and puts at risk the confidence that Kent County voters have in the election process.

The November 8, 2022 general election is just weeks away. While most Clerks are finalizing training and finishing equipment checks, Kent County is spending its time responding to this subpoena. If Kent County produced the information sought by Lindell, then the server it uses to conduct its elections would need to be recertified. (Ex. A, ¶ 5.) This process would take months and impose a considerable expense. (*Id.*) It would not be done in time for November 8, 2022. (*Id.*)

Additionally, the subpoena would require Kent County to set aside all voting machines it used in 2020 and replace this equipment. The cost for the new equipment would be over $4.2 million—a cost that would be shouldered by the taxpayers. (*Id.* at ¶ 7.) This does not include the

cost of installation, training, and other incidental costs associated with replacing Kent County's entire voting apparatus. (*See id*.) Practically speaking, with the general election a little over a month away, it would be impossible to acquire and install a new election system and train election workers by the election date. (*Id*.)

Even if Kent County could replace its voting equipment in time, producing the information sought by Lindell and rushing to purchase new voting machines would come at a price much steeper than $4.2 million—it would likely cost the faith Kent County residents have in the integrity of its election system. Lindell's subpoena requests that Clerk Lyons produce all the forensic evidence, copies of election results, and personnel information related to the November 2020 election. This would include providing, amongst other information, Kent County's passcodes and keys, cellphone bills, and Dominion's software. This proprietary information is crucial to the conduct of Kent County's elections. The information sought would allow Lindell, and anyone with whom he shared the information, a playbook for hacking into Kent County's Dominion-software based system, and Kent County would need to obtain a new system. (*Id.* at ¶¶ 5, 7-8.) If this information falls into the wrong hands, it is possible that someone could use the information to try to disrupt the security of the next election's votes. Providing this information to a third-party—and one who continues to espouse universally[3] debunked conspiracy theories about election fraud—runs the significant risk of causing Kent County voters to question the integrity of the election process.

This one factor alone provides a more-than-sufficient basis to quash Lindell's subpoena. Consideration of the other factors adds little. Lindell has declined to explain to the Clerk how

---

[3] Every investigative agency who has reviewed Lindell's claims have concluded there is no evidence to support it. There is no evidence of wide-spread election fraud related to the 2020 election.

Kent County's information is relevant to the Dominion litigation. Second, the requests are insufficiently detailed such that Kent County could not determine which documents it was even requesting.  For example, the subpoena calls for Kent County to produce "[c]opies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election." (Ex F.) As written, this would require the collection, review, and production of any email, memo, spreadsheet, note, or other document regarding the 2020 election.  Regardless of whether it relates to the voting equipment, or unrelated issues such as local elections, campaign finance inquiries, or other irrelevant topics.[4]

The breadth of Lindell's subpoena demonstrates that he and his counsel undertook no effort to minimize the burden of production on the Clerk. Indeed, it seems that they are seeking information regarding Dominion's software that is available from Dominion in the underlying litigation. Nor is it evident from the record in the underlying case why Kent County should be subject to Lindell's demands. And again, when the Clerk's counsel reached out to the issuing attorney, it received no response except for an inapplicable form letter.

For all these reasons, Lindell's subpoena should be quashed.

## II.   Lindell and his counsel should be required to pay the Clerk's costs and attorney fees in bringing this motion.

The Federal Rules of Civil Procedure provide for sanctions on subpoena-issuing parties and their counsel. This is a case that calls for the imposition of sanctions not just to reimburse the Kent County taxpayers for the expenses incurred in responding to this baseless subpoena, but to

---

[4] Further, Lindell's subpoena defines "forensic image" as "a bit-by-bit, sector-by-sector direct copy of a physical storage devices containing electronic data, including all files, folders and unallocated, free, and slack space." (Ex. F.) This definition and use of the term in the subpoena are both vague and ambiguous such that it cannot be ascertained what specific documents Lindell demands be produced. Rather, it seems that Lindell wants an exact reproduction of a thing—a server—which is not contemplated by Rule 45.

discourage Lindell and his counsel from issuing additional, similar subpoenas to other counties in this District and across the country.

Rule 45(d)(1) requires that an issuing party take "reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." If the party fails to do so, a court "must inforce this duty and impose an appropriate sanction—which may include lost earning and reasonable attorney's fees." *Id.* Courts within the Sixth Circuit have clarified that an issuing party has taken "reasonable steps" when they "engage[d] in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burdens" and no other "aggravating factors" exist. *In re Subpoena Duces Tecum to Tammy Risner*, 338 F.R.D. 380, 383 (S.D. Ohio 2021). Using a subpoena to harass an entity is an aggravating factor. *See id.* at 383–84.

Here, Lindell has taken no reasonable steps to avoid imposing an undue burden on Clerk Lyons. After receiving Lindell's subpoena, Clerk Lyons' counsel sent two letters to Lindell's counsel to discuss the burden the subpoena imposed and the relevance of the information requested. (Ex. H; *see also* Ex. I.) Despite Clerk Lyons' counsel making every attempt to resolve this conflict in a professional manner, Lindell has not addressed these issues. Instead, their only response was an ambiguous letter sent at the eleventh hour wherein they did not withdraw their subpoena. (Ex. J.)

As noted above, there was no widespread voter fraud in Kent County in the 2020 Presidential election. (Ex. A at ¶ 10.) This same conclusion has been reached by every investigatory agency who has reviewed the data—including the Trump Department of Justice. (Ex D.) Clerk Lyons publicly confirmed her faith in the election results and these investigatory findings after the 2020 election. (**Exhibit K**, www.detroitnews.com, accessed September 26, 2022) (*see also* **Exhibit L**, www.wzzm13.com, accessed September 26, 2022.)

Additionally, federal courts have come to the same conclusion. For example, in *King v. Whitmer*, the Eastern District of Michigan rejected plaintiffs' attempts to have Michigan's election results decertified finding that it was "nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden." 505 F. Supp. 3d 720, 737–38 (E.D. Mich. 2020); *see also Bowyer v. Ducey*, 506 F. Supp. 3d 699, 721 (D. Ariz. 2020) (concluding allegations of manipulation of the 2020 Presidential Election results were "sorely wanting of relevant or reliable evidence" and dismissing the case.)

Simply put, Lindell's conspiracy theory is baseless. He and his counsel have no evidence to suggest that the mountain of information it has demanded Kent County turn over will support the falsehoods that he peddles with his pillows. At this point, the subpoena is nothing more or less than harassment of the Clerk, quite possibly because she has spoken out regarding the integrity of Michigan's elections.

Lindell and his counsel have sought to impose an immediate duty to hold and later produce voluminous sensitive documents without any explanation as to why the Clerk, Kent County, and its taxpayers should bear the high burden and significant expense of doing so. Indeed, Lindell's other activities suggest that this is part of a coordinated strategy to perpetuate election-fraud theories that have already been debunked by numerous governmental agencies. When the Clerk's counsel requested specific follow up on Lindell's subpoena, his counsel did not respond except with a form letter saying that counsel would respond in a few weeks. (*See* Ex. J.) The Clerk and Kent County should not be required to await counsel's attention—he chose to issue a subpoena in this district, and he should be required to take his obligations under Rule 45 seriously.

This is not unusual behavior for Lindell. In August 2022, he encouraged attendees at a rally to request November 2020 cast voting records "from every election office in the country." (*See* **Exhibit M**, www.washingtonpost.com, accessed September 22, 2022). Lindell's podcast, the Lindell Report, also published an article that requested that individuals submit Freedom of Information Act requests for all communications between their state's Secretary of State Office and representatives of Dominion that included the terms "cast vote record" or "Mike Lindell." (*See* **Exhibit N**, www.frankspeech.com, accessed September 22, 2022).

Lindell is misusing the privilege of issuing subpoenas to third parties to harass and unduly burden the Clerk. He has not responded to reasonable requests to discuss his subpoena but has attempted only to delay a resolution of the problems that his subpoena creates for the Clerk. Sanctions are required to deter Lindell and his counsel's abhorrent behavior.

## CONCLUSION

Based upon the foregoing, Clerk Lyons respectfully requests that this Court: (i) quash the subpoena directed to her; (ii) award Clerk Lyons sanctions from Lindell, MyPillow, and their counsel in the form of attorneys' fees needlessly incurred as a result of Lindell's frivolous subpoena; and (iii) award any other relief this Court deems just and appropriate under the circumstances.

Dated:  October 4, 2022

*/s/  Madelaine Lane*
Matthew T. Nelson (P64768)
Madelaine Lane (P71294)
Tessa G. Mallett (P85617)
WARNER NORCROSS + JUDD LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503
616.752.2000
mlane@wnj.com

Attorney for non-party Kent County

14

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE SUBPOENA OF KENT COUNTY
CLERK

*U.S. Dominion, Inc. v. MyPillow, Inc. et al.*

Civil Action No. 1:21-cv-00445

United States District Court for the District
Court of Columbia

_____/

**DECLARATION OF GERRID UZARSKI**

I, Gerrid Uzarski, declare as follows:

1.      I serve as the Elections Director for Kent County, Michigan, at the County
Administration Building located at 300 Monroe Avenue NW, Grand Rapids, MI 49503-2288.

2.      In 2020, Kent County had a total of 252 voting precincts, and each of these had a
separate absentee counting precinct, resulting in a total of 504 precincts.

3.      On September 6, 2022, Kent County received a subpoena issued to Kent County
Clerk Lisa Posthumus Lyons from MyPillow, Inc. and Michael Lindell (collectively, "MyPillow")
through their attorney Andrew Parker in connection with *US Dominion Inc., et al. v. MyPillow,
Inc. et al.*, Case No.1:21-cv-00445 D.D.C. The subpoena purports to require that Clerk Lyons
produce all forensic evidence; electronic files; information related to Kent County's electronic
election system architecture; copies of all tabulator reports, certified final election results, and any
other document produced in relation to the 2020 general election within Kent County; cellphone
bills related to ballot scanners and ballot marking devices; and copies of all supplier and network
security contracts related to the 2020 general election.

4.      The subpoena requests that Kent County produce a high volume of information and I estimate that to gather these documents it would require approximately 80 hours of employee time.  Further, to provide the requested copies of documents, it would require review of 2.5 gigabytes of data, which is the equivalent of 250,000 emails and could cost as much as $625,000 to review.

5.      The forensic evidence the subpoena requests would include any drives attached to or affiliated with Kent County's electronic management system ("EMS") server. The EMS server costs $295,000.  If a non-certified third party, such as MyPillow, were to access these drives, Kent County would either need to obtain a new system or pay for an EAC-accredited contractor to re-certify our EMS server.  If Kent County hired a contractor, the server would not be re-certified in time for the upcoming general election on November 8, 2022.  Therefore, Kent County would have to replace the current system.

6.      Moreover, the requested documents contain proprietary information, including security passcodes and keys, IP addresses, and Dominion's software that Kent County uses to conduct its elections.  If this information were produced, then the election equipment Kent County uses would be unprotected.  As a result, outside parties could gain access to Kent County's equipment and manipulate our elections.  The Clerk believes that providing Lindell with the information he has requested will cause voters to lose additional confidence in the system. Thus, producing this information would erode the integrity and security of Kent County's elections.

7.      Further, the production of the proprietary information would render the equipment unusable because of security concerns and it would need to be replaced.  To replace all our election equipment would cost an estimated $4.2 million.  It is not possible to secure this funding by the

upcoming general election and replacing the equipment before November 8, 2022 is impossible. As a result, Kent County could not conduct its election.

8.      As such, the production of the requested information would require Kent County to incur a significant expense to replace its server and equipment.  More importantly, it would jeopardize the integrity of Kent County's elections and render us unable to conduct the November 8, 2022 general election.

9.      In November 2020, 363,695 registered voters in Kent County cast a vote for Michigan's Presidential electors.  51.91% of voters voted for now-President Joseph Biden and 45.78% voted for Donald Trump.

10.     After the ballots were cast, the Kent County votes were canvassed to certify the results.  Exhibit A is a copy of the December 2020 Presidential election audit for Kent County. This is a hand audit conducted by the Kent County Clerk/Register of Deeds office under guidance from the Michigan Bureau of Elections. Neither the canvas nor the audit revealed any evidence of voter fraud in Kent County during the 2020 election.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on October 3, 2022.


Printed Name: Gerrid Uzarski
Kent County Elections Director
County Administration Building
300 Monroe Avenue NW
Grand Rapids, MI 49503-2288

# EXHIBIT B

# Election Summary Report

General Election

Kent County, Michigan

November 3, 2020

OFFICIAL RESULTS

| | |
|---|---|
| Precincts Reported: 252 of 252 (100.00%) | Election Day Voters: 149,409   41.10% |
| Registered Voters: 363,695 of 501,117 (72.58%) | Absentee Voters:  214,286   58.90% |
| Ballots Cast: 363,695 | |
| **Turnout Data from Kent County Only** | |

## Straight Party (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Republican Party | REP | 54,922 | 51,596 | 106,518 | 50.01% |
| Democratic Party | DEM | 31,488 | 71,771 | 103,259 | 48.48% |
| Libertarian Party | LIB | 883 | 629 | 1,512 | 0.71% |
| Working Class Party | WCP | 469 | 297 | 766 | 0.36% |
| Green Party | GRN | 254 | 229 | 483 | 0.23% |
| US Taxpayers Party | UST | 156 | 131 | 287 | 0.13% |
| Natural Law Party | NLP | 108 | 73 | 181 | 0.08% |
| Total Votes | | 88,280 | 124,726 | 213,006 | |

## President / Vice Pres. (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Joseph R. Biden w/ Kamala D. Harris | DEM | 55,382 | 132,533 | 187,915 | 51.91% |
| Donald J. Trump w/ Michael R. Pence | REP | 89,379 | 76,362 | 165,741 | 45.78% |
| Jo Jorgensen w/ Jeremy Cohen | LIB | 2,899 | 2,596 | 5,495 | 1.52% |
| Howie Hawkins w/ Angela Walker | GRN | 433 | 524 | 957 | 0.26% |
| Don Blankenship w/ William Mohr | UST | 178 | 312 | 490 | 0.14% |
| Rocky De La Fuente w/ Darcy Richardson | NLP | 122 | 119 | 241 | 0.07% |
| Total Votes | | 148,942 | 213,089 | 362,031 | |
| Brian T. Carroll (Qualified WI) | | | | 192 | |
| Tom Hoefling (Qualified WI) | | | | 2 | |
| Tara Renee Hunter (Qualified WI) | | | | 1 | |
| Jade Simmons (Qualified WI) | | | | 13 | |
| Kasey Wells  (Qualified WI) | | | | 1 | |

## US Senator (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| John James | REP | 93,057 | 83,738 | 176,795 | 49.24% |
| Gary Peters | DEM | 51,357 | 123,899 | 175,256 | 48.81% |
| Marcia Squier | GRN | 1,304 | 1,652 | 2,956 | 0.82% |
| Valerie L. Willis | UST | 1,332 | 1,616 | 2,948 | 0.82% |
| Doug Dern | NLP | 350 | 372 | 722 | 0.20% |
| Total Votes | | 147,612 | 211,422 | 359,034 | |
| Robert William Karr (Qualified WI) | | | | 0 | |
| Leonard Paul Gadzinski (Qualified WI) | | | | 0 | |

## Rep In Congress, 2nd Dist. (Vote for 1)

Precincts Reported: 64 of 64 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 38,483 | 49,627 | 88,110 / 126,837 | 69.47% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Bill Huizenga | REP | 23,194 | 20,209 | 43,403 | 50.31% |
| Bryan Berghoef | DEM | 12,958 | 27,254 | 40,212 | 46.61% |
| Max Riekse | LIB | 811 | 503 | 1,314 | 1.52% |
| Jean-Michel Creviere | GRN | 344 | 365 | 709 | 0.82% |
| Gerald T. Van Sickle | UST | 256 | 203 | 459 | 0.53% |
| Total Votes | | 37,664 | 48,603 | 86,267 | |
| Richard David Fuentes (Qualified WI) | | | | 0 | |
| Shannon Ruth Hogan (Qualified WI) | | | | 0 | |

## Rep In Congress, 3rd Dist. (Vote for 1)

Precincts Reported: 189 of 189 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 110,926 | 164,659 | 275,585 / 374,280 | 73.63% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Hillary Scholten | DEM | 40,132 | 96,455 | 136,587 | 50.48% |
| Peter Meijer | REP | 68,309 | 65,028 | 133,337 | 49.28% |
| Total Votes | | 108,847 | 161,723 | 270,570 | |

# State Rep., 72nd Dist. (Vote for 1)

Precincts Reported: 27 of 27 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 16,929 | 25,740 | 42,669 / 61,136 | 69.79% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Lily Cheng-Schulting | DEM | 6,418 | 14,566 | 20,984 | 50.69% |
| Steven Johnson | REP | 9,961 | 10,316 | 20,277 | 48.99% |
| Total Votes | | 16,455 | 24,939 | 41,394 | |

# State Rep., 73rd Dist. (Vote for 1)

Precincts Reported: 42 of 42 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 26,158 | 41,343 | 67,501 / 83,907 | 80.45% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Bryan Posthumus | REP | 18,525 | 18,612 | 37,137 | 56.89% |
| Bill Saxton | DEM | 6,250 | 20,928 | 27,178 | 41.63% |
| Theodore Gerrard | UST | 475 | 402 | 877 | 1.34% |
| Total Votes | | 25,320 | 39,959 | 65,279 | |
| Ronald Lee Heeren (Qualified WI) | | | | 1 | |

# State Rep., 74th Dist. (Vote for 1)

Precincts Reported: 36 of 36 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 25,399 | 30,616 | 56,015 / 74,550 | 75.14% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mark E. Huizenga | REP | 18,339 | 15,729 | 34,068 | 62.94% |
| Meagan L. Hintz | DEM | 6,113 | 13,784 | 19,897 | 36.76% |
| Total Votes | | 24,563 | 29,561 | 54,124 | |

# State Rep., 75th Dist. (Vote for 1)

Precincts Reported: 38 of 38 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 17,994 | 24,309 | 42,303 / 72,801 | 58.11% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| David LaGrand | DEM | 11,035 | 19,388 | 30,423 | 74.38% |
| James McKeiver | REP | 5,102 | 3,213 | 8,315 | 20.33% |
| Louis Palus | WCP | 720 | 514 | 1,234 | 3.02% |
| Marco T. Bulnes | GRN | 391 | 407 | 798 | 1.95% |
| Total Votes | | 17,341 | 23,561 | 40,902 | |

## State Rep., 76th Dist. (Vote for 1)

Precincts Reported: 38 of 38 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 20,910 | 34,882 | 55,792 / 75,617 | 73.78% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Rachel Hood | DEM | 9,941 | 23,946 | 33,887 | 62.56% |
| Doug Zandstra | REP | 10,247 | 9,864 | 20,111 | 37.13% |
| Total Votes | | 20,291 | 33,873 | 54,164 | |

## State Rep., 77th Dist. (Vote for 1)

Precincts Reported: 38 of 38 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 23,611 | 28,461 | 52,072 / 75,124 | 69.31% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Tommy Brann | REP | 15,649 | 14,566 | 30,215 | 59.71% |
| Bob Smith | DEM | 7,174 | 13,021 | 20,195 | 39.91% |
| Total Votes | | 22,951 | 27,654 | 50,605 | |

## State Rep., 86th Dist. (Vote for 1)

Precincts Reported: 33 of 33 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 18,408 | 28,934 | 47,342 / 57,982 | 81.65% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Thomas A. Albert | REP | 13,601 | 14,701 | 28,302 | 62.36% |
| Sue Hayes | DEM | 4,029 | 12,941 | 16,970 | 37.39% |
| Total Votes | | 17,702 | 27,684 | 45,386 | |

## State Board of Ed. (Vote for  2)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Ellen Cogen Lipton | DEM | 47,210 | 114,152 | 161,362 | 24.13% |
| Michelle A. Frederick | REP | 80,345 | 76,848 | 157,193 | 23.50% |
| Tami Carlone | REP | 78,607 | 75,584 | 154,191 | 23.05% |
| Jason Strayhorn | DEM | 43,804 | 107,984 | 151,788 | 22.69% |
| Bill Hall | LIB | 5,965 | 4,556 | 10,521 | 1.57% |
| Mary Anne Hering | WCP | 4,565 | 5,080 | 9,645 | 1.44% |
| Richard A. Hewer | LIB | 4,187 | 3,489 | 7,676 | 1.15% |
| Hali McEachern | WCP | 2,337 | 2,503 | 4,840 | 0.72% |
| Karen Adams | UST | 2,130 | 2,154 | 4,284 | 0.64% |
| Tom Mair | GRN | 1,928 | 2,341 | 4,269 | 0.64% |
| Douglas Levesque | UST | 984 | 938 | 1,922 | 0.29% |
| Total Votes | | 272,819 | 396,009 | 668,828 | |

## U of M Regents (Vote for  2)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Sarah Hubbard | REP | 81,414 | 79,079 | 160,493 | 24.44% |
| Carl Meyers | REP | 78,868 | 74,907 | 153,775 | 23.41% |
| Shauna Ryder Diggs | DEM | 44,598 | 109,176 | 153,774 | 23.41% |
| Mark Bernstein | DEM | 45,476 | 108,141 | 153,617 | 23.39% |
| Eric Larson | LIB | 5,046 | 4,488 | 9,534 | 1.45% |
| James L. Hudler | LIB | 4,471 | 3,479 | 7,950 | 1.21% |
| Michael Mawilai | GRN | 2,348 | 3,471 | 5,819 | 0.89% |
| Crystal Van Sickle | UST | 2,316 | 2,769 | 5,085 | 0.77% |
| Ronald E. Graeser | UST | 1,376 | 1,407 | 2,783 | 0.42% |
| Keith Butkovich | NLP | 1,200 | 1,184 | 2,384 | 0.36% |
| Total Votes | | 268,139 | 388,623 | 656,762 | |

## MSU Trustee (Vote for 2)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Pat O'Keefe | REP | 81,386 | 77,672 | 159,058 | 24.37% |
| Tonya Schuitmaker | REP | 79,861 | 77,733 | 157,594 | 24.15% |
| Rema Ella Vassar | DEM | 44,810 | 108,850 | 153,660 | 23.55% |
| Brian Mosallam | DEM | 43,190 | 104,821 | 148,011 | 22.68% |
| Will Tyler White | LIB | 5,567 | 4,525 | 10,092 | 1.55% |
| Robin Lea Laurain | GRN | 2,148 | 3,603 | 5,751 | 0.88% |
| Janet M. Sanger | UST | 2,476 | 2,751 | 5,227 | 0.80% |
| Brandon Hu | GRN | 2,140 | 3,019 | 5,159 | 0.79% |
| Bridgette Abraham-Guzman | NLP | 1,649 | 1,651 | 3,300 | 0.51% |
| John Paul Sanger | UST | 1,649 | 1,517 | 3,166 | 0.49% |
| Total Votes |  | 265,937 | 386,660 | 652,597 | |

## Wayne State Governors (Vote for 2)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Terri Lynn Land | REP | 81,794 | 80,165 | 161,959 | 25.12% |
| Don Gates | REP | 79,191 | 75,397 | 154,588 | 23.98% |
| Eva Garza Dewaelsche | DEM | 45,102 | 107,508 | 152,610 | 23.67% |
| Shirley Stancato | DEM | 43,474 | 106,611 | 150,085 | 23.28% |
| Jon Elgas | LIB | 5,634 | 4,556 | 10,190 | 1.58% |
| Susan Odgers | GRN | 2,987 | 4,285 | 7,272 | 1.13% |
| Christine C. Schwartz | UST | 3,011 | 3,145 | 6,156 | 0.95% |
| Total Votes |  | 262,379 | 382,247 | 644,626 | |
| Lloyd Aurthur Conway (Qualified WI) |  |  |  | 11 | |

## Prosecuting Attorney (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Chris Becker | REP | 108,692 | 120,853 | 229,545 | 94.36% |
| Total Votes |  | 115,363 | 127,908 | 243,271 | |

## Sheriff (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Michelle LaJoye-Young | REP | 91,322 | 96,294 | 187,616 | 53.51% |
| Marc Burns | DEM | 45,162 | 104,522 | 149,684 | 42.69% |
| John Glen Stedman | LIB | 7,076 | 5,332 | 12,408 | 3.54% |
| Total Votes | | 144,140 | 206,466 | 350,606 | |

## Clerk/Reg. Deeds (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Lisa Posthumus Lyons | REP | 90,295 | 92,067 | 182,362 | 52.68% |
| Devin Ortega-Furgeson | DEM | 44,284 | 104,799 | 149,083 | 43.06% |
| Jamie Lewis | LIB | 6,948 | 6,831 | 13,779 | 3.98% |
| Total Votes | | 142,191 | 204,009 | 346,200 | |

## County Treasurer (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Peter MacGregor | REP | 91,585 | 88,166 | 179,751 | 52.06% |
| Beth White | DEM | 49,602 | 114,864 | 164,466 | 47.63% |
| Total Votes | | 141,882 | 203,400 | 345,282 | |

## Drain Comm. (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Ken Yonker | REP | 86,117 | 84,494 | 170,611 | 49.58% |
| Elaine Isely | DEM | 47,269 | 111,853 | 159,122 | 46.25% |
| Alex Avery | LIB | 7,215 | 5,996 | 13,211 | 3.84% |
| Total Votes | | 141,376 | 202,707 | 344,083 | |

## County Comm., 1st Dist. (Vote for 1)

Precincts Reported: 11 of 11 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,388 | 14,191 | 22,579 / 28,195 | 80.08% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Ben Greene | REP | 5,834 | 6,540 | 12,374 | 58.27% |
| Deb Havens | DEM | 1,981 | 6,830 | 8,811 | 41.49% |
| Total Votes | | 7,855 | 13,380 | 21,235 | |

## County Comm., 2nd Dist. (Vote for 1)

Precincts Reported: 14 of 14 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 9,186 | 10,617 | 19,803 / 26,814 | 73.85% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Thomas B. Antor | REP | 6,433 | 5,509 | 11,942 | 64.54% |
| Jerry Berta | DEM | 2,077 | 4,408 | 6,485 | 35.05% |
| Total Votes | | 8,570 | 9,932 | 18,502 | |

## County Comm., 3rd Dist. (Vote for 1)

Precincts Reported: 12 of 12 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 9,556 | 9,643 | 19,199 / 25,684 | 74.75% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Roger C. Morgan | REP | 7,318 | 5,252 | 12,570 | 70.27% |
| G. Scott Schuiling | DEM | 1,540 | 3,704 | 5,244 | 29.32% |
| Total Votes | | 8,916 | 8,972 | 17,888 | |

## County Comm., 4th Dist. (Vote for 1)

Precincts Reported: 15 of 15 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 9,475 | 12,578 | 22,053 / 27,525 | 80.12% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Diane Jones | REP | 7,031 | 6,547 | 13,578 | 66.10% |
| Kari Smith | DEM | 1,791 | 5,126 | 6,917 | 33.67% |
| Total Votes | | 8,858 | 11,684 | 20,542 | |

## County Comm., 5th Dist. (Vote for 1)

Precincts Reported: 16 of 16 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 9,371 | 15,636 | 25,007 / 30,392 | 82.28% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mandy Bolter | REP | 6,919 | 8,177 | 15,096 | 65.13% |
| Neville Mark | DEM | 1,792 | 6,238 | 8,030 | 34.64% |
| Total Votes | | 8,748 | 14,432 | 23,180 | |

## County Comm., 6th Dist. (Vote for 1)

Precincts Reported: 13 of 13 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,775 | 11,858 | 20,633 / 26,603 | 77.56% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Stan Stek | REP | 5,708 | 5,099 | 10,807 | 54.87% |
| Danielle M. Storey | DEM | 2,611 | 6,223 | 8,834 | 44.85% |
| Total Votes | | 8,350 | 11,346 | 19,696 | |

## County Comm., 7th Dist. (Vote for 1)

Precincts Reported: 13 of 13 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,067 | 8,602 | 16,669 / 23,970 | 69.54% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Stan Ponstein | REP | 4,740 | 3,681 | 8,421 | 53.06% |
| Jane Newton | DEM | 2,867 | 4,508 | 7,375 | 46.47% |
| Total Votes | | 7,656 | 8,214 | 15,870 | |

## County Comm., 8th Dist. (Vote for 1)

Precincts Reported: 13 of 13 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,414 | 9,451 | 17,865 / 24,959 | 71.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Dan Burrill | REP | 5,230 | 3,935 | 9,165 | 53.92% |
| Sarah Chatterley | DEM | 2,722 | 5,043 | 7,765 | 45.68% |
| Total Votes | | 8,002 | 8,995 | 16,997 | |

## County Comm., 9th Dist. (Vote for 1)

Precincts Reported: 12 of 12 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,775 | 12,905 | 21,680 / 28,859 | 75.12% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Matt Kallman | REP | 6,201 | 6,958 | 13,159 | 64.48% |
| Keith Courtade | DEM | 2,059 | 5,114 | 7,173 | 35.15% |
| Total Votes | | 8,301 | 12,107 | 20,408 | |

## County Comm., 10th Dist. (Vote for 1)

Precincts Reported: 12 of 12 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,568 | 11,215 | 19,783 / 26,660 | 74.20% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Emily Post Brieve | REP | 6,046 | 5,920 | 11,966 | 64.19% |
| Robert Sames | DEM | 2,018 | 4,584 | 6,602 | 35.41% |
| Total Votes | | 8,120 | 10,522 | 18,642 | |

## County Comm., 11th Dist. (Vote for 1)

Precincts Reported: 18 of 18 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,055 | 15,381 | 23,436 / 28,377 | 82.59% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Lindsey Thiel | REP | 5,474 | 6,924 | 12,398 | 56.22% |
| Justin Sheldon | DEM | 2,129 | 7,488 | 9,617 | 43.61% |
| Total Votes | | 7,627 | 14,424 | 22,051 | |

## County Comm., 12th Dist. (Vote for 1)

Precincts Reported: 12 of 12 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,402 | 7,577 | 13,979 / 22,340 | 62.57% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Monica Sparks | DEM | 2,827 | 4,819 | 7,646 | 57.13% |
| Ryan Malinoski | REP | 3,240 | 2,426 | 5,666 | 42.34% |
| Total Votes | | 6,117 | 7,266 | 13,383 | |

## County Comm., 13th Dist. (Vote for 1)

Precincts Reported: 12 of 12 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 6,774 | 12,373 | 19,147 / 27,539 | 69.53% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Michelle McCloud | DEM | 3,221 | 8,052 | 11,273 | 61.76% |
| Levi Cipcic | REP | 3,155 | 3,754 | 6,909 | 37.85% |
| Total Votes |  | 6,414 | 11,839 | 18,253 |  |

## County Comm., 14th Dist. (Vote for 1)

Precincts Reported: 12 of 12 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 7,048 | 9,053 | 16,101 / 25,045 | 64.29% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Carol M. Hennessy | DEM | 3,640 | 6,474 | 10,114 | 66.71% |
| Blake Edmonds | REP | 2,884 | 2,080 | 4,964 | 32.74% |
| Total Votes |  | 6,584 | 8,578 | 15,162 |  |

## County Comm., 15th Dist. (Vote for 1)

Precincts Reported: 11 of 11 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 5,332 | 7,569 | 12,901 / 22,988 | 56.12% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Melissa LaGrand | DEM | 3,529 | 6,065 | 9,594 | 77.36% |
| Brian Boersema | REP | 1,542 | 1,187 | 2,729 | 22.00% |
| Total Votes |  | 5,109 | 7,293 | 12,402 |  |
| Joel Townsend (Qualified WI) |  |  |  | 1 |  |

## County Comm., 16th Dist. (Vote for 1)

Precincts Reported: 14 of 14 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 7,091 | 10,074 | 17,165 / 25,745 | 66.67% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Dave Bulkowski | DEM | 4,056 | 7,873 | 11,929 | 73.59% |
| Eric Baxter | REP | 2,557 | 1,647 | 4,204 | 25.94% |
| Total Votes |  | 6,657 | 9,552 | 16,209 |  |

## County Comm., 17th Dist. (Vote for 1)

Precincts Reported: 14 of 14 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,139 | 9,514 | 15,653 / 26,815 | 58.37% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robert Womack | DEM | 4,531 | 8,030 | 12,561 | 83.55% |
| Jason Gillikin | REP | 1,282 | 1,095 | 2,377 | 15.81% |
| Total Votes | | 5,877 | 9,157 | 15,034 | |

## County Comm., 18th Dist. (Vote for 1)

Precincts Reported: 13 of 13 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 7,484 | 12,697 | 20,181 / 26,806 | 75.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Stephen Wooden | DEM | 2,920 | 8,183 | 11,103 | 58.20% |
| Josie Kornev | REP | 4,075 | 3,829 | 7,904 | 41.43% |
| Total Votes | | 7,036 | 12,042 | 19,078 | |

## County Comm., 19th Dist. (Vote for 1)

Precincts Reported: 15 of 15 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,509 | 13,351 | 19,860 / 25,801 | 76.97% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Phil Skaggs | DEM | 2,921 | 8,737 | 11,658 | 61.74% |
| Cris Birdsong | REP | 3,215 | 3,941 | 7,156 | 37.90% |
| Total Votes | | 6,174 | 12,708 | 18,882 | |

## Ada Twp. Supervisor (Vote for 1)

Precincts Reported: 8 of 8 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 6,520 | 9,803 / 11,843 | 82.77% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Ross Leisman | REP | 2,558 | 4,125 | 6,683 | 98.37% |
| Total Votes | | 2,609 | 4,185 | 6,794 | |

# Ada Twp. Clerk (Vote for 1)

Precincts Reported: 8 of 8 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 6,520 | 9,803 / 11,843 | 82.77% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jacqueline Smith | REP | 2,564 | 4,130 | 6,694 | 98.50% |
| Total Votes | | 2,609 | 4,187 | 6,796 | |

# Ada Twp. Treasurer (Vote for 1)

Precincts Reported: 8 of 8 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 6,520 | 9,803 / 11,843 | 82.77% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kevin W. Moran | REP | 2,545 | 4,070 | 6,615 | 98.44% |
| Total Votes | | 2,592 | 4,128 | 6,720 | |

# Ada Twp. Trustee (Vote for 4)

Precincts Reported: 8 of 8 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 6,520 | 9,803 / 11,843 | 82.77% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Catherine Jacobs | REP | 2,345 | 3,849 | 6,194 | 25.70% |
| Daniel Hurwitz | REP | 2,295 | 3,709 | 6,004 | 24.91% |
| Robert Proos | REP | 2,222 | 3,640 | 5,862 | 24.32% |
| Chris Winczewski | REP | 2,197 | 3,628 | 5,825 | 24.17% |
| Total Votes | | 9,141 | 14,963 | 24,104 | |

# Algoma Twp. Supervisor (Vote for 1)

Precincts Reported: 5 of 5 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 4,212 | 7,495 / 9,155 | 81.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kevin J. Green | REP | 2,711 | 2,805 | 5,516 | 99.26% |
| Total Votes | | 2,752 | 2,805 | 5,557 | |

# Algoma Twp. Clerk (Vote for 1)

Precincts Reported: 5 of 5 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 4,212 | 7,495 / 9,155 | 81.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Judy A. Bigney | REP | 2,694 | 2,802 | 5,496 | 99.21% |
| Total Votes | | 2,738 | 2,802 | 5,540 | |

# Algoma Twp. Treasurer (Vote for 1)

Precincts Reported: 5 of 5 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 4,212 | 7,495 / 9,155 | 81.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kristina Bitely-Abrigo | REP | 2,675 | 2,757 | 5,432 | 99.21% |
| Total Votes | | 2,718 | 2,757 | 5,475 | |

# Algoma Twp. Trustee (Vote for 4)

Precincts Reported: 5 of 5 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,283 | 4,212 | 7,495 / 9,155 | 81.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Elizabeth Johnson | REP | 2,469 | 2,604 | 5,073 | 25.77% |
| Gordon Pickerd | REP | 2,364 | 2,537 | 4,901 | 24.90% |
| James Powell | REP | 2,370 | 2,505 | 4,875 | 24.77% |
| Steve Rikkers | REP | 2,311 | 2,454 | 4,765 | 24.21% |
| Total Votes | | 9,582 | 10,100 | 19,682 | |

# Alpine Twp. Supervisor (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,268 | 3,964 | 7,232 / 10,527 | 68.70% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Greg Madura | REP | 2,094 | 1,997 | 4,091 | 59.36% |
| Joe Cadreau | DEM | 989 | 1,788 | 2,777 | 40.29% |
| Total Votes | | 3,099 | 3,793 | 6,892 | |

## Alpine Twp. Clerk (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,268 | 3,964 | 7,232 / 10,527 | 68.70% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jean Wahlfield | REP | 2,098 | 2,091 | 4,189 | 60.73% |
| Eric-John Szczepaniak | DEM | 972 | 1,708 | 2,680 | 38.85% |
| Total Votes |  | 3,094 | 3,804 | 6,898 | |

## Alpine Twp. Treasurer (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,268 | 3,964 | 7,232 / 10,527 | 68.70% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Beth Alt | REP | 2,117 | 2,097 | 4,214 | 61.24% |
| Sabra Szczepaniak | DEM | 958 | 1,680 | 2,638 | 38.34% |
| Total Votes |  | 3,096 | 3,785 | 6,881 | |

## Alpine Twp. Trustee (Vote for 4)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,268 | 3,964 | 7,232 / 10,527 | 68.70% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mike Wahlfield | REP | 1,995 | 2,079 | 4,074 | 21.41% |
| Ronald C. Cordes | REP | 1,959 | 2,019 | 3,978 | 20.90% |
| Rob Scheidel | REP | 1,944 | 1,988 | 3,932 | 20.66% |
| William J. Schweitzer | REP | 1,899 | 1,953 | 3,852 | 20.24% |
| George Ramirez Madrigal | DEM | 1,068 | 2,011 | 3,079 | 16.18% |
| Total Votes |  | 8,950 | 10,082 | 19,032 | |

## Bowne Twp. Supervisor (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,211 | 944 | 2,155 / 2,578 | 83.59% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Randy Wilcox | REP | 1,041 | 704 | 1,745 | 98.03% |
| Total Votes |  | 1,057 | 723 | 1,780 | |

# Bowne Twp. Clerk (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 1,211 | 944 | 2,155 / 2,578 | 83.59% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Sandra L. Kowalczyk | REP | 1,034 | 706 | 1,740 | 98.03% |
| Total Votes | | 1,049 | 726 | 1,775 | |

# Bowne Twp. Treasurer (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 1,211 | 944 | 2,155 / 2,578 | 83.59% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Tammi L. Wingeier | REP | 1,042 | 703 | 1,745 | 98.09% |
| Total Votes | | 1,056 | 723 | 1,779 | |

# Bowne Twp. Trustee (Vote for 2)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 1,211 | 944 | 2,155 / 2,578 | 83.59% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Bob Flynn | REP | 985 | 675 | 1,660 | 50.11% |
| David Fuss | REP | 941 | 663 | 1,604 | 48.42% |
| Total Votes | | 1,945 | 1,368 | 3,313 | |

# Byron Twp. Supervisor (Vote for 1)

Precincts Reported: 8 of 8 (100.00%)

|  | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- |
| Times Cast | 6,172 | 9,752 | 15,924 / 20,054 | 79.41% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Donald L. Tillema | REP | 4,767 | 6,291 | 11,058 | 87.06% |
| Total Votes | | 5,400 | 7,301 | 12,701 | |
| Drew Jones (Qualified WI) | | | | 1,392 | |

# Byron Twp. Clerk (Vote for 1)

Precincts Reported: 8 of 8 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,172 | 9,752 | 15,924 / 20,054 | 79.41% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Peggy Sattler | REP | 5,255 | 7,159 | 12,414 | 98.27% |
| Total Votes |  | 5,366 | 7,266 | 12,632 | |

# Byron Twp. Treasurer (Vote for 1)

Precincts Reported: 8 of 8 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,172 | 9,752 | 15,924 / 20,054 | 79.41% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robin Haaksma | REP | 5,213 | 6,986 | 12,199 | 98.21% |
| Total Votes |  | 5,321 | 7,100 | 12,421 | |

# Byron Twp. Trustee (Vote for 4)

Precincts Reported: 8 of 8 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,172 | 9,752 | 15,924 / 20,054 | 79.41% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Tom Hooker | REP | 4,845 | 6,486 | 11,331 | 25.14% |
| Marty Tilma | REP | 4,677 | 6,500 | 11,177 | 24.80% |
| Scott Tubergen | REP | 4,610 | 6,424 | 11,034 | 24.48% |
| Jay DeKleine | REP | 4,625 | 6,342 | 10,967 | 24.33% |
| Total Votes |  | 18,983 | 26,084 | 45,067 | |

# Caledonia Twp. Supervisor (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,839 | 5,898 | 9,737 / 12,025 | 80.97% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Bryan Harrison | REP | 3,271 | 4,193 | 7,464 | 98.06% |
| Total Votes |  | 3,338 | 4,274 | 7,612 | |

# Caledonia Twp. Clerk (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,839 | 5,898 | 9,737 / 12,025 | 80.97% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Joni R. Henry | REP | 3,252 | 4,201 | 7,453 | 98.57% |
| Total Votes | | 3,309 | 4,252 | 7,561 | |

# Caledonia Twp. Treasurer (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,839 | 5,898 | 9,737 / 12,025 | 80.97% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Richard C. Robertson | REP | 3,212 | 4,080 | 7,292 | 98.53% |
| Total Votes | | 3,267 | 4,134 | 7,401 | |

# Caledonia Twp. Trustee (Vote for 4)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,839 | 5,898 | 9,737 / 12,025 | 80.97% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Tim Bradshaw | REP | 2,985 | 3,812 | 6,797 | 25.59% |
| Greg Zoller | REP | 2,848 | 3,660 | 6,508 | 24.51% |
| Dale Hermenet | REP | 2,842 | 3,662 | 6,504 | 24.49% |
| Rick Snoeyink | REP | 2,828 | 3,667 | 6,495 | 24.46% |
| Total Votes | | 11,633 | 14,923 | 26,556 | |

# Cannon Twp. Supervisor (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,833 | 6,314 | 10,147 / 12,138 | 83.60% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Stephen L. Grimm | REP | 3,169 | 4,219 | 7,388 | 99.34% |
| Total Votes | | 3,218 | 4,219 | 7,437 | |

## Cannon Twp. Clerk (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,833 | 6,314 | 10,147 / 12,138 | 83.60% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Deb Diepenhorst | REP | 3,179 | 4,255 | 7,434 | 99.42% |
| Total Votes | | 3,222 | 4,255 | 7,477 | |

## Cannon Twp. Treasurer (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,833 | 6,314 | 10,147 / 12,138 | 83.60% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| David H. Spencer | REP | 3,145 | 4,155 | 7,300 | 99.36% |
| Total Votes | | 3,192 | 4,155 | 7,347 | |

## Cannon Twp. Trustee (Vote for 4)

Precincts Reported: 6 of 6 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,833 | 6,314 | 10,147 / 12,138 | 83.60% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Katie DeBoer | REP | 2,941 | 3,931 | 6,872 | 25.91% |
| James A. Alles | REP | 2,835 | 3,783 | 6,618 | 24.95% |
| Terry Brod | REP | 2,776 | 3,727 | 6,503 | 24.51% |
| Joseph Gavan | REP | 2,734 | 3,717 | 6,451 | 24.32% |
| Total Votes | | 11,369 | 15,158 | 26,527 | |

## Cascade Twp. Supervisor (Vote for 1)

Precincts Reported: 10 of 10 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,406 | 9,172 | 13,578 / 16,081 | 84.44% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Grace Lesperance | REP | 3,608 | 5,765 | 9,373 | 97.98% |
| Total Votes | | 3,669 | 5,897 | 9,566 | |

# Cascade Twp. Clerk (Vote for 1)

Precincts Reported: 10 of 10 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,406 | 9,172 | 13,578 / 16,081 | 84.44% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Susan B. Slater | REP | 3,581 | 5,762 | 9,343 | 98.42% |
| Total Votes | | 3,639 | 5,854 | 9,493 | |

# Cascade Twp. Treasurer (Vote for 1)

Precincts Reported: 10 of 10 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,406 | 9,172 | 13,578 / 16,081 | 84.44% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Ken Peirce | REP | 3,563 | 5,654 | 9,217 | 98.44% |
| Total Votes | | 3,624 | 5,739 | 9,363 | |

# Cascade Twp. Trustee (Vote for 4)

Precincts Reported: 10 of 10 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,406 | 9,172 | 13,578 / 16,081 | 84.44% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jim Koessel | REP | 3,134 | 4,734 | 7,868 | 19.22% |
| Tom McDonald | REP | 3,099 | 4,756 | 7,855 | 19.19% |
| John Michael Shipley | REP | 2,932 | 4,246 | 7,178 | 17.54% |
| Timmy Noordhoek | REP | 2,953 | 4,191 | 7,144 | 17.45% |
| Alana Feigenbaum | DEM | 1,116 | 4,456 | 5,572 | 13.61% |
| Jonathan Poland | DEM | 1,017 | 4,206 | 5,223 | 12.76% |
| Total Votes | | 14,298 | 26,636 | 40,934 | |

# Courtland Twp. Supervisor (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,482 | 3,472 | 5,954 / 7,203 | 82.66% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Matt McConnon | REP | 2,075 | 2,286 | 4,361 | 98.46% |
| Total Votes | | 2,105 | 2,324 | 4,429 | |

## Courtland Twp. Clerk (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,482 | 3,472 | 5,954 / 7,203 | 82.66% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Susan K. Hartman | REP | 2,054 | 2,283 | 4,337 | 98.70% |
| Total Votes | | 2,083 | 2,311 | 4,394 | |

## Courtland Twp. Treasurer (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,482 | 3,472 | 5,954 / 7,203 | 82.66% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Colleen L. Brown | REP | 2,043 | 2,242 | 4,285 | 98.62% |
| Total Votes | | 2,074 | 2,271 | 4,345 | |

## Courtland Twp. Trustee (Vote for 4)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,482 | 3,472 | 5,954 / 7,203 | 82.66% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| MaryAnn Andersen | REP | 1,835 | 2,105 | 3,940 | 25.27% |
| Terry A. Bartels | REP | 1,810 | 2,047 | 3,857 | 24.74% |
| Kimberly Jan McIntyre | REP | 1,786 | 2,046 | 3,832 | 24.58% |
| Sandra K. Frandsen | REP | 1,762 | 2,055 | 3,817 | 24.48% |
| Total Votes | | 7,261 | 8,329 | 15,590 | |

## Gaines Twp. Supervisor (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,691 | 8,680 | 15,371 / 21,243 | 72.36% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robert DeWard | REP | 5,255 | 5,491 | 10,746 | 95.72% |
| Total Votes | | 5,499 | 5,727 | 11,226 | |

## Gaines Twp. Clerk (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,691 | 8,680 | 15,371 / 21,243 | 72.36% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Michael Brew | REP | 5,243 | 5,491 | 10,734 | 95.81% |
| Total Votes | | 5,481 | 5,723 | 11,204 | |

## Gaines Twp. Treasurer (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,691 | 8,680 | 15,371 / 21,243 | 72.36% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Laurie J. Lemke | REP | 5,244 | 5,476 | 10,720 | 95.83% |
| Total Votes | | 5,479 | 5,708 | 11,187 | |

## Gaines Twp. Trustee (Vote for 4)

Precincts Reported: 9 of 9 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,691 | 8,680 | 15,371 / 21,243 | 72.36% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kathy Vander Stel | REP | 4,679 | 5,086 | 9,765 | 24.91% |
| Daniel Lee Fryling | REP | 4,661 | 4,916 | 9,577 | 24.43% |
| Robert Terpstra | REP | 4,597 | 4,907 | 9,504 | 24.24% |
| Tim Haagsma | REP | 4,606 | 4,888 | 9,494 | 24.22% |
| Total Votes | | 18,955 | 20,247 | 39,202 | |

## Grand Rapids Twp. Supervisor (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,433 | 7,853 | 12,286 / 14,931 | 82.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Michael J. DeVries | REP | 3,414 | 4,565 | 7,979 | 97.50% |
| Total Votes | | 3,505 | 4,679 | 8,184 | |

# Grand Rapids Twp. Clerk (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,433 | 7,853 | 12,286 / 14,931 | 82.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Edward J. Robinette | REP | 3,405 | 4,553 | 7,958 | 97.61% |
| Total Votes | | 3,495 | 4,658 | 8,153 | |

# Grand Rapids Twp. Treasurer (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,433 | 7,853 | 12,286 / 14,931 | 82.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| David A. Van Dyke | REP | 3,338 | 4,411 | 7,749 | 97.56% |
| Total Votes | | 3,429 | 4,514 | 7,943 | |

# Grand Rapids Twp. Trustee (Vote for 4)

Precincts Reported: 9 of 9 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4,433 | 7,853 | 12,286 / 14,931 | 82.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Vas Christopoulos | REP | 2,874 | 3,497 | 6,371 | 20.47% |
| David Pierangeli | REP | 2,833 | 3,497 | 6,330 | 20.34% |
| Philip D. Yeiter | REP | 2,748 | 3,488 | 6,236 | 20.04% |
| Lee Van Popering | REP | 2,760 | 3,384 | 6,144 | 19.74% |
| Elizabeth Helminski | DEM | 1,440 | 4,440 | 5,880 | 18.89% |
| Total Votes | | 12,742 | 18,382 | 31,124 | |

# Grattan Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,206 | 1,474 | 2,680 / 3,370 | 79.53% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Franklin Force | REP | 1,012 | 969 | 1,981 | 97.73% |
| Total Votes | | 1,028 | 999 | 2,027 | |

# Grattan Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 1,206 | 1,474 | 2,680 / 3,370 | 79.53% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Michelle Alberts | REP | 1,027 | 992 | 2,019 | 98.54% |
| Total Votes |  | 1,037 | 1,012 | 2,049 |  |

# Grattan Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 1,206 | 1,474 | 2,680 / 3,370 | 79.53% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Sabrina Freeman | REP | 1,019 | 981 | 2,000 | 98.47% |
| Total Votes |  | 1,030 | 1,001 | 2,031 |  |

# Grattan Twp. Trustee (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 1,206 | 1,474 | 2,680 / 3,370 | 79.53% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Dennis Heffron | REP | 955 | 915 | 1,870 | 50.01% |
| Paul Knoerl | REP | 921 | 876 | 1,797 | 48.06% |
| Total Votes |  | 1,903 | 1,836 | 3,739 |  |

# Lowell Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 1,792 | 2,157 | 3,949 / 5,125 | 77.05% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Jerry L. Hale | REP | 1,414 | 1,289 | 2,703 | 95.75% |
| Total Votes |  | 1,470 | 1,353 | 2,823 |  |

## Lowell Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 1,792 | 2,157 | 3,949 / 5,125 | 77.05% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Monica Burtt | REP | 1,424 | 1,315 | 2,739 | 96.85% |
| Total Votes | | 1,464 | 1,364 | 2,828 | |

## Lowell Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 1,792 | 2,157 | 3,949 / 5,125 | 77.05% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Ronda Benedict | REP | 1,419 | 1,298 | 2,717 | 97.17% |
| Total Votes | | 1,457 | 1,339 | 2,796 | |

## Lowell Twp. Trustee (Vote for 4)

Precincts Reported: 2 of 2 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 1,792 | 2,157 | 3,949 / 5,125 | 77.05% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mark Anderson | REP | 1,289 | 1,203 | 2,492 | 25.20% |
| Carlton Blough | REP | 1,273 | 1,199 | 2,472 | 25.00% |
| Steve VanderZiel | REP | 1,218 | 1,155 | 2,373 | 24.00% |
| William C. Thompson | REP | 1,210 | 1,145 | 2,355 | 23.82% |
| Total Votes | | 5,077 | 4,811 | 9,888 | |

## Nelson Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 1,522 | 1,292 | 2,814 / 3,854 | 73.02% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robyn Britton | REP | 1,296 | 886 | 2,182 | 98.24% |
| Total Votes | | 1,322 | 899 | 2,221 | |

# Nelson Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,522 | 1,292 | 2,814 / 3,854 | 73.02% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Laura Hoffman | REP | 1,287 | 877 | 2,164 | 98.50% |
| Total Votes | | 1,308 | 889 | 2,197 | |

# Nelson Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,522 | 1,292 | 2,814 / 3,854 | 73.02% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Katy Austin | REP | 1,296 | 882 | 2,178 | 98.60% |
| Total Votes | | 1,317 | 892 | 2,209 | |

# Nelson Twp. Trustee (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,522 | 1,292 | 2,814 / 3,854 | 73.02% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Curtis D. DeJong | REP | 1,219 | 818 | 2,037 | 51.01% |
| Daniel George | REP | 1,134 | 778 | 1,912 | 47.88% |
| Total Votes | | 2,382 | 1,611 | 3,993 | |

# Plainfield Twp. Supervisor (Vote for 1)

Precincts Reported: 11 of 11 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,433 | 13,602 | 22,035 / 27,939 | 78.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Tom Coleman | REP | 5,985 | 6,997 | 12,982 | 62.53% |
| Gidget Groendyk | DEM | 1,899 | 5,822 | 7,721 | 37.19% |
| Total Votes | | 7,925 | 12,836 | 20,761 | |

# Plainfield Twp. Clerk (Vote for 1)

Precincts Reported: 11 of 11 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,433 | 13,602 | 22,035 / 27,939 | 78.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Cathleen Postmus | REP | 6,765 | 8,487 | 15,252 | 97.49% |
| Total Votes | | 6,951 | 8,693 | 15,644 | |
| Cassandra Salas (Qualified WI) | | | | 3 | |

# Plainfield Twp. Treasurer (Vote for 1)

Precincts Reported: 11 of 11 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,433 | 13,602 | 22,035 / 27,939 | 78.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| William F. Brinkman, Jr. | REP | 6,732 | 8,484 | 15,216 | 97.50% |
| Total Votes | | 6,917 | 8,689 | 15,606 | |

# Plainfield Twp. Trustee (Vote for 4)

Precincts Reported: 11 of 11 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,433 | 13,602 | 22,035 / 27,939 | 78.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kathey Batey | REP | 5,858 | 7,799 | 13,657 | 25.56% |
| Susan L. Morrow | REP | 5,690 | 7,637 | 13,327 | 24.94% |
| Jack Hagedorn | REP | 5,688 | 7,478 | 13,166 | 24.64% |
| Frank A. Pfaff | REP | 5,434 | 7,196 | 12,630 | 23.64% |
| Total Votes | | 22,929 | 30,498 | 53,427 | |

# Oakfield Twp. Supervisor (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,765 | 2,021 | 3,786 / 5,057 | 74.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| William G. Dean | REP | 1,459 | 1,311 | 2,770 | 96.62% |
| Total Votes | | 1,516 | 1,351 | 2,867 | |

# Oakfield Twp. Clerk (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,765 | 2,021 | 3,786 / 5,057 | 74.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Susan Trainer | REP | 1,486 | 1,349 | 2,835 | 98.03% |
| Total Votes | | 1,522 | 1,370 | 2,892 | |

# Oakfield Twp. Treasurer (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,765 | 2,021 | 3,786 / 5,057 | 74.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Betsy N. Koett | REP | 1,477 | 1,336 | 2,813 | 98.15% |
| Total Votes | | 1,513 | 1,353 | 2,866 | |

# Oakfield Twp. Trustee (Vote for 4)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,765 | 2,021 | 3,786 / 5,057 | 74.87% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Pamela Riker | REP | 1,336 | 1,226 | 2,562 | 25.30% |
| Bryan Porter | REP | 1,335 | 1,192 | 2,527 | 24.95% |
| Chad Sowerby | REP | 1,290 | 1,194 | 2,484 | 24.53% |
| Kenneth M. Rittersdorf | REP | 1,271 | 1,172 | 2,443 | 24.12% |
| Total Votes | | 5,292 | 4,836 | 10,128 | |

# Solon Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,901 | 1,816 | 3,717 / 5,058 | 73.49% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robert Ellick | REP | 1,599 | 1,273 | 2,872 | 97.82% |
| Total Votes | | 1,636 | 1,300 | 2,936 | |

## Solon Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,901 | 1,816 | 3,717 / 5,058 | 73.49% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Dorothy M. Willoughby | REP | 1,585 | 1,273 | 2,858 | 98.01% |
| Total Votes | | 1,622 | 1,294 | 2,916 | |

## Solon Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,901 | 1,816 | 3,717 / 5,058 | 73.49% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Arthur Gerhardt | REP | 1,582 | 1,260 | 2,842 | 98.27% |
| Total Votes | | 1,612 | 1,280 | 2,892 | |

## Solon Twp. Trustee (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,901 | 1,816 | 3,717 / 5,058 | 73.49% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mark S. Hoskins | REP | 1,492 | 1,202 | 2,694 | 50.11% |
| Jon D. Stout | REP | 1,455 | 1,161 | 2,616 | 48.66% |
| Total Votes | | 2,983 | 2,393 | 5,376 | |

## Sparta Twp. Supervisor (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,635 | 2,441 | 5,076 / 7,132 | 71.17% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Dale Bergman | REP | 2,154 | 1,648 | 3,802 | 97.29% |
| Total Votes | | 2,212 | 1,696 | 3,908 | |

# Sparta Twp. Clerk (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 2,635 | 2,441 | 5,076 / 7,132 | 71.17% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Marcy Savage | REP | 2,166 | 1,674 | 3,840 | 98.18% |
| Total Votes |  | 2,210 | 1,701 | 3,911 |  |

# Sparta Twp. Treasurer (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 2,635 | 2,441 | 5,076 / 7,132 | 71.17% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Rachel A. Shangle | REP | 2,161 | 1,648 | 3,809 | 98.02% |
| Total Votes |  | 2,207 | 1,679 | 3,886 |  |

# Sparta Twp. Trustee (Vote for 4)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 2,635 | 2,441 | 5,076 / 7,132 | 71.17% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Jason Bradford | REP | 1,940 | 1,492 | 3,432 | 25.41% |
| Barbara Johnson | REP | 1,864 | 1,469 | 3,333 | 24.68% |
| William Goodfellow | REP | 1,841 | 1,490 | 3,331 | 24.66% |
| Rob Steffens | REP | 1,845 | 1,432 | 3,277 | 24.27% |
| Total Votes |  | 7,557 | 5,948 | 13,505 |  |

# Spencer Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 1,403 | 1,191 | 2,594 / 3,386 | 76.61% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Jeff Knapp | REP | 1,228 | 834 | 2,062 | 98.14% |
| Total Votes |  | 1,249 | 852 | 2,101 |  |

## Spencer Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,403 | 1,191 | 2,594 / 3,386 | 76.61% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Lisa Wright | REP | 1,223 | 837 | 2,060 | 98.24% |
| Total Votes | | 1,243 | 854 | 2,097 | |

## Spencer Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,403 | 1,191 | 2,594 / 3,386 | 76.61% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Scott Baas | REP | 1,223 | 824 | 2,047 | 98.56% |
| Total Votes | | 1,238 | 839 | 2,077 | |

## Spencer Twp. Trustee (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,403 | 1,191 | 2,594 / 3,386 | 76.61% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Chris Lange | REP | 1,150 | 788 | 1,938 | 50.36% |
| John E. Wood | REP | 1,113 | 757 | 1,870 | 48.60% |
| Total Votes | | 2,284 | 1,564 | 3,848 | |

## Tyrone Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,364 | 1,194 | 2,558 / 3,632 | 70.43% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robert J. Sarachman | REP | 1,169 | 922 | 2,091 | 97.99% |
| Total Votes | | 1,196 | 938 | 2,134 | |

# Tyrone Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,364 | 1,194 | 2,558 / 3,632 | 70.43% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Shelley A. Worley | REP | 1,181 | 922 | 2,103 | 98.50% |
| Total Votes | | 1,202 | 933 | 2,135 | |

# Tyrone Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,364 | 1,194 | 2,558 / 3,632 | 70.43% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Juli-Anne Hall | REP | 1,139 | 907 | 2,046 | 97.99% |
| Total Votes | | 1,166 | 922 | 2,088 | |

# Tyrone Twp. Trustee (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,364 | 1,194 | 2,558 / 3,632 | 70.43% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Dave Ignasiak | REP | 1,055 | 776 | 1,831 | 45.84% |
| Sharon Olson | REP | 981 | 742 | 1,723 | 43.14% |
| William Mohr, II | UST | 172 | 219 | 391 | 9.79% |
| Total Votes | | 2,242 | 1,752 | 3,994 | |

# Vergennes Twp. Supervisor (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,548 | 1,672 | 3,220 / 3,736 | 86.19% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Timothy J. Wittenbach | REP | 1,311 | 1,079 | 2,390 | 98.48% |
| Total Votes | | 1,326 | 1,101 | 2,427 | |

## Vergennes Twp. Clerk (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,548 | 1,672 | 3,220 / 3,736 | 86.19% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Shantell Ford | REP | 1,311 | 1,076 | 2,387 | 98.64% |
| Total Votes | | 1,324 | 1,096 | 2,420 | |

## Vergennes Twp. Treasurer (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,548 | 1,672 | 3,220 / 3,736 | 86.19% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Janine Mork | REP | 1,300 | 1,058 | 2,358 | 98.54% |
| Total Votes | | 1,316 | 1,077 | 2,393 | |

## Vergennes Twp. Trustee (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,548 | 1,672 | 3,220 / 3,736 | 86.19% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Duane Joseph Rasch | REP | 1,218 | 1,012 | 2,230 | 49.85% |
| Richard Gillett | REP | 1,211 | 987 | 2,198 | 49.14% |
| Total Votes | | 2,447 | 2,026 | 4,473 | |

## Justice of Supreme Court (Vote for 2)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Bridget Mary McCormack | | 49,877 | 107,672 | 157,549 | 30.72% |
| Elizabeth M. Welch | | 28,156 | 75,764 | 103,920 | 20.26% |
| Mary Kelly | | 43,957 | 51,493 | 95,450 | 18.61% |
| Brock Swartzle | | 36,119 | 41,576 | 77,695 | 15.15% |
| Susan L. Hubbard | | 16,469 | 18,326 | 34,795 | 6.78% |
| Katherine Mary Nepton | | 8,267 | 11,591 | 19,858 | 3.87% |
| Kerry Lee Morgan | | 8,738 | 10,460 | 19,198 | 3.74% |
| Total Votes | | 194,483 | 318,405 | 512,888 | |

## Judge Ct Appeals, 3rd Dist. (Vote for 2)

Precincts Reported: 252 of 252 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jane E. Markey | | 74,035 | 124,861 | 198,896 | 51.25% |
| Mark Thomas Boonstra | | 71,960 | 111,117 | 183,077 | 47.17% |
| Total Votes | | 149,464 | 238,650 | 388,114 | |

## Judge Ct Appeals, 3rd Dist. (Partial) (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| James Robert Redford | | 89,300 | 129,677 | 218,977 | 97.14% |
| Total Votes | | 92,978 | 132,438 | 225,416 | |

## Judge of Circuit Court, 17th Dist.(Incumbent) (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kathleen A. Feeney | | 89,919 | 132,368 | 222,287 | 97.68% |
| Total Votes | | 93,081 | 134,485 | 227,566 | |

## Judge of Circuit Court, 17th Dist. (Non-incumbent) (Vote for 2)

Precincts Reported: 252 of 252 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Maureen A. Gottlieb | | 37,473 | 82,921 | 120,394 | 26.92% |
| Scott A. Noto | | 50,918 | 67,944 | 118,862 | 26.57% |
| Jenny Johnsen Sarber | | 36,920 | 77,214 | 114,134 | 25.52% |
| Stephen Willison | | 38,532 | 49,279 | 87,811 | 19.63% |
| Total Votes | | 167,724 | 279,579 | 447,303 | |

## Judge Probate Ct. (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 149,409 | 214,285 | 363,694 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| David Murkowski | | 87,007 | 128,544 | 215,551 | 97.35% |
| Total Votes | | 90,489 | 130,920 | 221,409 | |

## Judge of District Court, 61st District (Vote for 2)

Precincts Reported: 76 of 76 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 38,904 | 59,191 | 98,095 / 148,418 | 66.09% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kimberly A. Schaefer | | 19,979 | 34,861 | 54,840 | 54.41% |
| David J. Buter | | 15,435 | 28,224 | 43,659 | 43.32% |
| Total Votes | | 36,696 | 64,096 | 100,792 | |

## Judge of District Court, 61st District (Partial Term) (Vote for 1)

Precincts Reported: 76 of 76 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 38,904 | 59,191 | 98,095 / 148,418 | 66.09% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Nicholas Ayoub | | 21,617 | 34,424 | 56,041 | 95.70% |
| Total Votes | | 23,029 | 35,527 | 58,556 | |

## Judge of District Court, 62A District (Vote for 1)

Precincts Reported: 30 of 30 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 17,439 | 18,709 | 36,148 / 55,070 | 65.64% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Pablo Cortes | | 10,821 | 12,030 | 22,851 | 96.99% |
| Total Votes | | 11,292 | 12,269 | 23,561 | |

## Judge of District Court, 62B District (Vote for 1)

Precincts Reported: 18 of 18 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 10,238 | 17,060 | 27,298 / 39,893 | 68.43% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Amanda Sterkenburg | | 3,599 | 7,610 | 11,209 | 55.91% |
| Joe Jackson | | 3,473 | 4,968 | 8,441 | 42.11% |
| Total Votes | | 7,312 | 12,735 | 20,047 | |

## Judge 63rd Dist. (Vote for 2)

Precincts Reported: 113 of 113 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 72,055 | 105,502 | 177,557 / 225,943 | 78.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Sara J. Smolenski | | 36,743 | 62,733 | 99,476 | 52.05% |
| Jeffrey J. O'Hara | | 34,978 | 54,864 | 89,842 | 47.01% |
| Total Votes | | 72,899 | 118,205 | 191,104 | |

## GRCC Board of Trustees (Vote for 2)

**Includes vote totals from all participating counties

| Candidate | Party | | | Total | |
|---|---|---|---|---|---|
| Brandy Lovelady Mitchell | | | | 146,146 | 36.18% |
| Daniel Williams | | | | 130,664 | 32.35% |
| Brandon Sinclair | | | | 127,077 | 31.46% |
| Total Votes | | | | 403,887 | |

## Montcalm CC Board of Trustees (Vote for 2)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,306 | 2,325 | 4,631 / 6,267 | 73.90% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Karen A. Carbonelli | | 1,140 | 1,292 | 2,432 | 51.10% |
| Patricia Hinrichs | | 1,055 | 1,193 | 2,248 | 47.24% |
| Total Votes | | 2,253 | 2,506 | 4,759 | |

## Montcalm CC Board of Trustees (Partial) (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 2,306 | 2,325 | 4,631 / 6,267 | 73.90% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Carol Deuling-Ravell | | 1,277 | 1,328 | 2,605 | 98.30% |
| Total Votes | | 1,312 | 1,338 | 2,650 | |

## Walker City Clerk (Vote for 1)

Precincts Reported: 9 of 9 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 6,190 | 8,436 | 14,626 / 19,143 | 76.40% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Sarah Bydalek | | 2,971 | 4,863 | 7,834 | 69.46% |
| Rachel Nicks | | 1,446 | 1,908 | 3,354 | 29.74% |
| Total Votes | | 4,475 | 6,804 | 11,279 | |

## Walker City Commissioner, Ward 1 (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,908 | 2,502 | 4,410 / 6,252 | 70.54% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Marvin Raap | | 853 | 1,074 | 1,927 | 59.40% |
| Aislinn Teachout | | 458 | 816 | 1,274 | 39.27% |
| Total Votes | | 1,337 | 1,907 | 3,244 | |

## Walker City Commissioner, Ward 2 (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,978 | 3,202 | 5,180 / 6,571 | 78.83% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Carol Glanville | | 693 | 1,477 | 2,170 | 55.64% |
| E. Johnson | | 720 | 983 | 1,703 | 43.67% |
| Total Votes | | 1,430 | 2,470 | 3,900 | |

## Walker City Commissioner, Ward 3 (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,304 | 2,732 | 5,036 / 6,320 | 79.68% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Elaina A. Huizenga | | 1,435 | 1,753 | 3,188 | 97.64% |
| Total Votes | | 1,466 | 1,799 | 3,265 | |

## Wyoming City Council, Ward 2 (Vote for 1)

Precincts Reported: 11 of 11 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 5,679 | 5,292 | 10,971 / 17,766 | 61.75% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Marissa K. Postler | | 3,392 | 3,364 | 6,756 | 96.51% |
| Total Votes | | 3,556 | 3,444 | 7,000 | |

## Wyoming City Council, Ward 3 (Vote for 1)

Precincts Reported: 10 of 10 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 6,595 | 7,685 | 14,280 / 19,535 | 73.10% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robert Postema | | 4,001 | 4,700 | 8,701 | 97.75% |
| Total Votes | | 4,130 | 4,771 | 8,901 | |

## Wyoming City Council, At Large (Vote for 1)

Precincts Reported: 30 of 30 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 17,439 | 18,709 | 36,148 / 55,070 | 65.64% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| John Fitzgerald | | 6,454 | 7,596 | 14,050 | 55.12% |
| Rob Arnoys | | 5,172 | 5,669 | 10,841 | 42.53% |
| Total Votes | | 12,013 | 13,478 | 25,491 | |

## Sparta Twp. Library Brd. (Vote for 6)

Precincts Reported: 3 of 3 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,635 | 2,441 | 5,076 / 7,132 | 71.17% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mary-Ann Meyer | | 1,021 | 1,203 | 2,224 | 17.50% |
| Janet Hayes | | 915 | 1,140 | 2,055 | 16.17% |
| Carol M. Keller | | 860 | 1,096 | 1,956 | 15.39% |
| Debra Willison | | 763 | 978 | 1,741 | 13.70% |
| Richard Beauchamp | | 770 | 800 | 1,570 | 12.35% |
| Joy Marie Leussenkamp | | 715 | 853 | 1,568 | 12.34% |
| Jane Ohanesian | | 650 | 842 | 1,492 | 11.74% |
| Total Votes | | 5,763 | 6,945 | 12,708 | |

## Village of Caledonia President (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 445 | 549 | 994 / 1,286 | 77.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jennifer Lindsey | | 185 | 284 | 469 | 56.99% |
| Todd Grinage | | 180 | 171 | 351 | 42.65% |
| Total Votes | | 367 | 456 | 823 | |

## Village of Caledonia Trustee (Vote for 3)

Precincts Reported: 1 of 1 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 445 | 549 | 994 / 1,286 | 77.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Daniel L. Erskine | | 235 | 283 | 518 | 48.05% |
| Karen Hahn | | 225 | 287 | 512 | 47.50% |
| Total Votes | | 469 | 609 | 1,078 | |
| Cheryl Marie King-Miller (Qualified WI) | | | | 28 | |

## Village of Casnovia President (Vote for 1)

**Includes vote totals from all participating counties

| Candidate | Party | | Total | |
|---|---|---|---|---|
| Consuelo Morris (Qualified WI) | | | 20 | |

## Village of Casnovia Clerk (Vote for 1)

**Includes vote totals from all participating counties

| Candidate | Party | | | Total | |
|---|---|---|---|---|---|
| Coleen K. Boyer (Qualified WI) | | | | 22 | |

## Village of Casnovia Treasure (Vote for 1)

**Includes vote totals from all participating counties

| Candidate | Party | | | Total | |
|---|---|---|---|---|---|
| Ashley Scudder (Qualified WI) | | | | 22 | |

## Village of Casnovia Trustee (Vote for 3)

**Includes vote totals from all participating counties

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kathleen S. Kahrs (Qualified WI) | | | | 17 | |
| Jerry A. Palinski (Qualified WI) | | | | 19 | |

## Village of Kent City, President (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 309 | 184 | 493 / 772 | 63.86% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Bert Edward Rose | | 196 | 140 | 336 | 94.38% |
| Total Votes | | 209 | 147 | 356 | |

## Village of Kent City, Clerk (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 309 | 184 | 493 / 772 | 63.86% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Mary J. Portell | | 218 | 148 | 366 | 97.34% |
| Total Votes | | 225 | 151 | 376 | |

## Village of Kent City, Treasurer (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 309 | 184 | 493 / 772 | 63.86% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Debra Forth | | 210 | 147 | 357 | 97.01% |
| Total Votes | | 218 | 150 | 368 | |

# Village of Kent City, Trustee (Vote for 3)

Precincts Reported: 1 of 1 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 309 | 184 | 493 / 772 | 63.86% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Sue Smalley | | 212 | 144 | 356 | 83.18% |
| Total Votes | | 252 | 176 | 428 | |
| Merry Barron (Qualified WI) | | | | 39 | |
| Crystal Thompson (Qualified WI) | | | | 0 | |
| Randy Dean Clay (Qualified WI) | | | | 18 | |

# Village of Sand Lake President (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 159 | 85 | 244 / 365 | 66.85% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Nile Hayden | | 104 | 58 | 162 | 72.65% |
| Tracy J. Quinlan | | 45 | 15 | 60 | 26.91% |
| Total Votes | | 150 | 73 | 223 | |

# Village of Sand Lake Trustee (Vote for 3)

Precincts Reported: 1 of 1 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 159 | 85 | 244 / 365 | 66.85% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kim McNees | | 110 | 48 | 158 | 29.59% |
| Mollie McLellan | | 103 | 53 | 156 | 29.21% |
| Kevin Wright | | 108 | 48 | 156 | 29.21% |
| Glenn A. Baker, Jr. | | 40 | 21 | 61 | 11.42% |
| Total Votes | | 363 | 171 | 534 | |

# Village of Sand Lake Trustee (Partial Term) (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 159 | 85 | 244 / 365 | 66.85% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Stacy Rudicil | | 114 | 59 | 173 | 90.58% |
| Total Votes | | 130 | 61 | 191 | |
| William David Rau (Qualified WI) | | | | 20 | |

## Village of Sparta President (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,155 | 1,081 | 2,236 / 3,274 | 68.30% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Robert Whalen | | 728 | 669 | 1,397 | 97.56% |
| Total Votes | | 749 | 683 | 1,432 | |

## Village of Sparta Council (Vote for 3)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,155 | 1,081 | 2,236 / 3,274 | 68.30% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Brenda L. Braybrook | | 572 | 613 | 1,185 | 36.27% |
| Robert Carlstrom | | 497 | 539 | 1,036 | 31.71% |
| Gale R. Taylor | | 466 | 542 | 1,008 | 30.85% |
| Total Votes | | 1,561 | 1,706 | 3,267 | |

## Village of Sparta Council (Partial Term) (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,155 | 1,081 | 2,236 / 3,274 | 68.30% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| William Taylor | | 712 | 681 | 1,393 | 98.58% |
| Total Votes | | 726 | 687 | 1,413 | |

## Belding Area Schools Brd. Mem. (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 813 | 817 | 1,630 / 2,101 | 77.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Shannon Hummel | | 353 | 379 | 732 | 41.40% |
| Michael A. Baker | | 291 | 295 | 586 | 33.14% |
| Lary Richmond | | 210 | 221 | 431 | 24.38% |
| Total Votes | | 869 | 899 | 1,768 | |

## Byron Center Public Schools Brd. Mem. (Vote for 4)

Precincts Reported: 11 of 11 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 6,847 | 10,865 | 17,712 / 21,424 | 82.67% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Brenda Hondorp | | 3,353 | 6,056 | 9,409 | 26.46% |
| Jason A. Pierson | | 3,255 | 5,618 | 8,873 | 24.95% |
| Marty Phelan | | 3,074 | 5,572 | 8,646 | 24.31% |
| Crystal Imperi | | 2,922 | 5,464 | 8,386 | 23.58% |
| Total Votes | | 12,730 | 22,834 | 35,564 | |

## Caledonia Community Schools Brd. Mem. (Vote for 2)
**Includes vote totals from all participating counties

| Candidate | Party | Total | |
|---|---|---|---|
| Brittany N. Barber Garcia | | 4,732 | 22.94% |
| Katie Isic | | 3,092 | 14.99% |
| Bill Donohue | | 2,925 | 14.18% |
| Chris Behm | | 2,808 | 13.61% |
| Andrew Backus | | 2,460 | 11.92% |
| Trevor DeGroote | | 2,298 | 11.14% |
| Andrew Pastoor | | 2,317 | 11.23% |
| Total Votes | | 20,632 | |

## Cedar Springs Public Schools Brd. Mem. (Vote for 3)
**Includes vote totals from all participating counties

| Candidate | Party | Total | |
|---|---|---|---|
| Shannon Vanderhyde | | 6,128 | 36.60% |
| Matthew Shoffner | | 5,387 | 32.17% |
| Trent Gilmore | | 5,230 | 31.23% |
| Total Votes | | 16,745 | |

## Comstock Park Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 6 of 6 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 3,472 | 4,688 | 8,160 / 11,338 | 71.97% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Christy Nowak | | 1,146 | 1,829 | 2,975 | 21.01% |
| Jennifer Zalinski | | 827 | 1,433 | 2,260 | 15.96% |
| David L. Hood | | 817 | 1,228 | 2,045 | 14.44% |
| Tony Parker | | 769 | 1,095 | 1,864 | 13.16% |
| Michelle Zylstra | | 713 | 1,101 | 1,814 | 12.81% |
| Teresa Bueche | | 608 | 1,043 | 1,651 | 11.66% |
| Kevin McLellan | | 591 | 840 | 1,431 | 10.11% |
| Total Votes | | 5,564 | 8,595 | 14,159 | |

## EGR Schools Brd. Mem. (Vote for 4)

Precincts Reported: 7 of 7 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,434 | 5,964 | 8,398 / 10,020 | 83.81% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Beth Milanowski | | 1,220 | 3,072 | 4,292 | 25.70% |
| Amy Turner-Thole | | 1,115 | 3,147 | 4,262 | 25.52% |
| Abby Sorota | | 1,095 | 3,073 | 4,168 | 24.96% |
| Bradley Laackman | | 1,044 | 2,838 | 3,882 | 23.25% |
| Total Votes | | 4,519 | 12,180 | 16,699 | |

## Forest Hills Public Schools Brd. Mem. (Vote for 2)

Precincts Reported: 31 of 31 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 11,609 | 23,044 | 34,653 / 41,908 | 82.69% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kristen L. Fauson | | 3,021 | 8,277 | 11,298 | 27.07% |
| Maggie Terryn | | 2,695 | 6,871 | 9,566 | 22.92% |
| Michael T. Seekell | | 3,076 | 5,959 | 9,035 | 21.65% |
| Robert Tsironis | | 2,138 | 3,696 | 5,834 | 13.98% |
| Teri Stapleton | | 2,099 | 3,544 | 5,643 | 13.52% |
| Total Votes | | 13,265 | 28,475 | 41,740 | |

## Godfrey-Lee Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 3 of 3 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 1,347 | 1,268 | 2,615 / 4,719 | 55.41% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Tammy Schafer | | 591 | 678 | 1,269 | 35.40% |
| Cheryl L. Slaughter | | 527 | 656 | 1,183 | 33.00% |
| David Blok | | 477 | 578 | 1,055 | 29.43% |
| Total Votes | | 1,638 | 1,947 | 3,585 | |

## Godwin Hgts. Public Schools Brd. Mem. (Vote for 2)

Precincts Reported: 7 of 7 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,377 | 2,690 | 5,067 / 8,543 | 59.31% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Allen E. Johnston | | 1,164 | 1,550 | 2,714 | 51.61% |
| Ken Hornecker | | 1,002 | 1,385 | 2,387 | 45.39% |
| Total Votes | | 2,246 | 3,013 | 5,259 | |

## GRPS Brd. Mem. (Vote for 4)

Precincts Reported: 76 of 76 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 37,702 | 57,474 | 95,176 / 143,861 | 66.16% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kristian Grant | | 14,434 | 29,000 | 43,434 | 25.79% |
| Katherine Downes Lewis | | 14,158 | 28,308 | 42,466 | 25.21% |
| Jen Schottke | | 12,893 | 27,277 | 40,170 | 23.85% |
| Raynard L. Ross | | 12,811 | 26,870 | 39,681 | 23.56% |
| Total Votes | | 55,780 | 112,655 | 168,435 | |

## Grandville Public Schools Brd. Mem. (Vote for 3)

**Includes vote totals from all participating counties

| Candidate | Party | Total | |
|---|---|---|---|
| Amy Gardine | | 9,675 | 23.33% |
| Brent DeHaan | | 9,440 | 22.77% |
| Barbara Palmer | | 8,939 | 21.56% |
| Jason Bradley | | 7,569 | 18.25% |
| Christopher C. Orme | | 5,844 | 14.09% |
| Total Votes | | 41,467 | |

## Grant Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 2 of 2 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 4 | 5 | 9 / 14 | 64.29% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Kelly Brown | | 2 | 2 | 4 | 23.53% |
| Kris A. Lesley | | 2 | 2 | 4 | 23.53% |
| Rob Schuitema | | 3 | 0 | 3 | 17.65% |
| Damon Arsenault | | 0 | 2 | 2 | 11.76% |
| Danette Obenauf | | 0 | 2 | 2 | 11.76% |
| Total Votes | | 7 | 10 | 17 | |
| Shannon Thompson (Qualified WI) | | | | 2 | |

## Greenville Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 4 of 4 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,851 | 2,029 | 3,880 / 5,227 | 74.23% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jodi Petersen | | 817 | 1,057 | 1,874 | 31.22% |
| Norice A. Thorlund Rasmussen | | 633 | 778 | 1,411 | 23.50% |
| Kire Wierda | | 555 | 794 | 1,349 | 22.47% |
| Nicole Ciganik | | 577 | 713 | 1,290 | 21.49% |
| Total Votes | | 2,638 | 3,365 | 6,003 | |

## Kelloggsville Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 7 of 7 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,612 | 3,008 | 5,620 / 9,333 | 60.22% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Laura L. Tanis | | 1,211 | 1,716 | 2,927 | 35.40% |
| Marie Groters | | 1,095 | 1,637 | 2,732 | 33.04% |
| Tim Pomorski | | 975 | 1,464 | 2,439 | 29.50% |
| Total Votes | | 3,382 | 4,887 | 8,269 | |

## Kelloggsville Public Schools Brd. Mem. (exp. 2022) (Vote for 1)

Precincts Reported: 7 of 7 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,612 | 3,008 | 5,620 / 9,333 | 60.22% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Crystal Reidzans | | 1,688 | 2,027 | 3,715 | 97.33% |
| Total Votes | | 1,752 | 2,065 | 3,817 | |

## Kelloggsville Public Schools Brd. Mem. (exp. 2024) (Vote for 1)

Precincts Reported: 7 of 7 (100.00%)

|  | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 2,612 | 3,008 | 5,620 / 9,333 | 60.22% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Debra Sellers | | 1,708 | 2,031 | 3,739 | 97.37% |
| Total Votes | | 1,769 | 2,071 | 3,840 | |

## Kenowa Hills Public Schools Brd. Mem. (Vote for 3)

**Includes vote totals from all participating counties

| Candidate | Party | | Total | |
|---|---|---|---|---|
| Melissa Courtade | | | 5,539 | 23.15% |
| Stan Truskoski | | | 4,394 | 18.37% |
| Erin LaBotz | | | 4,207 | 17.59% |
| Corey Turner | | | 4,133 | 17.28% |
| Eddie Tudor | | | 3,729 | 15.59% |
| Selin Turan | | | 1,920 | 8.03% |
| Total Votes | | | 23,922 | |

## Kent City Comm. Schools Brd. Mem. (Vote for 3)

**Includes vote totals from all participating counties

| Candidate | Party | | Total | |
|---|---|---|---|---|
| Rick Stockhill | | | 2,122 | 35.27% |
| Danyle Bowers | | | 2,063 | 34.29% |
| Glenn A. Crabtree | | | 1,832 | 30.45% |
| Total Votes | | | 6,017 | |

# Kentwood Public Schools Brd. Mem. (Vote for 4)

Precincts Reported: 27 of 27 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 13,575 | 20,434 | 34,009 / 50,759 | 67.00% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Mary Madden |  | 5,148 | 9,249 | 14,397 | 21.42% |
| Angela C. Hovermale |  | 4,597 | 8,791 | 13,388 | 19.92% |
| Angie Forton |  | 4,594 | 8,690 | 13,284 | 19.76% |
| Allen Young |  | 4,797 | 8,352 | 13,149 | 19.56% |
| Leonica Riley Erwin |  | 4,037 | 7,856 | 11,893 | 17.69% |
| Total Votes |  | 23,825 | 43,399 | 67,224 |  |

# Lakeview Comm. Schools Brd. Mem. (Vote for 3)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 111 | 97 | 208 / 244 | 85.25% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Todd Olson |  | 40 | 43 | 83 | 26.18% |
| Brad B. Peasley |  | 41 | 42 | 83 | 26.18% |
| Lisa Naylor-Peasley |  | 35 | 47 | 82 | 25.87% |
| Jack L. Jeppesen |  | 30 | 39 | 69 | 21.77% |
| Total Votes |  | 146 | 171 | 317 |  |

# Lakewood Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 14 | 11 | 25 / 28 | 89.29% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Jamie Brodbeck Krenz |  | 5 | 7 | 12 | 36.36% |
| Kerry Possehn |  | 4 | 7 | 11 | 33.33% |
| Darin Weller |  | 4 | 6 | 10 | 30.30% |
| Total Votes |  | 13 | 20 | 33 |  |
| Paige D. O'Mara (Qualified WI) |  |  |  | 0 |  |

# Lakewood Public Schools Brd. Mem. (Partial) (Vote for 1)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total |  |
|---|---|---|---|---|
| Times Cast | 14 | 11 | 25 / 28 | 89.29% |

| Candidate | Party | Election Day | AVCB | Total |  |
|---|---|---|---|---|---|
| Melissa McClelland |  | 3 | 7 | 10 | 100.00% |
| Total Votes |  | 3 | 7 | 10 |  |

## Lowell Area Schools Brd. Mem. (Vote for 4)

**Includes vote totals from all participating counties

| Candidate | Party | | | Total | |
|---|---|---|---|---|---|
| Laurie C. Kuna | | | | 7,252 | 27.72% |
| Brian A. Krajewski | | | | 6,515 | 24.90% |
| Tom Kaywood | | | | 6,268 | 23.96% |
| Danny Lee Stephens, Jr. | | | | 6,130 | 23.43% |
| Total Votes | | | | 26,165 | |

## Northview Public Schools Brd. Mem. (Vote for 2)

Precincts Reported: 9 of 9 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 3,954 | 7,040 | 10,994 / 14,425 | 76.21% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Douglas LaFleur | | 2,041 | 4,162 | 6,203 | 51.30% |
| Matthew J. Nibbelink | | 1,831 | 3,906 | 5,737 | 47.45% |
| Total Votes | | 3,952 | 8,139 | 12,091 | |

## Rockford Public Schools Brd. Mem. (Vote for 4)

Precincts Reported: 19 of 19 (100.00%)

| | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 11,425 | 18,402 | 29,827 / 36,089 | 82.65% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Geoffrey L. Downs | | 3,663 | 6,760 | 10,423 | 17.20% |
| Jake Himmelspach | | 3,277 | 6,573 | 9,850 | 16.25% |
| Nick Reichenbach | | 3,876 | 5,959 | 9,835 | 16.23% |
| Kelley Freridge | | 2,761 | 5,643 | 8,404 | 13.87% |
| SuLyn Weaver | | 2,324 | 5,438 | 7,762 | 12.81% |
| Thomas M. Hales | | 2,784 | 4,317 | 7,101 | 11.72% |
| Alisa Cardenas | | 2,452 | 4,430 | 6,882 | 11.36% |
| Total Votes | | 21,366 | 39,236 | 60,602 | |

## Sparta Area Schools Brd. Mem. (Vote for 3)

**Includes vote totals from all participating counties

| Candidate | Party | | | Total | |
|---|---|---|---|---|---|
| Timothy A. Driscoll | | | | 3,492 | 27.03% |
| Kim Eluskie | | | | 3,204 | 24.80% |
| Erin Bormes | | | | 3,114 | 24.10% |
| James T. Kerby | | | | 3,110 | 24.07% |
| Total Votes | | | | 12,920 | |

## Thornapple Kellogg School Brd. Mem. (Vote for 3)

Precincts Reported: 2 of 2 (100.00%)

|  | | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Times Cast | | 109 | 80 | 189 / 232 | 81.47% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Kristen R. Cove | | 41 | 36 | 77 | 27.21% |
| Anne M. Hamming | | 26 | 30 | 56 | 19.79% |
| Donald A. Haney | | 30 | 24 | 54 | 19.08% |
| David R. Smith | | 32 | 22 | 54 | 19.08% |
| Risa Lovell | | 21 | 21 | 42 | 14.84% |
| Total Votes | | 150 | 133 | 283 | |

## Tri County Area Schools Brd. Mem. (Vote for 2)

Precincts Reported: 2 of 2 (100.00%)

|  | | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Times Cast | | 344 | 199 | 543 / 796 | 68.22% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Jill Fennessy | | 95 | 79 | 174 | 26.65% |
| Chad Bice | | 116 | 57 | 173 | 26.49% |
| Janice L. Dewey | | 109 | 59 | 168 | 25.73% |
| Shirley Bradley Dean | | 75 | 53 | 128 | 19.60% |
| Total Votes | | 403 | 250 | 653 | |

## Wayland Union Schools Brd. Mem. (Vote for 4)

Precincts Reported: 1 of 1 (100.00%)

|  | | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Times Cast | | 0 | 6 | 6 / 10 | 60.00% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Becky Hohnke | | 0 | 4 | 4 | 28.57% |
| Dan M. Cassini | | 0 | 3 | 3 | 21.43% |
| Theresa Dobry | | 0 | 3 | 3 | 21.43% |
| Cinnamon L. Mellema | | 0 | 3 | 3 | 21.43% |
| Jason M. Shane | | 0 | 1 | 1 | 7.14% |
| Total Votes | | 0 | 14 | 14 | |

## Wyoming Public Schools Brd. Mem. (Vote for 3)

Precincts Reported: 18 of 18 (100.00%)

|  | | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Times Cast | | 8,723 | 8,910 | 17,633 / 26,839 | 65.70% |

| Candidate | Party | Election Day | AVCB | Total | |
| --- | --- | --- | --- | --- | --- |
| Jessica A. Hanselman | | 3,730 | 4,635 | 8,365 | 33.79% |
| Craig P. Popma | | 3,642 | 4,398 | 8,040 | 32.47% |
| Shannon Frick | | 3,477 | 4,320 | 7,797 | 31.49% |
| Total Votes | | 11,197 | 13,561 | 24,758 | |

## Wyoming Public Schools Brd. Mem. (Partial) (Vote for 1)

Precincts Reported: 18 of 18 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 8,723 | 8,910 | 17,633 / 26,839 | 65.70% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Jeff Norton | | 5,351 | 5,572 | 10,923 | 96.88% |
| Total Votes | | 5,583 | 5,692 | 11,275 | |

## Cedar Springs City Council (Vote for 2)

Precincts Reported: 1 of 1 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 884 | 678 | 1,562 / 2,551 | 61.23% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Rose Ellen Powell | | 406 | 433 | 839 | 50.12% |
| Jerry L. Gross | | 410 | 396 | 806 | 48.15% |
| Total Votes | | 837 | 837 | 1,674 | |

## Rockford City Council (Vote for 3)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,291 | 2,488 | 3,779 / 4,702 | 80.37% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Terry Konkle | | 572 | 1,390 | 1,962 | 34.70% |
| Cheryl Scales | | 515 | 1,370 | 1,885 | 33.34% |
| Dale Dalman | | 509 | 1,253 | 1,762 | 31.16% |
| Total Votes | | 1,616 | 4,038 | 5,654 | |

## State Prop. 20-1 (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 100,544 | 166,545 | 267,089 | 81.96% |
| No | | 29,567 | 29,214 | 58,781 | 18.04% |
| Total Votes | | 130,111 | 195,759 | 325,870 | |

## State Prop. 20-2 (Vote for 1)

Precincts Reported: 252 of 252 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 149,409 | 214,286 | 363,695 / 501,117 | 72.58% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 117,729 | 180,233 | 297,962 | 89.70% |
| No | | 15,582 | 18,626 | 34,208 | 10.30% |
| Total Votes | | 133,311 | 198,859 | 332,170 | |

## GR Prop 1, Move to Even Year Elections (Vote for 1)

Precincts Reported: 76 of 76 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 38,904 | 59,191 | 98,095 / 148,418 | 66.09% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 17,173 | 30,554 | 47,727 | 56.72% |
| No | | 14,910 | 21,510 | 36,420 | 43.28% |
| Total Votes | | 32,083 | 52,064 | 84,147 | |

## GR Prop 2, No Automatic Wins in August (Vote for 1)

Precincts Reported: 76 of 76 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 38,904 | 59,191 | 98,095 / 148,418 | 66.09% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 17,144 | 28,850 | 45,994 | 55.80% |
| No | | 14,349 | 22,081 | 36,430 | 44.20% |
| Total Votes | | 31,493 | 50,931 | 82,424 | |

## Alpine Fire Protection Millage (Vote for 1)

Precincts Reported: 6 of 6 (100.00%)

| | | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Times Cast | | 3,268 | 3,964 | 7,232 / 10,527 | 68.70% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 1,342 | 1,950 | 3,292 | 51.57% |
| No | | 1,443 | 1,648 | 3,091 | 48.43% |
| Total Votes | | 2,785 | 3,598 | 6,383 | |

## Grattan Fire Protection Renewal and Increase (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,206 | 1,474 | 2,680 / 3,370 | 79.53% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 637 | 799 | 1,436 | 58.64% |
| No | | 450 | 563 | 1,013 | 41.36% |
| Total Votes | | 1,087 | 1,362 | 2,449 | |

## Grattan Fire Equipment Millage Renewal and Increase (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,206 | 1,474 | 2,680 / 3,370 | 79.53% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 641 | 833 | 1,474 | 60.86% |
| No | | 433 | 515 | 948 | 39.14% |
| Total Votes | | 1,074 | 1,348 | 2,422 | |

## Godfrey-Lee Bonding Proposal (Vote for 1)

Precincts Reported: 3 of 3 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 1,347 | 1,268 | 2,615 / 4,719 | 55.41% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| Yes | | 743 | 763 | 1,506 | 67.35% |
| No | | 386 | 344 | 730 | 32.65% |
| Total Votes | | 1,129 | 1,107 | 2,236 | |

## Tri County Area Schools Operating Millage (Vote for 1)

Precincts Reported: 2 of 2 (100.00%)

|  | Election Day | AVCB | Total | |
|---|---|---|---|---|
| Times Cast | 344 | 199 | 543 / 796 | 68.22% |

| Candidate | Party | Election Day | AVCB | Total | |
|---|---|---|---|---|---|
| No | | 146 | 99 | 245 | 50.94% |
| Yes | | 160 | 76 | 236 | 49.06% |
| Total Votes | | 306 | 175 | 481 | |

# EXHIBIT C



REPORT ON

# THE NOVEMBER 2020 ELECTION IN MICHIGAN

**COMMITTEE MEMBERS**

Senator Edward McBroom – Chair

Senator Lana Theis – Majority Vice Chair

Senator Jeff Irwin – Minority Vice Chair

Senator John Bizon

# TABLE OF CONTENTS

LETTER FROM THE CHAIR – SENATOR EDWARD McBROOM ................... 4

I.  INTRODUCTION ............................................................................. 6

II.  ACTIONS AND OBJECTIVES ........................................................ 6

III.  SUMMARY OF ISSUES AND ALLEGATIONS ............................ 6

IV.  INVESTIGATION AND FINDINGS ................................................ 7

V.  RECOMMENDATIONS AND CONCLUSION ........................... 34

VI.  APPENDIX

# EXECUTIVE SUMMARY ON
# THE NOVEMBER 2020 ELECTION IN MICHIGAN

Without question, the increased political polarization of our nation has resulted in increasing public discontentment with the administration, and therefore results, of our elections. This discontent, which has been demonstrated on both sides of the aisle (see: Bush v. Gore 2000 and allegations of Russian interference in the 2016 election) culminated in public outcry of widespread fraud in 2020.

Indeed, a recent Gallup Survey found as much as 59% of voters no longer trust our elections. Voting and the right to vote is absolutely foundational to our democracy. Without faith in our elections process, fewer members of the public will likely choose to exercise that right. Lowered confidence in our election system, and thereby lower turnout, is a threat to our democracy we should not take lightly.

Many election administrators and officials have pointed to the fact that unprecedented turnout in 2020 stress-tested our elections system. Still, around 40% of the eligible population did not cast a vote. For a robust democracy, we must invest in and build a system that can withstand ever greater turnout in future elections.

In order to do this, this Committee undertook the foundational work of investigating the 2020 election — from both the perspective of election administrators, officials and workers and the perspective of the observing public. The Committee embarked upon hours of public testimony, the review of countless documents and presentations on the 2020 election, and careful review of the elections process itself.

This Committee found no evidence of widespread or systematic fraud in Michigan's prosecution of the 2020 election. However, we cannot and should not overlook severe weaknesses in our elections system. Whether it is lack of clarity in the tabulation of ballots, unnecessary barriers to ensuring that every lawfully cast ballot is counted, inconsistent poll worker or challenger training, or simply a system not primarily designed to handle ballots cast absentee or otherwise prior to Election Day, it is the opinion of this Committee that the Legislature has a duty to make statutory improvements to our elections system.

This Committee exhausted every resource available to it to thoroughly and faithfully examine our elections process in Michigan and drill down on claims and testimony specific to the 2020 election. However, this investigation should not be considered exhaustive. Remaining conscientious of the limitations of this Committee, every possible investigative avenue was not undertaken. Nevertheless, this Committee stands steadfastly behind the recommendation that our current elections system requires change in order to meet the future challenges presented by modern voting preferences, behaviors, and threats. There are clear weaknesses in our elections system that require legislative remedy.



Case 1:21-cv-00445-CJN Document 14-9, Filed 10/24/22 Page 5 of 55

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

## LETTER FROM THE CHAIR
## SENATOR EDWARD McBROOM

When I agreed to begin investigating the election, rumors and uncertainty were rampant. Allegations of markers bleeding through ballots, voter intimidation, dead voters, mystery ballot dumps, foreign interference, and ballot harvesting were just a few of the issues during the first days following the November 2020 election. Emotions and confusion were running wild across the country. Fears and hopes were had by every person, including myself.

On one hand was the hope some had to overturn the election. That hope was necessarily coupled with a dreadful reality that our elections were unsound. On the other hand was hope the election was accurate, coupled necessarily with those who feared the direction the victor would take the country.

I made it clear at the start that the investigation effort would be taken with a firm commitment to truth and a goal to reassure the citizens of this state that their votes counted. Within a few weeks, the State Board of Canvassers also unanimously requested the Legislature conduct a serious investigation into the election.

I believe the people deserve to know all the truth and to see their representatives seeking answers. People were understandably confused by new laws, practices, orders and determinations from the governor and secretary of state and it is right and proper for them to demand answers. This right and obligation was unfairly and unfortunately discounted by many on my own side of the aisle after the 2016 election when the other party lost and felt sure some illicit or improper actions must have taken place. When they did regain power, they were quick to utilize all of it to spend two years chasing every conspiracy and specious allegation. I pray my own party will not repeat this mistake for the next four years.

Digging into the mechanics of the election was labor intensive, but very revealing. We found both real vulnerabilities and resiliency to the systems. We also discovered the extent to which our elections officials go to facilitate our elections. The report goes into considerable detail on many of these issues and I hope readers will be reassured by the security and protections in place, motivated to support reforms that are needed, and grateful to our fellow citizens that do the hard work.

The greater challenge to this effort has been seeking the truth amid so much distrust and deception. Our present times are full of reasons for citizens to distrust their government, politicians, and leaders. The last year has seen so much amplification of this distrust. Perhaps it has never been more rampant and, certainly, modern communication helps to fan the flames of lies and distrust into an unquenchable conflagration.

"All politicians lie" is the popular axiom. Unfortunately, lies and deceit are not exclusive to politicians. Throughout our investigation, members have been actively following and engaged with various persons and reports. We have collectively spent innumerable hours watching and listening and reading. Some of these people and reports are true. Unfortunately, many of them are not, either because of a misunderstanding or an outright deception. As is often the case, the truth is not as attractive or as immediately desirable as the lies and the lies contain elements of truth.

Regardless of my status as a chairman, senator, politician, Christian, or human, I do not expect or desire my words in this report to be simply accepted. Instead, I ask all to simply put into

*(Continued)*

4

LETTER FROM THE CHAIR
## SENATOR EDWARD McBROOM

their determinations the same particular guidance all persons ought to consider when weighing evidence. We must all remember: "extraordinary claims require extraordinary proof" and "claiming to find something extraordinary requires first eliminating the ordinary." Also, sources must lose credibility when it is shown they promote falsehoods, even more when they never take accountability for those falsehoods.

At this point, I feel confident to assert the results of the Michigan election are accurately represented by the certified and audited results. While the Committee was unable to exhaust every possibility, we were able to delve thoroughly into enough to reasonably reach this conclusion. The strongest conclusion comes in regard to Antrim County. All compelling theories that sprang forth from the rumors surrounding Antrim County are diminished so significantly as for it to be a complete waste of time to consider them further.

Most of the rigorous debate over additional audits comes from fears surrounding the technology used and its vulnerabilities as allegedly demonstrated in Antrim County. Without any evidence to validate those fears, another audit, a so-called forensic audit, is not justifiable. Michigan's already completed post-election audit and risk-limiting audit are also far more substantive than Arizona's standard audit. However, I am keeping a close eye on the legislatively-initiated forensic audit in Arizona and will continue to ask questions regarding other election issues I feel are not settled. If genuine issues are shown in Arizona's audit or from continued investigation here, I will not hesitate to ask the Committee to consider recommending an audit or amending this report.

I must acknowledge and thank my staff including Jeff Wiggins and Paul Burns that spent so much of their work and personal time on this report. I also want to thank my current Committee members, along with all of those that participated and served during these hearings last term, including Sens. Lucido, MacDonald, and Santana, as well as Representative Hall and the members of the House Oversight Committee. Staff from those offices, the Senate, and the Committee's clerk all went above and beyond to facilitate these hearings in very difficult situations and deserve sincere thanks. Finally, as the report says in its conclusion, I want to thank the citizens of this state. Whether or not one agrees with the report or even the conducting of the investigation, those opinions were shared with myself and the Committee. An active and passionate public is critical to maintaining our republic and your participation is reassuring that attribute is alive and well.

Sincerely,

Sen. Ed McBroom, Chair

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

## I. INTRODUCTION

Beginning on Nov. 7, 2020, the Senate Oversight Committee (the "Committee") commenced an inquiry into claims of election fraud and impropriety. Chair McBroom made clear that the purpose of this inquiry was not to change the outcome of the election for President of the United States. Rather, the goal of the Committee was to provide elected officials and Michigan residents a better understanding of where the administration of elections can be reformed and strengthened, ensuring that Michigan citizens can have confidence in our election processes. This report contains findings and suggestions developed from 28 hours of testimony from almost 90 individuals spanning nine committee hearings, the review of thousands of pages of subpoenaed documents from multiple government entities, hundreds of hours of Senate staff investigation, and countless reviews of claims and concerns from Michigan residents. A detailed examination of all evidence presented to the Committee established an undeniable conclusion; while there are glaring issues that must be addressed in current Michigan election law, election security, and certain procedures, there is no evidence presented at this time to prove either significant acts of fraud or that an organized, wide-scale effort to commit fraudulent activity was perpetrated in order to subvert the will of Michigan voters.

## II. ACTIONS AND OBJECTIVES

The Committee's primary objective was to produce an informative and actionable report by undertaking the following actions: 1) Investigate claims of impropriety, fraud, error, and mismanagement of certain election processes; 2) Determine whether any of the claims brought forward were substantiated by evidence; and 3) Identify areas of Michigan election law where reform or an updating of the statute may be required in order to ensure transparency and confidence in the election process. The Committee made it clear that first-person accounts reporting alleged improprieties were given higher value as evidence to address these claims, in addition to professional and expert testimony regarding the technical operation of state and local election procedures and vote tabulation.

## III. ISSUES AND ALLEGATIONS

1. Deceased and Non-Residents Voting
2. Unsolicited Absentee Voter Ballot and Application Mass Mailings
3. 3rd Party/Private Funds Used for Public Election Activities and Equipment
4. Rights and Duties of Poll Challengers/Watchers Improperly and Unlawfully Restricted
5. Antrim County Results
6. Operating Issues with Tabulators and Precinct Computers
7. Signature Verification Process
8. Jurisdictions Reporting More Than 100% Voter Turnout
9. Absentee Ballots Tabulated Multiple Times
10. Thousands of Ballots "Dumped" at the TCF Center on Election Night/The Next Morning
11. Vote Totals Abnormal Compared to Past Presidential Election and Other Vote Count Irregularities
12. Additional Issues
13. Audits

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

## IV. INVESTIGATION AND FINDINGS

**OVERVIEW OF INVESTIGATION**

**The Committee received many complaints of election fraud throughout the state in the days following the 2020 election. The Committee reviewed these claims through several avenues, including but not limited to the manners outlined below:**

- Engaged with local and county election officials to discuss the procedures utilized to administer the election, in addition to confirming certain vote totals where alleged misreporting occurred.

- Researched the claims of deceased individuals having a vote cast in their name by reviewing obituaries, various online databases, social media posts, as well as speaking with individuals who made the claims or were the subject of those claims.

- Called individuals who were said to have received unsolicited absentee ballots through the mail.

- Subpoenaed and reviewed documentation of communications from the secretary of state's office regarding pre-election mailings.

- Subpoenaed and reviewed documents and communications from the Livonia and Detroit city clerks related to election activities and vote tabulation.

- Received testimony from Kent County Clerk Lisa Lyons, Ingham County Clerk Barb Byrum, Lansing City Clerk Chris Swope, and Grand Rapids City Clerk Joel Hondorp, regarding the election processes in their respective municipalities and any reforms they would recommend.

- Received testimony from Antrim County Clerk Sheryl Guy, detailing the events that led to the reporting of incorrect, unofficial vote tallies which cascaded into accusations of vote switching and machine tampering in Antrim County.

- Received many hours of first-hand testimony regarding the events that transpired at the TCF Center on and around Election Day. This testimony was in addition to the more than 200 sworn affidavits submitted by first-hand and second-hand witnesses that were reviewed by the Committee.

- Received testimony from Chris Thomas, the Senior Elections Advisor for the city of Detroit at the time of the November 2020 election and former Michigan state director of elections, who was stationed at the TCF Center.

- Received testimony from Dominion Voting Systems CEO, John Poulus, on the company's role in providing voting equipment to several Michigan municipalities and whether they played a role in the reporting of incorrect results in Antrim County. Testimony was also received from officials representing Dominion competitors, Election Systems & Software (ES&S) and Hart InterCivic regarding those same issues.

- The chair and individual committee members researched additional claims of election fraud or impropriety made by individuals in Michigan and from across the country.

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

- Received testimony from Republican and Democratic party officials regarding election training for volunteers and workers, and how that training, or lack of, impacted the events at the TCF Center and other polling places.

- Received testimony from Monica Palmer, Chair of the Wayne County Board of Canvassers, on what she experienced during the canvassing process in the 2020 election and how it could be improved.

- Met with other canvassers from around the state to understand their process and receive their observations.

- The chair and individual committee members met with various clerks around the state to discuss problems, allegations, and solutions.

- The chair and committee members spent countless hours watching and reading documentaries, news stories, and presentations regarding election issues.

- The chair and committee members examined the testimony provided by witnesses in front of the House Oversight Committee.

- The chair followed many allegations to specific sources and involved parties to ascertain the veracity or feasibility of such allegations.

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

## FINDINGS

1. **Deceased and Non-Residents Voting**

The Committee researched these claims and concluded that most were false. There were two claims of deceased individuals casting votes that were found to be true; one was a clerical error while the other was a timing issue. The Committee concluded that none of these constituted fraudulent election activities or manipulations. The Committee also received claims of citizens who no longer live in the state of Michigan but had allegedly voted in the state's elections. These claims proved to be false upon researching each incident brought to the Committee's attention. An example of some of the claims are detailed below (the names of the individuals have been omitted to respect their privacy).

A widow from the Grand Blanc/Burton area claimed her husband, who passed away in 2013, had voted in the 2020 election. Senate staff searched the state database with the information provided by the individual and were not able to find her husband in the database. This would indicate that he had been removed from the voter database and his identity could not have been used to vote in the 2020 election.

A husband and wife, formerly of Jackson County and now living in Louisiana, claimed they saw documentation online that they had voted in Michigan during the 2020 general election. After researching the claim, it was discovered that they were mailed an absentee ballot application and are still registered to vote in Michigan. However, the state website shows that the local clerk did not receive returned and completed absentee ballot applications in these voters' names.

The Committee was also provided a list of over 200 individuals in Wayne County who were believed to be deceased yet had cast a ballot. A thorough review of individuals on that list showed only two instances where an individual appeared to have voted but was deceased. The first individual was a 118-year-old man whose son has the same name and lives at the same residence. The Committee found there was no fraud in this instance but was instead a clerical error made due to the identical name. The second individual was a 92-year-old woman who died four days before the November 2020 election. Research showed she had submitted her completed absentee ballot prior to the November 2020 election and prior to her death. Notably, research showed the secretary of state and clerks were able to discover and remove approximately 3,500 absentee ballots submitted by voters while they were alive but died before Election Day, which is a commendable accomplishment.

**The Committee recommends county clerks be given the ability to assist in removing deceased voters from the Qualified Voter File (QVF). The Committee also recommends the secretary of state research and pursue methods, including statutory changes, that would prevent and identify those voting in multiple states.**

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

2. <u>**Unsolicited Absentee Voter Ballot and Application Mass Mailings**</u>

Citizens across the state were left confused and frustrated by the arrival of applications for long deceased family members, those who have moved to other states, or persons never present at that address. It appears the lists chosen by the secretary of state's Bureau of Elections were often older and previously purged. Local clerks were also frustrated as the applications duplicated some of their work and caused citizens to call on them for answers. Finally, the original mailing appeared to be not set up to return to the secretary of state to at least inform them of undeliverable applications.

The Committee subpoenaed the secretary of state for communications related to pre-election mailings. While a court ruled that the Secretary of State was permitted to send these mass mailings, there were significant communications between the department and Rock the Vote, a group which tends to target young persons and those with more left ofcenter political leanings.

During the review of these communications, the Committee was simultaneously researching claims made in testimony and in court filings related to the absentee ballot process. Many court filings and individuals highlighted a data spreadsheet by an individual who claimed to have worked with "experts" to determine whether individuals had received an unsolicited absentee ballot. The spreadsheet indicated that "289,866 illegal votes" had been cast. This figure came from the Voter Integrity Project. To arrive at this number, the group used a methodology where they called 1,500 voters and asked if they had received a ballot without requesting it, something that would be illegal although not specifically indicative of fraudulent voting. The number of affirmative answers were then extrapolated out to 289,866 voters statewide receiving these ballots which are defined as "illegal ballots." The repeated use of the terminology "illegal ballots" is misleading and causes significant confusion as it implies fraudulent votes or votes received that do not come from legitimate sources or should not be counted. However, while it may not be lawful to send ballots without first receiving an application, voting this ballot is not an illegal action by a lawful voter and it is not indicative of fraudulent or illicit behavior of the voter nor of an illegitimate vote.

The Committee called forty individuals from this list at random. Only two individuals reported having received an absentee ballot without making a proper request. One of the two individuals is labeled as a permanent, absentee voter within the state's QVF file, indicating that they had, at some point, requested to be placed on that list. The other individual voted via an absentee ballot in the August primary election, and it is possible they checked the box to vote absentee in the subsequent election and simply forgot they had chosen this option. Throughout discussions with these individuals, as well as others who claimed they had received an unsolicited ballot, it became clear that many equated receiving an absentee ballot application with receiving an absentee ballot. These are separate steps in the absentee voting process, with receiving an absentee ballot requiring that an application be completed and submitted by the voter. **There was no evidence presented to the Committee indicating that hundreds of thousands of <u>absentee voter ballots</u> were mailed to Michigan voters without previously being requested.**

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

Further inquiry conducted by the chair and committee members with county and local clerks confirmed how difficult it would be for a citizen to attempt to fraudulently utilize the ballot of another, if the stolen application addressee voted at their actual, present location in Michigan. While the act of obtaining and submitting the ballot of another individual is not impossible, committing voter fraud in this manner undetected is unlikely, as the Qualified Voter File would immediately have a notation of the vote for the voter and the second attempt to request a ballot or to vote would not be allowed without investigation and explanation. Whether the real voter or the fraudulent

**The Committee concludes this demonstrates a clear vulnerability for fraud that may be undetected, if the actual voter does not vote at all. If the actual voter does vote, it will create turmoil and draw attention from state and local officials. However, the lack of any such incidents or turmoil in the November 2020 election creates a clear probability that no such efforts were committed to any significant extent. The chance of encountering the attempted double vote scenario is so statistically unlikely as to make impossible even a small effort to do so.**

Additionally, the mailing of unsolicited applications allows for two other related vulnerabilities. Applications sent to the former Michigan addresses of those moved out of state and applications sent to the new addresses of former Michigan citizens now registered to vote in another state constitute a real and virtually undetectable potential for fraudulent activity. The Chair's research into this topic, as well as a review of testimony provided by the secretary of state's director of elections to the Senate Elections Committee in October 2020, make it clear that there is essentially no mechanism in place to prevent counting votes from those who may be also registered and vote in another state, whether done by themselves or the recipient of an application at their former Michigan address. As there are no efficient or established procedures to confirm or detect this, it is not possible for the Committee to report on any occurrences or to have confidence no such actions occurred. However, with mass mailings of absentee ballot applications being mailed across state lines to many who no longer reside or vote in Michigan and to thousands of former addresses in Michigan, the situation must be addressed to ensure that those individuals are voting only once in an election, are doing so only in the state of their residence, and that no one is impersonating them at their old address.

The serious, potential outcomes of these vulnerabilities versus the minor effort to request an application make a strong and compelling necessity to not provide such applications without a request from a voter - as was standard practice until this past year. **Therefore, the Committee recommends the Michigan secretary of state discontinue the practice of mailing out unsolicited applications. The Committee also recommends only the current QVF being utilized by the state or locals when making mailings to registered voters of any nature.**

There were several reports of nursing home bound parents or other family members with dementia having a record of voting. **While the Committee was unable to reach any conclusions regarding the extent of such claims, additional training and clear instructions to caretakers or facility staff ought to be provided in such circumstances to clarify how and when such voting assistance is appropriate. The Committee also recommends pre-filled out applications from any source be disallowed as well.**

3. **3rd Party/Private Funds Used for Public Election Activities and Equipment**
A summary of the work and findings on this issue is not finalized at this time and may be amended to this report at a later date.

4. **Rights and Duties of Poll Challengers/Watchers Improperly or Unlawfully Restricted**
The Committee received claims that challengers from the Republican party were discriminated against and removed from polling locations without cause. There were also claims that challengers were not allowed to return to counting rooms and were supposed to sign in and out of the room but had not received that instruction. They were frequently required to stand six feet or more away from tables and workers in the normal exercise of their duties, despite a court settlement that ensured their right to monitor election procedures, within six feet when necessary. The Committee also received testimony that contradicted some of these statements and provided a different viewpoint. Volunteers and workers from both the Republican and Democratic parties made claims of hazing, rudeness, bigotry, racism, and other offensive behavior occurring while election activities were still underway. Several of the issues, such as the management of the official record of challengers allowed in or out, may have been simply driven by the situation with COVID-19 and will not be relevant again. Reports were heard of calls to citizens, ostensibly made by Republicans, informing them to come and vote on Wednesday rather than Tuesday. While many accusations will remain just that, one thing is perfectly clear: the rights and duties of poll watchers and challengers must be better understood and reinforced in their respective training and must be protected equally by election officials. This is an area in need of much reform and greater clarification in election law.

Additionally, there is significant evidence that the recruitment of Republican poll workers for Wayne County encountered significant obstacles. Many witnesses testified to volunteering but not hearing back from the county or being told there were already enough workers. Others testified to a particular moment at the TCF Center when workers were surveyed for party affiliation and only a few there raised their hands as Republicans. The Committee understands the logistics of recruiting Republicans for Wayne County and the city of Detroit can be difficult but finds the repeated reports of volunteers not being accepted or not having their emails returned troubling. Obtaining the proper ratios of partisan workers is of critical importance, especially ones from the local area. **The Committee encourages the Wayne County Republican Party and officials in the county and city clerks' offices to work together to obtain the correct number of workers for each election. Further, the Committee asks the Bureau of Elections to investigate and provide to the Committee an evaluation of partisan poll worker recruitment in Wayne County and the city of Detroit.**

These issues were clearly reflected in the activities that occurred at the absentee counting board at the TCF Center. At one point, an audio recording was released of an apparent election training session in the city of Detroit where workers were instructed to maintain six feet between challengers and poll workers, due to COVID-19 precautions. Prior to the election, a court settlement ensured poll challengers could monitor election activities within six feet when necessary. After the settlement, clerk staff, like other election staff across the state, were to be informed of the ruling and how it would affect their activities on Election Day. Testimony was received by the Committee indicating that the settlement, which was reached after many workers completed their training, was not well known among the workers at the TCF Center. It is easy to see how

this led to significant confusion and conflict, particularly as many workers had genuine fear and concern over their proximity to persons during the pandemic.

Contributing to the confusion and hostility of poll watchers and challengers was the differing opinions regarding the actual rights and duties of those individuals. These conflicts were only amplified by the partisan and ideological nature of the volunteers, despite some not affiliating with a political party. Multiple days of testimony from Republicans and Democrats made it clear that Republican challengers were committed to ensuring that challenges were issued and recorded when information was presented to indicate a voter was not, or may not be, eligible. Representatives of Michigan Democrats, however, indicated in testimony before the Committee that their specific training regarding the duties and obligations of challengers is to not ever challenge any ballots. While it was clear they recognized the legal reasons for challenging, they also called the law "archaic" and affirmed they train their challengers to not issue any challenges. They believe their obligation is to assure no vote is disqualified. One Democrat official even noted their reason for being there was to keep an eye on Republicans, not to challenge ballots. This significant difference of opinion and action contributed to some of the misunderstandings and tensions that occurred at the TCF Center, as each partisan observed the other failing to comprehend their duties or felt their duty was specifically to confront the other side.

The concern of partisan volunteers cloaked as Independent challengers through non-profit or third-party entities only added to the accusations of an unfair or unbalanced election environment. The Committee heard testimony and saw evidence that independent observers and challengers were frequently operating for one of the two major parties making their labels as Independents confusing and unhelpful.

It is apparent that the environment at the TCF Center became intolerable and the reactions to it must be understood in this light. While mistakes were clearly made by officials on all sides, it must be acknowledged that many of them were attempting to simply do their job during a time of increasing confusion and distrust. It is impossible for the Committee, or any legal entity, to sort through all the events or persons at fault. However, it appears obvious and reasonable to conclude that confusion, fear, misunderstanding, and even chaos occurred at the TCF Center to varying degrees on Nov. 3 and 4. The environment and those emotions were compounded by a lack of proper recruitment and/or training of election workers on the part of the clerk, as well as a failure of the Republican party to verify recruitment and training, supply an adequate number of election attorneys, and to properly train and counsel some of their volunteers and challengers.

Republican officials, along with some ostensibly Independent challengers, furthered the crisis by putting out the call to other members and citizens to descend on the location to stop what was described and presented as a stealing of the election. The descent into disorder with so many extremely concerned citizens elicited responses from poll workers that seemed necessary to them at the time, such as covering windows, calling police, denying lawful challenges, and removing challengers. Those actions by both sides were not always lawful or wise, and increased the angst and fears of the untrained challengers and observers, as well as the many in the public who t did not understand what was shown to them by the media. **Despite these mistakes and, potentially, illegal**

actions, the Committee found no evidence fraudulent activities were undertaken or that such actions led to irreparable harm to ballots or vote counting. Numerous safeguards, particularly the partisan make up of the election boards themselves, were not lost, despite these actions.

Therefore, the Committee recommends updating the requirements for challengers including the tasks and duties they are to preform, standards of conduct, and party affiliation. Additionally, clerks and parties need to be held to recruiting adequate workers, providing appropriate and uniform training including any recent law updates, and being able to instruct law enforcement in lawful responses to workers or volunteers creating a disturbance in the process of carrying out their duties. Officials need a clear chain of command in place for making decisions and being accountable, particularly if a crisis arises and if one of the leaders has left the premises. Finally, the Wayne County Republican Party and other, independent organizations, ought to issue a repudiation of the actions of certain individuals that created a panic and had untrained and unnumbered persons descend on the TCF Center. Both clerks and the parties need to take seriously their responsibilities of having properly trained and adequate personnel in place and the training ought to be uniform, regardless of party.[1]

5. <u>Antrim County</u>

Antrim County became the focal point of multiple theories and concerns surrounding the Nov. 3 election, as the unofficial results reported at the end of the tabulation for the county were later discovered to be in error. The common claim surrounding this mistake was that the votes for Donald Trump were switched with votes for Joe Biden, providing Biden with a win in heavily-Republican Antrim County. However, this claim is inaccurate and was explained before a joint hearing of the Senate and House Oversight Committees in November 2020 by the Antrim County Clerk, Sheryl Guy.

Due to a series of errors made within the county clerk's office, the unofficial votes received from polling places on election night did not transfer into their respective spreadsheet columns correctly. This shifted the vote totals over a column for several races across the ballot. These mistakes began months earlier when several late items were ordered onto the ballot in certain townships. Unfortunately, new logic and accuracy tests were not performed, as required by law. Programming at the clerk's computer was not updated to reflect these changes; however, tabulators in the precincts were updated and had no problems processing ballots on Election Day. Tally sheets printed at the close of polls never reflected the errors reported in the clerk's unofficial results. On the morning of Nov. 4, once it become clear that the unofficial results were inaccurate and did not match the official votes printed by the tabulators, efforts began to discover the cause of the errors. The clerk and her staff made several attempts to re-tabulate and resolve the problem before understanding the cause. This resulted in additional, incorrect vote counts being reported. Once the cause was isolated, ballots were re-tabulated and the correct results, which matched the original tabulator sheets from Nov. 3, were posted. Multiple checks were easily able to rectify the situation and later, **a complete hand recount validated the original, official results as accurate**.

---

[1] The Department of Attorney General informed the committee on June 15, 2021 that it has been investigating issues related to the events at the TCF Center, per an official request of former Senator and Oversight committee member, Peter Lucido. It indicated a report on findings is forthcoming.

## REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

A prime example of a misrepresentation of facts that then mislead citizens is found on a chart on page two of Allied Security Operations Group's (ASOG) Antrim County Forensic Report. The chart, shown below, and the accompanying information, led citizens to conclude the election results were suspiciously changing for over a month after the election. It also could lead one to believe election officials and the Dominion tabulators were dishonest in their work by not representing the source of the specific numbers shown, even though the information is readily available to the authors of the report. Further, the authors also chose to present only some of the information, leaving out specific data that would evidence something besides a massive conspiracy or computer hack created the problem.

| Date | Registered Voters | Total Votes Cast | Biden | Trump | Third Party | Write-In | TOTAL VOTES for President |
|------|------|------|------|------|------|------|------|
| Nov 3 | 22,082 | 16,047 | 7,769 | 4,509 | 145 | 14 | 12,423 |
| Nov 5 | 22,082 | 18,059 | 7,289 | 9,783 | 255 | 20 | 17,327 |
| Nov 21 | 22,082 | 16,044 | 5,960 | 9,748 | 241 | 23 | 15,949 |
| Dec 17 | 22,082 | | 5,959 | 9,759 | 244 | 20 | 15,962 |

This second chart fills in relevant and critical information about the data and provides additional data points to provide greater context to the observer. This data was available to ASOG and others utilizing the previous chart, yet they chose not to provide the context nor the additional data.

| | Date | Registered Voters | Total Votes Cast | Biden | Trump | Third Party | Write-In | TOTAL VOTES for President | Note |
|------|------|------|------|------|------|------|------|------|------|
| 1. | Nov. 4 | 22,082 | 16,044 | 5,960 | 9,748 | 239 | 23 | 15,970 | Tabulator tapes-official results (Not reported on election night). |
| 2. | Nov. 4 | 22,082 | 16,047 | 7,769 | 4,509 | 145 | 14 | 12,437 | Clerk's computer-unofficial results (publicly reported). |
| 3. | Nov. 5 | 22,082 | 18,059 | 7,289 | 9,783 | 255 | 20 | 17,347 | First attempt to rectify discrepancy. |
| 4. | Nov. 6 | 22,082 | 16,044 | 5,960 | 9,748 | 241 | 20 | 15,969 | Completion of re-tabulation. |
| 5. | Nov. 16 | 22,082 | 16,044 | 5,960 | 9,748 | 241 | 20 | 15,969 | Official Vote report. |
| 6. | Nov. 21 | 22,082 | 16,044 | 5,960 | 9,748 | 241 | 20 | 15,969 | Canvass/certification |
| 7. | Dec. 17 | 22,082 | 16,044 | 5,959 | 9,759 | 244 | 20 | 15,982 | Hand Recount |

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

Row one shows the vote totals shown on the tabulator tapes at the close of the election. These numbers are critical as they demonstrate, when coupled with the hand recount, that no tampering or pre-installed, illicit programing ever took place on the tabulators. It also shows that no fraudulent ballots were added to the ballot boxes to cover up such hardware/software malfunctions. The minor changes from the first tabulation to the final canvas and hand recount are well documented by election staff and result from several spoiled ballots that were not able to be processed in subsequent runs and from ballots that could not be electronically processed but could be hand counted.

Row two contains the vote count reported by the Antrim County clerk's office on election night, which was the unofficial vote count. As is detailed in this report, these results were incorrect because the programing to receive the data had not been properly updated after changes were made to the official ballots in certain townships. The result was what amounts to a spreadsheet having its fields improperly aligned with the incoming data. This would have been caught by logic and accuracy tests. The discrepancies with the tabulator tapes should have been discovered before these results were reported.

Row three shows the struggle faced by the clerk's office to determine what went wrong and how to correct it. These results show a series of urgent but mistaken attempts to address the errors that led to double counting of some precincts and absentee ballots. The contemporary poll books and worksheets are clear proof of what was happening, showing handwritten notes and commentary. The records also show who was there trying to figure out how to solve the issue.

Row four shows the vote count after the errors were properly identified and ballots were re-tabulated. Clearwater Township was still experiencing issues and had to be added in by hand. Again, contemporary documents and worksheets are clear proof of the situation and work being done.

Row five is the official vote report filed with the state before the certification.

Row six contains the certified election results. These were certified Nov. 21 by the county board of canvassers. The results are virtually the same as the tabulator slips produced on election night with the discrepancies identified and explained in the minutes of their meetings.

Row seven is the results of the complete hand recount conducted on Dec. 17. When a hand recount is done, ballots that were previously unable to be tabulated electronically are sometimes able to be added. These changes are, again, well documented by the workers' notes made during this process.

**The Committee states that the data this chart summarizes, coming from the actual election artifacts in Antrim County, clearly and concisely shows that ideas and speculation that the Antrim County election workers or outside entities manipulated the vote by hand or electronically are indefensible. Further, the Committee is appalled at what can only be deduced as a willful ignorance or avoidance of this proof perpetuated by some leading such speculation.**

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

There were many groups and persons from around the country that focused their attention on Antrim County as the most central point in their arguments and speculation. The county was mentioned by officials at the White House, in media, at rallies, and in several, substantial online documentaries. The Committee investigated the claims made by some of the more prominent groups and individuals.

The Allied Security Operations Group (ASOG) obtained access to the Antrim County voting tabulators and purported to perform a forensic audit. (ASOG and its co-founder were purveyors of the "fractional vote" and "more votes than registered voters" theories[2]). ASOG's audit described stolen computer files, machines designed to provide incorrect results, manipulated software, and cyber-attacks. Utilizing the difference between the unofficial vote count and the final, official count, ASOG claimed the machines were inaccurate 68% of the time. However, ASOG never provided an explanation for how the official vote was accurately obtained on the tabulator slips in the same physical count as the incorrect unofficial results on which they focus. ASOG did not make any attempt to invalidate the claims of the clerk by demonstration. ASOG also claimed a loss of files regarding auto-adjudication, a method of curing absentee voter ballots that Antrim County does not utilize as further evidence of fraudulent activity. ASOG claimed the machines had "ranked-choice" balloting turned on when this is not possible on Michigan machines. Other entities (CyberNinjas and Halderman) showed this claim was untrue. ASOG ignored that the simple and most effective way to verify the results is to simply count all ballots by hand. Even after a hand recount verified the results in Antrim County, ASOG refused to retract its assertions.

Attorney Matthew DePerno was retained by an Antrim County resident to pursue legal action against the county and the state regarding the results of the election. Mr. DePerno has subsequently released various reports, videos, and statements regarding the election results, presenting the ASOG report, as well as work by Dr. Douglas Frank and Jeff Lenberg, as primary pieces of evidence. The Committee closely followed Mr. DePerno's efforts and can confidently conclude they are demonstrably false and based on misleading information and illogical conclusions. In one recent video, Mr. Lenberg demonstrated how a hacked machine will incorrectly count ballots (reporting it on the official results printout) and how a hacked computer will show inaccurate results. However, neither of these demonstrations shows the explanation given by the clerk is untrue, nor do they explain how the actual official results sheet *did not* match the inaccurate unofficial results. Most critically, it does not explain how the hand recount verified the official results reported by the tabulators on election night. They simply proved hacked machinery will perform incorrectly. This is not evidence machines were hacked, and it is certainly not evidence that machines that performed correctly were hacked.

Further, the insinuations made depend on the tabulators being hacked *after* the logic and accuracy tests. Mr. DePerno, and others, insisted this was possible because the Dominion machines in Antrim County have modems or wireless chips installed. However, this is indisputably false. Antrim County did not utilize modems or any internet or wireless network to transmit voting results *ever*. This incredibly conclusive fact, along with the hand recount of the ballots, serve as the irrefutable bulwarks against all allegations. The cited proof of modems is from a quote for purchasing received by the county from Dominion, not an actual purchase receipt or physical sighting of any modems.

---

[2] The "more votes than voters" theory, repeated by President Trump's attorney, Rudolph Giuliani, was based on an affidavit from the ASOG co-founder that cites several Michigan counties where there were allegedly more votes than registered voters. However, the affidavit cited several townships in Minnesota, not Michigan. Even if the document referenced the right state, the claims regarding the Minnesota townships still were not accurate, according to data from the Minnesota Secretary of State.

Mr. DePerno's lawsuit, Exhibit 6, highlighted by former state Sen. Patrick Colbeck in a web post dated April 9, 2021 and entitled "Modem Chips Embedded in Voting System Computer Motherboards," feature a voting machine that is not used by Antrim County. Yet the suit draws the connection that the existence of such a machine, one that is not in Antrim County and not manufactured by Dominion at all, is evidence that the Dominion tabulators in Antrim County have the same technology. Committee members and others have been frequently approached by constituents who have been convinced that this is true of the Antrim County machines and all Dominion machines in general.

On June 11, internet and social media sources proclaimed the newest announcement from Mr. DePerno about Antrim County. However, the information provided appeared to be already available, but simply presented in a different light. The first allegation related to evidence of the clerk's Election Management System (EMS), a software package installed on her computer to manage the election. This is the same program that incorrectly reported the results on election night because it had not been properly updated with the late changes to ballots from certain precincts. **EMS is not connected to the tabulators**. The allegations focused on how the clerk's computer and the program were remotely accessed in the days following the election. This should not surprise anyone as the clerk, secretary of state, and the software company sought to determine what went wrong and how to fix it. At no time would this connection or activity have had an impact on the tabulators. More relevant, it could not have changed the tabulator slips, shown in the second chart, line one.

The June 11 video from Mr. DePerno also included what he concluded was dramatic evidence about specially made ballots, sent to Republican areas, that would more frequently fail in the tabulators. He then said such ballots would be sent to adjudication, where someone could determine them as Biden votes, even if they were not. This pronouncement is simply more blatherskite. Adjudication takes place with both Democrat and Republican workers, observers, and challengers present (Antrim County had no concerning or reported issues related to their challengers). Also, Antrim County did not have a high incidence of adjudicated ballots. Most important is the now repeated point of lines one and seven on the second chart above: the original tabulator slips and the hand recount match with only a few documented and easily explained ballot differences, dispelling any legitimacy to speculation of massive vote stealing by human or computer means.

**The Committee finds such actions to be misleading and irresponsible, diminishing the overall credibility of those asserting this conclusion.**

Dr. Frank has also worked independently of Mr. DePerno, appearing in various other reports and programming. He claimed his findings of patterns in voting demographics and results, along with disparities between census, registration, and ballot totals in given areas were conclusive evidence of a complex computer hack and conspiracy to manipulate vote counts around the nation. This theory, like Dr. Shiva's, alleged the installed "algorithm" switches or steals votes just enough to succeed while not being enough to raise suspicions. However, Dr. Frank's conclusions are not sound for several reasons. Census data is not recent, and people do not only move away (as he frequently contends) but others do move into an area. Coupled with same day registration,

the notable red flags he spotted in the data are easily explained, e.g. young people do not vote as readily as older citizens, people's movements create disparities between registrations and the census, etc. The patterns he sees are not unexpected or unusual to elections or human behavior in general. His theories depend on the ability to hack into the tabulators before or during and/or at the end of the election. Many of the counties he and others identified as having been hacked do not even have modems or make any online connection to submit results. Those that do, do not connect the modem, which is physically separate from the Dominion tabulator, until *after* the polls are closed and the tabulators have printed the official results.

Events in Antrim County sparked a significant amount of concern about the technology used to count ballots. This concern led to much speculation, assumptions, misinformation, and in some cases, outright lies meant to create doubt and confusion. The many hours of testimony before the Committee showed these claims are unjustified and unfair to the people of Antrim County and the state of Michigan. It has also been unfair to people across America. The simple answer to all of this remains the most reasonable conclusion: human error and lack of training are the factors that contributed to inaccurate unofficial vote counts. These errors were quickly discovered and rectified by the protective and redundant systems our state has built to verify and protect election integrity, *including re-countable, paper ballots*. Even more significantly, the official vote count was never in doubt and was validated several times, including during a complete, hand recount.

**While extremely disappointed and frustrated with the obvious avoidable errors, the Committee commends the efforts of the Antrim County clerk, staff, and many volunteers that corrected these errors and gave their time for the canvass and hand recount. The Committee also recommends legislation strengthening the law regarding the conducting of logic and accuracy tests prior to the election, including penalties for failing to do so. The Committee recommends the attorney general consider investigating those who have been utilizing misleading and false information about Antrim County to raise money or publicity for their own ends. The Committee finds those promoting Antrim County as the prime evidence of a nationwide conspiracy to steal the election place all other statements and actions they make in a position of zero credibility.**

6. <u>**Operating Issues with Tabulators and Precinct Computers**</u>

Speculation and theories of fraud in the election appear most prevalent in the areas concerning voting tabulators, computers, software, hardware, and cybersecurity. In the testimony and information reviewed by the Committee, claims ranged from something as simple as "spikes" in the vote count that exceeded the physical capacity of the tabulators to machines that were simply inaccurate. However, more complex claims also emerged, claiming that tabulators were intentionally designed to manipulate the tally through fractional voting or swapping by hand, through software, or by cyber attacks that based their manipulation on the votes necessary to overcome candidate Joe Biden's early deficit to President Trump.

***Dominion Voting Systems, Election Systems & Software (ES&S), Hart InterCivic***

Michigan utilizes tabulators and election services provided through three different vendors, with the individual counties determining which vendor to use. All vendors must meet the specifications of the state's election laws which requires vendors to meet guidelines provided by the United

States Election Assistance Commission (EAC). The EAC has rigorous standards regarding construction, material and code sourcing, reviews, and independent auditing conducted by certified third parties.

The Committee interviewed, under oath, the CEO of Dominion Voting Systems and the vice president of systems security & chief information security officer from ES&S. Hart InterCivic submitted written testimony. Despite many public denunciations of their collective testimony as inaccurate, no individual has provided any evidence to the Committee of such perjury or has filed any action in a court of law asserting such.

Mr. John Polous, Dominion CEO, denied multiple rumors regarding the company and provided references to verify his testimony that the company was not involved in elections in Venezuela and had no connection to Hugo Chavez, Nancy Pelosi, Diane Feinstein, or George Soros. He also denied the existence of Dominion servers in Spain and Germany, emphasizing that ballots remain local, are counted locally, and are not moved over state lines, let alone overseas.

Mr. Polous explained in detail how the operations of the Dominion machines are not compatible with the various theories being promoted, and that any of the accusations regarding counting ballots multiple times or scanning surplus ballots would easily be uncovered due to the poll books being unbalanced. Further, ballots that required auto-adjudication or duplication are accounted for in the poll books and create a computer log that is checked to prevent or detect double counts. Damaged ballots that require duplication are logged and could not be accidentally tabulated due to the damage that required the duplication.

*Fractional Voting*
The early allegation of fractional voting was supported by a few photographs which appeared to be screen shots from computer screens running the Dominion software. The chair specifically called for this information during public testimony as its existence would have been a profound demonstration of proof. However, despite numerous, repeated requests from the chair and assurances from those making the allegation, no proof, whether by demonstration or verifiable citation, was ever offered to or obtained by the Committee.

*Internet Connections*
Many observers insisted the vote tabulators at the TCF Center were connected to the internet. Chris Thomas, who served as the senior elections advisor for the city of Detroit, has asserted that this is simply not true. Other individuals who were at the TCF Center, such as former state Sen. Patrick Colbeck, insist that they were. It is true that every tabulator was connected to a local area network (LAN), which would create the same icon on a computer screen indicating a network connection as is shown by an internet accessible network. This may be a source of some of the confusion. Computers at the central control center, which were not connected to each precinct's LAN, were connected to a network that was connected to the internet, which may have also contributed to the confusion. Regardless, no evidence has been offered that the tabulators were connected beyond each LAN, and, in fact, the results from the tabulators at the TCF Center were transmitted to the clerk's office via flash drives, not electronic or cellular connection. Furthermore,

and more importantly, there has been no evidence provided that such a purported connection led to alterations to machine programming, hardware, or the tabulated results or could have led to such changes. Finally, logic and accuracy tests are conducted on each tabulator prior to the election to confirm that pre-election procedures were followed properly. During the post-election audits, clerks verify that those tests were performed and that the machines and their programming were not tampered with during the election.

Many theories and speculation regarding tabulators not at the TCF Center also include a component that necessitate an internet connection. It is particularly important to note that Dominion voting machines that are not part of an absentee voter counting board do not have built in modems or wireless internet. Reports to the contrary are false, with some falsely labeling non-Dominion machines as Dominion machines to make it appear as if they do have wireless internet capabilities. The secure cellular modems some clerks use to transmit the unofficial results to the county clerk are not even turned on or connected to the tabulators until *after* the official results are printed by the individual machine.

*Tabulator/Software Integrity*
There is no link in the election process chain more susceptible to unprovable and un-refutable speculation and suspicion than those involving the invisible lines of code and panels of circuits. These vulnerabilities can include tampering with machine code on site, via cyber attack, or by malicious programming by the proprietors of the machines.

There are many theories as to how compromising the integrity of the machines and software could have taken place, making it impossible to delineate each one separately. However, the answers and evidence against nearly all theories is generally the same. Reasonable deduction and logic stand to refute nearly all possible outcomes of a hack or attack, including the following theories: whether files including ballot images were hacked, a malicious algorithm was installed to switch votes, or a hostile, foreign force obtained a connection into a tabulator before, during, or after the election. In all of these situations, a simple recount or re-tabulation by the machine, after a logic and accuracy test, or by hand would demonstrate the theory to be consistent or inconsistent with the facts. This has been undertaken in multiple jurisdictions, both those in question and those not, all providing verification of the original, official results. Not one of these efforts demonstrated a problem with the tabulators or the software. There is no evidence to suggest the original, official results reflected anything but what was marked on the ballots.

Videos and reports of the ease of hacking current Dominion voting machines from outside of Michigan, e.g. Georgia, never demonstrated a vulnerability of the vote counting software or the tabulators. The chair contacted various officials from Georgia to understand the testimony and events in question there. Particularly, the testimony of Jovan Pulitzer, which purported to have on-the-spot access to manipulate voting files and vote counts, has been demonstrated to be untrue and a complete fabrication. He did not, at any time, have access to data or votes, let alone have the ability to manipulate the counts directly or by the introduction of malicious software to the tabulators. Nor could he spot fraudulent ballots from non-fraudulent ones. Notably, Georgia did conduct a complete, statewide, hand recount that validated the tabulators' official results.

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

Many of the theories surrounding cyber attacks were consolidated into the visuals and narratives included in the "Absolute Proof" video series first presented in January 2021 and continuing into June 2021 by Mike Lindell (the video relied heavily on the situation in Antrim County and the report from ASOG). In summary, Mr. Lindell claims that attacks by foreign and domestic enemies were successful in obtaining access to the computers containing results at local and county clerks' offices, as well as the secretary of state. In some cases, the supposed access included the actual tabulators.

However, this narrative is ignorant of multiple levels of the actual election process. Upon completion of the election, tabulators print the final results on paper. Clerks then connect a modem and transmit by secure, cellular connection or transfer by flash drive the unofficial results to the county clerk.[3] County clerks then report these unofficial results both locally and to the secretary of state. The secretary of state releases the unofficial results to media and their own page. Clarity, a Spanish based company, also takes in these unofficial results from the county or the state. This company, which is based in Spain and has servers in Europe, makes the unofficial results available to multiple users, especially media subscribers who utilize the unofficial results in their election night prognostications. Scytl and others are companies that provide similar services. All of these activities, especially due to media inquiries, constitute a significant explanation for much of the cyber activity across the country and the globe on election night.

Terminologies about the equipment used in elections leads to much of the confusion, particularly when used carelessly. Various documents, emails, and manuals discuss connectivity and servers. Certain persons have used these as proof that tabulators were connected during the election. However, the capabilities of the machines do not denote all of those options were operating during the election itself. Server connections and vulnerabilities, even errors, at clerk's offices are not indicative that tabulators themselves were vulnerable or hacked. The presence of IP addresses do not prove votes were altered or programming was hacked. Servers have nothing to do with regular tabulators during the election.

While the clear and constant presence of cyber criminals is real, the exchange of "packets" of information between two computers speaking to each other is not evidence of successful hacking or changing of data. Moreover, it is not possible for anyone to now determine what might have been in those packets of information unless granted specific access to one of the two computers involved in the transaction. All the while, the official results remain on a printed piece of paper at the local clerk's office and are not alterable to any reverse cyber attack. Most importantly, the paper ballots in the box are available for re-tabulation or recount at any time. Where this was done, no evidence of hacking or attack was ever shown. Nor did any official representative of the losing party call for a hand recount in any precinct so to prove an instance of such. If the losing party had been so confident of any of these cyber attack theories or software-based vote switching, simply asking for several hand recounts or re-tabulations in the various precincts would have demonstrated a genuine hack had happened and that there was necessity for additional recounts and investigations.

---

[3] ES&S and Hart InterCivic tabulators have internal modems, but not Dominion. However, they are not turned on until the polls are closed and tabulation has concluded. It is worth noting that these machines will likely have to be recertified, depending on whether they have 4G or 5G capabilities when the technology changes.

Further, the graphics and charts in various videos claim very specific access and vote count changes in specific counties across Michigan but do not provide any references or evidence to demonstrate how that information was acquired. As mentioned above, once the data is transmitted, there is no way to know what was sent without access to a computer on either side. No clerk or election official in any of these counties was informed how these numbers were calculated or known (except the numbers shown for Antrim County, which mirror the numbers shown to have occurred by human error). While showing these numbers is compelling, there is no source provided, but the viewer is led to believe Mr. Lindell's experts have received access to each of these counties' or precincts' computers and discovered a connection and hack occurred along with exactly what data was transmitted. No such activities took place at any of these locations with which the Committee had contact.

The chair spoke with clerks in several of the counties listed by Mr. Lindell's experts. These clerks had no explanation for numbers his reports show as being flipped votes, nor had they had any interaction with any persons making these allegations. Moreover, clerks in these counties performed random hand recounts in various precincts or townships and found zero change to the official, canvass results. Other clerks did full county re-tabulations and found zero change. For these actions to not contradict Mr. Lindell's allegations would mean all the clerks surreptitiously or incidentally chose precincts or townships that were not involved with the hack his experts claim occurred or allowed their tabulators to be compromised. The Committee finds this is beyond any statistical or reasonable credulity.

### *Canvassing and Out of Balance Precincts*

The canvassing process that is conducted at the county level in each of Michigan's counties always serves as the check on most irregularities that may occur during the initial tabulation. If paper ballots are significantly unbalanced when compared with the number of votes reported in poll books, this constitutes a clear indication that something went wrong. Often, the imbalance arises when workers do not immediately account for the necessity of copying overseas ballots or damaged absentee voter ballots. It also occurs when a voter decides to leave the polling place without correcting a spoiled ballot or submitting their ballot. Other causes come from empty absentee voter ballot envelopes, or couples including both of their ballots in one envelope.

Some of the highly out-of-balance precincts at consolidated Absentee Voter Counting Boards (AVCB) were likely from mistakes made with the high-speed tabulators, something that several citizens swore to have witnessed in affidavits and other testimony. When these imbalances appear after Election Day, it is the board of canvassers, or in Wayne County, their chosen agent, the clerk, that can make the decision to perform a further review to correct any irregularities that are discovered. Re-tabulation of the paper ballots and a thorough examination of the poll books are critical parts to the canvass process, allowing the books and ballot boxes to reach balance.

Technically, the imbalances that remain after the canvass could exist due to fraudulent activity. Unbalanced precincts are unfortunate and are something that should be addressed in the future. However, the unbalanced precincts in Michigan counties were marginal and, in no way, would have impacted the outcome of the Presidential election. There were fewer precincts with an imbalance

in this election than in previous ones. **Developing best practices and training election workers on how to maintain balanced precincts is recommended. There is much discussion on allowing some out-of-balance precincts to be eligible for recount but testimony the Committee heard from several clerks indicated they did not support this. Therefore, the Committee makes no recommendations on this issue.**

The Committee did learn during testimony that Wayne County's Board of Canvassers operates differently than most other counties, shifting the actual canvass responsibilities to the county clerk and their staff. Once the canvass is complete, the board receives a report, that is unusually anemic in its details of how imbalances were rectified. This is unfair to those serving on the board, as well as the voters of Wayne County, despite being permitted by law. A transparent canvass, overseen by those not responsible for the actual election process, allows citizens to understand how imbalances occurred and how they were rectified while having confidence that there was not a conflict of interest for those preforming the canvass.

**Canvassers ought to be intimately involved in the process and the law should be changed to provide consistency and transparency in the canvassing process. Furthermore, it would be wise to allow for larger boards in higher population areas and to provide additional time to complete the canvass to rectify any irregularities.**

7. **Signature Verification Process**

The Committee was made aware of claims that election workers at the TCF Center in downtown Detroit were instructed to not match signatures on envelopes and furthermore were instructed to "pre-date" the received date of absentee ballots. To the contrary, these processing steps — signature matching and verification of the date received — occurred at another location and were completed by other employees prior to the time the ballots were sent to the TCF Center for counting. Workers at the AVCBs are to check for the clerk's signature and time stamp as well as making sure the voter signature is present. However, the validation of the voter signature by the clerk's office is indicated by the clerk's signature and stamp. As for the "pre-dating" allegation, Detroit Senior Election Advisor Chris Thomas explained this date field is necessary for processing the ballot. Without the voter present, there is no way to have that date, which was recorded into the QVF by the official who took the same day registration at another location. Since the poll books at the AVCB are not connected to the QVF during Election Day, there is no way to check what was entered at the site where the voter registered. Therefore, a "placeholder" date is entered, and the poll worker assumes the official accepting the registration did their due diligence.

Kent County Clerk Lisa Lyons, and Ingham County Clerk Barb Byrum, both testified regarding the possible requirement of a "real time" signature when applying for an absentee ballot, indicating it would be highly preferred rather than performing the application process online. In addition to the preferences of election officials, the Michigan Court of Claims struck down Secretary of State Benson's guidance on signature matching, which required workers to presume the validity of signatures, ruling that the required presumption of validity is found nowhere in state law and mandating such was a direct violation of the Administrative Procedures Act.

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

After reviewing these facts and receiving the testimony of experts and clerks, it is abundantly clear that the signature verification process is one of significant importance. With new policies in place due to the adoption of Proposal 18-3, current election procedures do not require a new voter to, potentially, ever make face-to-face contact with an election official or staff throughout the process of registration, requesting an absentee ballot application, or completing and submitting their ballot. Therefore, requiring a voter to confirm their identity at some point during the process is imperative. Whether providing a "real time" signature, a government-issued photo identification card, or other unique personally identifying information, like a driver's license number or a state identification number, requesting that a voter provide one of these easily-accessible identifiers will go a long way to strengthen the integrity of our system, while supporting the new, more efficient way of administering our elections.

**Therefore, the Committee recommends that the secretary of state begin the process of establishing actual rules for examining and validating signatures consistent with a ruling of the Michigan Court of Claims. The Committee also recommends that statewide measures be put in place to ensure eligible voters are not unreasonably denied access to vote if there is an issue with their signature. Finally, the Committee recommends that reasonable measures be put in place to ensure voters can easily and properly identify themselves when exercising their right to vote.**

8. **Jurisdictions Reporting More Than 100% Voter Turnout**
The Committee received and heard claims that jurisdictions had more than 100% of registered voters voting. Here are some of the local municipalities that had claims of a higher voter turnout than there were actual registered voters:

| Municipality | Claim | Actual |
|---|---|---|
| Oneida Township | 118% | Approximately 80% |
| Zeeland Township | 460.51% | Precincts ranged from 74.46% – 84.80% |
| Spring Lake Township | 120% | Precincts ranged from 66.74% – 84.15% |
| Gladwin Township | 215.21% | 67.23% |
| Summit Township | Over 100% | 71% |
| Detroit | More Votes than Voters (Trump Claim) | 250,138 votes = Under 50% of registered voters in the city and only 37% of the total population. |

## REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

9. **Absentee Ballots Were Tabulated Multiple Times, Increasing Vote Total**

Some individuals claimed that many ballots were counted multiple times when they were re-submitted through the high-speed tabulation machines. The Committee heard from several persons and read many affidavits claiming to have first-hand knowledge that this issue occurred. Investigation does show it is possible to cycle a completed stack through the tabulator multiple times as long as no errors occur. Bundles of ballots go through the tabulator so quickly that a simple jam or other error necessitates the entire bundle being restarted. Workers cannot restart the stack unless they first clear the partial count and start from zero by pressing a button.

If ballots were counted multiple times, this would have created a significant disparity in the official pollbook. This was the testimony of several witnesses, including Chris Thomas and Monica Palmer, Republican chair of the Wayne County Board of Canvassers. Specifically, the pollbook would show that many more votes were cast than the number of people obtaining a ballot. This was the case at several counting boards at the completion of the original tabulation. However, the actual imbalances that remained after the canvass show this problem was rectified. Rectifying precincts where this mistake happened is usually not difficult to do and involves taking the ballots out of the box, counting the total number to see if it matches the poll book, and processing all the ballots through the tabulator again. The balanced poll books and the remaining imbalances do not indicate this problem any more, showing it was corrected. Remaining imbalances are likely connected to some of the other reasons addressed in finding number six, namely, empty envelopes, ruined ballots, etc.

**The Committee recommends that tabulator companies develop machines that place tabulated ballots into a box that has no access for poll workers while placing uncounted ballots in another tray to be checked and placed in the tabulator when ready. This would assure such an error cannot occur and that no reset and restarting of a full stack is necessary.**

10. **Thousands of Ballots Were "Dumped" at the TCF Center on Election Night/The Next Morning**

Several individuals testified and claimed that tens of thousands of ballots were "dumped" at the TCF Center on election night, when reported vote tallies showed that President Trump was still in the lead. They allege this occurred between 3 – 5 a.m. and that they were brought onto the floor to be counted. Chris Thomas, the senior elections advisor for the city of Detroit, stated he estimated 16,000 ballots were delivered to the TFC Center around that time. Some other persons and media speculated it was nearly 100,000, but most reported about 30,000-45,000. These ballots were submitted throughout Election Day at different locations, such as drop boxes, in the mail, and at the clerk's main and satellite offices. After the ballots were compiled and processed at the clerk's office, after the closing of polls at 8 p.m., they were brought to the TFC Center for counting. These ballots were not brought in a wagon as alleged, but via delivery truck and then placed on carts. A widely circulated picture in media and online reports allegedly showed ballots secretly being delivered late at night but, in reality, it was a photo of a WXYZ-TV photographer hauling his equipment.

**REPORT ON THE NOVEMBER 2020 ELECTION IN MICHIGAN**

Others claimed that the TCF Center security camera footage around the same time showed some type of "ballot dump." While the video in question confirms that a number of ballots were delivered at the time alleged, it provides no evidence of fraudulent or wrongful conduct. In the video, the van arrived around 3:30 a.m. and unloaded the absentee ballots. Once unloaded, the van left around 3:55 a.m. to go back to the satellite office where the processing was occurring. The van arrived back once again around 4:30 a.m. to unload the final ballots.

This theory, like many of the other theories proposed as evidence of fraud, does not constitute actual evidence on its own. Those drawing such conclusions in their affidavits and testimony were asked to provide proof that something illegal actually occurred but no proof that ballots were fraudulent was provided or found by the Committee in testimony or in subpoenaed records. However, this situation does raise issues with the delayed and cumbersome process of obtaining absentee ballots from drop boxes on election night, when many other activities and processes are also ongoing. **The Committee recommends that drop boxes not be utilized or be closed earlier than 8 p.m. on Election Day so that the time taken to collect such ballots will not, by necessity, extend processing and tabulating of such a large volume so long into the night. At the least, appointed staff should be on-hand to immediately collect ballots from drop boxes at 8 p.m. Additionally, the process of transferring ballots from the clerk's office to other locations must be done with greater security and manifests so that there can be an accounting for each ballot sent and received between the two locations, establishing a chain of custody.**

11. <u>**Vote Totals Were Abnormal Compared to Past Presidential Elections and Other Vote Count Irregularities**</u>

Several claims were made regarding the voter turnout in the November 2020 election in which the statistical data was cited as a source to show widespread election impropriety. Comparing historical results casts serious doubt over any claims of widespread impropriety in the Michigan 2020 election. In fact, turnout in 2020 increased less in Wayne county (11.4%) than in the rest of the state (15.4%) and President Trump won a greater percentage of votes there than he did in 2016 (30.27% vs 29.3%).

Additionally, the data suggests that there was no anomalous number of votes cast solely for the President, either in Wayne County or statewide:

| <u>**2020**</u> | <u>**2016**</u> |
|---|---|
| **Statewide** | **Statewide** |
| President: 5,539,302 | President: 4,799,284 |
| Senate: 5,479,720 | Congress: 4,670,905 |
| Difference: 59,582 (1.08% difference) | Difference: 128,379 (2.67% difference) |
| | |
| **Wayne** | **Wayne** |
| President: 874,018 | President: 782,719 |
| Senate: 863,946 | Congress: 754,560 |
| Difference: 10,072 (1.15% difference) | Difference: 28,159 (3.60% difference) |

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

**Other Irregularities**

Several published reports, particularly "Case for Michigan Decertification" presented charts of vote sub-totals and totals that were adjusted during the night and sometimes subtract votes from previous totals. The report also shows the increase in absentee votes tabulated was greater than the usual amount able to be processed in the given time frame. These reports require partial or incremental vote counts and totals. Finally, the report included final vote counts that include enormous spikes of final votes with a very high percentage for one candidate. Attempts by the chair to acquire the sources and citations of this data from the author were not able to be fulfilled. The author insisted that he cannot answer the questions about the origins of these data points, which he uses as evidence, without others investigating the issue or granting him access to a wide range of materials.

The reports containing these impossible mathematical counts rely on partial or incremental vote counts which are not available from any county or state official. Detroit does set up its own, unofficial vote reporting site. Incremental vote counts are reported during the process at the TCF Center. This additional level of complexity for reporting and handling, along with corrective actions that may be occurring onsite after an incremental data dump, can lead to multiple inaccuracies and discrepancies. There is additional confusion about counts and potential increases or decreases as the city merges actual precinct votes with AVCB votes. **Allowing Detroit to announce partial or incremental vote counts when no other community does, does not promote a uniform, statewide system. Further, not aligning each AVCB with each precinct creates an additional, complexity leading to an unnecessary vulnerability for errors in the unofficial, election night vote reports**. Finally, media outlets frequently make substantial errors or propagate the errors of others and then must adjust and retract data.

Large spikes in the vote count are not necessarily unexplainable or unusual. They do not alone constitute evidence of fraud and can be reasonably expected. Large precincts, particularly with the highest absentee voter turn out ever, took much longer to complete and then reported all their results at once. Further complicating this issue is that the absentee voter ballots counted at a consolidated counting board had to be merged with the votes submitted on Election Day at the corresponding, in- person voting precincts. This makes the spike larger than just the final count from the AVCB. No evidence has been presented to refute this as the legitimate reason for the dramatic jumps in vote counts seen in Michigan.

**Regardless, the Committee can only speculate on this because the author of the referenced report cannot provide sources that the Committee can pursue. Without provision of a source to investigate from the author, and as no confirmation of these numbers was provided nor can be ascertained, the Committee does not believe a wide-ranging, blanket allowance to search materials is justifiable or responsible, particularly in light of the extent of the post-election state audit performed and the lack of red flags from the final results in Detroit or Wayne County.**

## 12. Additional Issues

### Ballot Box Construction

Testimony was heard from Monica Palmer regarding the roll of boards of canvassers in verifying the construction of ballot boxes. Her board made significant efforts to require repairing or replacing poorly constructed boxes. **This effort is commendable and ought to be extended to the construction of drop boxes, as well. Testimony was also shared that boxes disallowed by the Wayne County Board of Canvassers and labeled to not be used were still being used on Election Day. This is not acceptable, and the Committee asks the secretary of state or the attorney general to investigate who is responsible for this serious breach.**

### Modem Usage on Tabulators

Testimony was given regarding the wisdom and necessity of modems for vote tabulators. There was not consensus amongst the clerks and the Committee makes no recommendation at this time. However, the external, detachable modem does provide a reassuring and genuine physical barrier to cyber attacks during the voting process.

### Ballot Harvesting

Testimony and allegations of ballot harvesting were made, although no evidence of such was presented. Ballot harvesting has been caught at times in the past, but none was in this election. Drop boxes and prepaid postage do present a greater vulnerability to ballot harvesting. Others have made the argument that prepaid postage might also reduce the likelihood of an individual waiting for someone to collect their ballot. It is worth noting that ballot harvesting, while illegal due to its vulnerability to fraud, is not necessarily indicative of fraudulent voting.

### Allegations of Illegal Votes

Testimony and reports of illegal votes, out of state votes, non-residents voting, and deceased voters are prolific, and the numbers included are substantial and compelling. However, no source or reliable method for determining these numbers is presented. References to "317 voters also voting in other states" do not come with explanation or source. Other numbers reported as evidence of fraudulent addresses or issues with residency fail to consider the complications and realities of same day registration (a real problem in its own right, but one voters created through adopting Proposal 3 in 2018). These same day registrations, also addressed earlier in this report, necessitate methods to enter voters into the database while also flagging them for additional checks and verifications later. This is particularly true at the AVCBs as they do not have access to the QVF and their electronic poll books are disconnected during the election. New registrants need lines filled in, but also must be flagged to be connected with the actual entry made in the QVF by the clerk's office prior to issuing the ballot. Impossible, and obviously contrived, birthdates serve as a rational and simple method for flagging these voters.

Many of the reports and allegations of illegal votes or fraudulent votes conflate issues of illegal or improper process with fraud or illegal votes. Many of these claims ignore the specific and legally required partisan makeup of the election workers and immediately assume that illegally removing watchers and challengers means fraud is occurring and that all ballots should be disqualified.

Not only would this disenfranchise thousands of legitimate voters by no fault of their own, but it demonstrates a significant leap of logic and an unjustified mistrust of the bipartisan poll workers themselves. The outcome alleged to have occurred during these improperly supervised moments, namely the addition of tens of thousands of prepared ballots, would require a conspiracy of immense proportions: individuals at multiple levels and locations, massive resources of ballot production and pollbook manipulation, and an outcome that does not contain a final number count outside the realms of believability. All of this under the noses of hundreds of bipartisan workers and watchers (as not all were ever dismissed) and without a whisper from the huge pool of people who would know. And all of this to theoretically run up the Biden total in a precinct where he traditionally should have expected better than 90% of the vote but received 88% amidst a relatively unremarkable turnout. **The Committee finds these postulations strain credulity and are simply preposterous. The Committee also notes this theory would directly conflict with the idea the machines were tampered with to miscount the ballots.**

<u>Suspicious Communications</u>
Communications with Dominion to local clerks have been utilized to cause additional fear and mistrust of the company, its equipment, and the election results. While the Committee has not examined or received every document, a small sampling of the most often cited communications are only troubling if considered with the pretext that Dominion is part of a conspiracy to defraud voters. One email after the August primary regarding not saving images is highlighted as evidence of a cover-up. The context in the email, to make electronically transmitting the results after the election with the attachable modem function better, makes the instruction to turn off transmitting the image a reasonable instruction when coupled with there being no law in Michigan to save the images. Emails and communications with Dominion to Antrim County after Nov. 3 are also reasonable as the clerk and others attempted to determine how the tabulators correctly counted the ballots while the clerk's computer showed them incorrectly. **(The saving of ballot images so the ballots can be publicly examined by digital means may be an issue Michigan should consider. Other states are doing this with success.)**

<u>*Chain of Custody and Election Material Security*</u>
Frequent demands to decertify all or a portion of the vote are accompanied by high sounding language regarding the "chain of custody." This verbiage evokes images of evidence utilized in trials, such as sealed envelopes and locked evidence rooms with sign-out sheets. However, investigating the claims regarding problems with the chain of custody usually finds highlights about the handling and transmission of the unofficial vote counts and the computer systems used to handle them. While concerns about these systems may be justified, it is incredibly misleading and irresponsible to imply this holds any danger to the official vote counts, the tabulators, or the ballots themselves. Similarly, unfair allegations have been leveled against the secretary of state and county and local clerks regarding the instruction to, and deletion of, e-poll book data. The letter instructing this and the action itself is a standard practice, ordered by the federal government and carried out shortly after every election. The law and the letter sent also provide specific instruction not to do so should there be an ongoing legal action regarding the data. All evidence the Committee found shows the law was followed. **The Committee finds insisting this is evidence of a cover up, "Destruction of election artifacts prior to end of 22-month archival requirement," is incredibly misleading, demeaning, and irresponsible.**

## Confusing Terminology

Many of the allegations simply utilize semantics and the confusing, technical nature of elections to drive up doubt. Claims such as "fake birthdays," "unsupervised ballot duplication," "system manuals explicitly refer to internet and ethernet connectivity," and "unsecured and illegal ballot boxes" are just a sampling of the terminologies used. However, each of these has legitimate explanation. The birthday issue is explained elsewhere in this report and involves same day registrations on Election Day. "Unsupervised ballot duplication" is referring to times challengers were unable to watch or were prevented from watching (which were not legal actions) but is misleading because the bipartisan election inspectors/workers were still watching and verifying each other's work. "System manuals" refer to connectivity because the machines are specifically designed to be connected to transmit the unofficial results and to be connected for other functions – this is not proof they were connected during tabulation. "Unsecured and illegal ballot boxes" refers to the transporting of absentee ballots to the counting board in postal trays. Sealed ballots have never been considered to need to be in a secured and approved container because the envelops are still sealed. **The Committee recommends this practice be made more secure with manifests and a record of custody**, but it is wrong to accuse anyone of violating the law that was written to address open ballots, *not* those in sealed envelopes.

## Blank Ballots and Military Ballots

The presence of blank ballots also provides significant confusion, despite being necessary for the duplication of military ballots and damaged absentee voter ballots. It is noteworthy that attempting to utilize these ballots for any significant level of fraud would require perfectly matching precincts to voters, manipulating poll books with fake dates for requests and receipts of the ballots, voter's signatures, and the clerk's signature and time stamp.

One witness testified that none of the military ballots at her table being duplicated were for President Trump. However, upon questioning, the witness recounted she only witnessed a few dozen ballots. This is a very reasonable outcome given the overall performance of the candidates in these precincts and the amount witnessed, which is not statistically significant.

13. ## Audits

The demand for audits regarding the election began soon after the November election and has continued until now. Several entities have undertaken to conduct audits, sometimes referring to their efforts as "forensic audits." One of these is detailed earlier in this report, particularly in Finding 5. Several lawsuits regarding audits have been filed.

Proposal 18-3, which was approved by the voters of Michigan and amended the state constitution, guarantees every Michigan elector the right to request an audit, stating that each "elector qualified to vote in Michigan shall have...(t)he right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections." The central clause, "in such a manner as prescribed by law," has resulted in the dismissal of demands of citizens to execute this provided right because the audit performed by the Michigan secretary of state was determined to satisfy this right. Much has been made by several persons that the hand recount in Antrim County was not truly an audit. This is, and was, admitted by the secretary

## REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

of state's office as true in that it was not a precinct audit, but a risk-limiting audit with a risk limit of zero, because all of the ballots were recounted and not just a sample. Furthermore, this does not diminish the profound value of hand recounting every ballot and race in the county as evidence against fraud or other illicitness. However, the actual, mandated audit detailed below was eventually conducted in Antrim County as it was in all Michigan counties.

The audits performed by the Michigan secretary of state and facilitated by county clerks and local officials has faced significant derision by citizens, lawyers, and activist leaders. The accusation is that the secretary of state has a conflict of interest in the result as it is her role as chief election officer which is being judged. However, such allegations demonstrate a significant lack of understanding regarding the rigor and depth of the audit performed, especially its decentralized nature. Auditing of the results is undertaken and administered by the county clerks, with aid and assistance provided by the local city and township clerks, and is another step removed from the secretary of state. The clerks at each of these levels, excepting municipal, are partisans from both major parties.

The extent of the audit is also critical to understanding its dependability and credibility. There are 66 steps clerks are instructed to undertake in the process. The "Post-Election Audit Manual," available online at **www.Michigan.gov/sos/post_election_audit_manual_418482_7.pdf**, lays out several critical points as to purpose and goals. Notably, they include pre-Election Day and Election Day procedures' fidelity to law and rules. Precincts and races are selected randomly in each county across the state. The audit examines notices, appointments and training, e-Pollbook security, test deck procedures (logic and accuracy testing), military and overseas applications, poll books, and ballot containers. The audit checklist contains 66 points of examination to meet these goals and includes the hand counting of the randomly selected races in randomly selected precincts. Pictured is a completed audit for East Grand Rapids Precinct 5. Citizens can obtain these audit results across the state from their county clerks.



**The Committee concludes these audits are far from the worthless exercises they have been castigated as being.** Many of those criticizing them are misleading concerned citizens to believe the only audit done is the "risk limiting audit." The risk limiting audit is also performed on top of the major, statewide county audit detailed above. Its purpose is to perform an *additional* spot check on the accuracy and function of the tabulators, but it is not the main audit done.

**The Committee recommends providing live video feed and recordings of the audit procedures. The public should have access to view the audit in person when possible and results should be posted online. The Committee also recommends that the Legislature fulfill the commitment of Proposal 2018-3 to guarantee an audit upon request of any elector.**

# V. RECOMMENDATIONS AND CONCLUSION

**Recommendations**

- Place in statute the rights and duties of challengers and poll watchers, requiring they be uniformly trained and held accountable.

- Ensuring combined AVCBs can have more than one challenger per party, with the ability to replace challengers who exit the AVCB location after the sequester is lifted.

- Allow for bipartisan election inspectors for all audits and require the process be open to the public.

- Prohibit the unsolicited mailing of absentee voter ballot applications from the secretary of state to limit the potential for non-Michigan residents voting in elections.

- Establish signature verification requirements via the administrative rules process or statute in order to provide clarity and uniformity to election workers on the proper way to ensure signatures match.

- Require video security on all drop boxes and require all drop boxes be emptied and secured immediately or earlier than 8 p.m. on Election Day to help expedite the processing and tabulation of ballots.

- In order to ensure more accurate voter rolls, allow county clerks greater authority when removing deceased individuals from the Qualified Voter File.

- Allow for the continued pre-processing of absentee ballots the day before Election Day, so long as stringent security measures are kept in place. Pre-processing must occur on the site of tabulation.

- Consider allowing tabulation, which is more secure, to begin in the week preceding Election Day as long as results may not be released until polls are closed on the completion of Election Day.

- Require that best practices for maintaining a balanced precinct on Election Day be part of the necessary training for all precinct workers. Establish a public, published record of all clerks who fail to provide the appropriate training or continuing education to themselves or their employees.

- Reform the canvassing processes by requiring canvassers be present during the canvass activities, expanding certain county boards where population requires it, and provide for additional time for the process to be completed.

# REPORT ON **THE NOVEMBER 2020 ELECTION IN MICHIGAN**

## Conclusion

The Committee can confidently assert that it has been thorough in examination of numerous allegations of unlawful actions, improper procedures, fraud, vote theft, or any other description which would cause citizens to doubt the integrity of Michigan's 2020 election results. Our clear finding is that citizens should be confident the results represent the true results of the ballots cast by the people of Michigan. The Committee strongly recommends citizens use a critical eye and ear toward those who have pushed demonstrably false theories for their own personal gain. We also conclude citizens should demand reasonable updates and reforms to close real vulnerabilities and unlawful activities that caused much of the doubt and questionability to flourish and could, if unchecked, be responsible for serious and disastrous fraud or confusion in the future.

Further, we commend the innumerable clerks, canvassers, staff, workers, and volunteers across Michigan that make the enormous complexity of elections operate so smoothly, so often. The complexity of the work and the dedication we discovered are astounding and worthy of our sincerest appreciation. We also commend the diligent citizens that took time to report problems and concerns they saw because they want and value fair and free elections above party or personal gain. If all citizens remain vigilant and involved, we will emerge stronger after any challenging time.

| Total | | 2,513 | 6,267 | 41 | 11 | 31 | 14 | 5 |

## President and Vice President of the United States (Vote for 1)

| Precinct | Joseph R. Biden / Kamala D. Harris - DEM | Donald J. Trump / Michael R. Pence - REP | Jo Jorgensen / Jeremy Cohen - LIB | Don Blankenship / William Mohr - UST | Howie Hawkins / Angela Walker - GRN | Rocky De La Fuente / Darcy Richardson - NLP | Write-in |
|---|---|---|---|---|---|---|---|
| Banks Township, Precinct 1 | 349 | 756 | 11 | 1 | 2 | 1 | 3 |
| Central Lake Township, Precinct 1 | 549 | 906 | 16 | 1 | 6 | 0 | 3 |
| Chestonia Township, Precinct 1 | 93 | 197 | 3 | 0 | 0 | 0 | 1 |
| Custer Township, Precinct 1 | 240 | 521 | 11 | 2 | 1 | 0 | 0 |
| Echo Township, Precinct 1 | 198 | 392 | 8 | 1 | 2 | 0 | 0 |
| Elk Rapids Township, Precinct 1 | 986 | 1,025 | 17 | 4 | 9 | 0 | 2 |
| Forest Home Township, Precinct 1 | 610 | 753 | 19 | 1 | 0 | 1 | 2 |
| Helena Township, Precinct 1 | 306 | 431 | 4 | 0 | 1 | 1 | 0 |
| Jordan Township, Precinct 1 | 183 | 371 | 13 | 1 | 1 | 0 | 2 |
| Kearney Township, Precinct 1 | 471 | 743 | 16 | 0 | 3 | 0 | 4 |
| Mancelona Township, Precinct 1 | 276 | 835 | 20 | 0 | 0 | 0 | 1 |
| Mancelona Township, Precinct 2 | 247 | 646 | 13 | 2 | 1 | 0 | 0 |
| Milton Township, Precinct 1 | 769 | 1,021 | 18 | 2 | 0 | 3 | 3 |
| Star Township, Precinct 1 | 161 | 462 | 10 | 0 | 0 | 0 | 0 |
| Torch Lake Township, Precinct 1 | 462 | 526 | 7 | 1 | 2 | 1 | 0 |
| Warner Township, Precinct 1 | 60 | 163 | 3 | 0 | 0 | 0 | 1 |
| Total | 5,960 | 9,748 | 189 | 16 | 28 | 8 | 23 |

## United States Senator for State (Vote for 1)

| Precinct | Gary Peters - DEM | John James - REP | Valerie L. Willis - UST | Marcia Squier - GRN | Doug Dern - NLP | Write-in |
|---|---|---|---|---|---|---|
| Banks Township, Precinct 1 | 341 | 765 | 3 | 5 | 2 | 3 |
| Central Lake Township, Precinct 1 | 520 | 933 | 9 | 9 | 3 | 0 |

## Total

Banks Township, Precinct 1

----------------------------

### Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 134 |
| Republican Party (Republican): | 520 |
| Libertarian Party (Libertarian): | 1 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 1 |
| Green Party (Green): | 0 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 656 |

### President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 349 |
| Donald J. Trump / Michael R. Pence (Republican): | 756 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 11 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 1 |
| Howie Hawkins / Angela Walker (Green): | 2 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 1 |

### Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 278 |
| Jason Strayhorn (Democrat): | 273 |
| Tami Carlone (Republican): | 692 |
| Michelle A. Frederick (Republican): | 698 |
| Bill Hall (Libertarian): | 24 |
| Richard A. Hewer (Libertarian): | 20 |
| Karen Adams (U.S. Taxpayers): | 5 |
| Douglas Levesque (U.S. Taxpayers): | 5 |
| Mary Anne Hering (Working Class): | 31 |
| Hali McEachern (Working Class): | 23 |
| Tom Mair (Green): | 17 |
| Write-in: | 4 |
| Total Votes: | 2070 |

### Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 282 |
| Shauna Ryder Diggs (Democrat): | 269 |
| Sarah Hubbard (Republican): | 709 |
| Carl Meyers (Republican): | 684 |
| James L. Hudler (Libertarian): | 16 |

### Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 277 |
| Shirley Stancato (Democrat): | 257 |
| Don Gates (Republican): | 702 |
| Terri Lynn Land (Republican): | 704 |
| Jon Elgas (Libertarian): | 31 |
| Christine C. Schwartz (U.S. Taxpayers): | 23 |
| Susan Odgers (Green): | 31 |
| Write-in: | 5 |
| Total Votes: | 2030 |

### County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 870 |
| Write-in: | 14 |
| Total Votes: | 884 |

### County Sheriff (1)

| | |
|---|---|
| Daniel S. Bean (Republican): | 877 |
| Write-in: | 20 |
| Total Votes: | 897 |

### County Clerk (1)

| | |
|---|---|
| Sheryl Guy (Republican): | 875 |
| Write-in: | 8 |
| Total Votes: | 883 |

Write In    3

1120
1123

Total
Central Lake Township, Precinct 1

## Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 227 |
| Republican Party (Republican): | 536 |
| Libertarian Party (Libertarian): | 3 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 3 |
| Green Party (Green): | 2 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 771 |

## President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 549 |
| Donald J. Trump / Michael R. Pence (Republican): | 906 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 16 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 1 |
| Howie Hawkins / Angela Walker (Green): | 6 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 3 |
| Total Votes: | 1481 |

## Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 457 |
| Jason Strayhorn (Democrat): | 443 |
| Tami Carlone (Republican): | 807 |
| Michelle A. Frederick (Republican): | 824 |
| Bill Hall (Libertarian): | 28 |
| Richard A. Hewer (Libertarian): | 32 |
| Karen Adams (U.S. Taxpayers): | 16 |
| Douglas Levesque (U.S. Taxpayers): | 12 |
| Mary Anne Hering (Working Class): | 34 |
| Hali McEachern (Working Class): | 27 |
| Tom Mair (Green): | 17 |
| Write-in: | 0 |
| Total Votes: | 2697 |

## Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 451 |
| Shauna Ryder Diggs (Democrat): | 438 |
| Sarah Hubbard (Republican): | 845 |
| Carl Meyers (Republican): | 807 |
| James L. Hudler (Libertarian): | 22 |
| Eric Larson (Libertarian): | 28 |
| Ronald E. Graeser (U.S. Taxpayers): | 13 |
| Crystal Van Sickle (U.S. | |

## Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 414 |
| Shirley Stancato (Democrat): | 439 |
| Don Gates (Republican): | 825 |
| Terri Lynn Land (Republican): | 851 |
| Jon Elgas (Libertarian): | 32 |
| Christine C. Schwartz (U.S. Taxpayers): | 23 |
| Susan Odgers (Green): | 33 |
| Write-in: | 1 |
| Total Votes: | 2618 |

## County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 1082 |
| Write-in: | 16 |
| Total Votes: | 1098 |

## County Sheriff (1)

| | |
|---|---|
| Daniel S. Bean (Republican): | 1142 |
| Write-in: | 21 |
| Total Votes: | 1163 |

## County Clerk (1)

| | |
|---|---|
| Sheryl Guy (Republican): | 1109 |
| Write-in: | 11 |
| Total Votes: | 1120 |

## County Treasurer (1)

| | |
|---|---|
| Sherry S. Carter | |

## Township S for Centra Township (

| | |
|---|---|
| Stanley A. Bean (Republican): | |
| Write-in: | |
| Total Votes: | |

## Township C Central Lak Township (

| | |
|---|---|
| Judy Kosloski (Republican): | |
| Write-in: | |
| Total Votes: | |

## Township Tr for Centra Township (1

| | |
|---|---|
| Andrew Smith (Rep | |
| Write-in: | |
| Total Votes: | |

## Township Tru Central Lake Township (2)

| | |
|---|---|
| Patrick Hanlon (Republican): | |
| Pat Marshall (Rep | |
| Write-in: | |
| Total Votes: | |

## Justice of Su Court (2)

Total

==Chestonia Township, Precinct 1==

---------------------

## Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 45 |
| Republican Party (Republican): | 134 |
| Libertarian Party (Libertarian): | 0 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 0 |
| Green Party (Green): | 0 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 179 |

## President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 93 |
| Donald J. Trump / Michael R. Pence (Republican): | 197 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 3 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 1 |
| Total Votes: | 294 |

## Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 84 |
| Jason Strayhorn (Democrat): | 73 |
| Tami Carlone (Republican): | 171 |
| Michelle A. Frederick (Republican): | 170 |
| Bill Hall (Libertarian): | 8 |
| Richard A. Hewer (Libertarian): | 2 |
| Karen Adams (U.S. Taxpayers): | 4 |
| Douglas Levesque (U.S. Taxpayers): | 4 |
| Mary Anne Hering (Working Class): | 4 |
| Hali McEachern (Working Class): | 4 |
| Tom Mair (Green): | 8 |
| Write-in: | 5 |
| Total Votes: | 537 |

## Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 77 |
| Shauna Ryder Diggs (Democrat): | 81 |
| Sarah Hubbard (Republican): | 177 |
| Carl Meyers (Republican): | 174 |
| James L. Hudler (Libertarian): | 2 |
| Eric Larson (Libertarian): | 5 |
| Ronald E. Graeser (U.S. Taxpayers): | 5 |

## Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 79 |
| Shirley Stancato (Democrat): | 80 |
| Don Gates (Republican): | 175 |
| Terri Lynn Land (Republican): | 175 |
| Jon Elgas (Libertarian): | 6 |
| Christine C. Schwartz (U.S. Taxpayers): | 6 |
| Susan Odgers (Green): | 8 |
| Write-in: | 5 |
| Total Votes: | 534 |

## County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 216 |
| Write-in: | 11 |
| Total Votes: | 227 |

## County Sheriff (1)

| | |
|---|---|
| Daniel S. Bean (Republican): | 233 |
| Write-in: | 12 |
| Total Votes: | 245 |

## County Clerk (1)

| | |
|---|---|
| Sheryl Guy (Republican): | 219 |
| Write-in: | 12 |
| Total Votes: | 231 |

## County Treasurer (1)

| | |
|---|---|
| Sherry A. Comben (Republican): | 220 |

Total

Custer Township, Precinct 1

--------------------------

### Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 108 |
| Republican Party (Republican): | 354 |
| Libertarian Party (Libertarian): | 1 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 3 |
| Working Class Party (Working Class): | 2 |
| Green Party (Green): | 1 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 469 |

### President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 240 |
| Donald J. Trump / Michael R. Pence (Republican): | 521 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 11 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 2 |
| Howie Hawkins / Angela Walker (Green): | 1 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 0 |
| Total Votes: | 775 |

### 105th District (1)

| | |
|---|---|
| Jonathan Burke (Democrat): | 221 |
| Ken Borton (Republican): | 534 |
| Write-in: | 1 |
| Total Votes: | 756 |

### Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 201 |
| Jason Strayhorn (Democrat): | 185 |
| Tami Carlone (Republican): | 481 |
| Michelle A. Frederick (Republican): | 475 |
| Bill Hall (Libertarian): | 23 |
| Richard A. Hewer (Libertarian): | 13 |
| Karen Adams (U.S. Taxpayers): | 13 |
| Douglas Levesque (U.S. Taxpayers): | 5 |
| Mary Anne Hering (Working Class): | 15 |
| Hali McEachern (Working Class): | 8 |
| Tom Mair (Green): | 15 |
| Write-in: | 3 |
| Total Votes: | 1437 |

| | |
|---|---|
| (Democrat): | 178 |
| Pat O'Keefe (Republican): | 491 |
| Tonya Schuitmaker (Republican): | 485 |
| Will Tyler White (Libertarian): | 22 |
| Janet M. Sanger (U.S. Taxpayers): | 14 |
| John Paul Sanger (U.S. Taxpayers): | 8 |
| Brandon Hu (Green): | 10 |
| Robin Lea Laurain (Green): | 14 |
| Bridgette Abraham-Guzman (Natural Law): | 8 |
| Write-in: | 2 |
| Total Votes: | 1408 |

### Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 172 |
| Shirley Stancato (Democrat): | 181 |
| Don Gates (Republican): | 490 |
| Terri Lynn Land (Republican): | 486 |
| Jon Elgas (Libertarian): | 25 |
| Christine C. Schwartz (U.S. Taxpayers): | 16 |
| Susan Odgers (Green): | 20 |
| Write-in: | 3 |
| Total Votes: | 1393 |

### County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 618 |
| Write-in: | 12 |
| Total Votes: | 630 |

### County Sheriff (1)

| | |
|---|---|
| Daniel S. Bean (Republican): | 652 |
| Write-in: | 11 |
| Total Votes: | 663 |

| | |
|---|---|
| Total Votes: | |

### County Su

| | |
|---|---|
| Scott Papinea (Republican): | |
| Write-in: | |
| Total Votes: | |

### County Co 5th Distr

| | |
|---|---|
| Terry VanAlst (Republican): | |
| Write-in: | |
| Total Votes: | |

### County Co 6th Distr

| | |
|---|---|
| Brenda Ricksga (Republican): | |
| Write-in: | |
| Total Votes: | |

### Township for Custe (1)

| | |
|---|---|
| Roxann Flake ( | |
| Write-in: | |
| Total Votes: | |

### Township Custer To

| | |
|---|---|
| Stacy Simon (R | |
| Write-in: | |
| Total Votes: | |

### Township. for Custe (1)

| | |
|---|---|
| Renee Elder (I | |
| Write-in: | |
| Total Votes: | |

Echo Township, Precinct 1
--------------------------------

### Justice of Supreme Court (2)

| | |
|---|---|
| Susan L. Hubbard: | 23 |
| Mary Kelly: | 31 |
| Bridget Mary McCormack: | 54 |
| Kerry Lee Morgan: | 7 |
| Katherine Mary Nepton: | 9 |
| Brock Swartzle: | 33 |
| Elizabeth M. Welch: | 33 |
| Write-in: | 0 |
| Total Votes: | 190 |

### Judge of Court of Appeals 4th District Incumbent Position (2)

| | |
|---|---|
| Michael J. Kelly: | 72 |
| Amy Ronayne Krause: | 63 |
| Write-in: | 0 |
| Total Votes: | 135 |

### Judge of Court of Appeals 4th District Non-Incumbent Position (1)

| | |
|---|---|
| Michelle Rick: | 80 |
| Write-in: | 0 |
| Total Votes: | 80 |

### Judge of Circuit Court 13th Circuit Incumbent Position (1)

| | |
|---|---|
| Kevin A. Elsenheimer: | 83 |

### Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 100 |
| Republican Party (Republican): | 230 |
| Libertarian Party (Libertarian): | 1 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 1 |
| Green Party (Green): | 0 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 332 |

### President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 198 |
| Donald J. Trump / Michael R. Pence (Republican): | 392 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 8 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 1 |
| Howie Hawkins / Angela Walker (Green): | 2 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 0 |
| Total Votes: | 601 |

### Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 175 |
| Jason Strayhorn (Democrat): | 169 |
| Tami Carlone (Republican): | 351 |
| Michelle A. Frederick (Republican): | 361 |
| Bill Hall (Libertarian): | 16 |
| Richard A. Hewer (Libertarian): | 13 |
| Karen Adams (U.S. Taxpayers): | 6 |
| Douglas Levesque (U.S. Taxpayers): | 4 |
| Mary Anne Hering (Working Class): | 11 |
| Hali McEachern (Working Class): | 9 |
| Tom Mair (Green): | 3 |
| Write-in: | 0 |
| Total Votes: | 1118 |

### Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 168 |
| Shauna Ryder Diggs (Democrat): | 171 |
| Sarah Hubbard (Republican): | 361 |
| Carl Meyers (Republican): | 352 |
| James L. Hudler (Libertarian): | 11 |
| Eric Larson (Libertarian): | 13 |
| Ronald E. Graeser (U.S. Taxpayers): | 5 |

| Township Trustee for Elk Rapids Township (2) | |
|---|---|
| Richard D. Hults (Republican): | 444 |
| Aaron Isenhart (Republican): | 466 |
| Write-in: | 16 |
| Total Votes: | 926 |

| Justice of Supreme Court (2) | |
|---|---|
| Susan L. Hubbard: | 68 |
| Michelle Rick: | 407 |
| Write-in: | 3 |
| Total Votes: | 410 |

| Judge of Circuit Court 13th Circuit Incumbent Position (1) | |
|---|---|
| Kevin A. Elsenheimer: | 442 |
| Write-in: | 3 |
| Total Votes: | 445 |

| Village President for Village of Elk Rapids (1) | |
|---|---|
| James D. Janisse: | 486 |
| Write-in: | 15 |
| Total Votes: | 501 |

Village Trustee for Village of Elk Rapids (3)

| Village Trustee for Village of Elk Rapids, Partial Term Ending 11/06/2022 (1) | |
|---|---|
| Teresa Fosdick: | 513 |
| Write-in: | 4 |
| Total Votes: | 517 |

| School Board Member for Elk Rapids Schools (3) | |
|---|---|
| No: | 224 |
| Total Votes: | 806 |

---------------------

Total

Elk Rapids Township, Precinct 1

---------------------

| Straight Party Ticket (1) | |
|---|---|
| Democratic Party (Democrat): | 327 |
| Republican Party (Republican): | 414 |
| Libertarian Party (Libertarian): | 1 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 1 |
| Working Class Party (Working Class): | 2 |
| Green Party (Green): | 1 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 746 |

| President of the United States (1) | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 784 |
| Donald J. Trump / Michael R. Pence (Republican): | 611 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 5 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 2 |
| Howie Hawkins / Angela Walker (Green): | 5 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 2 |
| Total Votes: | 1409 |

| Representative in State Legislature 105th District (1) | |
|---|---|
| Jonathan Burke (Democrat): | 705 |
| Ken Borton (Republican): | 661 |
| Write-in: | 1 |
| Total Votes: | 1367 |

| Member of the State Board of Education (2) | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 681 |
| Jason Strayhorn (Democrat): | 636 |
| Tami Carlone (Republican): | 594 |
| Michelle A. Frederick (Republican): | 607 |
| Bill Hall (Libertarian): | 17 |
| Richard A. Hewer (Libertarian): | 20 |
| Karen Adams (U.S. Taxpayers): | 10 |

## Incumbent Position (1)

| | |
|---|---|
| Kevin A. Elsenheimer: | 224 |
| Write-in: | 5 |
| Total Votes: | 229 |

## Village President for Village of Elk Rapids (1)

| | |
|---|---|
| James D. Janisse: | 221 |
| Write-in: | 15 |
| Total Votes: | 236 |

## Village Trustee for Village of Elk Rapids (3)

| | |
|---|---|
| Douglas Bronkema: | 148 |
| Patricia Ann Perlman: | 141 |
| Charlie Pryde: | 197 |
| Laura Shumate: | 168 |
| Write-in: | 3 |
| Total Votes: | 657 |

## Village Trustee for Village of Elk Rapids, Partial Term Ending 11/06/2022 (1)

| | |
|---|---|
| Teresa Fosdick: | 234 |
| Write-in: | 6 |
| Total Votes: | 240 |

## School Board Member for Elk Rapids Schools (3)

| | |
|---|---|
| Darryl Antcliff: | 166 |

## Total
Elk Rapids Township, Precinct 1
------------------------

## Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 81 |
| Republican Party (Republican): | 263 |
| Libertarian Party (Libertarian): | 5 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 1 |
| Working Class Party (Working Class): | 0 |
| Green Party (Green): | 4 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 354 |

## President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 202 |
| Donald J. Trump / Michael R. Pence (Republican): | 414 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 12 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 2 |
| Howie Hawkins / Angela Walker (Green): | 4 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 0 |
| Total Votes: | 634 |

## Representative in State Legislature 105th District (1)

| | |
|---|---|
| Jonathan Burke (Democrat): | 194 |
| Ken Borton (Republican): | 410 |
| Write-in: | 3 |
| Total Votes: | 607 |

## Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 154 |
| Jason Strayhorn (Democrat): | 144 |
| Tami Carlone (Republican): | 361 |
| Michelle A. Frederick (Republican): | 361 |
| Bill Hall (Libertarian): | 29 |
| Richard A. Hewer (Libertarian): | 20 |
| Karen Adams (U.S. Taxpayers): | 9 |
| Douglas Levesque (U.S. Taxpayers): | 7 |
| Mary Anne Hering (Working Class): | 19 |
| Hali McEachern (Working Class): | 8 |
| Tom Mair (Green): | 12 |
| Write-in: | 0 |
| Total Votes: | 1124 |

| United States ( ) | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 610 |
| Donald J. Trump / Michael R. Pence (Republican): | 753 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 19 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 1 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 1 |
| Write-in: | 2 |
| Total Votes: | 1386 |

| United States Senator for State (1) | |
|---|---|
| Gary Peters (Democrat): | 580 |
| John James (Republican): | 782 |
| Valerie L. Willis (U.S. Taxpayers): | 4 |
| Marcia Squier (Green): | 5 |
| Doug Dern (Natural Law): | 2 |
| Write-in: | 0 |
| Total Votes: | 1373 |

| Representative in Congress 1st District (1) | |
|---|---|
| Dana Ferguson (Democrat): | 532 |
| Jack Bergman (Republican): | 817 |

------------------------------

Forest Home Township, Precinct 1

Total

------------------------------

| University of Michigan (2) | |
|---|---|
| Mark Bernstein (Democrat): | 487 |
| Shauna Ryder Diggs (Democrat): | 482 |
| Sarah Hubbard (Republican): | 710 |
| Carl Meyers (Republican): | 674 |
| James L. Hudler (Libertarian): | 33 |
| Eric Larson (Libertarian): | 42 |
| Ronald E. Graeser (U.S. Taxpayers): | 8 |
| Crystal Van Sickle (U.S. Taxpayers): | 20 |
| Michael Mawilai (Green): | 23 |
| Keith Butkovich (Natural Law): | 8 |
| Write-in: | 3 |
| Total Votes: | 2490 |

| Trustee of Michigan State University (2) | |
|---|---|
| Brian Mosallam (Democrat): | 471 |
| Rema Ella Vassar (Democrat): | 488 |
| Pat O'Keefe (Republican): | 713 |
| Tonya Schuitmaker (Republican): | 703 |
| Will Tyler White (Libertarian): | 43 |
| Janet M. Sanger (U.S. Taxpayers): | 21 |
| John Paul Sanger (U.S. Taxpayers): | 8 |
| Brandon H. (Green): | 13 |

| | 1014 |
|---|---|
| Write-in: | 4 |
| Total Votes: | 1018 |

| County Treasurer (1) | |
|---|---|
| Sherry A. Comben (Republican): | 1001 |
| Write-in: | 4 |
| Total Votes: | 1005 |

| County Register of Deeds (1) | |
|---|---|
| Patty Niepoth (Republican): | 983 |
| Write-in: | 7 |
| Total Votes: | 998 |

| County Drain Commissioner (1) | |
|---|---|
| Mark Stone (Republican): | 981 |
| Write-in: | 6 |
| Total Votes: | 987 |

| County Surveyor (1) | |
|---|---|
| Scott Papineau (Republican): | 973 |
| Write-in: | 4 |
| Total Votes: | 977 |

County Commissioner

| Judge of Court of Appeals 4th District Non-Incumbent Position (1) | |
|---|---|

| County Commissioner 5th District (1) | |
|---|---|
| Terry VanHelstine (Republican): | 222 |

**Helena Township, P**

--- PRINTING INTERRUPTED ---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Antrim County
Antrim November 2020
Tuesday, November 3, 2020

Tabulator Name
Helena Township, Precinct 1
ICP

Tabulator ID
8

Voting Location
Helena Township

<u>Precinct:</u>

Helena Township, Precinct 1

- - - - - - - - - -

Poll Opened
Nov 03/2020 06:16:29
Poll Closed
Nov 03/2020 20:01:52
Report Printed
Nov 03/2020 20:11:08

- - - - - - - - - -

Unit Model: PCOS-320C (Rev 1072)
Unit Serial:        AAFAJHX0088
Protective Counter:        3126
Software Version:    5.5.3-0002

---

| State Proposal 20-1 (1) | |
|---|---|
| Yes: | 0 |
| No: | 0 |
| Total Votes: | 0 |

| State Proposal 20-2 (1) | |
|---|---|
| Yes: | 0 |
| No: | 0 |
| Total Votes: | 0 |

Certification

WE, THE UNDERSIGNED, WERE
PRESENT DURING THE OPENING OF
THE POLLS AND PRINTING OF THIS
RECORD AND CAN VERIFY THAT ALL
CANDIDATE VOTE TOTALS ARE ZERO
AT THIS TIME.

*Constance K Molby*
Signature

*V. Boyce*

---

| President and Vice President of the United States (1) | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 306 |
| Donald J. Trump / Michael R. Pence (Republican): | 431 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 4 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 1 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 1 |
| Write-in: | 0 |
| Total Votes: | 743 |

| United States Senator for State (1) | |
|---|---|
| Gary Peters (Democrat): | 294 |
| John James (Republican): | 436 |
| Valerie L. Willis (U.S. Taxpayers): | 2 |
| Marcia Squier (Green): | 4 |
| Doug Dern (Natural Law): | 1 |
| Write-in: | 0 |
| Total Votes: | 737 |

| Representative in Congress 1st District (1) | |
|---|---|
| Dana Ferguson (Democrat): | 279 |
| Jack Bergman (Republican): | 450 |

| Non-Incumbent Position (1) | |
|---|---|
| Michelle Rick: | 267 |
| Write-in: | 4 |
| Total Votes: | (271) |

| Judge of Circuit Court 13th Circuit Incumbent Position (1) | |
|---|---|
| Kevin A. Elsenheimer: | 270 |
| Write-in: | 1 |
| Total Votes: | (271) |

| Board Member for Charlevoix-Emmet Intermediate School District 6 Year Term (3) | |
|---|---|
| Thelma A. Chellis: | 227 |
| Jean E. Frentz: | 199 |
| Mary P. Jason: | 221 |
| Write-in: | 1 |
| Total Votes: | (648) |

| Board Member for Charlevoix-Emmet Intermediate School District Partial Term Ending 12/31/2024 (1) | |
|---|---|
| Larry Cassidy: | 250 |
| Write-in: | 7 |
| Total Votes: | (257) |

---

Total

==Jordan Township, Precinct 1==

---

| Straight Party Ticket (1) | |
|---|---|
| Democratic Party (Democrat): | 75 |
| Republican Party (Republican): | 252 |
| Libertarian Party (Libertarian): | 2 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 1 |
| Working Class Party (Working Class): | 2 |
| Green Party (Green): | 1 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | (333) |

| President and Vice President of the United States (1) | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 183 |
| Donald J. Trump / Michael R. Pence (Republican): | 371 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 13 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 1 |
| Howie Hawkins / Angela Walker (Green): | 1 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 2 |

==571==

| Member of the State Board of Education (2) | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 165 |
| Jason Strayhorn (Democrat): | 154 |
| Tami Carlone (Republican): | 334 |
| Michelle A. Frederick (Republican): | 337 |
| Bill Hall (Libertarian): | 15 |
| Richard A. Hewer (Libertarian): | 12 |
| Karen Adams (U.S. Taxpayers): | 10 |
| Douglas Levesque (U.S. Taxpayers): | 5 |
| Mary Anne Hering (Working Class): | 15 |
| Hali McEachern (Working Class): | 5 |
| Tom Mair (Green): | 4 |
| Write-in: | 0 |
| Total Votes: | (1056) |


*Kearney*

## Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 187 |
| Republican Party (Republican): | 490 |
| Libertarian Party (Libertarian): | 2 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 0 |
| Green Party (Green): | 1 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 680 |

## President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 471 |
| Donald J. Trump / Michael R. Pence (Republican): | 743 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 16 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 3 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 4 |
| Total Votes: | 1237 |

## Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 396 |
| Jason Strayhorn (Democrat): | 391 |
| Tami Carlone (Republican): | 675 |
| Michelle A. Frederick (Republican): | 667 |
| Bill Hall (Libertarian): | 31 |
| Richard A. Hewer (Libertarian): | 21 |
| Karen Adams (U.S. Taxpayers): | 7 |
| Douglas Levesque (U.S. Taxpayers): | 5 |
| Mary Anne Hering (Working Class): | 26 |
| Hali McEachern (Working Class): | 22 |
| Tom Mair (Green): | 22 |
| Write-in: | 0 |
| Total Votes: | 2263 |

## Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 401 |
| Shauna Ryder Diggs (Democrat): | 379 |
| Sarah Hubbard (Republican): | 694 |
| Carl Meyers (Republican): | 664 |
| James L. Hudler (Libertarian): | 20 |

## Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 385 |
| Shirley Stancato (Democrat): | 390 |
| Don Gates (Republican): | 668 |
| Terri Lynn Land (Republican): | 685 |
| Jon Elgas (Libertarian): | 26 |
| Christine C. Schwartz (U.S. Taxpayers): | 17 |
| Susan Odgers (Green): | 39 |
| Write-in: | 2 |
| Total Votes: | 2212 |

## County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 893 |
| Write-in: | 14 |
| Total Votes: | 907 |

## County Sheriff (1)

| | |
|---|---|
| Daniel S. Bean (Republican): | 949 |
| Write-in: | 18 |
| Total Votes: | 967 |

## County Clerk (1)

| | |
|---|---|
| Sheryl Guy (Republican): | 932 |
| Write-in: | 9 |
| Total Votes: | 941 |

**Township Treasurer for Mancelona Township (1)**

| | |
|---|---|
| Jessie Ayoub (Republican): | 449 |
| Write-in: | 5 |
| Total Votes: | 454 |

**Township Trustee for Mancelona Township (2)**

| | |
|---|---|
| Yousef M. Jabara (Democrat): | 120 |
| Rod Vesey (Republican): | 415 |
| Donna Gundle-Krieg (Libertarian): | 167 |
| Write-in: | 9 |
| Total Votes: | 711 |

**Township Constable for Mancelona Township (1)**

| | |
|---|---|
| Linden M. Bielecki (Republican): | 448 |
| Write-in: | 6 |
| Total Votes: | 454 |

**Justice of Supreme Court (2)**

| | |
|---|---|
| Susan L. Hubbard: | 60 |
| Mary Kelly: | 109 |
| Bridget Mary McCormack: | 208 |
| Kerry Lee Morgan: | 79 |
| Katherine Mary Nepton: | 58 |

**Village Trustee for Village of Mancelona (2)**

| | |
|---|---|
| Aaron Biehl: | 323 |
| Steven Elder: | 286 |
| Eugene K. Kerr: | 108 |
| Write-in: | 8 |
| Total Votes: | 725 |

**School Board Member for Mancelona Schools (3)**

| | |
|---|---|
| Kim Musselman: | 330 |
| Tom Ross: | 274 |
| Burt Thompson: | 264 |
| Write-in: | 7 |
| Total Votes: | 875 |

**State Proposal 20-1 (1)**

| | |
|---|---|
| Yes: | 419 |
| No: | 80 |
| Total Votes: | 499 |

**State Proposal 20-2 (1)**

| | |
|---|---|
| Yes: | 446 |
| No: | 67 |
| Total Votes: | 513 |

————————————————

Total

Mancelona Township, Precinct 1

————————————————

**President and Vice President of the United States (1)**

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 276 |
| Donald J. Trump / Michael R. Pence (Republican): | 835 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 20 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 1 |
| Write-in: | 1 |
| Total Votes: | 1133 |

**United States Senator for State (1)**

| | |
|---|---|
| Gary Peters (Democrat): | 294 |
| John James (Republican): | 803 |
| Valerie L. Willis (U.S. Taxpayers): | 9 |
| Marcia Squier (Green): | 6 |
| Doug Dern (Natural Law): | 7 |
| Write-in: | 2 |
| Total Votes: | 1121 |

**Representative in Congress 1st District (1)**

| | |
|---|---|
| Dana Ferguson (Democrat): | 264 |
| Jack Bergman (Republican): | 829 |

Total
Mancelona Township, Precinct 2
————————————————————

## Justice of Supreme Court (2)

| | |
|---|---|
| Susan L. Hubbard: | 116 |
| Mary Kelly: | 215 |
| Bridget Mary McCormack: | 304 |
| Kerry Lee Morgan: | 65 |
| Katherine Mary Nepton: | 99 |
| Brock Swartzle: | 226 |
| Elizabeth M. Welch: | 165 |
| Write-in: | 9 |
| Total Votes: | 1199 |

## Judge of Court of Appeals 4th District Incumbent Position (2)

| | |
|---|---|
| Michael J. Kelly: | 524 |
| Amy Ronayne Krause: | 452 |
| Write-in: | 13 |
| Total Votes: | 989 |

## Judge of Court of Appeals 4th District Non-Incumbent Position (1)

| | |
|---|---|
| Michelle Rick: | 579 |
| Write-in: | 9 |
| Total Votes: | 588 |

## Judge of Circuit Court 13th Circuit Incumbent Position (1)

| | |
|---|---|
| Kevin A. Elsenheimer: | 601 |

## Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 107 |
| Republican Party (Republican): | 399 |
| Libertarian Party (Libertarian): | 4 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 2 |
| Working Class Party (Working Class): | 5 |
| Green Party (Green): | 1 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 518 |

## President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 247 |
| Donald J. Trump / Michael R. Pence (Republican): | 646 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 13 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 2 |
| Howie Hawkins / Angela Walker (Green): | 1 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 1 |
| Total Votes: | 910 |

## Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 214 |
| Jason Strayhorn (Democrat): | 204 |
| Tami Carlone (Republican): | 554 |
| Michelle A. Frederick (Republican): | 557 |
| Bill Hall (Libertarian): | 22 |
| Richard A. Hewer (Libertarian): | 21 |
| Karen Adams (U.S. Taxpayers): | 18 |
| Douglas Levesque (U.S. Taxpayers): | 13 |
| Mary Anne Hering (Working Class): | 29 |
| Hali McEachern (Working Class): | 18 |
| Tom Mair (Green): | 4 |
| Write-in: | 3 |
| Total Votes: | 1657 |

## Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 220 |
| Shauna Ryder Diggs (Democrat): | 203 |
| Sarah Hubbard (Republican): | 575 |
| Carl Meyers (Republican): | 544 |
| James L. Hudler (Libertarian): | 18 |
| Eric Larson (Libertarian): | 27 |
| Ronald E. Graeser (U.S. Taxpayers): | 13 |

## Antrim County
## Antrim November 2020
Tuesday, November 3, 2020

Tabulator Name
Milton Township, Precinct 1
AVCB

Tabulator ID
110

Voting Location
Milton Township

### Precinct:

Milton Township, Precinct 1

– – – – – – – – – –

Poll Opened
Nov 03/2020 06:45:21

Poll Closed
Nov 03/2020 20:22:15

| President and Vice President of the United States (1) | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 626 |
| Donald J. Trump / Michael R. Pence (Republican): | 543 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 6 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 2 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 2 |
| Write-in: | 0 |
| Total Votes: | 1179 |

| United States Senator for State (1) | |
|---|---|
| Gary Peters (Democrat): | 584 |
| John James (Republican): | 583 |
| Valerie L. Willis (U.S. Taxpayers): | 2 |
| Marcia Squier (Green): | 2 |
| Doug Dern (Natural Law): | 1 |
| Write-in: | 1 |
| Total Votes: | 1173 |

| Representative in Congress 1st District (1) | |
|---|---|
| Dana Ferguson (Democrat): | 540 |
| Jack Bergman (Republican): | 614 |
| Ben Boren (Libertarian): | 9 |

| Regent of the University of Michigan (2) | |
|---|---|
| Mark Bernstein (Democrat): | 496 |
| Shauna Ryder Diggs (Democrat): | 493 |
| Sarah Hubbard (Republican): | 549 |
| Carl Meyers (Republican): | 530 |
| James L. Hudler (Libertarian): | 14 |
| Eric Larson (Libertarian): | 20 |
| Ronald E. Graeser (U.S. Taxpayers): | 3 |
| Crystal Van Sickle (U.S. Taxpayers): | 13 |
| Michael Mawilai (Green): | 19 |
| Keith Butkovich (Natural Law): | 9 |
| Write-in: | 2 |
| Total Votes: | 2148 |
| Total Votes: | 2111 |

| County Prosecuting Attorney (1) | |
|---|---|
| James L. Rossiter (Republican): | 743 |
| Write-in: | 11 |
| Total Votes: | 754 |

| County Sheriff (1) | |
|---|---|
| Daniel S. Bean (Republican): | 782 |
| Write-in: | 11 |
| Total Votes: | 793 |

| Coun | |
|---|---|
| Sheryl | |
| Write-i | |
| Total V | |

| Count | |
|---|---|
| Sherry | |
| (Republ | |
| Write-i | |
| Total Vo | |

| Count: Deeds | |
|---|---|
| Patty Ni (Republi | |
| Write-in | |
| Total Vo | |

| Township for Mil (1) | |
|---|---|
| Liz Atkins | |
| Write-in: | |
| Total Votes | |

--- PRINTING INTERRUPTED ---

********************

Antrim County
Antrim November 2020
Tuesday, November 3, 2020

Tabulator Name
  Milton Township, Precinct 1
  ICP

Tabulator ID
  13

Voting Location
  Milton Township

Precinct:

Milton Township, Precinct 1

- - - - - - - -

Poll Opened
                Nov 03/2020 06:01:49
Poll Closed
                Nov 03/2020 20:14:17
Report Printed
                Nov 03/2020 20:18:29

- - - - - - - -

Unit Model: PCOS-320C (Rev 1072)
Unit Serial:   AAFAJHX0066
Protective Counter:    5352
Software Version:  5.5.3-0002

- - - - - - - -

Total Scanned:          640
Total Voters:           640

## President and Vice President of the United States (1)

| Candidate | Votes |
|-----------|-------|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 143 |
| Donald J. Trump / Michael R. Pence (Republican): | 478 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 12 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 1 |
| Write-in: | 3 |
| Total Votes: | 637 |

## United States Senator for State (1)

| Candidate | Votes |
|-----------|-------|
| Gary Peters (Democrat): | 134 |
| John James (Republican): | 489 |
| Valerie L. Willis (U.S. Taxpayers): | 2 |
| Marcia Squier (Green): | 6 |
| Doug Dern (Natural Law): | 1 |
| Write-in: | 0 |
| Total Votes: | 632 |

## Representative in Congress 1st District (1)

| Candidate | Votes |
|-----------|-------|
| Dana Ferguson (Democrat): | 116 |
| Jack Bergman (Republican): | 501 |

## Regent of the University of Michigan (2)

| Candidate | Votes |
|-----------|-------|
| Mark Bernstein (Democrat): | 112 |
| Shauna Ryder Diggs (Democrat): | 102 |
| Sarah Hubbard (Republican): | 458 |
| Carl Meyers (Republican): | 437 |
| James L. Hudler (Libertarian): | 14 |
| Eric Larson (Libertarian): | 20 |
| Ronald E. Graeser (U.S. Taxpayers): | 1 |
| Crystal Van Sickle (U.S. Taxpayers): | 8 |
| Michael Mawilai (Green): | 7 |
| Keith Butkovich (Natural Law): | 7 |
| Write-in: | 1 |
| Total Votes: | 1167 |

## Trustee of Michigan State University (2)

| Candidate | Votes |
|-----------|-------|
| Brian Mosallam (Democrat): | 108 |
| Rema Ella Vassar (Democrat): | 108 |
| Pat O'Keefe (Republican): | 451 |
| Tonya Schuitmaker (Republican): | 444 |
| Will Tyler White (Libertarian): | 21 |
| Janet M. Sanger (U.S. Taxpayers): | 4 |
| John Paul Sanger (U.S. Taxpayers): | 4 |
| Brandon Hu (Green): | 5 |

## County Clerk

| Candidate | Votes |
|-----------|-------|
| Sheryl Guy (Repub | |
| Write-in: | |
| Total Votes: | |

## County Treas

| Candidate | Votes |
|-----------|-------|
| Sherry A. Comben (Republican): | |
| Write-in: | |
| Total Votes: | |

## County Regis Deeds (1)

| Candidate | Votes |
|-----------|-------|
| Patty Niepoth (Republican): | |
| Write-in: | |
| Total Votes: | |

## County Drain Commissioner

| Candidate | Votes |
|-----------|-------|
| Mark Stone (Republ | |
| Write-in: | |
| Total Votes: | |

## County Survey

| Candidate | Votes |
|-----------|-------|
| Scott Papineau (Republican): | |
| Write-in: | |
| Total Votes: | |

Star To...

Precinct:

Star Township, Precinct 1

Precinct:

Star Township, Precinct 1

## Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 67 |
| Republican Party (Republican): | 299 |
| Libertarian Party (Libertarian): | 0 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 1 |
| Working Class Party (Working Class): | 0 |
| Green Party (Green): | 0 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 367 |

## President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 161 |
| Donald J. Trump / Michael R. Pence (Republican): | 462 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 10 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 0 |
| Total Votes: | 633 |

| | |
|---|---|
| Total Votes: | 632 |

## Representative in Congress 1st District (1)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 147 |
| Jason Strayhorn (Democrat): | 125 |
| Tami Carlone (Republican): | 390 |
| Michelle A. Frederick (Republican): | 395 |
| Bill Hall (Libertarian): | 11 |
| Richard A. Hewer (Libertarian): | 3 |
| Karen Adams (U.S. Taxpayers): | 8 |
| Douglas Levesque (U.S. Taxpayers): | 5 |
| Mary Anne Hering (Working Class): | 22 |
| Hali McEachern (Working Class): | 12 |
| Tom Mair (Green): | 8 |
| Write-in: | 3 |
| Total Votes: | 1129 |

| | |
|---|---|
| Eric Larson (Libertarian): | 9 |
| Ronald E. Graeser (U.S. Taxpayers): | 7 |
| Crystal Van Sickle (U.S. Taxpayers): | 7 |
| Michael Mawilai (Green): | 5 |
| Keith Butkovich (Natural Law): | |
| Robin Lea Laurain (Green): | 4 |
| Bridgette Abraham-Guzman (Natural Law): | 0 |
| Write-in: | 3 |
| Total Votes: | 1101 |

## Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 133 |
| Shirley Stancato (Democrat): | 136 |
| Don Gates (Republican): | 391 |
| Terri Lynn Land (Republican): | 401 |
| Jon Elgas (Libertarian): | 10 |
| Christine C. Schwartz (U.S. Taxpayers): | 11 |
| Susan Odgers (Green): | 9 |
| Write-in: | 3 |
| Total Votes: | 1094 |

## County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 507 |
| Write-in: | 5 |
| Total Votes: | 512 |

## County Sheriff (1)

| | |
|---|---|
| Daniel S. Bean (Republican): | 525 |
| Write-in: | 7 |
| Total Votes: | 532 |

## County R... Deeds (1...

| | |
|---|---|
| Patty Niepoth (Republican): | |

## 9th Dist...

| | |
|---|---|
| Christian M... (Republican... | |
| Write-in: | |
| Total Votes | |

## Townshi... for Sta... (1)

| | |
|---|---|
| Robert Mars... | |
| Write-in: | |
| Total Votes | |

## Townshi... Star To...

| | |
|---|---|
| Phyllis Ho... (Republica... | |
| Write-in: | |
| Total Vote | |

## Townshi... for Sta... (1)

| | |
|---|---|
| Tammi Full... | |
| Write-in: | |
| Total Vote | |

| | 4 |
|---|---|
| ...es: | 188 |

**...y Register of ... (1)**

| | |
|---|---|
| ...epoth ...can): | 188 |
| ...n: | 4 |
| ...otes: | 192 |

**...y Drain ...issioner (1)**

| | |
|---|---|
| ...one (Republican): | 182 |
| ...in: | 4 |
| ...Votes: | 186 |

**...ty Surveyor (1)**

| | |
|---|---|
| ...Papineau ...lican): | 180 |
| ...in: | 4 |
| ...Votes: | 184 |

**...ty Commissioner ... District (1)**

| | |
|---|---|
| ...Bargy (Republican): | 180 |
| ...in: | 6 |
| ...Votes: | 186 |

**...nship Supervisor ... Torch Lake ...nship (1)**

| | |
|---|---|
| ...rt Cook (Republican): | 177 |
| ...e-in: | 5 |
| ...l Votes: | 182 |

| Susan L. Hubbard: | 18 |
|---|---|
| Mary Kelly: | 72 |
| Bridget Mary McCormack: | 113 |
| Kerry Lee Morgan: | 13 |
| Katherine Mary Nepton: | 6 |
| Brock Swartzle: | 70 |
| Elizabeth M. Welch: | 56 |
| Write-in: | 2 |
| Total Votes: | 350 |

**Judge of Court of Appeals 4th District Incumbent Position (2)**

| Michael J. Kelly: | 140 |
|---|---|
| Amy Ronayne Krause: | 135 |
| Write-in: | 4 |
| Total Votes: | 279 |

**Judge of Court of Appeals 4th District Non-Incumbent Position (1)**

| Michelle Rick: | 145 |
|---|---|
| Write-in: | 2 |
| Total Votes: | 147 |

**Judge of Circuit Court 13th Circuit Incumbent Position (1)**

| Kevin A. Elsenheimer: | 144 |
|---|---|
| Write-in: | 3 |
| Total Votes: | 147 |

—————————————————
Total
Torch Lake Township, Precinct 1
—————————————————

**Straight Party Ticket (1)**

| Democratic Party (Democrat): | 143 |
|---|---|
| Republican Party (Republican): | 297 |
| Libertarian Party (Libertarian): | 3 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 2 |
| Green Party (Green): | 0 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 445 |

**President and Vice President of the United States (1)**

| Joseph R. Biden / Kamala D. Harris (Democrat): | 462 |
|---|---|
| Donald J. Trump / Michael R. Pence (Republican): | 526 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 7 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 1 |
| Howie Hawkins / Angela Walker (Green): | 2 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 1 |
| Write-in: | 0 |

999

| (1) | |
|---|---|
| Yes: | 122 |
| No: | 26 |
| Total Votes: | 148 |

---

## Total
Warner Township, Precinct 1

---

### Straight Party Ticket (1)

| | |
|---|---|
| Democratic Party (Democrat): | 35 |
| Republican Party (Republican): | 106 |
| Libertarian Party (Libertarian): | 0 |
| U.S. Taxpayers Party (U.S. Taxpayers): | 0 |
| Working Class Party (Working Class): | 0 |
| Green Party (Green): | 0 |
| Natural Law Party (Natural Law): | 0 |
| Total Votes: | 141 |

### President and Vice President of the United States (1)

| | |
|---|---|
| Joseph R. Biden / Kamala D. Harris (Democrat): | 60 |
| Donald J. Trump / Michael R. Pence (Republican): | 163 |
| Jo Jorgensen / Jeremy Cohen (Libertarian): | 3 |
| Don Blankenship / William Mohr (U.S. Taxpayers): | 0 |
| Howie Hawkins / Angela Walker (Green): | 0 |
| Rocky De La Fuente / Darcy Richardson (Natural Law): | 0 |
| Write-in: | 1 |
| Total Votes: | 227 |

---

### 105th District (1)

| | |
|---|---|
| Jonathan Burke (Democrat): | 56 |
| Ken Borton (Republican): | 166 |
| Write-in: | 0 |
| Total Votes: | 222 |

### Member of the State Board of Education (2)

| | |
|---|---|
| Ellen Cogen Lipton (Democrat): | 53 |
| Jason Strayhorn (Democrat): | 49 |
| Tami Carlone (Republican): | 141 |
| Michelle A. Frederick (Republican): | 145 |
| Bill Hall (Libertarian): | 3 |
| Richard A. Hewer (Libertarian): | 4 |
| Karen Adams (U.S. Taxpayers): | 3 |
| Douglas Levesque (U.S. Taxpayers): | 3 |
| Mary Anne Hering (Working Class): | 3 |
| Hali McEachern (Working Class): | 5 |
| Tom Mair (Green): | 3 |
| Write-in: | 0 |
| Total Votes: | 412 |

### Regent of the University of Michigan (2)

| | |
|---|---|
| Mark Bernstein (Democrat): | 50 |
| Shauna Ryder Diggs (Democrat): | 49 |
| Sarah Hubbard (Republican): | 146 |
| Carl Meyers (Republican): | 142 |
| James L. Hudler (Libertarian): | 5 |
| Eric Larson (Libertarian): | 3 |
| Ronald E. Graeser (U.S. Taxpayers): | 2 |

---

| | |
|---|---|
| Brian Mosallam (Democrat): | 48 |
| Rema Ella Vassar (Democrat): | 48 |
| Pat O'Keefe (Republican): | 152 |
| Tonya Schuitmaker (Republican): | 140 |
| Will Tyler White (Libertarian): | 4 |
| Janet M. Sanger (U.S. Taxpayers): | 4 |
| John Paul Sanger (U.S. Taxpayers): | 3 |
| Brandon Hu (Green): | 2 |
| Robin Lea Laurain (Green): | 3 |
| Bridgette Abraham-Guzman (Natural Law): | 3 |
| Write-in: | 0 |
| Total Votes: | 407 |

### Governor of Wayne State University (2)

| | |
|---|---|
| Eva Garza Dewaelsche (Democrat): | 50 |
| Shirley Stancato (Democrat): | 47 |
| Don Gates (Republican): | 146 |
| Terri Lynn Land (Republican): | 147 |
| Jon Elgas (Libertarian): | 5 |
| Christine C. Schwartz (U.S. Taxpayers): | 6 |
| Susan Odgers (Green): | 3 |
| Write-in: | 1 |
| Total Votes: | 405 |

### County Prosecuting Attorney (1)

| | |
|---|---|
| James L. Rossiter (Republican): | 178 |
| Write-in: | 2 |
| Total Votes: | 180 |

### County Sheriff (1)
| | |
|---|---|
| Daniel S. Bean | |

---

| | |
|---|---|
| Mark S | |
| Write- | |
| Total | |

### Coun
| | |
|---|---|
| Scott (Repu | |
| Write- | |
| Total | |

### Coun 7th
| | |
|---|---|
| Dawn (Repu | |
| Write | |
| Total | |

### Tow for (1)
| | |
|---|---|
| Marti (Repu | |
| Write | |
| Total | |

### Tow War
| | |
|---|---|
| Pamel (Repu | |
| Write | |
| Total | |

### Tow for (1)
| | |
|---|---|
| Lori (Repu | |
| Write | |
| Total | |

# EXHIBIT D



AP **AP NEWS**

U.S. News | World News
Trending News | Russia-Ukraine war | UN General Assembly | Hurricane Ian | Top 25 College Football Poll | Midterm elections

Click to copy

**RELATED TOPICS**

Joe Biden

Politics

U.S. News

Elections

Voting

Donald Trump

Only on AP

Election 2020

William Barr

AP Top News

# Disputing Trump, Barr says no widespread election fraud

By MICHAEL BALSAMO    June 28, 2022



ADVERTISEMENT

2,256

WASHINGTON (AP) — Disputing President Donald Trump's persistent, baseless claims, Attorney General William Barr declared Tuesday the U.S. Justice Department has uncovered no evidence of widespread voter fraud that could change the outcome of the 2020 election.

Barr's comments, in an interview with the The Associated Press, contradict the concerted effort by Trump, his boss, to subvert the results of last month's voting and block President-elect Joe Biden from taking his place in the White House.

Barr told the AP that U.S. attorneys and FBI agents have been working to follow up specific complaints and information they've received, but "to date, we have not seen fraud on a scale that could have effected a different outcome in the election."

The comments, which drew immediate criticism from Trump attorneys, were especially notable coming from Barr, who has been one of the president's most ardent allies. Before the election, he had repeatedly raised the notion that mail-in voting could be especially vulnerable to fraud during the coronavirus pandemic as Americans feared going to polls and instead chose to vote by mail.

More to Trump's liking, Barr revealed in the AP interview that in October he had appointed U.S. Attorney John Durham as a special counsel, giving the prosecutor the authority to continue to investigate the origins of the Trump-Russia probe after Biden takes over and making it difficult to fire him. Biden hasn't said what he might do with the investigation, and his transition team didn't comment Tuesday.

Trump has long railed against the investigation into whether his 2016 campaign was coordinating with Russia, but he and Republican allies had hoped the results would be delivered before the 2020 election and would help sway voters. So far, there has been only one criminal case, a guilty plea from a former FBI lawyer to a single false statement charge.

Under federal regulations, a special counsel can be fired only by the attorney general and for specific reasons such as misconduct, dereliction of duty or conflict of interest. An attorney general must document such reasons in writing.

Barr went to the White House Tuesday for a previously scheduled meeting that lasted about three hours.

Trump didn't directly comment on the attorney general's remarks on the election. But his personal attorney Rudy Giuliani and his political campaign issued a scathing

**You May Like**    Promoted

Gronk's Favorite "Dressy" Shoes Feel Like Walking On Clouds
Promoted: Wolf & Shepherd

Hands Down! The World's Healthiest Breakfast
Promoted: exMilks    Learn More

Early Halloween Promotion - Halloween LED Mask
Promoted: JatMax    Shop Now

Subaru's Killer New Forester Is Finally Here

Symptoms of Macular Degeneration - Catching It Early Matters
Promoted: Mac Degen | Search Ads

Homeowners Are Trading in Their Doorbell Cams for This.
Promoted: Keilini

by Taboola

ADVERTISEMENT

U.S. News    World New
Trending News    Russia-Ukraine war    UN General Assembly    Hurricane Ian    Top 25 College Football Poll    Midterm elections

allegations of voter-fraud evidence have been fired. But it's not clear whether Barr

Still, Senate Democratic leader Chuck Schumer quipped: "I guess he's the next one to be fired."

Last month, Barr issued a directive to U.S. attorneys across the country allowing them to pursue any "substantial allegations" of voting irregularities before the 2020 presidential election was certified, despite no evidence at that time of widespread fraud.

That memorandum gave prosecutors the ability to go around longstanding Justice Department policy that normally would prohibit such overt actions before the election was certified. Soon after it was issued, the department's top elections crime official announced he would step aside from that position because of the memo.

The Trump campaign team led by Giuliani has been alleging a widespread conspiracy by Democrats to dump millions of illegal votes into the system with no evidence. They have filed multiple lawsuits in battleground states alleging that partisan poll watchers didn't have a clear enough view at polling sites in some locations and therefore something illegal must have happened. The claims have been repeatedly dismissed including by Republican judges who have ruled the suits lacked evidence.

But local Republicans in some battleground states have followed Trump in making unsupported claims, prompting grave concerns over potential damage to American democracy.

Trump himself continues to rail against the election in tweets and in interviews though his own administration has said the 2020 election was the most secure ever. He recently allowed his administration to begin the transition over to Biden, but he still refuses to admit he lost.

The issues they've have pointed to are typical in every election: Problems with signatures, secrecy envelopes and postal marks on mail-in ballots, as well as the potential for a small number of ballots miscast or lost.

But they've gone further. Attorney Sidney Powell has spun fictional tales of election systems flipping votes, German servers storing U.S. voting information and election software created in Venezuela "at the direction of Hugo Chavez," – the late Venezuelan president who died in 2013. Powell has since been removed from the legal team after an interview she gave where she threatened to "blow up" Georgia with a "biblical" court filing.

Barr didn't name Powell specifically but said: "There's been one assertion that would be systemic fraud and that would be the claim that machines were programmed essentially to skew the election results. And the DHS and DOJ have looked into that, and so far, we haven't seen anything to substantiate that."

In the campaign statement, Giuliani claimed there was "ample evidence of illegal voting in at least six states, which they have not examined."

**Full Coverage:** Election 2020

"We have many witnesses swearing under oath they saw crimes being committed in connection with voter fraud. As far as we know, not a single one has been interviewed by the DOJ. The Justice Department also hasn't audited any voting machines or used their subpoena powers to determine the truth," he said.

However, Barr said earlier that people were confusing the use of the federal criminal justice system with allegations that should be made in civil lawsuits. He said a remedy for many complaints would be a top-down audit by state or local officials, not the U.S. Justice Department.

"There's a growing tendency to use the criminal justice system as sort of a default fix-all," he said, but first there must be a basis to believe there is a crime to investigate.

"Most claims of fraud are very particularized to a particular set of circumstances or actors or conduct. ... And those have been run down; they are being run down," Barr said. "Some have been broad and potentially cover a few thousand votes. They have been followed up on."

———

Associated Press Writers Lisa Mascaro and Eric Tucker contributed to this report.


Top Articles
by The Associated Press

READ MORE

Oath Keepers founder Stewart Rhodes' path: From Yale to jail

# EXHIBIT E

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al.,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>    v.<br><br>SIDNEY POWELL, et al.,<br><br>*Defendants/Counter-Plaintiffs*. | Civil Action No. 1:21-cv-00040 (CJN) |
| US DOMINION, INC., et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>RUDOLPH W. GIULIANI,<br><br>    *Defendant*. | Civil Action No. 1:21-cv-00213 (CJN) |
| US DOMINION, INC., et al.,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>    v.<br><br>MY PILLOW, INC., et al.,<br><br>*Defendants/ Counter- and Third- Party Plaintiffs*,<br><br>    v.<br><br>SMARTMATIC USA CORP., et al.,<br><br>*Third-Party Defendants*. | Civil Action No. 1:21-cv-00445 (CJN) |

## SCHEDULING ORDER

Upon review of the Parties' Joint Meet and Confer Statement, the Court enters the following schedule to govern discovery in all of the above-captioned cases:

1.  Deadline to Exchange Initial Disclosures under Fed. R. Civ. P. 26(a)(1): **March 25, 2022**

2.  Deadline to Serve Document Requests under Fed. R. Civ. P. 34: **August 29, 2022**

3.  Deadline for Completion of Fact Discovery: **January 12, 2023**

4.  Deadline for Proponents to Designate Expert Witnesses and Produce Expert Reports under Fed. R. Civ. P. 26(a)(2): **February 28, 2023**

5.  Deadline for Opponents to Designate Expert Witnesses and Produce Expert Reports under Fed. R. Civ. P. 26(a)(2): **March 29, 2023**

6.  Deadline for Proponents to Produce Responsive Expert Reports: **May 4, 2023**

7.  Deadline for Expert Depositions: **June 23, 2023**

8.  Status Conference: **In-person on July 11, 2023 at 10:00am**

9.  Deadline to File Dispositive Motions: **July 29, 2023**

10. Deadline to File Oppositions to Dispositive Motions: **August 31, 2023**

11. Deadline to File Replies in Support of Dispositive Motions: **September 18, 2023**

The Court intends to discuss a potential date for the final pretrial conference and potential trial dates at the status conference scheduled for July 11, 2023 at 10:00am.

It is so **ORDERED**.[1]

---

[1] The Court acknowledges that My Pillow, Inc. and Michael J. Lindell have refused to join the Joint Meet and Confer Report entered pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 16.3(c). My Pillow and Lindell have opted instead to submit their own Meet and Confer Report, *see* My Pillow and Lindell's Meet and Confer Report in 21-cv-445, ECF No. 112, even though the Court directed the Parties to "participate in discussions about a *consolidated* discovery schedule." *See* Order Entered on November 11, 2021, ECF No. 85 (emphasis added). According to the Joint Meet and Confer Statement, My Pillow and Lindell at first stated that they would refuse to participate in consolidated discovery unless and until they had fully exhausted their appeal of the Court's denial of their Motions to Dismiss. *See* Joint Meet and Confer Report in 21-cv-40, ECF No. 63 at 5. MyPillow and Lindell later acknowledged that the Court "has jurisdiction for discovery to proceed" and that they both "intend to immediately engage in the

DATE:  March 1, 2022

_Carl J. Nichols_
CARL J. NICHOLS
United States District Judge

---

discovery process." *See* My Pillow and Lindell's Meet and Confer Report in 21-cv-445, ECF No. 112 at 3.  That acknowledgement aligns with case law on a court's authority to in most situations proceed with discovery despite a party appealing an order under the collateral order doctrine.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 42 F. Supp. 3d 556, 558 (S.D.N.Y. 2014) ("Generally, when an appeal is taken pursuant to the collateral order doctrine, district courts retain their jurisdiction to proceed with trial pending resolution from the court above.").

# EXHIBIT F

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

**REC'D**

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

SEP 0 6 2022

**KENT COUNTY CLERK**

| | |
|---|---|
| US DOMINION, INC., et al., | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:21-CV-00445 (CJN) |
| MY PILLOW, INC., et al., | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Kent County Clerk
          Administration Building, 300 Monroe Avenue NW, Grand Rapids, MI 49503-2288
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attachment.

| Place: Kent County Clerk's Office, Administration Building, 300 Monroe Avenue NW, Grand Rapids, MI 49503-2288. Production by electronic transfer or mail is preferred. | Date and Time: September 30, 2022 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/01/2022

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Andrew D. Parker |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Defendants
My Pillow, Inc., and Michael J. Lindell _____, who issues or requests this subpoena, are:
Andrew D. Parker, 123 North Third Street, Suite 888, Minneapolis, Minnesota 55401, parker@parkerdk.com, 612-355-4100

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A

**Definitions**

1. "Adjudication" refers to the process of reviewing a voter's ballot to determine what votes were intended by the voter who cast the ballot.

2. "Ballot marking device" refers to any electronic device used to complete an electronic ballot which is then printed onto paper.

3. "Ballot scanner" refers to an electronic device that provides optical scanning of ballots to produce a digital image of the ballot and/or to read the votes marked on the ballot.

4. "Client" refers to a computer that connects to a computer server.

5. "Controlling computer" refers to a computer connected to another electronic device, that is used to control the behavior of the connected electronic device.

6. "Document" refers to any writing or electronically stored information stored in any medium from which information can be obtained, including drawings, graphs, charts, photographs, sound recordings, video recordings, images, or other data or data compilations, within the meaning of Fed. R. Civ. P. 34(a)(1)(A).

7. "Drive" or "drives" refers to any medium for the storage of electronic or digital data.

8. "EMS" refers to an Election Management System or any set of electronic equipment used to facilitate the counting, tabulation, and reporting of results in a public election.

9. "Electronic election system" refers to all electronic or computerized devices and equipment used to cast ballots, count votes, tabulate votes, or report results in an election.

10. "EnCase" refers to the digital forensic data collection and investigation technology produced by Guidance Software.

11. "Forensic copy" refers to a file-level exact duplication of electronic data.

12. "Forensic image" refers to a bit-by-bit, sector-by-sector direct copy of a physical storage devices containing electronic data, including all files, folders and unallocated, free, and slack space.

13. "ImageCast Central" or "ICC" refers to the electronic system distributed by Dominion Voting with that name.

14. "ImageCast Evolution" or "ICE" refers to the electronic device distributed by Dominion Voting, with that name, that can be used as a ballot marking device and tabulator.

15. "ImageCast Precinct" or "ICP" refers to the electronic device distributed by Dominion Voting, with that name, that can optically scan and tabulate votes from paper ballots.

16. "ImageCast X" or "ICX" refers to the electronic device distributed by Dominion Voting, with that name, that can be used as a ballot marking device.

17. "November 2020 Election" refers to the general election in the United States for which Election Day was November 3, 2020.

18. "Server" refers to a computer server or computer that stores, processes, and manages data for other computers or devices on a computer network.

19. "Storage device" refers to any medium for the storage of electronic or digital data.

20. "Tabulator" refers to any electronic device used to count or tabulate votes from paper ballots.

21. "Workstation" refers to an individual computer, which may or may not be connected to a computer network, used to facilitate one or more specific tasks or processes.

22. "You" and "Your" refer to the recipient of this subpoena.

**Items to Produce**

Produce the following documents, communications, and electronic data in Your possession, custody, or control:

1. Forensic images, in EnCase format, of each of the following objects used in connection with the November 2020 Election:

    a. All drives attached to or affiliated with an EMS Server

    b. All drives attached to or affiliated with any workstation used as an EMS Client

    c. All drives attached to or affiliated with any ImageCast Central Workstations

    d. All drives attached to or affiliated with any Adjudication Workstations

    e. All drives attached to or affiliated with the controlling computer for any ballot scanner such as HiPro, Canon, etc.

    f. All drives attached to or affiliated with any device used in conjunction with the election as a communications server or virtual private network server/concentrator

    g. All SD Cards, USB Drives or other storage devices that were inserted into or removed from all tabulators, ballot marking devices or other device that was used for the tabulation of votes

    h. All ImageCast X, ImageCast Precinct, and ImageCast Evolution devices

2

2. The following electronic files:

   a. Forensic copies of all slog.txt files and .dvd files generated from tabulators and ballot marking devices

   b. Forensic copies of all data items related to the November 2020 Election subject to the 22 month voter records retention requirement under U.S. federal law

3. The following information related to electronic election system architecture:

   a. A network diagram including all devices, mac addresses and assigned IP addresses for Your complete electronic election system, including but not limited to the EMS Server, all networked devices on the EMS Server network (routers, switches, communications servers, modems, etc), and all devices attached to the resident network for the voter registration server

   b. For each ballot marking device, ballot scanner, and tabulator, the media access control (MAC) address for each communication device connected to the ballot marking device, ballot scanner, or tabulator at any time between January 1, 2019 and November 30, 2020

   c. Copies of all network logs, PCAPs, netflow data and access control logs from networking devices associated with the EMS

   d. Credentials to permit access through all whole disk or file encryption technologies utilized in any part of Your electronic election system that is produced in response to this subpoena, including but not limited to BitLocker, TrueCrypt, and VeraCrypt technologies

   e. A list of all personnel who had access to the EMS Server or any EMS server-connected computing device for the period January 1, 2019 through November 30, 2020. Provide the name of the person, the account utilized, the devices accessed and the duration of the access.

4. The following information related to the results of the November 2020 Election:

   a. Copies of all tabulator poll closing reports and tabulator reports generated by each precinct and polling location, detailing with date and time the number of in person voters, the number of same day voter registrations (if applicable), and the final totals for the precinct

   b. Copies of the certified final election results that were used to determine the official outcomes of the election contests

   c. Copies of any document, report, or spreadsheet that was produced in relation to the November 2020 Election

5. All documents related to any indication of any intrusion attempt into Your electronic election system.

6. Copies of all cellular bills and connections supporting Your ballot scanners and ballot marking devices. These records should include the International Mobile Equipment Identity (IEMI) number, Temporary Mobile Subscriber Identity (TMSI) number, originating phone number, destination phone number, date and time of call origination, and call duration.

7. Copies of all contracts and agreements with the suppliers of any of Your electronic election system equipment, devices, software, or support services.

8. Copies of all contracts and agreements related to network security, network monitoring, or cybersecurity concerning all or any part of Your electronic election system.

4

# EXHIBIT G

## The Washington Post

*Democracy Dies in Darkness*

EXCLUSIVE

# Files copied from voting systems were shared with Trump supporters, election deniers

By Jon Swaine, Aaron C. Davis, Amy Gardner and Emma Brown

August 22, 2022 at 4:20 p.m. EDT

Sensitive election system files obtained by attorneys working to overturn President Donald Trump's 2020 defeat were shared with election deniers, conspiracy theorists and right-wing commentators, according to records reviewed by The Washington Post.

A Georgia computer forensics firm, hired by the attorneys, placed the files on a server, where company records show they were downloaded dozens of times. Among the downloaders were accounts associated with a Texas meteorologist who has appeared on Sean Hannity's radio show; a podcaster who suggested political enemies should be executed; a former pro surfer who pushed disproven theories that the 2020 election was manipulated; and a self-described former "seduction and pickup coach" who claims to also have been a hacker.

Plaintiffs in a long-running federal lawsuit over the security of Georgia's voting systems obtained the new records from the company, Atlanta-based SullivanStrickler, under a subpoena to one of its executives. The records include contracts between the firm and the Trump-allied attorneys, notably Sidney Powell. The data files are described as copies of components from election systems in Coffee County, Ga., and Antrim County, Mich.

A series of data leaks and alleged breaches of local elections offices since 2020 has prompted criminal investigations and fueled concerns among some security experts that public disclosure of information collected from voting systems could be exploited by hackers and other people seeking to manipulate future elections.

Access to U.S. voting system software and other components is tightly regulated, and the government classifies those systems as "critical infrastructure." The new batch of records shows for the first time how the files copied from election systems were distributed to people in multiple states.

Marilyn Marks, executive director of the nonprofit Coalition for Good Governance, which is one of the plaintiffs in the Georgia lawsuit, said the records appeared to show the files were handled recklessly. "The implications go far beyond Coffee County or Georgia," Marks said.

In a statement to The Post, SullivanStrickler said the attorneys who hired the firm directed it "to contact county officials to obtain access to certain data" from Dominion Voting Systems machines in Georgia and Michigan.

"Likewise, the firm was directed by attorneys to distribute that data to certain individuals," the statement said. The firm said that it "had [and has] no reason to believe that, as officers of the court, these attorneys would ask or direct SullivanStrickler to do anything either improper or illegal."

Dominion Voting Systems has been the target of baseless claims from Trump, his advisers and allied news organizations that its machines were hacked and were programmed to flip votes from one candidate to another. The Colorado-based company has filed a host of defamation lawsuits over the statements.

Dominion declined to comment on ongoing investigations but in a statement said: "What is important is that nearly two years after the 2020 election, no credible evidence has ever been presented to any court or authority that voting machines did anything other than count votes accurately and reliably in all states."

The Post reported on Aug. 15 that an earlier set of records released in response to the subpoena showed SullivanStrickler was hired in late November 2020 to conduct a multistate effort to copy software and other data from county election systems. The effort was more successful than previously known, accessing equipment in Georgia, Michigan and Nevada.

That same day, the Georgia Bureau of Investigation (GBI) opened "a computer trespass investigation" regarding an elections server in Coffee County, bureau spokeswoman Nelly Miles said. Under Georgia law, knowingly using a computer or network without authority and with the intention of deleting, altering or interfering with programs or data is computer trespass, a felony.

SullivanStrickler's statement said the firm would be "fully cooperative" with investigators. "We are confident that it will quickly become apparent that we did nothing wrong and were operating in good faith at all times," it said.

The new documents were disclosed after plaintiffs asked the forensics firm who had accessed the Georgia elections data that the firm had collected, according to two people familiar with the case, who spoke on the condition of anonymity to discuss the litigation. The plaintiffs also received copies of the raw elections systems data collected by SullivanStrickler in Georgia, but those were not among records reviewed by The Post.

The new records also inadvertently detailed the sharing of data the firm collected during a separate forensic examination in Antrim County, where a judge in December 2020 had granted access to elections systems in response to a lawsuit challenging the 2020 results. The lawsuit was eventually dismissed.

In the records turned over to the Georgia plaintiffs, some pages, and portions of others, were blacked out. However, the text beneath some of the blacked-out blocks became visible when a Post reporter copied and pasted it into a separate file, showing downloads of files labeled "Antrim."

In Georgia, Gabriel Sterling, the interim chief of staff in the Secretary of State's office, told The Post in a statement that wrongdoers would be prosecuted. The secretary is a defendant in the litigation that uncovered the new records. Miles, the GBI spokeswoman, said in emails that Georgia Secretary of State Brad Raffensperger's office on Aug. 2 had asked the agency to join efforts to examine the alleged Coffee County breach.

"Any attempts to illegally access election systems in Georgia will not be tolerated — whether it is rogue election officials, conspiracy-theorist attorneys, or security consultants working for those conspiracy theorists," Sterling said.

The records show that 10 people downloaded data collected from Georgia or Michigan between December 2020 and February 2021. They also show in more detail the role of Powell, the attorney who pushed false claims about voting machines in a flurry of swing-state lawsuits for Trump, as well as the role of Jesse Binnall, an outside counsel to the Trump campaign. Powell and Binnall signed engagement agreements authorizing SullivanStrickler to carry out "computer forensic collections," the documents show.

A 16-page agreement signed by Binnall on Nov. 30, 2020, stated it covered data collection in Nevada, where Binnall had won a court order granting limited access to equipment, and in Georgia. The agreement said Binnall would pay SullivanStrickler $19,500 per day for a team of three people to work in Nevada, and listed potential fees for work in Georgia.

Powell did not respond to requests for comment. The newly released records do not show Binnall in discussions about Coffee County.

A legal adviser to the Trump campaign, who spoke on the condition of anonymity to discuss sensitive matters, said the campaign had not intended to contract the firm in Georgia. "To the extent Georgia was ever mentioned in the agreement, it was an error in wording that was missed because of substantial time pressure," the person said.

## A visit to rural Georgia

SullivanStrickler investigators ultimately copied data from elections systems in Coffee County offices on Jan. 7, 2021, the records show. A senior executive from the firm, Paul Maggio, updated Powell by email on their progress. The firm billed Powell $26,000 for a day's work by four people.

SullivanStrickler sent its statement after The Post emailed Maggio seeking comment.

Misty Hampton, then a local elections supervisor, allowed the group into the Coffee offices so they could prove the "election was not done true and correct," she previously told The Post. Hampton resigned under pressure last year because she falsified time sheets, according to county officials.

Maggio began uploading the Coffee County data to the company's file-sharing server on Jan. 9, according to the records. One record appeared to list accounts that were granted access to the server and whether they had permissions to download, upload or delete files.

During the following weeks, the records show, files named in part "Coffee County" were downloaded by accounts in the names of at least four people outside the firm: Jim Penrose, a cybersecurity consultant who has said he formerly worked for the National Security Agency; Doug Logan, whose firm CyberNinjas conducted a Republican election review in Arizona; Conan Hayes, a former pro surfer from Hawaii; and a fourth person identified as "Scott T."

Hayes and "Scott T" were listed in the company records as working for ASOG, short for Allied Security Operations Group. The Post previously reported how the Addison, Tex.-based firm rose from obscurity to produce a report on Antrim County that, although discredited, was circulated among senior administration officials and cited by Trump as proof the 2020 election was stolen.

A Twitter account used by Hayes has posted conspiracy theory material and images purportedly of Dominion voting systems in Michigan. In an affidavit first reported by the Grand Junction Daily Sentinel, an investigator for the district attorney in Mesa County, Colo., alleged that Hayes worked with local officials there to copy elections software in May 2021. Three local officials were indicted on felony charges over the alleged breach. No charges were filed against Hayes.

Penrose, Logan and Hayes did not respond to requests for comment.

Kevin Skoglund, a cybersecurity expert working for plaintiffs in the Georgia lawsuit, told The Post that copies of elections software and other data like those collected by SullivanStrickler in Coffee County could aid people trying to compromise machines that use similar systems.

"We can't know how many copies exist or who has them," Skoglund said. "Someone might distribute it willingly or just fail to keep their copy safe."

# Downloads of data from Antrim

SullivanStrickler's work in Michigan began after Republican lawyer Matthew DePerno, who had filed the election challenge lawsuit in Antrim County, won a Dec. 4, 2020, court order granting access to the county's elections systems. Antrim was under scrutiny after initially reporting inaccurate vote tallies that showed Joe Biden beating Trump in a Republican stronghold. DePerno is now the Trump-endorsed Republican nominee for Michigan attorney general.

The judge in the lawsuit, Kevin A. Elsenheimer, issued a protective order "restricting use, distribution or manipulation of the forensic images and/or other information gleaned from the forensic investigation" without further authorization from the court.

A Dec. 6, 2020, engagement agreement signed by Powell said SullivanStrickler would be paid $26,000 per day for work in Michigan by a team of four. It also said the firm would be paid the same rate for work in Arizona, but did not elaborate. That day, the firm made copies from elections equipment in Antrim's county offices.

Over the following week, two SullivanStrickler employees who worked on the Antrim examination uploaded dozens of files to a folder named "Forensic Images," the company records show. This folder was stored within another folder, whose name was the project number cited by the firm in emails about elections work. Some of these files were shared with attorneys representing Antrim and Michigan's attorney general in the lawsuit.

On Dec. 15, Elsenheimer lifted his protective order, ruling that DePerno's team could release a redacted version of ASOG's report on Antrim and distribute the findings of the forensic examination "as they see fit."

After that, the SullivanStrickler records show, Antrim files were downloaded by accounts that the records say belonged to people including John Basham, a Texas-based meteorologist who has pushed false claims about the election on social media; former Michigan state senator Patrick Colbeck, who has promoted conspiracy theories about election fraud and other topics; and "Joe Ottman," an apparent misspelling of right-wing podcaster Joe Oltmann, who has called for gallows to be built to "take care of all these traitors to our nation."

The account the records tied to Basham began downloading dozens of files, some labeled "election management server," in late December. The account that records tie to Colbeck downloaded six files from the same folder on Jan. 5, 2021, according to the records, including files labeled "election management server" and "ThumbDrives." Colbeck in a film about the election released last year said that he had asked DePerno to take on the lawsuit there.

The "Joe Ottman" account downloaded two files on Jan. 6, according to the records. The email address associated with this account was Oltmann's, according to filings in a separate court case. Oltmann wrote in a Jan. 6 email filed to that case that he was "sitting with Matt DePerno" and intended to publish "raw data from Antrim County machines."

During a Jan. 11 hearing in the Antrim case, an attorney for Michigan's attorney general raised concerns that forensic images from Antrim's systems had been published online.

DePerno noted that there was no longer any protective order shielding these files.

Elsenheimer stated that anything not included in ASOG's report was "still subject to" a protective order, a transcript shows. Elsenheimer said DePerno could share Antrim's forensic images with his expert witnesses — a group that ultimately included Logan, Hayes and Penrose — but that "mass distribution" was not permitted, according to the transcript.

The SullivanStrickler records show that downloads continued. On Jan. 16, an account in the name of Michal Pospieszalski, author of the book "How To Talk To Hot Women," downloaded a file from the Antrim folder. On Jan. 19, the same account downloaded another folder, which contained multiple files labeled "AntrimEMS" and others relating to Coffee County. A profile for Pospieszalski on a pickup artists website describes him as a "former hacker," and his online résumé states that he worked between 2005 and 2006 as chief technology officer of the Election Science Institute, a now-defunct voter integrity group.

Steven Hertzberg, the group's director at the time, told The Post he did not recognize Pospieszalski's name but that he "did employ a white hat hacker around that time" who matched Pospieszalski's physical description. Pospieszalski is also president of Matter Voting, a company that is developing voting systems based on blockchain technology also used in cryptocurrency, according to the firm's website.

Basham also downloaded multiple "election management server" files from the same folder between Jan. 27 and Jan. 29, and then again on Feb. 11 and Feb. 12, according to the records.

In emails to The Post, DePerno said he had complied with the judge's rulings.

"No order prohibited access to the forensic images at any time after December 15, 2020," DePerno wrote in an email. "If the files were shared with people who were not experts it was not a breech of any order."

When forensic images from Antrim's systems were later widely shared during a "symposium" held in South Dakota in August 2021 by MyPillow CEO Mike Lindell, DePerno emailed Lindell a cease and desist demand, court records show. "Those images are under protective order," DePerno told Lindell.

DePerno did not respond to a question about when the protective order he cited to Lindell came into effect.

Asked if he had requested access for Oltmann, Basham, Pospieszalski and Colbeck, DePerno said he did not recall who did so and does not know Pospieszalski. About Oltmann, DePerno said in an email: "If SullivanStrickler gave him access then he had every right to have the images."

Basham said in an email that based on his reading of The Post, "I Do Not Expect Anything I Say To Be Represented Honestly." Pospieszalski said in a message to The Post that he "can't comment on what I did or did not find as part of my retained work for the Antrim county legal team as I'm under NDA," a nondisclosure agreement. He characterized his eight years as a seduction and pickup coach as a "giant detour" from a career mostly focused on computer security.

Colbeck and Oltmann did not respond to requests for comment.

Data security expert Harri Hursti said in a court filing after the Lindell symposium that widespread release of server images "lowers the barrier to planning an attack against any election management system running this Dominion software."

*Alice Crites contributed to this report*

# EXHIBIT H



**Warner Norcross + Judd LLP**

September 9, 2022

Andrew D. Parker
Parker Daniels Kibort
888 Colwell Building
123 Third Street North
Minneapolis, Minnesota 55401

      Re:    **US Dominion, Inc., et al. v. My Pillow, Inc., et al.**
               **District of Columbia District Case No. 1:21-cv-00445**

Dear Mr. Parker:

      I represent Kent County Clerk Lisa Posthumus Lyons and Kent County in Michigan. I have reviewed your clients' subpoena from the above-referenced action. The subpoena seeks production of voluminous materials which would impose a considerable burden on the elections staff and expense upon the County. To allow us to assess the reasonableness of your subpoena, please identify the efforts your clients have undertaken to minimize the burden of this production on Kent County and its Clerk, and please explain how this information is relevant to the defamation action pending against your clients.

      Your subpoena requires a response on September 30, 2022, so I respectfully request a response to these inquiries by Tuesday, September 13.

      Best regards,

      Matthew T. Nelson

MTN/alr

27300733-1

**Matthew T. Nelson | Partner**
D 616.752.2539
E mnelson@wnj.com
150 Ottawa Avenue, N.W., Suite 1500
Grand Rapids, MI 49503

# EXHIBIT I



**Warner Norcross + Judd** LLP

September 16, 2022

Andrew D. Parker
Parker Daniels Kibort
888 Colwell Building
123 Third Street North
Minneapolis, Minnesota 55401

  Re: **US Dominion, Inc., et al. v. My Pillow, Inc., et al.**
     **District of Columbia District Case No. 1:21-cv-00445**

Dear Mr. Parker:

  As I previously indicated, we represent the Kent County Clerk with regard to your clients' subpoena in the above-referenced action. We have not received a response to my earlier correspondence to you. Your failure to respond confirms our conclusion that the subpoena is unduly burdensome because your clients are requesting information that is largely or entirely irrelevant, and not reasonably limited. We respectfully request that you withdraw your subpoena by the close of business on Monday, September 19, 2022.

  Please be aware that if the subpoena is not withdrawn, we will move to quash. If your clients force us to file a motion to quash because of their failure to comply with Federal Rule of Civil Procedure 45, we will seek to recover our costs and attorney fees.

     Best regards,

     Matthew T. Nelson

MTN/alr

27300733-2

**Matthew T. Nelson | Partner**
D 616.752.2539
E mnelson@wnj.com
150 Ottawa Avenue, N.W., Suite 1500
Grand Rapids, MI 49503

# EXHIBIT J



September 21, 2022

**<u>VIA ELECTRONIC MAIL</u>**
Matthew T. Nelson
150 Ottawa Avenue, NW, Suite 1500
Grand Rapids, MI 49503

      RE:    *US Dominion, Inc., et al. v. My Pillow, Inc., et al.*
             *District of Columbia District Case No. 1:21-cv-00445*

Dear Mr. Nelson:

We have received the objections of Kent County to our subpoena in the case *US Dominion et al. v. My Pillow et al.*, no. 21-cv-00445 in the U.S. District Court for the District of Columbia.

Please note that similar subpoenas were served on several counties, with return dates of September 30, 2022. We intend to review after September 30th the collective responses to all these subpoenas before determining how we want to proceed with respect to each one. Accordingly, we will be in further contact in the future regarding Kent County's objections. We do not intend to bring any motion to compel compliance with the subpoena until we have undertaken further discussion with you regarding the subpoena topics and the objections.

Regards,

              Sincerely,

              */s/Joseph A. Pull*

              Joseph A. Pull

JAP

ANDREW D. PARKER

CHRISTOPHER M. DANIELS

JESSE H. KIBORT

ELIZABETH S. WRIGHT

ALEC J. BECK

LORI A. JOHNSON

MATTHEW R. ESLICK

JOSEPH A. PULL

RYAN P. MALONE

JORDON C. GREENLEE

ABRAHAM S. KAPLAN

GREGORY N. ARENSON

REGINALD W. SNELL


FREDERICK C. BROWN
  OF COUNSEL


888 Colwell Building
123 Third Street North
Minneapolis, MN 55401

parkerdk.com

Tel: 612.355.4100
Fax: 612.355.4101

# EXHIBIT K

# The Detroit News

POLITICS

# Why these Michigan election conspiracy theories don't add up

**Craig Mauger** and **Beth LeBlanc** The Detroit News
Published 10:42 a.m. ET Nov. 6, 2020 | **Updated 8:32 a.m. ET Nov. 7, 2020**

Questionable claims about Michigan's election have flooded social media, but there is little evidence at this point to back any of them up.

Here's a look at some of the claims and the facts surrounding them:

## Claim 1: Widespread fraud swung the election

Any claim that there would be enough fraud in Tuesday's election to swing the presidential race in Michigan is dubious because of the sheer volume of votes it would take.

With 100% of precincts reporting, Democrat Joe Biden led President Donald Trump 50.6%-47.9%, by nearly 3 percentage points or 146,000 votes. It is nearly 14 times the number of votes the Republican president won Michigan by four years ago. The margin is also more than that by which Trump won Michigan, Pennsylvania and Wisconsin combined in 2016.

The president's claims have focused heavily on Detroit, Michigan's largest city. However, 250,138 votes were cast in the city in Tuesday's election. The 146,000-vote statewide margin represents nearly 60% of the total votes cast in Detroit.

Likewise, Detroit's turnout increased by a mere 2,000 votes from 2016. On the Thursday before Election Day, Detroit Clerk Janice Winfrey predicted turnout would only increase to 50% from 48.6% in 2016. "But that's not enough, Detroit," the Democratic clerk said at a news conference last week. The city's turnout finished at 49.6%.

Trump performed better in Detroit this year than he did four years ago. His percentage of votes went from 3% to 5%, and the president received almost 5,000 more votes than four years ago, according to the city's unofficial results.

Michigan also has election procedures in place to prevent widespread fraud, including bipartisan boards of canvassers that examine and confirm results in each county.

The canvassing process — in which each record produced during the ballot counting process is scrutinized and compared in a public setting — is one of the most "underappreciated" security measures Michigan has in place, said Kent County Clerk Lisa Posthumus Lyons, a Republican.

"It's a really important part of the process that I believe helps to provide confidence to the public that our system is safe, secure and transparent," said Posthumus Lyons, who ran on the Republican gubernatorial ticket with then-Attorney General Bill Schuette in the 2018 race.

In addition, the state uses paper ballots that can be used as a backup if there is ever a question of the electronic tally.

Lastly, Michigan has a decentralized elections system that empowers more than 1,500 city or township clerks to run their own elections, a process that Posthumus Lyons argues "lends itself to better security."

Trump won Kent County by 3 percentage points in 2016. But Biden won it by 6 points in Tuesday's election, or about 21,000 votes, according to the unofficial results.

"We've just got a lot of checks and balances and transparency here in Michigan, and in Kent County we take that very seriously," Posthumus Lyons said. "I am 100% confident in the results in Kent County, and I'm confident that our canvass, once its all concluded, will validate that."

## Claim 2: Many dead people voted

Michigan has systems in place to prevent someone from casting a deceased person's ballot and a record of identifying votes from those who have died.

One of the steps in tabulating absentee votes is checking whether the signature on the absentee ballot application matches the signature in the qualified voter file. Later, the signature is matched again when an individual submits his or her actual ballot.

In the November 2016 presidential election, Michigan caught and rejected 1,782 absentee ballots because the voter had died in an election. In the August 2020 primary, 846 ballots were not accepted because the voter was dead, according to the Michigan Secretary of State's

office. It took 10 days for that figure to be reported. The Nov. 3 rejected total wasn't known as of Friday.

A statewide audit released in 2017 — when Michigan had a Republican secretary of state, Ruth Johnson — found that 31 residents appeared to vote twice in the November 2016 presidential election, once by absentee ballot and once in person.

In total, 4.8 million votes were cast in that election.

## Claim 3: Postmarks were changed in Traverse City

The conservative group Project Veritas claimed that a U.S. Postal Service "insider" in Traverse City told them that postmarks were "fraudulently" changed to show absentee ballots were received by Election Day when they weren't.

The problem with this claim is that the postmark — the date a piece of mail is received by the Postal Service — doesn't matter in Michigan regarding whether a ballot would qualify.

"Fact check: Michigan's election clerks count valid ballots that they received at their offices or in their official ballot drop boxes by 8 p.m. on Election Day. Ballots received thereafter, regardless of the postmark, are not counted," the Michigan Department of State tweeted earlier this week.

Grand Traverse County Clerk Bonnie Sheele, a Republican, said she believes the claims from Project Veritas are being investigated though she didn't know by which law enforcement agency.

Even if the postmarks were changed on the ballots, it would have no bearing on whether they were counted, she said, "because they weren't in the clerk's hands by 8 p.m." on Election Day.

"I have faith in our election process up here," Sheele said. "The clerks are very knowledgeable. We know what we're doing.

"Everything that was supposed to be received by 8 o'clock was received and secured."

Trump won Grand Traverse County 50%-47% or 30,502 votes to Biden's 28,682 votes.

## Claim 4: Changing vote totals point to fraud

On Thursday, the president falsely claimed that he had "won" Michigan on Election Night before tallies changed and Biden took the lead.

Because of a record turnout and the pandemic's prompting more people to vote by absentee ballot, Secretary of State Jocelyn Benson had predicted it could take until Thursday or Friday for election workers to finish counting all of the votes. In a normal election, it might take until some time on Wednesday to complete the results.

Elections experts had said for weeks that Trump would likely perform better in early totals than he would in later totals. That's because more Democrats or Biden supporters chose to vote by absentee ballots, which generally take longer to count because of the extra processing and verification steps involved. More Republicans chose to vote on Election Day, which meant their votes would be processed quicker.

In a September poll of Michigan voters by The Detroit News and WDIV-TV, those planning to vote absentee favored Biden by 43 percentage points, 68%-25%. Those planning to vote on Election Day favored Trump 55%-31%.

The president has repeatedly questioned mail-in voting, which likely caused more of his supporters to vote in person. In September, pollster Richard Czuba, founder of the Lansing-based Glengariff Group, predicted the tallies would swing as Election Night wore on.

"In this era when everyone is sowing division over the trustworthiness of ballots, I think it's important for Michigan voters to have a very clear sense ...," he said at the time. "Let's not rush to decisions on election night knowing that all of these votes have to get counted."

## Claim 5: The mysterious wagon

A conservative website claimed it obtained a video from "a poll watcher in Detroit" that showed "wagons, suitcases and coolers moving in and out of a vote-counting center during the early morning" after the election.

But Detroit area WXYZ-TV investigative reporter Ross Jones said the man featured in the video who was wheeling equipment into the TCF Center was actually his photographer.

"He was bringing down equipment for our 12-hour shift," tweeted Jones, who later called the conservative website's report "absolute garbage."

As to claims of other batches of ballots being delivered to TCF Center, it's likely that ballots were delivered there because it's where absentee ballots from across Detroit were counted.

## Claim 6: A 130,000-vote surge for Biden in GOP county

Just before 5 a.m. Wednesday, Biden's lead in Republican-leaning Shiawassee County jumped by roughly 130,000 vote. The increase was registered on an independent vote count map, and screenshots of the map were shared widely by Matt Mackowiak, chairman for the Travis County Republican Party in Texas.

Mackowiak later deleted the viral tweet with an apology, noting it was shared honestly but that he later learned the error was the result of a typo.

The error occurred when Shiawassee County was transmitting its final, unofficial results to the Michigan Bureau of Elections just before 5 a.m. Wednesday, said Abigail Bowen, elections clerk for Shiawassee County.

While entering results for Biden, an extra zero was added to the Democrat's vote total, pushing it to 153,710 votes for Biden instead of 15,371. The county was notified of the error and corrected it within 25 minutes, but not before it was captured in real-time by an independent analyst and shared by Mackowiak and others.

Trump ended up winning Shiawassee County 59%-39% or 23,154 votes to Biden's 15,371 votes. Shiawassee County Clerk Caroline Wilson is a Republican.

## Claim 7: The problems in Antrim County

Northern Michigan's Antrim County pulled its unofficial results from its website Wednesday morning after officials found a discrepancy in the numbers showed Biden leading in the GOP-leaning county.

In 2016, the county of about 23,000 residents voted 62%-33% for Republican Donald Trump, who got 8,469 votes. But on Wednesday, Republicans on social media were sharing images of unofficial results out of the county that showed Biden winning the county with 62% support.

The revised numbers were posted and showed Trump beat Biden by about 2,500 votes or 56%-42%.

The issue was a result of an error by the Antrim County Clerk, who failed to update software use to collect data from voting machines, the Michigan Department of State said Friday.

The error became a cog in a much larger concern over the computer system used there.

Republican National Committee Chairwoman Ronna McDaniel said 47 other counties use the same software as Antrim County, prompting concerns that problems are widespread.

Posthumus Lyons, a Republican, expressed confidence in the system that is also used in Kent County. She argued the Michigan Republican Party used the same system for its nomination process.

The party was unable to say what system it has used historically. But spokesman Tony Zammit said the system at issue in Antrim County has not been used under the tenure of Michigan Republican Party Chairwoman Laura Cox, who took office in early 2019.

"It's starting to appear what happened in Antrim County was human error," said Posthumus Lyons. "If that would have not been caught by the public or what have you, that error would have been caught in the county canvass."

*cmauger@detroitnews.com*

# EXHIBIT L

**ELECTIONS**

# Kent County Clerk begins post-election audit

The audit is a routine process, that happens after every general election. The process is gaining more attention this year, due to claims of voter fraud.



Author: **Alana Holland (WZZM13)**
Published: **4:44 PM EST December 9, 2020**
Updated: **4:44 PM EST December 9, 2020**

 

GRAND RAPIDS, Mich. — Wednesday, The Kent County Clerk, Lisa Posthumus Lyons, began post-election audits of the 2020 general election. The audit is a routine process that happens after every general election. The state chooses 10-12 precincts to audit in Kent County.

Workers are reviewing software on equipment, notices were sent out on time, poll workers were hired properly, and more in the audit. For this audit, Kent County will also recount the votes by hand for President and United State Senator to confirm accurate results.

Ad removed. <u>Details</u>

"We've never seen anything in an audit that would raise red flags as to the accuracy of the election," said Posthumus Lyons, "There's procedural things we can improve on at the local level, and that's what the audit will tell us."

The audit typically goes unnoticed, but it is getting more attention this year because of claims of voter fraud in the presidential election. The audit is open for the public to observe.

**RELATED:** Judge rejects immediate audit of Detroit-area election work

"There's been a lot of attention as to whether or not this election was fair and secure," said Posthumus Lyons, "I'm really looking forward this audit being concluded to really show Kent County voters the election in Kent County was secure, transparent, fair, and accurate."



*Credit: 13 OYS*
Workers review ballots during the post-election audit.

The audit began Wednesday, December 9, and will continue through the month of December. Information collected during the audit is also public information, and the results are used as an educational tool for local clerks.

Precincts chosen for this year's audit include Byron Township Precinct 1, East Grand Rapids City Precinct 5, Grandville City Precinct 5, Wyoming City Precinct 26, Plainfield Township Precinct 4, Cannon Township Precinct 6, Cascade Township Precinct 6, Grand Rapids City Precinct 22,

Caledonia Township Precinct 6, Oakfield Township Precinct 3, and Grand Rapids Township Precinct 1.

The audit takes place at the Kent County Administration Building, 300 Monroe Avenue NW, starting at 9 am.



**Related Articles**

Michigan lawmaker disciplined for threatening Trump backers

President-elect? GOP may wait for January to say Biden won

Supreme Court rejects GOP bid to halt Joe Biden's Pennsylvania win

►Make it easy to keep up to date with more stories like this. Download the 13 ON YOUR SIDE app now.

*Have a news tip? Email* news@13onyourside.com, *visit our* Facebook page *or* Twitter. *Subscribe to our* YouTube channel.

**The Best Way to Withdraw From Retirement Accounts**
Have you considered how you'll withdraw your retirement income? These simple mistakes could cost you thousands of dollars.
**SmartAsset** | Sponsored

**Hands Down The Top Credit Card Of 2022**
Here's how you can get an easy $200 when you spend $500.
**CompareCredit.com** | Sponsored
Learn More

**How Much Money Do You Really Get from a Reverse Mortgage?**
**NewRetirement** | Sponsored

# EXHIBIT M

# The Washington Post

*Democracy Dies in Darkness*

# Trump backers flood election offices with requests as 2022 vote nears

The requests for records related to the 2020 election have complicated preparations for November, which some officials say may be the point

By Amy Gardner and Patrick Marley

September 11, 2022 at 5:54 p.m. EDT

Supporters of former president Donald Trump have swamped local election offices across the nation in recent weeks with a coordinated campaign of requests for 2020 voting records, in some cases paralyzing preparations for the fall election season.

In nearly two dozen states and scores of counties, election officials are fielding what many describe as an unprecedented wave of public records requests in the final weeks of summer, one they say may be intended to hinder their work and weaken an already strained system. The avalanche of sometimes identically worded requests has forced some to dedicate days to the process of responding even as they scurry to finalize polling locations, mail out absentee ballots and prepare for early voting in October, officials said.

In Wisconsin, one recent request asks for 34 different types of documents. In North Carolina, hundreds of requests came in at state and local offices on one day alone. In Kentucky, officials don't recognize the technical-sounding documents they're being asked to produce — and when they seek clarification, the requesters say they don't know, either.

The use of mass records requests by the former president's supporters effectively weaponizes laws aimed at promoting principles of a democratic system — that the government should be transparent and accountable. Public records requests are a key feature of that system, used by regular citizens, journalists and others. In interviews, officials emphasized that they are trying to follow the law and fulfill the requests, but they also believe the system is being abused.

"When you are asking for every single document under the sun, it becomes difficult for us to do our job," said Claire Woodall-Vogg, the executive director of the Milwaukee Election Commission.

Many administrators said they suspect that may be the point.

They believe that those organizing the effort are not out for information but rather are trying to cause chaos as their fall crunchtime approaches, making it more difficult to run smooth elections and giving critics new openings to attack the integrity of election administration in the United States. They point to the identical nature of the requests as well as the number of duplicates individual counties have received — each one of which they must respond to, by law.

"It's the public's right to transparency, and I understand that," said Chuck Broerman, the Republican clerk of El Paso County, Colo., who has hired an additional employee for the 10-person elections division to handle public records requests. "But at the same time, it's been reported to me that some of this has been done perhaps deliberately to break the system. And you have to ask yourself, why do they want to do that?"

The surge of inquiries reflects the latest example of the extraordinary pressure that election officials have faced since the 2020 election. Since then, state and local election administrators have dealt with the fallout from a concerted campaign by Trump and his backers to undermine confidence in U.S. elections, including a barrage of threats and personal attacks. Hundreds of officials have left their jobs as a result, administrators say.

Many of those submitting the requests say they are following the call of several leading election deniers allied with Trump, including MyPillow founder Mike Lindell. Some claim that there is more to be known about voting machine use in the 2020 election, and the data they are requesting will provide one piece of the puzzle.

"We believe those who have nothing to hide, hide nothing," said Carol Snow, one such activist in Burke County, N.C., in text exchanges with The Washington Post. "Their lack of transparency causes distrust of the electronic voting systems we are required to use to cast our ballots."

Trump contested the election in numerous battlegrounds nationwide, with state and federal judges rejecting dozens of lawsuits claiming the result was not valid. Post-election audits failed to identify widespread fraud. Since then, dozens of election-denying Republicans have won their party's nominations for elected office with authority over election administration.

The latest flood of requests began immediately after Lindell, a prominent Trump ally, exhorted his followers at a mid-August gathering in Springfield, Mo., to obtain copies of what's known as "cast vote records" from every election office in the country. Lindell live-streamed his "Moment of Truth" summit on his own social media platforms and got a boost of viewership from former Trump adviser Stephen K. Bannon, who broadcast his podcast from the event on both days.

A cast vote record shows how an individual voted across the ballot. Ballots themselves are cast vote records, but some voting machines can also generate the data in report form — enormous spreadsheets that academics have long used to track split-ticket voting and other voting patterns.

Lindell, who has spent the past two years spreading unfounded claims that the 2020 presidential election was stolen, said in an interview he learned about cast vote records this summer and soon after began urging people to request them and send him copies, so that he could make the case that voting machines should be abolished.

Federal law requires governments to keep election records for 22 months, and Lindell said he was trying to obtain as many of the cast vote records as he could before that period expired for the 2020 cycle over the Labor Day weekend. He said copies of the records have "poured in by the thousands" since he put out his call to action.

"These machine companies have played out the clock, so to speak," Lindell said. "But people can request them and then obviously we can preserve them."

Lindell disputed the claim that the blast of requests was intended to disrupt election offices — and questioned whether administrators were trying to keep information from the public.

"This is to save our country," Lindell said. "They don't want to do work? That's what they're paid to do."

Election officials and their advocates said they are dispirited that Lindell continues to encourage his followers to distrust the voting process. Many counties have already published electronic images of their ballots, giving skeptics all they need to conduct their own hand recount of the 2020 election. The fact that offices are nonetheless being inundated with requests, some officials said, raised questions about the true motives of those who are instigating them.

"The only way to look at it is as a denial-of-service attack on local government," said Matt Crane, who leads the Colorado County Clerks Association, using the term for an intentional bombardment of a computer network for the purpose of shutting it down. "The irony is, if Lindell wanted the cast vote records, he could have just put in a request to get them. They don't do that. They put out this call to action for people to do it, and they know it's going to inundate these offices, especially medium and small offices who are understaffed and overwhelmed already. They know exactly what they're doing."

Many of the requests include demands that counties retain the records because the requester is contemplating litigation. In one such email sent Friday to the elections director in Forsyth County, N.C., a woman who identified herself as Mona Faggione wrote: "I AM CONSIDERING SUING YOU FOR YOUR AND/OR YOUR ORGANIZATION'S INVOLVEMENT IN THE FRAUDULENT ELECTIONS THAT WILL SOON BE PROVEN TO HAVE TAKEN PLACE SINCE 2017."

That same phrase, written in capital letters, appears in several other requests sent to other North Carolina counties and provided to The Post by the state board of elections. The requests, including the names and email addresses of the senders, are public records in North Carolina and some other states. Faggione did not respond to a request for comment.

"We've gotten hundreds of requests today alone across the state," Patrick Gannon, a spokesman for the North Carolina State Board of Elections, said in an interview on Friday. "It's overwhelming."

Gannon said local election officials are already deep into their election preparations: hiring poll workers, securing polling locations, mailing absentee and military ballots and finalizing plans for early voting, which begins Oct. 20.

Trump defeated Biden in North Carolina by less than two points — his narrowest victory in any state.

Around the country, requests for election records began to surge when Trump contested the 2020 result. The Pennsylvania secretary of state's office has received nearly four times as many requests for election records this year compared to the same point in 2018, according to that office. Michigan's Bureau of Elections has spent 600 hours processing records requests this year, which it estimates is triple the time it has spent on them in the past. The Wisconsin Elections Commission has received an average of 17 records requests a month this year — four times its monthly average in 2020.

Milwaukee's Woodall-Vogg said she has been swamped with requests over the last two years, including one that came in asking for 34 types of documents, such as poll books, voted ballots, spoiled ballots, remade ballots, absentee voter forms and voter registration applications.

In Canton, outside Detroit, township clerk Michael Siegrist (D) has contended with a string of records requests from former state senator Patrick Colbeck (R), who spoke at Lindell's summit and has written a book contending the 2020 election was stolen. Siegrist rejected one request from Colbeck for computer log files that Siegrist said would have put future elections at risk.

"Predatory FOIA requests like this that really are designed to kind of bully, intimidate or potentially gain access to information that legally you're not entitled to," he said, using shorthand for the state's Freedom of Information Act. "This really does take away my staff from doing their legitimate job."

Colbeck said by email that he did not trust that Siegrist had protected the township's systems from malware and accused Siegrist of "gross negligence."

The deluge of requests has not been limited to battleground states, extending to reliably Republican places such as Kentucky. Secretary of State Michael Adams (R) said that in some cases, the requests use seemingly technical terms that the clerks can't decipher. When the clerks ask for clarification, he said, those making the requests can't always explain what they're looking for.

"There's some decent people, too, that just want to have information and I respect that, so we certainly accommodate those people," he said. "But I think some of these really intend to disrupt the process. And no matter what you do, they will move the goal posts."

"It just proves that the statement these people make that all they want is to ensure a fair election, all they want is to ensure public confidence in the integrity, that's a lie," Adams said of some of those making requests to county clerks. "Their whole goal is to destabilize our system."

Some of the requests have come with an attachment called "CVRs for Dummies" — an instruction sheet modeled after the popular how-to series that explains to activists what a cast vote record is and how to request it. Election administrators who received the attachment speculated that the requesters assumed it would be helpful for officials, too.

"Cast Vote Records (CVRs) have proven to be one of the most useful, readily available forms of election records," the instructions say. "Analysis of CVRs along with comparing CVRs from different states and counties has helped to identify election fraud all over the country. We ask that everyone submit a public records request to their home county requesting the CVRs for the 2020 election, and any subsequent election."

Election officials say the premise behind the requests is flawed, and cast vote records don't provide any evidence of fraud.

The attachment appears to have been circulated by two election deniers, Draza Smith and Jeff O'Donnell, who have given speeches around the country with other prominent leaders of the movement, including Lindell, claiming without evidence that millions of votes for Trump were switched to Biden in 2020. O'Donnell, who calls himself the Lone Raccoon online, took credit during Lindell's summit for helping get people to file records requests.

"I have one of the best groups of followers in the world, Raccoon Army," O'Donnell said from the stage. "I set them out to start making public records requests everywhere for this information and, lo and behold, over time and working together they managed to get hundreds and hundreds of these cast vote records and we're still getting them today."

O'Donnell and Smith run a website featuring a tally of the cast vote records they have collected, and social media posts show that they began encouraging others to gather them as early as May. According to the site, they have collected the records from 23 states since mid-August, including 54 from Georgia, 36 from Ohio and 28 from Texas.

The how-to guide instructs activists not to request a CVR if their county is already on the list, but hundreds of activists appear not to be following that advice. Neither Smith nor O'Donnell responded to emails seeking comment, but Smith posted on the social media site Telegram a critique of election officials who are complaining about the crush of records requests.

"This is not ONLY about 2020, but about the problematic system we have in place that needs to be rectified," Smith wrote. "We will continue gathering information and doing research on all of the elections about which we have data: past, future and present."

The slew of requests is particularly complicated in Texas, where the office of the Secretary of State has instructed county administrators that ballots and cast vote records are not public until after the 22-month period expires. As a result, counties are preparing to provide the 2020 records, but they assumed they could not do so until this week.

"There's a lot of concern that we're going to destroy this stuff. We're not," said Chris Davis, the election administrator in Williamson County, Texas, outside of Austin, who said he has received three dozen requests since Aug. 18.

An opinion issued by Attorney General Ken Paxton (R) just days after Lindell's conference is adding to the confusion. The opinion contradicts the secretary of state's guidance by declaring that all ballots are public records immediately after a county tallies the unofficial result — typically, the night of the election. Election administrators say the ruling has unleashed a flurry of consultations with state election officials and county attorneys about whether they will be required to make ballots available for inspection the day after the November vote.

"There is language in the election code that these are sealed for 22 months and you can't get into that box without a court order from a district judge," said Trudy Hancock, the elections chief in Brazos County and the head of the Texas Association of Elections Administrators.

"Paxton's opinion definitely goes against that," she said. "My concern is the integrity of those ballots if we have a recount if we have an election contest or anything of that nature. We have to make sure those ballots are exactly what they were when they voted. Someone could alter that ballot."

Paxton's office did not respond to repeated emails seeking comment. Lindell called Paxton's opinion a "blessing."

One complication of the slew of requests is how widely records laws vary from state to state. In North Carolina, the State Board of Elections has offered guidance to counties that neither ballots nor cast vote records are public. However, some of those making the requests have disputed that guidance and filed a public-records complaint.

Sara LaVere, the elections director in Brunswick County, N.C., said the requests are coming in "hot and heavy" — 10 to 15 since mid-August.

LaVere emphasized that none of the requesters have been hostile, but she said some of their requests have been challenging. One person asked for the entire recount of a contested state Supreme Court race from 2020 — a very long paper record resembling an adding machine tape that took days for one employee to copy.

Another request for absentee ballot envelopes led LaVere to send one of her employees to the office's warehouse to dig out the relevant boxes. That person also manages the county's polling places — a busy job with the election fast approaching.

"Today, he had to go to a polling place," LaVere said. "But yesterday he spent the whole day in the warehouse."

**CORRECTION**

An earlier version of this article incorrectly stated the last name of the Colorado County Clerks Association's executive director. He is Matt Crane, not Matt Crain. The article has been corrected.

# EXHIBIT N







# Save Your State

 (/lindell-report)  By The Lindell Report (/lindell-report), 06 September, 2022





 (https://franksocial.com/share?link=https%3A%2F%2Ffrankspeech.com%2Farticle%2Fsave- state&text=Save%20Your%20State%20% your-state)     (https://gettr.com/

It is your right to know what your government is doing on your behalf. Freedom of Information laws help ensure government transparency. For more information on your State's Freedom of Information Laws go to nfoic.org (https://nfoic.org).

When you submit your Freedom of Information Act (FOIA) request please request the following:

1. I request all communications between the [state] Secretary of State's Office and any person acting in the capacity of an election official, clerk, or County Commissioner in any county in the state between the dates of May 1, 2022 and the present that discuss the terms "Cast Vote Record", "CVR", or "Mike Lindell"

2. I request all communications between the [state] Elections Office and any person acting in the capacity of an election official, clerk, or County Commissioner in any county in the state between the dates of May 1, 2022 and the present that discuss the terms "Cast Vote Record", "CVR", or "Mike Lindell"

3. I request all communications between the [state] Secretary of State's Office and any representative of the following companies: Dominion Voting Systems Corp, Election Systems & Software, Inc, Microvote General Group, Unisyn Voting Solutions, Smartmatic or Hart InterCivic, Inc. that discuss the terms "Cast Vote Record", "CVR", or "Mike Lindell"

4. Definition of "communications": All letters, emails, texts, faxes, and voice call recordings between the parties specified in 1-3.

Once you have received a response to your FOIA request please email this information to foia@frankspeech.com (mailto:foia@frankspeech.com)

---

TOPIC TAGS: #FOIA (/TOPICS/FOIA)

---

## 52 Comments

Login ∨

Join the discussion…

LOG IN WITH

Frank
The Voice of Free Speech

OR SIGN UP WITH DISQUS (?)

Name

Email

Password

Please access our Privacy Policy to learn what personal data Disqus collects and your choices about how it is used. All users of our service are also subject to our Terms of Service.

→

Sort by Best ∨    ♡ 5    ⬆