## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| US DOMINION, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:21-cv-00445-CJN |
| ) | Judge Carl J. Nichols |
| v. ) | |
| ) | |
| MY PILLOW, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**Defendants' Memorandum Concerning Scope of Subpoenas to Counties**

**PARKER DANIELS KIBORT LLC**
Andrew D. Parker (D.C. Bar No. 63279)
Joseph A. Pull (D.C. Bar No. 982468)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
parker@parkerdk.com
pull@parkerdk.com

*Counsel for Defendant My Pillow, Inc.*

Pursuant to the Court's minute order of January 10, 2023, Defendants My Pillow, Inc. and Michael Lindell submit this supplemental memorandum concerning "narrow[ing] the set of information requested of the counties." Defendants have proposed to Dominion a concrete narrowing of the subpoenas at issue. Dominion has not made a concrete proposal of a narrowed scope. Instead, Dominion has turned to making demands about the *process* of the counties' subpoena responses, demands which are unorthodox, unnecessary, and impractical.

**Relevant background.** Following the status conference held on January 10, 2023, the Court ordered the parties to "make a good faith effort to narrow the set of information requested of the counties and follow with the Court no later than January 27, 2023, on their agreement or respective proposals." The parties engaged in videoconference meetings on January 19, 2023, and January 24, 2023, and January 26, 2023, concerning the subpoenas issued to the counties, but did not reach agreement. Based on the January 26, 2023, meeting, Defendants understand that Dominion intends to take no position concerning Categories 3-8 in the subpoenas and intends to provide the Court with a proposal regarding the process of county responses to the subpoenas. Defendants, except in very limited respect, disagree with the process described by Dominion's counsel, as explained further below.

Prior to the January 26, 2023, meeting, Defendants' counsel emailed counsel for Dominion a written proposal to narrow the subpoenas. Dominion has not provided Defendants with any written proposal.

**I.      Defendants' Narrowing Proposal.**

Defendants propose narrowing the scope of the subpoenas to the counties as follows. With minor corrections, this is the proposal that Defendants provided to counsel for Dominion on January 26, 2023:

1

1. Forensic images of each of the following objects used in connection with the November 2020 Election:
    a. All drives attached to or affiliated with an EMS Server
    b. All drives attached to or affiliated with any workstation used as an EMS Client
    c. All drives attached to or affiliated with any ImageCast Central Workstations
    d. All drives attached to or affiliated with any Adjudication Workstations
    e. All drives attached to or affiliated with the controlling computer for any ballot scanner such as HiPro, Canon, etc.

2. Forensic copies of all slog.txt files and .dvd files generated from tabulators.

3. The following information related to electronic election system architecture:
    a. A network diagram showing the devices, with mac addresses and assigned IP addresses, for each device responsive to Category 1 above (EMS Server, EMS client workstations, ImageCast Central Workstations, Adjudication Workstations, and ballot scanner controlling computer), plus any router and switches connected to one of these devices.
    c. Forensic copies of the logs from any router connected to the network with the EMS server.
    d. Credentials to permit access through all whole disk or file encryption technologies utilized in any part of Your electronic election system that is produced in response to this subpoena, including but not limited to BitLocker, TrueCrypt, and VeraCrypt technologies

4. The following information related to the results of the November 2020 Election:
    a. Copies of all tabulator poll closing reports and tabulator reports generated by each precinct and polling location.

    b. Copies of the certified final election results that were used to determine the official outcomes of the election contests.

5. Documents showing any known intrusion attempt into Your electronic election system.

6. Copies of the bills for any cellular connection to Your ballot scanners or ballot marking devices.

7. Copies of all contracts and agreements with the suppliers of any of Your electronic election system equipment, devices, software, or support services.

8. Copies of all contracts and agreements related to network security, network monitoring, or cybersecurity concerning all or any part of Your electronic election system.

Defendants' proposal eliminates Categories 1(f), (g), and (h), 2(b), 3(e), and 4(c) from the subpoena categories originally served upon the counties. Defendants' proposal consolidates and sharpens previous Categories 3(a) and (b) into a single, more precise item (new Category 3(a)), narrows and makes more specific previous Category 3(c), and slightly narrows previous Category 5 and Category 6. (Note: some of the information eliminated in this narrowing proposal could become more important if review of the equipment reveals indications of unauthorized changes. Defendants reserve the right to ask the Court for permission to seek follow-up information as appropriate.)

The reasons for the information requested in this proposal are as follows.

**Category 1** seeks forensic images of the primary components of the county's vote tallying computer system. The information stored on these networked components can show traces of unauthorized changes affecting vote tallies within the system.

- The EMS server is the central brains of the election management system, running the Dominion software[1] that is used to provide the "END-TO-END ELECTIONS SOLUTIONS" marketed by Dominion[2] and that "Drives the entire election project through a single comprehensive database" including "Manag[ing] the import, entry, and tracking for all districts, precincts, contests, candidates, voting locations and hardware," "Program[ming] all tabulators and in-person voting units using secure data file uploads," "Consolidat[ing] results from all voting channels into a single comprehensive database," "Results input using physical data transfers or through an air-gapped, closed network,"

---

[1] Dominion's exemplar contract with Pikes County, Pennsylvania, identifies a "Democracy Suite EMS Standard Server – Up to 7 clients" and "EMS Client Workstation Configuration Kit" as included deliverables. *See* Decl. of John Poulos Ex. A at Ex. A p.1 [ECF No. 145-3 at p.17 of 28]. The exemplar contract also lists three types of software as contract deliverables. *Id.*
[2] *See* https://www.dominionvoting.com/.

3

and the ability to "review not only the ballot images, but also the tabulator's interpretation of each ballot."[3]

- EMS clients[4] are computer workstations connected to the EMS server and have the same access and editing ability of the voting system and data as the EMS Server.

- ImageCast Central[5] workstations are computers that control ballot scanners and receive the scanned ballot data from the scanners. These have the ability to automatically send the scanned ballot to the EMS server for tabulation. These systems retain a copy of the originally scanned ballot.

- Adjudication workstations[6] are computers connected to the EMS network that receive ballot images that the ballot scanner had difficulty processing, so that human operators can "adjudicate" and decide which candidate the voter intended to vote for. These systems retain an auditable tracking of the ballots modified and the extent of those modifications.

- Computers that control other ballot scanners function similarly to the ImageCast Central workstations, and are also connected to the EMS network. Others scanners would include high-speed scanners, such as HiPro scanners, that are used to process high numbers of bulk ballots both prior to and after election day. These systems would retain a copy of the originally scanned ballot.

Defendants expect that any individual county is not likely to have more than (at most) about 17 devices in total responsive to Category 1, and most counties are likely to have far fewer

---

[3] *See* https://www.dominionvoting.com/democracy-suite-ems/.
[4] *See* footnote 1 above.
[5] *See* https://www.dominionvoting.com/imagecast-central/.
[6] The Pikes County exemplar contract includes a fee for one "Adjudication Application License." *See* Decl. of John Poulos Ex. A at Ex. A p.3 [ECF No. 145-3 at p.19 of 28].

than 17 responsive devices. Some counties may not have any equipment at all in one or more of the categories. Defendants understand that Maricopa County, one of largest voting jurisdictions in the United States, has one EMS server and four devices in each of the other four categories. Jurisdictions with fewer voters than Maricopa County are likely to have fewer than four devices in each of the other categories. Defendants expect that the cost of forensically imaging seventeen devices would be approximately $5,000, since many devices can be done simultaneously, and the cost for a smaller jurisdiction with fewer devices should be closer to $3,000.

**Category 2** seeks the most important information from smaller, precinct-level ballot scanners.[7] Rather than obtaining an entire drive image, the category asks only for the specific files from each ballot scanner necessary for an expert to examine for indications of compromise. In Defendants' understanding, slog.txt and .dvd files are not large, and can be quickly copied. The collection of these files should require minimal effort.

**Category 3** seeks information about the county's EMS network. Category 3(a) is basic information showing how the networked devices are connected and relate to each other. This information will assist the expert in understanding the data on the device images. Category 3(c) seeks log entries from the network router, which will show activity and traffic performed across the EMS network. Category 3(d) simply ensures that the data produced by the county is accessible by an expert, rather than locked behind encryption where it cannot be reviewed.

**Category 4** is public information about the results of the 2020 election, for purposes of comparing officially reported results with the data on the electronic voting system.

---

[7] For example, Dominion's ImageCast Precinct scanner is a "precinct optical scan ballot tabulator designed to scan marked paper ballots, interpret voter marks on the paper ballot, communicate these interpretations back to the voter and upon acceptance by the voter, deposit the ballots into the ballot box" and is accompanied by "Two (2) 4GB flash memory cards." *See* Decl. of John Poulos Ex. A at Ex. A p.7 [ECF No. 145-3 at p.21 of 28].

**Category 5** is a narrow request for documents sufficient to disclose any attempt already known by the county by an unauthorized person to obtain access into the county's electronic voting system.

**Category 6** seeks documentation of any connection by the county's voting system to a cellular network. Such a connection could be used to access and modify data on the voting system.

**Categories 7 and 8** are basic documentation of the county's contracts for its electronic voting system and any related security monitoring services.

Defendants believe that each of these categories, as a subset of the information requested in the subpoenas that were served, seeks information that is identifiable, discrete, able to gathered through means routine for litigation, and closely tied to the matters placed at issue by Dominion's complaint alleging defamation by statements about the 2020 election being hacked.

As an aside, Defendants do not now intend to pursue the requested information from all counties that initially received subpoenas. Defendants anticipate following up with perhaps half of those counties. After removing approximately 20 of the counties previously served from the list, there are additionally three new Louisiana counties that Defendants intend to serve with new subpoenas, consistent with the scope deemed by the Court to be appropriate.

II.     **Response to Dominion's Position**

From the meet-and-confer process with Dominion's counsel, Defendants understand that Dominion does not intend to take a position concerning Categories 3-8 in the subpoenas.

Concerning the scope of Categories 1-2, Defendants understand that Dominion intends to raise concerns about whether the equipment sought to be imaged is connected to the counties' EMS networks. Defendants will leave it to Dominion to state the specifics of Dominion's

position. Defendants simply point out that the narrowing proposal set forth above defines with specificity the equipment that Defendants seek images of, and each component should be, in the expected configurations, connected to the counties' EMS networks.

At the January 26, 2023, conference, Dominion's counsel revealed that Dominion intends to propose a process for imaging the drives sought by the subpoenas to the counties. Defendants do not believe this kind of proposal is within the scope of what the Court ordered to be discussed and briefed. Defendants further believe that discussions of the logistics of the production process is most appropriately between the party that issued the subpoenas and the counties that received the subpoenas, without Dominion attempting to insert itself between. Defendants believe that the process used should be the ordinary process used in civil litigation: the party issuing the subpoena and the responding county discuss and reach agreement, either by consensus or with the help of the local court, about the logistics of the production, and then the county produces the requested information subject to the terms of the Court's broad and strong Protective Order.

The exemplar contract relied upon by Dominion in support of the motion that initiated these discovery proceedings with the Court contemplates production of the information sought by the subpoenas in the ordinary course of litigation discovery:

> 13.2 Subject to the requirements of the Customer's public record laws ("PRL"), neither Party shall disclose the other Party's Confidential Information to any person outside their respective organizations <u>unless disclosure is made in response to, or because of, an obligation to any federal, state, or local governmental agency or court with appropriate jurisdiction, or to any person properly seeking discovery before any such agency or court</u>.

Decl. of John Poulos Ex. A at 7 [ECF No. 145-3 at p.13 of 28] (emphasis added).

From the January 26, 2023, conference, Defendants understand that Dominion's process proposal will include multiple components. Not having received a written statement of the

7

components, Defendants can only respond in general terms to the proposal as Defendants understand it from the conference.

**Certification**. Dominion indicated that it would seek a "certification" process in which the counties receiving the subpoena must "certify" whether they used Dominion equipment and other facts about the equipment. There should be no question that the counties used Dominion equipment. That was a requirement for the counties to receive a subpoena. To Defendants' knowledge none of the counties has denied using Dominion equipment. In any event, Dominion is well-positioned to know whether the subpoenaed counties used Dominion equipment, since Dominion's entire justification for seeking relief from the Court was the assertion that the counties *did* use Dominion's proprietary software. If Dominion believes any specific county did not use Dominion equipment, Dominion should identify that county and Defendants will re-check their information concerning that county.[8]

A "certification" procedure is unnecessary, cumbersome, unorthodox, and out of place. The only purpose it would serve is delaying the discovery sought by the subpoenas.

**Collection**. Dominion indicated that it would seek a requirement that the forensic images be collected by a certified neutral laboratory. Defendants agree that the collection of the images should be performed by a qualified contractor, and are willing to consider proposals from Dominion in this regard. The fee charged by the contractor will be an important consideration. In Defendants' understanding, some firms charge much higher fees for forensic imaging than others.

---

[8] At the end of this memorandum, Defendants provide a chart showing Defendant's understanding concerning the bare minimum of Dominion products used by the counties that received subpoenas. Dominion, again, knows what it sold these jurisdictions.

**Custody of data.** Dominion indicated that it would seek to have sole custody of the forensic images at the offices of its attorneys. Such a procedure is not workable. Defendants' experts will analyze the data collected by loading it into computer forensic tools and performing various searches within it. They cannot do this without receiving a copy of the data to search. Further, there is no reason to force Defendants' experts to travel to the offices of Dominion's counsel. The Court's Protective Order will protect Dominion's proprietary software in the same way that federal court protective orders secure proprietary data in commercial litigation every day. Dominion's data custody proposal is extraordinary, unnecessary, cumbersome, impractical, and imposes additional cost.

### III.  Conclusion

Defendants ask that the Court enter an order denying Dominion's motion and explaining that the Court has found the categories of documents listed on page 2 above, as a subset of the documents sought by the original subpoenas, to be both relevant to the claims and defenses in this action, and not overbroad. Defendants further ask that the Court deny Dominion's new request for relief concerning the process of producing the requested information.

DATED:  January 27, 2023.                **PARKER DANIELS KIBORT LLC**

By */s/ Joseph A. Pull*
Andrew D. Parker (D.C. Bar No. 63279)
Joseph A. Pull (D.C. Bar No. 982468)
888 Colwell Building
123 N. Third Street
Minneapolis, MN 55401
Telephone: (612) 355-4100
Facsimile: (612) 355-4101
parker@parkerdk.com
pull@parkerdk.com

*Counsel for Defendants My Pillow, Inc. and Michael J. Lindell*

9

| State | County | Used Dominion for 2020 Election |
|---|---|---|
| Colorado | El Paso | BMD/scanner (ICX/IC Central) |
| Colorado | Montrose | BMD/scanner (ICX/IC Central) |
| Colorado | Pueblo | BMD/scanner (ICX/IC Central) |
| Colorado | Weld | BMD/scanner (ICX/IC Central) |
| Florida | Monroe | BMD/scanner (ICX/IC Central) |
| Florida | St. Lucie | BMD/scanner (IC Evolution) |
| Georgia | Burke | BMD/scanner (ICX/Precinct) |
| Georgia | Fayette | BMD/scanner (ICX/Precinct) |
| Georgia | Forsyth | BMD/scanner (ICX/Precinct) |
| Georgia | Fulton | BMD/scanner (ICX/Precinct) |
| Georgia | Houston | BMD/scanner (ICX/Precinct) |
| Georgia | Peach | BMD/scanner (ICX/Precinct) |
| Michigan | Berrien | BMD/scanner (ICX/Precinct) |
| Michigan | Calhoun | BMD/scanner (ICX/Precinct/Central) |
| Michigan | Kent | BMD/scanner (ICX/Precinct/Central) |
| Michigan | Saginaw | BMD/scanner (ICX/Precinct/Central) |
| Michigan | Wayne | BMD/scanner (ICX/Precinct/Central) |
| Minnesota | Crow Wing | BMD/scanner (IC Evolution/Central) |
| Minnesota | Dakota | BMD/scanner (IC Evolution/Central) |
| Minnesota | Scott | BMD/scanner (IC Evolution/Central) |
| Minnesota | Sherburne | BMD/scanner (IC Evolution/Central) |
| Nevada | Clark | DRE/scanner (ICX DRE/Central) |
| Nevada | Washoe | BMD/scanner (ICX DRE/Central) |
| New Mexico | Otero | BMD/scanner (IC Evolution) |
| New Mexico | San Juan | BMD/scanner (IC Evolution/Central) |
| New Mexico | Valencia | BMD/scanner (IC Evolution/Central) |
| Pennsylvania | Erie | BMD/scanner (ICX/Precinct) |
| Pennsylvania | Luzerne | BMD/scanner (ICX/Precinct) |
| Pennsylvania | Pike | BMD/scanner (ICX/Precinct) |
| Tennessee | Hamilton | BMD/scanner (IC/Precinct) |
| Tennessee | Williamson | BMD/scanner (ICX/Precinct) |
| Wisconsin | Fond du Lac | BMD/scanner (IC Evolution) |
| Wisconsin | Grant | Partial – IC Evolution |
| Wisconsin | Green | BMD/scanner (IC Evolution) |
| Wisconsin | Ozaukee | Partial – IC Evolution |
| Wisconsin | Racine | BMD/scanner (IC Evolution) |
| Wisconsin | Walworth | BMD/scanner (IC Evolution) |
| Wisconsin | Winnebago | BMD/scanner (IC Evolution) |