IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| US DOMINION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:21-cv-00445-CJN |
| | ) | Judge Timothy J. Kelly |
| v. | ) | |
| | ) | |
| MY PILLOW, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Defendants' Memorandum in Support of Motion to Compel
Deposition Testimony of John Negroponte**

Michael Lindell and My Pillow, Inc. (together, "Defendants") move the Court to order John Negroponte to appear for a deposition, in compliance with a subpoena issued by the Defendants in this action. The Government has asserted objections to the subpoena based on the doctrine of *Touhy v. Ragen*, 340 U.S. 462 (1951). However, the testimony sought by the subpoena is important to Defendants' defenses in this action, and *Touhy* is not appropriately applied under these circumstances.[1]

**I.   Facts**

Plaintiffs ("Dominion") sell technology used to administer elections. Compl. ¶ 157 (ECF 1). Dominion has asserted defamation claims against Defendants based on statements made by Lindell about the 2020 presidential election. *Id.* ¶ 165. According to the Complaint, Lindell

---

[1] This motion to compel a deposition of Negroponte is brought simultaneously with a motion to compel the deposition of Carlotta Wells. Defendants have also brought before this Court motions to compel the deposition of Wells and Negroponte in another, similar action, *Smartmatic USA Corp. et al. v. Lindell et al.*, no 22-cv-0098-WMW-JFD, out of the United States District Court for the District of Minnesota.

1

stated that Dominion's electronic election equipment was hacked by foreign actors during the 2020 presidential election. *Id*. ¶ 165 (x), (y), (aa).

Lindell's statements about the 2020 election being hacked were based in part on information Lindell received about the work of Dennis Montgomery. Decl. of Michael Lindell ¶ 2-4; *see* Compl. ¶ 74. Lindell received information from other people, and then directly from Montgomery, that many years ago Montgomery had provided computer programming services to the United States government, when Montgomery worked for two companies that contracted with the United States government. *Id*. ¶¶ 2-3. Montgomery was a co-owner of one of these companies. *Id.* ¶ 2. Lindell heard that at these companies Montgomery had developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries. *Id.* Lindell heard that Montgomery's election-manipulating software was obtained by persons in China, and that Montgomery obtained copies of internet transmissions showing the software was used by persons in China to change votes in the 2020 presidential election. *Id.* Montgomery's history of working for the United States government was one of the reasons Lindell believed the information he heard about Montgomery. *Id*. ¶ 4.

In August 2022, Montgomery executed a declaration filed in federal court describing in part his work for the United States government. Parker Decl. ¶ 9 & Ex. H. The declaration testified that Montgomery formed eTreppid Technologies, LLC in 1998 with a business partner, *id*. ¶ 8; that Montgomery provided software development for the company, which contracted with the federal government to provide software development services, *id*. ¶¶ 8-10; and that the company entered into contracts with the Department of Defense, Central Intelligence Agency, Air Force, and Department of Homeland Security, *id*. Montgomery further testified that "Voting

machine manufactures communications and intellectual property we hijacked by us gov numerous times over the years I worked in FBI/CIA/NSA surveillance programs," and he has demonstrated his programs performing "election monitoring and interference" and "hacking into voting machines manufactures and their equipment with ease." *Id*. ¶¶ 25, 28. The declaration testified that "The DOJ was interested in the use of the 'eTreppid/Blxware' technology that could surveil and interfere in elections, foreign and domestic leaving no trace." *Id*. ¶ 33. The declaration testified that Montgomery had turned over to the government data showing "US voting machine manufactures and their employees were hacked several times," including "Dominion Voting Systems Corp." and "Smartmatic USA Corporation," and that Montgomery's technology collected data transmitted during the 2020 election. *Id*. at ¶¶ 38, 40.

In 2006, a dispute had arisen between Montgomery and his business partner concerning eTreppid Technologies, Inc. *See* Parker Decl. ¶ 2 & Ex. A (Complaint of Dennis Montgomery). Two lawsuits resulted: *eTreppid Technologies, LLC v. Montgomery* and *Montgomery v. eTreppid Technologies, Inc.* (together, the "eTreppid Litigation").[2] The United States government sought and obtained entry of a protective order in the eTreppid Litigation based on its assertion of the state secrets privilege. *See* Parker Decl. ¶ 3 & Ex. B (Motion); Parker Decl. ¶ 4 & Ex. C (Order); Parker Decl. ¶ 5 & Ex. D (Protective Order). The United States government's motion seeking the protective order in the eTreppid Litigation asked the Nevada court to enter a protective order because "the United States has properly asserted the military and state secrets privilege in these cases," and "the information to be protected from disclosure includes information concerning the existence or non-existence of any actual or proposed relationship involving any U.S. intelligence agency and any individuals and/or companies associated with these lawsuits and any actual or

---

[2] These are no. CV-N-06-00145 and no. CV-N-06-00056 in the U.S. District Court for the District of Nevada.

proposed interest in, application of, discussion of, or use by an intelligence agency of any technology owned or claims by individuals and/or companies associated with these lawsuits." Parker Decl. ¶ 3 & Ex. B at 12-13.

The Government's motion relied for its factual basis on two declarations: the Declaration of John D. Negroponte and a "classified in camera, ex parte declaration." Parker Decl. Ex. B at 2-3 & n.2. The Negroponte Declaration stated that its purpose was to "assert formally . . . the state secrets privilege to protect intelligence information." Parker Decl. ¶ 14 & Ex. N ¶ 3. It stated that Negroponte, "[a]fter personal consideration of the matter" determined that the "classified *ex parte, in camera* declaration which accompanies this assertion of the state secrets privilege" contained information that "reasonably could be expected to cause serious, and in some cases exceptionally grave damage to the foreign policy and national security of the United States." *Id*. ¶ 8. It stated that after "careful and actual personal consideration of the matter," Negroponte determined that "unauthorized disclosure of certain information that may be implicated by the parties' claims in this matter" could damage the national security of the United States. *Id*. ¶ 9. The relevant information concerned "(a) the existence or non-existence of, any actual or proposed relationship, agreement, connection, contract, transaction, communication, or meeting of any kind between any entity in the United States Intelligence Community, or any current or former official, employee, or representative thereof, and any individuals or entities associated with this lawsuit, on any current or former officer or employee thereof; and (b) any actual or proposed interest in, application, or use by any entity in the United States Intelligence Agency, or any current or former official, employee, or representative thereof, of any technology, software, or source code owned or claimed by any individuals or entities associated with this lawsuit." *Id*. ¶ 11.

On August 29, 2007, the Nevada District Court entered the protective order sought by the Government ("Nevada Protective Order"), Parker Decl. Ex. D, stating that the court had reviewed "in camera" a "Classified Declaration" from the Director of National Intelligence, and that information from the filings in the eTreppid Litigation was redacted on the basis of the state secrets privilege. Parker Decl. Ex. C at 2.

As shown by the facts set forth above, Lindell's defenses against the defamation claims brought against him by Dominion are greatly strengthened by information concerning the software work Montgomery performed for the federal government while at eTreppid. Montgomery's past and work for the federal government provided Lindell with substantial reason to believe the information he received about and from Montgomery. Information about Montgomery's past and work for the federal government tends to support the accuracy of the statements Lindell made. The testimony of Negroponte is an important part of the eTreppid evidence Lindell seeks to discover, and Lindell knows that Negroponte possesses relevant information, as a result of the Negroponte Declaration.

In this action, Defendants issued a subpoena to Negroponte ("Negroponte Subpoena") to provide a deposition. Decl. of Andrew Parker ¶ 15 & Ex. O. Attached to the Negroponte Subpoena was a statement explaining why the *Touhy* factors permitted the deposition of Negroponte in this case. *Id*. at Ex. A. The subpoena was served upon Negroponte on October 18, 2022. Parker Decl. Ex. P. On November 17, 2022, Defendants received responsive correspondence from the Office of the Director of National Intelligence refusing to allow the testimony sought by the Negroponte Subpoena on the basis of the principles articulated in *Touhy v. Ragen*, 340 U.S. 462 (1951). Parker Decl. ¶ 16 & Ex. Q.

## II. Argument

The information sought by the Negroponte Subpoena is important to the Defendants' defenses and is reasonably capable of being provided by Negroponte without undue burden. Accordingly, Negroponte should be compelled to comply with the subpoena by providing deposition testimony.

### A. Legal Standard

Fed. R. Civ. P. 45 provides the standard governing a federal agency's response to a subpoena issued to an agency employee in a federal civil suit. *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) ("Rule 45's privilege and undue burden standard thus applies to both document and testimonial subpoenas . . . . Moreover, an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45."). *See* 5 U.S.C. § 301 (authorizing *Touhy* regulations but providing, "This section does not authorize withholding information from the public or limiting the availability of records to the public."). Under Rule 45, "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *Buzzfeed, Inc. v. United States Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018) (quoting *In re Micron Tech., Inc. v. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010)).

Two principles guide the Court in determining whether a subpoena would impose an undue burden on the Government. The Court must be "generally sensitive to the costs imposed on third parties," *Buzzfeed,* 318 F. Supp. 3d at 358, and the Court must consider the factors under Fed. R. Civ. P. 26(b) including "(1) whether the discovery sought is 'unreasonably cumulative or duplicative'; (2) whether the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive'; and (3) whether the discovery sought is 'proportional to the needs of the case,' taking into account 'the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

### B. Negroponte Should Be Required to Provide Deposition Testimony.

The Rule 26(b) factors show that Negroponte should be required to provide deposition testimony in this case. Defendants seek to obtain testimony in admissible form confirming facts surrounding Montgomery's work for the government. Negroponte's involvement in the eTreppid Litigation and the facts underlying that involvement relate to the important questions of whether Lindell's statements concerning Montgomery and the 2020 election are true, whether Lindell believed what he said, and whether it was "inherently improbable" for him to believe this. The facts concerning Montgomery's past relate to the questions of whether Lindell's statements are true, whether he believed what he said, and whether it was "inherently improbable" for him to believe this, *see* Mem. Op. at 24 (ECF 54) ("As for Lindell, Dominion contends that his claims were so inherently improbable that only a reckless man would have made them."); *cf. St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). These matters are important parts of the Defendants' defenses against the claims brought against them by Dominion.

The discovery sought from Negroponte is not cumulative or duplicative of information available elsewhere, for only Negroponte signed the declaration in the eTreppid Litigation. The discovery sought cannot be obtained from a more convenient, less burdensome, or less expensive source. Negroponte is the best witness to provide the information sought, because the information sought relates to his personal knowledge concerning Montgomery, knowledge that he attested to in the declaration previously filed with the *eTreppid* court.

A deposition of Negroponte would not impose an undue cost or burden. Defendants have not asked him to search for or produce any documents, but merely to provide testimony concerning what he knows. In these circumstances, deposition testimony without any associated document production is not unreasonably burdensome or expensive. This scope of discovery is justified proportionally by the importance of the information sought and the magnitude of the amount in controversy, which according to the Complaint exceeds $1.3 billion in damages. Compl. p.115 (ECF 1).

No privilege bars discovery of the information described above. Defendants do not intend to ask Negroponte to disclose any information protected by the attorney-client or work product privileges, but merely to testify concerning facts known to Negroponte concerning Montgomery.

Finally, the subpoena to Negroponte satisfies the *Touhy* regulations of the Office of the Director of National Intelligence, his former employer. It provides a written statement with a reasonably detailed description of the testimony sought. Parker Decl. Ex. O at Ex. A.

### C. The Government's Objections to the Negroponte Subpoena Are Without Merit.

The government's response to the Negroponte Subpoena refused to permit Negroponte to be deposed. Parker Decl. ¶ 16 & Ex. Q ("Negroponte Response"). The Negroponte Response cited three reasons for this decision. *Id*. None provide a basis to prevent the deposition of Negroponte.

**Extraordinary Circumstances.** The government first asserted that no "extraordinary circumstances" exist to compel Negroponte's deposition. Parker Decl. Ex. Q at 2. However, the government admitted that "unique first-hand knowledge" satisfies this standard. *Id*. Here, Negroponte signed a declaration stating that he gave "personal consideration" to these matters – an admission that he had firsthand knowledge. No other official signed the Negroponte

Declaration, making Negroponte's knowledge unique. And while the government alleges that Negroponte lacks knowledge or recollection, Defendants are entitled to establish whether that is true with sworn testimony and by refreshing Negroponte's memory.

The applicable standard is stated in *United States v. Newman*, 531 F. Supp. 3d 181 (D.D.C. 2021). "[H]igh ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Id*. at 188. Both requirements are met here. Negroponte's personal knowledge is established by the Negroponte Declaration, which states that Negroponte gave "personal consideration" to the facts of the eTreppid Litigation. Parker Decl. Ex. N ¶ 9 ("After careful and actual personal consideration of the matter"). The Declaration also states that Negroponte's statements "are based on my personal knowledge" and that he "personally consider[ed]" the matter. *Id*. ¶ 2. The information sought by Defendants cannot be obtained elsewhere because the Negroponte Declaration does not identify any other person who could testify concerning Negroponte's personal knowledge.

**Undue Burden.** The government next alleged that a deposition would constitute an undue burden. *Id.* at 2-3. The government did not identify any such burden. Negroponte is no longer in office, so no disruption of government function could occur. Negroponte's information – establishing that on behalf of the Government he personally reviewed the specific facts of Montgomery's work at eTreppid and concluded that some aspect of that work required invocation of the state secrets privilege – plainly tends to strengthen the Defendants' defense in this matter that Lindell could rely on the information he received about Montgomery's work. There is no other source who signed the Negroponte Declaration, and providing a one-day deposition, without any associated document production, is not an undue burden.

The government also argued with respect to a purported "undue burden" that the information sought by Defendants "does not appear to be relevant to the claims against the Defendants or proportional to the needs of this case." *Id*. at 3. It asserted, "There is no reasonable possibility that the *eTreppid* matter, which occurred over 16 years ago, has any relevance to the claims against the Defendants." *Id*. However, passage of time does not affect the relevance of the information sought. Lindell made statements in reliance on his understanding of certain events sixteen years ago. He is entitled to discovery to ascertain the truth concerning those events, to show his statements were accurate or were not "inherently improbable." The Court has already identified this issue as important to the case, Mem. Op. at 25 (ECF 54), and Dominion may argue the facts at issue are hearsay when those facts presented at trial, unless Defendants obtain admissible testimony to establish them. Defendants are entitled to discover facts central to their arguments on that point – even if those facts concern events from some time in the past.

**Privileged Information**. The government finally alleged that a deposition would seek privileged information. *Id*. at 4. The Negroponte Subpoena seeks non-privileged information, and the Defendants are entitled to discover this information. If the government believes an individual question concerns privileged information at the deposition, it can assert the appropriate privilege then. The government may not hide behind the existence of non-requested privileged information to avoid discovery of requested non-privileged information. Further, the government's assertions concerning the extent of any remaining privilege concerning the matters addressed by the subpoena are overbroad. These matters are not in any meaningful sense secret now, even if they might have been long ago. Montgomery has publicized them already, including in court filings. *See, e.g.,* Parker Decl. Ex. H.

"[A]n agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45." *Watts*, 482 F.3d at 508.[3] Under Rule 45, "'The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged.'" *Buzzfeed*, 318 F. Supp. 3d at 356 (quoting *In re Micron Tech.*, 264 F.R.D. at 9). The testimony Defendants seek from Negroponte is proper. Nor is it unduly burdensome, for it does not seek information cumulative of testimony already obtained, and cannot be sought from a more convenient, less burdensome, or less expensive source. A single deposition, without any associated production of documents, is proportional to the needs of the Defendants to establish the facts concerning Montgomery, upon whom Lindell heavily relied in making the allegedly defamatory statements at issue. The burden of this important discovery is minimal compared with its benefit. Negroponte needs to provide a deposition.

### III.     Conclusion

Defendants' subpoena to John Negroponte in this matter is appropriate and enforceable. The Court should order Mr. Negroponte promptly to provide the deposition testimony sought by Defendants in this case.

---

[3] The purpose of *Touhy* regulations is "internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." *Watts*, 482 F.3d 501, 508-509; *see id.* at 509 ("[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.") (quoting 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006)).

DATED:  August 7, 2023                                **PARKER DANIELS KIBORT LLC**

  By */s/ Andrew D. Parker*
    Andrew D. Parker (D.C. Bar No. 63279)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com

*Counsel for Defendant Michael Lindell*

  By */s/ Andrew D. Parker*
    Andrew D. Parker (D.C. Bar No. 63279)
    Joseph A. Pull (D.C. Bar No. 982468)
    888 Colwell Building
    123 N. Third Street
    Minneapolis, MN 55401
    Telephone: (612) 355-4100
    Facsimile: (612) 355-4101
    parker@parkerdk.com
    pull@parkerdk.com

*Counsel for Defendant My Pillow, Inc.*