**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**US DOMINION, INC., et al.**,

*Plaintiffs/Counter-Defendants*,

v.

**MY PILLOW, INC., et al.**,

*Defendants/Counter and Third-Party Plaintiffs,*

v.

**SMARTMATIC USA CORP., et al.**,

*Third-Party Defendants*

No. 1:21-cv-00445

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

BACKGROUND ..... 1

I. The Underlying Litigation ..... 1

II. The Instant Subpoena Matter ..... 2

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. DNI Negroponte's Testimony Is Not Relevant to Any Claim or Defense in *US Dominion* ..... 5

II. Compelling DNI Negroponte's Testimony Would Impose an Undue Burden on the United States. ..... 8

A. The requested testimony regarding Montgomery's history is more conveniently obtained from Montgomery and is unreasonably duplicative of such testimony. ..... 8

B. The requested testimony is not proportional to the needs of the case. ..... 9

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*Alexander v. FBI*,
186 F.R.D. 188 (D.D.C. 1998) ........................................ 11

*Am. Fed'n of State, Cnty. & Mun. Emps. v. Project Veritas Action Fund*,
No. 1:21-mc-133, 2022 WL 3655277 (D.D.C. Aug. 25, 2022) ........................................ 8, 9

*Breiterman v. U.S. Capitol Police*,
323 F.R.D. 36 (D.D.C. 2017) ........................................ 9

*BuzzFeed, Inc. v. DOJ*,
318 F. Supp. 3d 347 (D.D.C. 2018) ........................................ 5

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*,
339 F.R.D. 334 (D.D.C. 2021) ........................................ 5, 8, 9

**FDIC v. Galan-Alvarez*,
No. 1:15-mc-00752, 2015 WL 5602342 (D.D.C. Sept. 4, 2015) ........................................ 10

*Flatow v. Islamic Republic of Iran*,
201 F.R.D. 5 (D.D.C. 2001) ........................................ 5

**Food Lion, Inc. v. United Food & Com. Workers Int'l Union*,
103 F.3d 1007 (D.C. Cir. 1997) ........................................ 6

*Freeman v. Seligson*,
405 F.2d 1326 (D.C. Cir. 1968) ........................................ 12

*Gomez v. City of Nashua*,
126 F.R.D. 432 (D.N.H. 1989) ........................................ 8

*Harrington v. Bergen Cnty.*,
No. 14-cv-5764, 2017 WL 4387373 (D.N.J. Oct. 3, 2017) ........................................ 9

*Herbert v. Lando*,
441 U.S. 153 (1979) ........................................ 6

*In re Cheney*,
544 F.3d 311 (D.C. Cir. 2008) ........................................ 10

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans* Affairs *("In re Veterans* Affairs"),
257 F.R.D. 12 (D.D.C. 2009) ........................................ 5, 7

*In re Sealed Case*,
494 F.3d 139 (D.C. Cir. 2007) .......... 7

*Kelley v. FBI*,
No. CV 13-0825 (ABJ), 2015 WL 13648073 (D.D.C. July 16, 2015) .......... 10

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
731 F.3d 199 (2d Cir. 2013) .......... 10

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
894 F.2d 1318 (Fed. Cir. 1990) .......... 7

Order, *Montgomery v. eTreppid Technologies, Inc.*,
No. 6-cv-56 (D. Nev. Aug. 4, 2023), ECF No. 1265 .......... 7

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984) .......... 5

**St. John v. Napolitano*,
274 F.R.D. 12 (D.D.C. Mar. 31, 2011) .......... 6, 12

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*,
242 F.R.D. 1 (D.D.C. 2007) .......... 5

*United States v. Newman*,
531 F. Supp. 3d 181 (D.D.C. 2021) .......... 9, 10

*United States v. Wal-Mart Stores, Inc.*,
No. 01-cv-152, 2002 WL 562301 (D. Md. Mar. 29, 2002) .......... 10

*Vire v. Entergy Operations, Inc.*,
No. 4:15-cv-214, 2016 WL 10576707 (E.D. Ark. Sept. 28, 2016) .......... 12

**Watts v. SEC*,
482 F.3d 501 (D.C. Cir. 2007) .......... 4, 5, 8, 9

**Rules**

Fed. R. Civ. P. 26(b)(1) .......... 8, 9

Fed. R. Civ. P. 26(b)(2)(C) .......... 8

## INTRODUCTION

This dispute arises out of the above-captioned defamation action *US Dominion, Inc. v. My Pillow, Inc.*, No. 21-cv-445 (D.D.C.) ("*US Dominion*"). In that action, US Dominion, Inc. and its related corporate entities (collectively, "Dominion") allege that Michael J. Lindell made defamatory statements regarding the use of Dominion's election technology in the 2020 presidential election. Although former Director of National Intelligence ("DNI") John Negroponte has no personal knowledge of any facts bearing on the truth or falsity of those statements, Lindell and his company, My Pillow, Inc. (collectively, "Movants"), have inexplicably subpoenaed DNI Negroponte's testimony not about the facts or allegations in *US Dominion* but about an unrelated seventeen-year-old copyright infringement case, *Montgomery v. eTreppid Technologies, Inc.*, No. 6-cv-56 (D. Nev.), in which DNI Negroponte asserted the state-secrets privilege.

Accordingly, not only does Movants' request lack any relevance to any plausible defense or claim in *US Dominion*, it also implicates privileged information to which Movants clearly are not entitled. Moreover, because DNI Negroponte is a former high-level government official, Movants have the additional burden—not met here—of establishing that extraordinary circumstances justify compelling his testimony. Finally, because this Court's determination appropriately considers the burden of discovery on a non-party, the Court should deny the instant motion.

## BACKGROUND

### I. The Underlying Litigation

This dispute arises out of a third-party subpoena issued in *US Dominion*. In that case, Dominion sued Movants over Lindell's allegedly defamatory statements regarding the use of

Dominion's election technology in the 2020 presidential election. *See* Compl. and Demand for Jury Trial ("Compl."), ECF No. 1.

Dominion details a litany of Lindell's allegedly defamatory statements made across multiple platforms, including live rallies, radio and television appearances, social media, a self-produced "docu-movie," and more. *Id.* ¶ 165. Specially, Dominion alleges that Lindell repeatedly and falsely stated that "Dominion machines were programmed with an algorithm—or were hacked—to weight votes, shift votes, or otherwise manipulate vote counts to steal the 2020 election." *Id.* ¶ 167. Dominion alleges that Lindell intentionally spread this false information in order to "sell[] pillows." *Id.* ¶ 1.

**II. The Instant Subpoena Matter**

By letter dated October 7, 2022, Movants subpoenaed former DNI Negroponte. *See* Decl. of Andrew D. Parker, Ex. O, ECF No. 183-4 at 576 ("Subpoena"). The subpoena inexplicably sought DNI Negroponte's testimony concerning a declaration he signed formally asserting the state-secrets privilege in an unrelated copyright infringement lawsuit nearly two decades ago. *See Montgomery v. eTreppid Technologies, Inc.*, No. 6-cv-56 (D. Nev.).

The *eTreppid* lawsuit was initiated in 2006 as an ownership dispute between eTreppid Technologies, Inc. and its former employee, officer, and director Dennis Montgomery over certain software allegedly developed by him. *See* Compl., *eTreppid*, No. 6-cv-56 (D. Nev. Jan. 31, 2006), ECF No. 1. Montgomery subsequently also asserted claims against the Department of Defense ("DoD"), seeking a declaration that a classified information nondisclosure agreement he executed with a DoD agency did not preclude him from disclosing information allegedly necessary to his claims and defenses in *eTreppid*. *See* First Am. Compl., *eTreppid*, No. 6-cv-56 (D. Nev. Feb. 21,

2006), ECF No. 7 ¶¶ 68–74. The United States moved to dismiss those claims, which the court granted. Order, *eTreppid*, No. 6-cv-56 (D. Nev. May 24, 2007), ECF No. 177 at 6.[1]

While its motion to dismiss was pending, the United States moved for entry of a protective order, *see* Notice of Mot. & Mot. for P.O. by the U.S., *eTreppid*, No. 6-cv-56 (D. Nev. Sept. 25, 2006), ECF No. 83-1, accompanied by a declaration from DNI Negroponte formally asserting the state-secrets privilege, *see* Decl. and Formal Claim of State Secrets and Statutory Privileges by John D. Negroponte, Director of National Intelligence, *eTreppid*, No. 6-cv-56 (D. Nev. Sept. 25, 2006), ECF No. 83-2 ("DNI Negroponte Decl."). The court later entered the requested protective order. *See* Protective Order, *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 29, 2007), ECF No. 253 ("Protective Order"). The Protective Order prohibited "discovery or disclosure" of two narrow categories of information: (1) "the existence or non-existence of any actual or proposed relationship" between the parties and any U.S. intelligence agency and (2) any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties." *Id.* ¶¶ 1–3. The Protective Order expressly exempted from its coverage any discovery regarding "[t]he computer source code, software, programs, or technical specifications relating to any technology owned or claimed by any of the Parties," *id.* ¶ 4(c), and any "actual or potential commercial or government applications of" this technology, so long as it did not relate to the aforementioned categories concerning U.S. intelligence agencies, *id.* ¶ 4(e).

Despite the passage of almost two decades and a lack of any connection between *eTreppid* and the 2020 election, Movants subpoenaed DNI Negroponte in the instant matter purportedly to obtain "knowledge about Mr. Montgomery's activities at eTreppid performed in connection with

---

[1] Montgomery, eTreppid Technologies, Inc., and related parties eventually settled, and the court dismissed the case with prejudice on February 19, 2009. Order, *eTreppid*, No. 6-cv-56 (D. Nev. Feb. 19, 2009), ECF No. 962 ¶¶ 1–2.

the [Central Intelligence Agency ("CIA")]." Subpoena 582. Movants alleged that this information will "support [Movants'] defenses concerning Mr. Lindell's reliance on Mr. Montgomery, and . . . defend against any attacks the plaintiffs may assert against Mr. Montgomery's credibility." *Id*. Pursuant to its *Touhy* regulations and the Federal Rules of Civil Procedure, the Office of the Director of National Intelligence ("ODNI") declined to authorize DNI Negroponte's testimony on numerous grounds, including relevance, privilege, burden, and lack of personal knowledge.

On August 7, 2023, Movants filed the instant motion to compel DNI Negroponte's testimony. *See* Defs.' Mot. to Compel Depo. Test. of John Negroponte, ECF No. 183; Defs.' Mem. in Support of Mot. to Compel Depo. Test. of John Negroponte, ECF No. 183-1 ("Mem."). Movants seek to compel the following testimony:

> (1) Mr. Montgomery participated in the development of software technology that can be used to penetrate electronic election equipment and manipulate vote totals; (2) this technology was tested and found to work; (3) the technology was developed and was operational prior to 2020; (4) the technology at some point passed into the possession of individuals outside the CIA; [and] (5) the technology was used to manipulate elections outside the United States prior to 2020.

Subpoena 583.[2] Movants admittedly seek DNI Negroponte's testimony only to "confirm[] facts surrounding Montgomery's work for the government," which they contend will establish "whether Lindell's statements concerning Montgomery and the 2020 election are true, whether Lindell believed what he said, and whether it was 'inherently improbable' for him to believe this." Mem. 7 (citation omitted). The Court should deny their motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs disputes over third-party subpoenas to agencies in civil litigation. *See Watts v. SEC*, 482 F.3d 501, 503, 507 (D.C. Cir. 2007). Because Rule 45

---

[2] Movants' briefing does not clarify which topics from the Subpoena they seek to compel. Accordingly, the United States assumes that Movants seek to compel all topics from the Subpoena.

incorporates the relevancy requirement of Federal Rule of Civil Procedure 26, "the Court must first consider 'whether the discovery sought is relevant to a party's claim or defense in the underlying litigation.'" *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 338 (D.D.C. 2021) (quoting *BuzzFeed, Inc. v. DOJ*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018)). The party seeking the third-party discovery bears the burden of demonstrating its relevance to the underlying litigation. *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007).

"Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 338 (quoting *BuzzFeed, Inc*, 318 F. Supp. 3d at 356); *accord Watts*, 482 F.3d at 508. The resisting party bears the burden of establishing undue burden. *See Flatow v. Islamic Republic of Iran*, 201 F.R.D. 5, 8 (D.D.C. 2001) (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984)). However, "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 339 (quoting *Watts*, 482 F.3d at 509). And a court's obligation to avoid imposing undue burden is "particularly acute" when a third-party subpoena is directed toward the United States or to a former high-level government official. *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs* ("*In re Veterans Affairs*"), 257 F.R.D. 12, 18 (D.D.C. 2009).

## ARGUMENT

### I. DNI Negroponte's Testimony Is Not Relevant to Any Claim or Defense in *US Dominion*.

DNI Negroponte has no personal knowledge of any facts relevant to the claims or defenses in *US Dominion*. The relevance standard is "not so liberal as to allow a party to roam in shadow

zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. Mar. 31, 2011) (quoting *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997)). Indeed, the Supreme Court has emphasized that the relevancy requirement "should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] 'a party or person from annoyance, embarrassment, oppression, or undue burden or expenses.'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (alteration in original) (citation omitted). This Court should not countenance Movants' inexplicable attempts to compel testimony from DNI Negroponte concerning his assertion of an unrelated state-secrets privilege seventeen years ago.

By its own terms, the motion to compel does not seek any information bearing on the truth or reasonableness of the alleged defamatory statements in *US Dominion*. And indeed, DNI Negroponte has no personal knowledge—and Movant do not contend otherwise—of the truth or reasonableness of any of the alleged defamatory statements. In particular, DNI Negroponte has no personal knowledge of whether "Dominion machines were programmed with an algorithm—or were hacked—to weight votes, shift votes, or otherwise manipulate vote counts to steal the 2020 election." Compl. ¶ 167. DNI Negroponte's requested testimony is therefore irrelevant on its face.

Rather than argue that DNI Negroponte's testimony has any bearing on the alleged defamatory statements themselves, Movants seek to compel testimony from DNI Negroponte on the unfounded speculation that details surrounding the United States' assertion of the state-secrets privilege seventeen years ago would legitimize Lindell's contemporary claims about the 2020 election. There is a "crucial distinction" between permitting discovery to "flesh out a pattern of facts already known" and "the illegitimacy of permitting discovery against a third party premised

on an unfounded suspicion," as here. *In re Veterans Affairs*, 257 F.R.D. at 17 (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)). The United States' assertion of the state-secrets privilege in *eTreppid* has no bearing whatsoever on the issues in *US Dominion*. *See In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (noting that when the state-secrets privilege is invoked, "[t]he result is simply that the evidence is unavailable, as though a witness had died" (citation and quotations omitted)). Movants accordingly cannot weaponize that assertion as a defense in unrelated defamation litigation nearly two decades later.

Indeed, this is not the first time Movants have attempted to resuscitate the long-dismissed *eTreppid* litigation as allegedly necessary to their defenses in this action. Lindell and Montgomery each separately moved the *eTreppid* court to lift the Protective Order premised on the state-secrets assertion. *See* Lindell's Mot. to Intervene and to Lift P.O., *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 20, 2022), ECF No. 1216; Montgomery's Mot. to Restrict Application of the State Secrets Privilege, the P.O., & the Classified Info. Nondisclosure Agreement, *eTreppid*, No. 6-cv-56 (D. Nev. Nov. 14, 2022), ECF No. 1236 ("Montgomery's Mot. to Restrict"). But the *eTreppid* court denied both motions, explaining that any alleged connection between the Protective Order and Montgomery's "information" is "non-existent or tenuous at best," Order, *eTreppid*, No. 6-cv-56 (D. Nev. Aug. 4, 2023), ECF No. 1265 at 1, 5, and that the Protective Order is "unrelated" to the defamation litigation, *id.* at 2–3, 5. This Court should not countenance Movants' second attempt at resuscitation here by compelling a third-party deposition of such clearly dubious relevance. Accordingly, their motion should be denied.

## II. Compelling DNI Negroponte's Testimony Would Impose an Undue Burden on the United States.

The Court alternatively should deny Movants' motion because it imposes an undue burden on the United States pursuant to Rule 45. In considering whether requested testimony would impose an undue burden, courts consider the *Watts* factors:

> (1) whether the discovery sought is "unreasonably cumulative or duplicative"; (2) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive"; and (3) whether the discovery sought is "proportional to the needs of the case[,]" taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Am. Fed'n of State, Cnty. & Mun. Emps. v. Project Veritas Action Fund*, No. 1:21-mc-133, 2022 WL 3655277, at *3 (D.D.C. Aug. 25, 2022) (citation omitted); *see also* Fed. R. Civ. P. 26(b)(1), (b)(2)(C); *accord Watts*, 482 F.3d at 509. All three *Watts* factors weigh against Movants.

### A. The requested testimony regarding Montgomery's history is more conveniently obtained from Montgomery and is unreasonably duplicative of such testimony.

To the extent that Movants seek non-privileged information regarding "Montgomery's past and work for the federal government," Mem. 5, such information is far more conveniently obtained from Montgomery himself. "Where potentially important legal rights are implicated by a subpoena and alternative sources are more convenient or less burdensome, those alternatives should be explored first." *Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 339 (cleaned up). Indeed, "[c]ourts generally refuse to compel the deposition of a government witness if the [requesting party] may obtain discovery by an alternative and less burdensome method to the government." *Gomez v. City of Nashua*, 126 F.R.D. 432, 436 (D.N.H. 1989).

Montgomery is clearly a more convenient, less burdensome, and more logical source regarding his own history than DNI Negroponte, who had no association with him beyond

asserting the states-secret privilege in *eTreppid*. Indeed, Movants have apparently already subpoenaed Montgomery. *See* Montgomery's Mot. to Restrict, *eTreppid*, No. 6-cv-56 (D. Nev. Nov. 14, 2022), ECF No. 1236 at 3 (requesting the court lift the Protective Order to allow Montgomery to comply with subpoena from Movants issued in *US Dominion, Inc.*, and attaching subpoena as exhibit).

Moreover, Negroponte's testimony is "unreasonably cumulative and duplicative" of the testimony already sought from Montgomery. *Am. Fed'n of State, Cnty. & Mun. Emps.*, 2022 WL 3655277, at *3 (citation omitted); *see also* Fed. R. Civ. P. 26(b)(1); *accord Watts*, 482 F.3d at 509. DNI Negroponte certainly cannot provide any information regarding Montgomery's own history beyond what Montgomery himself can provide. *See, e.g.*, *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 54 (D.D.C. 2017) (granting motion to quash testimony subpoena as unreasonably cumulative and duplicative where requestor "already . . . had an opportunity to obtain that information from a first-hand source").

**B. The requested testimony is not proportional to the needs of the case.**

The requested discovery is not proportional to the needs of the case for several reasons. Preliminarily, the requested testimony provides "slim chance of a 'likely benefit,'" *Diamond Servs. Mgmt. Co., LLC*, 339 F.R.D. at 340 (citing Fed. R. Civ. P. 26(b)(1)), given its irrelevance to the defenses in *US Dominion*, as explained above, *see supra* § I. Any "speculative benefit" therefore does not outweigh "the burden to the parties and to the court's resources." *Harrington v. Bergen Cnty.*, No. 14-cv-5764, 2017 WL 4387373, at *2 (D.N.J. Oct. 3, 2017) (affirming denial of discovery "concerning an unrelated criminal investigation that occurred nearly nine years ago" on the basis of proportionality and undue burden).

Moreover, "there is a presumption against deposing high-ranking government officials" like DNI Negroponte. *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (quoting *Kelley v. FBI*, No. CV 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015)); *see also In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (issuing a writ of mandamus to prevent the forced deposition of the Vice President's Chief of Staff). This presumption is equally applicable to both current and former officials. *See FDIC v. Galan-Alvarez*, No. 1:15-mc-00752, 2015 WL 5602342, at *3 (D.D.C. Sept. 4, 2015); *Newman*, 531 F. Supp. 3d at 188; *United States v. Wal-Mart Stores, Inc.*, No. 01-cv-152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002) ("Subjecting former officials['] decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service."). To justify compelling the testimony of a former high-ranking official, the moving party bears the burden of demonstrating the requisite "extraordinary circumstances," including either that the official has "unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Galan-Alvarez*, 2015 WL 5602342, at *3 (quoting *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)). Movants fail to demonstrate any such "extraordinary circumstances." *Id*.

In particular, Movants fail to show that DNI Negroponte has any knowledge related to the claims or defenses in *US Dominion*, *see supra* § I—much less "unique, first-hand knowledge," *Galan-Alvarez*, 2015 WL 5602342, at *3. Indeed, DNI Negroponte lacks any personal knowledge of the requested testimony categories, including whether Montgomery "participated in the development of" certain software that "was tested and found to work," was "developed and . . . operational prior to 2020," was "at some point passed into the possession of individuals outside

the CIA," and "was used to manipulate elections outside the United States prior to 2020." Subpoena 583. Contrary to Movants' assertions, the mere fact that DNI Negroponte stated that he gave "personal consideration" to the facts supporting the state-secrets assertion seventeen years ago has no bearing on his knowledge of these testimony categories. *See* Mem. 9. Nor does the face of DNI Negroponte's declaration in *eTreppid* indicate that DNI Negroponte ever had any association with Montgomery. *See generally* DNI Negroponte Decl. Nor have Movants shown that the information sought is necessary or that it cannot be obtained through other, less burdensome or intrusive means such as through Montgomery. *See supra* § II.A.

The requested discovery is also disproportionate to the needs of the case because it implicates Executive Branch privileges. Despite Movants' assurance that they seek testimony only as to "non-privileged information," Mem. 10, Movants seek information plainly covered by the *eTreppid* Protective Order. *Compare* Mem. 5 (seeking DNI Negroponte's testimony regarding "information concerning the software work Montgomery performed for the federal government while at eTreppid") *with* Protective Order ¶¶ 2–3 (protecting from discovery in *eTreppid* "the existence or non-existence of any actual or proposed relationship" between the *eTreppid* parties, including Montgomery, and any U.S. intelligence agency, and any "actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties").

The requested deposition topics therefore could implicate Executive Branch privileges, belying Movants' claims to the contrary. *See* Mem. 9 (seeking DNI Negroponte's testimony regarding his alleged "conclu[sion] that some aspect of [Montgomery's] work required invocation of the state secrets privilege"). This potentiality should be dispositive in the Rule 26

proportionality calculus when compared to the dubious relevance of the information sought.[3] *Cf. St. John*, 274 F.R.D. at 17 (deeming production of various medical records not proportional because of, *inter alia*, the "harm to the plaintiff's privacy interests from the disclosure"); *Vire v. Entergy Operations, Inc.*, No. 4:15-cv-214, 2016 WL 10576707, at *2 (E.D. Ark. Sept. 28, 2016) (balancing "the government's interest in confidentiality" against the plaintiff's need for certain "highly sensitive information" regarding nuclear power plants and finding "the need for confidentiality outweighs plaintiffs' need").[4]

Accordingly, consideration of the *Watts* factors therefore necessitates denying the instant motion as unduly burdensome.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Movants' motion to compel the testimony of John Negroponte.

Dated: September 4, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

---

[3] When a discovery request calls for the production of potentially privileged information, a court may consider questions of relevance before reaching assertions of privilege. *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 188, 192 (D.D.C. 1998) (finding requested information to be irrelevant, rendering it unnecessary to reach issue of presidential communications privilege, which had been bifurcated for later consideration). Thus, "matters of privilege"—including formal assertion of privilege—"can appropriately be deferred . . . until after the production demand has been adequately bolstered by a general showing of relevance and good cause." *Freeman v. Seligson*, 405 F.2d 1326, 1338 (D.C. Cir. 1968).

[4] Although Movants emphasize the large amount in controversy in *US Dominion*, that factor alone cannot overcome the weight of the grounds for denying the testimony.

/s/ *Cassandra Snyder*
CASSANDRA SNYDER, DC Bar #1671667
SAMUEL REBO, DC Bar #1780665
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W.
Washington, DC 20005
Tel (202) 451-7729
Email: cassandra.m.snyder@usdoj.gov

*Counsel for United States*