IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MY PILLOW, INC., et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:21-cv-00445-CJN <br> Judge Timothy J. Kelly |

**Defendants' Reply Memorandum in Support
of Motion to Compel Deposition of John Negroponte**

Defendants seek to use the ordinary tools of discovery to establish facts, in admissible form, showing the reliability and reasonableness of information that Michael Lindell received and relied upon when making the allegedly defamatory statements at issue in this lawsuit. The information Lindell relied upon concerns Dennis Montgomery, a former government contractor. In previous litigation, John Negroponte signed a declaration filed with a federal court in Nevada, addressing the relationship between Montgomery's company and the federal government – a relationship that gives credibility and substance to the information Lindell relied upon concerning Montgomery. It is unsurprising and routine that Defendants would pursue a simple deposition, without any associated document production, from Mr. Negroponte to establish the facts known by him concerning Montgomery.

The Government claims otherwise. In opposition to Defendants' motion to compel a deposition, the Government advances two objections: (1) relevance and (2) purported undue

burden. Neither is well founded. Defendants' motion to compel a deposition of Mr. Negroponte should be granted.

**I.     The Testimony Sought from Mr. Negroponte Is Relevant to Defendants' Defenses in the Underlying Litigation.**

The Government argues that Defendants' motion to compel Mr. Negroponte's deposition "does not seek any information bearing on the truth or reasonableness of the alleged defamatory statements" in this action. United States' Opp. to Defs.' Mot. to Compel 6 (ECF 191) ("Negroponte Opp."). According to the Government, if Mr. Negroponte does not have knowledge concerning the changing of votes on Dominion voting machines in the 2020 election, his testimony is "irrelevant on its face." *Id*.

The Government's conclusion does not follow from its premises. Lindell's declaration explains that he made the statements at issue in the Complaint in reliance on information that Lindell received about the work of Dennis Montgomery. Decl. of Michael Lindell ¶ 2-4 (ECF 183-2) ("Lindell Decl."). The information Lindell received showed that Montgomery developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries. Lindell Decl. ¶ 2. Lindell also learned that the government had intervened in Montgomery's previous litigation to protect information that was designated as state secrets, and that Montgomery's programming work was one of the state secrets. *Id*.

Negroponte's knowledge corroborating the information Lindell relied on concerning Montgomery, and Negroponte's knowledge about Montgomery that tends to strengthen the plausibility and likelihood of the information that Lindell relied upon, is relevant to the defenses that Lindell did not defame Dominion and lacked "actual malice" when he spoke about Dominion. *See* Defs.' Mem. in Support of Mot. to Compel Deposition Testimony of John Negroponte

("Memo.") at 2-5. Montgomery has a history of performing work for the United States Government while at eTreppid, Montgomery has stated that his work for the Government included election monitoring and interference, and hacking into voting machine equipment, and Negroponte in 2006 signed two declarations based on his "careful and actual personal consideration" of information related to eTreppid's work for the Government. The Government cannot, as a logical or practical matter, show that Negroponte has **no** relevant information (about Montgomery), merely by asserting that Negroponte lacks **one kind** of relevant information (about changing of votes in the 2020 election). Lindell's defenses against the defamation claims brought against him by Dominion are strengthened by information concerning the software work Montgomery performed for the federal government while at eTreppid, about which Negroponte has knowledge.

The Government characterizes Defendants' expectations concerning Negroponte's testimony as "unfounded speculation." Negroponte Opp. at 6. The characterization is incorrect. Defendants' expectations concerning the testimony are based upon the events surrounding the *eTreppid* litigation, documented in the *eTreppid* litigation filings themselves, and are based on two declarations executed by Mr. Negroponte himself in connection with the *eTreppid* litigation (one publicly available, one that was apparently provided to the *eTreppid* court *ex parte*, *in camera*). Contrary to the Government's assertions, Defendants' expectations concerning Mr. Negroponte's testimony are not "speculation" or "unfounded suspicion." A deposition of Mr. Negroponte is necessary to "flesh out [the] pattern of facts already known," *see* Negroponte Opp. at 6 (quoting *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs ("In re Veterans Affairs")*), 257 F.R.D. 12, 17 (D.D.C. 2009)), from Mr. Negroponte's previous declarations, Montgomery's previous declaration, other facts surrounding the *eTreppid* litigation, and other information Defendants have gathered concerning Montgomery's activities.

3

The Government concludes its relevance argument with a reference to Defendants' efforts to obtain relief directly from the *eTreppid* court. Negroponte Opp. 7. This paragraph doubly misleads. First, the *eTreppid* Order did not, as the Government implies, limit Defendants' ability to obtain the discovery it now seeks, or in any way rule upon the relevance of that discovery in *this* action. In fact, just the opposite—the *eTreppid* Court concluded that Lindell lacked standing to intervene in the *eTreppid* matter because the *eTreppid* protective order in question "does not apply to non-party Lindell or any litigation other than the eTreppid case," and because "The United States also confirmed that Lindell 'is not subject to the protective order . . . and that the protective order does not apply to any litigation' other than the eTreppid case." Order at 3 & n.9, ECF 1265, *Montgomery v. eTreppid Techs.*, no. 3:06-cv-00056-MMD-CSD (D. Nev. Aug. 4, 2023). The basis for the *eTreppid* Order denying Lindell's motion to intervene was that the *eTreppid* Protective Order did not restrict Lindell's efforts to obtain relevant discovery in this case, or any other, in any way, pursuant to the Nevada Court's own analysis and the Government's representations to the Nevada Court. The Nevada Court did not reach any conclusions concerning the relevance of information related to *eTreppid* to Lindell's defenses in *this* action.

Second, the Government asserts that the "*eTreppid* court . . . explain[ed] that any alleged connection between the Protective Order and Montgomery's 'information' is 'non-existent or tenuous at best.'" Negroponte. Opp. at 7. This assertion is incorrect. The quoted language from the Nevada Court did not address Lindell's motion to intervene at all, and it did not address whether information Lindell received about Montgomery was relevant to this defamation action. On the contrary, the Nevada Court stated that there was a "non-existent or tenuous" connection between the Nevada Protective Order and *Dennis Montgomery's requested relief* that was "broadly premised on the government's 'unlawful surveillance of U.S. citizens' and past 'outrageous

4

treatment of Montgomery.'" Order at 5, ECF 1265, *Montgomery v. eTreppid Techs.*, no. 3:06-cv-00056-MMD-CSD (D. Nev. Aug. 4, 2023). The Government transmutes the Nevada Court's discussion of one thing (the Nevada Protective Order and a separate motion brought by Montgomery) into something entirely different (a purported commentary on the connection between Lindell's defenses in this action and the information Lindell received about Montgomery). This transmutation is baseless and substantially mischaracterizes the Nevada Court's August 4, 2023 Order.

It is not true that Defendants' motion "does not seek any information bearing on the truth or reasonableness of the alleged defamatory statements[.]" *See* Negroponte Opp. 6. Lindell relied on information about and from Montgomery when making the alleged defamatory statements. Negroponte possesses information to confirm and corroborate the information that Lindell relied upon. "The general threshold for relevancy is 'Lilliputian.'" *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 338 (D.D.C. 2021) (quotation omitted). Mr. Negroponte's testimony is relevant.

II.     **The Testimony Sought from Mr. Negroponte Is Not Unduly Burdensome.**

The Government's other argument against the subpoena to Mr. Negroponte is an assertion that compelling the deposition of an individual former government employee would impose an undue burden upon the United States. Negroponte Opp. at 8. The Government's points are specifically addressed below, but as a general matter the Government's position strains credulity. Deposition of a former employee, without any production of documents, is a burden neither excessive nor unusual. Non-party depositions are a routine part of civil litigation. Fed. R. Civ. P. 45(c). *E.g. In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 345 (E.D. La. 2006) ("This Court does not see how the deposition of one employee during non-working hours would cripple the FDA's ability to function"). With respect to subpoenas *duces tecum*, this Court has required the

5

Government when claiming undue burden to provide estimates of the number of hours that subpoena compliance would require, and has "categorically rejected" arguments of burdensomeness that do not provide such information. *Association of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993); *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C. 2000) ("bare assertions of a burden" amounting to "thousands of person hours" "do not satisfy the specificity requirement of an undue burden objection" because "a specificity requirement deters the government from thwarting any search it dislikes or disagrees with.") (Quotation marks omitted). The Government has made no comparable showing here.

When a litigant seeks deposition testimony from a government employee, district courts apply an undue burden analysis. *Watts v. SEC*, 482 F.3d 501, 508-509 (D.C. Cir. 2007). The applicable factors in this undue burden analysis include the costs imposed on third parties, whether the discovery is unreasonably cumulative or duplicative, whether the discovery is available from another, less burdensome source, whether the burden outweighs its likely benefit in consideration of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *Id*. at 509. The Government argues that a deposition of Mr. Negroponte would be unduly burdensome to the United States based on some of these specific considerations. Negroponte Opp. 8-12. As shown below, the Government's arguments fail to show any undue burden.

**A. The Subpoena Is Not Unreasonably Cumulative.**

The Government argues that testimony sought from Mr. Negroponte concerns information that should instead be obtained from Montgomery. Negroponte Opp. 8-9. However, the Government does not show that Montgomery's knowledge is identical to Mr. Negroponte's knowledge. The Government also fails to show that testimony from a former Government employee would have the same character, quality, credibility, and perspective as testimony from

Montgomery. It is not the case that testimony from Mr. Negroponte is interchangeable with testimony from Montgomery.

One of the cases cited by the Government affirms exactly this conclusion. In *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*, 2022 U.S. Dist. LEXIS 152629, *14-15, No. 1:21-mc-133 (D.D.C. Aug. 25, 2022) ("*AFSCME*"), this Court permitted a subpoena for trial testimony issued to a non-party's chief of staff and counsel, notwithstanding that another individual who was involved in the decision at issue had already testified at a deposition. The Court explained that the sought testimony from the chief of staff and counsel would "either corroborate . . . or contradict" the testimony of the other witness, and "No one can state with certainty" that the other witness could "fully explain" the decision. *See id.* at *15. In the same opinion, the Court quashed a subpoena for trial testimony by the president of the labor union, because there was no evidence that the president participated in the decision other than to approve the determination made by others. *Id.* at *17-18. *AFSCME* shows that obtaining testimony from multiple individuals involved in an incident, but from different perspectives, is permissible. The important question is whether the prospective deponent had direct involvement and personal knowledge of relevant issues. Here, Mr. Negroponte does, as shown by the declaration he signed.

The Government also relies upon *Diamond Servs.*, in which the court held that a party should seek patent-related discovery from *the opposing party* or the *opposing party's outside counsel* rather than a non-party. 339 F.R.D. at 339-40. Here, the Government argues that Defendants should instead seek discovery from a different non-party instead of Mr. Negroponte. Negroponte Opp. at 8-9. The same argument could equally be made by non-party Montgomery himself. The rules of discovery do not require parties to chase around a circle of non-parties, each pointing to another non-party, in pursuit of evidence. Rather, a party may depose a non-party who

7

possesses relevant information. *See* Fed. R. Civ. P. 45(c). Indeed, a party may take the deposition of more than one person who has knowledge of the facts surrounding a particular subject, to gather as evidence the knowledge of *both* individuals.

The Government cites *Gomez v. City of Nashua*, 126 F.R.D. 432, 436 (D.N.H. 1989), but *Gomez* is far from on point, and is contrary to the D.C. Circuit's decision in *Watts*. In *Gomez*, a plaintiff sought to depose the prosecuting attorney in a criminal investigation. 126 F.R.D. at 435. The New Hampshire federal court declined to permit this, in part because the plaintiff could instead depose a doctor who worked with the prosecutor on the case. *Id*. at 436. In any event, the undue burden analysis required *Watts* rules out any purported rule argued by the Government here to allegedly preclude the deposition of a government employee. *See* 482 F.3d at 508-509.

The Government also cites *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 54 (D.D.C. 2017). Negroponte Opp. at 9. In *Breiterman*, the court quashed a subpoena for testimony by a US Capitol Police employee where the subpoena sought to "retread topics that have been explored at depth with USCP witnesses," and where the witness lacked "personal knowledge of the relevant topics." *Id.* at 54. At most, *Breiterman* would support the conclusion that Defendants cannot depose a high-ranking federal employee who lacks personal knowledge of relevant events to obtain testimony concerning the same matters already covered at depth in testimony by multiple other federal employees who had personal knowledge. But that is not the case here. The Government does not identify (nor could it) any other federal employee who has already testified concerning the matters about which Defendants seek to question Mr. Negroponte.

Dennis Montgomery does not possess Mr. Negroponte's knowledge concerning the Government's efforts with respect to Montgomery, nor the same perspective as Mr. Negroponte on those efforts. Moreover, Defendants seek to establish the Government's connection to

Montgomery through testimony by the Government's employees themselves. This is a fundamentally different type of evidence than statements by Montgomery, which Plaintiffs in this case will likely attack at trial as hearsay, or self-interested, or self-serving, or inaccurate. Defendants are not obligated to rely only on evidence from a non-government source, when they seek to establish facts about the Government's own activities.

The Government has not shown, and cannot show, that the testimony Defendants seek to obtain from Mr. Negroponte is of comparable nature, perspective, quality, content, and character as testimony they may be able to obtain from Montgomery. Just as the party in *AFSCME* was permitted to obtain deposition testimony to complement the testimony already obtained, Defendants are entitled to obtain Mr. Negroponte's testimony here.

**B.  The Sought Testimony Is Proportional to the Needs of the Case.**

The Government's final argument is that a deposition of Mr. Negroponte is not "proportional to the needs of the case." Negroponte Opp. 9. In substance, the Government's claim is that a deposition not requiring any production of documents, intended to seek information alluded to in the deponent's prior sworn declaration and in the sworn declaration of another individual (Montgomery), is not proportional to the needs of a case where the plaintiffs claim more than $1 billion in damages.  *See id*. at 9-12. The Government's claim is patently wrong.

The Government advances specific reasons to support its proportionality argument. It says there is "slim chance" of likely benefit "given its irrelevance to the defenses" of Defendants. Negroponte Opp. 9 (quotation omitted). As discussed above, there is clear and direct relevance between the testimony of Mr. Negroponte, based on the information in his prior declaration, and Defendants' defenses concerning the accuracy, reliability, and plausibility of the information about Montgomery that Lindell relied upon.

9

The Government cites a "presumption against deposing high-ranking government officials." Negroponte Opp. 10. As shown in Defendants' opening memorandum, the subpoena to Mr. Negroponte meets the applicable conditions for a deposition of a former high-ranking government official. Memo. at 8-9. Mr. Negroponte's prior declaration shows his personal knowledge about the matter, and the declaration does not identify any other person who could testify concerning his personal knowledge. The Government's Opposition Memorandum does not identify any other person who could so testify. *See* Negroponte Opp. 10-11.

The Government asserts "Executive Branch privileges" as a basis for precluding deposition of Mr. Negroponte. Negroponte Opp. 11-12. The Government cites no authority to describe the basis, scope, or existence of the "privilege" it claims. *Id*. Its attempt to rely on an unspecified, untethered, amorphous claim of privilege establishes no basis to quash a subpoena. Speculation that a deposition "could implicate" an executive branch privilege at some point is not a basis to prevent a deposition. *See id.* at 11. The appropriate way to handle the *possibility* of questions concerning a matter subject to a hypothetical executive branch privilege is to assert an objection during the deposition, not to throw the baby out with the bathwater by refusing the deposition entirely.

The Government also attempts to rely on the Protective Order in the *eTreppid* litigation itself, *id*. at 11, but the Nevada court, at the Government's prompting, recently made unmistakably clear that the *eTreppid* Protective Order "does not apply to non-party Lindell or any litigation other than the eTreppid case." Order at 3, ECF 1265, *Montgomery v. eTreppid Techs.*, no. 3:06-cv-00056-MMD-CSD (D. Nev. Aug. 4, 2023). *See also id.* at 3 n.9 ("The United States also confirmed that Lindell 'is not subject to the protective order . . . and that the protective order does not apply to any litigation' other than the eTreppid case."). The Government's position concerning the

applicability of the *eTreppid* Protective Order shifts depending on the date and the proceeding at issue. The Government argues both that the *eTreppid* Protective Order has no applicability outside of the *eTreppid* litigation (in Nevada), and also that the *eTreppid* Protective Order prevents the discovery sought by Defendants in this action (here). The Government cannot reasonably rely on mutually contradictory positions.

Notably, the Government's brief does not expressly argue that the testimony sought from Mr. Negroponte would implicate any state secrets privilege – perhaps because "the Supreme Court has made clear that '[the state secrets privilege] is not to be lightly invoked'" and "may not be used to shield any material not strictly necessary to prevent injury to national security; and, whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983). The *eTreppid* Protective Order has no application to this action or the Defendants' efforts to engage in discovery in this action.

The cases cited by the Government on this point are not comparable to the facts here. In " *St. John v. Napolitano*, 274 F.R.D. 12, 14 (D.D.C. 2011), the Court considered whether allegations of emotional distress automatically waive the psychotherapist-patient privilege, and concluded that some of the plaintiffs' "relevant, non-privileged medical records must be produced." Here, Defendants are not attempting to obtain discovery of privileged information, nor has the Government actually identified any privileged information covered by the deposition topics. In *Vire v. Entergy Operations, Inc.*, 2016 U.S. Dist. LEXIS 193784, *2, No. 4:15-cv-214, (E.D. Ark. Sept. 28, 2016), the court concluded that production of "security measures at nuclear power plants" needed not be produced because the party seeking production "have yet to articulate which particular policies might be helpful to their case." Here, Defendants are not seeking production of

documents, and they have described the topics of the deposition testimony they seek. *See* Parker Decl. Ex. O, Ex. A (ECF 183-4 at 579-83).

### C. A Deposition of Mr. Negroponte Imposes No Undue Burden.

The Government's brief ignores or mentions only in passing several of the necessary factors in an assessment of whether a subpoena imposes undue burden. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). The omitted considerations weigh heavily in favor of compelling Mr. Negroponte's deposition:

- The sheer size of the claims brought against Defendants make this a case worthy of discovery efforts far in excess of the ordinary course;

- The cost imposed on the Government and on Mr. Negroponte by Defendants' subpoena is minimal – an ordinary deposition, limited to the topics stated in the Defendants' *Touhy* statement, without any associated document production;

- The likely benefit of the discovery sought – factual matters unavailable elsewhere that support one of the Defendants' key defenses – far surpasses the burden imposed by a deposition;

- The federal government does not lack sufficient resources to provide the requested deposition;

- The issues at stake in the litigation concern matters of public elections and speech about public elections, which impart public significance much greater than an ordinary commercial dispute.

Against all these considerations the Government's only arguments against the deposition are an incorrect assertion that Mr. Negroponte's information is not relevant to Defendants'

defenses, and an incorrect assertion of undue burden that rests on speculation and contradiction of the Government's own representations about the *eTreppid* Protective Order.

The deposition of Mr. Negroponte sought by Defendants is appropriate and justified under the Federal Rules of Civil Procedure. The Court should compel the deposition.

DATED:  September 11, 2023                **PARKER DANIELS KIBORT LLC**

                    By */s/ Andrew D. Parker*
                        Andrew D. Parker (D.C. Bar No. 63279)
                        888 Colwell Building
                        123 N. Third Street
                        Minneapolis, MN 55401
                        Telephone: (612) 355-4100
                        Facsimile: (612) 355-4101
                        parker@parkerdk.com

*Counsel for Defendant Michael Lindell*

                    By */s/ Andrew D. Parker*
                        Andrew D. Parker (D.C. Bar No. 63279)
                        Joseph A. Pull (D.C. Bar No. 982468)
                        888 Colwell Building
                        123 N. Third Street
                        Minneapolis, MN 55401
                        Telephone: (612) 355-4100
                        Facsimile: (612) 355-4101
                        parker@parkerdk.com
                        pull@parkerdk.com

*Counsel for Defendant My Pillow, Inc.*