IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., et al. | ) |
| Plaintiffs, | ) Case No. 1:21-cv-00445-CJN |
| | ) Judge Timothy J. Kelly |
| v. | ) |
| MY PILLOW, INC., et al. | ) |
| Defendants. | ) |

**Defendants' Reply Memorandum in Support of
Motion to Compel Deposition of Carlotta Wells**

Defendants seek to use the ordinary tools of discovery to establish facts, in admissible form, showing the reliability and reasonableness of information that Michael Lindell received and relied upon when making the allegedly defamatory statements at issue in this lawsuit. The information relied upon by Lindell concerns Dennis Montgomery, a former government contractor whom Carlotta Wells interacted and communicated with over a period of several years. It is unsurprising and routine that Defendants would pursue a simple deposition, without any associated document production, from Ms. Wells to establish the facts known by her concerning Montgomery.

The Government claims otherwise, arguing that Ms. Wells's knowledge is immune from discovery. In this endeavor, the Government advances mutually contradictory positions and contends this litigation over civil claims exceeding $1 billion in alleged damages is too trivial to justify the discovery of relevant facts known by Ms. Wells.

The Government initially objected to Defendants' subpoena to Ms. Wells on a multitude of grounds. *See* Defs.' Mem. in Support of Mot. to Compel Subpoena Compliance by Carlotta

Wells ("Mot.") at 9-14 (ECF 182-1); Decl. of Andrew D. Parker ("Parker Decl.") (ECF 182-3) & Ex. M (ECF 182-4 at 557). In opposition to Defendants' motion to compel a deposition, the Government has now reduced its objections to two: (1) relevance and (2) purported undue burden. *See* United States' Opp. to Defs.' Mot. to Compel ("Wells Opp.") (ECF 190). Neither is well founded. Defendants' motion to compel a deposition of Ms. Wells should be granted.

> **I.      The Testimony Sought from Ms. Wells Is Relevant to Defendants' Defenses in the Underlying Litigation.**

In about two pages of conclusory text, the Government asserts that Ms. Wells's testimony is not relevant to any claim or defense in the defamation action. Wells Opp. 6-8. The Government argues that the "assertion of the state-secrets privilege in *eTreppid* has no bearing whatsoever on the issues in *US Dominion*." *Id*. at 7. This argument is doubly misleading.

First, the Government's argument omits that Defendants seek testimony from Ms. Wells well beyond the simple "assertion of the state-secrets privilege in *eTreppid*." To Defendants' knowledge and belief, Ms. Wells can testify about her efforts to monitor Montgomery and intervene in his court proceedings both inside and outside the *eTreppid* case, through at least 2011; her efforts to seize documents from Montgomery's attorneys for review in 2010; statements she made to Montgomery that provide information about the significance of Montgomery's work; the general scope of Montgomery's work that she prevented from public disclosure; and the accuracy of information about Montgomery that appears in publicly available documents. *See* Mot. at 7-8. The Government's assertion that Ms. Wells's testimony is not relevant depends upon improperly ignoring a multitude of reasons the testimony is relevant and mischaracterizing the testimony as merely the narrow "assertion of the state-secrets privilege in *eTreppid*."

Second, the Government is wrong when it claims that the assertion of the state secrets privilege in *eTreppid* is not, in itself, relevant to Defendants' defenses in this action. The allegedly

defamatory statements at issue were made by Lindell based in part on his conclusion that information he received concerning the work of Montgomery was reliable. Decl. of Michael Lindell ("Lindell Decl.") ¶¶ 2-4 (ECF 182-2); *see* Compl. ¶ 74 (ECF 1); Mot. at 2-3. The information Lindell received showed that Montgomery developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries. Lindell Decl. ¶ 2. Lindell also learned that the government had intervened in Montgomery's previous litigation to protect information that was designated as state secrets, and that Montgomery's programming work was one of the state secrets. *Id*. The Government's assertion of the state secrets privilege in *eTreppid* greatly supports and strengthens the veracity and reliability of information that Lindell relied upon concerning Montgomery – directly addressing the issue of whether it was "inherently improbable" for Lindell to believe this, an issue already identified by the Court as important in this action. *See* Mem. Op. at 24-25 (ECF 54).

The Government concludes its relevance argument with a reference to Defendants' efforts to obtain relief directly from the *eTreppid* court. Wells Opp. at 8. This paragraph doubly misleads again. First, the *eTreppid* Order concluded that Lindell lacked standing to intervene in the *eTreppid* matter because the *eTreppid* protective order in question "does not apply to non-party Lindell or any litigation other than the eTreppid case," and because "The United States also confirmed that Lindell 'is not subject to the protective order . . . and that the protective order does not apply to any litigation' other than the eTreppid case." Order at 3 & n.9, ECF 1265, *Montgomery v. eTreppid Techs.*, No. 3:06-cv-00056-MMD-CSD (D. Nev. Aug. 4, 2023) ("Nevada Order"). The basis for the *eTreppid* Order denying Lindell's motion to intervene was that the *eTreppid* Protective Order did not restrict Lindell in any way, pursuant to the Nevada Court's own analysis and the

3

Government's representations to the Nevada Court. The Nevada Court did not reach any conclusions concerning the relevance of information related to *eTreppid* to Lindell's defenses in *this* action.

Second, the Government asserts that the "*eTreppid* court . . . explain[ed] that any alleged connection between the Protective Order and Montgomery's 'information' is 'non-existent or tenuous at best[.]'" Wells. Opp. at 8. This assertion is egregiously wrong. The quoted language from the Nevada Court did not address Lindell's motion to intervene, and it did not address whether information Lindell received about Montgomery was relevant to this defamation action. On the contrary, the Nevada Court stated that there was a "non-existent or tenuous" connection between the Nevada Protective Order and *Dennis Montgomery's requested relief* that was "broadly premised on the government's 'unlawful surveillance of U.S. citizens' and past 'outrageous treatment of Montgomery.'" Nevada Order at 5. The Government improperly transmutes the Nevada Court's discussion (of the Nevada Protective Order and a separate motion brought by Montgomery) into a purported commentary on the connection between Lindell's defenses in this action and the information Lindell received about Montgomery. The transmutation is baseless and substantially mischaracterizes the Nevada Court's August 4, 2023 Order.

It is not true that Defendants' motion "does not seek any information bearing on the truth or reasonableness of the alleged defamatory statements[.]" *See* Wells Opp. at 7. Lindell relied on information about and from Montgomery when making the alleged defamatory statements. Wells possesses information to confirm and corroborate the information that Lindell relied upon. Her testimony is relevant to "'flesh out a pattern of facts already known[.]'" *See* Wells Opp. at 7 (quoting *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs* ("*In re Veterans Affairs*"), 257 F.R.D. 12, 17 (D.D.C. 2009)).

4

## II. The Testimony Sought from Ms. Wells Is Not Unduly Burdensome.

The Government's other argument against the subpoena to Ms. Wells is the assertion that compelling an individual government employee to provide deposition testimony would impose an "undue burden upon the United States[.]" Wells Opp. at 8. The Government's points are specifically addressed below, but as a general matter the Government's position strains credulity. Deposition of one employee, without any production of documents, is a burden neither excessive nor unusual. Non-party depositions are a routine part of civil litigation. *See* Fed. R. Civ. P. 45(c). *E.g. In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 345 (E.D. La. 2006) ("This Court does not see how the deposition of one employee during non-working hours would cripple the FDA's ability to function"). With respect to subpoenas *duces tecum*, this Court has required the Government when claiming undue burden to provide estimates of the number of hours that subpoena compliance would require, and has "categorically rejected" arguments of burdensomeness that do not provide such information. *Assoc. of Am. Physicians & Surgeons v. Clinton*, 837 F. Supp. 454, 458 n.2 (D.D.C. 1993); *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 207 (D.D.C. 2000) ("bare assertions of a burden" amounting to "thousands of person hours" "do not satisfy the specificity requirement of an undue burden objection" because "a specificity requirement deters the government from thwarting any search it dislikes or disagrees with."). The Government has made no comparable showing here.

The Government asserts that "a court's obligation to avoid imposing undue burden is 'particularly acute' when a third-party subpoena is directed toward the United States," Wells Opp. at 6 (citing *In re Veterans Affairs*, 257 F.R.D. at 18), but this assertion mischaracterizes the authority cited by the Government. The *In re Veterans Affairs* Court cited *Watts v. SEC*, 482 F.3d 501, 508-509 (D.C. Cir. 2007), as the basis for a "particularly acute" obligation to quash or modify a subpoena not merely when any subpoena is directed toward the United States, but rather "lest

5

public resources be commandeered for private purposes." 257 F.R.D. at 18. Defendants do not seek to commandeer public resources here, and their subpoena to Wells is supported by the law set forth in *Watts*, which balances "the litigant's right to evidence" against the government's desire to avoid discovery requests. *See* 482 F.3d at 509.

The Government argues that a deposition of Ms. Wells would be unduly burdensome to the United States based on various specific considerations. Wells Opp. 9-13. As shown below, the Government's arguments fail to show any undue burden.

### A. The Subpoena Does Not "Commandeer."

The Government first argues that merely because Ms. Wells is employed by the Department of Justice a deposition would "improperly 'commandeer[]' government resources." Wells. Opp. at 8 (quotation omitted). All depositions of non-parties require the time and attention of the non-party, and yet the Federal Rules of Civil Procedure provide for non-party depositions. *See Brown v. U.S. VA*, 2017 U.S. Dist. LEXIS 134556,*17-20, No. 2:17-cv-1181-TMP (N.D. Ala. Aug. 22, 2017) ("A witness's disinterest in someone else's lawsuit does not absolve him of providing his evidence. . . . making Dr. Khan available for a deposition on purely factual matters does not expend VA resources in a private matter anymore than the expense incurred by any disinterested witness. The resources of the VA are not being placed at the disposal of the private plaintiff, but only in compliance with a general duty to provide evidence."). It is a "fundamental principle that 'the public . . . has a right to every man's evidence,'" and "Exceptions 'to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth.'" *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950) and *United States v. Nixon*, 418 U.S. 683, 710 (1974)) (other quotation omitted). Contrary to the

6

Government's implication, there is no blanket rule that government employees are exempt from providing deposition testimony like any non-government employee. *E.g. In re Vioxx*, 235 F.R.D. at 344-46; *Robbins v. Wilkie*, 289 F. Supp. 2d 1307, 1311 (D. Wyo. 2003) (requiring depositions of four Bureau of Land Management employees); *Brown*, 2017 U.S. Dist. LEXIS 134556 at *17-20 (requiring deposition of federal employee in personal injury action against drug manufacturer).

When a litigant seeks deposition testimony from a government employee, district courts apply an undue burden analysis that considers *both* "the litigant's right to evidence and the 'government's interest in not being used as a speakers' bureau for private litigants.'" *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping*, 34 F.3d at 779). The applicable factors in this undue burden analysis include the costs imposed on third parties, whether the discovery is unreasonably cumulative or duplicative, whether the discovery is available from another, less burdensome source, whether the burden outweighs its likely benefit in consideration of the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *Id*. at 509. Ms. Wells is not exempt from giving testimony at a deposition merely because she works for the federal government.

### B.  The Subpoena Is Not Speculative.

As discussed above, the testimony sought by Defendants from Ms. Wells supports the veracity and probability of the allegedly defamatory statements by Lindell – a central issue in this matter. It is not speculation by Defendants to seek Ms. Wells's deposition.

With respect to the "speculative" argument, the Government advances mutually contradictory positions. The Government would have the Court believe that the subpoena to Ms. Wells is *both* based on "unfounded speculation," Wells Opp. at 7, and "cumulative of information

7

in the public record," *id.* at 9. Both cannot be true; if information is established by the public record, it is not speculative. In any event, neither assertion by the Government is correct. Rather, the subpoena relies on publicly available information to show that the testimony it seeks is <u>not</u> speculative. This foundation far exceeds the threshold for obtaining discovery under Fed. R. Civ. P. 26(b).

C. **The Subpoena Is Not Unreasonably Cumulative.**

The Government argues that testimony sought from Ms. Wells concerns information already in the public record. Wells Opp. 9-11. The Government's claim omits two necessary considerations. First, merely because *some* of the subject matter may be general information already public does not mean that *most or all* of Ms. Wells's testimony is already publicly established. Public sources show in general terms what Ms. Wells's testimony is likely to be, but that is not the same thing as proving what her testimony is. A conventional purpose of discovery is to obtain under oath confirmation of information that is known or suspected to be true based on information already available. Such a purpose is not "unreasonably cumulative." *Cf. In re Vioxx*, 235 F.R.D. at 346 ("None of the documents provided by the FDA can express [] Dr. Graham's opinion with the clarity and tone as he personally can in his deposition. Furthermore, considering that Dr. Graham's congressional testimony was not subject to cross-examination by any party in this litigation, it is doubtful such testimony would be admissible at trial.").

Second, as alluded to by the *Vioxx* decision, the fact that information is publicly *available* does not guarantee the information is judicially *admissible*. *Id*. Defendants have a right to use the tools of discovery to obtain information they can admit at trial. It is uncertain, at best, whether the information Defendants have gathered from publicly available sources is admissible. Deposition testimony would solve this problem. Defendants are not obligated to wait until trial to find out

whether the trial court will permit admission of documents from other proceedings, rather than simply taking a deposition to establish facts in an admissible form now. The Government cites authority to show that public records "may" be given judicial notice, Wells Opp. at 10-11, but that authority does not give Defendants adequate assurance that public records Defendants possess *will* be given judicial notice, or that public records will be made available to the jury at trial. *E.g. Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) ("This court has for various purposes taken judicial notice of court records from other cases. For example, in *Jankovic v. International Crisis Group* . . . a defamation case, we drew on a filing in an unrelated case as a record of what was said. But we did not, and could not, rely on it for the truth of the matter asserted. *Id*.; see 21B Fed. Prac. & Proc. Evid. § 5106.4 (2d ed.) ('[A] court cannot take judicial notice of the truth of a document simply because someone put it in the court's files.')") (internal citation omitted).

The Government cites *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 42 (D.D.C. 2015), but the cited portion of that decision concerned *document* subpoenas, where the subpoena recipient agreed to provide a "breadth of documents" in response to the subpoena, but not all documents requested. Wells Opp. at 11. The *Colonial BancGroup* court's decision not to compel *additional* production of *documents* provides no support to the Government's argument here that *no deposition* of Ms. Wells should occur. The two situations are fundamentally different. Defendants are seeking deposition testimony, not documents, and Defendants do not yet have any deposition testimony from Ms. Wells.

The Government has not identified, and cannot identify, any reason to conclude that Ms. Wells's testimony would be limited *only* to information available elsewhere, nor any reason to conclude that the existence of documents whose admissibility as evidence is questionable should preclude Defendants from obtaining her deposition testimony.

### D.  The Sought Testimony Is Not Available Elsewhere.

The Government asserts that Defendants should seek testimony instead from Dennis Montgomery. Wells Opp. 11-12. The authority cited by the Government for this proposition is *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear*, 339 F.R.D. 334, 339 (D.D.C. 2021). In *Diamond Servs.*, the court held that a party should seek patent-related discovery from *the opposing party* or the *opposing party's outside counsel* rather than a non-party. *Id*. at 339-340. Here, the Government argues that Defendants should seek discovery from a different non-party instead of Ms. Wells. The same argument could equally be made by non-party Montgomery himself. The rules of discovery do not require parties to chase around a circle of non-parties, each pointing to another non-party, in pursuit of evidence. Rather, a party may depose a non-party who possesses relevant information. *See* Fed. R. Civ. P. 30(a)(1) ("A party may … depose *any person* … [and t]he deponent's attendance may be compelled by subpoena under Rule 45.").

One of the cases cited by the Government affirms exactly this conclusion. *See* Wells Opp. at 11-12. In *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Project Veritas Action Fund*, 2022 U.S. Dist. LEXIS 152629, *13-16, No. 1:21-mc-133 (D.D.C. Aug. 25, 2022) ("*AFSCME*"), this Court enforced a subpoena for trial testimony issued to a non-party's chief of staff and counsel, notwithstanding that another individual who was involved in the decision at issue had already testified at a deposition.  The Court explained that the sought testimony would "either corroborate . . . or contradict" the previously obtained testimony, and "No one can state with certainty" that the individual who already testified could "fully explain" the decision. *See id.* at *15 (quotation marks omitted). In the same decision, the Court quashed a subpoena for trial testimony by the president of the labor union, because there was no evidence that the president participated in the decision other than to approve the determination made by others. *Id*. at *17-18. *AFSCME* shows

10

that obtaining testimony from multiple individuals involved in an incident, but from different perspectives, is permissible. The important question is whether the prospective deponent had direct involvement and personal knowledge of relevant issues.

The Government also cites *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 384 (D.D.C. 2011), for the proposition that a subpoena to former patent counsel was quashed where the respondent could instead depose the patent examiner and inventor to obtain information about what happened at a patent interview. Wells Opp. at 11. The subpoena in *Sterne* was issued to an opposing party's former attorney "on the same matter at issue in the pending litigation." *Sterne Kessler*, 276 F.R.D. at 384. That is not the case here, where Ms. Wells is not a former attorney of a party in the pending litigation, and where Defendants cannot simply depose Ms. Wells's client – the United States – in lieu of deposing her.

The Government also cites *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 54 (D.D.C. 2017). Wells Opp. at 12. In *Breiterman*, the court quashed a subpoena for testimony by a US Capitol Police employee where the subpoena sought to "retread topics that have been explored at depth with USCP witnesses," and the witness lacked "personal knowledge of the relevant topics." 323 F.R.D at 54. At most, *Breiterman* would support the conclusion that Defendants cannot depose a high-ranking federal employee who lacks personal knowledge of relevant events, to obtain testimony concerning the same matters already covered in testimony by multiple other federal employees who had personal knowledge. *See id.* But that is not the case here. The Government does not identify (nor could it) any other federal employee who has already testified concerning the matters Defendants seek to question Ms. Wells about.

Dennis Montgomery does not have Ms. Wells's knowledge concerning the Government's efforts with respect to Montgomery, nor the same perspective as Ms. Wells on those efforts, since

11

Montgomery was adverse to Ms. Wells in their interactions. Montgomery was the recipient of some of Ms. Wells's efforts to limit his testimony and seize his lawyers' records – not the author of the efforts. Moreover, Defendants seek to establish the Government's efforts concerning Montgomery through testimony by the Government's employees themselves. This is a fundamentally different type of evidence than statements by Montgomery, which Plaintiffs in this case will likely attack at trial as hearsay, or self-interested, or self-serving, or inaccurate. Defendants are not obligated to rely only on evidence from a non-government source, when they seek to establish facts about the Government's activities.

The Government has not shown, and cannot show, that the testimony Defendants seek to obtain from Ms. Wells is of comparable nature, perspective, quality, content, and character as testimony they may be able to obtain from Montgomery. Just as the party in *AFSCME* was permitted to obtain deposition testimony to complement the testimony already obtained, Defendants are entitled to obtain Ms. Wells's testimony here.

### E.  No Executive Branch Privilege Precludes the Sought Testimony.

The Government's final argument is a slew of assertions about "Executive Branch privileges" that purportedly prevent Ms. Wells from testifying. Wells Opp. 12-13. The Government's assertions provide no basis to excuse Ms. Wells from giving a deposition. Moreover, the Government's argument contradicts its own position elsewhere in its brief.

First, the Government claims, "Movants seek information covered by the *eTreppid* Protective Order." Wells Opp. 12. However, the Government has admitted, and the Nevada court affirmed, that the *eTreppid* Protective Order "'clearly and unambiguously states that it only binds the parties in the *eTreppid* lawsuit and the proceedings in the *eTreppid* case,' and thus 'has no bearing on Lindell's ability to defend himself in an unrelated defamation lawsuit in another

12

district.'" *Id*. at 10 n.3 (quoting Nevada Order at 3). The *eTreppid* Protective Order <u>does not affect Defendants' gathering of evidence in this action</u>.

The Government's attempt to have its cake and eat it, too, with respect to the *eTreppid* Protective Order is unfair, unreasonable, and improper. Depending on the circumstances, the Government argues both that the *eTreppid* Protective Order has <u>no</u> applicability outside of the *eTreppid* litigation, *see id.*, and also that the *eTreppid* Protective Order prevents the discovery sought by Defendants in this action, *see id.* at 12. The Government cannot reasonably rely on mutually contradictory positions. Notably, the Government's brief does not argue that the testimony sought from Ms. Wells would implicate any state secrets privilege – perhaps because "the Supreme Court has made clear that '[the state secrets privilege] is not to be lightly invoked'" and "may not be used to shield any material not strictly necessary to prevent injury to national security; and, whenever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir. 1983).

Second, the Government speculates that the "deposition topics therefore could implicate Executive Branch privileges, belying Movants' claims to the contrary." Wells Opp. at 12. The Government does not articulate what "Executive Branch privileges" it relies upon, the scope of those privileges, any authority for the existence of the privileges, or any reason to conclude that testimony by Ms. Wells would infringe upon such privileges. None of the cases cited by the Government in this argument explicate any executive privilege. The Government's argument boils down to speculation about vaguely referenced privileges precluding vaguely referenced testimony. Speculation that a deposition "could implicate" an executive branch privilege at some point is not a basis to prevent a deposition. It is clear that Defendants' deposition topics concern matters that

13

are not subject to executive privilege, since the topics pertain to matters that happened in non-confidential settings. *See* Mot. at 7 (ECF 182-1). The appropriate way to handle the *possibility* of questions concerning a matter subject to a hypothetical executive branch privilege is to assert an objection during the deposition, not to throw the baby out with the bathwater by refusing the deposition entirely.

Third, the Government speculates that "any deposition would require Wells to engage in 'painstaking' parsing of testimony to avoid disclosure of potentially privileged information[.]" Wells Opp. at 13. Such speculation is, again, not a basis to preclude a deposition. Furthermore, the Government's fears of "painstaking" analysis are greatly exaggerated. The list of deposition topics concerns matters of public record or public interactions – matters which could not conceivably be subject to any privilege because they occurred in front of the public eye. *See* Mot. at 7-8 (ECF 182-1); Parker Decl. at Ex. K, Ex. 2 (ECF 182-4 at 344). The Government's guesses about the alleged complexity of a deposition of Ms. Wells are not a reasonable basis to preclude the deposition.

The cases cited by the Government on this point are not comparable to the facts here. In "*St. John v. Napolitano*, 274 F.R.D. 12, 14 (D.D.C. 2011), the Court considered whether allegations of emotional distress automatically waive the psychotherapist-patient privilege, and concluded that some of the plaintiffs' "relevant, non-privileged medical records must be produced." Here, Defendants are not attempting to obtain discovery of privileged information, nor has the Government actually identified any privileged information covered by the deposition topics.

In *Vire v. Entergy Operations, Inc.*, 2016 U.S. Dist. LEXIS 193784, *10, No. 4:15-cv-214 (E.D. Ark. Sept. 28, 2016), the court concluded that production of "security measures at nuclear power plants" needed not be produced because the parties seeking production "have yet to

articulate which particular policies might be helpful to their case." Here, Defendants are not seeking production of documents, they have described with appropriate specificity the topics of the deposition testimony they seek, and the Government has failed to sufficiently articulate any true burden.

In *Sterne*, the Court concluded that a party could not obtain a deposition of a party's former counsel "without specifying precisely what information is sought or the benefit of that information" sufficiently to outweigh the burden of the proposed discovery. *Sterne*, 276 F.R.D. at 385. Here, Defendants do not seek to depose a party's former counsel, and they have specified the topics of the deposition.

The last case cited by the Government on this issue is *United States v. All Assets Held in Account No. 80020796*, 2019 U.S. Dist. LEXIS 805 (D.D.C. Jan. 3, 2019). Wells Opp. at 13. In that case, a party sought to depose the opposing party's trial counsel, whose involvement in the matter "stem[med] solely from his investigation and litigation of the underlying events as counsel, not from any involvement in the events that underlie this action themselves." *All Assets*, 2019 U.S. Dist. LEXIS at *16-17. That is not remotely the case here. Ms. Wells does not represent any party in this case, and Defendants seek to depose her based on her involvement, without any role in this action, in the underlying events.

The Government's privilege protestations are unfounded. This Court has previously ordered the depositions of Department of Justice attorneys for evidence to be used in a separate civil case. *Cavanaugh v. Wainstein*, 2007 U.S. Dist. LEXIS 40242, *34-37, No. 05-123 (GK) (D.D.C. June 4, 2007). The Government has not identified any reason that this case should be different, instead offering only generalized, vague speculations.

**F. A Deposition of Ms. Wells Imposes No Undue Burden.**

The Government's brief ignores or mentions only in passing several of the necessary factors in an assessment of whether a subpoena imposes undue burden. *See Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007). The omitted considerations weigh heavily in favor of compelling Ms. Wells's deposition:

- The sheer size of the claims brought against Defendants make this a case worthy of discovery efforts far in excess of the ordinary course;
- The cost imposed on the Government and on Ms. Wells by Defendants' subpoena is minimal – an ordinary deposition, limited to the topics stated in the Defendants' *Touhy* statement, without any associated document production;
- The likely benefit of the discovery sought – factual matters unavailable elsewhere that support one of the Defendants' key defenses – far surpasses the burden imposed by a deposition;
- The federal government does not lack sufficient resources to provide the requested deposition;
- The issues at stake in the litigation concern matters of public elections and speech about public elections, which impart public significance much greater than an ordinary commercial dispute.

Against all these considerations the Government's only arguments against the deposition are an incorrect assertion that Ms. Wells's information is not relevant to Defendants' defenses, and an incorrect assertion of undue burden that rests on speculation and contradiction of the Government's own representations about the *eTreppid* Protective Order.

The deposition of Ms. Wells sought by Defendants is appropriate and justified under the Federal Rules of Civil Procedure. The Court should compel the deposition.

DATED: September 11, 2023　　　　　　　**PARKER DANIELS KIBORT LLC**

　　　　　　　　　　　　　　　　　　　By */s/ Andrew D. Parker*
　　　　　　　　　　　　　　　　　　　　Andrew D. Parker (D.C. Bar No. 63279)
　　　　　　　　　　　　　　　　　　　　888 Colwell Building
　　　　　　　　　　　　　　　　　　　　123 N. Third Street
　　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55401
　　　　　　　　　　　　　　　　　　　　Telephone: (612) 355-4100
　　　　　　　　　　　　　　　　　　　　Facsimile: (612) 355-4101
　　　　　　　　　　　　　　　　　　　　parker@parkerdk.com

　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Michael Lindell*

　　　　　　　　　　　　　　　　　　　By */s/ Andrew D. Parker*
　　　　　　　　　　　　　　　　　　　　Andrew D. Parker (D.C. Bar No. 63279)
　　　　　　　　　　　　　　　　　　　　Joseph A. Pull (D.C. Bar No. 982468)
　　　　　　　　　　　　　　　　　　　　888 Colwell Building
　　　　　　　　　　　　　　　　　　　　123 N. Third Street
　　　　　　　　　　　　　　　　　　　　Minneapolis, MN 55401
　　　　　　　　　　　　　　　　　　　　Telephone: (612) 355-4100
　　　　　　　　　　　　　　　　　　　　Facsimile: (612) 355-4101
　　　　　　　　　　　　　　　　　　　　parker@parkerdk.com
　　　　　　　　　　　　　　　　　　　　pull@parkerdk.com

　　　　　　　　　　　　　　　　　　　*Counsel for Defendant My Pillow, Inc.*