# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **US DOMINION INC., et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**MY PILLOW INC., et al.,**<br><br>**Defendants.** | **Civil Action No.**<br><br>**1:21-cv-445-TJK-MAU** |

## MEMORANDUM OPINION

Defendants My Pillow, Inc. and Michael Lindell (collectively, "Lindell") move to compel third parties Carlotta Wells ("Wells") and John Negroponte ("Negroponte") to comply with deposition subpoenas. *See* ECF No. 182; ECF No. 183. The United States, on behalf of Wells and Negroponte, opposes Lindell's motions and contests the subpoenas. *See* ECF No. 190; ECF No. 191.[1] For the reasons set forth below, Lindell's motions are **DENIED**.[2]

## BACKGROUND

### Dominion Litigation

Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation (collectively, "Dominion") have sued Lindell for defamation and deceptive trade practices related to statements Lindell allegedly made regarding the 2020 U.S. presidential election. *See generally* Compl. (ECF No. 1). Dominion alleges that Lindell made defamatory statements across multiple platforms and falsely claimed that, through its voting machines,

---

[1]     The Court also considered Lindell's Reply briefs at ECF No. 193 and ECF No. 194.
[2]     The District Judge presiding over this case referred the motions at ECF Nos. 182 and 183 to this Court on December 12, 2023. *See* 12/12/2023 Minute Order in 1:21-cv-445.

Dominion manipulated votes to steal the election. *See* ECF No. 190 at 5–6 (citing Compl. ¶¶ 165, 167).[3]  According to Dominion, Lindell intentionally spread this false information to "sell pillows." *Id.*

### Information Lindell Allegedly Heard During the 2020 U.S. Election

Lindell defends against this suit, in part, by arguing his statements were true. *See* ECF No. 182-2 at 1.  He claims that he received information from other people, and then directly from Dennis Montgomery ("Montgomery"), that led him to make these statements. *See* ECF No. 182-1 at 2 (referencing Lindell Decl. ¶¶ 2, 3).  According to Lindell, Montgomery had provided computer programming services many years ago to the U.S. government through the contract Montgomery's company, eTreppid, had with the federal government. *Id.*  Lindell claims he heard that "Montgomery had developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries." *Id.*  Lindell further alleges that "he heard that Montgomery's election-manipulating software was obtained by persons in China, and that Montgomery obtained copies of internet transmissions showing the software was used by persons in China to change votes in the 2020 presidential election." *Id.*  According to Lindell, his knowledge about Montgomery's "history of working for the United States government was one of the reasons [he] believed the information he learned about Montgomery." *Id.*  Lindell asserts that he reasonably relied on this information in making the statements Dominion claims are defamatory. *See* ECF No. 194 at 4.

### eTreppid Litigation

In 2006, Montgomery sued eTreppid and his business partner over disputes they had about the company. *See* ECF No. 190 at 6; *see generally* Compl. (ECF No. 1) in *Montgomery v. eTreppid*

---

[3]      Citations reference page numbers in ECF headers.

*Technologies, Inc.*, No. 3:06-cv-0056 (D. Nev.) ("*eTreppid* Litigation"). Montgomery brought claims including copyright infringement, breach of contract, breach of fiduciary duty, fraud and conversion. *See id.* Montgomery also asserted claims against the U.S. Department of Defense ("DOD"). *See* ECF No. 190 at 6–7 (citing First Am. Compl. in *eTreppid*, 6-cv-56; ECF No. 7 ¶¶ 68–74). Specifically, Montgomery sought declaratory relief that would have allowed him to disclose certain information in the *eTreppid* Litigation notwithstanding him having signed a classified information nondisclosure agreement with the DOD. *Id.* The court ultimately dismissed Montgomery's claims against the United States. *See id.* at 7.

While the United States' motion to dismiss was pending, it sought a protective order prohibiting disclosure of the existence of any relationship between the *eTreppid* Parties (which included Montgomery) and the U.S. government or any intelligence agency interest in or use of source code over which eTreppid claimed ownership. *See id.* (citing ECF No. 83-1 in *eTreppid*, 6-cv-56). The court granted the government's motion for protective order. *See id.* (citing ECF No. 253 in *eTreppid*, 6-cv-56).

**Wells and Negroponte**

Wells is currently an Assistant Branch Director at the United States Department of Justice ("DOJ"). *See* ECF No. 190 at 6. She previously served as Senior Trial Counsel of the Federal Programs Branch in the Civil Division at DOJ. *See id.* Negroponte is the former Director of National Intelligence ("DNI"). *See* ECF No. 191 at 5. Until the subpoenas at issue, Wells and Negroponte were not involved in the *Dominion* Litigation. None of the statements at issue in Dominion's Complaint reference Wells or Negroponte. *See generally* Compl.

Wells and Negroponte were involved in the *eTreppid* Litigation on behalf of the United States. *See generally* ECF No. 182; ECF No. 183; ECF No. 190; ECF No. 191. Wells signed the

motion for protective order on behalf of the United States.  *See* ECF No. 182-1 at 3–4.  In support

of its motion, the United States submitted a declaration from Negroponte setting forth the

foundation for the government's assertion of the state secrets privilege.  *See* ECF No. 191 at 7

(referring to ECF No. 83-2 ("DNI Negroponte Decl.")).  Wells subsequently sought to enforce the

protective order by ensuring Montgomery complied with it at various proceedings.  *See* ECF No.

182-1 at 4–5.  This included: Wells appearing at two hearings in 2008 and one hearing in 2011 in

which Montgomery testified; being involved in the DOJ's "security review" of materials taken

from Montgomery; and, according to Lindell, threatening Montgomery with treason charges if he

violated the protective order.  *See id.*  Many of these alleged interactions are based on declarations

that Montgomery himself filed in various proceedings.  *See id.*  Lindell does not allege that

Negroponte had any similar ongoing contact with Montgomery.  *See* ECF No. 183-1 at 4–5.

### The Subpoenas at Issue

On November 17, 2022, Lindell served a subpoena on Negroponte to provide deposition

testimony in the *Dominion* litigation.  *See* ECF No. 183-4 at 576.  Lindell seeks testimony from

Negroponte that:

> (1) Mr. Montgomery participated in the development of software technology that
> can be used to penetrate electronic election equipment and manipulate vote totals;
> (2) this technology was tested and found to work;
> (3) the technology was developed and was operational prior to 2020;
> (4) the technology at some point passed into the possession of individuals outside
> the CIA; and
> (5) the technology was used to manipulate elections outside the United States prior
> to 2020.

*Id.* at 579–583.

The United States objected based on the *Touhy* regulations of the Office of the Director of

National Intelligence, asserting that: (1) "[n]o extraordinary circumstances exist[ed] to compel the

deposition of an apex official; (2) the requested testimony would pose an undue burden; and (3)

the requested testimony is not authorized to the extent it seeks privileged information." *Id.* at 601–604.[4]

On February 19, 2023, Lindell also subpoenaed Wells to provide testimony in the *Dominion* Litigation. *See* ECF No. 182-4 at 317. Among other things, Lindell seeks testimony from Wells that:

> (1) Mr. Montgomery worked on U.S. government programs that involved information protected by the State Secrets Privilege;
> (2) the federal government undertook active measures to prevent Mr. Montgomery from disclosing state secrets, including seizing documents from his attorney, attending his deposition, and attending court hearings at which he testified;
> (3) Ms. Wells engaged in conversations with Mr. Montgomery on multiple occasions regarding the State Secrets Privilege and what information Mr. Montgomery was permitted to disclose or prohibited from disclosing; and
> (4) the United States Government's desire to protect State Secret information held by Mr. Montgomery continues today.

*Id.* at 344–47.

The United States objected based on DOJ's *Touhy* regulations, asserting that: (1) the testimony sought is neither relevant nor proportional to the needs of this case; (2) the testimony is not authorized to the extent it seeks information subject to a protective order in the *eTreppid* Litigation; (3) Wells lacks personal information about the testimony sought and there is a more convenient source; and (4) the testimony is not authorized to the extent it seeks privileged information. *See id.* at 558–562.[5] Lindell filed these motions to compel on August 7, 2023. *See* ECF No. 182; ECF No. 183.

---

[4]    The ODNI considered Lindell's subpoena pursuant to 5 U.S.C. § 301 (general housekeeping statute), *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and its *Touhy* regulations set forth at 32 C.F.R. Part 1703. *See* ECF No. 183-4 at 601.

[5]    Similarly, the DOJ considered Lindell's subpoena of Wells pursuant to 5 U.S.C. § 301, *Touhy*, 340 U.S. at 462, and its *Touhy* regulations set forth at 28 C.F.R. § 16.21 *et seq.* *See* ECF No. 183-4 at 558–59.

**LEGAL STANDARD**

Rule 45 governs third party subpoenas.  *See generally* Fed. R. Civ. P. 45.  When a third party lodges timely objections to a subpoena, the serving party "may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B).  When considering a motion to compel under Rule 45, a court "must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined by Rule 26(b)(1)."  *See BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018); *Hesco Bastion Ltd. v. Greenburg Traurig LLP*, Case No. 09-cv-0357, 2009 WL 5216932, *3 (D.D.C. Dec. 23, 2009) ("No requirement of relevance is included in the text of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1).").  The serving party bears the burden to establish relevance.  *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007).  If relevance is established, the Court considers objections to the subpoena under Rule 45, including whether the subpoena requests privileged material or would cause an undue burden on the third party.  *See Buzzfeed*, 318 F. Supp. at 356.  It falls on the objecting party to show that compliance would pose an undue burden.  *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

Federal Rule of Civil Procedure 26(b) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Pursuant to the 2015 amendments to Rule 26, discovery must be both relevant and proportional based on a number of enumerated factors.[6]  This Court has recognized that "relevance

---

[6]     This includes: "(1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the importance of the discovery in resolving the issues; and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed R. Civ. P. 26(b)(2).

is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).[7]  That said, "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Alexander v. F.B.I.*, 186 F.R.D. 12, 19 (D.D.C. 1998) (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)) (alteration in original).

In addition to Rule 26's relevance requirement, a court considering a motion to compel under Rule 45 must also deny a motion if the subpoena "call[s] for privileged matter or would cause an undue burden." *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007).  According to Rule 26(b), whether discovery poses an undue burden depends on whether the discovery is "unreasonably cumulative or duplicative"; "obtainable from another source that is more convenient, less burdensome, or less expensive"; and whether the "burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)–(2); *see also Watts*, 482 F.3d at 509.

---

[7]     As the Advisory Committee noted, "[t]he change does not place on the party seeking discovery the burden of addressing all proportionality consideration" and "the parties' responsibilities would remain" as they had been prior to the 2015 amendment.  Fed. R. Civ. P. 26 Advisory Committee Note; *see also Goodwin v. District of Columbia*, Case No. 21-cv-806, 2021 WL 1978795 (D.D.C. May 18, 2021) (citing Fed. R. Evid. 401) ("Yet, information may qualify as relevant . . . if it has 'any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'").

Federal agencies have authority to enact regulations for responding to a subpoena served on a federal official.  *See* 5 U.S.C. § 301; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (upholding the Attorney General's authority to "prescribe regulations not inconsistent with law for the custody, use, and preservation of the records, papers, and property pertaining to the Department of Justice"); *see e.g.*, *Agility Public Warehousing Company K.S.C.P. v. U.S. Department of Defense*, 246 F. Supp. 3d 34, 41 (D.D.C. 2017) (describing agency authority to enact *Touhy* regulations).[8]  Although an agency's *Touhy* regulations are relevant for an agency to determine how to respond to a subpoena, those regulations do not "alter the procedures set forth in the Federal Rules of Civil Procedure or []preclude the production of documents 'that are relevant to a judicial proceeding.'"  *S.E.C. v. Selden*, 484 F. Supp. 2d 105, 107 (D.D.C. 2007) (*citing Touhy*, 340 U.S. at 468).  Rules 45 and 26 give reviewing courts the "tools . . . [to] adequately protect both the litigant's right to evidence and the 'government's interest in not being used as a speakers' bureau for private litigants.'"  *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

## DISCUSSION

## I.   Lindell Fails to Show the Testimony is Relevant

Lindell argues that the testimony he seeks from Wells and Negroponte is relevant because "information about Montgomery's past and work for the federal government tends to support the statements Lindell made."  ECF No. 182-1 at 2.  Specifically, Lindell argues that he "anticipate[s] that another central issue [of this case] will be the reasonability/plausibility/inherent improbability

---

[8]      As opposed to state court litigants, federal court litigants "can seek to obtain the production of documents from a federal agency by means of a federal subpoena."  *Houston Business J., Inc. v. Office of the Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

of the information on which [he] relied when making the allegedly defamatory statements."[9]  *Id.*
at 9–10.  Lindell claims the testimony he seeks from Wells and Negroponte will "corroborate" the
information upon which Lindell relied when he made the statements at issue in Dominion's
Complaint.  *Id.* at 11.

With respect to Wells, Lindell argues that he does not merely seek privileged or
confidential information, but rather seeks testimony that goes beyond Wells' role in asserting the
state secrets privilege in the *eTreppid* Litigation.  *See* ECF No. 182-1 at 9–11; ECF No. 194 at 2–
4.  Lindell lists examples of Wells interacting with Montgomery from approximately 2006 through
2011.  *See* ECF No. 194 at 2.  All of these alleged interactions, however, still relate to the protective
order the United States obtained in the *eTreppid* Litigation and the government's enforcement of
this order.  *See id.*  Lindell also asserts that the Wells subpoena is necessary because Dominion
may object to evidence regarding Montgomery at trial.  *See* ECF No. 182-1 at 9.

With respect to Negroponte, Lindell does not argue that there are a series of interactions
between Negroponte and Montgomery stemming from the *eTreppid* Litigation.  *See* ECF No. 193
at 2–5.  Therefore, Lindell's argument rests entirely on Negroponte signing two declarations in

---

[9]      Lindell cites the Court's Memorandum Opinion at ECF No. 54 at 25 for the proposition
that the Court has already "identified this issue as important to this case," referring to the
"reasonability/plausibility/inherent improbability of the information on which Lindell relied when
making the allegedly defamatory statements."  ECF No. 182-1 at 9–10; *see also* ECF No. 194 at
3.  In the cited Opinion, the Court denies Lindell's Motion to Dismiss and discusses the
reasonability of Lindell's statements and assertions, noting: "a reasonable juror could conclude
that the existence of a vast international conspiracy that is ignored by the government but proven
by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would
believe it" and that "Dominion alleges other facts that make those claims even more obviously
improbable."  ECF No. 54 at 25.  Nowhere in the Opinion does the Court identify Lindell's reliance
on things he learned about or from Montgomery as a central issue in this case.  The Court especially
does not identify any supposed relationship between Montgomery and the United States related to
the *eTreppid* Litigation as even tangential to a central issue in this case.  *See generally id.*  In fact,
the Opinion does not mention Montgomery, his relationship with the U.S. Government, or the
*eTreppid* Litigation.  *See id.*

2006 "based on his 'careful and actual personal consideration' of information related to eTreppid's work for the Government." *Id.* at 3. Again, Lindell asserts that this testimony is relevant because "Negroponte's knowledge corroborating the information Lindell relied on concerning Montgomery, and Negroponte's knowledge about Montgomery that tends to strengthen the plausibility and likelihood of the information that Lindell relied upon, is relevant to the defenses that Lindell did not defame Dominion and lacked 'actual malice' when he spoke about Dominion." *Id.* at 2.

The United States argues that Lindell's subpoena to Wells is "irrelevant on its face" as Lindell does not seek to compel any information bearing on the truth or reasonableness of the actual alleged defamatory statements in this case. *See id.* According to the United States, Lindell does not assert that Wells has any personal knowledge of the "truth or reasonableness of any of the alleged defamatory statements." ECF No. 190 at 11. The United States argues that the Court should draw the "'crucial distinction' [here] between permitting discovery to 'flesh out a pattern of facts already known' and 'the illegitimacy of permitting discovery against a third party premised on an unfounded suspicion' as here." *Id.* (quoting *In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 17 (D.D.C. 2009)). As such, the United States argues that the requested discovery would delve into "the shadow zones of relevancy and [] explore matter which does not presently appear germane on a theory that it may conceivably become so." *Id.* at 10 (citing *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. Mar. 31, 2011)).

The Court agrees with the United States. The testimony that Lindell seeks from Wells and Negroponte is not relevant to a claim or defense in the *Dominion* Litigation. First, as Lindell does not dispute, Wells and Negroponte do not have any personal or direct knowledge regarding the allegedly defamatory statements at issue. At most, because Lindell claims that he made his

statements about Dominion in part based on what he "heard" from and about Montgomery related to Montgomery's work with the U.S. Government, the only potential knowledge that Wells and Negroponte possess is information from almost twenty years ago about Montgomery's work with the U.S. Government in an unrelated matter.  *See generally* ECF No. 182-1; ECF No. 183.  This information would, according to Lindell, corroborate or help make his reliance on information he heard from and about Montgomery more reasonable.  Setting aside the fact that Wells and Negroponte's role in this case is attenuated at best, a central problem with Lindell's theory is that he does not claim that he actually relied on the information he now seeks back when he made statements about Dominion during the 2020 U.S. election.

Put another way, testimony from Wells and Negroponte about why the United States sought and enforced a protective order in unrelated litigation almost 20 years ago is irrelevant to this case because it is not the actual basis for Lindell's statements about Dominion vis-à-vis the 2020 election.  That Lindell did not seek to verify the information he "received" and "heard" about Montgomery's work with the U.S. Government when making his statements related to the 2020 U.S. election does not now make that information relevant.  *See e.g.*, *Alexander*, 186 F.R.D. at 20 (finding irrelevant discovery requests for information and documents related to the White House recording system that went beyond how individuals may have been able to enter the White House to probing "technical and operational subject matter and capabilities of White House security.").  Nor does Lindell provide any authority for the proposition that he can rely on information discovered years after he made the statements to justify whether his conduct was "reasonable" under the circumstances as they existed at the time he made the statements.  In sum, Lindell has failed to establish the requested discovery is relevant in to any claim or defense.

**II.      The Deposition Subpoenas Impose an Undue Burden on Wells and Negroponte**

Even assuming the information Lindell seeks to compel from the third parties were relevant, Wells and Negroponte have shown that the subpoenas would pose an undue burden and should, therefore, be quashed.

The United States argues that the possible benefit of Wells and Negroponte's testimony to Lindell's case is highly speculative and is strongly outweighed by the burden of providing such testimony; the testimony would be cumulative of information already on the public record; would duplicate any testimony from Montgomery; and can be obtained much more conveniently from Montgomery himself. *See generally* ECF No. 190 at 12–16; ECF No. 191 at 12–16. *See id.* Additionally, the United States argues that compelling Wells, a high-level DOJ official, to testify in this matter would improperly commandeer government resources. *See* ECF No. 190 at 12–16. Finally, the United States objects to the subpoenas to the extent they would require Wells and Negroponte to testify about information protected by executive privilege, the state secrets privilege, attorney-client privilege, and the attorney work product protection. *See id.* at 16–18. The United States argues that, despite Lindell's assurances that the subpoena does not seek privileged information, many of the topics Lindell outlined in the subpoena go to the very heart of information that the federal court protected in the *eTreppid* protective order. *See id.*; ECF No. 182-4 at 347, 558 (pointing out that Lindell seeks testimony including "(1) Mr. Montgomery worked on U.S. Government programs that involved information protected by the State Secrets Privilege; (3) Ms. Wells engaged in conversations with Mr. Montgomery on multiple occasions regarding the State Secrets Privilege and what information Mr. Montgomery was permitted to disclose or prohibited from disclosing; (4) the United States Government's desire to protect State Secret information held by Mr. Montgomery continues today."); 183-4 at 582–83 (asserting that

"Mr. Negroponte possess[es] knowledge of Mr. Montgomery's activities at eTreppid performed in connection with the CIA" and seeking testimony including that these activities include "(1) . . . development of software technology that can be used to penetrate electronic election equipment and manipulate vote totals.").

Lindell makes a number of arguments in opposition.  He claims that the subpoenas would not pose an undue burden because the discovery sought is proportional to the needs of the case; Wells and Negroponte have personal knowledge of the issues; and there is no more convenient source to obtain the information.  *See* ECF No. 182-1 at 8–14; ECF No. 183-1 at 7–11.  According to Lindell, these depositions are proportional because they are "single deposition[s]" and "the stakes of the case are high."  ECF No. 182-1 at 10.  Lindell points out that Dominion seeks $1.3 billion in damages in the underlying case.  *Id.*  Lindell asserts that Wells' response to his subpoena confirms she has knowledge about the topics in the subpoena.  *See* ECF No. 182-1 at 12; ECF No. 193 at 9.  He further argues that there are no better sources to testify about Wells and Negroponte's actions in the *eTreppid* Litigation besides themselves.  *See* ECF No. 182-1 at 12–13; ECF No. 193 at 5–12.  Additionally, Lindell argues that, because the United States previously took the position that the *eTreppid* protective order was irrelevant to the *Dominion* Litigation, the government can no longer object to the subpoenas on the grounds that they seek privileged information.  ECF No. 182-1 at 12–13.

The United States has met its burden to show that compliance with the subpoenas would pose an undue burden on Wells and Negroponte.  As noted above, the information that Lindell relied on to make his statements during the 2020 U.S. election is known to Lindell and was known to Lindell at the time of the 2020 U.S. election.  To the extent anything Lindell heard from or about individuals including Montgomery is relevant to the determination of whether Lindell's statements

were reasonable, any relevant testimony would be from Montgomery and the other individuals who provided information about Montgomery to Lindell—not U.S. Government officials who were involved in the unrelated *eTreppid* Litigation nearly two decades ago. *See Watts*, 482 F.3d at 509 ("[D]iscovery under Rules 26 and 45 must properly accommodate the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.") (internal citations omitted). Therefore, Montgomery and the other sources of the information, not Wells and Negroponte, are the most convenient source for this information. In fact, Lindell has access to and has already elicited statements from Montgomery about his alleged work for the U.S. Government many years ago. *See* ECF No. 182-2 (Lindell Declaration); ECF No. 182-4 at 103–11 (Montgomery 08/19/2022 Decl.); ECF No. 182-1 at 2–5 (referencing other testimony from Montgomery in 2008, 2011, and 2015 attached as exhibits to Lindell's Motion).

Moreover, because Lindell asserts that he only seeks non-privileged and public information from Wells and Negroponte, any testimony they provide would unnecessarily duplicate the information on which Lindell actually relied to make statements about Dominion during the election.[10] Necessarily, the value that Lindell placed on information he gained from and about Montgomery and any alleged work Montgomery did with the U.S. Government depended on information Lindell learned from sources other than Wells and Negroponte. That, alone, provides the benchmark against which the reasonableness of his reliance and statements should be measured, not any post-hoc information Lindell may seek from Wells and Negroponte to now

---

[10] Because Lindell repeatedly assures that he only seeks *non-privileged* information, and because the Court concludes that the testimony Lindell seeks is irrelevant and poses an undue burden, the Court does not separately reach the question of whether such testimony would be shielded by privilege. *See* ECF No. 193 at 11 ("Here, Defendants are not attempting to obtain discovery of privileged information. . ."); ECF No. 194 at 14.

bolster or "corroborate" his reliance many years ago. Accordingly, the testimony Lindell seeks simply does not warrant the undue burden on the government officials to sit for depositions about unrelated litigation from 2006 which implicates privileged information, including information subject to the state secrets privilege.

## CONCLUSION

For the reasons set forth above, Lindell's motions to compel testimony from third parties Wells and Negroponte are **DENIED**.

Date: June 7, 2024

_____
MOXILA A. UPADHYAYA
United States Magistrate Judge