UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| US DOMINION, INC., DOMINION VOTING SYSTEMS, INC., and DOMINION VOTING SYSTEMS CORPORATION,<br><br>*Plaintiffs/Counter-Defendants*,<br><br>vs.<br><br>MY PILLOW, INC., *Defendant/Counter-Claimant*.<br><br>MICHAEL J. LINDELL, *Defendant/Counter-Claimant/Third-Party Plaintiff*,<br><br>vs.<br><br>SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., SGO CORPORATION LIMITED, and HAMILTON PLACE STRATEGIES, LLC,<br><br>*Third-Party Defendants*. | Case No. 21-cv-445-CJN |

### SMARTMATIC'S RESPONSE TO LINDELL'S BRIEF TO SHOW CAUSE AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR CONTEMPT AND REQUEST FOR FEES

Third-Party Defendants Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited (collectively, "Smartmatic") respectfully respond to Michael J. Lindell's January 19, 2026 Response to this Court's Order to Show Cause.

This is a case of blatant disregard for this Court and its orders. Mr. Lindell has established a pattern of routinely ignoring this Court's orders and forcing Smartmatic, or the Court, to repeatedly chase him to get them enforced. And even when he does respond, Mr. Lindell simply makes self-serving claims of poverty—bereft of any actual evidence in support—thereby delaying enforcement. Smartmatic has now been seeking relief for Mr. Lindell's frivolous claims against them for nearly four years – through initial motions to dismiss in 2022, sanctions motions, efforts

1

to reduce the award to judgment, and contempt proceedings for non-compliance. Mr. Lindell's instant response demonstrates precisely what Smartmatic foresaw: a claim of inability to pay born of disregard for this Court's orders, rather than genuine financial hardship. Mr. Lindell will not pay unless and until the Court compels him to do so through contempt. Without meaningful enforcement, a litigant who files frivolous claims faces no real consequences: dismissal, yes, but no financial accountability if he simply refuses to pay sanctions and forces his opponent to shoulder the burden of collection.

Mr. Lindell has weaponized the civil litigation process. By refusing to obey orders, he forces Smartmatic to expend resources while he simultaneously layers on inflammatory accusations and baseless claims as distraction. What makes this brazen is that he has not honestly claimed indigence. Mr. Lindell offers no *evidence* but rather provides merely an unsupported statement of insufficient funds. He provides neither documentation nor explanation for failing to deposit the funds into escrow as directed. In the year since the Court set the sanctions amount, Mr. Lindell has raised hundreds of thousands of dollars for his legal defense. He continues to solicit donations for his various causes, and as recently as January 2026, he was observed traveling business class to a luxury ski resort town. His filing represents the latest iteration of a delay tactic spanning nearly five years. This is not an inability to pay. It is a calculated refusal to pay. Only the threat of contempt will move him to comply.

## BACKGROUND

At the start of this action, Plaintiffs US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation (collectively, "Dominion") brought defamation claims against Lindell and MyPillow in connection with their claims about the 2020 presidential election. (ECF No. 1.)

On December 1, 2021, Lindell filed an Answer, Counterclaims, and Third Party Complaint, which included the assertion of five new claims against Smartmatic: (1) violation of the Support and Advocacy Clause; (2) participation in a civil conspiracy with Dominion; (3) violation of the Equal Protection Clause and Due Process Clause under 42 U.S.C. § 1983; (4) violation of the First Amendment under Section 1983; and (5) RICO violations. (ECF No. 87.)

In response, Smartmatic moved to dismiss Lindell's third-party claims against it (ECF No. 94) and moved for sanctions against Lindell and his then-counsel, Douglas A. Daniels and Heath A. Novosad (ECF No. 118). On May 19, 2022, this Court dismissed all third-party claims against Smartmatic. (ECF No. 135.) In so doing, the Court "order[ed] Lindell and his previous counsel to pay some of the fees and costs Smartmatic has incurred defending itself and moving for sanctions under Rule 11" and ordered Smartmatic and Lindell to brief the appropriate measure of costs in light of the decision. (*Id.* at 30–31.) Smartmatic filed the requested supplemental fees briefing (ECF No. 137), as did Mr. Lindell and his counsel (ECF No. 140).

On January 13, 2025, this Court found the appropriate amount of sanctions to be $56,369, arising out of Smartmatic's costs of defending against the Support or Advocacy Support Clause claim that the Court had previously found to be frivolous. (ECF No. 234, hereinafter, "the Sanctions Order" or "Sanctions Award.") Accordingly, the Court "order[ed] Lindell to pay $56,369 to Smartmatic." (*Id.*) The Court further held that "[p]ending final judgment and appeal as to Lindell's counterclaims," the money was "to be held in escrow by Smartmatic's counsel, subject to an escrow agreement negotiated by the relevant parties." (*Id.*).

On January 14, 2025, counsel for Smartmatic contacted counsel for Lindell to discuss the escrow agreement. (Declaration of Timothy M. Frey ("Frey Decl.") ¶ 3, Ex. 1.) On January 29, 2025, counsel for Smartmatic provided counsel for Lindell with a draft Escrow Agreement

3

pursuant to which Smartmatic's counsel would hold the sanctions award issued by this Court until such time as judgment in this action becomes final and the time for appeal has passed. Smartmatic requested Lindell's comments or proposed edits. (Frey Decl. ¶ 4, Ex. 2.) On February 5, 2025, Mr. Lindell requested through counsel that the proposed agreement be modified to require payments of $5,000 per month as opposed to a lump sum payment of the entire sanctions award. (*Id.*)[1] Mr. Lindell did not provide any rationale, documentation or supporting evidence to Smartmatic evidencing a present inability to pay the ordered sum at one time. Mr. Lindell did not otherwise have any edits to the proposed agreement.

On February 21, 2025, Smartmatic indicated that it would not agree to such amendment to the Court's order and provided a finalized Escrow Agreement executed by both Smartmatic and Smartmatic's counsel. (*Id.*) Smartmatic conveyed its understanding that Lindell did not dispute the actual terms of the Escrow Agreement, but was otherwise refusing to execute the Agreement and pay the sanctions award. (*Id.*) On February 26, 2025, Smartmatic requested that Lindell inform it by February 28, 2025 whether he would execute the Agreement and pay the sanctions award.

On March 12, 2025, Smartmatic filed a Motion for Civil Contempt, asking the Court to hold Lindell in Civil Contempt for violating the January 13, 2025 Sanctions Order and issuing a remedy to coerce his compliance including but not limited to a *per diem* penalty. (ECF No. 235)

On April 16, 2025, the Court held a status conference to address the unpaid sanctions award. (April 16, 2025 Minute Entry). On April 18, 2025, Lindell submitted financial records to

---

[1] Mr. Lindell argues that this communication was protected by FRE 408 as a settlement communication. However, Smartmatic does not offer this communication as any evidence as to liability on the underlying sanctions or merits, solely as to the course of communications between the parties leading to Mr. Lindell's refusal to pay the ordered sanctions. "FRE 408 limits a document's relevance at trial, not its disclosure for other purposes." *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n,* 234 F. Supp. 3d 209, 211 (D.D.C. 2017) (explaining court could consider settlement offer as evidence of party's good faith compliance with Court order); *see also Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 2002 WL 1433584 at *4 (N.D. Ill. July 2, 2002) (proper to consider settlement communications in discovery sanctions dispute)

the Court under seal. (ECF No. 236). On June 9, 2025, Smartmatic filed, under seal, supplemental information produced by Lindell in the case captioned *Smartmatic USA Corp., et. al. v. Lindell, et. al.*, 22-cv-00098-JMB-JFD, pending in the District of Minnesota ("Minnesota Litigation"). (ECF No. 240, Ex., 1).

In the June 9, 2025 filing, Smartmatic also submitted information showing that Lindell had raised more than $360,000 for his legal defense. (ECF No. 240, Ex., 3). (Frey Decl. ¶ 5, Ex. 3). On June 16, the Court issued a Minute Order, directing Lindell to respond to Smartmatic's submission. (ECF No. 241). After Mr. Lindell failed to respond to the Court's Minute Order, on October 31, 2025, the Court issued another Minute Order, ordering Lindell to "SHOW CAUSE on or before November 14, 2025, for why he has not complied with the [241] Sealed Order." (October 31, 2025 Minute Order).

On January 19, 2026, Lindell filed a Memorandum of Law in Response to the Order to Show Cause. (ECF No. 246). As exhibits to the Memorandum, Lindell attached a declaration by himself (the "Lindell Declaration" or "Lindell Decl.") and a declaration by his attorney Chris Kachouroff (the "Kachouroff Declaration" or "Kachouroff Decl."). Kachouroff's Declaration also attached as exhibits two documents purporting to be transcripts of examination of "Confidential Witness[es]." Lindell's January 19, 2026 submission includes no additional financial records and includes no records from or relating to his legal defense fund.

## ARGUMENT

### I. LINDELL HAS NOT DEMONSTRATED AN INABILITY TO PAY THE SANCTIONS AWARD AND SHOULD BE HELD IN CONTEMPT

To hold a party in civil contempt, the Court must find by clear and convincing evidence that (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by the contemnor; and (3) the contemnor failed to comply with that order. *United States v. Latney's*

5

*Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29–30 (D.D.C. 2014). "Once Plaintiffs have made the required showing, "the burden shifts to the defendant to justify the noncompliance by, for example, demonstrating its financial inability to pay the judgment or its good faith attempts to comply . . . categorically and in detail." *Id*. at 30 (quotations omitted). Because the defendant's intent is irrelevant to the determination of civil contempt, the court need not find a willful or intentional failure to comply before holding a party in contempt. *Id*. (citation omitted). Similarly, "good faith alone is not sufficient to excuse contempt." *Id*. at 34 (citation omitted). Mr. Lindell's more than twelve months of non-compliance – despite clear notice of the January 13 order, multiple requests from Smartmatic, and the Court's subsequent June 16 and October 31 Show Cause orders – satisfies this standard.

### A. Lindell's Affirmative Refusal to Comply with the Court's Escrow Order Constitutes Willful Violation

Mr. Lindell's conduct goes beyond mere delay. Over one year ago, on January 13, 2025, the Court ordered that the sanctions award be held in escrow by Smartmatic's counsel, subject to an escrow agreement negotiated by the relevant parties. Rather than comply, Mr. Lindell attempted to impose his own payment terms, then refused to execute the escrow agreement Smartmatic presented. This refusal—not mere non-payment, but affirmative rejection of the Court's escrow mechanism—constitutes willful violation of a court order. Mr. Lindell did not petition the Court for modification of the order; he simply refused it while claiming poverty.

### B. Lindell Has Not Provided Categorical Detailed Evidence of his Inability to Pay the Sanctions Award.

Mr. Lindell bears the burden of proving he cannot comply with this Court's Sanctions Order. *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29–30 (D.D.C. 2014). ("[T]he burden shifts to the defendant to justify the noncompliance by, for example, demonstrating

6

its financial inability to pay the judgment or its good faith attempts to comply.") Importantly, Mr. Lindell bears the "burden of production" on establishing financial inability to pay a judgment or award. *SEC v. Bilzerian*, 112 F.Supp.2d 12, 16 (D.D.C. 2000); *see also United States v. Rylander*, 460 U.S. 752, 757 (1983) (In "raising [impossibility] defense, the defendant has a burden of production."). As such, a contemnor cannot prove inability to pay a judgment or monetary award by unsupported statements in a sworn declaration. *See Latney's Funeral Home* 41 F. Supp. 3d at 33 ("[T]hreadbare and conclusory statements of financial distress" did not prove inability to pay); *Bilzerian*, 112 F.Supp.2d at 16 ("A mere claim of poverty ... without adequate proof is not sufficient to satisfy [a] his burden."). Instead, a contemnor must establish their inability to pay, "categorically and in detail." *Latney's Funeral Home* 41 F. Supp. 3d at 33

Here, Mr. Lindell has not come close to meeting this exacting standard and has failed to prove his inability to pay the Sanctions Award "categorically and in detail." As evidence of his inability to pay, Mr. Lindell offers nothing more "threadbare and conclusory statements of financial distress" unsupported by any contemporaneous evidence or credible documentation. First, Mr. Lindell claims that "my financial situation has worsened" since April 2025. (Lindell Decl. ¶ 2). However, he provides no explanation or documentation of the cause or nature of this purported decline. A vague assertion of "worsen[ing]" does not meet the burden of demonstrating "categorical and detailed" inability to pay. *See Latney's Funeral Home* 41 F. Supp. 3d at 33. Next, Mr. Lindell also claims that he is "not financially able to make monthly payments of $5,000.00 towards the sanctions award." (Lindell Decl. ¶ 5.) Again, this assertion is unsupported by any documentary evidence and does not establish "categorically and in detail," that Mr. Lindell is unable to pay the Sanctions Award.

7

Most damaging to Lindell's position: he admits the legal defense fund "has no *remaining* money available which could have paid the sanctions order." (Lindell Decl. ¶¶ 3-4) (emphasis added). This is not a claim on indigence but of misallocation. Resources *were* available to satisfy this Court's Sanctions Award but were spent on other litigation—the precise harm Smartmatic sought to prevent through the escrow order. (ECF No. 214 ¶ 8.)

In addition, Mr. Lindell does not explain why the legal defense fund has no remaining funds and does not support his assertion that it lacks funds with any evidence. According to Mr. Lindell's Declaration, the defense fund paid for attorney fees, expert witness fees, technology support, and other vendor costs for a 12-day federal jury trial in Colorado. (Lindell Decl. ¶¶ 3-4). Mr. Lindell provides no accounting, no documentation, and no detail regarding the total amount raised by the defense fund, the specific amounts spent on the Colorado litigation, when those amounts were spent, and whether there were any funds left over to satisfy the Sanctions Award. Again, this complete lack of financial documentation fails to meet the "categorically and in detail" standard required by the D.C. Circuit. *See Latney's Funeral Home* 41 F. Supp. 3d at 33; *Bilzerian*, 112 F.Supp.2d at 16.

Finally, Lindell's assertion that the legal defense fund was drained, "after the conclusion of the [Colorado] trial," (*See* Lindell Decl. at 4). is false.  As late as October 24, 2025, months after the Colorado trial concluded, Lindell's legal defense fund raised an additional $100,000 to fund his litigation against Smartmatic in the District of Minnesota. (Frey Decl. ¶9, Ex. 7). On the fund's website, Lindell told his supporters that he was raising funds for a "whistleblower" to help him "expose the truth about these machines" to "put Smartmatic back in its place and defend free speech." *Id.* In short, Lindell's defense fund has raised more than enough to pay this Court's

8

sanctions award. But, unwilling to pay the award, Lindell used the legal defense fund to continue his campaign against Smartmatic.

In sum, Mr. Lindell provides unsupported declarations—but no evidence—to support his claim that he cannot comply with the Sanctions Award or that his legal defense fund is drained. Nor does he justify why these funds were spent on the Colorado litigation, and not complying with this Court's Sanctions Award. Finally, his legal defense fund continued to raise over $100,000 after the Colorado litigation concluded. Accordingly, he has failed to meet his burden to avoid contempt.

### C. Publicly Available Evidence Suggests that Mr. Lindell has Substantial Financial Resources.

Publicly available evidence suggests that Mr. Lindell still has funds to satisfy the Sanctions Award and, in recent months, he has continued to pursue his personal pet projects, each of which involves extensive fundraising and expenditures. First, on December 14, 2025, Lindell launched a campaign for Governor of Minnesota and claimed to raise over $151,000 within 24 hours of launching his campaign. (Frey Decl. ¶ 6 Ex. 4). Next, Lindell continues to solicit donations for his "Legal Offense Fund," a fund distinct from his "Legal Defense Fund," which funds election related litigation and publishes a monthly magazine, FreedomTalk. (Frey Decl. ¶¶ 7-8 Exs. 5&6). As of January 12, 2026, the Lindell Offense Fund continues to update its website and solicit donations. *Id.* Finally, in January 2026, Smartmatic's general counsel spotted Lindell flying business class from Aspen, Colorado, a global ski destination. (Flannery Decl. ¶¶ 5-8, Ex. 1).

Lindell's recent behavior—a gubernatorial campaign raising $151,000 in 24 hours, solicitation for his "Legal Offense Fund" and his "Legal Defense Fund," business-class travel to Aspen—is fundamentally incompatible with a claimed inability to pay $56,369.

## II. LINDELL'S ATTACKS ON SMARTMATIC'S CREDIBILITY ARE INFLAMMATORY, DISHONEST, AND IRRELEVANT TO THE CONTEMPT ORDER AND HIS INABILITY TO PAY

Unable to establish financial inability to pay, Mr. Lindell attempts distraction with inflammatory allegations – an unrelated indictment of Smartmatic executives and wild, unsubstantiated "confidential witness" statements – neither of which bears on his obligation to comply with this Court's order. (Lindell Brief at 4). As a threshold matter, these attacks on Smartmatic cannot absolve Mr. Lindell of his noncompliance with the Sanctions Order. *U.S. v. Gewin*, 759 F.3d 72, 81 (D.C. Cir. 2014); *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948). ("[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.") *See also S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 17 n. 6 (D.D.C. 2000), *aff'd,* 75 F. App'x 3 (D.C. Cir. 2003) ("A civil contempt proceeding is not a retrial of the original controversy.")

In *S.E.C. v. Bilzerian*, a defendant refusing to pay a judgment and facing contempt argued for relief by raising collateral issues such as a prior criminal conviction, a prior bankruptcy, and "issues already decided by this and other courts." *Bilzerian*, 112 F. Supp. 2d at 17 n. 6. This Court properly disregarded those arguments, noting that the only issue relevant to the defendant's contempt was his ability to comply with a Court Order. *Id.* at 16-17. Mr. Lindell's latest submission calls for the same approach. The only issue before this Court is whether Mr. Lindell has complied with the Sanctions Order and, if not, whether he has demonstrated that it would be impossible. Smartmatic's prior behavior or its alleged credibility problems have no bearing whatsoever on Mr. Lindell's obligation to obey the Court's Sanctions Order.

Accordingly, this Court should disregard Mr. Lindell's attacks on Smartmatic. However, since Mr. Lindell's attacks on Smartmatic are especially inflammatory, Smartmatic is compelled to respond.

### A. The October 2025 Indictment of Smartmatic Executives Involves Conduct Wholly Unrelated to the Sanctions Award and Fails to Excuse Lindell's Non-Compliance

In his first attempt to baselessly attack Smartmatic, Mr. Lindell quotes heavily from the October 16, 2025 Superseding Indictment filed in the Southern District of Florida against Smartmatic and certain Smartmatic executives in *U.S. v. Bautista*, Case No. 24-20343-CR-WILLIAMS(s) (S.D. Fla.). (*See* Lindell Brief at 5-6) This indictment charges Smartmatic and certain executives with violations of the Foreign Corrupt Practices Act and money laundering offenses allegedly related to contracts involving voting machines in the Philippines.

The indictment is entirely irrelevant to the contempt proceeding against Mr. Lindell for several reasons. First and foremost, the indictment reflects only allegations by federal prosecutors against Smartmatic and in the D.C. Circuit, "the law is clear that an indictment is not evidence." *Scott v. United States*, 412 A.2d 364, 371 (D.C. 1980). Second, the conduct alleged in the Indictment occurred in the Philippines and involved contracts related to the 2016 Philippine election, not any election in the United States. This conduct has zero connection to (1) any representation Smartmatic made in this litigation, (2) Lindell's claims against Smartmatic, or (3) the 2020 United States Presidential elections. Thus, even if this indictment were evidence of Smartmatic's prior conduct, it would have no bearing on the Sanctions Order against Mr. Lindell, his noncompliance with the Order, or any other issue relevant to this proceeding.

### B. The "Confidential Witness" Testimony Is Hearsay, Unsubstantiated, and Lacks Foundational Credibility

In his second attempt to smear Smartmatic, Mr. Lindell repeats allegations from what he characterizes as "testimony" from two "confidential whistleblowers" who allegedly testified in *Peters v. Feyen*, Case No. 1:25-cv-00425-STV (D. Colo.). These "witnesses" purportedly provided detailed testimony regarding Smartmatic's alleged involvement in election manipulation

11

in Venezuela and in the United States. (Lindell Brief at 7-8). Mr. Lindell claims that these witnesses "testified in another federal district court case about Smartmatic's involvement in the manipulation of elections in another country." (Lindell Brief at 7-8). He also claims that "transcripts of both whistleblowers' examinations were filed in the Federal District Court District of Colorado on October 1, 2025, after the Court's Order." (Lindell Brief at 8). Finally, he claims that this whistleblower testimony could cause other courts to revisit their findings on the 2020 election, and therefore, cause this Court to reconsider the Sanctions Order. (*See* Lindell Brief at 18). These assertions are misleading at best, and at worst, a deliberate fabrication.

First, these "confidential whistleblowers" did not "testify" in any federal district court cases. Rather, to the extent they exist, these individuals were interviewed *ex parte* outside the presence of a Court or opposing counsel. The first "whistleblower" was interviewed by John Case, attorney for former Mesa County, Colorado Clerk Tina Peters, with no opposing counsel or court reporter present. (*See* Kachouroff Decl. Ex. 1). The second "whistleblower" was interviewed by Michigan attorney Stefanie Lambert[2], and Sherriff Dar Leaf of the Barry County Sheriff's Office in Michigan. (*See* Kachouroff Decl. Ex. 2). This interview too, was taken outside the presence of a court or opposing counsel. *Id.*

Second, these transcripts were "filed" in a federal proceeding but were quickly stricken from the docket. These transcripts were first filed on September 23, 2025 in *Peters v. Feyen*, a federal habeas petition by Mesa County Colorado Clerk Tina Peters. Case No. 1:25-cv-00425-STV (D. Colo.) (ECF No. 70). On September 30, the State of Colorado moved to strike these

---

[2] Ms. Lambert currently faces criminal charges related to illegal access to voting equipment following the 2020 election. https://michiganadvance.com/2025/07/14/proceedings-again-postponed-for-michigan-attorney-charged-in-tabulator-tampering-case/ ; https://statesunited.org/resources/lambert-trial/ ; https://bridgemi.com/michigan-government/election-denier-who-evaded-michigan-court-11-days-i-know-too-much/

12

transcripts as irrelevant and "improper *ex parte* depositions." *Peters*, Case No. 1:25-cv-00425-STV (ECF No. 73). On October 16, 2025, the District Court granted the State's motion and ordered the transcripts stricken from the docket. *Peters*, Case No. 1:25-cv-00425-STV (ECF No. 84). Mr. Lindell's counsel is almost certainly aware that these transcripts were stricken from the record, and that these witnesses never "testified" in the *Peters* matter. His law partners, Patrick McSweeney and Robert Cynkar, represented Ms. Peters in her habeas petition and were on the signature block of the Opposition to the Motion to Strike. *See Peters*, Case No. 1:25-cv-00425-STV (ECF No. 84).

Third, and finally, any suggestion that these sources offer *new* information on 2020 election manipulation (*See* Lindell Brief at 18) is contradicted by the record. In fact, the second confidential "whistleblower" is well known to Smartmatic's counsel.[3] In his "testimony," the second whistleblower claims to be the former Chief of Security for Venezuelan President Hugo Chavez and claims to have previously issued an "affidavit of a sworn statement of everything that I had seen in the [2020] elections." (Kauchoroff Decl. Ex. 2 at 10:5-12, 34:16-18). That affidavit, purporting to be from Chavez' former chief of security, was filed as an exhibit in multiple suits challenging the results of the 2020 election. *See, e.g.*, *Wood v. Raffensperger*, No. 20-cv-4651 (N.D. Ga. Nov. 25, 2020) (ECF 1-2); *King v. Whitmer*, No. 20-cv-13134 (E.D. Mich. Nov. 25, 2020) (ECF 1-1); *Bower v Ducey*, No. 2-cv-02321 (D. Ariz. Dec. 2, 2020) (ECF 1-2). Each of

---

[3] As has been reported by the Associated Press and ProPublica the second "whistleblower" is likely Leamsy Villafaña José Salazar. Mr. Salazar formerly worked as a security officer for Hugo Chavez before working for Diosdado Cabello, the alleged chief of a drug cartel. *See* Doug Bock Clark, et. al, *Building the "Big Lie": Inside the Creation of Trump's Stolen Election Myth*, ProPublica, (Apr. 26, 2022) available at: https://www.propublica.org/article/big-lie-trump-stolen-election-inside-creation; *see also* Joshua Goodman, *Company targeted by vote fraud claims strikes back at Trump*, Associated Press, (Dec. 14, 2020) available at: https://apnews.com/article/election-2020-joe-biden-donald-trump-technology-electronic-voting-cd68ad2022611a36154ff3f243fcd1d8

these suits was dismissed. In fact, in its initial Motion to Sanctions, Smartmatic cited these cases as examples of frivolous lawsuits challenging the results of the 2020 election without any evidence. (ECF 118 at 3-4) (discussing *King v. Whitmer* and *Bower v Ducey*).

## CONCLUSION

For the foregoing reasons, Smartmatic respectfully requests that the Court find Mr. Lindell in civil contempt for violating the January 13 and June 16, 2025 Orders and impose a remedy to coerce compliance, including but not limited to a daily penalty until full payment. Smartmatic further requests that the Court award Smartmatic its reasonable attorneys' fees and costs incurred in responding to Mr. Lindell's January 19, 2026 Memorandum, including fees for drafting this Response Brief and related work, as such fees and costs were necessitated by Mr. Lindell's bad faith refusal to comply with the Court's Sanctions Order and his frivolous and inflammatory submissions attacking Smartmatic's credibility.

Dated: February 2, 2026

/s/ J. Erik Connolly

J. Erik Connolly
   D.C. Bar No. IL0099
   Email: econnolly@beneschlaw.com
Nicole E. Wrigley
   D.C. Bar No. IL0101
   Email: nwrigley@beneschlaw.com
Timothy M. Frey (admitted *pro hac vice*)
   Illinois ARDC No. 6303335
   Email: tfrey@beneschlaw.com
Julie M. Loftus (admitted *pro hac vice*)
   Illinois ARDC No. 6332174
   Email: jloftus@beneschlaw.com


BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312.212.4949

*Counsel for Defendants Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 2nd day of February, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

                                            */s/ J. Erik Connolly*
                                            J. Erik Connolly
                                            D.C. Bar No. IL0099

                                            *One of the Attorneys for Defendants Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*